5r

02 FEB 15 PM12:38

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE BOARD OF COUNTY COMMISSIONERS, HAMILTON COUNTY, OHIO,<br><br>and<br><br>THE CITY OF CINCINNATI, OHIO,<br><br>Defendants,<br>and<br><br>THE STATE OF OHIO,<br><br>Statutory Defendant. | Judge 4871<br>Mag.<br><br>Civil Action No. C-1-02 107<br><br>WEBER, J.<br>J. HOGAN |

COMPLAINT

The United States of America, by authority of the Attorney General of the United States, and on behalf of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), alleges the following:

NATURE OF ACTION

1. This is a civil action pursuant to Section 309(b) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b), for injunctive relief only against the Board of County Commissioners, Hamilton County, Ohio, and the City of Cincinnati, Ohio (collectively, "Defendants"), for the discharge of pollutants from their sanitary sewer system which discharges were not authorized

under Section 301(a) of the CWA, 33 U.S.C. § 1311(a). The State of Ohio has been joined as a party to this action pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in the Southern District of Ohio pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (e), because the Defendants are located in this District and the causes of action alleged in this complaint arose in this District.

4. Authority to bring this civil action is vested in the Attorney General of the United States pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

## NOTICE TO STATE

5. The United States has provided notice of this action to the State of Ohio pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## THE PARTIES

6. Plaintiff, United States of America, is acting at the request and on behalf of the Administrator of the Environmental Protection Agency ("Administrator").

7. The State of Ohio is a "person" as defined in Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

8. Defendant Board of Commissioners of Hamilton County ("the Board") is located in Hamilton County and is the duly authorized governing body of Hamilton County, Ohio, pursuant to the laws of the State of Ohio. The Board is a political subdivision created under Chapter 3 of the Ohio Revised Code with the power to sue and be sued. Pursuant to the laws

of the State of Ohio, authority and control over the sewer system within Hamilton County (including, but not limited to, the sanitary sewer system, the combined sewer system, and the wastewater treatment plants) is vested in the Board.

9. The Board has established the Metropolitan Sewer District of Greater Cincinnati ("MSD"), a county sewer district established pursuant to Chapter 6117 of the Ohio Revised Code, and acts as the principal of MSD, the duties of which include, among other things, maintaining of funding authority for MSD. Prior court decisions in Ohio hold that MSD cannot be sued in its own name, and thus, MSD is not made a Party to this action.

10. Defendant City of Cincinnati ("the City") is a chartered municipal corporation, organized and existing under the laws of the State of Ohio, and located in Hamilton County, Ohio. Pursuant to an agreement with the Board, and subject to the pertinent provisions of Ohio law, the City serves as the agent for the Board in the management and operation of MSD, which includes the operations and maintenance of the sanitary sewer system, the combined sewer system, and the wastewater treatment plants under the jurisdiction of MSD.

11. The Board and the City (hereinafter "Defendants") are "municipalities" and "persons" within the meaning of Section 502(4) and (5) of the CWA, 33 U.S.C. § 1362(4) and (5).

## STATUTORY BACKGROUND

12. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of pollutants" into navigable waters by any person except, *inter alia*, in compliance with a National Pollution Discharge Elimination System (NPDES) permit issued by U.S. EPA or an authorized state pursuant to Section 402 of the CWA 33 U.S.C. § 1342.

13. At all times relevant to this complaint, Ohio has been and continues to be authorized by

the Administrator to implement the NPDES permit program for discharges into navigable waters within its jurisdiction pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

14. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

FIRST CLAIM FOR RELIEF

UNPERMITTED DISCHARGES FROM SANITARY SEWER OVERFLOWS

15. Paragraphs 1 through 14 are realleged and incorporated herein by reference.

16. At all times relevant to this complaint, the Defendants have "discharged" and continue to "discharge" "pollutants," within the meaning of Section 502(6) and (12) of the CWA, 33 U.S.C. § 1362(6) and (12), including, inter alia, sewage, from the Defendants' sanitary sewer system through "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14) into the Ohio River, Mill Creek and other tributaries of the Ohio River. Such point sources have included, among others, numbered outfalls such as SSOs 700, 628, 634 and others.

17. The Ohio River, Mill Creek, and other tributaries of the Ohio River into which the Defendants discharge pollutants are all "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

18. The discharge of these pollutants through these point sources, in the form of sanitary sewer overflows, is not authorized by any NPDES Permit issued by U.S. EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

19. By these unauthorized discharges, the Defendants have violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

20. Defendants will continue to violate Section 301 of the CWA, 33 U.S.C. § 1311, unless enjoined by the Court.

21. Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), the Defendants are liable for injunctive relief for these violations.

## SECOND CLAIM FOR RELIEF
## LIABILITY OF THE STATE OF OHIO UNDER SECTION 309 (e)

22. Paragraphs 1 through 14 are realleged and incorporated herein by reference.

23. To the extent any law of Ohio prevents the Defendants from raising revenues needed to comply with any judgment entered against the Defendants in this action, pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e), Ohio is liable for payment of any judgment, or any expenses incurred by the Defendants as a result of complying with any judgment.

WHEREFORE, the Plaintiff, the United States of America, prays that the Court:

1. Permanently enjoin the Defendants from any further discharges from point sources not authorized by any NPDES permit in violation of the Clean Water Act;

2. Order the Defendants to expeditiously complete all actions necessary to ensure that the Defendants cease further discharges from point sources not authorized by any NPDES permit in violation of the Clean Water Act;

3. Award the Plaintiff its costs of this action;

4. Order the State of Ohio to pay any judgment in this action, including the cost of all injunctive actions and compliance expenses resulting therefrom, to the extent Ohio law

prevents the Defendants from raising revenues needed to comply with the judgment; and,

5. Grant the Plaintiff such further relief as the Court deems just and proper.

Respectfully submitted,

Tom Sansonetti

THOMAS L. SANSONETTI
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530

Leslie Allen

LESLIE ALLEN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-4114

GREGORY G. LOCKHART
United States Attorney
for the Southern District of Ohio

By: [signature]
DONETTA D. WIETHE
Assistant United States Attorney
221 East Fourth Street
Atrium II, Suite 400
Cincinnati, Ohio 45202
513-684-3711

OF COUNSEL:

Gary Prichard
Associate Regional Counsel
U.S. EPA, Region 5 (C-14J)
77 West Jackson Blvd.
Chicago, IL 60604-3590

Joseph Theis
Attorney-Advisor
U.S. EPA, Office of Enforcement and
Compliance Assurance
Ariel Rios Building (2243A)
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF OHIO,<br><br>Plaintiffs,<br><br>v.<br><br>THE BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO and THE CITY OF CINCINNATI,<br><br>Defendants. | Civil Action No. |

**INTERIM PARTIAL CONSENT DECREE ON SANITARY SEWER OVERFLOWS**

**TABLE OF CONTENTS**


| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | - 5 - |
| II. | PARTIES | - 6 - |
| III. | BINDING EFFECT | - 7 - |
| IV. | OBJECTIVES | - 9 - |
| V. | DEFINITIONS | - 10 - |
| VI. | CAPITAL IMPROVEMENT PROJECTS AND SSO 700 | - 14 - |
| VII. | COMPREHENSIVE SSO REMEDIATION PROGRAM | - 25 - |
| VIII. | SHORT-TERM ADEQUATE CAPACITY | - 35 - |
| IX. | REPORTING REQUIREMENTS | - 37 - |
| X. | DOCUMENT RETENTION/CERTIFICATION OF SUBMISSIONS | - 39 - |
| XI. | STIPULATED PENALTIES | - 40 - |
| XII. | FORCE MAJEURE BETWEEN DEFENDANTS AND THE UNITED STATES | - 48 - |
| XIII. | POTENTIAL FORCE MAJEURE BETWEEN DEFENDANTS AND THE STATE | - 51 - |
| XIV. | DISPUTE RESOLUTION | - 52 - |
| XV. | RIGHT OF ENTRY | - 56 - |
| XVI. | NOT A PERMIT/COMPLIANCE WITH OTHER STATUTES/REGULATIONS | - 57 - |

XVII. FAILURE OF COMPLIANCE . . . . . . . . . . . . . . . - 58 -

XVIII. EFFECT OF CONSENT DECREE AND NON-WAIVER PROVISIONS . . . . . . . . . . . . . - 58 -

XIX. COSTS OF SUIT . . . . . . . . . . . . . . . . . . . . . . - 62 -

XX. NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . - 62 -

XXI. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . - 63 -

XXII. REVIEW OF SUBMITTALS . . . . . . . . . . . . . . . . - 65 -

XXIII. CONTINUING JURISDICTION . . . . . . . . . . . . . . - 66 -

XXIV. CONTINGENT LIABILITY OF STATE OF OHIO . . . . . . - 67 -

XXV. TERMINATION . . . . . . . . . . . . . . . . . . . . . . - 67 -

XXVI. PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . - 68 -

XXVII. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . - 68 -

EXHIBIT 1: Non-MSD Sewer System

EXHIBIT 2: ADDITIONAL WASTEWATER TREATMENT PLANTS

EXHIBIT 3: CAPITAL IMPROVEMENT PROJECTS

EXHIBIT 4: METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI MODEL AND DATA COLLECTION WORK PLAN AND ADDENDUM

EXHIBIT 5: SSO MONITORING AND REPORTING PLAN

EXHIBIT 6: SEWER OVERFLOW RESPONSE PLAN

EXHIBIT 7: OPERATION AND MAINTENANCE PROGRAM

EXHIBIT 8: INDUSTRIAL WASTE SSO/CSO DISCHARGE MANAGEMENT AND MINIMIZATION PLAN

EXHIBIT 9: PUMP/LIFT STATION OPERATION AND MAINTENANCE PROCEDURES

EXHIBIT 10: SHORT TERM ADEQUATE CAPACITY PROGRAM PLAN

WHEREAS, plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("U.S. EPA"), is filing a Complaint herein concurrently with lodging of this Partial Consent Decree ("Consent Decree" or "Decree"), alleging that Defendants Board of County Commissioners of Hamilton County, Ohio (the "County") and the City of Cincinnati (the "City") (collectively, "Defendants"), acting through the Metropolitan Sewer District of Greater Cincinnati ("MSD"), have Sanitary Sewer Overflows ("SSOs") in the MSD Sanitary Sewer System which have violated and continue to violate Section 301 of the Federal Water Pollution Control Act (the "Clean Water Act" or the "Act"), 33 U.S.C. § 1311;

WHEREAS, Plaintiff State of Ohio, on behalf of the Ohio EPA, is filing a separate Complaint against Defendants concurrently with the lodging of this Consent Decree concerning the SSOs, alleging violations of the Act, 33 U.S.C. § 1251 et seq., and Chapter 6111 of the Ohio Revised Code ("O.R.C"), and all Parties agree that the Complaints filed by the United States and the State of Ohio should be consolidated;

WHEREAS, the Complaints allege that Defendants have discharged pollutants from their Sanitary Sewer System, which discharges were not authorized under Section 301(a) of the Act, 33 U.S.C. § 1311(a), and the Complaints seek injunctive relief for these SSOs, but not civil penalties at this time;

