

FILED
Terry Deinlein, Acting Clerk
Cincinnati, Ohio

03 DEC -1 PM 1:48

COURT
DIST OHIO
CINCINNATI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

UNITED STATES OF AMERICA, ET AL.,    :    **CASE NO. C-1-02-107**

          Plaintiffs,        :

                        :    Judge S. Arthur Spiegel

              v.           :    Magistrate Judge Timothy S. Hogan

                        :

BOARD OF COUNTY COMMISSIONERS    :
OF HAMILTON COUNTY, OHIO, ET AL.    :

                        :

          Defendants.      :

                        :

## MOTION FOR STATUS CONFERENCE

Plaintiff-Intervenors Sierra Club and Marilyn Wall respectfully move the Court to convene a status conference for the purposes of evaluating the 60-day public comment period and scheduling appropriate hearings on the pending decrees.  A Memorandum in Support is attached.

                                        Respectfully submitted,

D. David Altman Co., L.P.A.                Law Office of Albert J. Slap

BY:_____           BY: *Albert J. Slap* by DDA per phone authorization

D. David Altman (0021457)                Albert J. Slap
Amy J. Leonard (0040611)                20 Erie Ave.
Lance D. Himes (0069112)                Glendale, OH 45246
15 East 8th St., Suite 200W              (513)- 771-7800
Cincinnati, OH 45202                    (513)-772-6506 (fax)
(513)-721-2180                          albertslap@slaplaw.com
(513)-721-2299 (fax)
daltman@one.net

## <u>MEMORANDUM IN SUPPORT</u>

Plaintiff-Intervenors Sierra Club and Marilyn Wall ("Sierra Club") file this Memorandum in Support of their Motion for Status Conference to inform the Court about the extent of the opportunity for public input on the Second or Global Consent Decree ("Second Decree") and to provide the Court with the Sierra Club's comments on the Second Decree. These comments (attached as Exhibit A) have recently been submitted to the Cincinnati City Council and the Hamilton County Commissioners. Additional paragraph-by-paragraph, technical comments on the Second Consent Decree are being prepared and will be submitted shortly.

To recap, when the parties had their last status conference in September, 2003, at the Defendants' request this Court delayed the filing deadline so that the local governments could conduct their own 60-day public comment period before deciding whether to sign the Second Decree. The Defendants stated that the 60-day delay would give the local units a chance to hear from the citizens of Hamilton County about the Decree (which was not done before signing the IPCD), and to consider these public comments.

During this 60-day period, Sierra Club members have attended all events open to the public and have made observations about the public participation process that the MSD, the County Commissioners, and the City Council conducted. The Sierra Club notes that there has been very little in the way of citizen involvement and very few comments on this important public issue, even though the Consent Decree has significant implications for the environmental and economic health of our region for the next half-century and beyond. Only a few of the thousands of sewage-in-basement victims ever

knew about the public meetings or hearings that were held, although the MSD knows their names, addresses and telephone numbers. Only a handful of other citizens participated or testified at all.

The County held one public meeting on the Second Decree on November 19, 2003. That meeting was either advertised on November 10 or 12th. In addition to three Sierra Club members, there was only one other citizen at that meeting. The total amount of time allotted to Sierra Club and its members to testify at the County hearing was approximately 9 minutes.

The Sierra Club does not believe the lack of participation is caused by a lack of public concern over sewer issues. The Sierra Club held several public forums since September 2003 at the Holy Family Church in Lower Price Hill and other meetings with sewage-in-basement victims in their neighborhoods. At those meetings, which were attended by more than 150 members of the public, scores of sewage-in-basement victims spoke out on videotape and told their stories of how their basements, their property values and their lives have been devastated by the inadequacies of MSD sewage conveyance systems. At the first meeting, Commissioner Portune and City Council persons Cranley, Crowley, and Cole were in attendance. Sierra Club also prepared a videotape of interviews with sewage-in-basement victims, a brief portion of which was shown to this Court in September. During the process of holding public forums for sewage-in-basement victims, Sierra Club compiled additional materials on the problem and proposed solutions and made that information available to City Council and the Commissioners. This information was also useful to the Sierra Club in developing its comments on the Second Decree. The Sierra Club was, however, unable to present the

information provided by the sewage-in-basement victims to City Council and the County Commission because it was not allotted sufficient time during the official public hearings.

