IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| THE STATE OF OHIO, | ) | |
| and | ) | |
| THE OHIO RIVER VALLEY WATER | ) | Civil Action Nos. C-1-02-107 and 108 |
| SANITATION COMMISSION, | ) | |
| | ) | Judge S. Arthur Spiegel |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS, HAMILTON | ) | |
| COUNTY, OHIO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

JOINT AMENDED COMPLAINT

The United States of America, by authority of the Attorney General of the United States, and

on behalf of the Administrator of the United States Environmental Protection Agency ("U.S. EPA");

the State of Ohio ("State"), by the authority of the Attorney General of Ohio, Jim Petro, at the

written request of the Director of the Ohio Environmental Protection Agency ("Ohio EPA"); and the

Ohio River Valley Water Sanitation Commission ("ORSANCO") allege the following:

NATURE OF ACTION

1.     This is a civil action pursuant to Sections 309(b) and (d) and 505 of the Clean Water

Act ("CWA"), 33 U.S.C. §§ 1319(b), (d), 1365, and pursuant to Ohio Rev. Code Chapter 6111, for

injunctive relief and assessment of civil penalties against the Board of County Commissioners,

Hamilton County, Ohio, and the City of Cincinnati, Ohio (collectively, "Defendants"), for the

discharge of pollutants in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a). Defendants

have violated Section 301 of the CWA, 33 U.S.C. § 1311, by failing to meet the limitations and

conditions contained in a National Pollutant Discharge Elimination System ("NPDES") permit

issued by the Director under Section 402(a) of the CWA, 33 U.S.C. § 1342, and Ohio Rev. Code

Section 611.03, and by discharging pollutants without NPDES permit authority. The United States

also brings this action pursuant to Section 504 of the CWA, 33 U.S.C. § 1364, for injunctive relief

to address an imminent and substantial endangerment resulting from the release of sewage into

buildings and other areas.

2.      On February 15, 2002, the State of Ohio filed a civil complaint for injunctive relief

against the Defendants, pursuant to Section 309 and 505 of the Clean Water Act ("CWA"), 33

U.S.C. § 1319 and 1365, and Ohio Rev. Code Chapter 6111. The State of Ohio's complaint was

given the case number 1:02-cv-00108. On March 7, 2002, the Court consolidated the State's

complaint with 1:02-cv-00107 and terminated case number 1:02-cv-00108. To date, Defendants

have not served a responsive pleading to the State of Ohio's complaint as initially filed. The State of

Ohio seeks injunctive relief and civil penalties against the Defendants for the discharge of pollutants

in violation of the CWA and Ohio Rev. Code Chapter 6111 and for violation of the terms and

conditions of NPDES permits .

3.      ORSANCO has been joined as a party to this action pursuant to Rule 15(a) of the

Federal Rules of Civil Procedure because, to date, the Defendants have not served a responsive

pleading. Fed. R. Civ. P. 15(a). ORSANCO seeks injunctive relief against the Defendants for the

discharge of pollutants in violation of the Ohio River Valley Water Sanitation Compact (the

"Compact") and ORSANCO's Pollution Control Standards promulgated thereunder.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to Sections 309(b), 504(a), and 505 of the CWA, 33 U.S.C. §§ 1319(b), 1364(a), 1365, and 28 U.S.C. §§ 1331, 1345, and 1355.  This Court has jurisdiction over the claims of the State of Ohio asserted under Ohio Rev. Code Chapter 6111 pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).  This Court has jurisdiction over the claims of ORSANCO pursuant to the Compact, Articles VI and IX, Ohio Rev. Code Section 6113.03, and 33 U.S.C. § 1365(b)(1)(B).

5.      Venue is proper in the Southern District of Ohio pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and  28 U.S.C. §§ 1391(b) and (e), and 1395(a), because the Defendants are located in this District and the causes of action alleged in this complaint arose in this District. Venue in this District also is proper under the Compact, Article IX, and under 28 U.S.C. § 1367(a).

6.      As a signatory to this Complaint, the State has actual notice of the commencement of this action.  33 U.S.C. § 1319(b).

7.      Authority to bring this civil action is vested in the Attorney General of the United States pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.  Ohio Rev. Code Sections 6111.07 and 6111.09 authorize the Attorney General of Ohio to commence a civil action for injunctive relief and civil penalties.

## THE PARTIES

8.      Plaintiff, United States of America, is acting at the request and on behalf of the

3

Administrator of the Environmental Protection Agency ("Administrator").

9.     Plaintiff, State of Ohio, is acting at the request and on behalf of the Director of the Ohio Environmental Protection Agency ("Director"). The State of Ohio is a "person" as defined in Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and a citizen for purposes of Section 505 of the CWA, 33 U.S.C. § 1365.

10.     Plaintiff, ORSANCO, is a congressionally-approved Interstate Agency, created in 1948 by virtue of the Compact and vested with regulatory authority to prevent pollution from injuring the Ohio River and its tributaries. ORSANCO is acting pursuant to its authority under the Compact, Articles VI and IX, and pursuant to federal and state statutory authority conferred by 33 U.S.C. §§ 1365(b)(1)(B), 1370, and Ohio Rev. Code Section 6113.03.

11.     Defendant Board of Commissioners of Hamilton County ("the Board") is located in Hamilton County, Ohio, and is the duly authorized governing body of Hamilton County pursuant to the laws of the State of Ohio. The Board is a political subdivision created under Chapter 3 of the Ohio Revised Code with the power to sue and be sued. Pursuant to the laws of the State of Ohio, authority and control over the sewer system within Hamilton County (including, but not limited to, the sanitary sewer system, the combined sewer system, and the wastewater treatment plants) is vested in the Board.

12.     The Board has established the Metropolitan Sewer District of Greater Cincinnati ("MSD"), a county sewer district established pursuant to Chapter 6117 of the Ohio Revised Code, and acts as the principal of MSD, including maintenance of funding authority for MSD. Prior court decisions in Ohio hold that MSD cannot be sued in its own name, and thus, MSD is not made a Party to this action.

4

13.    Defendant City of Cincinnati ("the City") is a chartered municipal corporation, organized and existing under the laws of the State of Ohio and located in Hamilton County, Ohio. Pursuant to an agreement with the Board, and subject to the pertinent provisions of Ohio law, the City serves as the agent for the Board in the management and operation of MSD, which includes the operations and maintenance of the sanitary sewer system, the combined sewer system, and the wastewater treatment plants.

14.    The Board and the City (hereinafter "Defendants") are both "municipalities" and "persons" within the meaning of Section 502(4) and (5) of the CWA, 33 U.S.C. § 1362(4) and (5).


