IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATE OF OHIO, and OHIO RIVER VALLEY WATER SANITATION COMMISSION <br><br> Plaintiffs, <br><br> v. <br><br> THE BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO and THE CITY OF CINCINNATI, <br> Defendants. | Civil Action No. C-1-02-107 <br> Judge S. Arthur Spiegel |

**CONSENT DECREE ON COMBINED SEWER OVERFLOWS, WASTEWATER TREATMENT PLANTS AND IMPLEMENTATION OF CAPACITY ASSURANCE PROGRAM PLAN FOR SANITARY SEWER OVERFLOWS**

TABLE OF CONTENTS

I.       JURISDICTION AND VENUE . . . . . . . . . . . . . . . 6

II.      PARTIES . . . . . . . . . . . . . . . . . . . . . . 7

III.     BINDING EFFECT . . . . . . . . . . . . . . . . . . . 8

IV.      OBJECTIVES . . . . . . . . . . . . . . . . . . . 11

V.       DEFINITIONS . . . . . . . . . . . . . . . . . . . 12

VI.      CAPITAL IMPROVEMENT PROJECTS . . . . . . . . . . . 18

VII.     LONG TERM CONTROL PLAN UPDATE . . . . . . . . . . 19

VIII.    IMPLEMENTATION OF CAPACITY ASSURANCE PROGRAM PLAN . 27

IX.      COMPLETION OF CONSTRUCTION DEADLINES . . . . . . . 30

X.       POST-CONSTRUCTION MONITORING STUDY . . . . . . . . 34

XI.      REMEDIAL MEASURES ADDRESSING NINE MINIMUM CONTROLS   37

XII.     COMPLIANCE WITH EFFLUENT LIMITATIONS; MONITORING,
         RECORD-KEEPING AND REPORTING REQUIREMENTS; AND
         OPERATION AND MAINTENANCE REQUIREMENTS AT WASTEWATER
         TREATMENT PLANTS . . . . . . . . . . . . . . . . . 46

XIII.    WATER-IN-BASEMENT PROGRAM . . . . . . . . . . . . . 46

XIV.     SUPPLEMENTAL ENVIRONMENTAL PROJECTS . . . . . . . . 48

XV.      REPORTING REQUIREMENTS . . . . . . . . . . . . . . 50

XVI.     DOCUMENT RETENTION/CERTIFICATION OF SUBMISSIONS . . 53

XVII.    STIPULATED PENALTIES . . . . . . . . . . . . . . . 54

XVIII.   FORCE MAJEURE BETWEEN DEFENDANTS AND THE UNITED STATES
         . . . . . . . . . . . . . . . . . . . . . . . . . 68

XIX.     POTENTIAL FORCE MAJEURE BETWEEN DEFENDANTS AND THE
         STATE . . . . . . . . . . . . . . . . . . . . . . 71

XX.      FORCE MAJEURE BETWEEN DEFENDANTS AND ORSANCO . . . 73

XXI.     DISPUTE RESOLUTION . . . . . . . . . . . . . . . . 75

XXII.      <u>CIVIL PENALTY</u> . . . . . . . . . . . . . . . . . .   80

XXIII.     <u>RIGHT OF ENTRY</u> . . . . . . . . . . . . . . . . .   83

XXIV.      <u>NOT A PERMIT/COMPLIANCE WITH OTHER STATUTES/REGULATIONS</u>
           . . . . . . . . . . . . . . . . . . . . . . .   85

XXV.       <u>FAILURE OF COMPLIANCE</u> . . . . . . . . . . . . . .   86

XXVI.      <u>EFFECT OF CONSENT DECREE AND NON-WAIVER PROVISIONS</u>   86

XXVII.     <u>COSTS OF SUIT</u> . . . . . . . . . . . . . . . . . .   91

XXVIII.    <u>NOTICES</u> . . . . . . . . . . . . . . . . . . . .   92

XXIX.      <u>MODIFICATION</u> . . . . . . . . . . . . . . . . . .   93

XXX.       <u>REVIEW OF SUBMITTALS</u> . . . . . . . . . . . . . .   96

XXXI.      <u>CONTINUING JURISDICTION</u> . . . . . . . . . . . .   98

XXXII.     <u>CONTINGENT LIABILITY OF STATE OF OHIO</u> . . . . . .   99

XXXIII.    <u>TERMINATION</u> . . . . . . . . . . . . . . . . . .   99

XXXIV.     <u>PUBLIC COMMENT</u> . . . . . . . . . . . . . . . .  100

XXXV.      <u>SIGNATORIES/SERVICE</u> . . . . . . . . . . . . . .  101

EXHIBIT 1:  CAPITAL IMPROVEMENT PROJECTS

EXHIBIT 2:  PUBLIC PARTICIPATION PLAN

EXHIBIT 3:  MONITORING AND MODELING WORK PLAN

EXHIBIT 4:  LONG TERM CONTROL PLAN UPDATE WORK PLAN

EXHIBIT 5:  CSO PUBLIC NOTIFICATION PROGRAM

EXHIBIT 6:  WATER-IN-BASEMENT PREVENTION PROGRAM PLAN

EXHIBIT 7:  WATER-IN-BASEMENT CUSTOMER SERVICE PROGRAM PLAN

EXHIBIT 8:  WATER-IN-BASEMENT CLAIMS PROCESS PLAN

EXHIBIT 9:  SUPPLEMENTAL ENVIRONMENTAL PROJECTS PLAN

WHEREAS, Plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("U.S. EPA"), filed a Complaint in this matter on February 15, 2002, alleging that Defendants Board of County Commissioners of Hamilton County, Ohio (the "County") and the City of Cincinnati (the "City") (collectively, "Defendants"), acting through the Metropolitan Sewer District of Greater Cincinnati ("MSD"), have Sanitary Sewer Overflows ("SSOs") in the MSD Sanitary Sewer System, which have violated and continue to violate Section 301 of the Federal Water Pollution Control Act (the "Clean Water Act" or the "Act"), 33 U.S.C. § 1311;

WHEREAS, Plaintiff State of Ohio, on behalf of the Ohio EPA, filed a separate Complaint on February 15, 2002, against Defendants concerning the SSOs, alleging violations of the Act, 33 U.S.C. § 1251 et seq., and Chapter 6111 of the Ohio Revised Code ("O.R.C"), and the SSO Complaints filed by the United States and the State of Ohio were consolidated on March 7, 2002;

WHEREAS, the SSO Complaints alleged that Defendants had discharged pollutants from their Sanitary Sewer System, which discharges were not authorized under Section 301(a) of the Act, 33 U.S.C. § 1251 et seq., and the Complaints sought injunctive relief for those SSOs, but not civil penalties;

WHEREAS, MSD has engaged in environmental research both through studies and pilot-scale operations conducted by its own

1

staff and funding of cooperative research performed by the University of Cincinnati, the Water Environment Research Foundation, ORSANCO, U.S. EPA and other organizations;

WHEREAS, MSD has been an active participant in the national discussion of SSO and CSO policy through the Association of Metropolitan Sewerage Agencies and the Water Environment Federation;

WHEREAS, an Interim Partial Consent Decree on Sanitary Sewer Overflows ("SSO Decree") was lodged in this matter on February 15, 2002, requiring, among other things, the Defendants: 1) to continue work they had already begun to address certain SSOs by implementing certain capital improvement projects, which Defendants had already planned; 2) to implement interim and permanent remedial measures at SSO 700; and 3) to evaluate their Sewer System and develop and propose a Capacity Assurance Program Plan for elimination of all SSOs other than SSO 700;

WHEREAS, Plaintiffs maintain and the SSO Decree states that various other wet weather issues, including Combined Sewer Overflows (CSOs) from Defendants' Combined Sewer System and capacity-related issues at certain of Defendants' Wastewater Treatments Plants ("WWTPs"), have led to additional violations of the Act beyond those alleged in the SSO Complaints, but Plaintiffs' claims for those violations were not addressed by the SSO Decree, because the Parties intended for those claims to be

2

resolved through later negotiations designed to achieve a global solution to these issues, and/or by other future enforcement efforts;

WHEREAS, the Parties nevertheless recognize and the SSO Decree states that wet weather issues in and remedial measures for the Sanitary Sewer System are directly related to wet weather issues in and remedial measures for other parts of MSD's collection system. (This is especially true with respect to CSOs from Defendants' Combined Sewer System and capacity-related issues at certain of Defendants' WWTPs.);

WHEREAS, the confluence of these and other factors requires an integrated and costly response that addresses SSOs, CSOs and WWTP issues;

WHEREAS, MSD asserts that it has undertaken a program to address CSOs by implementation of the Nine Minimum Controls and preparation and submission to U.S. EPA and Ohio EPA of a Long Term Control Plan in 1996, which efforts are being updated and supplemented by this Consent Decree;

WHEREAS, at the time the SSO Decree was entered, Defendants were in the process of analyzing and considering global solutions for these wet weather issues and other Sewer System challenges, including possible construction of a deep storage tunnel beneath Mill Creek that could be approximately 16 miles in length and in excess of thirty feet in diameter ("the Mill Creek Deep Tunnel");

3

WHEREAS, the SSO Decree includes specific recognition of the need expeditiously to commence discussions concerning global solutions to address the remaining Sewer System issues, and further recognizes that because the schedule for implementing the SSO remedial measures that are to be proposed under the Capacity Assurance Program Plan required by the SSO Decree is related to certain other Sewer System solutions, the SSO Decree neither requires implementation of, nor provides a final construction completion date for, the SSO remedial measures that will be proposed under the Capacity Assurance Program Plan pursuant to the SSO Decree;

WHEREAS, the SSO Decree states that the Parties intend expeditiously to commence negotiations concerning:  provisions for implementation of the Capacity Assurance Program Plan's SSO remedial measures, including a completion date for such measures; solutions for other alleged violations of the Act (including, among other things, CSOs and discharges at certain WWTPs); and for a civil penalty to address both the unauthorized discharges from the Sanitary Sewer System (some of the injunctive relief for which was incorporated in the SSO Decree) and the other alleged violations;

WHEREAS, the Parties did commence those negotiations and have reached agreement on a resolution of these issues in this Consent Decree on Combined Sewer Overflows, Wastewater Treatment

4

Plants and Implementation of Capacity Assurance Program Plan for Sanitary Sewer Overflows ("Consent Decree" or "Decree");

WHEREAS, the United States, on behalf of the U.S. EPA, is filing a Joint Amended Complaint herein (with the State of Ohio and ORSANCO, as discussed below) concurrently with lodging of this Consent Decree, alleging that Defendants' discharges from their Combined Sewer System, Sanitary Sewer System and Wastewater Treatment Plants have violated and will continue to violate Section 301 of the Federal Water Pollution Control Act (the "Clean Water Act" or the "Act"), 33 U.S.C. § 1311;

WHEREAS, Plaintiff State of Ohio, on behalf of the Ohio EPA, is joining the Joint Amended Complaint against Defendants, alleging that Defendants' discharges from their Combined Sewer System, Sanitary Sewer System and Wastewater Treatment Plants have violated and will violate the Act, 33 U.S.C. § 1251 et seq., and Chapter 6111 of the Ohio Revised Code ("O.R.C");

WHEREAS, Plaintiff Ohio River Valley Water Sanitation Commission ("ORSANCO") is joining the Joint Amended Complaint and bringing claims against the Defendants pursuant to ORSANCO's authority under the Ohio River Valley Water Sanitation Compact, June 30, 1948 (the "Compact"), alleging that Defendants' discharges from their Combined Sewer System, Sanitary Sewer System, and Wastewater Treatment Plants violate the Compact and the pollution control standards promulgated thereunder, and

5

negatively impact the quality of water and impair uses thereof in the Ohio River Basin;

WHEREAS, the Joint Amended Complaint seeks injunctive relief and civil penalties for these violations;

WHEREAS, the Parties agree and the Court, by entering this Decree, finds that settlement of this matter without further litigation is in the public interest and that entry of this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, upon consent of the Parties hereto, before the taking of testimony, without any adjudication of issues of fact or law, and without admission by the Defendants of the non-jurisdictional allegations in the Joint Amended Complaint, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

I.   **JURISDICTION AND VENUE**

A.    This Court has jurisdiction over the subject matter of this action and over the Parties, pursuant to Sections 309(b) and 505(a) of the Act, 33 U.S.C. §§ 1331, 1365(a), and 28 U.S.C. §§ 1331, 1345, and 1355. This Court has supplemental jurisdiction over the state law claims asserted by the State of Ohio pursuant to 28 U.S.C. § 1367. The Joint Amended Complaint states claims upon which relief can be granted pursuant to Sections 309 and 505(a) of the Act, 33 U.S.C. §§ 1319, 1365(a), and pursuant to O.R.C. §§ 6111.04, 6111.07 and 6111.09. This Court has

jurisdiction over the claims of ORSANCO pursuant to the Compact,
Articles VI and IX, O.R.C. § 6113.03, and 33 U.S.C. §
1365(b)(1)(B).  The Defendants agree not to contest the
jurisdiction of the Court to enter and enforce this Decree.

B.    Venue is properly in this District pursuant to Section
309(b) of the Act, 33 U.S.C. §§ 1319(b), 1365(c), and under 28
U.S.C. §§ 1391 and 1395.  Venue in this District is also proper
under the Compact, Art. IX.


## II.   __PARTIES__

A.    Plaintiff, United States of America, is acting at the
request and on behalf of the Administrator of the United States
Environmental Protection Agency.

B.    Plaintiff, State of Ohio, is acting at the written
request of the Director of Environmental Protection of the State
of Ohio.

C.    Plaintiff, ORSANCO, is acting pursuant to its authority
under the Compact, Art. VI, IX and its statutory authority
conferred by O.R.C. § 6113.03.

D.    Defendant, Board of Commissioners of Hamilton County
("the County"), is the duly authorized governing body of Hamilton
County, Ohio, pursuant to the laws of the State of Ohio.  The
County is the holder of various NPDES permits that govern
discharges from the County's Wastewater Treatment Plants and

7

Sewer System.  As such, it is responsible for operating the County's Wastewater Treatment Plants and Sewer System.  The County has established the MSD, a county sewer district established pursuant to Chapter 6117 of the Ohio Revised Code, and acts as the principal of MSD, including maintenance of funding authority for MSD.  Prior court decisions in Ohio hold that MSD cannot be sued in its own name, and thus, MSD is not made a Party to this action.

E.    Defendant, City of Cincinnati ("the City"), is a chartered municipal corporation, organized and existing under the laws of the State of Ohio.  Pursuant to an agreement with the County, and subject to the pertinent provisions of the Ohio Revised Code, the City also serves as the agent for the County in the management and operation of MSD.  It is in this capacity that the City is named as Defendant.


III. **BINDING EFFECT**

A.    The provisions of this Consent Decree shall apply to, and be binding upon the Defendants and their officers, directors, employees, agents, servants, successors and assigns, and upon all persons, firms and corporations in active concert or participation with the Defendants or the Defendants' officers, directors, employees, agents, servants, successors or assigns, and upon the United States, the State of Ohio, and ORSANCO.

8

B.    Effective from the Date of Lodging of this Consent
Decree until its termination, any sale or transfer of either
Defendants' interests in or operating role with respect to the
Sewer System or WWTPs shall not in any manner relieve either
Defendant of its responsibilities for meeting the terms and
conditions of this Consent Decree, except as provided in
Paragraph III.C.

