# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ET AL., | : | **CASE NO. C-1-02-107** |
| | : | |
| Plaintiffs, | : | |
| | : | Judge S. Arthur Spiegel |
| v. | : | Magistrate Judge Timothy S. Hogan |
| | : | |
| BOARD OF COUNTY COMMISSIONERS | : | |
| OF HAMILTON COUNTY, OHIO, ET AL. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## SIERRA CLUB AND MARILYN WALL'S REPLY BRIEF
## IN SUPPORT OF A STATUS CONFERENCE

"I think that's a very strong message that the judge ought to be able to draw conclusions from"

*MSD Director Patrick Karney* – "City, county approve sewer settlement plan." The Cincinnati Enquirer, 27 November 2003 (referring to the votes of the Defendant governments to approve the Second Decree).

The Sierra Club filed the motion for a status conference so this Court could draw conclusions from *facts* about the decrees and *analysis* of what the Decrees will actually do to remedy one of this region's largest problems. Despite the Defendants' public relations efforts (extensively referenced in the Defendants' opposition to a pre-February status conference), and Mr. Karney's admonition that this Court heed the message of the Defendants' approval of their own Decrees, the Defendants' public comment period consisted of Mr. Karney telling the City and County officeholders that the Decrees "addressed" the sewage-in-basement (SIB) victims' concerns, and delivering the message

1

to the officeholders that the "taxpayers" could not afford to consider changes to the Decrees. Unfortunately, this filibuster by Mr. Karney drowned out the chance for a fair dialogue on the need for specific changes to the Decrees. This is why the Plaintiffs-Intervenor Sierra Club and Marilyn Wall ("Movants") have proposed an earlier and more in-depth status conference to discuss the format and timing of a fairness hearing on both the Interim Partial Consent Decree and the Second Decree.

The Memorandum in Support of the Motion for a Status Conference explains why an evidentiary-type hearing would be in the public interest. Those points need not be reiterated. However, the necessity for the earlier status conference and the need for an expedited fairness hearing is illustrated by the plight of SIB victims. This Court needs to assess the impact of the Decrees on the rights of thousands of members of the public or their plight might actually be prolonged by the Decrees.  In order to understand how the Second Decree would adversely affect the rights of 3rd parties, the public interest requires that sewage-in-basement victims be provided with an opportunity to make a record before this Court regarding their longstanding problems with the MSD and the Cincinnati City Solicitor's office.  By providing an appropriate opportunity for this testimony, such a record would not only reveal MSD's historical failures to accept responsibility for backups, failures to provide assistance to backup victims, failures to provide appropriate information about sanitizing the sewage spills, failures to prevent future backups, and, the repeated failures of the City Solicitor's office to authorize the payment of valid claims, but it will also show the inadequacies of the program proposed under the Second Decree.

In form, the sewage-in-basement response framework in the Second Decree is similar to the framework first suggested by the Sierra Club in its July 2003 (and earlier)

proposals, but the Second Decree's program is **un-funded**, **lacks a fiscal plan for consistent, future funding** and **lacks funding commitments** beyond the $1.1 million in the 1985 ESA. The Decree's program is also completely **devoid of critical performance benchmarks and annual "level of effort" requirements** (e.g., number of prevention devices installed per year vs. number of requests; number of emergency cleanups performed per year vs. number of MSD-caused backups; reductions in backups each year from baseline; and, the number of claims handled and number of claims settled vs. claims made). Additionally, the Second Decree does not deal with the issue of "retroactivity" under the sewage-in-basement claims program. As soon as the "spotlight" is off, the Commissioners and the MSD are completely free to cut this program back to the bone **without violating the Decree.** This Court needs to be fully advised of these and other loopholes before it puts its judicial stamp of approval on these documents.

Further, the earlier planning Status Conference will afford the Court with the basis to consider the best procedure to consider the other deficiencies of the decrees and hear the case for the appointment of a Special Master.[1]

The Defendants suggest that a full judicial hearing on the decrees is not needed due to their expensive PR campaign. The plight of the SIB victims is, once again, illustrative of the deficient public input received by the Defendants and the governments to date. The record created is not a substitute for an evidence-based fairness hearing. It is instructive to note that in Defendants' effort to inform the public about the Second

---

[1] Government plaintiffs responded in their Memorandum in Opposition to Sierra Club's suggestion that a Special Master be appointed to oversee the expenditure of the $1.1 million in the 1985 Environmental Security Account for the Second Decree's Sewage-in-Basement Prevention Program. Sierra Club proposes that a Special Master be appointed to oversee the entire Consent Decree program, starting with an accounting of the 1985 ESA money and overseeing all engineering and fiscal responsibilities of MSD. Sierra Club intends at the appropriate time to file a Motion for the Appointment of a Special Master under Rule 53.

