# EXHIBIT 11

# THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI

*FINANCIAL STATEMENTS AND INDEPENDENT AUDITORS' REPORT*

## December 31, 1993

# THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Independent Auditors' Report | |
| Financial Statements | |
| Balance Sheets | 1 |
| Statements of Revenues and Expenses | 2 |
| Statements of Changes in Equity | 3 |
| Statements of Cash Flows | 4 |
| Notes to the Financial Statements | 5-18 |
| Independent Auditors' Report on the Internal Control Structure | 19-20 |
| Independent Auditors' Report on Compliance with Laws and Regulations Relating to the Financial Statements. | 21 |
| Independent Auditors' Report on Compliance with Requirements of the Ohio Compliance Supplement | 22-23 |



**VONLEHMAN & COMPANY**

250 Grandview Drive Suite 300
Fort Mitchell, Kentucky 41017-5610

Certified Public Accountants and Business Advisors

9912 Carver Road
Cincinnati, Ohio 45242-5502

## INDEPENDENT AUDITORS' REPORT

The Honorable Board of County Commissioners
The Metropolitan Sewer District of Greater Cincinnati
County of Hamilton, Ohio

We have audited the balance sheet of the Metropolitan Sewer District (District) of Greater Cincinnati, Cincinnati, Ohio, as of December 31, 1993, and the related statements of revenues and expenses, changes in equity, and cash flows for the year then ended. These financial statements are the responsibility of the District's management. Our responsibility is to express an opinion on these financial statements based on our audit. The financial statements of The Metropolitan Sewer District of Greater Cincinnati as of December 31, 1992 and for the year then ended were audited by other auditors, whose report dated April 23, 1993 expressed an unqualified opinion on these statements.

We conducted our audit in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the balance sheet of the Metropolitan Sewer District of Greater Cincinnati as of December 31, 1993, and the results of its operations and its cash flows for the year then ended in conformity with generally accepted accounting principles.

*VonLehman & Company*

April 4, 1994

# THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
## BALANCE SHEETS
### December 31, 1993 and 1992
### (amounts expressed in thousands)

## ASSETS

|  | 1993 | 1992 |
|---|---:|---:|
| **Current Assets** | | |
| Cash and Equivalents | $ 9,703 | $ 9,420 |
| Accounts Receivable | 15,763 | 12,537 |
| Grants Receivable | 398 | 398 |
| Prepaid Expenses and Other | 1,086 | 831 |
| Total Current Assets | 26,950 | 23,186 |
| **Restricted Assets** | | |
| Cash and Cash Equivalents Held by | | |
| the City of Cincinnati: | | |
| Construction Account | 10,706 | 11,299 |
| Amount to be Transferred to Surplus Account | 9,580 | 11,718 |
| Investments Held by Trustee: | | |
| Reserve Account | 19,627 | 18,749 |
| Replacement and Improvement Account | 5,000 | 5,000 |
| Bond Account | 3,647 | 1,509 |
| Surplus Account | 49,781 | 16,534 |
| Total Restricted Assets | 98,341 | 64,809 |
| **Property, Plant and Equipment** | | |
| Land | 3,718 | 2,521 |
| Buildings and Structures | 382,252 | 354,007 |
| Processing Systems | 205,111 | 191,668 |
| Office and Service Equipment | 15,188 | 13,573 |
| Construction in Progress | 46,299 | 57,255 |
|  | 652,568 | 619,024 |
| Less Accumulated Depreciation | (195,358) | (177,332) |
| Total Property, Plant and Equipment, Net | 457,210 | 441,692 |
| **Other Assets:** | | |
| Unamortized Financing Costs | 8,615 | 4,098 |
| Settlements Receivable | 1,316 | 1,316 |
| Other | 3,350 | 3,347 |
| Total Other Assets | 13,281 | 8,761 |
| **Total Assets** | $ 595,782 | $ 538,448 |

See auditors' report and accompanying notes.

1

## LIABILITIES AND EQUITY

|  | 1993 | 1992 |
|---|---|---|
| **Current Liabilities** | | |
| Current Portion of Long-term Debt | $ 6,486 | $ 7,187 |
| Accounts Payable | 2,286 | 2,496 |
| Accrued Payroll Expenses | 1,277 | 998 |
| Total Current Liabilities | 10,049 | 10,681 |
| **Payable from Restricted Assets** | | |
| Construction Account | 3,943 | 3,420 |
| Bond Account | 1,110 | 1,023 |
| Total Payable from Restricted Assets | 5,053 | 4,443 |
| **Long-Term Liabilities** | | |
| Accrued Compensated Absences | 1,251 | 1,244 |
| Long-Term Debt | 244,065 | 185,022 |
| Total Long-Term Liabilities | 245,316 | 186,266 |
| **Total Liabilities** | 260,418 | 201,390 |
| **Equity** | | |
| Contributions in Aid of Construction | 181,537 | 183,855 |
| Retained Earnings | 153,827 | 153,203 |
| Total Equity | 335,364 | 337,058 |
| **Total Liabilities and Equity** | $ 595,782 | $ 538,448 |