WHEREAS, Plaintiffs maintain that various other wet weather issues, including Combined Sewer Overflows (CSOs) from

Defendants' Combined Sewer System and capacity-related issues at certain of Defendants' Wastewater Treatments Plants ("WWTPs"), have led to additional violations of the Act beyond those alleged in the Complaints, but Plaintiffs' claims for these violations are not addressed by this Consent Decree, because they will be resolved through later negotiations designed to find a global solution to these issues, and/or by other future enforcement efforts;

WHEREAS, in response to orders issued by Ohio EPA, Defendants have already taken some measures to address SSOs through a program established in 1992 designed to identify SSOs and remedy them through an infiltration/inflow reduction program, and rehabilitation and construction of new sewers, which have resulted in the elimination of a number of SSOs;

WHEREAS, MSD asserts that it is in compliance with the 1992 State of Ohio Director's Final Findings and Orders ("DFFO") regarding SSOs;

WHEREAS, MSD has engaged in environmental research both through studies and pilot-scale operations conducted by its own staff and funding of cooperative research performed by the University of Cincinnati, the Water Environment Research Foundation, the Ohio River Valley Water Sanitation Commission ("ORSANCO"), U.S. EPA and other organizations;

WHEREAS, MSD has been an active participant in the national discussion of SSO policy through the Association of Metropolitan Sewerage Agencies and the Water Environment Federation;

WHEREAS, the Parties are entering into this Partial Consent Decree because they recognize the need for the Defendants: 1) to continue work they have already begun to address certain SSOs by implementing certain capital improvement projects, which Defendants had already planned; 2) to implement interim and permanent remedial measures at SSO 700; and 3) to evaluate their Sewer System in order to allow them to develop and propose a comprehensive SSO elimination program;

WHEREAS, the Parties nevertheless recognize that wet weather issues in and remedial measures for the Sanitary Sewer System are directly related to wet weather issues in and remedial measures for other parts of MSD's collection system. This is especially true with respect to CSOs from Defendants' Combined Sewer System and capacity-related issues at certain of Defendants' WWTPs;

WHEREAS, MSD asserts that it has undertaken a program to address CSOs by implementation of the Nine Minimum Controls and preparation and submission to U.S. EPA and Ohio EPA of a Long Term Control Plan, which efforts will be the subject of future discussions with the Plaintiffs;

WHEREAS, the confluence of these and other factors requires an integrated and costly response that addresses SSOs, CSOs and WWTP issues;

WHEREAS, Defendants are in the process of analyzing and considering global solutions for these wet weather issues and other Sewer System challenges, including possible construction of a deep storage tunnel beneath Mill Creek that will be

approximately 16 miles in length and in excess of thirty feet in diameter ("the Mill Creek Deep Tunnel");

WHEREAS, the Parties recognize the need expeditiously to commence discussions concerning global solutions to address the remaining Sewer System issues; and further recognize that because the schedule for implementing the SSO remedial measures that are to be proposed under the Capacity Assurance Program Plan required by this Decree is related to certain other Sewer System solutions, this Decree neither requires implementation of, nor provides a final construction completion date for, the SSO remedial measures that will be proposed under the Capacity Assurance Program Plan pursuant to this Decree;

WHEREAS, the Parties intend expeditiously to commence negotiations concerning: provisions for implementation of the Capacity Assurance Program Plan's SSO remedial measures, including a completion date for such measures; solutions for other alleged violations of the Act (including, among other things, CSOs and certain WWTPs); and for a civil penalty to address both the unauthorized discharges from the Sanitary Sewer System (some of the injunctive relief for which is incorporated in this Partial Consent Decree) and the other alleged violations;

WHEREAS, the Parties recognize that if they are unable to timely negotiate a resolution of these issues, future litigation may be necessary;

WHEREAS, the Parties explicitly recognize that this Partial Consent Decree does not resolve any claims the Plaintiffs may

have for penalties for the SSO violations alleged in the Complaints; that this Partial Consent Decree does not fully resolve Plaintiffs' claims for injunctive relief arising from the SSO violations alleged in the Complaints because it does not require implementation of the remedial measures to be proposed under the Capacity Assurance Program Plan; that this Partial Consent Decree does not resolve any claims Plaintiffs may have for penalties or injunctive relief for violations that have not yet been alleged in any complaint; and that the Parties reserve all claims and defenses that they may have concerning all these matters; and

WHEREAS, the Parties agree and the Court, by entering this Decree, finds that settlement of this matter without further litigation is in the public interest and that entry of this Consent Decree is the most appropriate means of resolving the matter;

NOW, THEREFORE, upon consent of the Parties hereto, before the taking of testimony, without any adjudication of issues of fact or law, and without admission by the Defendants of the non-jurisdictional allegations in the Complaint, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

## I. <u>JURISDICTION AND VENUE</u>

A. This Court has jurisdiction over the subject matter of this action and over the Parties, pursuant to Section 309(b) of the Act, 33 U.S.C. § 1331, and 28 U.S.C. §§ 1331, 1345, and 1355. This Court has supplemental jurisdiction over the claims asserted

by the State of Ohio pursuant to 28 U.S.C. § 1367. The United States' Complaint states a claim upon which relief can be granted pursuant to Section 309 of the Act, 33 U.S.C. § 1319. The State's Complaint states claims upon which relief can be granted pursuant to O.R.C. §§ 6111.07 and 6111.09. The Defendants agree not to contest the jurisdiction of the Court to enter and enforce this Decree.

B. Venue is properly in this District pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), and under 28 U.S.C. §§ 1391 and 1395.

**II. <u>PARTIES</u>**

A. Plaintiff, United States of America, is acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency.

B. Plaintiff, State of Ohio, is acting at the written request of the Director of Environmental Protection of the State of Ohio.

C. Defendant Board of Commissioners of Hamilton County ("the County") is the duly authorized governing body of Hamilton County, Ohio, pursuant to the laws of the State of Ohio. The County is the holder of various NPDES permits that govern discharges from the County's Wastewater Treatment Plants and Sewer System. As such, it is responsible for operating the County's Wastewater Treatment Plants and Sewer System. The County has established the MSD, a county sewer district established pursuant to Chapter 6117 of the Ohio Revised Code,

and acts as the principal of MSD, including maintenance of funding authority for MSD. Prior court decisions in Ohio hold that MSD cannot be sued in its own name, and thus, MSD is not made a Party to this action.

D. Defendant City of Cincinnati ("the City") is a chartered municipal corporation, organized and existing under the laws of the State of Ohio. Pursuant to an agreement with the County, and subject to the pertinent provisions of the Ohio Revised Code, the City also serves as the agent for the County in the management and operation of MSD. It is in this capacity that the City is named as Defendant.

## III. BINDING EFFECT

A. The provisions of this Consent Decree shall apply to, and be binding upon the Defendants and their officers, directors, employees, agents, servants, successors and assigns, and upon all persons, firms and corporations in active concert or participation with the Defendants or the Defendants' officers, directors, employees, agents, servants, successors or assigns, and upon the United States and the State of Ohio.

B. Effective from the Date of Lodging of this Consent Decree until its termination, any sale or transfer of either Defendant's interests in or operating role with respect to the Sewer System or WWTPs shall not in any manner relieve either Defendant of its responsibilities for meeting the terms and

conditions of this Consent Decree, except as provided in Paragraph C.

C. If either Defendant seeks to name a successor in interest to assume any or all of its interests in, or operating role with respect to, the Sewer System or WWTPs, such Defendant may request modification of this Consent Decree from U.S. EPA/Ohio EPA to amend this Consent Decree in accordance with the role to be assumed by the proposed successor in interest. Upon such Defendant's request, the Parties shall discuss the matter. If the Parties agree on a proposed modification to the Consent Decree, they shall prepare a joint motion to the Court requesting such modification and seeking leave to join the proposed successor in interest. If the Parties do not agree, and the Defendant still believes modification of this Decree and joinder of a successor in interest is appropriate, it may file a motion seeking such modification in accordance with Federal Rule of Civil Procedure 60(b); provided, however, that nothing in this Paragraph is intended to waive the Plaintiffs' right to oppose such motion and to argue that such modification is unwarranted.

D. If this Consent Decree is modified to allow a successor in interest to assume any or all of the obligations hereunder, Defendants shall give written notice of and provide a copy of this Consent Decree to any such successor in interest prior to transfer of ownership or operation of any portion of their WWTPs or Sewer System.

E. Defendants shall notify U.S. EPA and Ohio EPA in writing, as specified in Section XX, of any successor in interest at least twenty-one (21) days prior to any such transfer.

F. Defendants shall advise each engineering, consulting and contracting firm to be retained to perform any activities described in this Decree of the existence of this Decree and shall make copies of this decree available to such firms upon execution of any contract relating to such work. Defendants shall also advise each engineering, consulting and contracting firm, already retained for such purpose, of the existence of this Decree and shall make copies of this Decree available to such firms no later than thirty (30) days after the Date of Lodging of this Consent Decree.

## IV. OBJECTIVES

It is the express purpose of the Parties entering into this Partial Consent Decree to further the objectives set forth in Section 101 of the Act, 33 U.S.C. § 1251, and to partially resolve the claims of the Plaintiffs for injunctive relief for unpermitted discharges from the Defendants' Sanitary Sewer System, as alleged in Plaintiffs' Complaints. In light of these objectives, Defendants agree, _inter alia_: to use sound engineering practices, consistent with industry standards, to perform investigations, evaluations and analyses and to design and construct any remedial measures required by this Decree; to use sound management, operational, and maintenance practices,

consistent with industry standards, to implement all the requirements of this Consent Decree; and to achieve expeditious implementation of the provisions of this Decree with the goal of eliminating all Sanitary Sewer Overflows.

## V. DEFINITIONS

A. Unless otherwise defined herein, terms used in this Consent Decree shall have the meaning given to those terms in the Clean Water Act, 33 U.S.C. §§ 1251 et seq., and the regulations promulgated thereunder.

B. The following terms used in this Consent Decree shall be defined as follows:

"Calendar Quarter" shall mean the three-month periods ending on March 31st, June 30th, September 30th, and December 31st.

"City" shall mean the City of Cincinnati, Ohio.

"Combined Sewer System" means the portion of the Defendants' Sewer System designed to convey municipal sewage (domestic, commercial and industrial wastewaters) and stormwater runoff through a single-pipe system to the Defendants' Wastewater Treatment Plants or Combined Sewer Overflows.

"Consent Decree" shall mean this Consent Decree.

"County" shall mean Hamilton County, Ohio and the Board of County Commissioners of Hamilton County.

"Date of Entry" shall mean the date the Consent Decree is approved and signed by a United States District Court Judge.

"Date of Lodging" shall mean the date the Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of Ohio, Western Division.

"Day" or "Days" as used herein shall mean a calendar day or calendar days, unless otherwise indicated. When the day a report or other deliverable is due under this Consent Decree falls on a Saturday, Sunday, federal holiday or legal holiday for Defendants, Defendants shall have until the next calendar day that is not one of the aforementioned days for submittal of such report or other deliverable.