In light of the status of this participation, Sierra Club requests that this Court schedule a formal status conference to plan an evidentiary hearing on the IPCD and the Second Decree. Sierra Club expects that the Second Decree will be signed and accepted by EPA (as was the IPCD) without incorporating any additional recommendations suggested by the Sierra Club in the attached comments.

As Sierra Club has previously indicated to this Court, the Sierra Club was systematically excluded from the negotiation process during the period of time prior to the IPCD being filed and subsequently during the negotiation of the Second Decree. Several "informational" meetings were held with Sierra Club, but there were no negotiating sessions that included Sierra Club.  On July 22, 2003, the Sierra Club submitted a set of comments to the EPA on the proposed Second Decree, although the Club had not been provided with a draft copy of the Second Decree.  In those comments, the Club outlined a sewage-in-basement victims' compensation, education and emergency response program, which is similar to the one that is contained in the proposed Second Decree (a copy of the Sierra Club 7/22/03 comments are attached as Exhibit B). The MSD made this proposal for the plan after the Status Conference on September 3, 2003.

The Sierra Club has asserted publicly that the Decrees should be rejected; but, at the very least, a Court-conducted hearing on both Decrees will be the only opportunity for an objective third-party to take a close look at the Decrees' provisions and the

problems associated with them and to determine the if the Decrees are fair, adequate, in compliance with substantive law and in the public interest.

Additionally, the Sierra Club requests that certain issues connected with the 1985 Supplemental Environmental Projects Escrow Account need to be promptly addressed. That account was established pursuant to another Clean Water Consent Decree between Hamilton County and the federal EPA (C-1-85-0693). This Court raised <u>sua sponte</u> the use of these funds in resolving the present litigation and sought to understand what happened to this money, since it was set aside in 1985. In the 1985 Decree, $750,000 was to have been set aside for "environmentally beneficial projects." As stated in Para. XVIII of the Decree: the "identity of the environmentally beneficial projects and associated expenditures and a proposed schedule for their implementation shall be submitted to the U.S. EPA within 90 days from the date of the entry of this order." It is clear that the escrow monies have not been used for environmentally beneficial projects in the nineteen years that the funds have been on deposit. Mr. Allen states that the funds set aside now total approximately $1.1 million.

This information led Sierra Club to inquire into the fiduciary obligations of the County during this period of time. Sierra Club consulted with economist Dr. Michael Kavanaugh, who has previously submitted affidavits to the Court in this case. Assuming the account has a current balance of $1.1 million, then the MSD earned an average of 2.2% over a period of 18 years. US securities, depending on maturity, averaged 5-6% during the same period. According to Dr. Kavanaugh, the corpus of $750,000 should have grown to $1.8 million. The Sierra Club respectfully requests that the MSD promptly provide to the Court a proper financial accounting of what happened to the money during

this period of time. The Sierra Club also recommends, as noted in the comments in

Exhibit A, that this money should be turned over to an independent Special Master who

would report directly to the Court as to its future use for environmentally beneficial

projects, including assistance for sewage-in-basement victims.

These issues should be addressed at the requested status conference.

Respectfully submitted,

Law Office of Albert J. Slap

DATE:    December 1, 2003

By: _____
    Albert J. Slap, Esq.
    Ohio Atty. Reg. 0074579
    20 Erie Ave.
    Glendale, OH 45246
    513-771-7800
    513-772-6506 (fax)

D. David Altman Co., LPA

By: _____
    D. David Altman, Esq.
    Ohio Atty. Reg. 0021457
    15 E. 8th St., Suite 200W
    Cincinnati, OH 45202
    513-721-2180
    513-721-2299 (fax)