## STATUTORY BACKGROUND

15.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of pollutants" into navigable waters by any person except, *inter alia*, in compliance with a NPDES permit issued by U.S. EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

16.    Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority, U.S. EPA or an authorized state, shall, in issuing NPDES permits, prescribe the conditions for such permits as it determines are necessary to carry out the provisions of the CWA.

17.    Section 402(a) of the CWA, 33 U.S.C. § 1342(a), also provides that the Administrator may issue an NPDES permit that authorizes the discharge of any pollutant directly into navigable waters of the United States, but only in compliance with the applicable requirements of Section 301 of the CWA, 33 U.S.C. § 1311, and such other conditions as the Administrator determines are necessary to carry out the provisions of the CWA.

18.    At all times relevant to this complaint, Ohio has been and continues to be authorized by the Administrator to implement the NPDES permit program for discharges into navigable waters within its jurisdiction pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

19.    Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

20.    Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty of up to $25,000 per day for each violation occurring prior to January 31, 1997. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410, enacted October 5, 1990; 104 Stat. 890), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-134, enacted April 26, 1996; 110 Stat. 1321), EPA may seek civil penalties of up to $27,500 per day for each violation occurring on or after January 31, 1997.

21.    Section 504(a) of the CWA, 33 U.S.C. § 1364(a), provides as follows, in pertinent part:

(a) Emergency powers

Notwithstanding any other provision of this chapter, the Administrator upon receipt of evidence that a pollution source or combination of sources is presenting an imminent and substantial endangerment to the health of persons or to the welfare of persons where such endangerment is to the livelihood of such persons . . . , may bring suit on behalf of the United States in the appropriate district court to immediately restrain any person causing or

6

contributing to the alleged pollution to stop the discharge of pollutants causing or
contributing to such pollution or to take such other action as may be necessary.

22.     Pursuant to Sections 309 and 505 of the CWA, 33 U.S.C. §§ 1309 and 1365, this

court may grant the State injunctive relief, for violations of Section 301 of the CWA, 33 U.S.C. §

1311, and the terms and conditions of an NPDES permit issued under Section 402 of the CWA, 33

U.S.C. § 1342.

23.     Ohio Revised Code Section 6111.04 prohibits any person from placing or discharging

or causing to be placed or discharged into "waters of the state" any "sewage", "industrial waste" or

"other waste", as those terms are defined under Ohio Rev. Code Section 6111.01, except in

accordance with the terms of an NPDES permit issued by the Director of Ohio EPA.  Ohio Rev.

Code Section 6111.07 prohibits any person from violating Ohio Rev. Code Sections 6111.01

through 6111.08 or any rule or permit, including the terms and conditions of an NPDES permit.

24.     Ohio Revised Code Section 6111.09 provides that any person who violates Ohio Rev.

Code Section 6111.07 shall pay a civil penalty of not more than ten thousand dollars per day for

each violation of Ohio Rev. Code Sections 6111.04 and/or 6111.07.

25.     Article VI of the Compact and Ohio Rev. Code Section 6113 authorize ORSANCO

to adopt, prescribe and promulgate rules, regulations and standards for the treatment and limitation

of effluent discharges into the Ohio River and its tributaries, which flow between or through the

States of Indiana, West Virginia, Ohio, New York, Illinois, Kentucky, Pennsylvania and Virginia.

26.     Article VI of the Compact states in relevant part that:

All sewage from municipalities or other political subdivisions, public or private
institutions, or corporations, discharged or permitted to flow into these portions of the
Ohio River and its tributary waters which form boundaries between, or are

contiguous to, two or more signatory states, or which flow from one signatory state into another signatory state, shall be so treated, within a time reasonable for the construction of the necessary works, as to provide for substantially complete removal of settleable solids, and the removal of not less than forty-five per cent of the total suspended solids . . . .

Compact, Art. VI; Ohio Rev. Code § 6113.01 (2003).

27.     Article VI of the Compact further states in relevant part:

All sewage or industrial wastes discharged or permitted to flow into tributaries of the aforesaid waters situated wholly within one state shall be treated to that extent, if any, which may be necessary to maintain such waters in a sanitary and satisfactory condition at least equal to the condition of the waters of the interstate stream immediately above the confluence.

Compact, Art. VI; Ohio Rev. Code § 6113.01

28.     Pursuant to the Compact and Ohio Rev. Code Section 6113.01, ORSANCO has adopted and promulgated Pollution Control Standards for treatment and limitation of effluent discharged into the Ohio River (the "ORSANCO Pollution Control Standards"). ORSANCO possesses enforcement authority pursuant to Article IX of the Compact.

29.     The Compact and ORSANCO's Pollution Control Standards carry the same force as a federal law or regulation.

30.     Section 510 of the CWA, 33 U.S.C. § 1370, recognizes ORSANCO's authority to enforce standards and limitations on discharges of pollutants into navigable waters that come within its regulatory jurisdiction.

31.     ORSANCO also is a "citizen" as defined under Section 505 of the CWA, 33 U.S.C. § 1365(g). As such, ORSANCO may intervene as of right in the instant action brought by the United States and the State of Ohio to enforce Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342. See 33 U.S.C. § 1365 (b)(1)(B).

GENERAL ALLEGATIONS

32.     At all times relevant to this complaint, the Defendants have discharged and continue

to discharge "pollutants" within the meaning of Section 502(6) and (12) of the CWA, 33 U.S.C. §

1362(6) and (12), from the Defendants' wastewater treatment plants and sewer system through

"point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14) into the

Ohio River, the Great Miami River, the Little Miami River, the Mill Creek, Sycamore Creek and

other tributaries.

33.     The Ohio River, the Great Miami River, the Little Miami River, the Mill Creek,

Sycamore Creek and other tributaries into which the Defendants discharge pollutants are all

"navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7) and

"waters of the state" within the definition of Ohio Rev. Code Section 6111.01.

34.     On or about July 14, 1992, the Ohio Environmental Protection Agency ("Ohio

EPA"), under the authority of Section 402(b) of the CWA, 33 U.S.C. § 1342(b),  and Ohio Rev.

Code Section 6111.03 issued Ohio EPA Permit No. 1PX00022*AD (the "1992 CSO Permit") to the

Board.  The 1992 CSO Permit became effective on August 1, 1992, and expired under its own terms

on July 28, 1997.  However, pursuant to Ohio Rev. Code Section 119.06 and Ohio Admin. Code

3745-33-04(D), the conditions in the 1992 CSO Permit continue in force until the effective date of

any new NPDES permit that Ohio EPA may issue for the Board's CSOs.