C.    If either Defendant seeks to name a successor in
interest to assume any or all of its interests in, or operating
role with respect to, the Sewer System or WWTPs, such Defendant
may request modification of this Consent Decree from U.S.
EPA/Ohio EPA/ORSANCO to amend this Consent Decree in accordance
with the role to be assumed by the proposed successor in
interest.  Upon such Defendant's request, the Parties shall
discuss the matter.  If the Parties agree on a proposed
modification to the Consent Decree, they shall prepare a joint
motion to the Court requesting such modification and seeking
leave to join the proposed successor in interest.  If the Parties
do not agree, and the Defendant still believes modification of
this Decree and joinder of a successor in interest is
appropriate, it may file a motion seeking such modification in
accordance with Federal Rule of Civil Procedure 60(b); provided,
however, that nothing in this Paragraph is intended to waive the

9

Plaintiffs' right to oppose such motion and to argue that such modification is unwarranted.

D.    If this Consent Decree is modified to allow a successor in interest to assume any or all of the obligations hereunder, Defendants shall give written notice of and provide a copy of this Consent Decree to any such successor in interest prior to transfer of ownership or operation of any portion of their WWTPs or Sewer System.

E.    Defendants shall notify U.S. EPA, Ohio EPA, and ORSANCO in writing, as specified in Section XXVIII, of any successor in interest at least twenty-one (21) days prior to any such transfer.

F.    Defendants shall advise each engineering, consulting and contracting firm to be retained to perform any activities described in this Decree of the existence of this Decree and shall make copies of this decree available to such firms upon execution of any contract relating to such work.  Defendants shall also advise each engineering, consulting and contracting firm, already retained for such purpose, of the existence of this Decree and shall make copies of this Decree available to such firms no later than thirty (30) days after the Date of Lodging of this Consent Decree.

## IV.  **OBJECTIVES**

It is the express purpose of the Parties entering into this Partial Consent Decree to further the objectives set forth in Section 101 of the Act, 33 U.S.C. § 1251, and to resolve the claims of the Plaintiffs for injunctive relief and civil penalties for the violations alleged in Plaintiffs' Joint Amended Complaint in the manner set forth in Section XXVI.  In light of these objectives, Defendants agree, _inter alia_:  to use sound engineering practices, consistent with industry standards, to perform investigations, evaluations and analyses and to design and construct any remedial measures required by this Decree; to use sound management, operational, and maintenance practices, consistent with industry standards, to implement all the requirements of this Consent Decree; and to achieve expeditious implementation of the provisions of this Decree with the goals of eliminating all Sanitary Sewer Overflows and Unpermitted Overflows and coming into and remaining in full compliance with the requirements of the Clean Water Act, U.S. EPA's 1994 Combined Sewer Overflow (CSO) Policy, Chapter 6111 of the Ohio Revised Code and the rules promulgated thereunder, the Compact and the pollution control standards promulgated thereunder, and Defendants' Current Permits.

11

## V.    DEFINITIONS

A.    Unless otherwise defined herein, terms used in this Consent Decree shall have the meaning given to those terms in the Clean Water Act, 33 U.S.C. §§ 1251 et seq., and the regulations promulgated thereunder.

B.    The following terms used in this Consent Decree shall be defined as follows:

"Calendar Quarter" shall mean the three-month periods ending on March 31st, June 30th, September 30th, and December 31st.

"Capacity Assurance Program Plan" or "CAPP" shall mean the plan that is required to be developed pursuant to Paragraph VII.E of the SSO Consent Decree and that shall be implemented pursuant to Section VIII of this Consent Decree.

"City" shall mean the City of Cincinnati, Ohio.

"Combined Sewer System" means the portion of the Defendants' Sewer System designed to convey municipal sewage (domestic, commercial and industrial wastewaters) and stormwater runoff through a single-pipe system to the Defendants' Wastewater Treatment Plants or Combined Sewer Overflow Outfalls.

"Combined Sewer Overflow" or "CSO" shall mean any discharge from any outfall identified as a combined sewer overflow or CSO in Defendants' Current Permits as defined below.

"Combined Sewer Overflow Outfall" or "CSO Outfall" shall mean the outfall from which CSOs are discharged.

12

"Compact" shall mean the Ohio River Valley Water Sanitation Compact, an interstate compact entered into by signatory states on June 30, 1948, and Pollution Control Standards promulgated by ORSANCO pursuant to the Compact.

"Consent Decree" shall mean this Consent Decree on Combined Sewer Overflows, Wastewater Treatment Plants and Implementation of Capacity Assurance Program Plan, including all attached Exhibits and all subsequently approved submittals.

"County" shall mean Hamilton County, Ohio and the Board of County Commissioners of Hamilton County.

"CSO and Unpermitted Overflow Outfalls" shall refer to CSO Outfalls and Unpermitted Overflow Outfalls collectively.

"CSO Policy" shall mean U.S. EPA's "Combined Sewer Overflow (CSO) Policy," which was published in the Federal Register on April 19, 1994 (59 Fed. Reg. 18688).

"Current Permits" means all National Pollutant Discharge Elimination System ("NPDES") permits pertaining to Defendants' Wastewater Treatment Plants and Sewer System that are in effect at a particular time in question. "Current Permits" include, but are not limited to, NPDES Permit Nos. IPX00022*AD (CSO Permit); 1PM00001*ID (Mill Creek WWTP); 1PK00006*ID (Muddy Creek WWTP); 1PK00005*HD (Sycamore WWTP); 1PL00000*KD (Little Miami WWTP); 1PK00019*ED (Polk Run WWTP); 1PK00006*ID (Indian Creek WWTP); 1PK00015*CD (Taylor Creek WWTP), and any such permits that

13

succeed those permits and are in effect at a particular time in question.

"Date of Entry" shall mean the date the Consent Decree is approved and signed by a United States District Court Judge.

"Date of Lodging" shall mean the date the Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of Ohio, Western Division.

"Day" or "Days" as used herein shall mean a calendar day or calendar days, unless otherwise indicated. When the day a report or other deliverable is due under this Consent Decree falls on a Saturday, Sunday, federal holiday or legal holiday for Defendants, Defendants shall have until the next calendar day that is not one of the aforementioned days for submittal of such report or other deliverable.

"Mill Creek Deep Tunnel" shall mean a tunnel designed to provide flood control and CSO control in the Mill Creek drainage basin.

"Non-MSD Sewer System" shall mean any wastewater collection and transmission system or piping that is designed to collect and convey domestic, commercial or industrial sewage and/or stormwater, but that is not owned or controlled by MSD during the pendency of this Decree or the SSO Decree. The wastewater collection and transmission system and the piping comprising the

14

Non-MSD Sewer System, at the time of lodging of the SSO Decree, are generally depicted in Exhibit 1 to the SSO Decree.

"Ohio River Basin" shall mean the waters of the Ohio River and its tributaries.

"ORSANCO" shall mean the Ohio River Valley Water Sanitation Commission.

"Paragraph" shall mean a portion of this Consent Decree identified by an uppercase letter.

"Parties" shall mean the United States, the State of Ohio, ORSANCO, and/or the Defendants.

"Plaintiff" or "Plaintiffs" shall mean the United States, the State of Ohio, and/or ORSANCO, as appropriate.

"Sanitary Sewer Discharge" and "SSD" shall mean any discharge to waters of the State or United States from Defendants' Sanitary Sewer System through a point source not specified in any NPDES permit.

"Sanitary Sewer Overflow" and "SSO" shall mean any discharge to waters of the State or United States from Defendants' Sanitary Sewer System through point sources not specified in any NPDES permit, as well as any release of wastewater from Defendants' Sanitary Sewer System to public or private property that does not reach waters of the United States or the State, such as a release to a land surface or structure that does not reach waters of the United States or the State; provided, however, that wastewater

15

backups into buildings that are caused by blockages, flow
conditions, or malfunctions in a building lateral, other piping
or conveyance system that is not owned or operationally
controlled by Defendants are not SSOs for the purposes of this
Consent Decree.  As such, the term SSO includes Water-in-
Basements ("WIBs") released from Defendants' Sanitary Sewer
System.

"Sanitary Sewer System" or "SSS" shall mean all portions of
the Defendants' Sewer System that are not a part of the
Defendants' Combined Sewer System.  SSS does not include any non-
MSD Sewer System.

"Section" shall mean a portion of this Consent Decree
identified by an uppercase Roman Number.

"Sewage" shall mean municipal sewage, including domestic,
commercial and industrial sewage.

"Sewer System" shall mean the wastewater collection and
transmission system owned or operated by Defendants designed to
collect and convey municipal sewage (domestic, commercial and
industrial) to the Defendants' Wastewater Treatment Plants or
overflow structures.

"Sewer System Hydraulic Model" shall mean the hydraulic
model developed in accordance with Paragraph VII.B of the SSO
Decree.

16

"SSO Decree" shall mean the Interim Partial Consent Decree on Sanitary Sewer Overflows that was lodged in this case on February 15, 2002.

"SSO Outfall" shall mean an outfall from which SSOs are discharged.

"Substantial Completion of Construction" shall mean completion of construction and installation of equipment such that the system may be placed in full operation, and will both function and perform as designed.  This specifically includes all control systems, instrumentation and all residual handling systems.

"Ten-Year Storm" shall mean a SCS Type II storm with a ten-year return and 24-hour duration.

"Unpermitted Overflow" shall mean any discharge to waters of the United States from Defendants' Sewer System that is not a CSO or SSO as defined by this Consent Decree.

"Unpermitted Overflow Outfall" shall mean the outfall from which Unpermitted Overflows are discharged.

"U.S. EPA/Ohio EPA/ORSANCO" shall mean "U.S. EPA and Ohio EPA and ORSANCO" unless Plaintiffs jointly elect (in their unreviewable discretion) to assign a particular task or responsibility to one or more of them.  To make that election, Plaintiffs shall notify Defendants in writing of the task or responsibility that U.S. EPA or Ohio EPA or ORSANCO is assigned. Collectively, U.S. EPA/Ohio EPA/ORSANCO are referred to as

17

"Plaintiffs," and each individually is a "Plaintiff" under this Decree.

"Wastewater Treatment Plant(s)" ("WWTP(s)") shall refer to: 1) the following wastewater treatment plants:  Mill Creek, Little Miami, Muddy Creek, Sycamore, Polk Run, Indian Creek, and Taylor Creek; and 2) the permitted treatment facilities owned or operated by Defendants identified in Exhibit 2 to the SSO Decree.

"Water-in-Basement(s)" ("WIB(s)") shall mean any release of wastewater from Defendants' Sewer System to buildings that (i) is not the result of blockages, flow conditions, or malfunctions of a building lateral or other piping/conveyance system that is not owned or operationally controlled by Defendants; and (ii) is not the result of overland, surface flooding not emanating from Defendants' Sewer System.

## VI.  CAPITAL IMPROVEMENT PROJECTS

Defendants shall construct Capital Improvement Projects (CIP) consistent with the descriptions set forth in Exhibit 1 to this Consent Decree and in accordance with the Substantial Completion of Construction Dates for each project set forth in Exhibit 1.  In light of the substantial costs and magnitude of the remedial measures that will be required to be implemented by Sections VI (Capital Improvement Projects); VII (Long Term Control Plan Update); and VIII (Implementation of Capacity

18

Assurance Program Plan) of this Consent Decree; and by Section VI
of the SSO Decree (Capital Improvement Projects and SSO 700), the
Parties expect that proper construction and implementation of the
remedial measures for the Sycamore WWTP in Exhibit 1 to this
Consent Decree will be the feasible alternatives to bypassing at
the Sycamore WWTP.

VII. **LONG TERM CONTROL PLAN UPDATE**

    A.   **Long Term Control Plan Update Report**

        1.   As further set forth in this Section, Defendants
shall undertake a comprehensive program to identify remedial
measures and a schedule (the "Long Term Control Plan Update")
with the goals of insuring that: (1) Defendants construct and
implement all feasible alternatives to eliminate bypasses at
Defendants' WWTPs or, if Defendants demonstrate during the course
of developing the Long Term Control Plan Update that elimination
of bypassing is not feasible, to reduce bypasses at the WWTPs to
the maximum extent feasible and to provide maximum feasible
treatment for any remaining bypasses (where appropriate, feasible
alternatives to bypassing may include, without limitation, high
rate physical-chemical treatment units and/or primary
clarification and disinfection); (2) Defendants' CSOs comply with
the requirements of the Clean Water Act, U.S. EPA's CSO Policy,
Chapter 6111 of the Ohio Revised Code and the rules promulgated

19

thereunder, the Compact and the pollution control standards promulgated thereunder, and Defendants' Current Permits; and (3) Defendants eliminate Unpermitted Overflows. In the development of the Long Term Control Plan Update, Defendants shall implement the Public Participation Program attached to this Consent Decree as Exhibit 2; utilize a planning-level model based on their Sewer System Hydraulic Model; develop and utilize water quality models in accordance with the Monitoring and Modeling Work Plan attached to this Consent Decree as Exhibit 3; and implement the Long Term Control Plan Update Work Plan attached to this Consent Decree as Exhibit 4.

2.    By June 30, 2006, Defendants shall submit a report, the "Long Term Control Plan Update Report," to U.S. EPA/Ohio EPA/ORSANCO for review, comment and approval. The Long Term Control Plan Update Report shall be developed in accordance with the Long Term Control Plan Update Work Plan, and shall contain the information specified in Section II of the Long Term Control Plan Update Work Plan attached to this Consent Decree as Exhibit 4, including, but not limited to:  the Long Term Control Plan Update, and a schedule that is developed in accordance with Paragraph II.F of the Long Term Control Plan Update Work Plan and coordinated with projects developed pursuant to the Capacity Assurance Program Plan prepared under the SSO Decree as required by Section II.F of the Long Term Control Plan Update Work Plan.

20

The schedule shall be as expeditious as practicable for design, construction and utilization of the remedial measures specified in the Long Term Control Plan Update and shall contain a deadline for Substantial Completion of Construction of all remedial measures that is as expeditious as practicable.  Except as provided in Section IX (Completion of Construction), the date for Substantial Completion of Construction of all construction under the Long Term Control Plan Update shall be no later than February 28, 2022.

      3.   U.S. EPA/Ohio EPA/ORSANCO may approve the Long Term Control Plan Update Report or decline to approve it and provide written comments.  Within 120 days of receiving U.S. EPA/Ohio EPA/ORSANCO's written comments, Defendants shall either: (i) alter the Long Term Control Plan Update Report consistent with U.S. EPA/Ohio EPA/ORSANCO's written comments, and submit the Long Term Control Plan Update Report to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.

      4.   Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final approval of the Long Term Control Plan Update Report, or upon completion of the Report pursuant to dispute resolution, Defendants shall implement the Long Term Control Plan Update contained in the Long Term Control Plan Update Report in

21

accordance with the schedule in the approved Long Term Control

Plan Update Report.

    B.    Modification of Long Term Control Plan Update if

Anticipated Changes to Legal Requirements Do Not Occur

        1.    The CSO Policy recognizes that information

developed during the course of long term control planning may

serve as a basis for seeking revisions to water quality standards

or NPDES permit requirements, particularly where that information

demonstrates that it will not be feasible to attain water quality

standards.  If the Long Term Control Plan Update in the Long Term

Control Plan Update Report is based upon Defendants' belief that

the requirements of the Clean Water Act, U.S. EPA's CSO Policy,

Chapter 6111 of the Ohio Revised Code and/or the rules

promulgated thereunder, and/or the Compact, and/or the pollution

control standards promulgated thereunder will be revised, and if

information subsequently becomes available that indicates that

those revisions are not going to occur in the manner set forth in

Defendants' Long Term Control Plan Update Report, U.S. EPA, Ohio

EPA, or ORSANCO may notify Defendants in writing that the

expected revisions are not going to occur.