Decree, it mailed 893 first-class invitations to an October 30th information meeting to **MSD contractors** (Defendants' brief in opposition at 7), but did not mail any notices or invitations to the thousands of sewage-in-basement victims, whose homes Defendants admit they have repeatedly contaminated with raw sewage over the years.

In point of fact, only a handful of sewage-in-basement victims, at most, actually attended any of the public or informational meetings held by Defendants. Hundreds of these victims attended the Sierra Club's neighborhood meetings. The MSD knows where the sewage-in-basement victims live. MSD has their names, addresses, and telephone numbers from its complaint intake database.

Had Plaintiffs-Intervenor Sierra Club and Marilyn Wall been at the table, these issues could have been more fully explored, negotiated in good faith, and presumably resolved in a final document that would have been acceptable to all parties. The proposed Decrees fail to meet the public interest test in their present form.

Finally, the Defendants' assertions at pages 10-11 of their brief demand a reply. Defendants appear to chastise Movants for not getting their comments on the Consent Decree into the Defendants until November 14, 2003, with a corrected version submitted on November 18th. The Second Decree is over 100 pages long, not including exhibits. The Movants first saw this document on October 8, 2003, proof that Movants had not been "kept apprised" and had been systematically excluded from the negotiation process, despite Movants' party status. It took many hours and weeks to read, review, digest, consult and prepare comments on the voluminous and complex Second Decree. In fact, the overlapping provisions, loopholes, extension-of-time provisions, waivers and the like, make the Second Decree a legal Rubik's Cube – a confusing and unenforceable puzzle.

Had the Defendants actually been interested in hearing Sierra Club's positions on the Second Decree, they would not have vetoed the direct involvement of --and negotiation with--the Club during the protracted negotiation period both before and after the Interim Partial Consent Decree was signed.  Rather than chastising Sierra Club for taking approximately 35 days to comment on a decree that the Club had not previously seen, the Defendants could have shared earlier versions and could have received comments and suggestions for improvement all along.  Any delays in providing comments on the Second Decree rest squarely on the Defendants.  As Ms. Allen points out in the government's brief, the government tried to broker a seat at the table for the Sierra Club, but was totally rebuffed by the Defendants (Plaintiffs' Memorandum in Opposition at 4).

For the reasons set forth in its Motion for a Status Conference and this reply, Plaintiffs-Intervenor Sierra Club and Marilyn Wall respectfully urge this Honorable Court to grant its motion and to schedule an earlier and more comprehensive status conference to give the parties adequate opportunity to discuss the timing of the fairness hearing, the need for taking of evidence, and the process for going forward.

Respectfully submitted,

Law Office of Albert J. Slap

DATE:    12/19/03

By:    s/Albert J. Slap by L. Himes per telephone authorization
       Albert J. Slap, Esq.
       Ohio Atty. Reg. 0074579
       20 Erie Ave.
       Glendale, OH 45246
       513-771-7800
       513-772-6506 (fax)

D. David Altman Co., LPA


By:   <u>s/D. David Altman by L. Himes per authorization</u>
        D. David Altman, Esq. (0021457)
        Lance D. Himes, Esq. (0069112)
        15 E. 8th St., Suite 200W
        Cincinnati, OH 45202
        513-721-2180
        513-721-2299 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2003 a copy of *Sierra Club and Marilyn Wall's Reply Brief In Support of a Status Conference* was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system:

Margaret A. Malone; Christopher J. Buckley; Peter P. Murphy; Kevin M. St. John (c/o Peter P. Murphy); Michael K. Murphy (c/o Peter P. Murphy); J. Steven Justice; Gary Prichard; Donetta Wiethe; and Leslie Allen;

and by regular U.S. Mail on:

Nee Fong Chin, Hamilton County Prosecutor, Civil Unit, 230 E. Ninth Street, Suite 4000, Cincinnati, Ohio 45202-2151; J. Rita McNeil, Cincinnati City Solicitor, 801 Plum Street, Cincinnati, Ohio 45202; Thomas L. Sansonetti, Assistant Attorney General, Environment and Natural Resources Div., United States Department of Justice, 10th and Pennsylvania Ave, N.W., Washington, D.C. 20530; Gregory Gordon Lockhart, United States Attorney's Office – 3, P.O. Box 280, 200 W. Second Street, Room 602, Dayton, Ohio 45402.

s/Lance D. Himes_____
Lance D. Himes (0069112)
Attorney for Plaintiffs-Intervenor