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**STATEMENTS OF REVENUES AND EXPENSES**
**Years Ended December 31, 1993 and 1992**
**(amounts expressed in thousands)**

|  | 1993 | 1992 |
|---|---|---|
| **Operating Revenues** | | |
| Sewerage Service Charges | $  78,773 | $  66,669 |
| Sewerage Surcharges | 10,713 | 9,908 |
| Other Revenues | 3,691 | 3,152 |
| Total Operating Revenues | 93,177 | 79,729 |
| **Operating Expenses** | | |
| Personnel Services | 32,513 | 31,118 |
| Utilities, Fuel and Supplies | 12,008 | 11,318 |
| Depreciation and Amortization | 19,043 | 18,110 |
| Purchased Services | 10,792 | 11,479 |
| Other Expenses | 2,902 | 2,605 |
| Total Operating Expenses | 77,258 | 74,630 |
| **Income from Operations** | 15,919 | 5,099 |
| **Other Income (Expense)** | | |
| Interest Income | 2,864 | 2,876 |
| Sundry | - | 296 |
| Gain (Loss) on Disposal of Property, Plant and Equipment | 42 | (1,240) |
| Interest Expense | (12,518) | (8,173) |
| Total Other Income (Expense) | (9,612) | (6,241) |
| **Income (Loss) Before Extraordinary Item** | 6,307 | (1,142) |
| **Extraordinary item** | (12,763) | - |
| **Net Loss** | $  (6,456) | $  (1,142) |

See auditors' report and accompanying notes.

2

# THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
## STATEMENTS OF CHANGES EQUITY
### Years Ended December 31, 1993 and 1992
### (amounts expressed in thousands)

| | Contributions in Aid of Construction | Retained Earnings | Total |
|---|---|---|---|
| **Balance at December 31, 1991** | $ 186,872 | $ 147,385 | $ 334,257 |
| Net Loss for the Year | - | (1,142) | (1,142) |
| Additions to Contributions in Aid of Construction | 3,943 | - | 3,943 |
| Amortization of Contributions in Aid of Construction | (6,960) | 6,960 | - |
| **Balance at December 31, 1992** | 183,855 | 153,203 | 337,058 |
| Net Loss for the Year | - | (6,456) | (6,456) |
| Additions to Contributions in Aid of Construction | 4,762 | - | 4,762 |
| Amortization of Contributions in Aid of Construction | (7,080) | 7,080 | - |
| **Balance at December 31, 1993** | $ 181,537 | $ 153,827 | $ 335,364 |

See auditors' report and accompanying notes.

3

# THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
## STATEMENTS OF CASH FLOWS
### Years Ended December 31, 1993 and 1992
### (amounts expressed in thousands)

|  | 1993 | 1992 |
|---|---|---|
| **Cash Flows from Operating Activities** | | |
| Cash Received from Customers | $ 86,835 | $ 80,064 |
| Cash Payments for Goods and Services | (25,846) | (24,731) |
| Cash Payments for Personnel Costs | (32,225) | (30,610) |
| Other Operating Revenues | 3,113 | 3,421 |
| **Net Cash Provided by Operating Activities** | 31,877 | 28,144 |
| **Cash Flows from Capital and Related Financing Activities** | | |
| Proceeds from Sale of Revenue Bonds | 171,790 | - |
| Defeasements of Revenue Bonds | (103,875) | - |
| Financing Costs | (7,936) | - |
| Loss on Defeasements | (12,763) | - |
| Proceeds from Loans | 549 | - |
| Principal and Interest Payments on Long-Term Debt | (24,031) | (18,609) |
| Acquisition and Construction of Capital Assets | (30,446) | (36,977) |
| Grants and Contributions | 4,762 | 3,943 |
| Proceeds from Sale of Equipment | 42 | 49 |
| **Net Cash Used for Capital and Related Financing Activities** | (1,908) | (51,594) |
| **Cash Flows from Investing Activities** | | |
| (Purchase) Sale of Government Securities | (26,190) | 10,086 |
| Interest on Investments | 3,846 | 4,899 |
| **Net Cash Provided (Used) from Investing Activities** | (22,344) | 14,985 |
| Net Increase (Decrease) in Cash and Cash Equivalents | 7,625 | (8,465) |
| Cash and Cash Equivalents at January 1 | 51,920 | 60,385 |
| **Cash and Cash Equivalents at December 31** | $ 59,545 | $ 51,920 |
| Operating Income | $ 15,919 | $ 5,099 |
| Adjustments to Reconcile Operating Income to Net Cash Provided by Operating Activities: | | |
| Depreciation and Amortization | 19,043 | 18,110 |
| Allowance for Doubtful Accounts | (530) | - |
| Change in Assets and Liabilities: | | |
| (Increase) Decrease in Receivables | (2,121) | 3,488 |
| (Increase) Decrease in Other Receivables | (575) | 270 |
| Decrease in Prepaid Expenses and Other Assets | 65 | 145 |
| Increase in Accrued Payroll and Other Liabilities and Compensated Absences | 286 | 361 |
| (Decrease) Increase in Operating Accounts Payable | (210) | 671 |
| **Net Cash Provided by Operating Activities** | $ 31,877 | $ 28,144 |

See auditors' report and accompanying notes.

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 1 - ACCOUNTING POLICIES

A summary of the significant accounting policies applied in the accompanying financial statements follows.