"Infiltration" shall mean the water entering a sewer system and service connections from the ground, through such means as, but not limited to, pipes, pipe joints, connections, or manhole walls.

"Inflow" shall mean the water discharged into a sewer system, including service connections, from such sources as, but not limited to: roof leaders; cellars, yard and area drains; foundation drains; cooling water discharges; drains from springs and swampy areas; manhole covers; cross connections from storm sewers; surface run-off; street wash waters; or drainage.

"I/I" shall mean the total quantity of water from both infiltration and inflow without distinguishing the source.

"Mill Creek Deep Tunnel" shall mean a tunnel designed to provide flood control and CSO control in the Mill Creek drainage basin.

"Non-MSD Sewer System" shall mean any wastewater collection and transmission system or piping that is designed to collect and convey domestic, commercial or industrial sewage and/or stormwater, but that is not owned or controlled by MSD at the time of lodging of this Consent Decree. The wastewater collection and transmission system and the piping comprising the Non-MSD Sewer System are generally depicted in Exhibit 1 to this Decree.

"Paragraph" shall mean a portion of this Consent Decree identified by an uppercase letter.

"Sanitary Sewer Discharge" and "SSD" shall mean any discharge to waters of the State or United States from Defendants' Sanitary Sewer System through a point source not specified in any NPDES permit.

"Sanitary Sewer Overflow," "SSO," and "Overflow" shall mean any discharge to waters of the State or United States from Defendants' Sanitary Sewer System through point sources not specified in any NPDES permit, as well as any release of wastewater from Defendants' Sanitary Sewer System to public or private property that does not reach waters of the United States or the State, such as a release to a land surface or structure that does not reach waters of the United States or the State; provided, however, that wastewater backups into buildings that are caused by blockages, flow conditions, or malfunctions in a building lateral, other piping or conveyance system that is not

owned or operationally controlled by Defendants are not SSOs for the purposes of this Consent Decree.

"Sanitary Sewer Overflow 700," or "SSO 700," shall mean the SSO located at State plane coordinates E 1,418,903; N 455,867.

"Sanitary Sewer System" or "SSS" shall mean all portions of the Defendants' Sewer System that are not a part of the Defendants' Combined Sewer System. SSS does not include any non-MSD Sewer System.

"Section" shall mean a portion of this Consent Decree identified by an uppercase Roman Number.

"Sewage" means municipal sewage, including domestic, commercial and industrial sewage.

"Sewer System" means the wastewater collection and transmission system owned or operated by Defendants designed to collect and convey municipal sewage (domestic, commercial and industrial) to the Defendants' Wastewater Treatment Plants or overflow structures.

"Sub-Basin" means the following portions of the Defendants' Sewer System: West Branch Mill Creek, East Branch Mill Creek, South Branch Mill Creek, Polk Run, Sycamore, California, Dry Run-Newtown-Clough, Duck Creek, Delta, Muddy Creek, Taylor Creek, Rapid Run, Muddy Creek-Ohio River and Cleves.

"Surcharge" means the condition that exists when the surface of the wastewater in manholes rises above the top of the sewer pipe, or the sewer is under pressure or head, rather than at atmospheric pressure.

"Ten-Year Storm" shall mean a SCS Type II storm with a ten-year return and 24-hour duration.

"U.S. EPA/Ohio EPA" shall mean "U.S. EPA and Ohio EPA" unless Plaintiffs jointly elect (in their unreviewable discretion) to assign a particular task or responsibility to one of them. To make that election, Plaintiffs shall notify Defendants in writing of the task or responsibility that U.S. EPA or Ohio EPA is assigned. Collectively, U.S. EPA/Ohio EPA are referred to as "Plaintiffs," and each individually is a "Plaintiff" under this Decree.

"Wastewater Treatment Plant(s)" ("WWTP(s)") shall refer to: 1) the following wastewater treatment plants: Mill Creek, Little Miami, Muddy Creek, Sycamore, Polk Run, Indian Creek, and Taylor Creek; and 2) the permitted treatment facilities owned or operated by Defendants identified in Exhibit 2 to this Decree.

## VI. CAPITAL IMPROVEMENT PROJECTS AND SSO 700

### A. Capital Improvement Projects

1. Defendants shall construct Capital Improvement Projects (CIP) consistent with the descriptions set forth in Exhibit 3 and in accordance with the Construction Complete Dates for each project set forth in Exhibit 3; provided however, that Defendants may seek to modify the project descriptions and schedule set forth in Exhibit 3 to address deficiencies in these projects identified by the Sanitary Sewer System Hydraulic Model completed pursuant to Paragraph VII.B of this Consent Decree.

Any such new schedule proposed by Defendants shall be as expeditious as practicable. Defendants shall submit any proposed modifications to the project descriptions and/or schedule set forth in Exhibit 3 to U.S. EPA/Ohio EPA for review and approval.

2. U.S. EPA/Ohio EPA may approve the submittal or decline to approve it and provide written comments. Within 60 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the submittal consistent with U.S. EPA/Ohio EPA's written comments, and submit the submittal to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

3. Upon receipt of U.S. EPA/Ohio EPA's final approval of the submittal, or upon completion of the submittal pursuant to dispute resolution, Defendants shall implement the revised Capital Improvement Project(s) in accordance with the schedule in the approved submittal.

**B. SSO 700 Interim Measures**

1. No more than eleven months from the lodging of this Consent Decree, Defendants shall submit an SSO 700 Interim Remedial Measures (IRM) Plan to build a Chemically Enhanced High Rate Settling (CEHRS) and Storage Facility, to reduce the amount of contaminant loading and improve the quality of discharges from SSO 700 while alternatives for final remedial measures for SSO 700 are being developed, evaluated and implemented. The CEHRS and Storage Facility will consist of a storage basin, a Chemically Enhanced High Rate Settling (CEHRS) treatment system,

and the piping, pumps, controls and equipment necessary to allow the system to operate as both a storage and treatment facility. The CEHRS treatment system shall utilize the ballasted flocculation process (in which chemicals and a fine sand are added to the wastewater prior to settling, to improve solids removal rates and treatment system capacity) or another CEHRS treatment process that will provide an equivalent or better reduction in discharge volume and pollutant load to the Mill Creek. Defendants shall spend a minimum of $10 million and up to $15 million in total project costs on the CEHRS and Storage Facility. Defendants shall utilize their available hydraulic modeling capabilities to assess whether marginal increases in system capacity and total project cost above $10 million (up to $15 million) are justified based on a "knee of the curve" analysis. The IRM Plan shall contain the results of such an evaluation of system cost/performance, and a discussion of proposed system capacities and capital costs, based on those cost/performance analyses. The IRM Plan shall also provide a detailed technical description of the proposed CEHRS and Storage Facility, including its proposed design performance characteristics (including expected treatment capacity and associated "design" storm magnitude, hydraulic loading rates, ballast and chemical feed rates, expected modes of operation, etc.); its expected impact on SSO 700 activation frequency, duration and volume of discharge in a "typical" year; and associated pollutant loads in a "typical" year (under both

current uncontrolled conditions and following implementation of the CEHRS and Storage Facility). The IRM Plan shall also include a schedule that is as expeditious as practicable, and that achieves completion of construction by no later than December 31, 2007. At a minimum, the schedule shall include critical construction milestones, including, at a minimum, deadlines for submission of a Permit to Install; commencement of construction, and completion of construction.

2. U.S. EPA/Ohio EPA may approve the IRM Plan or decline to approve it and provide written comments. Within 60 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the IRM Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the IRM Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

3. Upon receipt of U.S. EPA/Ohio EPA's final approval of the IRM Plan, or upon completion of the IRM Plan pursuant to dispute resolution, Defendants shall implement the IRM Plan in accordance with the schedule in the approved Plan.

4. Once construction is completed and the CEHRS and Storage Facility is placed in service, Defendants shall operate and maintain the CEHRS and Storage Facility in a manner consistent with the goals of (1) reducing SSO 700 pollutant discharges and, (2) successfully completing the CEHRS and Storage Facility Effectiveness Study, required by subparagraph VI.B.6, in

accordance with the approved CEHRS and Storage Facility Effectiveness Study Plan.

5. Within 60 days of completion of construction of the CEHRS and Storage Facility, Defendants shall provide U.S. EPA and Ohio EPA with documentation regarding the total project cost, and the components of that total cost (e.g., land acquisition, design, equipment acquisition and construction, etc.), of the CEHRS and Storage Facility.

6. CEHRS and Storage Facility Effectiveness Study.

(a) Within 30 months of the entry of this Consent Decree, Defendants shall submit to U.S. EPA and Ohio EPA, for approval, a work plan for conducting a two year study ("CEHRS and Storage Facility Effectiveness Study") of the effectiveness of the CEHRS and Storage Facility. The study shall commence immediately after completion of construction of the CEHRS and Storage Facility and shall include, but not be limited to, an analysis of: (a) the effectiveness of those facilities at removing suspended solids, carbonaceous biochemical oxygen demand (or biochemical oxygen demand), total Kjeldahl nitrogen (TKN), ammonia and total phosphorus; (b) any difficulties encountered in or limitations involved with using those facilities over a range of flow conditions, chemical feed rates and other operational control parameters; and (c) measures that MSD has taken to optimize use of those facilities. The work plan shall also include a schedule for the study and for production of a report that presents the results of the study.

(b) U.S. EPA/Ohio EPA may approve the CEHRS and Storage Facility Effectiveness Study Plan or decline to approve it and provide written comments. Within 60 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the CEHRS and Storage Facility Effectiveness Study Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the CEHRS and Storage Facility Effectiveness Study Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

(c) Upon receipt of U.S. EPA/Ohio EPA's final approval of the CEHRS and Storage Facility Effectiveness Study Plan, or upon completion of the CEHRS and Storage Facility Effectiveness Study Plan pursuant to dispute resolution, Defendants shall implement the CEHRS and Storage Facility Effectiveness Study Plan in accordance with the schedule in the approved Plan.

**C. Permanent Remedial Measures for SSO 700**

1. As soon as sufficient information becomes available on which to base their decision, but no later than December 31, 2005, Defendants shall submit to U.S. EPA/Ohio EPA a notice concerning the Mill Creek Deep Tunnel ("Tunnel Notice"). The Tunnel Notice shall contain a statement either: (a) that Defendants will pursue construction of the Mill Creek Deep Tunnel; or (b) that Defendants will not pursue construction of the Mill Creek Deep Tunnel.

2. It is the current understanding of the Parties that Defendants intend to pursue construction of the Mill Creek Deep Tunnel with assistance and/or funding from a third party project sponsor, which is not a signatory to this Consent Decree. However, whether or not Defendants actually receive such assistance and/or funding shall have no effect on Defendants' obligations under this Consent Decree, including, but not limited to, the requirement that Defendants complete construction of permanent remedial measures for SSO 700 in the manner and in accordance with the applicable schedule set forth in subparagraph VI.C.3.