35.     The 1992 CSO Permit authorized the Board to discharge pollutants from 233

"combined sewer overflows" ("CSOs") at locations specified in Part II.D of the 1992 CSO Permit,

subject to certain limitations and conditions.  These limitations and conditions included, but were

not limited to, the "General Effluent Limitations" set forth at Part III.2 of the 1992 CSO Permit, which provides that:

The Effluent shall, at all times, be free of substances:

A.  In amounts that will settle to form putrescent, or otherwise objectionable, sludge deposits; or that will adversely affect aquatic life or water fowl;

B.  Of an oily, greasy, or surface-active nature, and of other floating debris, in amounts that will form noticeable accumulations of scum, foam or sheen;

C.  In amounts that will alter the natural color or odor of the receiving water to such degree as to create a nuisance;

D.  In amounts that either singly or in combination with other substances are toxic to human, animal, or aquatic life;

E.  In amounts that are conducive to the growth of aquatic weeds or algae to the extent that such growths become inimical to more desirable forms of aquatic life, or create conditions that are unsightly, or constitute a nuisance in any other fashion;

F.  In amounts that will impair designated instream or downstream water uses.

36.     Sections I.A.1, I.A.2, I.A.3, I.A.4, I.A.6, I.A.7, and II.E of the 1992 CSO Permit provide that the Board is only authorized to discharge from the CSO locations specified in the permit "during wet weather periods when the flow in the sewer system exceeds the capacity of the sewer system."

37.     Section II.E of the 1992 CSO Permit provides that:

The sewer system shall be operated/maintained in such a manner as necessary to minimize impacts to the receiving streams resulting from combined sewer overflows (CSO's).  The

permittee shall utilize the following technology to minimize such impacts:

1) provide proper operation and maintenance programs for the sewer system and combined sewer overflow points;

2) provide maximum use of the collection system for storage prior to allowing overflows;

3) review and modify pretreatment program;

4) maximize flow to the POTW for treatment;

5) prohibit dry weather overflows; and

6) control solid and floatable materials in CSO discharge.

38.     The Mill Creek Wastewater Treatment Plant (the "Mill Creek WWTP") is located at 1600 Gest Street, in the City of Cincinnati, Hamilton County, Ohio. On or about June 15, 1993, Ohio EPA, under the authority of Section 402(b) of the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No. 1PM00001*HD (the "1993 Mill Creek WWTP Permit") to the Board. The 1993 Mill Creek WWTP Permit became effective on July 1, 1993. The 1993 Mill Creek WWTP Permit authorized the Board to discharge pollutants into the Ohio River and the Mill Creek from the Mill Creek WWTP through Outfalls 1PM00001002 and 1PM00001004, in accordance with effluent limitations, sampling requirements and other terms and conditions of the permit.

39.     On or about April 25, 1994, Ohio EPA, under the authority of Section 402(b) of the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No. 1PM00001*ID (the "1994 Modification to the Mill Creek WWTP Permit") to the Board. The 1994 Modification to the Mill Creek WWTP Permit became effective on July 1, 1994.

40.     On or about January 12, 1995, Ohio EPA, under the authority of Section 402(b) of

the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No.

1PM00001*JD (the "1995 Modification to the Mill Creek WWTP Permit") to the Board. The 1995

Modification to the Mill Creek WWTP Permit became effective on March 1, 1995.

41.    The 1993 Mill Creek WWTP Permit expired under its own terms on October 1, 1997.

However, pursuant to Ohio Rev. Code Section 119.06 and Ohio Admin. Code 3745-33-04(D), the

conditions in the 1993 Mill Creek WWTP Permit, as modified by the 1994 and 1995 Modifications

to the Mill Creek WWTP Permit, continue in force until the effective date of any new NPDES

permit that Ohio EPA may issue for the Mill Creek WWTP.

42.    The Muddy Creek Wastewater Treatment Plant (the "Muddy Creek WWTP") is

located at 6125 River Road, in the City of Cincinnati, Hamilton County, Ohio. On or about

September 3, 1993, Ohio EPA, under the authority of Section 402(b) of the CWA, 33 U.S.C. §

1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No. 1PK00006*GD (the

"1993 Muddy Creek WWTP Permit") to the Board. The 1993 Muddy Creek WWTP Permit became

effective on October 1, 1993. The 1993 Muddy Creek WWTP Permit authorized the Board to

discharge pollutants into the Ohio River from the Muddy Creek WWTP through Outfall

1PK00006002, in accordance with effluent limitations, sampling requirements and other terms and

conditions of the permit.

43.    On or about September 29, 1994, Ohio EPA, under the authority of Section 402(b) of

the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No.

1PK00006*HD (the "1994 Modification to the Muddy Creek WWTP Permit") to the Board. The

1994 Modification to the Muddy Creek WWTP Permit became effective on December 1, 1994.

44.    On or about November 5, 1998, Ohio EPA, under the authority of Section 402(b) of

the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No.

1PK00006*ID (the "1998 Muddy Creek WWTP Permit") to the Board. The 1998 Muddy Creek

WWTP Permit became effective on December 1, 1998.

45.     The 1998 Muddy Creek WWTP Permit expired by its own terms on October 31,

2002. However, pursuant to Ohio Rev. Code Section 119.06 and Ohio Admin. Code 3745-33-

04(D), the conditions in the 1998 Muddy Creek WWTP Permit continue in force until the effective

date of any new NPDES permit that Ohio EPA may issue for the Muddy Creek WWTP.

46.     The Sycamore Creek Wastewater Treatment Plant (the "Sycamore Creek WWTP") is

located at 9273 Old Remington Road, Symmes Township, Hamilton County, Ohio. On or about

August 29, 1991, Ohio EPA, under the authority of Section 402(b) of the CWA, 33 U.S.C. §

1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No. 1PK00005*DD (the

"1991 Sycamore Creek WWTP Permit") to the Board. The 1991 Sycamore Creek WWTP Permit

became effective on August 29, 1991. The 1991 Sycamore Creek WWTP Permit authorized the

Board to discharge pollutants into the Ohio River from the Sycamore Creek WWTP through Outfall

1PK00005001, in accordance with effluent limitations, sampling requirements and other terms and

conditions of the permit.

47.     On or about September 29, 1995, Ohio EPA, under the authority of Section 402(b) of

the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No.

1PK00005*FD (the "1995 Sycamore Creek WWTP Permit") to the Board. The 1995 Sycamore

Creek WWTP Permit became effective on November 1, 1995.

48.     On or about April 5, 1996, Ohio EPA, under the authority of Section 402(b) of the

CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No.

1PK00005*GD (the "1996 Modification to the Sycamore Creek WWTP Permit") to the Board. The1996 Modification to the Sycamore Creek WWTP Permit became effective on June 1, 1996.