        2.    Within 180 days of their receipt of the written

notice described above, Defendants must submit to U.S. EPA/Ohio

EPA/ORSANCO for review and approval a Revised Long Term Control

Plan Update that includes all of the elements of a Long Term

Control Plan Update set out in Paragraph VII.A above and
Paragraph II.H.4 of the Long Term Control Plan Update Work Plan
(including a schedule that is as expeditious as practicable for
completion of the remedial measures but that may be later than
February 28, 2022, if it is not practicable to complete those
measures by that date), but does not assume or rely on water
quality standards that have not been revised or approved by Ohio
EPA, U.S. EPA and ORSANCO, and does not assume or rely on NPDES
permit requirements that have not been included in an NPDES
permit to which U.S. EPA did not object.

     3.   U.S. EPA/Ohio EPA/ORSANCO may approve the Revised
Long Term Control Plan Update or decline to approve it and
provide written comments.  Within 90 days of receiving U.S.
EPA's/Ohio EPA's/ORSANCO's written comments, Defendants shall
either: (i) alter the Revised Long Term Control Plan Update
consistent with U.S. EPA's/Ohio EPA's/ORSANCO's written comments,
and submit the Revised Long Term Control Plan Update to U.S.
EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the
matter for dispute resolution under Section XXI of this Decree.

     4.   Upon receipt of U.S. EPA's/Ohio EPA's/ORSANCO's
final approval of the Revised Long Term Control Plan Update, or
upon completion of the Revised Long Term Control Plan Update
pursuant to dispute resolution, Defendants shall implement the
Revised Long Term Control Plan Update in accordance with the

schedule included in the approved Revised Long Term Control Plan
Update.

        C.    **Evaluation and Correction Period**

        1.    At any point following the Substantial Completion
of Construction and implementation of any measures specified in
the Long Term Control Plan Update, up to and including two years
after Substantial Completion of Construction of all measures
specified in the Long Term Control Plan Update, Defendants may
evaluate the effectiveness of the work completed.

        2.    If Defendants need additional time to implement
additional remedial measures necessary to meet the requirements
set forth in Subparagraph VII.D.2, they may petition U.S.
EPA/Ohio EPA/ORSANCO for an extension of the previously
applicable deadline for Substantial Completion of Construction of
all of the measures specified in the Long Term Control Plan
Update to allow for the implementation of additional remedial
measures.  Such petition shall include the reason(s) that the
deadline extension is deemed necessary and a general description
of the additional measures that may be needed (if known) and
shall be submitted no later than thirty (30) days from the end of
the two-year evaluation period.  Defendants shall submit a
petition as soon as practicable after they identify a problem(s)
that they believe warrants correction, and may submit more than
one petition if they identify multiple problems.

                                24

3.    U.S. EPA/Ohio EPA/ORSANCO may approve the petition
or decline to approve it and provide written comments, provided
however, that U.S. EPA's/Ohio EPA's/ORSANCO's approval shall not
be arbitrarily and capriciously denied if the measures have been
designed and constructed in accordance with the Long Term Control
Plan Update or Revised Long Term Control Plan Update approved by
U.S. EPA/Ohio EPA/ORSANCO pursuant to Paragraph VII.A.4 or
VII.B.4 of this Decree, as applicable.  Within 45 days of
receiving U.S. EPA's/Ohio EPA's/ORSANCO's written comments,
Defendants shall either: (i) alter the petition consistent with
U.S. EPA's/Ohio EPA's/ORSANCO's written comments, and submit the
petition to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii)
submit the matter for dispute resolution under Section XXI of
this Decree.   Upon receipt of U.S. EPA's/Ohio EPA's/ORSANCO's
final approval of the petition, or upon completion of the
petition pursuant to dispute resolution, Defendants shall have 90
days to submit an Addendum to the Long Term Control Plan Update
that identifies the additional remedial measures that need to be
implemented and includes all of the elements set forth in VII.A,
above, and Paragraph II.H.4 of the Long Term Control Plan Update
Work Plan (Exhibit 4) (including a schedule that is as
expeditious as practicable for completion of the additional
remedial measures) to U.S. EPA/Ohio EPA/ORSANCO for review and
approval.

4.    U.S. EPA/Ohio EPA/ORSANCO may approve the Addendum to the Long Term Control Plan Update or decline to approve it and provide written comments.  Within 90 days of receiving U.S. EPA's/Ohio EPA's/ORSANCO's written comments, Defendants shall either: (i) alter the Addendum to the Long Term Control Plan Update consistent with U.S. EPA's/Ohio EPA's/ORSANCO's written comments, and submit the Addendum to the Long Term Control Plan Update to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.

5.    Upon receipt of U.S. EPA's/Ohio EPA's/ORSANCO's final approval of the Addendum, or upon completion of the Addendum pursuant to dispute resolution, Defendants shall implement the Addendum to the Long Term Control Plan Update in accordance with the schedule included in the approved Addendum.

**D.    Compliance after Implementation**

1.    The remedial measures specified in the Long Term Control Plan Update, the Revised Long Term Control Plan Update, or the Addendum to the Long Term Control Plan Update, as applicable, shall be constructed in accordance with the design criteria set forth in the Long Term Control Plan Update, as applicable, the Revised Long Term Control Plan Update, or the Addendum; and once constructed and placed in service, shall meet the performance criteria set forth in the Long Term Control Plan

Update, the Revised Long Term Control Plan Update, or the
Addendum to the Long Term Control Plan Update, as applicable, and
shall be operated and maintained in a manner consistent with the
goal of reducing pollutant discharges.

       2.   Upon Substantial Completion of Construction of all
measures under the Long Term Control Plan Update, the Revised
Long Term Control Plan Update, or the Addendum to the Long Term
Control Plan Update, as applicable, Defendants' CSOs shall comply
with the Clean Water Act, U.S. EPA's CSO Policy, Chapter 6111 of
the Ohio Revised Code and the rules promulgated thereunder, the
Compact and the pollution control standards promulgated
thereunder, and Defendants' Current Permits, and Defendants shall
not have Unpermitted Overflows.

## VIII.      IMPLEMENTATION OF CAPACITY ASSURANCE PROGRAM PLAN

      A.   A Capacity Assurance Program Plan ("CAPP"), including a
schedule for implementation, is required to be developed pursuant
to Subparagraph VII.E.8 of the SSO Decree, although the SSO
Decree does not specify a date for completion of construction.
Pursuant to Subparagraph VII.E.8 of the SSO Decree, the CAPP must
identify additional feasible remedial measures that have the goal
of eliminating all capacity-related SSOs and/or that are
necessary to insure that there is adequate capacity in the
Sanitary Sewer System under current and projected future

conditions such that there will be no capacity-related SSOs under projected future conditions.  The Parties intend that this Consent Decree shall govern the implementation schedule for the CAPP in that such schedule shall be as expeditious as practicable, but, except as provided in Section IX (Completion of Construction Deadlines), the date for Substantial Completion of Construction of all construction under the CAPP shall be no later than February 28, 2022.  Upon receipt of U.S. EPA's/Ohio EPA's final approval of the CAPP in accordance with Subparagraph VII.E.8 of the SSO Decree, or upon completion of the CAPP pursuant to dispute resolution under the SSO Decree, the CAPP shall be incorporated into this Consent Decree, and Defendants shall implement the CAPP in accordance with the schedule included in the approved CAPP.

B.    **Evaluation and Correction Period**

1.    At any point following completion of construction and implementation of any measure specified in the CAPP, up to and including two years after completion of all measures specified in the CAPP for a particular Sub-Basin, Defendants may evaluate the effectiveness of the work completed.

2.    If Defendants need additional time to eliminate SSOs from SSO Outfalls other than SSO 700 or to correct other problems identified during the evaluation period, they may petition U.S. EPA/Ohio EPA/ORSANCO for an extension of the

28

previously applicable deadline for completion of work in that
Sub-Basin to allow for the implementation of additional remedial
measures in or concerning that Sub-Basin.  Such petition shall
include the reason(s) that the deadline extension is deemed
necessary and shall be submitted no later than thirty (30) days
from the end of the two-year evaluation period.  Defendants shall
submit a petition as soon as practicable after they identify a
problem(s) that they believe warrants correction, and may submit
more than one petition if they identify multiple problems.

        3.    U.S. EPA/Ohio EPA/ORSANCO may approve the petition
or decline to approve it and provide written comments, provided
however, that U.S. EPA/Ohio EPA/ORSANCO's approval shall not be
arbitrarily and capriciously denied if the permanent remedial
measures have been designed and constructed in accordance with
the CAPP approved by U.S. EPA/Ohio EPA/ORSANCO pursuant to
Paragraph VII.E.8 of the SSO Decree.  Within 45 days of receiving
U.S. EPA/Ohio EPA/ORSANCO's written comments, Defendants shall
either: (i) alter the petition consistent with U.S. EPA/Ohio
EPA/ORSANCO's written comments, and submit the petition to U.S.
EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the
matter for dispute resolution under Section XXI of this Decree.

        4.    Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final
approval of the petition, or upon completion of the petition
pursuant to dispute resolution, Defendants shall have 90 days to

submit a CAPP Addendum (including a schedule, including the
critical construction milestones set forth in Subparagraph
VII.E.5 of the SSO Decree, that is as expeditious as practicable
for completion of the additional remedial measures) to U.S.
EPA/Ohio EPA/ORSANCO for review and approval.

5.    U.S. EPA/Ohio EPA may approve the CAPP Addendum or
decline to approve it and provide written comments.  Within 90
days of receiving U.S. EPA/Ohio EPA/ORSANCO's written comments,
Defendants shall either: (i) alter the CAPP Addendum consistent
with U.S. EPA/Ohio EPA/ORSANCO's written comments, and submit the
CAPP Addendum to U.S. EPA/Ohio EPA/ORSANCO for final approval; or
(ii) submit the matter for dispute resolution under Section XXI
of this Decree.

6.    Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final
approval of the CAPP Addendum, or upon completion of the CAPP
Addendum pursuant to dispute resolution, Defendants shall
implement the Addendum in accordance with the schedule included
in the approved revised Plan.


IX.  **COMPLETION OF CONSTRUCTION DEADLINES**

A.    **Extension of Deadlines If There Are Not Adequate**
**Precipitation Events to Allow for Collection of Monitoring Data**

The deadlines contained in Section VII of the Consent Decree
for submission of the Long Term Control Plan Update Report and

30

Substantial Completion of Construction of all remedial measures specified in the Long Term Control Plan Update are premised on the assumption that there will be sufficient precipitation for Defendants to complete wet-weather sampling in accordance with the Monitoring and Modeling Work Plan attached to this Consent Decree as Exhibit 3.  Specifically, the deadlines are premised on the assumption that there will be sufficient precipitation for Defendants to complete, by October 15, 2005:  wet-weather sampling of CSOs, SSOs and stormwater discharges; and for wet-weather sampling in receiving streams other than the Ohio River, for three separate wet-weather events; and for wet-weather sampling in the Ohio River, for one or two events wet-weather events, as provided in Paragraph 2.2.2 of the Monitoring and Modeling Work Plan (*see* Dry and Wet-Weather Events).  If there have not been adequate precipitation events to meet these requirement, Defendants shall notify U.S. EPA/Ohio EPA/ORSANCO in writing as to which requirement(s) has or have not been met and then shall continue performing wet-weather sampling, as expeditiously as practicable, until such requirement(s) has/have been met, and the deadlines for submission of the Long Term Control Plan Update Report and Substantial Completion of Construction of all remedial measures specified in the Long Term Control Plan Update shall be extended by the number of days after October 15, 2005, that it takes for Defendants to complete the

31

additional wet-weather sampling in accordance with the Monitoring and Modeling Work Plan.

**B.    Extension of Deadlines If Capital Costs Exceed $1.5 Billion**

The schedule for Substantial Completion of Construction for the remedial measures in the Long Term Control Plan Update and the Capacity Assurance Program Plan shall be as expeditious as practicable, but in no event later than February 28, 2022, unless Defendants demonstrate that the expected capital costs (in 2006 dollars) of the remedial measures in the Long Term Control Plan Update and the CAPP are expected to exceed $1.5 billion.  If such capital costs are expected to exceed $1.5 billion, then the deadline for completion of all remedial measures specified in the Long Term Control Plan Update and the CAPP must be specified in the Plan(s) and must still be as expeditious as practicable, but may be later than February 28, 2022, if it is not practicable to complete the CAPP and Long Term Control Plan Update remedial measures by that date.

1.    Sewer Relining and Manhole Rehabilitation Measures:  Defendants may include a Sewer Relining and Manhole Rehabilitation Program Plan (consisting of capital measures designed to reduce infiltration and inflow) as an element of their Long Term Control Plan Update, in accordance with the Paragraph II.E.3 of the Long Term Control Plan Update Work Plan

32

(Exhibit 4).  The expected capital costs of any such measures
included in the approved Long Term Control Plan Update may be
included in determining whether the capital costs for remedial
measures set forth above in this Paragraph are expected to exceed
$1.5 billion.

      2.   <u>Water-in-Basement Capital Expenditures</u>:
Defendants may include measures necessary to meet the adequate
capacity requirements of Paragraph XIII.D, including measures
implemented pursuant to the Water-in-Basement Prevention Program
(Exhibit 6), as an element of their Long Term Control Plan
Update, in accordance with Paragraph II.E.3 of the Long Term
Control Plan Update Work Plan (Exhibit 4).  The expected capital
costs of any such measures included in the approved Long Term
Control Plan Update may be included in determining whether the
capital costs for remedial measures set forth above in this
Paragraph are expected to exceed $1.5 billion.

      3.   <u>Remedial Measures for Complying With New Legal
Requirements</u>:  The parties recognize that Defendants' NPDES
permits pertaining to their WWTPs or Sewer System may be revised
in the future to contain new or more stringent requirements, and
that it may be necessary for Defendants to construct remedial
measures in addition to those that will otherwise be required by
the Long Term Control Plan Update and CAPP.  Defendants may
include remedial measures necessary to comply with new or more

33

stringent requirements that are included or expected to be
included in future NPDES permits pertaining to their WWTPs or
Sewer System as an element of their Long Term Control Plan
Update, in accordance with Paragraph II.E.3 of the Long Term
Control Plan Update Work Plan (Exhibit 4).  The expected capital
costs of any such measures included in the approved Long Term
Control Plan Update may be included in determining whether the
capital costs for remedial measures set forth above in this
Paragraph are expected to exceed $1.5 billion.


**X.    POST-CONSTRUCTION MONITORING STUDY**

A.    Within five years of approval of the Long Term Control
Plan Update Report, Defendants shall submit to U.S. EPA/Ohio
EPA/ORSANCO, for approval, a Work Plan for conducting an ongoing
study or series of studies ("Post-Construction Monitoring Study")
to help determine:  1) whether the Long Term Control Plan Update
measures, when completed, meet all design criteria and
performance criteria specified in the Long Term Control Plan
Update; 2) whether Defendants' CSOs comply with the requirements
of the Clean Water Act, U.S. EPA's CSO Policy, Chapter 6111 of
the Ohio Revised Code and the rules promulgated thereunder, the
Compact and the pollution control standards promulgated
thereunder, and Defendants' Current Permits; and 3) that there
are no Unpermitted Overflows.