### Organization

The Metropolitan Sewer District of Greater Cincinnati (MSD) was established pursuant to an agreement dated May 1, 1968 between the Board of Commissioners of Hamilton County and the City of Cincinnati. Under a contract with the City of Cincinnati, the Board designated the City as its agent for the maintenance and operation of MSD. The annual budget, prepared on the cash basis of accounting, is approved by the Board and administered by the City. Budgetary control is exercised at the divisional level and between personnel and all other costs.

### Basis of Accounting

The accompanying financial statements were prepared on the accrual basis of accounting, whereby revenues and expenses are recognized in the period earned or incurred.

### Investments

Investments are recorded at the lower of costs or market as of the balance sheet date, on an aggregate basis.

### Inventory

Supplies, materials, and fuel are stated at the lower of cost of market on a first-in, first-out (FIFO) basis.

### Property, Plant and Equipment

Property, plant and equipment are stated at historical cost for assets acquired after MSD's inception in 1968. Assets which were acquired prior to 1968 and not identifiable with specific historical costs are not included in the property, plant and equipment balance. Assets acquired by MSD through contributions, such as contributions from land developers and Federal and state and grants, are capitalized and recorded in the plant records at the contributors' reported cost. Construction costs include interest capitalized on debt during the period of construction and the cost of in-force labor.

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

### NOTE 1 - ACCOUNTING POLICIES (Continued)

Depreciation expense in computed on the straight-line method over the estimated useful lives of the respective assets. The estimated lives are as follows:

| | |
|---|---|
| Building and structures | 40 years |
| Processing systems | 25 years |
| Office and service equipment | 5 to 15 years |

Depreciation expense on fixed assets acquired through contributions is reported as an offset against contributions in aid of construction in fund equity. Any gain or loss arising from the disposal of fixed assets has been credited or charged to income.

### Unamortized Financing Costs

The unamortized financing costs include bond discount and consulting and attorney fees incurred in connection with the revenue bond obligations. These amounts are being amortized on the interest method over the lives of the revenue bonds.

### Statement of Cash Flows

For purposes of the Statement of Cash Flows, all highly liquid investments (including restricted assets) with a maturity of three months or less when purchased are considered to be cash equivalents.

### Pension Plans

Pension costs reflect a percentage of employees' gross pay, as defined by the terms of MSD's pension plans. MSD's policy is to fund pension costs accrued.

### Insurance

MSD participates in Ohio Workers' Compensation and Ohio State Unemployment programs.

### Reclassifications

Certain amounts in the prior-year financial statements have been reclassified for comparative purposes to conform with the presentation in the current year financial statements.

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 2 - CASH AND INVESTMENTS

Monies held by MSD, other than bond funds held by trustees, are invested on MSD's behalf by the City of Cincinnati (the City) in accordance with the Cincinnati Municipal Code.

Cash and investments consist of the following at December 31, 1993 and 1992:

| | (in thousands) | | | |
| | 1993 | | 1992 | |
| | Cash and Cash Equivalents | Investments | Cash and Cash Equivalents | Investments |
|---|---|---|---|---|
| Deposits: | | | | |
| Amounts held by City of Cincinnati | $29,989 | $    - | $32,437 | $    - |
| Investments held by Trustees:  U.S. Government securities | - | 48,499 | - | 22,309 |
| Trust funds liquid asset treasury portfolio | 29,556 | - | 19,483 | - |
| Total cash and investments | $59,545 | $48,499 | $51,920 | $ 22,309 |

The amounts held by the City are collateralized as part of the City's cash and investment balances.  Bank balances of the City are covered by Federal depository insurance or collateral held by the Cincinnati Branch of the Federal Reserve Bank of Cleveland or the City's agent in the City's name.  Investments held by trustees are eligible investments as defined by the Trust Agreement and are registered in the name of the trustee for the benefit of MSD.

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 3 - ACCOUNTS RECEIVABLE

Accounts receivable as of December 31, 1993 and 1992, consisted of the following:

|  | (in thousands) | |
| --- | --- | --- |
|  | 1993 | 1992 |
| Sewerage charges and surcharges-unbilled | $ 7,386 | $ 6,549 |
| Sewerage charges and surcharges-billed | 8,168 | 6,884 |
| Other | 809 | 234 |
| Less allowable for doubtful accounts | (600) | (1,130) |
| Total | $15,763 | $12,537 |

The method of calculating the December 31, 1992 sewerage and surcharges-unbilled was changed to reflect a more accurate estimated. This change had the effect of reducing the December 31, 1992, accounts receivable amount for sewerage charges and surcharges-unbilled by $3,087,000 from the amount which would have been recognized had prior year estimating calculations been used. The reduction to the year end receivable reduced 1992 operating revenues from $82,816,000 to $79,729,000 and reduced net income from $1,945,000 to a net loss of $1,142,000.

## NOTE 4 - RESTRICTIONS ON ASSETS

Land acquired for MSD's use is titled to either the City of Cincinnati or Hamilton County. The cost of this land has been recorded on the books of MSD since it has the full benefits of the land as an economical resource.

In August 1985, the Federal District Court entered a consent order in an action with MSD and others (see Note 10). In complying with the consent order, MSD is required to maintain amounts on deposit in an environmental security account. Expenditures from this account must be approved by the U.S. Environmental Protection Agency. The balance of this account, which is included in other assets, was $790,000 and $773,000 at December 31, 1993 and 1992, respectively.