3. Defendants shall submit to U.S. EPA/Ohio EPA an SSO 700 Remedial Plan by December 31, 2009. The SSO 700 Remedial Plan shall set out a plan for installation of remedial measures that have the goal of eliminating SSOs from SSO 700. The SSO 700 Remedial Plan shall provide a schedule for design and construction of the proposed remedial measures, which shall include critical construction milestones, including, at a minimum, deadlines for submission of a Permit to Install; commencement of construction, and completion of construction. If Defendants intend to address SSOs from SSO 700 in whole or in part by the operation of the Mill Creek Tunnel, the schedule shall be as expeditious as practicable and shall achieve construction of the Tunnel and any other proposed remedial measures by December 31, 2016. If Defendants intend to address SSOs from SSO 700 by means other than the operation of the Mill

Creek Tunnel, the schedule shall be as expeditious as practicable and shall achieve construction of the proposed remedial measures by December 31, 2022. The SSO 700 Remedial Plan shall also include a detailed technical description of the proposed remedial measures, estimated costs (capital, annual operation and maintenance (O&M) and either present value or annualized costs), and information regarding the expected performance of the proposed remedial measures (including the expected performance of the measures during storms of various sizes and the maximum storm that the measures can be expected to capture or otherwise address). In addition, the Plan shall indicate whether the CEHRS and Storage Facility will remain in operation after construction of the proposed remedial measures, and if so, in what capacity and with what expected performance results.

4. U.S. EPA/Ohio EPA may approve the SSO 700 Remedial Plan or decline to approve it and provide written comments. Within 90 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the SSO 700 Remedial Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the SSO 700 Remedial Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XV of this Decree.

5. Upon receipt of U.S. EPA/Ohio EPA's final approval of the SSO 700 Remedial Plan, or upon completion of the SSO 700 Remedial Plan pursuant to dispute resolution, Defendants shall

implement the SSO 700 Remedial Plan in accordance with the schedule in the approved Plan.

**D. Evaluation and Correction Period.**

1. After the completion of the permanent remedial measures for SSO 700, Defendants may evaluate the effectiveness of the rehabilitative work completed. Defendants may have two years after the completion of construction date for the remedial measures set forth in the SSO 700 Remedial Plan to evaluate system performance.

2. If Defendants need additional time to eliminate SSOs from SSO 700 or to correct other problems identified during the evaluation period, they may petition U.S. EPA/Ohio EPA for an extension of the previously applicable deadline for completion of construction of the SSO 700 remedial measures to allow for the implementation of additional remedial measures. Such petition shall include the reason(s) that the deadline extension is deemed necessary and shall be submitted within thirty (30) days of the end of the two-year evaluation period. Defendants shall submit a petition as soon as practicable after they identify a problem(s) that they believe warrants correction, and may submit more than one petition if they identify multiple problems.

3. U.S. EPA/Ohio EPA may approve the petition or decline to approve it and provide written comments, provided however, that U.S. EPA/Ohio EPA's approval shall not be arbitrarily and capriciously denied if the permanent remedial measures have been designed and constructed in accordance with

the SSO 700 Remedial Plan approved by U.S. EPA/Ohio EPA pursuant to Paragraph VI.C of this Decree. Within 45 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the petition consistent with U.S. EPA/Ohio EPA's written comments, and submit the petition to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

4. Upon receipt of U.S. EPA/Ohio EPA's final approval of the petition, or upon completion of the petition pursuant to dispute resolution, Defendants shall have 90 days to submit a Revised SSO 700 Remedial Plan (including a schedule that is as expeditious as practicable for completion of the additional remedial measures) to U.S. EPA/Ohio EPA for review and approval.

5. U.S. EPA/Ohio EPA may approve the Revised SSO 700 Remedial Plan or decline to approve it and provide written comments. Within 90 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the Revised SSO 700 Remedial Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the Revised SSO 700 Remedial Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XV of this Decree.

6. Upon receipt of U.S. EPA/Ohio EPA's final approval of the Revised SSO 700 Remedial Plan, or upon completion of the Revised SSO 700 Remedial Plan pursuant to dispute resolution, Defendants shall implement the revised SSO 700 Remedial Plan in

accordance with the schedule included in the approved revised Plan.

**E. Modification of the Tunnel Notice or Remedial Plan**

1. At any time after submission of the Tunnel Notice, or the SSO 700 Remedial Plan, if Defendants reasonably believe in good faith that the decision reflected in the Tunnel Notice or the SSO 700 Remedial Plan should be significantly modified or that alternative remedial measures that have the goal of eliminating SSOs from SSO 700 should be implemented, Defendants may submit to U.S. EPA and Ohio EPA a Revised Tunnel Notice and/or a Revised SSO 700 Remedial Plan. The Revised Tunnel Notice and/or the Revised SSO 700 Remedial Plan will set out the nature of the modification to the Tunnel Notice and/or the SSO 700 Remedial Plan and the reasons for such modifications. U.S. EPA/Ohio EPA shall review the submittal and in their sole and unreviewable discretion may approve or disapprove the proposed submittal. Upon receipt of U.S. EPA/Ohio EPA's approval of the submittal, Defendants shall implement the approved submittal in accordance with its terms.

2. If U.S. EPA/Ohio EPA do not approve the submittal, and Defendants believe modification of this Decree is appropriate, they may file a motion seeking such modification in accordance with Federal Rule of Civil Procedure 60(b); provided, however, that nothing in this subparagraph is intended to waive the Plaintiffs' right to oppose such motion and to argue that such modification is unwarranted.

## VII. COMPREHENSIVE SSO REMEDIATION PROGRAM

### A. Introduction

1. As further set forth in this Section, Defendants shall undertake a comprehensive program to evaluate and propose rehabilitation measures for their Sanitary Sewer System in order to meet the objectives of this Consent Decree as described in Section IV and as further described in this Section VII. This program builds upon the Capital Improvement Projects required by Section VI and Exhibit 3 of this Consent Decree, will take place in phases, and includes the following elements:

Data Collection and Modeling

- Sanitary Sewer System Hydraulic Model (and associated monitoring and data collection) (¶VII.B)

Analysis and Assessment

- Capacity Assessment Plan (¶VII.C)
- Capacity Assessment Report (¶VII.D)

Program Development and Implementation

- Capacity Assurance Program Plan Development (¶VII.E)
- SSO Monitoring and Reporting Program (¶VII.F)
- Sewer Overflow Response Program (¶VII.G)
- Operation and Maintenance Program (¶VII.H)
- Industrial Waste SSO/CSO Management and Minimization Program (¶VII.I)

- Pump/Lift Station Operating and Management Procedures (¶VII.J)
- Short Term Adequate Capacity Program Plan (§VIII)

2. Defendants' plans, programs, and other submittals shall be based on good engineering practices and industry standards and shall be consistent with the following standard references, or revisions thereto, as applicable:

- EPA's Handbook: Sewer System Infrastructure Analysis and Rehabilitation, EPA/625/6-91/030, Oct. 1991;
- Water Environment Federation's Manual of Practice FD-6/ASCE Report No. 62, Existing Sewer Evaluation & Rehabilitation, 1994.

**B. Sanitary Sewer System Hydraulic Model**

1. Defendants shall develop and employ, as required by Paragraph VII.C, a hydraulic model of Defendants' Sanitary Sewer System ("the Sanitary Sewer System Model" or "the Model) in accordance with the "Metropolitan Sewer District of Greater Cincinnati Model and Data Collection Work Plan and Addendum (August 2001) (Model Plan) which is attached as Exhibit 4 to this Consent Decree.

2. The Model Plan describes how Defendants will develop and implement a hydraulic model of their Sewer System. The Model Plan also describes the extensive Sewer System precipitation, groundwater, flow, and other monitoring and data

collection that Defendants have performed or will be performing, and how Defendants will use those data in calibrating and validating the Model.

3. Defendants shall complete calibration and validation of the Model through actual flow measurements by October 31, 2003, unless there have not been adequate precipitation events to allow for the technically sound calibration and validation of the Model. If there have not been adequate precipitation events, Defendants shall so notify U.S. EPA/Ohio EPA in writing and then shall complete calibration and validation of the Model through actual precipitation and flow measurements as expeditiously as practicable. Defendants shall immediately notify U.S. EPA/Ohio EPA in writing when validation has been completed.

**C. Capacity Assessment Plan**

1. Defendants shall carry out an assessment of the capacities of the following portions of their Sanitary Sewer System: all pump stations, all gravity sewer lines of 12 inches diameter or greater, force mains and syphons (as specified in the Model Plan), all known overflow points, specified sewers that hydraulically affect all known overflow points, and any other portions of the Sewer System (including portions of the Combined Sewer System 18 inches or greater, such as interceptors) that must be assessed so as to allow the technically sound evaluation of the causes of all known capacity-related SSOs, and the identification of appropriate measures that have the goal of

eliminating those capacity-related SSOs. This assessment shall specifically identify the hydraulic capacities of the aforementioned portions of the Sewer System, and compare those capacities to existing and future projected (through year 2025, or another future date chosen consistent with industry standards) average and peak, dry and wet weather flows. This capacity assessment shall take into account impacts on future collection system capacities that may result from the completion of the Capital Improvement Projects required pursuant to Section VI and Exhibit 3. This assessment shall identify, within the aforementioned portions of Defendants' Sewer System, those portions of the Sewer System that experience and/or are expected to experience and/or cause SSOs and/or Surcharge conditions under existing and future projected (through year 2025, or another future date chosen consistent with industry standards), average and peak, dry and wet weather flows, and the degree to which those portions experience or cause, under current or projected future conditions, SSOs and/or Surcharge conditions. It is specifically noted that the programs in this Consent Decree do not seek, per se, to eliminate all Surcharge conditions in Defendants' Separate Sewer System; rather, identification of Surcharge conditions is required as Surcharge conditions are typically indicative of limited additional capacity in a sewer line.

2. This assessment shall consider local rainfall data and the impact of appropriate rainfall events on peak wet weather

flows within those portions of Defendants' Sewer System identified in subparagraph C.1, above. Defendants shall use the Model, as described in the Model Plan attached as Exhibit 4, to accomplish this assessment.

3. Defendants shall submit to U.S. EPA/Ohio EPA for review and approval a comprehensive Capacity Assessment Plan within 120 days of completion of validation through actual flow measurements of the model developed pursuant to the Model Plan attached to this Decree as Exhibit 4. This Capacity Assessment Plan shall describe how Defendants will undertake an engineering study to comprehensively evaluate the hydraulic capacities of specified portions of the Sewer System, as described above in subparagraph VII.C.1. The Plan shall also include a schedule that is as expeditious as practicable for the completion of that Assessment for the completion and submission to U.S. EPA/Ohio EPA of a Report summarizing the Assessment, and for the completion and submission of a Capacity Assurance Program Plan, pursuant to the requirements of Paragraph VII.E.

4. U.S. EPA/Ohio EPA may approve the Capacity Assessment Plan or decline to approve it and provide written comments. Within 60 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the Capacity Assessment Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the Capacity Assessment Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

5. Upon receipt of U.S. EPA's/Ohio EPA's final approval of the Plan, or upon completion of the Capacity Assessment Plan pursuant to dispute resolution, Defendants shall implement the Capacity Assessment Plan in accordance with the schedule included in the approved Plan.