49.    On or about February 14, 1997, Ohio EPA, under the authority of Section 402(b) of the CWA and Ohio Rev. Code Section 6111.03, 33 U.S.C. § 1342(b), issued Ohio EPA Permit No. 1PK00005*HD (the "1997 Modification to the Sycamore Creek WWTP Permit") to the Board. The1997 Modification to the Sycamore Creek WWTP Permit became effective on March 31, 1997.

50.    The 1995 Sycamore Creek WWTP Permit, as modified by the 1996 and 1997 Modifications to the Sycamore Creek WWTP Permit, expired by its own terms on March 31, 2000. However, pursuant to Ohio Rev. Code Section 119.06 and Ohio Admin. Code 3745-33-04(D), the conditions in the 1995 Sycamore Creek WWTP Permit, as modified by the 1996 and 1997 Modifications to the Sycamore WWTP Permit, continue in force until the effective date of any new NPDES permit that Ohio EPA may issue for the Sycamore Creek WWTP.

51.    The Little Miami River Wastewater Treatment Plant (the "Little Miami River WWTP") is located at 225 Wilmer Avenue, Cincinnati, Hamilton County, Ohio. In 1993 , Ohio EPA, under the authority of Section 402(b) of the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No. 1PL00000*JD (the "1993 Little Miami WWTP Permit") to the Board. The 1993 Little Miami WWTP Permit became effective on October 1, 1993. The 1993 Little Miami WWTP Permit authorized the Board to discharge pollutants into the Ohio River from the Little Miami River WWTP through Outfall 1PL00000001 in accordance with effluent limitations, sampling requirements and other terms and conditions of the permit. The 1993 Little Miami WWTP Permit expired under its own terms on April 1, 1998. However, pursuant to Ohio Rev. Code Section 119.06 and Ohio Admin. Code 3745-33-04(D), the conditions in the 1993

14

Little Miami WWTP Permit continued in force until the effective date of the renewal NPDES permit for the Little Miami WWTP. The renewal NPDES permit for the Little Miami WWTP, issued by Ohio EPA under the authority of Section 402(b) of the CWA, 33 U.S.C. Section 1342(b) and Ohio Rev. Code Section 6111.03, to the Board became effective on December 12, 1998. This NPDES permit, Ohio EPA Permit No. 1PL00000*KD, (the " 1998 Little Miami WWTP Permit") authorized the Board to discharge pollutants into the Ohio River from the Little Miami River WWTP through Outfall 1PL00000001 in accordance with effluent limitations, sampling requirements and other terms and conditions of the permit. The 1998 Little Miami WWTP Permit expired under its own terms on October 31, 2002. However, pursuant to Ohio Rev. Code Section 119.06 and Ohio Admin. Code 3745-33-04(D), the conditions in the 1998 Little Miami WWTP Permit continue in force until the effective date of any new or renewal NPDES permit that Ohio EPA may issue for the Little Miami WWTP.

52.    The Polk Run Wastewater Treatment Plant (the "Polk Run WWTP") is located at 9744 East Kemper Road, Loveland, Hamilton County, Ohio. In 1989 Ohio EPA, under the authority of Section 402(b) of the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No. 1PK00019*AD (the "1989 Polk Run WWTP Permit") to the Board. The 1989 Polk Run WWTP Permit became effective on September 28, 1989. The 1989 Polk Run WWTP Permit authorized the Board to discharge pollutants into an unnamed tributary of the Little Miami River from the Polk Run WWTP through Outfall 1PK00019001 in accordance with effluent limitations, sampling requirements and other terms and conditions of the permit. The 1989 Polk Run WWTP Permit expired under its own terms on September 25, 1994. However, pursuant to Ohio Rev. Code Section 119.06 and Ohio Admin. Code 3745-33-04(D), the conditions in the 1989 Polk

Run WWTP Permit continued in force until the effective date of the renewal NPDES permit for the

Polk Run WWTP.  The renewal NPDES permit for the Polk Run WWTP, issued by Ohio EPA in

1995 under the authority of Section 402(b) of the CWA, 33 U.S.C. Section 1342(b) and Ohio Rev.

Code Section 6111.03, to the Board became effective on November 1, 1995.  This NPDES permit,

Ohio EPA Permit No. 1PK00019*BD (the " 1995 Polk Run WWTP Permit") authorized the Board

to discharge pollutants into an unnamed tributary of the Little Miami River from the Polk Run

WWTP through Outfall 1PK00019001 in accordance with effluent limitations, sampling

requirements and other terms and conditions of the permit.  In 1996 the Ohio EPA, under the

authority of Section 402(b) of the CWA, 33 U.S.C. Section 1342(b) and Ohio Rev. Code Section

6111.03, issued to the Board a modification to the 1995 Polk Run WWTP Permit, Ohio EPA Permit

No. 1PK00019*CD (the "1996 Modification to the Polk Run WWTP Permit") which became

effective June 1, 1996.  In 1997 the Ohio EPA, under the authority of Section 402(b) of the CWA,

33 U.S.C. Section 1342(b) and Ohio Rev. Code Section 6111.03, issued to the Board a further

modification to the 1995 Polk Run WWTP Permit and the 1996 Modification, Ohio EPA Permit No.

1PK00019*DD (the "1997 Modification to the Polk Run WWTP Permit) which became effective

March 31, 1997 and *inter alia* extended the length of the NPDES permit.  The 1995 Polk Run

WWTP Permit, as modified by the 1996 and 1997 Modifications, expired under its own terms on

March 31, 2000.  However, pursuant to Ohio Rev. Code Section 119.06 and Ohio Admin. Code

3745-33-04(D), the conditions in the 1995 Polk Run WWTP Permit as modified by the 1996 and

1997 Modifications continued in force until the effective date of the renewal NPDES permit for the

Polk Run WWTP.  The renewal NPDES permit for the Polk Run WWTP, issued by Ohio EPA in

2001 under the authority of Section 402(b) of the CWA, 33 U.S.C. Section 1342(b) and Ohio Rev.