34

B.    The Work Plan shall contain a schedule for performance of the study or series of studies at key points during the course of implementation of the remedial measures, as well as after completion of the remedial measures, specified in the Long Term Control Plan Update and Capacity Assurance Program Plan.  The Work Plan also shall indicate the years (at least biannually) in which data generated during implementation of the Work Plan will be included in the last Quarterly Report submitted under Section XV of this Consent Decree.

C.    U.S. EPA/Ohio EPA/ORSANCO may approve the Post-Construction Monitoring Study Work Plan or may decline to approve it and provide written comments.  Within sixty (60) days of receiving U.S. EPA's/Ohio EPA's/ORSANCO's comments, Defendants shall either: (i) alter the Post-Construction Monitoring Study Work Plan consistent with U.S. EPA's/Ohio EPA's/ORSANCO's comments, and submit the Work Plan to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.

D.    Upon receipt of U.S. EPA's/Ohio EPA's/ORSANCO's final approval of the Post-Construction Monitoring Study Work Plan, or upon completion of the Work Plan pursuant to dispute resolution, Defendants shall implement the approved Work Plan in accordance with the schedule in the approved Work Plan.

35

E.    Within one hundred twenty (120) days after completion
of the Post-Construction Monitoring Study, Defendants shall
submit a Final Post-Construction Monitoring Report to U.S.
EPA/Ohio EPA/ORSANCO, for review, comment and approval, that:

1.    demonstrates that Defendants performed the Post-
Construction Monitoring Study in accordance with the approved
Work Plan and schedule set forth in the approved Work Plan; and

2.    summarizes the data collected during the Post-
Construction Monitoring Study and analyzes whether the completed
control measures have met and/or are meeting the design and
performance criteria specified in the Long Term Control Plan
Update and whether Defendants' CSOs comply with the requirements
of the Clean Water Act, U.S. EPA's CSO Control Policy, the
Compact and the pollution control standards promulgated
thereunder, and Defendants' Current Permits.

F.    U.S. EPA/Ohio EPA/ORSANCO may approve the Final Post-
Construction Monitoring Report or may decline to approve it and
provide written comments.  Within sixty (60) days of receiving
U.S. EPA's/Ohio EPA's/ORSANCO's comments, Defendants shall
either: (i) alter the Final Post-Construction Monitoring Report
consistent with U.S. EPA's/Ohio EPA's/ORSANCO's comments, and
submit the Report to U.S. EPA/Ohio EPA/ORSANCO for final
approval; or (ii) submit the matter for dispute resolution under
Section XXI of this Decree.  Approval of the Final Post-

36

Construction Monitoring Report only constitutes U.S. EPA's/Ohio
EPA's/ORSANCO's approval that the report contains the information
required by Paragraph X.E; it does not mean that U.S. EPA/Ohio
EPA/ORSANCO believe Defendants have complied with any other
requirement of this Consent Decree or the law.

XI.   **REMEDIAL MEASURES ADDRESSING NINE MINIMUM CONTROLS**

A.   **CSO Operation and Maintenance Plan Requirement**

Defendants shall comply with the operation and maintenance
requirements of Defendants' Current Permits applicable to
Defendants' Sewer System.

B.   **CSO Public Notification Program**

Defendants shall implement the CSO Public Notification
Program attached to this Consent Decree as Exhibit 5.

C.   **Maximization of Transport and Storage**

1.   Defendants shall perform a study, the
"Maximization of Transport and Storage Study," that will focus on
initial flow maximization opportunities already identified by
Defendants' ongoing efforts known as the "Real Time Control
Analysis" Project.  The "Real Time Control Analysis" Project is
an evaluation of Defendants' Combined Sewer System using
Defendants' Sewer System Hydraulic Model, to identify
opportunities for making Minor Modifications to Defendants' Sewer
System to increase the amount of sewage that could be transported

37

through Defendants' Combined Sewer System, or stored for later transport, to Defendants' WWTPs for treatment. "Minor Modifications" shall include any of the measures described in Sections 3.1 and 5.1 of U.S. EPA's "Guidance for Nine Minimum Controls," but shall not include remedial measures for increasing capacity to address wet weather flows involving significant engineering studies or major construction, as such measures for increasing capacity to address wet weather flows will instead be addressed by the Long Term Control Plan Update. This evaluation has already identified opportunities for making Minor Modifications in the following five areas: four CSO areas in the Mill Creek Basin (Badgely Run, Ross Run, Lick Run, and Mitchell Avenue) where inflatable dams may be practical; and at the headworks of the Little Miami WWTP, where an alternative pumping strategy may provide additional capture of combined sewage. The "Maximization of Transport and Storage Study" shall focus on the assessment of the feasibility, cost, and expected performance of each of the opportunities in the five areas described in the preceding sentence.

        2.   By March 31, 2005, Defendants shall submit to U.S. EPA/Ohio EPA/ORSANCO for review, comment and approval, a report, the "Maximization of Transport and Storage Report," that contains the following:

(a)    Information that demonstrates that
Defendants performed the Maximization of Transport and Storage
Study in accordance with Subparagraph XI.C.1;

(b)    The results of the study including, but
not limited to, an identification of all Minor Modifications that
could practically be made to the five aforementioned areas of
Defendants' Combined Sewer System to increase the amount of
sewage that could be transported through Defendants' Combined
Sewer System, or stored for later transport, to Defendants' WWTPs
for treatment;

(c)    To the extent that Defendants conclude
that Minor Modifications could not be made with regard to each of
the five areas specified in Subparagraph XI.C.1, a detailed
explanation as to the basis of that conclusion for each specific
location and Minor Modification; and

(d)    For all Minor Modifications identified
in accordance with Subparagraph XI.C.2(b) that could be made to
the five aforementioned areas of Defendants' Combined Sewer
System, a "Minor Modifications Implementation Plan" that
identifies recommended measures, and includes an estimate of
capital costs and a schedule that is as expeditious as
practicable for implementation of those measures.

3.    U.S. EPA/Ohio EPA/ORSANCO may approve the
Maximization of Transport and Storage Report or decline to

39

approve it and provide written comments.  Within 60 days of
receiving U.S. EPA/Ohio EPA/ORSANCO's written comments,
Defendants shall either: (i) alter the Maximization of Transport
and Storage Report consistent with U.S. EPA/Ohio EPA/ORSANCO's
written comments, and submit the Maximization of Transport and
Storage Report to U.S. EPA/Ohio EPA/ORSANCO for final approval;
or (ii) submit the matter for dispute resolution under Section
XXI of this Decree.

      4.  Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final
approval of the Maximization of Transport and Storage Report, or
upon completion of the Report pursuant to dispute resolution,
Defendants shall implement the Minor Modifications Implementation
Plan contained in the Maximization of Transport and Storage
Report in accordance with the schedule in the approved
Maximization of Transport and Storage Report.

**D.  Non-High Water Dry Weather Combined Sewer Overflows**

      1.  Defendants shall perform a study, the "Non-High
Water Dry Weather Overflow Study," of records that Defendants
currently possess pertaining to CSOs (*e.g.*, citizen complaints;
Sewer System operation, maintenance and inspection records; CSO
monitoring reports) that have occurred subsequent to April 30,
2001, to determine whether any of Defendants' CSO outfalls have
discharged more than twenty-four hours after a precipitation
event, as a result of other than High Water Conditions or as a

result of other than continued runoff or infiltration and inflow
from a precipitation event, on more than one occasion subsequent
to April 30, 2001; and to identify measures to prevent or reduce,
to the maximum extent practicable, such discharges from such
specified outfalls.  For the purposes of this Study only, "High
Water Conditions" shall mean situations where elevated surface
water levels inundate portions of Defendants' collection system
so as to cause discharge to take place more than 24 hours after a
precipitation event, and the phrase "more than 24 hours after a
precipitation event" shall mean the time period beginning 24
hours after the last precipitation fell in a particular event.

        2.    By October 31, 2004, Defendants shall submit to
U.S. EPA/Ohio EPA/ORSANCO for review, comment and approval, a
report, the "Non-High Water Dry Weather Overflow Report," that
contains the following:

              (a)    Information that demonstrates that
Defendants performed the Non-High Water Dry Weather Overflow
Study in accordance with Subparagraph XI.D.1;

              (b)    Description of the records that
Defendants reviewed and the methodology used to carry out the
Study;

              (c)    The results of the study including, but
not limited to, an identification of all CSO outfalls that
discharged more than twenty-four hours after a precipitation

event, as a result of other than High Water Conditions or as a result of other than continued runoff or infiltration and inflow from a precipitation event, on more than one occasion subsequent to April 30, 2001;

       (d)  For each CSO outfall identified in accordance with Subparagraph XI.D.2(c), a description of the cause(s) (if known) of the CSO discharges that occurred more than twenty-four hours after a precipitation event, as a result of other than High Water Conditions or as a result of other than continued runoff or infiltration and inflow from a precipitation event, on more than one occasion subsequent to April 30, 2001; a description of remedial measures (such as repairing or replacing failing or outdated equipment; increasing maintenance activities; raising overflow weirs or increasing interceptor connection pipe size) that are needed to prevent or reduce, to the maximum extent practicable, future discharges occurring from the identified CSO outfalls as a result of other than High Water Conditions or as a result of other than continued runoff or infiltration and inflow from a precipitation event; and

       (e)  For all remedial measures identified in accordance with Subparagraph XI.D.2(d), a "Non-High Water Dry Weather Overflow Reduction Implementation Plan" that contains an estimate of capital cost and a schedule that is as expeditious as practicable for implementation of those measures, except that

42

Defendants need not include a schedule for implementation of
remedial measures that are already included in the list of
Capital Improvement Projects attached as Exhibit 1 to this
Consent Decree or for remedial measures for increasing capacity
to address wet weather flows, as measures for increasing capacity
to address wet weather flows will instead be addressed by the
Long Term Control Plan Update.

      3.   U.S. EPA/Ohio EPA/ORSANCO may approve the Non-High
Water Dry Weather Overflow Report or decline to approve it and
provide written comments.  Within 60 days of receiving U.S.
EPA/Ohio EPA/ORSANCO's written comments, Defendants shall either:
(i) alter the Non-High Water Water Dry Weather Overflow Report,
consistent with U.S. EPA/Ohio EPA/ORSANCO's written comments, and
submit the Non-High Water Dry Weather Overflow Report to U.S.
EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the
matter for dispute resolution under Section XXI of this Decree.

      4.   Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final
approval of the Non-High Water Dry Weather Overflow Report, or
upon completion of the Report pursuant to dispute resolution,
Defendants shall implement the Non-High Water Dry Weather
Overflow Reduction Implementation Plan contained in the Non-High
Water Dry Weather Overflow Report in accordance with the schedule
in the approved Non-High Water Dry Weather Overflow Report.

**E.    Control of Solid and Floatable Materials in CSOs**

1.    Defendants shall comply with all requirements in Defendants' Current Permits regarding control of solid and floatable materials in CSOs.

2.    Defendants shall perform an engineering study, the "Control of Solid and Floatable Materials in CSOs Study," to identify the costs, benefits and effectiveness of all past (within the last five years), current and future measures that Defendants have taken, are taking or will be taking to control solid and floatable materials in Defendants' CSOs; and to identify and evaluate the need, costs, benefits, effectiveness and feasibility of Defendants' implementing (in addition to those measures identified above that Defendants have, are or will be implementing) the measures described in Section 7 of U.S. EPA's "Guidance for Nine Minimum Controls."

3.    By December 1, 2004, Defendants shall submit to U.S. EPA/Ohio EPA/ORSANCO for review, comment and approval, a report, the "Control of Solid and Floatable Materials in CSOs Report," that contains the following:

(a)    Information that demonstrates that Defendants' performed the Control of Solid and Floatable Materials in CSOs Study in accordance with Subparagraph XI.E.2, including a description of the steps that Defendants took to obtain the information specified in Subparagraph XI.E.2;

44

(b)   The results of the study including, but not limited to, a description of the need, costs, benefits and effectiveness of all past (within the last five years), current and future measures that Defendants have taken, are taking or will be taking to control solid and floatable materials in Defendants' CSOs; a description of  the costs, benefits, effectiveness and feasibility of Defendants' implementing (in addition to those measures identified above that Defendants have, are or will be implementing) the measures described in Section 7 of U.S. EPA's "Guidance for Nine Minimum Controls;" and, to the extent that Defendants are not implementing any of the measures described in Section 7, an explanation as to why Defendants are not doing so.

4.   U.S EPA/Ohio EPA/ORSANCO may approve the Control of Solid and Floatable Materials in CSOs Report or decline to approve it and provide written comments.  Within 60 days of receiving U.S. EPA/Ohio EPA/ORSANCO's written comments, Defendants shall either: (i) alter the Control of Solid and Floatable Materials in CSOs Report consistent with U.S. EPA/Ohio EPA/ORSANCO's written comments, and submit the Control of Solid and Floatable Materials in CSOs Report to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.

45

XII. <u>**COMPLIANCE WITH EFFLUENT LIMITATIONS; MONITORING, RECORD-KEEPING AND REPORTING REQUIREMENTS; AND OPERATION AND MAINTENANCE REQUIREMENTS AT WASTEWATER TREATMENT PLANTS**</u>

Defendants shall comply with the effluent limitations; monitoring, record-keeping and reporting requirements; and operation and maintenance requirements of Defendants' Current Permits applicable to Defendants' Wastewater Treatment Plants. These limitations and requirements include, but are not limited to, the requirements in Parts I.A, I.B, II (other than Pretreatment Requirements), and III.3-III.7 of Defendants' Current Permits applicable to Defendants' Wastewater Treatment Plants.

XIII.    <u>**WATER-IN-BASEMENT PROGRAM**</u>

Defendants shall implement the Water-in-Basement Program components set forth in Paragraphs XIII.A, XIII.B, and XIII.C, below, and Exhibits 6, 7, and 8, until the Consent Decree terminates in accordance with Section XXXIII.

A.    **Prevention of Water-in-Basement**

Defendants shall implement, in accordance with the requirements and schedules therein, the Water-in-Basement (WIB) Prevention Program, attached to this Consent Decree as Exhibit 6. The WIB Prevention Program shall utilize a variety of remedial

46

measures to address WIBs, including but not limited to, installation of grinder pump systems, and property purchase.

**B.    Water-in-Basement Customer Service Program**

1.    Defendants shall implement, in accordance with the requirements and schedules therein, the Water-In-Basement Customer Service Program Plan, attached to this Consent Decree as Exhibit 7, to promptly clean up WIB and to otherwise assist customers who experience WIB with cleanup activities.

2.    Defendants shall initially fund the Water-in-Basement Customer Service Program from the monies currently accumulated in the Environmental Security Account established pursuant to Section XVIII of the Consent Order dated August 16, 1985 in Civil Action C-1-85-0693.  When those funds are depleted, Defendants shall continue to implement the program in accordance with the requirements and schedules in Exhibit 7.

**C.    Water-in-Basement Claims Program**

Defendants shall implement, in accordance with the requirements and schedules therein, the Water-in-Basement Claims Process Plan, attached to this Consent Decree as Exhibit 8, to compensate customers who experience WIB for real or personal property losses or expenses.  Such losses may include, <u>inter alia</u>, building restoration costs, and loss of furniture and/or property stored in the flooded areas.