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 4 - RESTRICTIONS ON ASSETS (Continued)

The Trust Agreement for the 1993, 1991, 1986, and 1985 Revenue Bonds (see Note 5) requires the establishment of certain trust accounts including a Bond Account, Bond Reserve Account, Replacement and Improvement Account, and a Surplus Account to be held by the Trustee. The Bond Account will be used to accumulate periodic principal and interest payments. The Bond Reserve Account will be funded in an amount equal to the highest annual future debt service requirement. The Replacement and Improvement Account will be maintained with a balance of $5,000,000. The Surplus Account is available to be used for any other Sewer System purpose. The Trust Agreement also requires the creation of a Construction Account to be held by the City to pay for project costs.

## NOTE 5 - LONG-TERM DEBT

As of December 31, 1993 and 1992, long-term debt consisted of the following:

| | | | | (in thousands, except percents) | |
| --- | --- | --- | --- | --- | --- |
| | Principal Issue | Interest Rate | Year of Maturity | 1993 | 1992 |
| Ohio Water Authority Contracts | $41,830 | 2.00-7.49 | 2019 | $10,951 | $ 12,406 |
| Series A Revenue Bonds | | | | | |
| 1985 | 63,800 | 6.00-9.50 | 2005 | 5,240 | 7,570 |
| 1986 | 85,020 | 4.90-7.50 | 2011 | 8,445 | 81,180 |
| 1991 | 90,950 | 4.80-6.70 | 2013 | 56,440 | 89,340 |
| 1993 | 171,790 | 2.45-5.60 | 2016 | 168,515 | - |
| Loveland Sewer District | 200 | 5.75 | 2000 | 65 | 75 |
| Ohio Water and Sewer Rotary Commission | - | - | | 136 | 1,638 |
| State of Ohio - Title II | - | - | | 93 | - |
| Water Pollution Control Loan Fund - Construction Drawdown | - | 3.54-4.80 | | 452 | - |
| Capital Lease | 293 | 7.35 | 1998 | 214 | - |
| | | | | 250,551 | 192,209 |
| Less current maturities | | | | 6,486 | 7,187 |
| Long-term debt | | | | $ 244,065 | $185,022 |

# THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
## NOTES TO THE FINANCIAL STATEMENTS
### December 31, 1993 and 1992

## NOTE 5 - LONG-TERM DEBT (Continued)

Principal payments on long-term debt for the subsequent five years and thereafter are as follows:

|  | (in thousands) |
|---|---|
| 1994 | $ 6,486 |
| 1995 | 6,807 |
| 1996 | 7,158 |
| 1997 | 7,359 |
| 1998 | 7,703 |
| Thereafter | 215,038 |
| Total | $ 250,551 |

Effective May 4, 1993, MSD issued $171,790,000 County of Hamilton, Ohio 1993 Series A Sewer System Improvement and Refunding Revenue Bonds dated April 15, 1993. The proceeds from the 1993 Bonds were used to permanently fund certain previous capital expenditures, provide funds for new projects, defease a portion of the 1986 and 1991 Series A bond issues, fund the new bond reserve requirement, and pay the cost of issuance. The 1993 bonds are special obligations of the District payable solely from the net revenues of the District and are issued on a parity with the 1985, 1986 and 1991 Series A bonds, secured equally and ratably under the Trust Agreement.

Effective February 26, 1991, MSD issued $90,950,000 County of Hamilton, Ohio, 1991 Series A Sewer System Improvement and Refunding Revenue Bonds dated January 15, 1991. The proceeds from the 1991 Bonds were used to permanently fund certain previous capital expenditures, provide funds for new projects, defease a portion of the 1985 Series A bond issue, fund the new bond reserve requirement, and pay the cost of issuance.

Effective May 29, 1986 MSD issued $85,020,000 County of Hamilton, Ohio Sewer System Revenue Bonds, 1986 Series A (1986 Bonds). The proceeds from the 1986 Bonds were used to fund certain construction projects, establish various trust funds required by the Bond Indenture, and to pay certain fees and expenses incurred with the issuance of the bonds.

The 1985 Bonds mature at amounts ranging from $2,515,000 in 1994 to $2,725,000 in 1995 (after refunding by the 1991 Series A bonds). The 1986 Bonds mature at amounts ranging from $830,000 in 1994 to $1,325,000 in 2001. The 1991 Bonds mature at amounts ranging form $1,030,000 in 1994 to $7,040,000 in 2005. The 1993 Bonds mature at amounts ranging form $740,000 in 1994 to $17,515,000 in 2016. The 1993, 1991, 1986, and 1985 Bonds may be redeemed prior to their maturities in accordance with provisions of the bond resolutions. The redemption prices for the bonds include declining premiums up to 3 percent of principal.

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 5 - LONG-TERM DEBT (Continued)

Under the terms of the amended revenue bond trust indenture, MSD has agreed to certain covenants, among other things, to restrict additional borrowing, fix and maintain rates sufficient to meet debt service requirements, and maintain specified fund balances under trust agreements.

All contracts between the Ohio Water Development Authority (OWDA) and the Metropolitan Sewer District require MSD to prescribe and charge such rates for sewer usage which are sufficient (after expenses of operation and maintenance) to pay principal and interest on OWDA contracts. The principal is repayable in equal semi-annual installments to maturity.