**D. Capacity Assessment Report**

1. Defendants shall submit a Report, consistent with the schedule in the approved Capacity Assessment Plan required pursuant to Paragraph VII.C, that presents and summarizes the results of implementation of the Capacity Assessment Plan to U.S. EPA/Ohio EPA for review, comment and approval. This Capacity Assessment Report shall describe the analyses carried out, and shall specifically identify, both in narrative and using schematics and maps, within the aforementioned portions of Defendants' Sewer System, portions of the Sewer System experiencing or causing SSOs and/or Surcharge, and/or having inadequate capacity under current and future conditions, and both dry and wet weather conditions, and shall characterize those capacity limitations. The Report shall provide detailed information demonstrating that the assessment has been carried out in accordance with the approved Plan.

2. U.S. EPA/Ohio EPA may approve the Capacity Assessment Report or decline to approve it and provide written comments. Within 60 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the Capacity Assessment Report consistent with U.S. EPA/Ohio EPA's written

comments, and submit the Capacity Assessment Report to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree. Upon receipt of U.S. EPA's/Ohio EPA's final approval of the Capacity Assessment Report, or upon completion of the Report pursuant to dispute resolution, Defendants shall utilize the assessment to develop the Capacity Assurance Program, pursuant to the requirements of Paragraph VII.E.

**E. Capacity Assurance Program Plan**

1. Defendants shall develop a Capacity Assurance Program Plan, based upon the system capacities revealed by the Capacity Assessment pursuant to Paragraphs VII.C-VII.D, Defendants' knowledge of the condition of their Sewer System, and projected impacts of the Capital Improvement Projects required pursuant to Section VI and Exhibit 3, and any other planned improvements, changes, or additions to Defendants' Sewer System. The Capacity Assurance Program Plan shall identify additional feasible remedial measures that have the goal of eliminating all capacity-related SSOs and/or that are necessary to insure that there is adequate capacity in the SSS under current and projected future conditions so that there will be no capacity-related SSOs under projected future conditions (as defined in subparagraph VII.C.1). If insufficient capacity, compared to current or projected future conditions (as defined in subparagraph VII.C.1), exists in any portion of the Defendants' Sanitary Sewer System or those other portions of Defendants' Sewer System that convey

sanitary Sewage to the WWTPs, Defendants shall identify additional feasible measures needed to provide adequate capacity under current and projected future conditions and/or that have the goal of eliminating capacity-related SSOs and shall provide detailed information on the methodologies used to select the proposed remedial measures. It is the intent of the Parties that the Capacity Assurance Program Plan shall identify only those measures the construction or implementation of which is necessary in light of information and analyses developed pursuant to Sections VI and VII, which construction and/or implementation shall not be required under this decree and shall only be required pursuant to future negotiations and/or other enforcement action.

2. Measures proposed by Defendants to address capacity limitations may include removal of I/I sources, increases in pump station and sewer capacities in both the Sanitary Sewer System and the Combined Sewer System, storage/equalization facilities, or increases in wastewater treatment plant capacity.

3. The Capacity Assurance Program Plan shall provide information regarding the effectiveness of the Capital Improvement Projects required pursuant to Section VI and Exhibit 3, and their compatibility with the other remedial projects chosen and the ultimate goal of eliminating SSOs.

4. The Plan shall provide estimated costs (capital, annual O&M and either present value or annualized costs) and

information regarding the expected performance of all considered and proposed measures. U.S. EPA/Ohio EPA shall consider the information concerning costs and performance of measures in their review of Defendants' Plan.

5. The Plan shall provide a schedule that is as expeditious as practicable for design and construction of all proposed measures. The schedule shall be broken out by Sub-Basin, and shall specify critical construction milestones for the projects in each Sub-Basin, including, at a minimum, deadlines for submission of Permit(s) to Install, commence construction, and complete construction, for each project, and a deadline for the completion date of all work in each Sub-Basin.

6. It is the intent of the Parties that this Partial Consent Decree does not include a specific date by which all design and construction in all Sub-Basins must be accomplished, but that this date will be proposed by Defendants in the schedule required by subparagraph VII.E.5, and will be subject to future negotiations and/or dispute resolution in connection with the review and approval process for the Capacity Assurance Program Plan under subparagraph VII.E.8.

7. The Plan shall be submitted to U.S. EPA/Ohio EPA for review and approval, in accordance with the schedule in the approved Capacity Assessment Plan required pursuant to Paragraph VII.C.

8. U.S. EPA/Ohio EPA may approve the Capacity Assurance Program Plan or decline to approve it and provide

written comments. Within 90 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the Capacity Assurance Program Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the Capacity Assurance Program Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

9. It is the intent of the Parties that implementation of the Capacity Assurance Program Plan shall not be required under this Decree, but shall only be required pursuant to future negotiations and/or other enforcement action.

**F. SSO Monitoring And Reporting Plan**

Defendants shall implement the SSO Monitoring and Reporting Plan attached to this Consent Decree as Exhibit 5.

**G. Sewer Overflow Response Plan**

Defendants shall implement the Sewer Overflow Response Plan attached to this Consent Decree as Exhibit 6.

**H. Operation and Maintenance Program**

Defendants shall implement the Operation and Maintenance Program attached to this Consent Decree as Exhibit 7.

**I. Industrial Waste SSO/CSO Discharge Management and Minimization Plan**

Defendants shall implement the Industrial Waste SSO/CSO Discharge Management and Minimization Plan attached to this Consent Decree as Exhibit 8.

**J. Pump/Lift Station Operation and Maintenance Procedures**

Defendants shall implement the Pump/Lift Station Operation and Maintenance Procedures attached to this Consent Decree as Exhibit 9.

## VIII. SHORT-TERM ADEQUATE CAPACITY

A. Defendants shall implement the Short-Term Adequate Capacity Program Plan (STACP Plan) attached to this Consent Decree as Exhibit 10. Defendants shall authorize only those new sewers or sewer extensions or an increase in flow associated with new development that are in conformance with this Plan. The conditions of this Plan shall apply to each Sub-Basin or part of a Sub-Basin only until such time as the Sub-Basin remedial measures set forth in Defendants' Capacity Assurance Program Plan, required pursuant to Paragraph VII.E above, have been satisfactorily completed. Nothing contained in the STACP Plan shall be construed as setting standards for, or changing any of the requirements for or objectives of, the remedial measures for the Defendants' Sewer System as required above by Paragraph VII.E of this Consent Decree.

B. The STACP Plan describes the process(es) that shall be used for authorizing those new sewers and/or sewer extensions including forms, procedures, methods, equations, staffing plans, flow meter locations, and the information or methods for obtaining information necessary to support such authorizations.

C. The objective of the STACP Plan is to prevent any wastewater flows from new development from aggravating or in any way adding to the quantity discharged from any downstream SSO. Specifically, the objective of the STACP Plan is to ensure that more flow is removed from the system than is added from a proposed new sewer, sewer extension, or increased flow associated with new development upstream of the SSO, as determined by the criteria and formulae set out in the STACP Plan. The current STACP Plan utilizes a removal credit trade ratio, as determined by the criteria and formulae set out in the Plan, that a minimum of 5 gallons of flow from a downstream SSO is to be removed for every gallon of flow added from the proposed new sewer, sewer extension, or increased flow associated with new development upstream of the SSO. In evaluating the proposed removal/addition for consistency with the STACP Plan, Defendants shall use design I&I conditions and estimated peak flow from the new development.

D. The STACP Plan may be modified to incorporate new or revised flow figures or methodologies for improvements undertaken by the Defendants to remove extraneous water (I/I) from the SSS, or to change the removal credit trade ratio. Any such modification shall be subject to the modification process set out in Section 6.0 of the STACP Plan.

E. Defendants agree to notify the public and permit applicants no later than 90 days after lodging of this Decree, of the program requirements in this Section.

## IX. REPORTING REQUIREMENTS

A. Beginning within the thirty (30) days of the close of the first full Calendar Quarter following the Date of Lodging of this Consent Decree, and within thirty (30) days of the close of each subsequent Calendar Quarter, Defendants shall submit to U.S. EPA and Ohio EPA, a summary report containing the following information pertaining to the Calendar Quarter just concluded: a brief synopsis of the current status of the major remedial measures (i.e., each CIP project, the development of the Model and associated data collection activities, the Capacity Assessment, the Capacity Assurance Program, and the deliverables associated with, and implementation of, these remedial measures) specified in Sections VI and VII of this Consent Decree and progress made with respect to such remedial measures since the last report; a brief synopsis of the implementation of the SSO Monitoring and Reporting Plan, Sewer Overflow Response Plan. Operation and Maintenance Program, Industrial Waste SSO/CSO Management and Minimization Plan, Pump/Lift Station Operating and Management Procedures, and Short Term Adequate Capacity Program Plan (e.g., compliance with performance measures); the number of Permit(s) to Install that have been applied for and/or issued; and a description of compliance or non-compliance with the requirements of this Consent Decree and its attachments and, if applicable, reasons for non-compliance. This report shall also identify any anticipated delays in the completion of any of the remedial measures specified in Sections VI and VII of this

Consent Decree. It is anticipated that these reports will provide summary information, preferably in the form of narrative tables. Notification to U.S. EPA or Ohio EPA pursuant to this Paragraph of any anticipated delay, shall not, by itself, excuse the delay.

B. Along with the quarterly reports required by Paragraph IX.A, Defendants shall also submit at the same time to U.S. EPA copies of monthly summaries of SSO information and certifications that Defendants have submitted to Ohio EPA pursuant to the SSO Monitoring and Reporting Plan and the Short Term Adequate Capacity Program Plan in the previous Calendar Quarter.

C. Beginning within the 30 days of the first year anniversary of the Date of Lodging of the Consent Decree, and within 30 days of each subsequent anniversary, Defendants shall submit to U.S. EPA/Ohio EPA notice of: any staffing changes that occurred in the prior year as required by Exhibit 6 (Sewer Overflow Response Plan); any revisions to the procedures or schedules set forth in Appendices C or D to Exhibit 9 (Pump/Lift Station O&M Procedures); any revisions to the equipment owned by MSD as set forth in Appendix A to Exhibit 7 (O&M Program); any changes to permanent monitoring locations that Defendants made in the prior year as required by Exhibit 4 (Model Plan); and any other revisions made in accordance with the terms of Exhibits 5-10.

## X. DOCUMENT RETENTION/CERTIFICATION OF SUBMISSIONS

A. Defendants shall maintain copies of any underlying research and data in their possession, custody or control for any and all documents, reports, or permits submitted to U.S. EPA/Ohio EPA pursuant to this Consent Decree for a period of five (5) years after submission. Defendants shall require any independent contractor(s) implementing this Consent Decree to also retain such materials for a period of five (5) years. Defendants shall submit such supporting documents to U.S. EPA/Ohio EPA upon request.

B. At the conclusion of this document retention period, Defendants shall notify U.S. EPA, Ohio EPA, U.S. Department of Justice, and the Ohio Attorney General at least 90 days prior to the destruction of any such materials, and upon request by any of these agencies, Defendants shall deliver any such materials to that agency or other specified agency.