Code Section 6111.03, to the Board became effective on August 1, 2001. This NPDES permit, Ohio EPA Permit No. 1PK000019*ED (the " 2001 Polk Run WWTP Permit") authorized the Board to discharge pollutants into an unnamed tributary of the Little Miami River from the Polk Run WWTP through Outfall 1PK00019001 in accordance with effluent limitations, sampling requirements and other terms and conditions of the permit  The 2001 Polk Run WWTP Permit is by its terms in effect until October 31, 2004

     53.     The Taylor Creek Wastewater Treatment Plant (the "Taylor Creek WWTP") is located at 6975 East Miami River Road, Cincinnati, Hamilton County, Ohio. In 1993 Ohio EPA, under the authority of Section 402(b) of the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03, issued Ohio EPA Permit No. 1PK00015*AD (the "1993 Taylor Creek WWTP Permit"). The 1993 Taylor Creek WWTP Permit became effective on October 1, 1993. The 1993 Taylor Creek WWTP Permit authorized the Board to discharge pollutants into the Great Miami River from the Taylor Creek WWTP through Outfall 1PK00015001 in accordance with effluent limitations, sampling requirements and other terms and conditions of the permit. The 1993 Taylor Creek WWTP Permit, expired under its own terms on April 1, 1998. However, pursuant to Ohio Rev. Code Section 119.06 and Ohio Admin. Code 3745-33-04(D), the conditions in the 1993 Taylor Creek WWTP Permit continued in force until the effective date of the renewal NPDES permit for the Taylor Creek WWTP. The renewal NPDES permit for the Taylor Creek WWTP, issued by Ohio EPA in 1998 under the authority of Section 402(b) of the CWA, 33 U.S.C. Section 1342(b) and Ohio Rev. Code Section 6111.03, to the Board became effective on December 1, 1998. This NPDES permit, Ohio EPA Permit No. 1PK00015*BD (the " 1998 Taylor Creek WWTP Permit") authorized the Board to discharge pollutants into an unnamed tributary of the Great Miami River

from the Taylor Creek WWTP through Outfall 1PK00015001 in accordance with effluent

limitations, sampling requirements and other terms and conditions of the permit.  The 1998 Taylor

Creek WWTP Permit, expired under its own terms on October 31, 2002.  However, pursuant to

Ohio Rev. Code Section 119.06 and Ohio Admin. Code 3745-33-04(D), the conditions in the 1998

Taylor Creek WWTP Permit continued in force until the effective date of the renewal NPDES

permit for the Taylor Creek WWTP.  The renewal NPDES permit for the Taylor Creek WWTP,

issued by Ohio EPA in 2003 under the authority of Section 402(b) of the CWA, 33 U.S.C. Section

1342(b) and Ohio Rev. Code Section 6111.03, to the Board became effective on July 1, 2003.  This

NPDES permit, Ohio EPA Permit No. 1PK00015*CD (the "2003 Taylor Creek WWTP Permit")

authorized the Board to discharge pollutants into an unnamed tributary of the Great Miami River

from the Taylor Creek WWTP through Outfall 1PK00015001 in accordance with effluent

limitations, sampling requirements and other terms and conditions of the permit.  The 2003 Taylor

Creek WWTP Permit is by its terms in effect until June 20, 2008.

54.     The Indian Creek Wastewater Treatment Plant (the "Indian Creek WWTP") is

located at Harbor Drive, North Bend, Hamilton County, Ohio. In 1989 Ohio EPA, under the

authority of Section 402(b) of the CWA, 33 U.S.C. § 1342(b) and Ohio Rev. Code Section 6111.03,

issued Ohio EPA Permit No. 1PH00023*DD (the "1989 Indian Creek WWTP Permit") to the

Board.  The 1989 Indian Creek WWTP Permit became effective on July 28, 1989.  The 1989 Indian

Creek WWTP Permit authorized the Board to discharge pollutants into the Ohio River from the

Indian Creek WWTP through Outfall 1PH00023001 in accordance with effluent limitations,

sampling requirements and other terms and conditions of the permit. The 1989 Indian Creek WWTP

Permit, expired under its own terms on July 25, 1994.  However, pursuant to Ohio Rev. Code

Section 119.06 and Ohio Admin. Code 3745-33-04(D), the conditions in the 1989 Indian Creek

WWTP Permit continued in force until the effective date of the renewal NPDES permit for the

Indian Creek WWTP.  The renewal NPDES permit for the Indian Creek WWTP, issued by Ohio

EPA in 1994 under the authority of Section 402(b) of the CWA, 33 U.S.C. Section 1342(b) and

Ohio Rev. Code Section 6111.03, to the Board became effective on December 1, 1994.  This

NPDES permit, Ohio EPA Permit No. 1PK00020*ED (the "1994 Indian Creek WWTP Permit")

authorized the Board to discharge pollutants into the Ohio River from the Indian Creek WWTP

through Outfall 1PK00020001 in accordance with effluent limitations, sampling requirements and

other terms and conditions of the permit.  In 1998, as a result of litigation, the 1994 Indian Creek

WWTP Permit was remanded to Ohio EPA and a renewal permit was reissued for the Indian Creek

WWTP.  The renewal NPDES permit for the Indian Creek WWTP, issued by Ohio EPA in 1998

under the authority of Section 402(b) of the CWA, 33 U.S.C. Section 1342(b) and Ohio Rev. Code

Section 6111.03, to the Board became effective on October 1, 1998.  This NPDES permit, Ohio

EPA Permit No. 1PK00020*ED (the " 1998 Indian Creek WWTP Permit") authorized the Board to

discharge pollutants the Ohio River from the Indian Creek WWTP through Outfall 1PK00020001 in

accordance with effluent limitations, sampling requirements and other terms and conditions of the

permit as expired under its own terms on September 27, 2003.  However, pursuant to Ohio Rev.

Code Section 119.06 and Ohio Admin. Code 3745-33-04(D), the conditions in the 1998 Indian

Creek WWTP Permit continue in force until the effective date of any new or renewal NPDES permit

that Ohio EPA may issue for the Indian Creek WWTP.

  55. At all times relevant, the NPDES permits for Defendants' Seven Major WWTPs

provided:

A. Bypassing or diverting of wastewater from the treatment works is prohibited unless:

    1. Bypass was unavoidable to prevent loss of life, personal injury, or severe property damage;

    2. There were no feasible alternatives to the bypass, such as the use of auxiliary treatment facilities, retention of untreated wastes, or maintenance during normal periods of downtime. This condition is not satisfied if adequate back up equipment should have been installed in the exercise of reasonable engineering judgement to prevent a bypass which occurred during normal periods of equipment downtime or preventative maintenance; and

    3. The permittee submitted notices as required under paragraph D. of this section.

56.    At all times relevant, the NPDES permits for Defendants' Seven Major WWTPs required Defendants to conduct sampling and analyses of the discharges from Defendants' Seven Major WWTPs in accordance with requirements specified in Defendants' NPDES permits, record and retain the results of the sampling and analyses, and report the results of the sampling and analyses to Ohio EPA.

57.    At all times relevant, the NPDES permits for Defendants' Seven Major WWTPs required Defendants, at all times, to:

maintain in good working order and operate as efficiently as possible all treatment and control facilities or systems installed or used by the permittee necessary to achieve compliance with the terms and conditions of this permit.