47

### D.   Adequate Capacity

Defendants shall implement remedial measures, including the WIB Prevention Program, to ensure that upon completion of implementation of the remedial measures required by the CAPP and the Long Term Control Plan Update, 1) Defendants' Sanitary Sewer System has adequate capacity to meet the requirements of Paragraph VIII.A of this Consent Decree, which includes not having any capacity-related SSOs under current and projected future conditions; and 2) Defendants' Combined Sewer System shall have capacity that is consistent with appropriate design standards or be equipped with other measures so as to prevent capacity-related WIBs.  Such "other measures" shall be consistent with the WIB Prevention Plan (Exhibit 6) and shall specifically not preclude continued discharge to Defendants' Sewer System by "WIB properties" during frequently encountered wet weather conditions.

### XIV. <u>SUPPLEMENTAL ENVIRONMENTAL PROJECTS</u>

A.   Defendants shall complete Supplemental Environmental Projects ("SEPs"), in accordance with the Supplemental Environmental Project Plan ("SEP Plan") attached to this Consent Decree as Exhibit 9, which the parties agree are intended to secure significant environmental protection and improvements that are not otherwise required by law.

48

B.    Defendants shall complete the SEPs pursuant to the plans and the time schedules set forth in the SEP Plan.

C.    Defendants shall spend at least $5.3 million implementing the SEPs identified in the SEP Plan.  No part of this expenditure shall include federal or State funds, including federal or State low interest loans, contracts, or grants. Defendants shall include documentation of expenditures made in connection with the SEPs as part of the SEP Completion Reports required by Paragraph XIV.D, below.

D.    Defendants shall submit to U.S. EPA/Ohio EPA/ORSANCO a SEP Completion Report for each SEP described in the SEP Plan no later than 60 days from the date for completion of the SEP set forth in the SEP Plan.  The Report shall contain the following information for the SEP:  a) a detailed description of the SEP as implemented; b) a description of any operating problems encountered and the solutions thereto; c) itemized costs; d) certification that the SEP has been fully implemented pursuant to the SEP Plan and the provisions of this Consent Decree; e) a description of the environmental and public health benefits resulting from implementation of the SEP.

E.    U.S. EPA/Ohio EPA/ORSANCO may, in their discretion, require information in addition to that described in Paragraph XIV.D, in order to determine the adequacy of SEP completion or

49

eligibility of SEP costs, including additional cost documentation
to support the itemized costs.

F.    Defendants hereby certify that they are not required to
perform or develop the SEPs by any federal, state or local law or
regulation; nor are Defendants required to perform or develop the
SEPs by agreement, grant or as injunctive relief in this or any
other case or in compliance with state or local requirements.
Defendants further certify that they have not received, and are
not presently negotiating to receive, credit for the SEPs in any
other enforcement action or any proceeding involving the U.S. EPA
or the Ohio EPA.


**XV.    REPORTING REQUIREMENTS**

A.    Beginning within the thirty (30) days of the close of
the first full Calendar Quarter following the Date of Lodging of
this Consent Decree, and within thirty (30) days of the close of
each subsequent Calendar Quarter, Defendants shall submit to U.S.
EPA, Ohio EPA, and ORSANCO a summary report containing the
following information pertaining to the Calendar Quarter just
concluded:  a brief synopsis of the current status of the major
remedial measures (e.g., CIP projects, the Long Term Control Plan
Update and its components, implementation of the CAPP, Post-
Construction Monitoring, Nine Minimum Controls and its
components, and the deliverables associated with, and

50

implementation of, those measures) specified in Sections VI - XI

of this Consent Decree and of the SEPs (specified in Section XIV

and the SEP Plan, Exhibit 9) and progress made with respect to

such remedial measures and SEPs since the last report; an

itemized accounting of costs expended for each SEP during the

quarter; the number of Permit(s) to Install that have been

applied for and/or issued; and a description of compliance or

non-compliance with the requirements of this Consent Decree and,

if applicable, reasons for non-compliance.  This report shall

also identify any anticipated delays in the completion of any of

the remedial measures specified in Sections VI - XI of this

Consent Decree or of the SEPs specified in Section XIV and the

SEP Plan, Exhibit 9.  It is anticipated that these reports will

provide summary information, preferably in the form of narrative

tables.  Notification to U.S. EPA, Ohio EPA, or ORSANCO pursuant

to this Paragraph of any anticipated delay, shall not, by itself,

excuse the delay.

B.    Defendants also shall include in the quarterly reports

required by Paragraph XV.A a description of whether any CSO or

bypass that occurred in the previous Calendar Quarter was caused

by Defendants' failure to comply with their Operation and

Maintenance Program (SSO Consent Decree Exhibit 7), their

Pump/Lift Station Operation and Maintenance Procedures (SSO

Consent Decree Exhibit 9), or the operation and maintenance

requirements of Defendants' Current Permits applicable to Defendants' Sewer System or Wastewater Treatment Plants; or whether Defendants' failure to comply with any of these O&M requirements contributed to the volume or the duration of any CSO or bypass that occurred in the previous Calendar Quarter.

C.    Defendants also shall include in the quarterly reports required by Paragraph XV.A, a report concerning implementation of the Water-in-Basement Program, required by Section XIII and Exhibits 6, 7, and 8.  This report shall include for the previous calendar quarter: 1) as to the Water-in-Basement Prevention Program (Exhibit 6), the date and address of any requests for installation of devices, the date and disposition of any such requests (including what type of device, if any, was installed), the address, date, and disposition of any other investigations or installations that defendants initiate under the program; 2) as to the Water-in-Basement Customer Service Program (Exhibit 7), the address of each customer that has requested customer service under the program, the date of the request, the disposition of the request (e.g., service request denied, initial investigation completed, cleanup completed) and the date of the disposition; 3) as to the Water-in-Basement Claims Program (Exhibit 8), the address of the claimant, the date the claim was made, the amount of the claim, the disposition of the claim (including the amount paid if any), the date of the disposition, or whether the claim

52

is still pending.  In addition, defendants shall report annually,
beginning with the quarterly report submitted after the first
anniversary of the Date of Lodging of this Decree, the amount
Defendants spent in the previous year on remedial measures under
the WIB Prevention Program (Exhibit 6).


## XVI. DOCUMENT RETENTION/CERTIFICATION OF SUBMISSIONS

A.    Defendants shall maintain copies of any underlying
research and data in their possession, custody or control for any
and all documents, reports, or permits submitted to U.S. EPA/Ohio
EPA/ORSANCO pursuant to this Consent Decree for a period of five
(5) years after submission.  Defendants shall require any
independent contractor(s) implementing this Consent Decree to
also retain such materials for a period of five (5) years.
Defendants shall submit such supporting documents to U.S.
EPA/Ohio EPA/ORSANCO upon request.

B.    At the conclusion of this document retention period,
Defendants shall notify U.S. EPA, Ohio EPA, ORSANCO, U.S.
Department of Justice, and the Ohio Attorney General at least 90
days prior to the destruction of any such materials, and upon
request by any of these agencies, Defendants shall deliver any
such materials to that agency or other specified agency.

C.    In all notices, documents or reports submitted to the
United States, the State, and ORSANCO pursuant to this Consent

Decree, Defendants shall, by a senior management official, sign
and certify such notices, documents and reports as follows:

> I certify under penalty of law that this document and
> all attachments were prepared under my direction or
> supervision in accordance with a system designed to
> assure that qualified personnel properly gather and
> evaluate the information submitted.  Based on my
> inquiry of the person or persons who manage the system,
> or those persons directly responsible for gathering
> such information, the information submitted is, to the
> best of my knowledge and belief, true, accurate and
> complete.  I am aware that there are significant
> penalties for submitting false information, including
> the possibility of fine and imprisonment for knowing
> violations.

## XVII.    STIPULATED PENALTIES

A.   Defendants shall pay stipulated penalties, as set forth
below, for each day they fail to timely submit submittals or meet
any of the milestones or requirements set forth in Paragraphs
XVII.C through XVII.H, below.  Except as provided in Paragraph
XVII.H, one-third of the total stipulated penalty amount due
shall be paid to the United States, one-third shall be paid to
the State, and one-third shall be paid to ORSANCO.  All
stipulated penalties arising under this Section shall, in the
first instance, be levied against funds collected under Section
6117 of the Ohio Revised Code for the operation of MSD to the
extent such funds are available, without limitation on recourse
by the United States, the State, or ORSANCO in the event that
such funds are not available within the sixty (60) day period for

payment specified by Paragraph XVII.J or are insufficient to pay such stipulated penalties.

B.    "Timely submit", as used in this Section, shall mean that the submittal is made by the date specified in this Consent Decree or in a document approved pursuant to this Consent Decree. "Timely submit" shall further mean that the submittal must include all of the elements pertaining to the submittal as set forth in this Consent Decree or in a document approved pursuant to this Consent Decree.

C.    **Stipulated Penalties for Critical Path Submittals and Critical Remedial Milestones**

1.    Defendants shall be subject to the following stipulated penalties for a failure to timely submit the submittals listed in Subparagraph XVII.C.2, below, or for a failure to meet the critical remedial milestones set forth in Subparagraph XVII.C.2, below, in accordance with all requirements and objectives provided under this Consent Decree or in submittals subsequently approved by U.S. EPA/Ohio EPA/ORSANCO pursuant to the provisions of this Consent Decree:

|  |  |
|---|---|
| 1-30 days | $1500/day |
| 31-60 days | $3000/day |
| over 60 days | $5000/day |

2.   The following submittals are "critical path submittals," subject to the stipulated penalties of Subparagraph XVII.C.1, above:

- Long Term Control Plan Update Report
- Addendum to the Long Term Control Plan Update
- Revised Long Term Control Plan Update
- CAPP Addendum
- Post-Construction Monitoring Study Work Plan
- Final Post-Construction Monitoring Report
- Maximization of Transport and Storage Report
- Non-High Water Dry Weather Overflow Report
- Control of Solid and Floatable Materials in CSOs Report

The following deadlines are "critical milestones," subject to the stipulated penalties of Subparagraph XVII.C.1, above:

- the Dates for Substantial Completion of Construction for each CIP set forth in Exhibit 1
- the "critical construction milestones" set forth in the construction schedules contained in the approved Long Term Control Plan Update, Addendum to the Long Term Control Plan Update or Revised Long Term Control Plan Update
- the "critical construction milestones," as required by Subparagraph VII.E.5 of the SSO

56

Decree, set forth in the construction schedules
contained in the approved Capacity Assurance
Program Plan and/or Capp Addendum

- the date for completion of all measures under the
  Minor Modification Implementation Plan, as
  required by Subparagraph XI.C.4, set forth in the
  approved Maximization of Transport and Storage
  Report

- the date for completion of all measures under the
  Non-High Water Dry Weather Overflow Reduction
  Implementation Plan, as required by Subparagraph
  XI.D.4, set forth in the approved Non-High Water
  Dry Weather Overflow Report

**D.    Stipulated Penalties for Reporting Requirements**

Defendants shall be subject to the following stipulated penalties
for a failure to timely submit any of the reports required by
Section XV or any post-construction monitoring reports required
by Paragraph X.B of this Consent Decree:

|  |  |
|---|---|
| 1-7 days | $500/day |
| 8-60 days | $1000/day |
| over 60 days | $1500/day |

57

E.    Stipulated Penalties for Bypasses, CSOs, Unpermitted
Overflows, and SSDs

1.    Bypasses and Pre-Remedial Measures CSOs and
Unpermitted Overflows

Defendants shall be subject to stipulated civil penalties of
$1000 per day for each day of each bypass, CSO or Unpermitted
Overflow that was caused by Defendants' failure to comply with
their O&M Program (SSO Decree Exhibit 7), their Pump/Lift Station
O&M Procedures (SSO Decree Exhibit 9), the operation and
maintenance requirements of Defendants' Current Permits
applicable to Defendants' Sewer System, or the operation and
maintenance requirements of Defendants' Current Permits
applicable to Defendants' Wastewater Treatment Plants; or for
which Defendants' failure to comply with any of these O&M
requirements contributed to the volume or the duration of such
CSO or bypass.  These stipulated civil penalties shall be in
addition to any stipulated penalties under Paragraph XI.H of the
SSO Decree for Defendants' failure to comply with their O&M
Program (SSO Decree Exhibit 7) or their Pump/Lift Station O&M
Procedures (SSO Decree Exhibit 9); or under Paragraph XVII.F of
this Consent Decree for Defendants' failure to comply with the
operation and maintenance requirements of Defendants' Current
Permits applicable to Defendants' Sewer System and Wastewater
Treatment Plants.  Defendants shall not be liable for stipulated

58

penalties under this subparagraph for CSOs or Unpermitted
Overflows for which Defendants are liable for stipulated
penalties under subparagraph XVII.E.2.

    2.   CSOs and Unpermitted Overflows Following
Completion of Remedial Measures Specified in the Long Term
Control Plan Update

    (a)  Except as provided in Subparagraphs
XVII.E.2(b)-(c), Defendants shall be subject to a stipulated
penalty of $3000 per day for each day of each CSO or Unpermitted
Overflow that violates the Clean Water Act, U.S. EPA's CSO
Policy, the Compact and the pollution control standards
promulgated thereunder, or any of Defendants' Current Permits
that occurs after the later of 1) the date for completion of all
remedial measures specified in the Long Term Control Plan Update,
the Addendum to the Long Term Control Plan Update, or the Revised
Long Term Control Plan Update, as applicable, or 2) any schedule
completion date extensions or revisions that are made pursuant to
Paragraph VII.C of this Consent Decree.  However, U.S. EPA/Ohio
EPA/ORSANCO will not demand payment for stipulated penalties
under this subparagraph until after the two-year evaluation
period set forth in Paragraph VII.C of this Consent Decree and
shall not be entitled to stipulated penalties under this
subparagraph for CSOs or Unpermitted Overflows that occur prior
to the later of 1) the date for completion of all remedial

59

measures specified in the Long Term Control Plan Update, the
Addendum to the Long Term Control Plan Update, or the Revised
Long Term Control Plan Update, as applicable, or 2) any schedule
completion date extensions or revisions that are made pursuant to
Paragraph VII.C of this Consent Decree.

(b)    Defendants shall not be liable for
stipulated penalties under Subparagraph XVII.E.2(a) during the
six month period (a "shake down" period) following the date for
completion of all remedial measures specified in the Long Term
Control Plan Update, the Addendum to the Long Term Control Plan
Update, or the Revised Long Term Control Plan Update, as
applicable.

(c)    Defendants shall not be liable for
stipulated penalties for CSOs or Unpermitted Overflows that are
caused by a ten-year or greater storm event.

3.    <u>SSDs Following Completion of Capacity Assurance
Program Plan</u>

(a)    This Consent Decree does not include
provisions governing stipulated penalties for SSDs that occur
from any location prior to completion of the remedial measures
set forth in the Capacity Assurance Program Plan because
stipulated penalties for those SSDs are covered by Subparagraph
XI.E.1 of the SSO Decree.

60

(b)    Except as provided in Subparagraphs
XVII.E.3(c)-(d), Defendants shall be subject to a stipulated
penalty of $3000 per day for each day of each SSD within any Sub-
Basin that occurs after the later of: (1) the date for completion
of all remedial measures for the particular Sub-Basin pursuant to
the Capacity Assurance Program Plan of the SSO Decree; or (2) any
schedule completion date extensions or revisions that are made
for that Sub-Basin pursuant to Paragraph VIII.B of this Consent
Decree.  However, U.S. EPA/Ohio EPA/ORSANCO will not demand
payment for stipulated penalties under this subparagraph until
after the two-year evaluation period set forth in Paragraph
VIII.B of this Consent Decree and shall not be entitled to
stipulated penalties under this subparagraph for SSDs that occur
prior to the later of the date for completion of all remedial
measures for the particular Sub-Basin pursuant to the Capacity
Assurance Program Plan of the SSO Decree or any schedule
completion date extensions or revisions for that particular Sub-
Basin that are made pursuant to Paragraph VIII.B of this Consent
Decree.