Advances from Ohio Water and Sewer Rotary Commission represent tap-in fees and acreage assessments to be forwarded to the Commission upon collection from customers. Such advances do not bear interest unless they are determined to be in default.

For the years 1993 and 1992, interest cost incurred totalled $14,707,000 and $13,214,000, respectively, of which $1,243,000 and $5,041,000 were capitalized as part of the cost of MSD's additions to property, plant, and equipment.

The Revenue Serial bond issues as discussed above contain covenants which require the District to maintain a level of debt service coverage. The following calculation reflects the District's debt service coverage.

|  | (in thousands) | |
| --- | --- | --- |
|  | 1993 | 1992 |
| Revenues: |  |  |
|   Total operating revenues | $93,177 | $79,729 |
|   Interest Income | 2,864 | 2,876 |
|   Capitalized Interest Income | 287 | 2,023 |
|   Total pledge revenues | 96,328 | 84,628 |
|   Total operating and maintenance expenses less depreciation and amortization | (58,215) | (56,520) |
| 1993 - Half of Pledged Revenues Transferred to Surplus Account | 4,790 | - |
| Net income available for debt service | $42,903 (a) | $28,108 (a) |
| Principal and Interest Requirements on Revenue Bonds | $ 20,391 (b) | $16,358 (b) |
| Principal and interest requirements on all obligations | $ 22,500 (c) | $18,555 (c) |

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 5 - LONG-TERM DEBT (Continued)

| Debt Service Coverage: | | |
|---|---|---|
| Revenue Bonds (a) divided (b) | 2.10 | 1.72 |
| All Obligations (a) divided (c) | 1.91 | 1.51 |
| Basic coverage required on bonds | 1.25 | 1.25 |

## NOTE 6 - EXTRAORDINARY ITEM - DEFEASED DEBT

### Defeasements During 1993

On May 4, 1993, the District issued $171,790,000 1993 Series A Sewer System Improvement and Refunding Revenue bonds dated April 15, 1993, with an average interest rate of 5.58 percent. A portion of the proceeds from the bond issue was used to purchase U.S. Government Securities to advance refund $71,960,000 of outstanding 1986 Series A bonds with an average interest rate of 7.37 percent and $31,915,000 of outstanding 1991 Series A bonds with an average interest rate of 6.7 percent. Those securities were deposited in an irrevocable trust with an escrow agent to provide for all future debt service payments on the 1986 Series A Bonds maturing after December 1, 2001 and the 1991 Series A bonds maturing after December 1, 2005. As a result, the 1986 Series A Bonds maturing after December 31, 2001 and the 1991 Series A bonds maturing after December 1, 2005, are considered to be defeased and the liability for those bonds has been removed from the balance sheet. At December 31, 1993, the amount of defeased debt outstanding amounted to $71,960,000 and $31,915,000, respectively on the 1986 Series A and 1991 Series A Bonds.

Although the advance refunding resulted in the recognition of an accounting loss of $12,763,294 for the year ended December 31, 1993, which is reflected on the Statement of Revenues and Expenses as an extraordinary item, the District in effect reduced its aggregate debt service payments by $12.3 million and obtained an economic gain (difference between the present values of the old and new debt service payments) of $7.7 million.

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

### NOTE 6 - EXTRAORDINARY ITEM - DEFEASED DEBT (Continued)

**Other Defeasements**

In prior years, MSD defeased various general obligation serial bonds and revenue serial bonds through refinancing and operations. Separate irrevocable trust funds were established and funded to fully service the defeased debt until the debt is called or matures. For financial reporting purposes, the debt has been considered defeased and is not included in the financial statements. At December 31, 1993 and 1992, the amount of prior year's defeased debt outstanding amounted to $54,320,000 and $57,290,000, respectively.

### NOTE 7 - CONTRIBUTIONS IN AID OF CONSTRUCTION

Contributions have been received from the OWDA and the United States Government in accordance with agreements transacted between MSD and these two entities. The City of Cincinnati and Hamilton County provided working capital to MSD upon formation, and those capital contributions are included in the amounts below. Other contributions have been received in connection with the expansion of sewerage services.

As of December 31, 1993 and 1992, net contributions in aid of construction consisted of the following:

|  | (in thousands) | |
|  | 1993 | 1992 |
| --- | --- | --- |
| United States Government Grants | $129,722 | $129,722 |
| City of Cincinnati | 68,300 | 68,300 |
| Ohio Water Development Authority Grants | 44,414 | 43,585 |
| Customers | 56,156 | 52,224 |
| Hamilton County | 1,738 | 1,738 |
|  | 300,330 | 295,569 |
| Less accumulated amortization of contributions in aid of construction | (118,793) | (111,714) |
|  | $181,537 | $183,855 |

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 8 - PENSION AND RETIREMENT

All MSD full-time employees participate in either the Retirement System of the City of Cincinnati (City System) or the Public Employees' Retirement System administered by the State of Ohio (State PERS). Each plan is a cost-sharing, multiple-employer, public employee retirement system. The payroll for employees covered by the plans for the year ended December 31, 1993, was $24,454,000 and $864,000 for the City System and State PERS, respectively. MSD's total payroll was $25,319,000. The payroll for employees covered by the plans for the year ended December 31, 1992, was $23,678,000 and $867,000 for the City System and State PERS, respectively. MSD's total payroll for 1992 was $24,578,000.