C. In all notices, documents or reports submitted to the United States and State pursuant to this Consent Decree, Defendants shall, by a senior management official, sign and certify such notices, documents and reports as follows:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system,

or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## XI. STIPULATED PENALTIES

A. Defendants shall pay stipulated penalties, as set forth below, for each day they fail to timely submit submittals or meet any of the milestones or requirements set forth in Paragraphs XI.C through XI.G below. Fifty (50%) percent of the total stipulated penalty amount due shall be paid to the United States and fifty (50%) percent shall be paid to the State. All stipulated penalties arising under this Section shall, in the first instance, be levied against funds collected under Section 6117 of the Ohio Revised Code for the operation of MSD to the extent such funds are available, without limitation on recourse by the United States or the State in the event that such funds are not available within the sixty (60) day period for payment specified by Paragraph XI.I or are insufficient to pay such stipulated penalties.

B. "Timely submit", as used in this Section, shall mean that the submittal is made by the date specified in this Consent Decree or in a document approved pursuant to this Consent Decree.

"Timely submit" shall further mean that the submittal must include all of the elements pertaining to the submittal as set forth in this Consent Decree or in a document approved pursuant to this Consent Decree.

C. **Stipulated Penalties for Critical Path Submittals and Critical Remedial Milestones**

1. Defendants shall be subject to the following stipulated penalties for a failure to timely submit the submittals listed in subparagraph XI.C.2, below, or for a failure to meet the critical remedial milestones set forth in subparagraph XI.C.2, below, in accordance with all requirements, and objectives provided under this Consent Decree or in submittals subsequently approved by U.S. EPA/Ohio EPA pursuant to the provisions of this Consent Decree:

| | |
|---|---|
| 1-30 days | $1500/day |
| 31-60 days | $3000/day |
| over 60 days | $5000/day |

2. The following submittals are "critical path submittals," subject to the stipulated penalties of subparagraph XI.C.1, above:

- SSO 700 Interim Remedial Measures Plan
- CEHRS & Storage Facility Effectiveness Study Plan
- Tunnel Notice
- SSO 700 Remedial Plan
- Capacity Assessment Plan
- Capacity Assessment Report

- Capacity Assurance Program Plan

The following deadlines are "critical milestones," subject to the stipulated penalties of subparagraph XI.C.1, above:

- the Construction Completion Date for each Capital Improvement Project set forth in Exhibit 3
- the critical milestones, as required by subparagraph VI.B.1, set forth in the construction schedules contained in the approved SSO 700 Interim Remedial Measures Plan; provided, however, that Defendants shall not be subject to stipulated penalties in connection with achievement of the "proposed design performance characteristics, expected impact on SSO 700 activation frequency, duration and volume of discharge," or expected impact on "pollutant loads" set forth in the SSO 700 Interim Remedial Measures Plan, as required by subparagraph VI.B.1.
- the critical milestones, as required by subparagraph VI.C.3, set forth in the construction schedules contained in the approved SSO 700 Remedial Plan
- the date for calibration of the Sanitary Sewer System Model, as set forth in subparagraph VII.B.3
- the final date for implementation of the Sanitary Sewer System Model, as set forth in Exhibit 4

D. **Stipulated Penalties for Reporting Requirements**

Defendants shall be subject to the following stipulated penalties for a failure to timely submit any of the reports required by Section IX of this Consent Decree:

| | |
|---|---|
| 1-7 days | $500/day |
| 8-60 days | $1000/day |
| over 60 days | $1500/day |

E. **Stipulated Penalties for SSDs**

1. <u>Pre-Remedial Measures SSDs</u>

For the time periods set forth below, Defendants shall be subject to stipulated civil penalties of $3000 per day for each day of each SSD 1) that was caused by Defendants' failure to comply with their Operation and Maintenance Program or for which Defendants' failure to comply with their O&M Program contributed to the volume or the duration of such SSD; or 2) for which Defendants failed to follow their SSO Response Plan in responding to and mitigating the impact of the discharge:

- For an SSD from any location (other than from SSO 700) within any Sub-Basin, prior to the completion of the remedial measures for that Sub-Basin in accordance with the approved Capacity Assurance Program Plan;
- For an SSD from SSO 700, prior to the later of the completion of construction date set forth in the SSO 700 Remedial Measures Plan required pursuant to subparagraph VI.C.3 or any schedule completion

date extensions or revisions that are be made pursuant to Paragraph VI.D of this Consent Decree. These stipulated civil penalties shall be in lieu of any stipulated penalties under Section XI.H below for Defendants' failure to comply with their Operation and Maintenance Program or their SSO Response Plan.

2. <u>SSDs Following Completion of Permanent Remedial Measures for SSO 700</u>

(a) Except as provided in subparagraphs XI.E.2(b)-(c), Defendants shall be subject to a stipulated penalty of $3000 per day for each day of each SSD from SSO 700 that occurs after the later of: (1) the date for completion of all SSO 700 remedial measures pursuant to the SSO 700 Remedial Plan of this Consent Decree; or (2) any schedule completion date extensions or revisions that are be made pursuant to Paragraph VI.D of this Consent Decree. However, U.S. EPA/Ohio EPA will not demand payment for stipulated penalties under this subparagraph until after the two-year evaluation period set forth in Paragraph VI.D of this Consent Decree and shall not be entitled to stipulated penalties under this subparagraph for SSDs that occur prior to the later of the date for completion of all SSO 700 remedial measures pursuant to the SSO 700 Remedial Plan of this Consent Decree or any schedule completion date extensions or revisions that are made pursuant to Paragraph VI.D of this Consent Decree.

(b) Defendants shall not be liable for stipulated penalties under subparagraph 2(a) during the six month period (a "shake down" period) following the date for completion of all SSO 700 remedial measures pursuant to the SSO 700 Remedial Plan.

(c) Defendants shall not be liable for stipulated penalties for SSDs that are caused by a ten-year or greater storm event.

F. **Stipulated Penalties for Improper Sewer Connections**

Defendants shall be subject to a stipulated penalty of $5,000.00 for each connection authorized by Defendants other than in full compliance with the requirements of Section VIII of this Consent Decree.

G. **Stipulated Penalties for Violations of Exhibits and Submittals**

Failure to comply with any requirements set forth in the following attached Exhibits to this Consent Decree, or in the following submittals (subsequently approved by U.S. EPA/Ohio EPA pursuant to the provisions of this Consent Decree) shall subject Defendants to a stipulated penalty of $2,000 per day for each violation:

- CEHRS & Storage Facility Effectiveness Study Plan
- SSO 700 Remedial Plan or Revised Remedial Plan

- Model Plan (Exhibit 4)
- Capacity Assessment Plan
- SSO Monitoring and Reporting Program (Exhibit 5)
- Sewer Overflow Response Program (Exhibit 6)
- Operation and Maintenance Program (Exhibit 7)
- Industrial Waste SSO/CSO Discharge Management and Minimization Program (Exhibit 8)
- Pump/Lift Station Operation and Maintenance Procedures (Exhibit 9)
- Short-Term Adequate Capacity Program Plan (Exhibit 10).

H. Stipulated civil penalties shall automatically begin to accrue on the first day Defendants fail either to meet any of the schedules of performance required by this Consent Decree or to satisfy any other obligation or requirement of this Consent Decree.

I. Stipulated civil penalties shall be paid to both Plaintiffs within sixty (60) days of a written demand by either Plaintiff for payment of any stipulated penalty owing pursuant to this Consent Decree. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff. Either Plaintiff may, in the exercise of its unreviewable discretion, waive its right to any or all of its portion of the stipulated penalty amount.

J. Penalties owed to the United States shall be paid by submitting a cashier's or certified check payable to "Treasurer, United States of America", and shall be tendered to U.S. EPA Region V, Post Office Box 70753, Chicago, Illinois 60673. The transmittal letter accompanying the check shall specify the caption and docket number of this action, the facility and the violations for which the stipulated penalties are being paid, and DOJ Ref. No. 90-5-1-6-341A. A copy of the letter and the check shall simultaneously be sent to U.S. EPA Region V, Water Compliance Branch, Compliance Section, WCC-15J, 77 West Jackson Boulevard, Chicago, Illinois 60604, and to Chief, Environmental Enforcement Section, United States Department of Justice, Post Office Box 7611, Washington, D.C. 20044-7611.

K. Penalties owed to the State shall be paid by submitting a cashier's or certified check payable to "Treasurer, State of Ohio", and shall be tendered to Administrative Assistant, Ohio Attorney General's Office, 30 E. Broad Street, 25th floor, Columbus, Ohio 43215-3428. The transmittal letter accompanying the check shall specify the caption and docket number of this action and the facility and the violations for which the stipulated penalties are being paid. A copy of the letter and the check shall simultaneously be sent to Enforcement Coordinator, Division of Surface Water, P.O. Box 1049, Columbus, Ohio 43216.

L. In the event that a stipulated civil penalty is not paid within sixty (60) days of a written demand as required by

Paragraph XI.I, the stipulated civil penalty shall, upon written demand of the United States, be payable with interest from the original due date (sixty days after the written demand) to the date of payment, at the statutory judgment rate set forth at 28 U.S.C. § 1961(a).

M. Payment of stipulated civil penalties as set forth above shall be in addition to any other rights or remedies that may be available to the United States, the State, or their agencies by reason of the Defendants' failure to comply with requirements of this Consent Decree, and all applicable Federal, state or local laws, regulations, NPDES permit(s) and all other applicable permits. The payment of such stipulated penalties shall not be construed to relieve Defendants from specific compliance with this Decree or applicable federal or State law, nor shall it limit the authority of U.S. EPA or Ohio EPA to require compliance with such laws.

## XII. FORCE MAJEURE BETWEEN DEFENDANTS AND THE UNITED STATES

A. If any event occurs that causes or may cause Defendants to violate any provision of this Consent Decree, Defendants shall notify U.S. EPA in writing within fourteen (14) days from the date Defendants first knew, or in the exercise of reasonable diligence should have known, that compliance with the Consent Decree would be prevented or delayed. The notice shall reference this Section of the Consent Decree and shall describe in detail the anticipated length of time the violation may persist, the

precise cause or causes of the violation, the measures taken or to be taken by Defendants to prevent or minimize the violation and the timetable by which those measures will be implemented. Defendants shall adopt all reasonable measures to avoid or minimize any such violation. Defendants shall make all reasonable efforts to identify events that cause or may cause a violation of this Consent Decree. Failure by Defendants to comply with the notice requirements of this Paragraph shall constitute a waiver of Defendants' rights to obtain an extension of time or other relief under this Section based on such incident.

B. If U.S. EPA agrees that the violation has been or will be caused by circumstances beyond the control of Defendants or any entity controlled by it, including its consultants and contractors, and that Defendants could not have prevented such violation, the time for performance of the requirement in question may be extended for a period not to exceed the actual delay resulting from such circumstance, and stipulated penalties shall not be due for such delay or non-compliance. In the event U.S. EPA does not agree that the violation was caused by circumstances beyond the control of the Defendants and notifies Defendants of such determination, Defendants may invoke the dispute resolution provisions in Section XIV of this Consent Decree.