58.    The Defendants have violated Section 301 of the CWA, 33 U.S.C. § 1311, by failing to meet the limitations and conditions contained in their NPDES permits and by discharging

pollutants without an NPDES permit. The Defendants' discharges of pollutants without an NPDES permit and failure to meet the limitations and other terms and conditions in their NPDES permits also violated Ohio Rev. Code Sections 6111.04 and 6111.07. In addition, the Defendants' discharges have violated the Compact and ORSANCO's Pollution Control Standards promulgated thereunder.

FIRST CLAIM FOR RELIEF
CSOs - EFFLUENT LIMITATIONS

59.    Paragraphs 1 through 58 are realleged and incorporated herein by reference.

60.    On various dates from March 1, 1994, until the present, the Defendants discharged pollutants from some or all of the "combined sewer overflow" locations specified in Part II.D of the 1992 CSO Permit. On various dates from March 1, 1994, these discharges were in amounts and quality that violated the terms and conditions of the 1992 CSO Permit, including the General Effluent Limitations in Part III.2 of the 1992 CSO Permit (including, but not limited to General Effluent Limitation III.2.F), which in turn violated Section 301 of the CWA, 33 U.S.C. § 1311.

61.    Defendants violated and will continue to violate Section 301 of the CWA, 33 U.S.C. § 1311, unless enjoined by the Court.

62.    Pursuant to Sections 309 (b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), the Defendants are liable for injunctive relief and civil penalties of up to $25,000 per day for each violation of the CWA prior to January 31, 1997, and up to $27,500 per day for each violation of the CWA thereafter.

## SECOND CLAIM FOR RELIEF
### CSOs - DRY WEATHER OVERFLOWS AND
### VIOLATIONS OF "SIX MINIMUM CONTROLS"

63.     Paragraphs 1 through 58 are realleged and incorporated herein by reference.

64.     On various dates from March 1, 1994, the Defendants discharged pollutants from some or all of the "combined sewer overflow" locations specified in Part II.D of the 1992 CSO Permit during times that were not "wet weather periods." This was in violation of Sections I.A.1, I.A.2, I.A.3, I.A.4, I.A.6, I.A.7, and II.E of the 1992 CSO Permit, which in turn violated Section 301 of the CWA, 33 U.S.C. § 1311.

65.     On various dates from March 1, 1994, Defendants failed to operate/maintain Defendants' combined sewer system in a manner as necessary to minimize impacts to the receiving streams resulting from combined sewer overflows ("CSOs"). This was in violation of Section II.M of the 1992 CSO Permit, which in turn violated Section 301 of the CWA, 33 U.S.C. § 1311.

66.     The Defendants violated and will continue to violate Section 301 of the CWA, 33 U.S.C. § 1311, unless enjoined by the Court.

67.     Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), the Defendants are liable for injunctive relief and civil penalties of up to $25,000 per day for each violation of the CWA prior to January 31, 1997, and up to $27,500 per day for each violation of the CWA thereafter.

## THIRD CLAIM FOR RELIEF
### VIOLATIONS OF WWTP NPDES PERMITS

68.     Paragraphs 1 through 58 are realleged and incorporated herein by reference.

69.     On various dates from March 1, 1994, Defendants discharged pollutants from some or all of Defendants' Seven Major WWTPs in excess of the effluent limitations for such discharges contained in the NPDES permits for those wastewater treatment plants, which in turn violated Section 301 of the CWA, 33 U.S.C. § 1311.

70.     Each of the Defendants' discharges of pollutants in excess of the effluent limitations in the NPDES permits for their Seven Major WWTPs constituted a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) for each day of the excessive discharge.

71.     On various dates from March 1, 1994, Defendants bypassed at some or all of Defendants' Seven Major WWTPs in violation of bypass prohibition contained in the NPDES permits for those wastewater treatment plants, which in turn violated Section 301 of the CWA, 33 U.S.C. § 1311.

72.     Each of the Defendants' bypasses in violation of the bypass prohibition in the NPDES permits for their Seven Major WWTPs constituted a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) for each day of the bypass.

73.     On various dates from March 1, 1994, Defendants violated the monitoring, reporting and record-keeping requirements of some or all of the NPDES permits for Defendants' Seven Major WWTPs, which in turn violated Section 301 of the CWA, 33 U.S.C. § 1311.

74.     Each of the Defendants' violations of the monitoring, reporting and record-keeping requirements of their NPDES permits constituted a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) for each day of the violation.

75.     On various dates from March 1, 1994, Defendants violated the operation and maintenance requirements of some or all of the NPDES permits for Defendants' Seven Major

23

WWTPs, which in turn violated Section 301 of the CWA, 33 U.S.C. § 1311.

76.    Each of the Defendants' violations of the operation and maintenance requirements of their NPDES permits constituted a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) for each day of the violation.

77.    Defendants violated and will continue to violate Section 301 of the CWA, 33. U.S.C. § 1311, unless enjoined by the Court.

78.    Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), the Defendants are liable for injunctive relief and civil penalties of up to $25,000 per day for each violation of the CWA prior to January 31, 1997, and up to $27,500 per day for each violation of the CWA thereafter.

FOURTH CLAIM FOR RELIEF
UNPERMITTED DISCHARGES

79.    Paragraphs 1 through 58 are realleged and incorporated herein by reference.

80.    On various dates from March 1, 1994, and continuing to the present, the Defendants discharged pollutants from point sources not specified in any NPDES Permit issued by U.S. EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. The majority of these unauthorized discharges are from defendants sanitary sewer system and are known as Sanitary Sewer Overflows, or SSOs. However, defendants have also had unauthorized discharges from their combined sewer system, *i.e.*, CSOs that are from locations that are not specified in Part II.D of the 1992 CSO Permit.

81.    The Defendants' discharges of pollutants since March 1, 1994, from point sources

not specified in any NPDES Permit issued by U.S. EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

82.     Defendants violated and will continue to violate Section 301 of the CWA, 33 U.S.C. § 1311, unless enjoined by the Court.

83.     Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), the Defendants are liable for injunctive relief and civil penalties of up to $25,000 per day for each violation of the CWA prior to January 31, 1997, and up to $27,500 per day for each violation of the CWA thereafter.

FIFTH CLAIM FOR RELIEF
EMERGENCY POWERS (SECTION 504)
(UNITED STATES CLAIM)

84.     Paragraphs 1 through 58 are realleged and incorporated herein by reference.

85.     The Administrator is in receipt of evidence that, on numerous occasions in the past, untreated sewage from Defendants' sewer system has been released onto property and into buildings, including homes, owned by residents of Hamilton County and others, in locations where persons have or may have come into contact with such sewage. Untreated sewage is "pollution," as that term is defined in Section 501(19) of the Act, 33 U.S.C. § 1362(19). As such, defendants and their sewer system are a "pollution source" within the meaning of Section 504(a) of the Act.