(c)    Defendants shall not be liable for
stipulated penalties under Subparagraph XVII.E.3(b) during the
six month period (a "shake down" period) following the date for
completion of all remedial measures for the particular Sub-Basin
pursuant to the Capacity Assurance Program Plan.

61

(d)    Defendants shall not be liable for stipulated penalties for SSDs that are caused by a ten-year or greater storm event.

**F.    Stipulated Penalties for Violations of Exhibits, Submittals, and Permit O&M Requirements**

Unless already addressed in Paragraphs XVII.C-XVII.E, failure to comply with any of the following requirements shall subject Defendants to a stipulated penalty of $2,000 per day for each violation:

1.    The operation and maintenance requirements of Defendants' Current Permits applicable to Defendants' Sewer System and Wastewater Treatment Plants.

2.    Material requirements set forth in the following Exhibits or submittals (subsequently approved by U.S. EPA/Ohio EPA/ORSANCO pursuant to the provisions of this Consent Decree):

- Public Participation Plan (Exhibit 2)
- Monitoring and Modeling Work Plan (Exhibit 3)
- Long Term Control Plan Update Work Plan (Exhibit 4)
- Long Term Control Plan Update
- Addendum to Long Term Control Plan Update
- Revised Long Term Control Plan Update
- CAPP
- CAPP Addendum

62

- Post-Construction Monitoring Study Work Plan
- CSO Public Notification Program (Exhibit 5)
- Minor Modification Implementation Plan
- Non-high Water Dry Weather Overflow Reduction Plan
- Water-in-Basement Prevention Plan (Exhibit 6)
- Water-in-Basement Customer Service Program Plan (Exhibit 7)
- Water in Basement Claim Process Plan (Exhibit 8)

G. **Stipulated Penalties for Violations of Effluent Limitations; Monitoring, Record-keeping and Reporting Requirements; and Control of Solid and Floatables Requirements**

1. Effluent Limit Violations

Defendants shall be subject to the following stipulated penalties for failure to comply as required by Section XII of this Consent Decree with any effluent limitations in Defendants' Current Permits applicable to Defendants' WWTPs:

| | |
|---|---|
| Daily Effluent Limit | $1,000 per violation |
| 7-Day Average Limit | $2,000 per 7-Day violation |
| 30-Day Average Limit | $8,000 per 30-Day violation |

Loading limits and concentration limits for the same parameter are separate effluent limitations so that, for example, a violation of a 7-Day concentration limitation for suspended solids and a violation of a 7-Day loading limitation for suspended solids are separate violations. However, if Defendants

63

violate both the 7-Day average concentration limit and the 7-Day loadings limit for the same pollutant parameter for the same period of time at the same WWTP, Defendants shall only be subject a stipulated penalty for one of those violations. If Defendants violate a 30-Day average limit, Defendants shall not be subject to stipulated penalties for any violations of 7-Day average limitations for the same parameter that occurred during that 30-Day period at the same WWTP.

    2. <u>Monitoring, Record-keeping, Reporting; and Control of Solids and Floatables Requirements</u>

Defendants shall be subject to the following stipulated penalties per day per violation for failure to comply with the monitoring, record-keeping, or reporting requirements of Defendants' Current Permits applicable to Defendants' WWTPs as required by Section XII of this Consent Decree, or the requirements in Defendants' Current Permits regarding control of solid and floatable materials in CSOs as required by Paragraph XI.E of this Consent Decree:

| | |
|---|---|
| 1-7 days | $500/day |
| 8-60 days | $1000/day |
| over 60 days | $1500/day |

**H.  Stipulated Penalties for the Supplemental Environmental Projects**

Defendants shall be subject to the following stipulated penalties for a failure to meet the milestones set forth in the SEP Plan (Exhibit 9), in accordance with all requirements and objectives provided under this Consent Decree or in submittals subsequently approved by U.S. EPA/Ohio EPA/ORSANCO pursuant to the provisions of this Consent Decree, or failure to timely submit the SEP Completion Reports, required by Paragraph XIV.D in accordance with the requirements of this Consent Decree:

| Period of Noncompliance | Penalty per Milestone Date per Day of Violation |
|---|---|
| 1st to 30th day | $ 1,000 |
| 31st to 60th day | $ 1,500 |
| After 60 days | $ 2,250 |

In addition, if the total amount expended on implementing the SEPs (including any SEP(s) pursuant to Section V (Additional Projects) of the SEP Plan) is less than $5.3 million, Defendants shall be subject to a stipulated penalty equal to the difference between the amount spent and $5.3 million. Penalties under this paragraph shall be paid, upon demand, 50% to the United States and 50% the State, in accordance with the provisions of Paragraphs XVII.I - XVII.L.

I.   Stipulated civil penalties shall automatically begin to accrue on the first day Defendants fail either to meet any of the schedules of performance required by this Consent Decree or to

satisfy any other obligation or requirement of this Consent
Decree.

J.    Stipulated civil penalties shall be paid to all
Plaintiffs within sixty (60) days of a written demand by any
Plaintiff for payment of any stipulated penalty owing pursuant to
this Consent Decree.  The Plaintiff making a demand for payment
of a stipulated penalty shall simultaneously send a copy of the
demand to the other Plaintiffs.  Any Plaintiff may, in the
exercise of its unreviewable discretion, waive its right to any
or all of its portion of the stipulated penalty amount.

K.    Penalties owed to the United States shall be paid by
submitting a cashier's or certified check payable to "Treasurer,
United States of America", and shall be tendered to U.S. EPA
Region V, Post Office Box 70753, Chicago, Illinois 60673.  The
transmittal letter accompanying the check shall specify the
caption and docket number of this action, the facility and the
violations for which the stipulated penalties are being paid, and
DOJ Ref. No. 90-5-1-6-341A.  A copy of the letter and the check
shall simultaneously be sent to U.S. EPA Region V, Water
Compliance Branch, Compliance Section, WCC-15J, 77 West Jackson
Boulevard, Chicago, Illinois 60604, and to Chief, Environmental
Enforcement Section, United States Department of Justice, Post
Office Box 7611, Washington, D.C. 20044-7611.

L.    Penalties owed to the State shall be paid by submitting a cashier's or certified check payable to "Treasurer, State of Ohio", and shall be tendered to Administrative Assistant, Ohio Attorney General's Office, 30 E. Broad Street, 25th floor, Columbus, Ohio  43215-3400.  The transmittal letter accompanying the check shall specify the caption and docket number of this action and the facility and the violations for which the stipulated penalties are being paid.  A copy of the letter and the check shall simultaneously be sent to Enforcement Coordinator, Division of Surface Water, P.O. Box 1049, Columbus, Ohio 43216.

M.    Penalties owed to ORSANCO shall be paid by submitting a cashier's or certified check payable to, "Executive Director, Ohio River Valley Water Sanitation Commission," and shall be tendered to Ohio River Valley Water Sanitation Commission, 5735 Kellogg Avenue, Cincinnati, Ohio 45228.  The transmittal letter accompanying the check shall specify the caption and docket number of this action, and reference the facility and the violations for which the stipulated penalties are being paid.

N.    In the event that a stipulated civil penalty is not paid within sixty (60) days of a written demand as required by Paragraph XVII.J, the stipulated civil penalty shall, upon written demand of the United States, be payable with interest from the original due date (sixty days after the written demand)

67

to the date of payment, at the statutory judgment rate set forth
at 28 U.S.C. § 1961(a).

O.    Payment of stipulated civil penalties as set forth
above shall be in addition to any other rights or remedies that
may be available to the United States, the State, ORSANCO, or
their agencies by reason of the Defendants' failure to comply
with requirements of this Consent Decree, and all applicable
Federal, state or local laws, regulations, the Compact and
pollution control standards promulgated thereunder, NPDES
permit(s) and all other applicable permits.   The payment of such
stipulated penalties shall not be construed to relieve Defendants
from specific compliance with this Decree, applicable federal or
State law, or the Compact and the pollution control standards
promulgated thereunder, nor shall it limit the authority of U.S.
EPA, Ohio EPA, or ORSANCO to require compliance with such laws.

## XVIII.    **FORCE MAJEURE BETWEEN DEFENDANTS AND THE UNITED STATES**

A.    If any event occurs that causes or may cause Defendants
to violate any provision of this Consent Decree, Defendants shall
notify U.S. EPA in writing within fourteen (14) days from the
date Defendants first knew, or in the exercise of reasonable
diligence should have known, that compliance with the Consent
Decree would be prevented or delayed.   The notice shall reference
this Section of the Consent Decree and shall describe in detail

68

the anticipated length of time the violation may persist, the
precise cause or causes of the violation, the measures taken or
to be taken by Defendants to prevent or minimize the violation
and the timetable by which those measures will be implemented.
Defendants shall adopt all reasonable measures to avoid or
minimize any such violation.  Defendants shall make all
reasonable efforts to identify events that cause or may cause a
violation of this Consent Decree.  Failure by Defendants to
comply with the notice requirements of this Paragraph shall
constitute a waiver of Defendants' rights to obtain an extension
of time or other relief under this Section based on such
incident.

    B.    If U.S. EPA agrees that the violation has been or will
be caused by circumstances beyond the control of Defendants or
any entity controlled by it, including its consultants and
contractors, and that Defendants could not have prevented such
violation, the time for performance of the requirement in
question may be extended for a period not to exceed the actual
delay resulting from such circumstance, and stipulated penalties
shall not be due for such delay or non-compliance.  In the event
U.S. EPA does not agree that the violation was caused by
circumstances beyond the control of the Defendants and notifies
Defendants of such determination, Defendants may invoke the

69

dispute resolution provisions in Section XXI of this Consent Decree.

C.   If Defendants invoke dispute resolution and U.S. EPA or the Court determines that the violation was caused by circumstances beyond the control of Defendants or any entity controlled by it, and that Defendants could not have prevented such violation, Defendants shall be excused as to that violation, but only for the period of time the violation continues due to such circumstances.

D.   Defendants shall bear the burden of proving that any delay or violation has been or will be caused by circumstances beyond its control, and that Defendants could not have prevented such violation, as set forth above.  Defendants shall also bear the burden of establishing the duration and extent of any delay or violation attributable to such circumstances, that such duration or extent is or was warranted under the circumstances and that, as a result of the delay, a particular extension period is appropriate.  An extension of one compliance date based on a particular circumstance beyond Defendants' control shall not automatically extend any subsequent compliance date or dates.

E.   Changed financial circumstances or unanticipated or increased costs or expenses associated with implementation of this Consent Decree, shall not serve as a basis for excusing violations of or granting extensions of time under this Decree,

70

except as provided in Section IX (Completion of Construction
Deadlines). Failure to apply for a required permit or approval
or to provide in a timely manner all information required to
obtain a permit or approval that is necessary to meet the
requirements of this Consent Decree shall not, in any event, be
considered Force Majeure events.

F.    Defendants shall make a showing of proof regarding the
cause of each delayed incremental step or other requirement for
which an extension is sought. Defendants may petition for the
extension of more than one compliance date in a single request.

## XIX. POTENTIAL FORCE MAJEURE BETWEEN DEFENDANTS AND THE STATE

A.    If any event occurs that causes or may cause the
Defendants to violate any provision of this Consent Decree,
Defendants shall notify the Ohio EPA in writing within fourteen
(14) days from when they knew, or in the exercise of reasonable
diligence under the circumstances should have known, that
compliance with the Decree would be prevented or delayed,
describing in detail the precise cause or causes of the delay or
violation, the anticipated length of the delay if applicable, the
measures taken by Defendants to prevent or minimize the delay and
the timetable by which those measures will be implemented.
Defendants shall adopt all reasonable measures to avoid or
minimize any such violation. Defendants shall make all

71

reasonable efforts to identify events that cause or may cause a violation of this Consent Decree.

B.    In any action by the State of Ohio to enforce any of the provisions of this Consent Decree, Defendants may raise at that time the question of whether they are entitled to a defense that their conduct was caused by circumstances beyond their control such as, by way of example and not limitation, acts of God, strikes, acts of war or civil disturbances.  While the State of Ohio does not agree that such a defense exists, it is, however, hereby agreed by Defendants and the State of Ohio that it is premature at this time to raise and adjudicate the existence of such a defense and that the appropriate point at which to adjudicate the existence of such a defense is at the time, if ever, that the proceeding to enforce this Consent Decree is commenced by the State.  At that time the burden of proving that any delay was or will be caused by circumstances beyond the control of Defendants shall rest with Defendants.  Failure by Defendants to timely comply with the notice requirements of Paragraph XIX.A shall, at the option of Ohio EPA, constitute a waiver by Defendants of any right they may have to raise such a defense.  Changed financial circumstances or increased costs associated with the implementation of any action required by this Consent Decree shall not in any event constitute circumstances entirely beyond the control of Defendants or serve as a basis for

72

an extension of time under this Decree, except as provided in
Section IX (Completion of Construction Deadlines).

## XX.  FORCE MAJEURE BETWEEN DEFENDANTS AND ORSANCO

A.   If any event occurs that causes or may cause Defendants
to violate any provision of this Consent Decree, Defendants must
give ORSANCO written notice within fourteen (14) days from the
date that Defendants first knew, or in the exercise of reasonable
diligence should have known, that they faced the threat of
prevention or delay of timely compliance with this Decree.  The
notice to ORSANCO shall reference this Section of the Consent
Decree, and shall describe in detail how long the Defendants
anticipate the violation will persist, the precise cause or
causes thereof, any measures Defendants have taken or will take
to prevent or minimize the violation, and the timetable for
implementing those measures.  Defendants shall adopt all
reasonable measures to avoid violations, and to minimize any
violations that do occur.  Defendants' failure to comply with
notice provisions of this paragraph shall waive Defendants'
rights to an extension of time or other relief under this Section
based on a Force Majeure incident.

B.   If ORSANCO agrees that the violation has been or will
be caused by circumstances beyond the control of Defendants,
their agents, or any entity controlled by them, including their

contractors and consultants, ORSANCO may extend time for performance to reflect but not exceed the actual delay caused by the circumstances.  If ORSANCO agrees that a Force Majeure event caused the delayed or failed compliance, ORSANCO agrees to waive any stipulated penalties due it, or other remedies available to it for such delayed or failed compliance.  If ORSANCO notifies Defendants that it does not agree that circumstances beyond Defendants' control caused the violation, Defendant may invoke the dispute resolution provisions contained in Section XXI of this Consent Decree.

C.    If Defendants invoke dispute resolution, and ORSANCO or the Court concludes that the violation was caused by circumstances beyond the control of Defendants, their agents, or any entity controlled by them, and that Defendants could not have prevented the violation, Defendants shall be excused for that violation, but only for the period of time the violation persists due to such circumstances.

D.    Defendants bear the burden of proof for proving that any delay or violation was caused by circumstances beyond their control, and beyond their power to prevent.  Defendants shall also bear the burden of proving the duration and extent of any delay or violation caused by uncontrollable circumstances. Defendants must also prove that the delay caused by such uncontrollable circumstances warranted an extension.  An

74

extension granted on the basis of a particular uncontrollable circumstance shall not automatically extend any subsequent compliance date or dates.

E.    Neither changed financial conditions nor unanticipated increased costs or expenses arising from implementation of this Consent Decree shall excuse violations or warrant granting extensions for compliance with this Decree, except as provided in Section IX (Completion of Construction Deadlines).  Defendants' failure to timely apply for a required permit or approval, or to provide all required information to obtain such permit or approval, will not constitute a Force Majeure event.