Income sources for each of the pension system include both employee and employer contributions as well as income earned on investments. Employer contributions the pension funds are current and fully met as required by law. Annual contributions to all pension systems include a provision for past service costs to properly fund pension and other benefits payable on account for creditable service.

The following table lists the employer and employee contribution rates and amounts paid by MSD for each retirement system for the year ended December 31, 1993.

| | (in thousands, except percents) | | | |
| | Employer | | Employee | |
| | Percent | Amount | Percent | Amount |
| City of Cincinnati Retirement System | 16.75% | $4,087* | 7.0% | $1,712 |
| Public Employees Retirement System | 13.55% | 117** | 8.5% | 73 |

\* Employer amount includes health care costs which were included in the calculation of the pension benefit obligation.

\*\* A portion of the PERS employer amount (2.11%) is used to fund a health care program which is not part of pension benefit obligation calculations.

The "pension benefit obligation" (PBO) is a standardized disclosure measure of the present value of pension benefits, adjusted for the effects of projected salary increases and step-rate benefits estimated to be payable in the future as a result of the employee service to date. The measure, which is the actuarial present value of credited projected benefits, is intended to help users assess each system's funding status on a going-concern basis, progress made in accumulating sufficient assets to pay benefits when due, and make comparisons among and assess retirement systems and employers. The measure is independent of the

14

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 8 - PENSION AND RETIREMENT (Continued)

actuarial funding method used to determine contributions to the retirement system. The systems do not make separate measurements of assets and pension benefit obligation for individual employers.

Listed below, for each system, is the pension benefit obligation for each system as a whole, net assets available for benefits, and the unfunded pension benefit obligation. These were determined through actuarial evaluation performed as of December 31, 1992, for the City System and, for the State PERS, (latest information available).

|  | Pension Benefit Obligation(PBO) | (in thousands) Net Assets Available | Unfunded PBO |
|---|---|---|---|
| City of Cincinnati Retirement System | $1,109,333 | $1,037,351 | $71,982 |
| Public Employees Retirement System | $21,579,000 | $20,783,200 | $795,800 |

**City of Cincinnati Retirement System**

The service retirement allowance vests after five years of creditable service. Medical care benefits vest after fifteen years of creditable service or after reaching age sixty with five years of creditable service. Any member in service may retire upon attaining age sixty, regardless of length of membership service if he was enrolled prior to January 1, 1969, or with a least five years of membership service if enrollment occurred at January 1, 1969, or later, or upon completing five years of creditable service before age sixty members may retire with a retirement allowance commencing at age sixty, provided, however, at the time of election of the deferred annuity, there is no loan outstanding against his contributions.

The annual retirement allowance consist of an annuity provided by the number equal in value to contributions with interest at the time of retirement and a pension, which together with annuity, produces a total annual retirement allowance equal to 2 percent of the average highest compensation multiplied by the number of years of membership service. The System also provides death and disability benefits. These benefits provisions and all other requirements are established by the Cincinnati Municipal Code.

# THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
## NOTES TO THE FINANCIAL STATEMENTS
### December 31, 1993 and 1992

## NOTE 8 - PENSION AND RETIREMENT (Continued)

Each member contributes at a rate of 7 percent of his salary until his retirement. MSD makes annual contributions based on a percentage of the salaries of all members which is determined actuarial at each year end for the next year. The contribution rate for 1992 was 16.75 percent consisting of 6.61 percent for the normal contribution and 10.14 percent for the accrued liability contribution.

The City System has 6,320 active contributing participants of which 734 are MSD employees. For 1992 MSD's contribution was 13.8 percent of the total employer contribution.

The following significant actuarial assumptions used to compute the pension benefit obligation are the same as those used to compute actuarial determined contribution requirements.

1.  Investment Return: 8.25 percent per annum, compounded annually.

2.  Mortality:  a) Non-disabled - 1971 Group Annuity Mortality Table

    b) Disabled - 1960 City of Cincinnati Experience Table

3.  Salary Scale: 5.5 percent per annum plus provision for an additional 9 percent increase in final average salary due to final lump sum salary payment.

4.  Rate of Termination:  1979 City of Cincinnati Experience Table

5.  Rate of Disability:  1979 City of Cincinnati Experience Table

6.  Asset Valuation:  Book Value

7.  Assumed Retirement Age:  62

8.  Medical Benefits:  Current costs with projected increases of 7 percent per annum.

The "entry age normal with frozen initial liability" is the funding method used by the actuary in computing the employer contribution rate and established actuarial liability of the system. The unfunded actuarial liability at December 31, 1992, was $96,865,000. The period of financing this unfunded liability is six years.

Trend information gives an indication of the progress made in accumulating sufficient assets pay benefits when due. Then-year trend information is available and the Analysis of Funding Progress is available for years 1987 through 1992 only.