C. If Defendants invoke dispute resolution and U.S. EPA or the Court determines that the violation was caused by

circumstances beyond the control of Defendants or any entity controlled by it, and that Defendants could not have prevented such violation, Defendants shall be excused as to that violation, but only for the period of time the violation continues due to such circumstances.

D. Defendants shall bear the burden of proving that any delay or violation has been or will be caused by circumstances beyond its control, and that Defendants could not have prevented such violation, as set forth above. Defendants shall also bear the burden of establishing the duration and extent of any delay or violation attributable to such circumstances, that such duration or extent is or was warranted under the circumstances and that, as a result of the delay, a particular extension period is appropriate. An extension of one compliance date based on a particular circumstance beyond Defendants' control shall not automatically extend any subsequent compliance date or dates.

E. Changed financial circumstances or unanticipated or increased costs or expenses associated with implementation of this Consent Decree, shall not serve as a basis for excusing violations of or granting extensions of time under this Decree. Failure to apply for a required permit or approval or to provide in a timely manner all information required to obtain a permit or approval that is necessary to meet the requirements of this Consent Decree shall not, in any event, be considered Force Majeure events.

F. Defendants shall make a showing of proof regarding the cause of each delayed incremental step or other requirement for which an extension is sought. Defendants may petition for the extension of more than one compliance date in a single request.

XIII. **POTENTIAL FORCE MAJEURE BETWEEN DEFENDANTS AND THE STATE**

A. If any event occurs that causes or may cause the Defendants to violate any provision of this Consent Decree, Defendants shall notify the Ohio EPA in writing within fourteen (14) days from when it knew, or in the exercise of reasonable diligence under the circumstances should have known, that compliance with the Decree would be prevented or delayed, describing in detail the precise cause or causes of the delay or violation, the anticipated length of the delay if applicable, the measures taken by Defendants to prevent or minimize the delay and the timetable by which those measures will be implemented. Defendants shall adopt all reasonable measures to avoid or minimize any such violation. Defendants shall make all reasonable efforts to identify events that cause or may cause a violation of this Consent Decree.

B. In any action by the State of Ohio to enforce any of the provisions of this Consent Decree, Defendants may raise at that time the question of whether they are entitled to a defense that its conduct was caused by circumstances beyond their control such as, by way of example and not limitation, acts of God,

strikes, acts of war or civil disturbances. While the State of Ohio does not agree that such a defense exists, it is, however, hereby agreed by Defendants and the State of Ohio that it is premature at this time to raise and adjudicate the existence of such a defense and that the appropriate point at which to adjudicate the existence of such a defense is at the time, if ever, that the proceeding to enforce this Consent Decree is commenced by the State. At that time the burden of proving that any delay was or will be caused by circumstances beyond the control of Defendants shall rest with Defendants. Failure by Defendants to timely comply with the notice requirements of Paragraph XIII.A shall, at the option of Ohio EPA, constitute a waiver by Defendants of any right they may have to raise such a defense. Changed financial circumstances or increased costs associated with the implementation of any action required by this Consent Decree shall not in any event constitute circumstances entirely beyond the control of Defendants or serve as a basis for an extension of time under this Decree.

**XIV. DISPUTE RESOLUTION**

A. This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, to the extent that

Paragraph C, below, provides for resolution of disputes by the Court.

B. The issuance, renewal, modification, denial or revocation of a permit and the issuance of orders or other actions of the Director of Environmental Protection (Ohio EPA) are not subject to dispute resolution under this Decree but, rather, shall be subject to challenge under Chapter 3745, Ohio Revised Code. The term "actions of the Director of Environmental Protection" shall be consistent with the definitions set forth in Chapter 3745, Ohio Revised Code.

C. Except as provided in Paragraph B, above, any dispute that arises with respect to the meaning, application, implementation, interpretation, amendment or modification of this Consent Decree, or with respect to Defendants' compliance herewith (including the adequacy of the Defendants' performance of the remedial measures and adequacy of the submittals required by this Decree) or any delay hereunder, the resolution of which is not expressly provided for in this Consent Decree, shall in the first instance be the subject of informal negotiations. If any Party believes it has a dispute with any other Party, it shall notify all the other Parties in writing, including notice to the U.S. Department of Justice and the Ohio Attorney General, setting forth the matter(s) in dispute, and the Parties will proceed initially to resolve the matter in dispute by informal means. Such period of informal negotiations shall not exceed

thirty (30) days from the date the notice was sent, unless the Parties agree otherwise.

D. If the informal negotiations are unsuccessful, the position of the United States and the State shall control unless, within twenty (20) days after the conclusion of the informal negotiation period, the Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States and the State a written statement of position on the matter in dispute.

E. Within thirty (30) days of receiving the Defendants' statement of position, the United States and/or the State will serve on the Defendants its/their written statement of position.

F. The United States' and/or the State's statement of position shall be binding upon the Defendants unless Defendants file a petition with the Court describing the nature of the dispute and a proposal for its resolution. Defendants' petition must be filed no more than twenty (20) days after receipt of the United States' and/or the State's statement of position. The United States and/or the State shall then have 30 days to file a response setting forth its/their position and proposal for resolution. In any such dispute, the petitioner shall have the burden of proof, and the standard of review shall be that provided by applicable law.

G. Submission of any matter to the Court for resolution shall not extend any of the deadlines set forth in this Consent

Decree, unless the Parties agree to such extension in writing or the Court allows the extension upon motion.

H. If the United States and the State provide Defendants with materially different or irreconcilable positions on the issue(s) in dispute, Defendants' obligation to perform an action necessarily affected by the materially different or irreconcilable positions (and Defendants' liability for stipulated penalties concerning such obligation) shall be stayed until the dispute is resolved.

I. Stipulated penalties with respect to any disputed matter (and interest thereon) shall accrue in accordance with Paragraphs XI.H and L; however, payment of stipulated penalties, and any accrued interest, shall be stayed pending resolution of the dispute, as follows:

1. If the dispute is resolved by informal agreement before appeal to this Court, accrued penalties (and interest), if any, determined to be owing shall be paid within 60 days of the agreement or the receipt of the United States' and/or the State's final position in writing.

2. If the dispute is appealed to this Court and the United States and/or the State prevails in whole or in part, Defendants shall pay all accrued penalties (and interest) determined to be owed within 60 days of the Court's decision or order.

3. In the event of an appeal, Defendants shall pay all accrued penalties (and interest) determined to be owed within

60 days of a final decision no longer subject to judicial review has been rendered.

## XV. RIGHT OF ENTRY

A. Until termination of this Consent Decree, the United States and the State, and their authorized representatives and contractors, shall have authority at all reasonable times, upon the presentation of credentials, to enter Defendants' premises to:

1. Monitor the progress of activities required by this Consent Decree;

2. Verify any data or information submitted to the United States and/or the State;

3. Obtain samples from the WWTPs and Sewer System;

4. Inspect and evaluate Defendants' WWTPs and Sewer System; and

5. Inspect and review any records required to be kept under the terms and conditions of this Consent Decree or any NPDES Permit and the Clean Water Act.

B. The United States and the State agree to provide Defendants an opportunity to obtain split samples of wastewater samples taken by the United States or the State from the Sewer System. The United States and the State further agree to provide Defendants with the quality assured/quality controlled laboratory analytical results of samples obtained from the Sewer System, and any non-privileged (including non-attorney work product) reports

prepared concerning such results. The United States and the State will use best efforts to coordinate field inspections of the Sewer System with Defendants by notifying them, if practicable, of such inspections prior to arrival at the field inspection location.

## XVI. NOT A PERMIT/COMPLIANCE WITH OTHER STATUTES/REGULATIONS

A. This Consent Decree is not and shall not be construed as a permit, or a modification of any existing permit, issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, nor shall it in any way relieve Defendants of their obligations to obtain permits for their wastewater treatment facilities and to comply with the requirements of any NPDES permit or with any other applicable federal or state law or regulation, including the obligation to obtain Permits to Install. Any new permit, or modification of existing permits, must be complied with in accordance with applicable federal and State laws and regulations.

B. The pendency or outcome of any proceeding concerning issuance, reissuance or modification of any NPDES permit shall not affect or postpone Defendants' responsibilities under this Decree. However if a permitting authority receives a timely, approvable application for a permit, renewal or modification, and the permitting authority does not issue the permit, renewal or modification or take a proposed action on the application in a

timely manner, the Defendants may seek relief under the force majeure provisions of this Consent Decree.

C. Nothing herein, including the United States' and the States' review or approval of any plans, reports, policies or procedures formulated pursuant to this Consent Decree, shall be construed as relieving Defendants of the duty to comply with the Clean Water Act, the regulations promulgated thereunder, and all applicable permits issued thereunder, or as relieving Defendants of their duty to comply with State law and the regulations promulgated thereunder.

## XVII. FAILURE OF COMPLIANCE

The United States and State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' complete compliance with this Consent Decree will result in compliance with the provisions of the Clean Water Act, 33 U.S.C. §§ 1251 et seq., R.C. 6111, or with Defendants' NPDES permits.

## XVIII. EFFECT OF CONSENT DECREE AND NON-WAIVER PROVISIONS

A. Nothing contained in this Consent Decree shall be construed to prevent or limit the United States' or the State's rights to obtain penalties or further or additional injunctive relief under the Clean Water Act or other federal statutes or regulations, including, but not limited to, criminal punishment under Section 309(c) of the Act, 33 U.S.C. § 1319(c), or state

laws and regulations respectively except as expressly specified herein.

B. This Consent Decree resolves the civil claims of the United States and the State for injunctive relief for the SSO violations alleged in the Complaints filed herein through the date of Lodging of this Decree, except that this Consent Decree does not resolve, and the United States and the State specifically reserve, claims for injunctive relief concerning implementation of the remedial measures set forth in the approved Capacity Assurance Program Plan. The United States and State specifically reserve any and all claims for penalties associated with the violations alleged in the Complaints filed herein.

C. The United States and State further reserve all rights against the Defendants with respect to any SSO violations by Defendants that occur after the Date of Lodging of this Consent Decree, and/or for any violations of the Clean Water Act not specifically alleged in the Complaints filed herein, whether they occurred before or after the Date of Lodging of this Decree.

D. The Parties agree that in any future civil action pursuant to 33 U.S.C. § 1319(b) for injunctive relief to address SSO violations at SSO 700 that occur after the date of lodging of this Consent Decree, Defendants' compliance or noncompliance with the remedial measures set forth in this Consent Decree may be taken into account by a District Court in fashioning appropriate injunctive relief. The Parties further agree that in any future civil action pursuant to 33 U.S.C. § 1319(d) for penalties for

SSO violations that occur after the date of lodging of this Consent Decree, Defendants' compliance or noncompliance with the remedial measures set forth in this Consent Decree shall be considered to be among the factors specified in 33 U.S.C. § 1319(d) that may be taken into account by a District Court in determining the amount of a civil penalty.

E. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, penalties, or other appropriate relief relating to Defendants' violation of the Clean Water Act, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph B of this Section.