86.     Untreated sewage can carry bacteria, viruses, parasitic organisms, intestinal worms, and borroughs (inhaled molds and fungi). The diseases these may cause range in severity from mild gastroenteritis (causing stomach cramps and diarrhea) to life-threatening ailments such as cholera,

dysentery, infections hepatitis, and severe gastroenteritis. Untreated sewage, therefore, presents an "imminent and substantial endangerment to the health of persons" who may come into contact with it, and the endangerment from untreated sewage remains imminent until the area impacted by the sewage is adequately cleaned and disinfected.

87.    Pursuant to Section 504(a) of the CWA, 33 U.S.C. § 1364(a), the United States seeks an order requiring defendants 1) to take measures such as increasing sewer capacity, improving operation and maintenance, and installing backflow prevention devices to prevent or minimize to the greatest extent possible the release of sewage into buildings, yards, and other areas where persons may come into contact with it; 2) when releases do occur, to clean up and disinfect the affected property so as to remove any endangerment to health; and 3) to take such other action as may be necessary.

SIXTH CLAIM FOR RELIEF
VIOLATIONS OF WWTP NPDES PERMITS
(STATE CLAIM)

88.    Paragraphs 1 through 58 are realleged and incorporated herein by reference.

89.    On various dates from March 1, 1994, Defendants discharged pollutants from some or all of Defendants' Seven Major wastewater treatment plants WWTPs in excess of the effluent limitations for such discharges contained in the NPDES permits for those wastewater treatment plants, which in turn violated Ohio Rev. Code Sections 6111.04 and/or 6111.07.

90.    Each of the Defendants' discharges of pollutants in excess of the effluent limitations in the NPDES permits for their Seven Major WWTPs constituted a separate violation of Ohio Rev. Code Sections 6111.04 and/or 6111.07 for each day of the excessive discharge.

26

91.     On various dates from March 1, 1994, Defendants bypassed at some or all of Defendants' Seven Major wastewater treatment plants WWTPs in violation of bypass prohibition contained in the NPDES permits for those wastewater treatment plants, which in turn violated Ohio Rev. Code Sections 6111.04 and/or 6111.07.

92.     Each of the Defendants' bypasses in violation of the bypass prohibition in the NPDES permits for their Seven Major wastewater treatment plants WWTPs constituted a separate violation of Ohio Rev. Code Sections 6111.04 and/or 6111.07 for each day of the bypass.

93.     On various dates from March 1, 1994, Defendants violated the monitoring, reporting and record-keeping requirements of some or all of the NPDES permits for Defendants' Seven Major wastewater treatment plants WWTPs, which in turn violated Ohio Rev. Code Section 6111.07.

94.     Each of the Defendants' violations of the monitoring, reporting and record-keeping requirements of their NPDES permits constituted a separate violation of Ohio Rev. Code Section 6111.07 for each day of the violation.

95.     On various dates from March 1, 1994, Defendants violated the operation and maintenance requirements of some or all of the NPDES permits for Defendants' Seven Major WWTPs, which in turn violated Ohio Rev. Code Sections 6111.04 and/or 6111.07.

96.     Each of the Defendants' violations of the operation and maintenance requirements of their NPDES permits constituted a separate violation of Ohio Rev. Code Section 6111.07 for each day of the violation.

97.     Defendants violated and will continue to violate Ohio Rev. Code Sections 6111.04 and/or 6111.07, unless enjoined by the Court.

98.     Pursuant to Ohio Rev. Code Sections 6111.07 and 6111.09, the Defendants are liable for injunctive relief and civil penalties of up to $10,000 per day for each violation of Ohio Rev. Code Sections 6111.04 and/or 6111.07.

SEVENTH CLAIM FOR RELIEF
UNPERMITTED DISCHARGES
(STATE CLAIM)

99.     Paragraphs 1 through 58 are realleged and incorporated herein by reference.

100.     On various dates from March 1, 1994, and continuing to the present, the Defendants discharged pollutants from point sources not specified in any NPDES Permit issued by Ohio. EPA pursuant to Ohio Rev. Code Section 6111.03.  The majority of these unauthorized discharges are from defendants sanitary sewer system and are known as Sanitary Sewer Overflows, or SSOs. However, defendants have also had unauthorized discharges from their combined sewer system, *i.e.*, CSOs that are from locations that are not specified in Part II.D of the 1992 CSO Permit.

101.     The Defendants' discharges of pollutants since March 1, 1994, from point sources not specified in any NPDES Permit issued by Ohio EPA pursuant to Ohio Rev. Code Section 6111.03, violate Ohio Rev. Code Sections 6111.04 and/or 6111.07.

102.     Defendants violated and will continue to violate Ohio Rev. Code Sections 6111.04 and/or 6111.07, unless enjoined by the Court.

103.     Pursuant to Ohio Rev. Code Sections 6111.07 and 6111.09, the Defendants are liable for injunctive relief and civil penalties of up to $10,000 per day for each violation of Ohio Rev. Code Sections 6111.04 and/or 6111.07.

EIGHTH CLAIM FOR RELIEF
CSOs - EFFLUENT LIMITATIONS
(STATE CLAIM)

104.    Paragraphs 1 through 58 are realleged and incorporated herein by reference.

105.    On various dates from March 1, 1994, until the present, the Defendants discharged pollutants from some or all of the "combined sewer overflow" locations specified in Part II.D of the 1992 CSO Permit.  On various dates from March 1, 1994, these discharges were in amounts and quality that violated the terms and conditions of the 1992 CSO Permit, including the General Effluent Limitations in Part III.2 of the 1992 CSO Permit (including, but not limited to General Effluent Limitation III.2.F) , which in turn violated Ohio Rev. Code Sections 6111.04 and/or 6111.07.

106.    Defendants violated and will continue to violate Ohio Rev. Code Sections 6111.04 and/or 6111.07 unless enjoined by the Court.

107.    Pursuant to Ohio Rev. Code Sections 6111.07 and 6111.09, the Defendants are liable for injunctive relief and civil penalties of up to $10,000 per day for each violation of Ohio Rev. Code Sections 6111.04 and/or 6111.07.

NINTH CLAIM FOR RELIEF
CSOs - DRY WEATHER OVERFLOWS AND VIOLATIONS
OF "SIX MINIMUM CONTROLS"
(STATE CLAIM)

108.    Paragraphs 1 through 58 are realleged and incorporated herein by reference.

109.    On various dates from March 1, 1994, the Defendants discharged pollutants from some or all of  the "combined sewer overflow" locations specified in Part II.D of the 1992 CSO

Permit during times that were not "wet weather periods." This was in violation of Sections I.A.1, I.A.2, I.A.3, I.A.4, I.A.6, I.A.7, and II.E of the 1992 CSO Permit, which in turn violated Ohio Rev. Code Sections 6111.04 and/or 6111.07.