F.    Defendants shall show proof regarding the cause of each delayed incremental step or other requirement for which they seek an extension.  Defendants may seek an extension of more than one compliance date in a single request.


## XXI. DISPUTE RESOLUTION

A.    This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and for the purpose of adjudicating all disputes among the Parties (including ORSANCO) that may arise under the provisions of this Consent Decree, to the extent that Paragraph XXI.D, below, provides for resolution of disputes by the Court.

B.    The issuance, renewal, modification, denial or
revocation of a permit and the issuance of orders or other
actions of the Director of Environmental Protection (Ohio EPA),
including but not limited to decisions with respect to revisions
to water quality standards, are not subject to dispute resolution
under this Decree but, rather, shall be subject to challenge
under Chapter 3745, Ohio Revised Code.  The term "actions of the
Director of Environmental Protection" shall be consistent with
the definitions set forth in Chapter 3745, Ohio Revised Code.

C.    U.S. EPA actions to approve, disapprove, or promulgate
new or revised water quality standards pursuant to 33 U.S.C.
§ 1313(c), and to object, not object or issue NPDES permits
pursuant to 33 U.S.C. § 1342, are not subject to dispute
resolution under this Decree.

D.    Except as provided in paragraphs XXI.B and C, above,
any dispute that arises with respect to the meaning, application,
implementation, interpretation, amendment or modification of this
Consent Decree, or with respect to Defendants' compliance
herewith (including the adequacy of the Defendants' performance
of the remedial measures and adequacy of the submittals required
by this Decree) or any delay hereunder, the resolution of which
is not expressly provided for in this Consent Decree, shall in
the first instance be the subject of informal negotiations.  If
any Party believes it has a dispute with any other Party, it

76

shall notify all the other Parties in writing, including notice
to the U.S. Department of Justice and the Ohio Attorney General,
setting forth the matter(s) in dispute, and the Parties will
proceed initially to resolve the matter in dispute by informal
means.  Such period of informal negotiations shall not exceed
thirty (30) days from the date the notice was sent, unless the
Parties agree otherwise.

     E.   In order for ORSANCO to take any position in either
informal or formal dispute resolution that is materially
different from the position taken by the United States and the
State, ORSANCO must obtain the approval of its Executive
Committee and the approval of two-thirds of the commissioners
from the State of Ohio.  Further, ORSANCO bears the burden of
showing that its position will assure Defendants' compliance in a
manner more appropriate with, the terms, conditions, requirements
and objectives of this Consent Decree, the Clean Water Act,
R.C. 6111, and the Compact than the position advanced by the
United States and the State.

     F.   If the informal negotiations are unsuccessful, the
position of the United States and the State and ORSANCO (assuming
its position is not materially different) shall control unless,
within twenty (20) days after the conclusion of the informal
negotiation period, the Defendants or ORSANCO (assuming its
position is materially different) (hereinafter, "Petitioner(s)")

77

invoke the formal dispute resolution procedures of this Section
by serving on the other Parties, including on U.S. DOJ and the
Ohio Attorney General, a written statement of position on the
matter in dispute.

G.    Within thirty (30) days of receiving the Petitioner's
statement of position, the United States and/or the State and/or
ORSANCO (assuming it is not the Petitioner) will serve on the
Petitioner and the other Parties its/their written statement of
position.

H.    The United States' and/or the State's and/or ORSANCO's
(assuming it is not the Petitioner) statement of position shall
control unless Petitioner files a petition with the Court
describing the nature of the dispute and a proposal for its
resolution.  Such petition must be filed no more than twenty (20)
days after receipt of the United States' and/or the State's
and/or ORSANCO's (assuming it is not the Petitioner) statement of
position.  The other Parties shall then have 30 days to file a
response setting forth its/their position and proposal for
resolution.  In any such dispute, the Petitioner shall have the
burden of proof, and the standard of review shall be that
provided by applicable law.

I.    Submission of any matter to the Court for resolution
shall not extend any of the deadlines set forth in this Consent

Decree, unless the Parties agree to such extension in writing or the Court allows the extension upon motion.

J.    If the United States and the State provide Defendants with materially different or irreconcilable positions on the issue(s) in dispute, or if ORSANCO has provided a materially different position on the issue than that provided by the United States and the State and has invoked dispute resolution with respect to such different position, Defendants' obligation to perform an action necessarily affected by the materially different or irreconcilable positions (and Defendants' liability for stipulated penalties concerning such obligation) shall be stayed until the dispute is resolved.

K.    Stipulated penalties with respect to any disputed matter (and interest thereon) shall accrue in accordance with Paragraphs XVII.I and XVII.J; however, payment of stipulated penalties, and any accrued interest, shall be stayed pending resolution of the dispute, as follows:

1.    If the dispute is resolved by informal agreement before appeal to this Court, Defendants shall pay accrued penalties (and interest), if any, determined to be owing within 60 days of the agreement or the receipt of the United States' and/or the State's and/or ORSANCO's (assuming its position is not materially different) final position in writing.

2.   If the dispute is appealed to this Court and the United States and/or the State and/or ORSANCO (assuming its position is not materially different) prevails in whole or in part, Defendants shall pay all accrued penalties (and interest) determined to be owing within 60 days of the Court's decision or order.

3.   In the event of an appeal, Defendants shall pay all accrued penalties (and interest) determined to be owing within 60 days of a final decision no longer subject to judicial review.

## XXII.     CIVIL PENALTY

A.   Defendants shall pay a civil penalty of $1.2 million (plus interest thereon) to the United States and the State of Ohio as required by Paragraph XXII.B.  In lieu of paying $100,000 of this civil penalty to the State of Ohio, Defendants shall pay $100,000 to ORSANCO, as provided in Paragraph XXII.B, as partial funding to support ORSANCO's work to: 1) develop Wet Weather Bacterial Water Quality Standards for the Ohio River and 2) develop TMDLs for pollutants of concern in the Ohio River in the area around and below Cincinnati.  The Parties all acknowledge: 1) that the payment to ORSANCO is being made by Defendants in satisfaction of a portion of the Defendants' civil penalty

liability to the State of Ohio; and 2) that Defendants do not owe
ORSANCO a civil penalty in this matter.

B.    Within 45 days after the Date of Lodging of this
Consent Decree, Defendants shall deposit the amount of $1.2
million into an escrow account bearing interest on commercially
reasonable terms, in a federally-chartered bank (the "Escrow
Account").  Such monies shall remain in escrow until entry of the
Decree.  If the Decree is not entered by the District Court, and
the time for any appeal of that decision has run, or if the
District Court's denial of entry is upheld on appeal, the monies
placed in escrow, together with accrued interest thereon, shall
be returned to Defendants.  If the Decree is entered by the
District Court, Defendants shall, within 15 days thereof, cause
the monies in the Escrow Account to be released and disbursed as
follows: $600,000 and interest thereon to the United States;
$500,000 and the interest on $600,000 to the State, and $100,000
to ORSANCO, as follows:

1.    Payment to the United States shall be made by
FedWire Electronic Funds Transfer ("EFT") to the U.S. Department
of Justice in accordance with instructions to be provided to
Defendant following lodging of the Consent Decree by the
Financial Litigation Unit of the U.S. Attorney's Office for the
Southern District of Ohio.  At the time of payment, Defendants
shall simultaneously send written notice of payment and a copy of

any transmittal documentation (which should reference the civil action number and DOJ case number 90-5-1-6-341A) to the United States in accordance with Paragraph XVII.K, above.

2.  Payment to Ohio shall be made by cashier's check or certified funds, payable to "Treasurer, State of Ohio," and shall be sent to:

> Jena Suhadolnik, Administrative Assistant (or a person
> subsequently designated by the State of Ohio) at:
> Office of the Attorney General
> Environmental Enforcement Section
> 30 East Broad Street, 25th Floor
> Columbus, Ohio 43215-3400

Payment may also be made by electronic transfer to the designated accounts pursuant to instructions sent by Ohio upon request by Defendants.  A copy of the check and transmittal letter or other evidence of payment shall be sent to Ohio and Ohio EPA at the addresses set forth in Paragraph XXII.K, above.

3.  Payment to ORSANCO shall be made by cashier's or certified check payable to, "Executive Director, Ohio River Valley Water Sanitation Commission," and shall be tendered to Ohio River Valley Water Sanitation Commission, 5735 Kellogg Avenue, Cincinnati, Ohio 45228.  The transmittal letter accompanying the check shall specify the caption and docket number of this action.

C.  In the event of late payment of the civil penalty required to be paid under this Section, Defendant shall pay a

82

stipulated penalty of $200.00 per day for each day that the
payment is late.  Stipulated penalties shall, as directed by the
United States, be paid by EFT, or by certified or cashier's check
in the amount due payable to the "U.S. Department of Justice,"
referencing the civil action number of this case and DOJ No. 90-
5-1-6-341A and delivered to: Financial Litigation Unit, Office of
the United States Attorney, Southern District of Ohio, 303
Marconi Boulevard, Suite 200 Columbus, Ohio 43215.  All
transmittal correspondence shall state that any such payment
tendered is for late payment of the civil penalty or for
stipulated penalties for late payment, as applicable, and shall
include the identifying information set forth in Paragraph
XXII.B.1, above.  The United States shall be entitled to collect
the costs (including attorneys fees) incurred in any action
necessary to collect any portion of the civil penalty or any
stipulated penalties for late payment of the civil penalty.


XXIII.    **RIGHT OF ENTRY**

     A.   Until termination of this Consent Decree, the United
States, the State, and ORSANCO and their authorized
representatives and contractors, shall have authority at all
reasonable times, upon the presentation of credentials, to enter
Defendants' premises to:

1.    Monitor the progress of activities required by this Consent Decree;

2.    Verify any data or information submitted to the United States and/or the State;

3.    Obtain samples from the WWTPs and Sewer System;

4.    Inspect and evaluate Defendants' WWTPs and Sewer System; and

5.    Inspect and review any records required to be kept under the terms and conditions of this Consent Decree or any NPDES Permit and the Clean Water Act.

B.    The United States, the State, and ORSANCO agree to provide Defendants an opportunity to obtain split samples of wastewater samples taken by the United States, the State, or ORSANCO from the Sewer System. The United States, the State, and ORSANCO further agree to provide Defendants with the quality assured/quality controlled laboratory analytical results of samples obtained from the Sewer System, and any non-privileged (including non-attorney work product) reports prepared concerning such results. The United States, the State, and ORSANCO will use best efforts to coordinate field inspections of the Sewer System with Defendants by notifying them, if practicable, of such inspections prior to arrival at the field inspection location.

84

XXIV.    **NOT A PERMIT/COMPLIANCE WITH OTHER STATUTES/REGULATIONS**

A.    This Consent Decree is not and shall not be construed as a permit, or a modification of any existing permit, issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, nor shall it in any way relieve Defendants of their obligations to obtain permits for their wastewater treatment facilities and discharges and to comply with the requirements of any NPDES permit or with any other applicable federal or state law or regulation, including the obligation to obtain Permits to Install, the Compact, and the pollution control standards promulgated thereunder.  Any new permit, or modification of existing permits, must be complied with in accordance with applicable federal and State laws and regulations and the Compact and the pollution control standards promulgated thereunder.

B.    The pendency or outcome of any proceeding concerning issuance, reissuance or modification of any NPDES permit shall not affect or postpone Defendants' responsibilities under this Decree.  However if a permitting authority receives a timely, approvable application for a permit, renewal or modification, and the permitting authority does not issue the permit, renewal or modification or take a proposed action on the application in a timely manner, the Defendants may seek relief under the force majeure provisions of this Consent Decree.

85

C.    Nothing herein, including the United States', the State's, and ORSANCO's review or approval of any plans, reports, policies or procedures formulated pursuant to this Consent Decree, shall be construed as relieving Defendants of the duty to comply with the Clean Water Act, the regulations promulgated thereunder, and all applicable permits issued thereunder; with State law and the regulations promulgated thereunder; or with the Compact and the pollution control standards promulgated thereunder.

## XXV. FAILURE OF COMPLIANCE

The United States, the State, and ORSANCO do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' complete compliance with this Consent Decree will result in compliance with the provisions of the Clean Water Act, 33 U.S.C. §§ 1251 et seq., R.C. 6111, the Compact or the pollution control standards promulgated thereunder, or with Defendants' NPDES permits.

## XXVI.    EFFECT OF CONSENT DECREE AND NON-WAIVER PROVISIONS

A.    Nothing contained in this Consent Decree shall be construed to prevent or limit the United States' or the State's rights to obtain penalties or further or additional injunctive relief under the Clean Water Act or other federal statutes or

86

regulations, including, but not limited to, criminal punishment under Section 309(c) of the Act, 33 U.S.C. § 1319(c), or state laws and regulations respectively except as expressly specified herein. Furthermore, nothing contained in this Consent Decree shall be construed to prevent or limit ORSANCO's rights to obtain further or additional injunctive relief under the Compact and the pollution control standards promulgated thereunder, except as expressly specified herein.

B.    This Consent Decree resolves the civil claims of the United States and the State for injunctive relief and civil penalties for the Clean Water Act violations alleged in the Joint Amended Complaint filed herein through the Date of Lodging of this Decree, including any remaining claims for injunctive relief for the Clean Water Act violations alleged in the SSO Complaints through the Date of Lodging of this Consent Decree. Furthermore, this Consent Decree resolves the civil claims of ORSANCO for injunctive relief for violations of the Compact and the pollution control standards promulgated thereunder that are alleged in the Joint Amended Complaint filed herein through the Date of Lodging of this Decree.

C.    Upon entry of this Consent Decree, Defendants' obligations under Section XVIII of the Consent Order dated August 16, 1985 in Civil Action C-1-85-0693 to implement approved environmentally beneficial project(s) with the funds deposited

87

and accrued in the MSD environmental security account are
incorporated and enforceable under this Consent Decree as
provided in Subparagraph XIII.B.2, and the 1985 Consent Order
shall be terminated.

      D.    The United States and State reserve all rights against
the Defendants with respect to any Clean Water Act violations by
Defendants that occur after the Date of Lodging of this Consent
Decree, and/or for any violations of the Clean Water Act not
specifically alleged in the SSO Complaints or the Joint Amended
Complaint filed herein, whether they occurred before or after the
Date of Lodging of this Decree.  Similarly, ORSANCO reserves all
rights against the Defendants with respect to any violations of
the Compact and the pollution control standards promulgated
thereunder that occur after the Date of Lodging of this Consent
Decree.

      E.    The Parties agree that in any future civil action
pursuant to 33 U.S.C. § 1319(b) for injunctive relief to address
Clean Water Act violations that occur after the Date of Lodging
of this Consent Decree, Defendants' compliance or noncompliance
with the remedial measures set forth in this Consent Decree may
be taken into account by a District Court in fashioning
appropriate injunctive relief.  The Parties further agree that in
any future civil action pursuant to 33 U.S.C. § 1319(d) for
penalties for Clean Water Act violations that occur after the

Date of Lodging of this Consent Decree, Defendants' compliance or
noncompliance with the remedial measures set forth in this
Consent Decree shall be considered to be among the factors
specified in 33 U.S.C. § 1319(d) that may be taken into account
by a District Court in determining the amount of a civil penalty.