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 8 - PENSION AND RETIREMENT (Continued)

### Other Postemployment Benefit Information

The City System provides Hospital and Surgical Insurance to retired members who have earned fifteen years credited service at the time of termination or terminate after age sixty with five years credited service and those who are receiving survivor benefits of eligible members are entitled to have their Hospital and Surgical Insurance premiums paid by the System. When benefits under the coverage would be reduced by reason of the retired member's eligibility for hospital and medical benefits under federal social security laws, the System will pay whatever additional fees are required for the federal medical coverage.

The health care coverage provided by the City System is considered an Other Postemployment Benefit (OPEB). It is advanced funded on an actuarial determined basis as a portion of the employer contribution requirement to the System. The Cincinnati Municipal Code provides authority for employer contributions. Health care coverage has been included in the calculation of the pension benefit obligation. Assets and liabilities are not separately determined.

### Public Employees' Retirement System

MSD has 23 employees, as of December 31, 1993, who are participants of the Public Employees' Retirement System administered by the State of Ohio. This plan is not a significant portion of the overall operations of MSD. Additional disclosures concerning this loan, including other postemployment benefit information, can be found in the plan's annual financial statements.

## NOTE 9 - RELATED PARTY TRANSACTIONS

Cincinnati Water Works provides billing and collection services on customers' accounts for MSD. Fees for these services for 1993 and 1992 were $3,092,000 and $3,157,000, respectively. Fees are also paid to other municipalities and villages within Hamilton County for collection of sewerage bills.

The City of Cincinnati provides "overhead" services to MSD, such as check disbursement, investment and legal services, etc. The fees for these services for 1993 and 1992 were $1,957,000 and $1,837,000, respectively. In addition, the City's Municipal Garage provides gasoline and repairs vehicle for MSD. Fees for these services were $870,000 and $803,000 for 1993 and 1992, respectively.

**THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI**
**NOTES TO THE FINANCIAL STATEMENTS**
**December 31, 1993 and 1992**

## NOTE 10 - COMMITMENTS AND CONTINGENCIES

The City of Cincinnati and the Board of County Commissioners of Hamilton County, Ohio, are parties to a Federal Consent Order which was entered in settlement of <u>United States of America vs. The Board of County Commissioners of Hamilton, County, Ohio, et al.,</u> Case No. C-1-85-0693. The City and County have continued in their efforts to negotiate an amendment to change certain construction schedules appearing in exhibits to that order. The City and County believe these changes are due to circumstances beyond the control of either, and are seeking approval of those schedule modifications from the United States Environmental Protection Agency. The consent order provides for stipulated penalties for failure to meet certain construction schedule deadlines but specifically contemplates that no such penalties will be collected from either defendant where the non-compliance was beyond the reasonable control of the defendants. In addition, according to MSD's Chief Legal Counsel, EPA has requested the payment of $290,000 in stipulated penalties under the Consent Order for certain effluent limit excursions. The Consent order provides for stipulated penalties under certain conditions, and although the City and County have argued that no substantial penalties are appropriate, it appears that EPA does intend to extract some monetary payment for the excursions. Currently, the City is awaiting EPA's response to certain defenses presented during 1992.

The City of Cincinnati and the Board of County Commissioners executed a Consent Decree with the State of Ohio on March 16, 1992, in the context of Hamilton County Common Please, Case No. A-9202450. This case alleged that the City and Board failed to demonstrate adequate implementation of the approved pretreatment program. The Consent Decree required the City and Board to:

(A) Immediately implement its enforcement response plan for all instances for industrial user non-compliance;

(B) To issue effective and enforceable compliance orders and schedules for all industrial users in significant non-compliance during 1991; and

(C) Pay $170,000 in satisfaction of all claims for civil penalties. The $170,000 payment has been made.

The City Manager appointed a pre-treatment enforcement team consisting of pre-treatment specialists and attorneys with the express goal of improving the pre-treatment enforcement program and satisfying all concerns of Ohio EPA. Management believes that MSD's Pretreatment Program is now operating in full conformity with state and federal law and no further enforcement action by the State against the City or Board is anticipated.



**VonLehman & Company**

Certified Public Accountants and Business Advisors

250 Grandview Drive Suite 300
Fort Mitchell, Kentucky 41·117-5610

9912 Carver Road
Cincinnati, Ohio 45242-55(2

## INDEPENDENT AUDITORS' REPORT ON THE
## INTERNAL CONTROL STRUCTURE

The Honorable Board of County Commissioners
The Metropolitan Sewer District of Greater Cincinnati
County of Hamilton, Ohio

We have audited the financial statements of The Metropolitan Sewer District of Greater Cincinnati (MSD) of Greater Cincinnati, Cincinnati, Ohio, as of and for the year ended December 31, 1993, and have issued our report thereon dated April 4, 1994.

We conducted our audit in accordance with generally accepted auditing standards and Government Auditing Standards (1988 Revision), issued by the Comptroller General of the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.

In planning and performing our audit of the financial statements of MSD for the year ended December 31, 1993, we considered its internal control structure in order to determine our auditing procedures for the purpose of expressing our opinion on the financial statements and not to provide assurance on the internal control structure.