F. The Consent Decree in no way affects or relieves Defendants of any responsibility to comply with any federal, state, or local law or regulation.

G. The Parties agree that Defendants are responsible for achieving and maintaining complete compliance with all applicable federal and state laws, regulations, and permits, and that compliance with this Consent Decree shall be no defense to any

actions commenced pursuant to said laws, regulations, or permits, except as set forth herein.

H. This Consent Decree does not limit or affect the rights of the Parties as against any third parties that are not Parties to this Consent Decree. The Parties recognize that this Consent Decree resolves only matters between Plaintiffs and Defendants and that its execution does not preclude Defendants from asserting any legal or factual position in any action brought against them by any person or entity not a Party to this Consent Decree.

I. The United States and the State reserve any and all legal and equitable remedies available to enforce the provisions of this Consent Decree.

J. This Consent Decree shall not limit any authority of the United States or the State under any applicable statute, including the authority to seek information from Defendants, to require monitoring, to conduct inspections, or to seek access to the property of Defendants; nor shall anything in this Consent Decree be construed to limit the authority of the United States or the State to undertake any action against any person, including Defendants, in response to conditions that may present an imminent and substantial endangerment to the environment or to the public health or welfare.

K. Application for construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays caused by inadequate facility planning or plans and specifications, on

the part of Defendants shall not be cause for extension of any required compliance date in this Consent Decree.

L. Obligations of Defendants under the provisions of this Consent Decree to perform duties scheduled to occur after the signing, but prior to the Date of Entry, shall be legally enforceable from the date this Consent Decree is signed by Defendants. Liability for stipulated penalties, if applicable, shall accrue for violation of such obligations and payment of such stipulated penalties may be demanded by the United States as provided in this Consent Decree. The contempt authority of this Court shall also extend to violations of such obligations.

## XIX. COSTS OF SUIT

Each Party shall bear its own costs and attorneys' fees with respect to matters related to this Consent Decree.

## XX. NOTICES

All notices and correspondence under this Decree shall be sent to the following addresses:

For U.S. EPA:
Chief, Enforcement and Compliance
Assurance Branch
Water Division (WCC-15J)
U.S. EPA, Region V
77 West Jackson Blvd.
Chicago, Illinois 60604

<u>For U.S. Department of Justice</u>

U.S. Department of Justice
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
Post Office Box 7611
Washington, D.C. 20044-7611
Reference DJ # 90-5-1-6-341A

<u>For Ohio EPA</u>:

Ohio EPA Southwest District Office
ATTN: DSW Enforcement Group Leader
401 East Fifth Street
Dayton, Ohio 45402-2911.

<u>For Ohio Attorney General</u>

Chief, Environmental Enforcement Section
Ohio Attorney General's Office, 25th floor
30 E. Broad Street
Columbus, Ohio 43215-3428

<u>For the County</u>:

Hamilton County Board of County Commissioners
County Administration Building
138 East Court Street, Suite 603
Cincinnati, Ohio 45202

<u>For the City of Cincinnati</u>:

W. Peter Heili
Deputy City Solicitor for the City of Cincinnati
801 Plum Street, Suite 214
Cincinnati, Ohio 45202

<u>For MSD:</u>

Director
Metropolitan Sewer District of Greater Cincinnati
1600 Gest Street
Cincinnati, Ohio 45204

## XXI. MODIFICATION

A. Except as further set forth in this Paragraph, there shall be no material modification of this Consent Decree,

Exhibits attached to this Consent Decree, or the submittals approved under this Consent Decree without written approval by all of the Parties and the Court; and any non-material modification of this Consent Decree, its Exhibits, or approved submittals shall be in writing and signed by the Parties. , Modifications (whether material or not) to the attached Exhibits or subsequently approved submittals that are specifically allowed under the terms of those Exhibits or submittals may be made in accordance with the terms of those Exhibits or approved submittals.

B. It is the intention of the Parties to this Consent Decree that the Defendants shall have the opportunity, consistent with applicable law, to conform compliance with this Consent Decree to any modifications in U.S. EPA's regulations or national policies governing SSOs.

1. Consequently, upon issuance of any new U.S. EPA final regulation (as promulgated in the Federal Register) or national policy governing SSOs, Defendants may request modification of this Consent Decree from U.S. EPA/Ohio EPA to conform this Consent Decree to such regulation or national policy. For the purposes of this Paragraph, "national policy" refers to a formal written policy statement issued by the Assistant Administrator for the Office of Water and the Assistant Administrator for the Office of Enforcement and Compliance Assurance. Upon Defendants' request, the Parties shall discuss the matter. If the Parties agree on a proposed modification to

the Consent Decree, they shall prepare a joint motion to the Court requesting such modification.

2. If the Parties do not agree, and Defendants still believe modification of this Decree is appropriate, they may file a motion seeking such modification in accordance with Federal Rule of Civil Procedure 60(b); provided, however, that nothing in this subparagraph is intended to waive the Plaintiffs' rights to oppose such motion and to argue that such modification is unwarranted.

3. Following the filing of a motion under Rule 60(b), stipulated penalties shall accrue due to Defendants' failure, if any, to continue performance of obligations under the Decree that are necessarily the subject of the Rule 60(b) motion; provided, however, that such penalties need not be paid unless the Court resolves the Rule 60(b) motion in the Plaintiffs' favor. If the Court resolves the motion in Defendants' favor, Defendants shall comply with the Decree as modified.

## XXII. REVIEW OF SUBMITTALS

A. U.S. EPA/Ohio EPA agree to use their best efforts to expeditiously review and comment on deliverables that Defendants are required to submit to U.S. EPA/Ohio EPA for approval pursuant to the terms and provisions of this Consent Decree. Where the Consent Decree both requires Defendants to submit a plan or report or other submittal to U.S. EPA/Ohio EPA for review and approval and establishes a specific timeline for Defendants to

resubmit such plan, report or other submittal after comments by U.S. EPA/Ohio EPA, U.S. EPA/Ohio EPA shall, as expeditiously as possible, review and approve or decline to approve and provide written comments to the Defendants on the submittal.

B. If U.S. EPA/Ohio EPA cannot complete their review of the submittal within 60 days of receipt of the submittal, U.S. EPA/Ohio EPA shall so notify Defendants. Such notice shall be given within the 60-day period following receipt of the submittal, and U.S.EPA/Ohio EPA shall identify a schedule for completion of their review.

C. If U.S. EPA/Ohio EPA fail to approve or decline to approve and provide written comments within 60 days of receipt of the submittal, any subsequent milestone date dependent upon such approval or any resubmission dependent upon such comments shall be extended by the number of days beyond 60 days that U.S. EPA/Ohio EPA use for their comment or decision on that submittal.

## XXIII. <u>CONTINUING JURISDICTION</u>

The Court shall retain jurisdiction to enforce the terms and conditions and achieve the objectives of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction, modification, implementation or execution of this Decree.

## XXIV. CONTINGENT LIABILITY OF STATE OF OHIO

Section 309(e) of the Act, 33 U.S.C. § 1319(e), requires that the State be a Party to this action insofar as it may be liable in the event the laws of Ohio prevent Defendants from raising revenues needed to comply with this Decree. The State of Ohio, by signing this Decree, certifies that the current laws of the State do not prevent Defendants from raising revenues needed to comply with this Decree. Except as required by Section 309(e) of the Act, the State of Ohio shall have no liability under this Consent Decree.

## XXV. TERMINATION

A. Upon motion filed with the Court by the United States, State or Defendant, the Court may terminate the terms of this Consent Decree after each of the following has occurred:

1. Defendants have achieved compliance with all provisions contained in this Consent Decree, including the completion of any additional remedial measures determined to be necessary pursuant to Paragraph VI.D, and subsequently have maintained compliance with each and every provision of this Consent Decree for twelve consecutive months;

2. Defendants have paid all penalties and other monetary obligations due hereunder and no penalties or other monetary obligations due hereunder are outstanding or owed to the United States or the State;

3. Defendants have certified compliance pursuant to Paragraphs A and B above to the Court and all Parties; and

4. The United States and the State, within forty-five (45) days of receiving such certification from the Defendants has not contested, in writing, that such compliance has been achieved.

B. If the United States and/or the State dispute(s) Defendants' full compliance, this Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court.

**XXVI. PUBLIC COMMENT**

This Consent Decree shall be lodged with the Court for a period of not less than 30 days, for public notice and comment in accordance with the provisions of 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments received disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper or inadequate. Defendants hereby agree not to withdraw from, oppose entry of, or to challenge any provision of this Consent Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Consent Decree.

**XXVII. SIGNATORIES/SERVICE**

A. This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

B. The Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, on behalf of the United States, the Ohio Assistant Attorney General signing this Decree, on behalf of the State, and the undersigned representatives of the Defendants each certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

C. Each Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that Settling Defendants need not file an answer to the complaints in this action unless or until the Court expressly declines to enter this Consent Decree.

SO ORDERED, this _____ day of ______________ 2002.

______________________________
United States District Judge

THE UNDERSIGNED Parties enter into this Consent Decree, subject to the public notice requirements of 28 C.F.R. § 50.7, and submit it to the Court for entry.

FOR THE UNITED STATES OF AMERICA:

Tom Sansonetti

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural
Resources Division
U.S. Department of Justice

Leslie Allen

LESLIE ALLEN
Senior Attorney
Environmental Enforcement Section
Environmental and Natural
Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-4114

GREGORY G. LOCKHART
United States Attorney for the
Southern District of Ohio

By: Donetta D. Wiethe

DONETTA D. WIETHE
Assistant United States Attorney
221 E. 4th Street
Atrium II, Suite 400
Cincinnati, Ohio 45202
513-684-3711

THOMAS V. SKINNER
Regional Administrator
U.S. Environmental Protection
Agency, Region V

GARY PRICHARD
Associate Regional Counsel
U.S. Environmental Protection
Agency, Region V

SYLVIA K. LOWRANCE
Acting Assistant Administrator
for Enforcement and Compliance
Assurance
U.S. Environmental Protection
Agency

JOSEPH G. THEIS
Attorney-Advisor
Office of Enforcement and
Compliance Assurance
U.S. Environmental Protection
Agency

FOR STATE OF OHIO:
BETTY D. MONTGOMERY
Attorney General of Ohio

By: ______________________________
MARGARET A. MALONE
Assistant Attorney General
Environmental Enforcement Section
30 East Broad Street
Columbus, Ohio 43266-0410

FOR BOARD OF COUNTY COMMISSIONERS
OF HAMILTON COUNTY, OHIO

By: ________________________________
DAVID J. KRINGS
COUNTY ADMINISTRATOR

AGENT FOR SERVICE OF PROCESS:

PETER MURPHY
Gibson, Dunn and Crutcher
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

FOR CITY OF CINCINNATI, OHIO

Date: 2/13/2002

By: Timothy M. Riordan
(Name) Acting City Manager

(Name) City Solicitor

(Name) Deputy City Solicitor

AGENT FOR SERVICE OF PROCESS:

PETER MURPHY
Gibson, Dunn and Crutcher
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306