110.    On various dates from March 1, 1994, Defendants failed to operate/maintain Defendants' combined sewer system in a manner as necessary to minimize impacts to the receiving streams resulting from combined sewer overflows ("CSOs"). This was in violation of Section II.M of the 1992 CSO Permit, which in turn violated Ohio Rev. Code Section 6111.07.

111.    The Defendants violated and will continue to violate Ohio Rev. Code Sections 6111.04 and/or 6111.07, unless enjoined by the Court.

112.    Pursuant to Ohio Rev. Code Sections 6111.07 and 6111.09, the Defendants are liable for injunctive relief and civil penalties of up to $10,000 per day for each violation of Ohio Rev. Code Sections 6111.04 and/or 6111.07.

TENTH CLAIM FOR RELIEF:
VIOLATIONS OF THE COMPACT
AND ORSANCO'S POLLUTION CONTROL STANDARDS
(ORSANCO CLAIM)

113.    ORSANCO repeats the allegations stated at paragraphs 1- 58, as if fully restated herein.

114.    The Compact has established standards for treatment of wastewater prior to its discharge into the Ohio River or any tributary thereof, as expressly stated in Article VI of the Compact, and as further developed and promulgated subsequent to and under authority of the Compact in ORSANCO's Pollution Control Standards.

115.    On various dates from March 1, 1994, until the present, the Defendants have discharged pollutants during dry and wet weather periods from some or all of the "combined sewer overflow" ("CSO") locations specified in Part II.D of the 1992 CSO Permit into the Ohio River or its tributaries in violation of the Compact and Sections IV(C)(1), V(A), and V(B)(3) of ORSANCO's Pollution Control Standards.

116.    On numerous occasions since March 1, 1994, and continuing through the present, the Defendants discharged pollutants from some or all of the Seven Major WWTPs into the Ohio River or its tributaries in violation of the Compact and Sections IV(C)(1), V(A), V(B)(1), and V(C) of ORSANCO's Pollution Control Standards.

117.    On numerous occasions since March 1, 1994, and continuing through the present, the Defendants have bypassed or intentionally diverted waste streams from some or all of the Seven Major WWTPs into the Ohio River or its tributaries in violation of the Compact and Sections IV(C)(1), V(A), V(B)(1), V(B)(3), and V(C) of ORSANCO's Pollution Control Standards.

118.    On numerous occasions since March 1, 1994, and continuing to the present, the Defendants have discharged pollutants into the Ohio River and its main tributaries from sanitary SSOs and from CSOs not specified in any NPDES permit issued by Ohio EPA.  Such discharges have violated the Compact and Sections IV(C), V(A), V(B)(1) and (3), and V(C) of ORSANCO's Pollution Control Standards.

119.    Unless enjoined by the Court, Defendants will continue to violate the Compact and ORSANCO's Pollution Control Standards as noted above.

120.    Article IX of the Compact authorizes ORSANCO to enforce the Compact and ORSANCO's Pollution Control Standards by seeking injunctive relief to prevent "any municipality,

corporation, person, or other entity" from discharging sewage into the Ohio River or its tributaries. Under Article IX, the Defendants are liable for injunctive relief because of their violations of the Compact and ORSANCO's Pollution Control Standards.

## ELEVENTH CLAIM FOR RELIEF
### LIABILITY OF THE STATE OF OHIO UNDER SECTION 309 (e)

121.    Paragraphs 1 through 58 are realleged and incorporated herein by reference.

122.    To the extent any law of Ohio prevents the Defendants from raising revenues needed to comply with any judgment entered against the Defendants in this action, pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e), Ohio is liable for payment of any judgment, or any expenses incurred by the Defendants as a result of complying with any judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America, the State of Ohio, and ORSANCO, pray that the Court:

1.    Permanently enjoin the Defendants from any further violations of the Clean Water Act and the Defendants' NPDES Permits;

2.    Order the Defendants to expeditiously complete all actions necessary to ensure that the Defendants comply with their NPDES Permits and all other applicable requirements of the Clean Water Act;

3.    Award the plaintiffs their costs of this action; and

4.    Grant the plaintiffs such further relief as the Court deems just and proper.

FURTHERMORE, Plaintiff United States prays that the Court:

1.　　Order the Defendants to pay a civil penalty of up to $25,000.00 per day for each violation of the Clean Water Act occurring between March 1, 1994, and January 30, 1997, and $27,500.00 per day for each violation of the Clean Water Act occurring on or after January 31, 1997;

2.　　Pursuant to Section 504(a) of the Act, order the Defendants 1) to take measures such as increasing sewer capacity, improving operation and maintenance, and installing backflow prevention devices to prevent or minimize to the greatest extent possible the release of sewage into buildings, yards, and other areas where people may come into contact with it; 2) when releases do occur, to clean up and disinfect the affected property so as to remove any endangerment to health or welfare; and 3) to take such other action as may be necessary; and

3.　　Order the State of Ohio to pay any judgment in this action, including the cost of all injunctive actions and compliance expenses resulting therefrom, to the extent Ohio law prevents the Defendants from raising revenues needed to comply with the judgment.

FURTHERMORE, Plaintiff State of Ohio prays that this Court order the Defendants to pay a civil penalty of up to $10,000.00 per day for each violation of Ohio Rev. Code Section 6111.04 and/or 6111.07.

FURTHERMORE, Plaintiff ORSANCO prays that the Court:

1.    Permanently enjoin the Defendants from any further violations of the Compact and ORSANCO's Pollution Control Standards; and

2.    Order the Defendants to complete expeditiously all actions necessary to ensure that the Defendants comply with the Compact and ORSANCO's Pollution Control Standards;

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

LESLIE ALLEN
Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-4114

34

GREGORY G. LOCKHART
United States Attorney for the Southern District of Ohio


   S/Donetta D. Wiethe
By:   DONETTA D. WIETHE (0028212)
Assistant United States Attorney
221 E. 4th Street
Atrium II, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711


OF COUNSEL:

GARY PRICHARD
Associate Regional Counsel
U.S. Environmental Protection Agency, Region V

ANDREW R. STEWART
Attorney-Advisor
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

35

FOR STATE OF OHIO:
JIM PETRO
Attorney General


   S/Margaret A. Malone
By:   MARGARET A. MALONE (0021770)
Assistant Attorney General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215-3400
(614) 466-2766

36

FOR THE OHIO RIVER VALLEY WATER
SANITATION COMMISSION:


 S/J. Steven Justice
J. STEVEN JUSTICE (0063719)
Taft, Stettinius & Hollister LLP
110 North Main St., Ste. 900
Dayton, Ohio 45402-1786
(937) 228-2838

37