F.    In any subsequent administrative or judicial proceeding
initiated by the United States, the State, or ORSANCO for
injunctive relief, penalties, or other appropriate relief
relating to Defendants' violation of the Clean Water Act, or the
Compact and the pollution control standards promulgated
thereunder, Defendants shall not assert, and may not maintain,
any defense or claim based upon the principles of waiver, res
judicata, collateral estoppel, issue preclusion, claim-splitting,
or other defenses based upon any contention that the claims
raised by the United States, the State, or ORSANCO in the
subsequent proceeding were or should have been brought in the
instant case, except with respect to claims that have been
specifically resolved pursuant to Paragraph B of this Section.

G.    The Consent Decree in no way affects or relieves
Defendants of any responsibility to comply with any federal,
state, or local law or regulation, including the Compact and
pollution control standards promulgated thereunder.

H.    The Parties agree that Defendants are responsible for
achieving and maintaining complete compliance with all applicable

89

federal and state laws, regulations, permits, the Compact and
pollution control standards promulgated thereunder, and that
compliance with this Consent Decree shall be no defense to any
actions commenced pursuant to said laws, regulations, permits,
the Compact or pollution control standards promulgated
thereunder, except as set forth herein.

I.    This Consent Decree does not limit or affect the rights
of the Parties as against any third parties that are not Parties
to this Consent Decree.  The Parties recognize that this Consent
Decree resolves only matters between Plaintiffs and Defendants
and that its execution does not preclude Defendants from
asserting any legal or factual position in any action brought
against them by any person or entity not a Party to this Consent
Decree.

J.    The United States, the State, and ORSANCO reserve any
and all legal and equitable remedies available to enforce the
provisions of this Consent Decree.

K.    This Consent Decree shall not limit any authority of
the United States or the State under any applicable statute,
including the authority to seek information from Defendants, to
require monitoring, to conduct inspections, or to seek access to
the property of Defendants; nor shall anything in this Consent
Decree be construed to limit the authority of the United States
or the State to undertake any action against any person,

including Defendants, in response to conditions that may present an imminent and substantial endangerment to the environment or to the public health or welfare.

L.    Application for construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays caused by inadequate facility planning or plans and specifications, on the part of Defendants shall not be cause for extension of any required compliance date in this Consent Decree.

M.    Obligations of Defendants under the provisions of this Consent Decree to perform duties scheduled to occur after the signing, but prior to the Date of Entry, shall be legally enforceable from the date this Consent Decree is signed by Defendants.  Liability for stipulated penalties, if applicable, shall accrue for violation of such obligations and payment of such stipulated penalties may be demanded by the Plaintiffs as provided in this Consent Decree.  The contempt authority of this Court shall also extend to violations of such obligations.


**XXVII.    COSTS OF SUIT**

Each Party shall bear its own costs and attorneys' fees with respect to matters related to this Consent Decree.

XXVIII.    <u>NOTICES</u>

All notices and correspondence under this Decree shall be sent to the following addresses:

<u>For U.S. EPA</u>:

Chief, Enforcement and Compliance
  Assurance Branch
Water Division (WCC-15J)
U.S. EPA, Region V
77 West Jackson Blvd.
Chicago, Illinois  60604

<u>For U.S. Department of Justice</u>

U.S. Department of Justice
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
Post Office Box 7611
Washington, D.C.  20044-7611
  Reference DJ # 90-5-1-6-341A

<u>For Ohio EPA</u>:

Ohio EPA Southwest District Office
ATTN: DSW Enforcement Group Leader
401 East Fifth Street
Dayton, Ohio 45402-2911.

<u>For Ohio Attorney General</u>:

Chief, Environmental Enforcement Section
Ohio Attorney General's Office, 25th floor
30 E. Broad Street
Columbus, Ohio  43215-3428

<u>For ORSANCO</u>:

ORSANCO
Executive Director and Chief Engineer, Alan H. Vicory
5735 Kellogg Avenue
Cincinnati, Ohio 45228-1112

92

For the County:

Hamilton County Board of County Commissioners
County Administration Building
138 East Court Street, Suite 603
Cincinnati, Ohio 45202

For the City of Cincinnati:

Jennifer Langen
Assistant City Solicitor for the City of Cincinnati
801 Plum Street, Suite 214
Cincinnati, Ohio 45202

For MSD:

Director
Metropolitan Sewer District of Greater Cincinnati
1600 Gest Street
Cincinnati, Ohio 45204

## XXIX.    MODIFICATION

A.    Except as further set forth in this Paragraph, there
shall be no material modification of this Consent Decree without
written approval by all of the Parties and the Court; and any
non-material modification of this Consent Decree shall be in
writing and signed by the Parties.  Modifications (whether
material or not) to this Consent Decree that are specifically
allowed under the terms of this Consent Decree may be made in
accordance with the terms of this Consent Decree.

B.    It is the intention of the Parties to this Consent
Decree that the Defendants shall have the opportunity, consistent
with applicable law, to conform compliance with this Consent
Decree to any modifications in U.S. EPA's regulations or national

93

policies governing SSOs, CSOs or bypassing; to conform compliance with this Consent Decree to any applicable new or revised water quality standards that have been approved or promulgated by U.S. EPA in accordance with 33 U.S.C. § 1313(c) and 40 CFR § 131.21 and 131.22; to conform compliance with this Consent Decree to any new or revised regulations that have been approved by ORSANCO in a manner consistent with its Compact and pollution control standards; and to conform compliance with this Consent Decree to any new or more stringent requirements that are included in Current Permits pertaining to Defendants' WWTPs or Sewer System.

    1.   Consequently, upon issuance of any new U.S. EPA final regulation (as promulgated in the Federal Register) or national policy governing SSOs, CSOs or bypassing; upon U.S. EPA approval or promulgation of new or revised water quality standards in accordance with 33 U.S.C. § 1313(c) and 40 CFR § 131.21 and 131.22; upon ORSANCO's approval of new or revised regulations in a manner consistent with its Compact and pollution control standards; or upon the issuance of a Current Permit that contains new or more stringent requirements pertaining to Defendants' WWTPs or Sewer System, Defendants may request modification of this Consent Decree (including requests for extensions of time) from U.S. EPA/Ohio EPA/ORSANCO to conform this Consent Decree to such regulation, national policy, new or revised water quality standard, or Current Permit. For the

94

purposes of this Paragraph, "national policy" refers to a formal written policy statement issued by the Assistant Administrator for the Office of Water and the Assistant Administrator for the Office of Enforcement and Compliance Assurance. Upon Defendants' request, the Parties shall discuss the matter. If the Parties agree on a proposed modification to the Consent Decree, they shall prepare a joint motion to the Court requesting such modification.

2.    If the Parties do not agree, and Defendants still believe modification of this Decree is appropriate, they may file a motion seeking such modification in accordance with Federal Rule of Civil Procedure 60(b); provided, however, that nothing in this subparagraph is intended to waive the Plaintiffs' rights to oppose such motion and to argue that such modification is unwarranted.

3.    Following the filing of a motion under Rule 60(b), stipulated penalties shall accrue due to Defendants' failure, if any, to continue performance of obligations under the Decree that are necessarily the subject of the Rule 60(b) motion; provided, however, that such penalties need not be paid unless the Court resolves the Rule 60(b) motion in the Plaintiffs' favor. If the Court resolves the motion in Defendants' favor, Defendants shall comply with the Decree as modified.

95

## XXX. <u>REVIEW OF SUBMITTALS</u>

A.    U.S. EPA/Ohio EPA/ORSANCO agree to use their best efforts to expeditiously review and comment on deliverables that Defendants are required to submit to U.S. EPA/Ohio EPA/ORSANCO for approval pursuant to the terms and provisions of this Consent Decree.  Where the Consent Decree both requires Defendants to submit a plan or report or other submittal to U.S. EPA/Ohio EPA/ORSANCO for review and approval and establishes a specific timeline for Defendants to resubmit such plan, report or other submittal after comments by U.S. EPA/Ohio EPA/ORSANCO, U.S. EPA/Ohio EPA/ORSANCO shall, as expeditiously as possible, review and approve or decline to approve and provide written comments to the Defendants on the submittal.

B.    If U.S. EPA/Ohio EPA/ORSANCO cannot complete their review of the submittal within 60 days of receipt of the submittal, U.S. EPA/Ohio EPA/ORSANCO shall so notify Defendants. Such notice shall be given within the 60-day period following receipt of the submittal, and U.S.EPA/Ohio EPA/ORSANCO shall identify a schedule for completion of their review.

C.    If U.S. EPA/Ohio EPA/ORSANCO fail to approve or decline to approve and provide written comments within 60 days of receipt of the submittal, any subsequent milestone date dependent upon such approval or any resubmission dependent upon such comments shall be extended by the number of days beyond 60 days that U.S.

96

EPA/Ohio EPA/ORSANCO use for their comment or decision on that submittal.

D.   The following procedures shall apply to ORSANCO's review and approval of submittals pursuant to this Consent Decree.

1.   In an effort to coordinate a consistent response among the regulators, within 30 days of receipt of a submittal that requires ORSANCO's approval, ORSANCO shall provide its preliminary comments and response to the submittal to U.S. EPA/Ohio EPA.

2.   ORSANCO shall provide its final response to the submittal to the Defendants on or before the date that U.S. EPA/Ohio EPA provide their response.  In its response, ORSANCO may approve the submittal or decline to approve it and provide written comments; provided, however, that ORSANCO may take a position that is materially different from that taken by U.S. EPA/Ohio EPA only in accordance with subparagraph D.3 below.  If ORSANCO does not submit its final response to the Defendants on or before the date that U.S. EPA/Ohio EPA provide their response, it shall be deemed to have waived its approval authority with respect to that submittal.

3.   In order for ORSANCO to take any position in its review and approval of a submittal under this Decree pursuant to subparagraph D.2, above, that is materially different from the

97

position taken by the United States and the State, ORSANCO must obtain the approval of its Executive Committee as defined in ORSANCO's bylaws  (Executive Committee) and the approval of two-thirds of the commissioners from the State of Ohio.  Further, any such position taken by ORSANCO must assure Defendants' compliance in a manner more appropriate with the terms, conditions, requirements and objectives of this Consent Decree, the Clean Water Act, R.C. 6111, and the Compact and the pollution control standards promulgated thereunder than the position advanced by the United States and the State.

4.    In the event that ORSANCO takes a position on a submittal that is materially different from that taken by U.S. EPA/Ohio EPA, Defendants shall comply with the position of U.S. EPA/Ohio EPA unless, within ten (10) days after receipt of U.S. EPA's/Ohio EPA's or ORSANCO's approval or comments, whichever is received later, ORSANCO sends a notice of dispute invoking the informal dispute resolution procedures of Paragraph XXI.D.

## XXXI.    <u>CONTINUING JURISDICTION</u>

The Court shall retain jurisdiction to enforce the terms and conditions and achieve the objectives of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction, modification, implementation or execution of this Decree.

## XXXII.    CONTINGENT LIABILITY OF STATE OF OHIO

Section 309(e) of the Act, 33 U.S.C. § 1319(e), requires that the State be a Party to this action insofar as it may be liable in the event the laws of Ohio prevent Defendants from raising revenues needed to comply with this Decree.  The State of Ohio, by signing this Decree, certifies that the current laws of the State do not prevent Defendants from raising revenues needed to comply with this Decree.  Except as required by Section 309(e) of the Act, the State of Ohio shall have no liability under this Consent Decree.

## XXXIII.    TERMINATION

A.    Upon motion filed with the Court by the United States, the State, ORSANCO, or the Defendants, the Court may terminate the terms of this Consent Decree after each of the following has occurred:

1.    Defendants have achieved compliance with all provisions contained in this Consent Decree, and subsequently have maintained compliance with each and every provision of this Consent Decree for twelve consecutive months;

2.    Defendants have paid all penalties and other monetary obligations due hereunder and no penalties or other monetary obligations due hereunder are outstanding or owed to the United States, the State, or ORSANCO;

99

3.    Defendants have certified compliance pursuant to Subparagraphs XXXIII.A.1 and .2 above to the Court and all Parties; and

4.    The United States, the State, and ORSANCO within forty-five (45) days of receiving such certification from the Defendants have not contested, in writing, that such compliance has been achieved.

B.    If the United States, the State, and/or ORSANCO dispute(s) Defendants' full compliance, this Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court.

## XXXIV.    PUBLIC COMMENT

This Consent Decree shall be lodged with the Court for a period of not less than 30 days, for public notice and comment in accordance with the provisions of 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments received disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper or inadequate. Defendants hereby agree not to withdraw from, oppose entry of, or to challenge any provision of this Consent Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Consent Decree.

100

XXXV.    **SIGNATORIES/SERVICE**

A.    This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

B.    The Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, on behalf of the United States, the Ohio Assistant Attorney General signing this Decree, on behalf of the State, the Executive Director, on behalf of ORSANCO, and the undersigned representatives of the Defendants each certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

C.    Each Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.  The Parties agree that Defendants need not file an answer to the complaints in this action unless or

101

until the Court expressly declines to enter this Consent Decree.


SO ORDERED, this _____ day of _____, 2004.


_____
United States District Judge

THE UNDERSIGNED Parties enter into this Consent Decree, subject to the public notice requirements of 28 C.F.R. § 50.7, and submit it to the Court for entry.

FOR THE UNITED STATES OF AMERICA:


 S/Thomas L. Sansonett
THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural
   Resources Division
U.S. Department of Justice


 S/Leslie Allen
LESLIE ALLEN
Senior Attorney
Environmental Enforcement Section
Environmental and Natural
 Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-4114


GREGORY G. LOCKHART
United States Attorney for the
Southern District of Ohio


By: S/Donetta D. Wiethe
DONETTA D. WIETHE (0028212)
Assistant United States Attorney
221 E. 4th Street
Atrium II, Suite 400
Cincinnati, Ohio  45202
513-684-3711


103

 S/Thomas V. Skinner
THOMAS V. SKINNER
Regional Administrator
U.S. Environmental Protection
Agency, Region V

 S/Gary Prichard
GARY PRICHARD
Associate Regional Counsel
U.S. Environmental Protection
Agency, Region V

104

 S/John Peter Suarez
JOHN PETER SUAREZ
Assistant Administrator
    for Enforcement and Compliance
    Assurance
U.S. Environmental Protection
Agency


 S/Amanda Gibson
AMANDA GIBSON
ANDREW R. STEWART
Attorney-Advisor
Office of Enforcement and
Compliance Assurance
U.S. Environmental Protection
Agency

105

FOR STATE OF OHIO:
JIM PETRO
Attorney General




By: S/Margaret A. Malone
MARGARET A. MALONE (0021770)
Assistant Attorney General
Environmental Enforcement Section
30 East Broad Street
25th Floor
Columbus, Ohio 43215-3400

106

FOR OHIO RIVER VALLEY WATER
SANITATION COMMISSION:


 S/Alan H. Vicory
ALAN H. VICORY
Executive Director and
Chief Engineer
ORSANCO
5735 Kellogg
Cincinnati, Ohio 45228-1112

107

FOR BOARD OF COUNTY COMMISSIONERS
OF HAMILTON COUNTY, OHIO


By: S/David J. Krings
DAVID J. KRINGS
COUNTY ADMINISTRATOR



AGENT FOR SERVICE OF PROCESS:

PETER MURPHY
Gibson, Dunn and Crutcher
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306

FOR CITY OF CINCINNATI, OHIO

By: S/Valerie Lemmie
VALERIE LEMMIE
CITY MANAGER

APPROVED AS TO FORM:

AGENT FOR SERVICE OF PROCESS:

PETER MURPHY
Gibson, Dunn and Crutcher
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306

S/Julia R. McNeil
City Solicitor

109