The management of MSD is responsible for establishing and maintaining an internal control structure. In fulfilling this responsibility, estimates and judgments by management are required to assess the expected benefits and related costs of internal control structure policies and procedures. The objectives of an internal control structure are to provide management with reasonable, but not absolute, assurance that assets are safeguarded against loss from authorized use or disposition, and that transactions are executed in accordance with management's authorization and recorded properly to permit the preparation of financial statements in accordance with generally accepted accounting principles. Because of inherent limitations in any internal control structure, errors or irregularities may nevertheless occur and not be detected. Also, projection of any evaluation of the structure to future periods is subject to the risk that procedures may become inadequate because of changes in conditions or that the effectiveness of the design and operation of policies and procedures may deteriorate.

For the purpose of this report, we have classified the significant internal control structure policies and procedures in the following categories:

- ☐ Revenue/receipts
- ☐ Purchasing/disbursements
- ☐ Payroll
- ☐ External financial reporting

For all of the internal control structure categories listed above, we obtained an understanding of the design of relevant policies and procedures and whether they have been placed in operation, and we assessed control risk.

Our consideration of the internal control structure would not necessarily disclose all matters in the internal control structure that might be material weaknesses under standards established by the American Institute of Certified Public Accountants. A material weakness is a condition in which the design or operation of one or more of the internal control structure elements does not reduce to a relatively low level the risk that errors and irregularities in amounts that would be material in relation to the financial statements being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. We noted no matters involving the internal control structure and its operation that we consider to be material weaknesses as defined above.

This report is intended for the information of the Hamilton County Board of Commissioners, the Auditor of the State of Ohio, and the cognizant federal audit agency. However, this report is a matter of public record and its distribution is not limited.

*VonLehman & Company*

April 4, 1994

20



**VonLehman & Company**

Certified Public Accountants and Business Advisors

250 Grandview Drive Suite 300
Fort Mitchell, Kentucky 41017-5610

9912 Carver Road
Cincinnati, Ohio 45242-550?

## INDEPENDENT AUDITORS' REPORT ON COMPLIANCE WITH LAWS AND REGULATIONS RELATING TO THE FINANCIAL STATEMENTS

The Honorable Board of County Commissioners
The Metropolitan Sewer District of Greater Cincinnati
County of Hamilton, Ohio

We have audited the financial statements of the Metropolitan Sewer District of Greater Cincinnati, Cincinnati, Ohio, as of and for the year ended December 31, 1993, and have issued our report thereon dated April 4, 1994.

We conducted our audit in accordance with generally accepted auditing standards and Government Auditing Standards (1988 Revision), issued by the Comptroller General of the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.

Compliance with laws, regulations, contracts, and grants applicable to MSD is the responsibility of MSD's management. As part of obtaining reasonable assurance about whether the financial statements are free of material misstatements, we performed tests of MSD's compliance with certain provisions of laws, regulations, contracts, and grants. However, the objective of our audit of the financial statements was not to provide an opinion on overall compliance with such provisions. Accordingly, we do not express such an opinion.

The results of our tests indicate that, with respect to the items tested, MSD complied, in all material respects, with the provisions referred to in the preceding paragraph. With respect to items not tested, nothing came to our attention that caused us to believe that MSD had not complied, in all material respects, with those provisions.

This report is intended for the information of the Hamilton County Board of Commissioners, the Auditor of the State of Ohio, and the cognizant federal audit agency. However, this report is a matter of public record and its distribution is not limited.

*VonLehman & Company*

April 4, 1994



**VONLEHMAN & COMPANY**

Certified Public Accountants and Business Advisors

250 Grandview Drive Suite 100
Fort Mitchell, Kentucky 41017-5610

9912 Carver Road
Cincinnati, Ohio 45242-5502

## INDEPENDENT AUDITORS' REPORT ON COMPLIANCE
## WITH REQUIREMENTS OF THE OHIO COMPLIANCE SUPPLEMENT

The Honorable Board of County Commissioners
The Metropolitan Sewer District of Greater Cincinnati
County of Hamilton, Ohio

We have audited the financial statements of the Metropolitan Sewer District of Greater Cincinnati, Cincinnati, Ohio, as of and for the year ended December 31, 1993, and have issued our report thereon dated April 4, 1994.

We have also applied procedures to test MSD's compliance with provisions of laws and regulations that the Auditor of State has determined to be significant as a matter of public policy, public stewardship, or public accountability, as identified in the Auditor of State's Ohio Compliance Supplement, revised December, 1989, for the year ended December 31, 1993.

Compliance with laws and regulations to MSD is the responsibility of MSD's management. Our responsibility is to examine, on a test basis, evidence about compliance with these requirements. However, our procedures were substantially less in scope than an audit, whose objective is to express an opinion on MSD's compliance with these requirements. Accordingly, we do not express such an opinion.

The results of our procedures indicate that, for the items tested, MSD complied with provisions of laws and regulations that the Auditor of State has determined to be significant as a matter of public policy, public stewardship, or public accountability, as identified in the Auditor of State's Ohio Compliance Supplement, revised December, 1989.

Nothing came to our attention that caused us to believe that for the items not tested, MSD was not in compliance with provisions of laws and regulations that the Auditor of State has determined to be significant as a matter of public policy, public stewardship, or public accountability, as identified in the Auditor of State's Ohio Compliance Supplement, revised December, 1989.

This report is intended for the information of the Hamilton County Board of Commissioners, the Auditor of the State of Ohio, and the cognizant federal audit agency. However, this report is a matter of public record and its distribution is not limited.

*VonLehman & Company*

April 4, 1994