# EXHIBIT 14

## 4 of 4



**Foxx & Company**
Certified Public Accountants

## INDEPENDENT AUDITORS' REPORT

The Honorable Board of County Commissioners
Hamilton County, Ohio

We have audited the accompanying financial statements of the Metropolitan Sewer District of Greater Cincinnati (MSD), as of and for the years ended December 31, 2002 and 2001 as listed in the table of contents. These financial statements are the responsibility of MSD's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards* issued by the Comptroller General of the United States. Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of the Metropolitan Sewer District of Greater Cincinnati, at December 31, 2002 and 2001, and the results of its operations and its cash flows for the years then ended in conformity with accounting principles generally accepted in the United States of America.

As discussed in Note 1, the financial statements present only the financial position of MSD and are not intended to present fairly the financial position of Hamilton County, and the results of its operations and cash flows of its proprietary fund types in conformity with generally accepted accounting principles.

As described in Note 12, the District adopted Governmental Accounting Standards Board Statements Nos. 34, 37 and 38 as of and for the year ended December 31, 2002.

In accordance with *Government Auditing Standards*, we have also issued our report dated April 18, 2003 on our consideration of MSD's internal control over financial reporting and our tests of its compliance with certain provisions of laws, regulations, contracts, and grants. That report is an

integral part of an audit performed in accordance with *Government Auditing Standards* and should be read in conjunction with this report in considering the results of our audit.

Our audit was conducted for the purpose of forming an opinion on the financial statements taken a whole. The Management's Discussion on pages three to seven, is presented for purposes of additional analysis and is not a required part of the basic financial statements but are supplementary information required by the Governmental Accounting Standards Board. We have applied certain limited procedures, which consisted principally of inquiries of management regarding the methods of measurement and presentation of the supplementary information. However, we did not audit the information and express no opinion on it.

*Fexx & Company*

Cincinnati, Ohio
April 18, 2003

# Management's Discussion and Analysis

## OVERVIEW OF THE FINANCIAL STATEMENTS

This discussion and analysis is intended to serve as an introduction to the District's basic financial statements. The District's basic financial statements are comprised of two components: 1) the financial statements and 2) notes to the financial statements that explain in more detail some of the information in the financial statements.

## REQUIRED FINANCIAL STATEMENTS

The financial statements of the District report information about the District using accounting methods similar to those used by the private-sector companies. These statements provide both long-term and short-term information about the District's overall financial status.

The Statement of Net Assets presents information on all of the District's assets and liabilities, with the difference between the two reported as net assets. This statement provides information about the nature and the amounts of investments in resources(assets) and the obligations to District creditors (liabilities). It provides one way to measure the financial health of the District by providing the basis for evaluating the capital structure of the District and assessing the liquidity and financial flexibility of the District. However, there are several outside nonfinancial factors that need to be considered. Factors such as changing economic conditions, population and customer growth, and new or changed rules and regulations.

All of the current year's revenue and expenses are accounted for in the Statement of Revenues, Expenses, and Changes in Net Assets. This statement measures the success of the District's operations over the past year and can be used to determine whether the District has successfully recovered all its cost through its user fees.

The final required statement is the Statement of Cash Flows. The statement reports cash receipts, cash payments, and net changes in cash resulting from operations, investing, and financing activities. This statement provides answers to such questions as where did cash come from, what was cash used for, and what was the change in the cash balance during the reporting period.

## FINANCIAL ANALYSIS OF THE DISTRICT

### Net Assets

As previously noted, net assets may serve over time as a useful indicator of an entity's financial position. In the case of the District, assets exceeded liabilities by $430,392,000 at the close of the most recent fiscal year. As can be seen in Table A, on the next page, the largest portion of the District's net assets (68%) reflect its investment in capital assets (e.g., sewers, buildings, machinery and equipment), less any related debt used to acquire those assets that is still outstanding. These

capital assets are used primarily in the collection and treatment of wastewater throughout the District's service area. The related debt will be repaid with resources provided by system users through rates and fees.

## Table A
### Condensed Summary of Net Assets
### (In Thousands)

| | 2002 | 2001 | Increase (Decrease) over 2001 | Percentage Increase (Decrease) |
|---|---|---|---|---|
| Current and Other Assets | $206,287 | $ 221,129 | $ (14,842) | (6.7%) |
| Capital Assets | 681,288 | 668,565 | 12,723 | 1.9% |
| Total Assets | 887,575 | 889,694 | (2,119) | (0.2%) |
| | | | | |
| Long-term Debt Outstanding | 438,838 | 455,696 | (16,858) | (3.7%) |
| Other Liabilities | 18,345 | 16,364 | 1,981 | 12.1% |
| Total Liabilities | 457,183 | 472,060 | (14,877) | (3.2%) |
| | | | | |
| Invested in Capital Assets, Net of Related Debt | 291,490 | 259,910 | 31,580 | 12.2% |
| -Restricted | 4,565 | 4,880 | (315) | (6.5%) |
| -Unrestricted | 134,337 | 152,844 | (18,507) | (12.1%) |
| | | | | |
| Total Net Assets | $430,392 | $ 417,634 | $ 12,758 | 3.1% |

Net assets increased $12.758 million in 2002. The increase is a combination of income before contributions and contributions in the form of connection fees, assessments, and developer contributions.

4

### Table B
### Condensed Summary of Revenues,
### Expenses, and Changes in Net Assets
### (In Thousands)

| | 2002 | 2001 | Increase (Decrease) over 2001 | Percentage Increase (Decrease) |
|---|---|---|---|---|
| Operating revenues | $ 121,447 | $ 114,109 | $ 7,338 | 6.4% |
| Nonoperating revenues | 7,449 | 7,279 | 170 | 2.3% |
| Total revenues | 128,896 | 121,388 | 7,508 | 6.2% |
| | | | | |
| Depreciation expense | 27,271 | 27,212 | 59 | 0.2% |
| Other operating expense | 75,436 | 70,312 | 5,124 | 7.3% |
| Nonoperating expense | 21,745 | 19,525 | 2,220 | 11.4% |
| Total expenses | 124,452 | 117,049 | 7,403 | 6.3% |
| | | | | |
| Income (Loss) before Capital contributions | 4,444 | 4,339 | 105 | 2.4% |
| | | | | |
| Capital contributions | 8,314 | 10,246 | (1,932) | (18.9%) |
| | | | | |
| Changes in net assets | 12,758 | 14,585 | (1,827) | (12.5%) |
| Beginning net assets | 417,634 | 403,049 | 14,585 | 3.6% |
| | | | | |
| Ending net assets | $ 430,392 | $ 417,634 | $ 12,758 | 3.1% |

While the Summary of Net Assets (Table A) shows the change in financial position of net assets, the Summary of Revenues, Expenses, and Changes In Net Assets provides details as to the nature and source of these changes. Table B shows that total revenues increased 6.2 percent or $7.5 million and expenses increased 6.3 percent or $7.4 million. The major factors which contributed to these results, include:

- Operating revenues reflect a 6 percent rate increase implemented January 9, 2002.
- Nonoperating revenues increased 2.3 percent but this is primarily an offset between an increase in the fair value of investments and a decrease in investment income due to declining interest rates and a rebate payment.
- Operating expenses increased 7.3 percent or $5.124 million. Personnel and related costs increased $1.9 million with increases in health care costs, basic wage increases, and retirements. Other increases occurred in billing services, security costs, repair and maintenance efforts, computer and process systems, regulatory negotiations, and environmental studies.

5

- Nonoperating expenses increased 11.4 percent or $2.22 million resulting from a full year of interest expense on the November 2001 bond issue.
- Capital contributions will fluctuate depending on building activity and assessment projects.

## BUDGETARY HIGHLIGHTS

The District has an annual operating budget that is approved by the Hamilton County Board of County Commissioners. Capital budgets are approved on a project basis, however, annually a current year and a five year plan is presented to the Board. The 2002 sewerage charges budget prepared in part from previous rate studies was about 6 percent under budget. A new rate study which addressed this issue has been completed and implemented for 2003. Expenses were 4.5 percent under the approved budget with most of the savings in personnel and personnel related categories. Additional savings, $3.6 million, were realized when a proposed bond issue was not needed.

## CAPITAL ASSETS AND DEBT ADMINISTRATION

### Capital Assets

As of December 31, 2002, the District's investment in capital assets amounted to $681 million (net of accumulated depreciation) as shown in Table C. During the year the District spent about $32 million on capital improvement projects and received about $8 million in capital contributions. Most of the projects involved sewer replacements and improvements with the largest project being the System Wide Modeling project, $3.9 million.

**Table C**
**Capital Assets**
**(In Thousands)**

|  | 2002 | 2001 | Increase (Decrease) over 2001 | Percentage Increase (Decrease) |
|---|---|---|---|---|
| Land | $ 4,977 | $ 4,932 | $ 45 | 0.91% |
| Buildings & Structures | 621,759 | 600,363 | 21,396 | 3.56% |
| Processing Systems | 257,417 | 258,181 | (764) | (0.30%) |
| Office & Service Equipment | 29,221 | 28,225 | 996 | 3.53% |
| Construction in progress | 167,080 | 150,511 | 16,569 | 11.01% |
| Subtotal | 1,080,454 | 1,042,212 | 38,242 | 3.67% |
| Less Accumulated Depreciation | 399,166 | 373,647 | 25,519 | 6.83% |
| Net Capital Assets | $ 681,288 | $ 668,565 | $ 12,723 | 1.90% |

6

Debt Administration

The District finances its construction program primarily through the issuance of revenue bonds. In addition, the District will utilize low interest loan programs through the State of Ohio where appropriate.

The District's revenue bond ratings are:

Moody's Investors Services          Aa3
Standard & Poor's Corporation       AA

Additional information on the District's long-term debt can be found in note 6 to the financial statements.

## ECONOMIC FACTORS AND NEXT YEAR'S BUDGETS AND RATES

The service area of the District is best described as mature. The District is not in a growth situation but one in which the system, generally, is being upgraded and replaced to comply with increasing regulatory requirements. The operating budget for 2003 is $129,459,680 which is $1.6 million less than the 2002 budget. A rate increase of 7 percent was approved effective January 9, 2003.

The capital plan was submitted and accepted for the years 2003 through 2007. The plan contemplates issuing an average of about $60 million in debt each year to finance the capital improvement program. Each project must be individually approved before proceeding.

## THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
## STATEMENTS OF NET ASSETS
### December 31, 2002 and 2001
#### (all amounts expressed in thousands)

### ASSETS

|  | 2002 | 2001 |
|---|---|---|
| **Current assets** |  |  |
| Cash, cash equivalents and pooled investments held by the City of Cincinnati | $ 12,782 | $ 11,860 |
| Accounts receivable | 21,057 | 17,968 |
| Prepaid expenses and other | 2,443 | 3,100 |
| Total current assets | 36,282 | 32,937 |
| **Noncurrent assets:** |  |  |
| Restricted assets: |  |  |
| Cash, cash equivalents and pooled investments held by the City of Cincinnati: |  |  |
| Construction account | 9,947 | 4,247 |
| Amount to be transferred to surplus account | 6,371 | 10,539 |
| Held by trustee: |  |  |
| Cash and cash equivalents | 33,826 | 22,549 |
| Investments - Held to maturity | 112,245 | 142,742 |
| Total restricted assets | 162,389 | 180,077 |
| **Other assets:** |  |  |
| Unamortized financing costs | 5,064 | 5,4 |
| Other | 2,552 | 2,6.. |
| Total other assets | 7,616 | 8,115 |
| **Capital assets:** |  |  |
| Land | 4,977 | 4,932 |
| Building and structures | 621,759 | 600,363 |
| Processing systems | 257,417 | 258,181 |
| Office and service equipment | 29,221 | 28,225 |
| Construction in progress | 167,080 | 150,511 |
|  | 1,080,454 | 1,042,212 |
| Less accumulated depreciation | (399,166) | (373,647) |
| Net capital assets | 681,288 | 668,565 |
| Total noncurrent assets | 851,293 | 856,757 |
| **Total assets** | $ 887,575 | $ 889,694 |

The notes to the financial statements are an integral part of the financial statements.

8

THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
STATEMENTS OF NET ASSETS
December 31, 2002 and 2001
(all amounts expressed in thousands)

## LIABILITIES

| | 2002 | 2001 |
|---|---|---|
| **Current liabilities:** | | |
| Payable from current assets: | | |
| Current portion of long-term debt | $    18,070 | $    17,026 |
| Accounts payable | 3,924 | 4,094 |
| Accrued payroll expenses | 1,139 | 1,017 |
| Total current liabilities payable from current assets | 23,133 | 22,137 |
| | | |
| Payable from restricted assets: | | |
| Construction accounts payable | 5,178 | 3,410 |
| Accrued interest payable | 1,828 | 2,044 |
| Total current liabilities payable from restricted assets | 7,006 | 5,454 |
| | | |
| **Total current liabilities payable from current and restricted assets** | 30,139 | 27,591 |
| | | |
| **Noncurrent Liabilities:** | | |
| Accrued compensated absences | 6,276 | 5,799 |
| Long-term debt | 420,768 | 438,670 |
| **Total noncurrent liabilities** | 427,044 | 444,469 |
| | | |
| **Total liabilities** | 457,183 | 472,060 |
| | | |
| **Net assets** | | |
| Invested in capital assets, net of related debt | 291,490 | 259,910 |
| Restricted for debt service | 4,565 | 4,880 |
| Unrestricted | 134,337 | 152,844 |
| | | |
| **Total net assets** | $    430,392 | $    417,634 |

The notes to the financial statements are an integral part of the financial statements.

THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
STATEMENTS OF REVENUES, EXPENSES
AND CHANGES IN NET ASSETS
for the years ended December 31, 2002 and 2001
(all amounts expressed in thousands)

|  | 2002 | 2001 |
|---|---|---|
| Operating revenues: | | |
| Sewerage service charges | $ 107,899 | $ 101,634 |
| Sewer surcharges | 10,841 | 9,716 |
| All other revenues | 2,707 | 2,759 |
| Total operating revenues | 121,447 | 114,109 |
| Operating expenses: | | |
| Personnel services | 35,244 | 33,351 |
| Purchased services | 18,814 | 15,823 |
| Utilities, fuel and supplies | 15,506 | 15,807 |
| Depreciation | 27,271 | 27,212 |
| Other expenses | 5,872 | 5,331 |
| Total operating expenses | 102,707 | 97,524 |
| Operating income | 18,740 | 16,585 |
| Nonoperating revenues (expenses): | | |
| Interest income | 4,861 | 7,930 |
| Change in fair value of investments | 2,493 | (723) |
| Interest expense | (21,745) | (19,525) |
| Gain on sale of fixed assets | 95 | 72 |
| Total nonoperating revenues (expenses) | (14,296) | (12,246) |
| Income from operations | 4,444 | 4,339 |
| Capital contributions | 8,314 | 10,246 |
| Change in net assets | 12,758 | 14,585 |
| Total net assets, beginning | 417,634 | 403,049 |
| Total net assets, ending | $ 430,392 | $ 417,634 |

The notes to the financial statements are an integral part of the financial statements.

## THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
### STATEMENTS OF CASH FLOWS
#### for the years ended December 31, 2002 and 2001
(all amounts expressed in thousands)

|  | 2002 | 2001 |
|---|---:|---:|
| **Cash Flows from Operating Activities** | | |
| Cash received from customers | $ 115,651 | $ 111,361 |
| Cash payments for goods and services | (40,433) | (35,869) |
| Cash payments for personnel costs | (34,645) | (34,068) |
| Other operating revenues | 3,461 | 2,169 |
| Net Cash Provided by Operating Activities | 44,034 | 43,593 |
| **Cash Flows from Capital and Related Financing Activities** | | |
| Principal and interest payments on long-term debt | (40,976) | (51,126) |
| Acquisition and construction of capital assets | (32,277) | (34,619) |
| Loan proceeds | 287 | 2,175 |
| Revenue bond proceeds | - | 76,128 |
| Revenue bond issuance costs | (40) | (667) |
| Tap-in fees | 4,202 | 4,486 |
| Proceeds from sale of property, plant and equipment | 95 | 72 |
| Net Cash (Used) by Capital and Related Financing Activities | (68,709) | (3,551) |
| **Cash Flows from Investing Activities** | | |
| Purchase of government securities | (228,048) | (143,186) |
| Maturity or redemption of government securities | 260,980 | 114,463 |
| Net increase in fair value of pooled cash and investments held by City of Cincinnati | 58 | 163 |
| Interest earned on investments | 5,407 | 9,674 |
| Net Cash Provided (Used) by Investing Activities | 38,397 | (18,886) |
| Net Increase (Decrease) in Cash and Cash Equivalents | 13,722 | 21,156 |
| Cash and Cash Equivalents at January 1 | 49,204 | 28,048 |
| Cash and Cash Equivalents at December 31 | $ 62,926 | $ 49,204 |
| **Reconciliation of Operating Income to Net Cash Provided by Operating Activities:** | | |
| Income from operations | $ 18,740 | $ 16,585 |
| Adjustments to reconcile operating income to net cash provided by operating activities: | | |
| Depreciation and amortization | 27,271 | 27,212 |
| Change in assets and liabilities: | | |
| Net change in customer accounts receivable | (3,089) | 11 |
| Net change in other assets | 683 | (666) |
| Net change in operating accounts payable | (170) | 1,168 |
| Net change in accrued payroll and related expenses | 599 | (717) |
| Net Cash Provided by Operating Activities | $ 44,034 | $ 43,593 |
| **Non-cash Transactions:** | | |
| Structures donated as contributed capital in aid of construction | $ 3,261 | $ 5,160 |

11

THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
NOTES TO THE FINANCIAL STATEMENTS
for the years ended December 31, 2002 and 2001

## NOTE 1 - ACCOUNTING POLICIES

A summary of the significant accounting policies applied in the accompanying financial statements follows:

### Organization

The Metropolitan Sewer District of Greater Cincinnati (MSD), an enterprise fund of the County of Hamilton, Ohio, collects and treats industrial and residential wastewater for municipalities and unincorporated areas of Hamilton County.   MSD was formed on April 10, 1968, pursuant to resolutions of the Board of County Commissioners of Hamilton County and Ordinances of the City of Cincinnati, providing for a consolidation of the City Sewer Department and the County Sewer District. Under a contract with the City of Cincinnati, the Board designated the City as its agent for the maintenance and operation of MSD.  The annual budget, prepared on the cash basis of accounting, is approved by the Board and administered by the City.  Budgetary control is exercised at the divisional level, and between personnel and all other costs.  The County issues a separate Comprehensive Annual Financial Report which includes MSD as a separate enterprise fund of the County.

### Basis of Accounting

The accompanying financial statements were prepared on the accrual basis of accounting, whereby revenues and expenses are recognized in the period earned or incurred.

### Enterprise Fund Activity Accounting and Financial Reporting

In accordance with GASB Statement No. 34, "Basic Financial Statements and Management's Discussion and Analysis for State and Local Government, the District applies all GASB pronouncements and all FASB Statements and Interpretations, Accounting Principles Board of Opinions and Accounting Research Bulletins issued on or before November 30, 1989, unless they conflict with GASB pronouncements.

### Use of Estimates

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements

12

and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

## Statement of Cash Flows

For purposes of the Statements of Cash Flows, all highly liquid investments with a maturity of three months or less when purchased are considered to be cash equivalents. Pooled cash and investments held by the City of Cincinnati are considered cash equivalents by MSD.

## Investments

MSD is required by Ohio law to invest in only United States obligations; federal agency securities; Ohio bonds and other obligations or such obligations of political subdivisions of the state, provided that the subdivisions are located within Hamilton County; time certificates of deposit or deposit accounts in an eligible institution; and no load money market mutual funds consisting only of investments mentioned above. Investments are required to mature within five years from the date of settlement, unless the investment is matched to a specific obligation or debt of MSD.

Investment securities are stated at fair value in accordance with GASB Statement No. 31.

## Inventory

Supplies and materials are stated at the lower cost or market on a first-in, first-out (FIFO) basis.

## Capital Assets

Capital assets are stated at historical cost for assets acquired after MSD's inception in 1968. Assets which were acquired prior to 1968 and not identifiable with specific historical costs are not included in the capital assets balance. Assets acquired by MSD through contributions, such as contributions from land developers and federal and state grants, are capitalized and recorded in the plant records at the contributors' reported cost. Construction costs include interest capitalized on debt during the period of construction and the cost of in-force labor.

Depreciation expense is computed on the straight-line method over the estimated useful lives of the respective assets. The estimated lives are as follows:

| | |
|---|---|
| Building and structures | 40 years |
| Processing systems | 25 years |
| Office and service equipment | 5-15 years |

Any gain or loss arising from the disposal of capital assets has been credited or charged to income.

13

## Unamortized Financing Costs

The unamortized financing costs include bond discount, consulting and attorney fees incurred in connection with the revenue bond obligations. These amounts are being amortized on the interest method and the straight-line method, respectively, over the lives of the revenue bonds.

## Pension Plans

Employees participate in either the City of Cincinnati's Retirement System or the Public Employees Retirement System administered by the State of Ohio. Pension costs reflect a percentage of employees' gross pay, as defined by the terms of pension plans in which employees participate. MSD's policy is to fund pension costs accrued.

## Compensated Absences

Compensated absences are accrued in accordance with GASB Statement No. 16. Components of the liability include accrued vacation time, sick leave, compensatory time and other related payments.

## Net Assets

Net assets are the difference between assets and liabilities. Net assets invested in capital asset, net of related debt are capital assets less accumulated depreciation and any outstanding long-term debt related to the acquisition, construction or improvement of those assets. Net assets are reported restricted when there are legal limitations that are imposed on their use by county legislation, external restrictions by other governments, creditors or grantors.

## Operating Revenues and Expenses

Operating revenues are those revenues that are generated directly from the primary activity of the proprietary fund. For the District, these revenues are charges for services for wastewater treatment. Operating expenses are necessary costs incurred to provide the service that is the primary activity of the fund.

14

## NOTE 2 - DEPOSITS AND INVESTMENTS

The following information classifies deposits and investments by category of risk as defined in GASB Statement No. 3. "Deposits with Financial Institutions. Investments and Repurchase Agreements"

*Deposits:* At December 31, 2002 and 2001, the carrying amount of MSD's deposits held by the City of Cincinnati total $29,100,000 and $26,655,000 respectively. Amounts held by the City of Cincinnati are invested on MSD's behalf in accordance with the Cincinnati Municipal Code. Amounts held by the City are collateralized as part of the City's cash and investment balances.

*Investments:* Funds held by trustees are eligible investments as defined by the Trust Agreement and are in the name of the trustee for the benefit of MSD.

Investments made by MSD are summarized below. Trustee account investments are categorized according to credit risk into the following categories: (1) insured or registered, or securities held by MSD's or its agent (bank trust department) in the MSD's name; or (2) uninsured and unregistered, with securities held by the counterparty's trust department or agent in the MSD's name; or (3) uninsured, unregistered securities held by the counterparty, or its trust department or agent but not in MSD's name. Money market funds are unclassified investments since they are not evidenced by securities that exist in physical or book entry form.

| | (all amounts in thousands) Category | | | Carrying Amount | Fair Value |
|---|---|---|---|---|---|
| December 31, 2002 | 1 | 2 | 3 | | |
| U.S. Government Securities | $ 112,245 | $ - | $ - | $ 112,245 | $ 112,245 |
| Money Market Funds | | - | - | 33,826 | 33,826 |
| Total | $ 112,245 | $ - | $ - | $ 146,071 | $ 146,071 |

| | (all amounts in thousands) Category | | | Carrying Amount | Fair Value |
|---|---|---|---|---|---|
| December 31, 2001 | 1 | 2 | 3 | | |
| U.S. Government Securities | $ 142,742 | $ - | $ - | $ 142,742 | $ 142,742 |
| Money Market Funds | | - | - | 22,549 | 22,549 |
| Total | $ 142,742 | $ - | $ - | $ 165,291 | $ 165,291 |

The classification of cash and cash equivalents and investments on the financial statements is based on criteria set forth in GASB Statement No. 9. A reconciliation between the classifications of cash and investments on the financial statements and the classification per GASB Statement No. 3 is follows:

(all amounts in thousands)

| December 31, 2002 | Cash and Cash Equivalents | Investments |
|---|---|---|
| GASB Statement No. 9 | $ 62,926 | $ 112,245 |
| Money Market Funds | (33,826) | 33,826 |
| GASB Statement No. 3 | $ 29,100 | $ 146,071 |

| December 31, 2001 | Cash and Cash Equivalents | Investments |
|---|---|---|
| GASB Statement No. 9 | $ 49,204 | $ 142,742 |
| Money Market Funds | (22,549) | 22,549 |
| GASB Statement No. 3 | $ 26,655 | $ 165,291 |

## NOTE 3 - ACCOUNTS RECEIVABLE

Accounts receivable consist of the following:

| | (all amounts in thousands) December 31, | |
|---|---|---|
| | 2002 | 2001 |
| Sewerage charges and surcharges: | | |
| Unbilled amount | $ 11,278 | $ 10,484 |
| Billed amount | 11,054 | 8,329 |
| Less allowance for doubtful accounts | (1,585) | (1,600) |
| Other | 310 | 755 |
| Total | $ 21,057 | $ 17,968 |

## NOTE 4 - RESTRICTIONS ON ASSETS

Land acquired for MSD's use is titled to either the City of Cincinnati or Hamilton County. The cost of this land has been recorded on the books of MSD since it has the full benefit of the land as an economical resource.

16

In August 1985, the Federal District Court entered a consent order in an action with MSD and others (see Commitments and Contingencies Note). In complying with the consent order, MSD is required to maintain amounts on deposit in an environmental security account. Expenditures from this account must be approved by the U.S. Environmental Protection Agency. The balance of this account, which is included in other assets, was $1,166,000 and $1,144,000 at December 31, 2002 and 2001, respectively.

The Trust Agreement for the Series A Revenue Bonds (see Long-Term Debt Note) requires the establishment of certain trust accounts including a Bond Account, Bond Reserve Account, Replacement and Improvement Account, and a Surplus Account to be held by the Trustee. The Bond Account will be used to accumulate periodic principal and interest payments. The Bond Reserve Account will be funded in an amount equal to the highest annual future debt service requirement. The Replacement and Improvement Account is to be maintained with a balance of $5,000,000. The Surplus Account is available to be used for any other Sewer System purpose. The Trust Agreement also requires the creation of a Construction Account to be held by the City to pay for project costs. At December 31, 2002 and 2001 the following balances (at fair value) were maintained in the trust accounts:

|  | (all amounts in thousands) December 31, | |
|  | 2002 | 2001 |
| Held by trustee: | | |
| Reserve | $ 44,037 | $ 41,933 |
| Replacement and improvement | 5,004 | 5,109 |
| Bond retirement | 3,399 | 3,736 |
| Surplus | 93,631 | 114,513 |
| Total | $ 146,071 | $ 165,291 |

17

## NOTE 5 - CAPITAL ASSETS

The following summarized the changes to capital assets during 2002.

(all amounts in thousands)

|  | Balance at January 1, 2002 | | Additions | | Deletions | | Balance at December 31, 2002 | |
|---|---|---|---|---|---|---|---|---|
| Land | $ | 4.932 | $ | 45 | $ | - | $ | 4.977 |
| Buildings and structures | | 600.363 | | 21.396 | | - | | 621.759 |
| Processing systems | | 258.181 | | 286 | | (1.050) | | 257.417 |
| Office and service equipment | | 28.225 | | 1.559 | | (563) | | 29.221 |
| | $ | 891.701 | $ | 23.286 | $ | (1.613) | | 913.374 |
| Accumulated depreciation | | | | | | | | (399.166) |
| Net capital assets | | | | | | | $ | 514.208 |
| Construction in progress as of January 1, 2002 | | | | | | | $ | 150.511 |
| Additions | | | | | | | | 38.686 |
| Construction Projects closed | | | | | | | | (22.117) |
| Construction in progress as of December 31, 2002 | | | | | | | $ | 167.080 |

(all amounts in thousands)
Accumulated Depreciation

|  | Balance at January 1, 2002 | | Additions | | Deletions | | Balance at December 31, 2002 | |
|---|---|---|---|---|---|---|---|---|
| Land | $ | - | $ | - | $ | - | $ | - |
| Buildings and structures | | 236.239 | | 14.319 | | - | | 250.558 |
| Processing systems | | 115.403 | | 9.686 | | - | | 125.089 |
| Office and service equipment | | 22.005 | | 2.075 | | 561 | | 23.519 |
| | $ | 373.647 | $ | 26.080 | $ | 561 | $ | 399.166 |

The following summarized the changes to capital assets during 2001.

(all amounts in thousands)

| | Balance at January 1, 2001 | Additions | Deletions | Balance at December 31, 2001 |
|---|---|---|---|---|
| Land | $ 4.925 | $ 7 | $ - | $ 4.932 |
| Buildings and structures | 567.218 | 33.145 | - | 600.363 |
| Processing systems | 259.089 | 138 | (1.046) | 258.181 |
| Office and service equipment | 25.996 | 2.617 | (388) | 28.225 |
| | $ 857.228 | $ 35.907 | $ (1.434) | 891.701 |
| Accumulated depreciation | | | | (373.647) |
| Net capital assets | | | | $ 518.054 |
| Construction in progress as of January 1, 2001 | | | | $ 145.667 |
| Additions | | | | 37.681 |
| Construction Projects closed | | | | (32.837) |
| Construction in progress as of December 31, 2001 | | | | $ 150.511 |

(all amounts in thousands)
Accumulated Depreciation

| | Balance at January 1, 2001 | Additions | Deletions | Balance at December 31, 2001 |
|---|---|---|---|---|
| Land | $ - | $ - | $ - | $ - |
| Buildings and structures | 222.621 | 13.618 | - | 236.239 |
| Processing systems | 105.143 | 10.260 | - | 115.403 |
| Office and service equipment | 20.217 | 2.176 | 388 | 22.005 |
| | $ 347.981 | $ 26.054 | $ 388 | $ 373.647 |

19

## NOTE 6 - LONG-TERM DEBT

Long-term debt consisted of the following:

|  | Principal Issue | Interest Rate | Year of Maturity | December 31, 2002 | 2001 |
|---|---|---|---|---|---|
| Series A Revenue Bonds |  |  |  |  |  |
| 2001 | $ 76.000 | 2.30-5.25 | 2026 | $ 71.205 | $ 76.000 |
| 2000 | 40.085 | 4.50-5.75 | 2025 | 38.395 | 39.260 |
| 1997 | 105.245 | 3.85-5.13 | 2017 | 87.355 | 91.255 |
| 1995 | 85.800 | 3.70-6.05 | 2017 | 64.590 | 68.510 |
| 1993 | 171.790 | 2.45-5.60 | 2016 | 159.340 | 161.780 |
| Ohio Water Development Authority Contracts | 41.830 | 2.00-7.49 | 2019 | 1.335 | 1.656 |
| Ohio Water and Sewer Rotary Commission | - | - | - | 50 | 50 |
| Ohio Public Works Commission | - | 3.54-4.80 | 2017 | 4.440 | 4.677 |
| Water Pollution Control Loan Fund | - | 0.00-3.00 | 2018 | 12.128 | 12.508 |
| Total obligations |  |  |  | $ 438.838 | $ 455.696 |
| Less current maturities |  |  |  | (18.070) | (17.026) |
| Long-term portion |  |  |  | $420.768 | $ 438.670 |

(all amounts in thousands except percents)

Principal and interest payments on long-term debt for the next five years and thereafter are as follows:

(all amounts in thousands)

| Year | Revenue Bonds Principal | Interest | OWDA Principal | Interest | OPWC* Principal | Interest | WPCLF* Principal | Interest |
|---|---|---|---|---|---|---|---|---|
| 2003 | $ 16.930 | $ 21.937 | $ 174 | $ 47 | $ 257 | $ 99 | $ 709 | $ 585 |
| 2004 | 17.805 | 21.068 | 99 | 42 | 276 | 96 | 738 | 555 |
| 2005 | 18.720 | 20.150 | 102 | 38 | 281 | 91 | 770 | 524 |
| 2006 | 19.695 | 19.172 | 106 | 35 | 287 | 85 | 802 | 492 |
| 2007 | 20.665 | 18.202 | 109 | 31 | 292 | 79 | 836 | 458 |
| 2008-2012 | 120.510 | 73.826 | 610 | 95 | 1.546 | 307 | 4.739 | 1.731 |
| 2013-2017 | 155.500 | 38.830 | 135 | 5 | 1.417 | 149 | 4155 | 724 |
| 2018-2022 | 26.950 | 10.561 | - | - | 657 | 38 | 1228 | 132 |
| 2023-2027 | 24.110 | 2.894 | - | - | 25 |  | - | - |
| Total | $ 420.885 | $ 226.640 | $ 1.335 | $ 293 | $ 5.038 | $ 944 | $ 13.977 | $ 5.201 |

\* This amount shown represents the total amount of the loans, some of which have not been fully drawdown or finalized.

| December 31, 2002 | Beginning Balance | Additions | Reductions | Ending Balance |
|---|---|---|---|---|
| Revenue Bonds | $  436,805 | $       - | $  15,920 | $  420,885 |
| Ohio Water Development Authority Contracts | 1,656 | - | 321 | 1,335 |
| Ohio Water and Sewer Rotary Commission | 50 | - | - | 50 |
| Ohio Public Works Commission | 4,677 | - | 237 | 4,440 |
| Water Pollution Control Loan Fund | 12,508 | 287 | 667 | 12,128 |
| Total | $  455,696 | $  287 | $  17,145 | $  438,838 |

## Series A Revenue Bonds

Effective November 14, 2001, MSD issued $76,000,000 County of Hamilton, Ohio 2001 Series A Sewer System Improvement and Refunding Revenue bonds dated November 1, 2001. The proceeds from the 2001 bonds were used to permanently fund certain previous capital expenditures, defease a portion of the 1991 Series A bond issue, fund the new bond reserve requirement and pay for the cost of issuance. The 2001 bonds are special obligations of the District, payable solely from the net revenues of the District and were issued on a parity with the 1993, 1995, 1997 and 2000 Series A bonds, secured equally and ratably under the Trust Agreement.

Effective June 29, 2000, MSD issued $40,085,000 County of Hamilton, Ohio 2000 Series A Sewer System Improvement Revenue bonds dated June 1, 2000. The proceeds from the 2000 bonds were used to permanently fund certain previous capital expenditures, fund the new bond reserve requirement and pay the cost of issuance. The 2000 bonds are special obligations of the District, payable solely from the net revenues of the District and were issued on a parity with the 1993, 1995 and 1997 Series A bonds, secured equally and ratably under the Trust Agreement.

Effective October 22, 1997, MSD issued $105,245,000 County of Hamilton, Ohio 1997 Series A Sewer System Improvement Revenue bonds dated October 1, 1997. The proceeds from the 1997 bonds were used to permanently fund certain previous expenditures, fund the new bond reserve requirement and pay the cost of issuance. The 1997 bonds are special obligations of the District, payable solely from the net revenues of the District and were issued on a parity with the 1993, and 1995 Series A bonds, secured equally and ratably under the Trust Agreement.

Effective August 31, 1995, MSD issued $85,800,000 County of Hamilton, Ohio 1995 Series A Sewer System Improvement and Refunding Revenue bonds dated August 15, 1995. The proceeds from the 1995 bonds were used to permanently fund certain previous capital expenditures, provide funds for new projects, defease a portion of the 1986 and 1991 Series A bond issues, fund the new bond reserve requirement and pay the cost of issuance. The 1995 bonds are special obligations of the District payable solely from the net revenues of the District and were issued on a parity with the 1993 Series A bonds, secured equally and ratably under the Trust Agreement.

Effective May 4, 1993, MSD issued $171,790,000 County of Hamilton, Ohio 1993 Series A Sewer System Improvement and Refunding Revenue bonds dated April 15, 1993. The proceeds from the 1993 Bonds were used to permanently fund certain previous capital expenditures, provide fund new projects, defease a portion of the 1986 and 1991 Series A bond issues, fund the new reserve requirement, and pay the cost of issuance. The 1993 bonds are special obligations of the District payable solely from the net revenues of the District, secured equally and ratably under the Trust Agreement.

The 2001, 2000, 1997, 1995, and 1993 Bonds may be redeemed prior to their maturities in accordance with provisions of the bond resolutions. The redemption process for the bonds include declining premiums up to 2 percent of principal.

Maturities for bonds over the next five years and thereafter are shown below.

### (all amounts in thousands)

|  | 2001 Bonds | 2000 Bonds | 1997 Bonds | 1995 Bonds | 1993 Bonds |
|---|---|---|---|---|---|
| 2003 | $ 5,225 | $ 905 | $ 4,075 | $ 4,160 | $ 2,565 |
| 2004 | 5,470 | 950 | 4,280 | 4,410 | 2,695 |
| 2005 | 5,720 | 995 | 4,495 | 4,680 | 2,830 |
| 2006 | 1,480 | 1,040 | 4,720 | 1,990 | 10,465 |
| 2007 | 1,525 | 1,095 | 4,930 | 2,090 | 11,025 |
| 2008-2012 | 8,670 | 6,345 | 28,415 | 12,360 | 64,720 |
| 2013-2017 | 10,895 | 8,225 | 36,440 | 34,900 | 65,040 |
| 2018-2022 | 16,175 | 10,775 | - | - | - |
| 2023-2027 | 16,045 | 8,065 | - | - | - |
|  | $ 71,205 | $ 38,395 | $ 87,355 | $ 64,590 | $ 159,340 |

Under the terms of the amended revenue bond trust indenture, MSD has agreed to certain covenants, among other things, to restrict additional borrowing, maintain rates sufficient to meet debt service requirements, and maintain specified fund balances under trust agreements.

The Revenue bond issues as discussed above contain covenants which require the MSD to maintain a level of debt service coverage. The following calculation reflects MSD's debt service coverage.

(all amounts in thousands except percents)

| | 2002 | 2001 |
|---|---|---|
| Revenues: | | |
| Total operating revenues | $ 121,447 | $ 114,109 |
| Interest income | 4,861 | 7,929 |
| Capitalized interest income | 487 | 1,183 |
| Tap-in/connection fees | 4,202 | 4,486 |
| Total pledged revenues | 130,997 | 127,707 |
| Total operating and maintenance expenses less depreciation and amortization | (75,436) | (70,312) |
| Half of pledged revenues transferred to surplus account | 3,186 | 5,350 |
| Net income available for debt service (a) | $ 58,747 | $ 62,745 |
| Principal and interest requirements on revenue bonds (b) | $ 38,871 | $ 34,783 |
| Principal and interest requirements on all obligations (c) | $ 40,859 | $ 36,923 |
| Debt service coverage: | | |
| Revenue Bonds (a) divided (b) | 150% | 181% |
| All obligations (a) divided (c) | 144% | 170% |
| Maximum debt service coverage required on revenue bonds | 125% | 125% |

## Ohio Water Development Authority Contracts

All contracts between the Ohio Water Development Authority (OWDA) and the Metropolitan Sewer District require MSD to prescribe and charge such rates for sewer usage which are sufficient (after expenses of operation and maintenance) to pay principal and interest on OWDA contracts. The principal is repayable in equal semi-annual installments to maturity.

## Ohio Water and Sewer Rotary Commission

Advances from Ohio Water and Sewer Rotary Commission represent tap-in fees and acreage assessments to be forwarded to the Commission upon collection from customers. Such advances do not bear interest unless they are determined to be in default.

## Ohio Public Works Commission

The MSD has entered into agreements with the Ohio Public Works Commission (OPWC) for financing of certain qualified capital projects. As the projects progress the commitments are drawn

23

down as funds are paid by OPWC directly to the contractors. The principal is repayable in semi-annual installments to the date of maturity for each project.

## Water Pollution Control Loan Fund

The MSD has received low interest loan commitments from the Ohio Water Pollution Control Loan fund for certain qualified projects. As the projects progress the commitments are drawn down. The principal is repayable in semi-annual installments to the date of maturity for each project.

## Interest on Long-Term Obligations

The following interest costs were incurred and expensed or capitalized as part of the cost of MSD's additions to capital assets.

|  | (all amounts in thousands) | |
|  | 2002 | 2001 |
| Interest incurred | $ 23,937 | $ 22,437 |
| Less interest capitalization | (2,192) | (2,912) |
| Interest expense | $ 21,745 | $ 19,525 |

## NOTE 7 - PENSION AND RETIREMENT

A limited number of MSD employees participate in the Public Employee' Retirement Syst administrated by the State of Ohio. PERS is not material to the financial statements of MSD and additional disclosures concerning PERS, including other post-employment benefit information, can be found in the plan's annual financial statements. Interested parties may obtain a copy by written request to 277 East Town Street, Columbus, Ohio 43215-4642 or by calling (614) 466-2085.

### City of Cincinnati Retirement System

The majority of MSD full-time employees participate in the Retirement System of the City of Cincinnati (CRS). CRS is a cost-sharing, multiple-employer, defined benefit, public employee retirement system. The plan provides retirement, disability and death benefits to plan members and beneficiaries. CRS also provides health care benefits to vested retirees. Benefits provided under the plan are established by the Cincinnati Municipal Code. CRS issues a separate, publicly available financial report that includes financial statements and required supplementary information. That report may be obtained from the City of Cincinnati Retirement System, 801 Plum Street, Cincinnati, Ohio 45202 or by calling (513) 352-3227.

The Cincinnati Municipal Code provides statutory authority for employee and employer contribution rates. For 2002 and 2001, the required, actuarially determined contribution rates were 7 percent for MSD and 7 percent for employees. MSD's contributions to CRS for the years ending December 31, 2002, 2001 and 2000 were $1,963,000, $1,931,000 and $1,809,000, respectively, equal to required contribution for each year.

Other Postemployment Benefit Information

CRS provides hospital and surgical insurance to retired members who have earned fifteen years credited service at the time of termination or terminate after age sixty with five years credited service. Those who are receiving survivor benefits of eligible members are entitled to have their hospital and surgical insurance premiums paid by the CRS. When benefits would be reduced by reason of the retired member's eligibility for hospital and medical benefits under federal social security laws, CRS will pay whatever additional fees are required for the Federal medical coverage.

The health care coverage provided by the CRS is advance-funded on an actuarial determined basis as a portion of the employer contribution requirement to the System. The Cincinnati Municipal Code provides authority for employer contributions.

The actuarial assumptions used for the December 31, 2001, valuation of unfunded liabilities (latest information available) included an assumption recognizing medical benefits at current premium costs with projected increases of 7 percent per annum. The cost of coverage is recognized as an expense as claims are paid. CRS has 5,543 active contributing participants of which 619 are MSD employees. For 2001, MSD's contribution was 16 percent of the total employers' contribution.

## NOTE 8 - RELATED PARTY TRANSACTIONS

Cincinnati Water Works provides billing and collection services on customers' accounts for MSD. Fees for these services for 2002 and 2001 were $4,235,000 and $3,996,000 respectively. Fees are also paid to other municipalities and villages within Hamilton County for collection of sewerage bills.

The City of Cincinnati provides "overhead" services to MSD, such as check disbursement, investment and legal services, etc. The fees for these services for 2002 and 2001 were $2,215,000 and $2,099,000 respectively. In addition, the City's Municipal Garage provides gasoline and repairs vehicles for MSD. Fees for these services were $1,123,000 and $1,050,000 for 2002 and 2001, respectively.

## NOTE 9 - COMMITMENTS AND CONTINGENCIES

The City of Cincinnati and the Board of County Commissioners of Hamilton County, Ohio, are parties to a Federal Consent Order which was entered in 1985 in settlement of United States of America vs. The Board of County Commissioners of Hamilton, County, Ohio et al., Case No. C-1-85-0693. The City and County have continued in their efforts to negotiate an amendment to change certain construction schedules appearing in exhibits to that order. The City and County believe these changes are due to circumstances beyond the control of either, and are seeking approval of those schedule modifications from the United States Environmental Protection Agency. The consent order provides for stipulated penalties for failure to meet certain construction schedule deadlines but specifically contemplates that no such penalties will be collected from either defendant where the non-compliance was beyond the reasonable control of the defendants. In addition, according to MSD's Chief Legal Counsel, EPA has requested the payment of $290,000 in stipulated penalties under the Consent Order for certain effluent limit excursions between 1988 and January 1, 1991.

The Consent order provides for stipulated penalties under certain conditions, and although the City and County have argued that no substantial penalties are appropriate, it appears that EPA does intend to extract some monetary payment for excursions. The City of Cincinnati and the Board of County Commissioners of Hamilton County, Ohio are parties to an Interim Partial Consent Decree of Sanitary Sewer Overflows, which was lodged on February 15, 2002, with the U.S. District Court for the Southern District of Western Division. This Decree provides for, among other things, the scheduled elimination of sixteen "highly active" sanitary sewer overflows. This Decree is being contested by a third party. Negotiations continue on other wastewater collection and treatment issues, including combined sewer overflows.

As part of MSD's capital improvement program, MSD has entered into a number of contracts for construction, design, and other services. Commitments under these contracts aggregate approximately $43 million as of December 31, 2002.

## NOTE 10 - RISK MANAGEMENT

MSD records an estimated liability for indemnity health care, workers' compensation, torts and other claims against them. Claims liabilities are based on estimates of the ultimate cost of reported claims (including future claim adjustment expenses) and an estimate for claims incurred but not reported based on historical experience claims liabilities include specific, incremental claim adjustment expenses, allocated loss adjustment expenses, and are reduced for estimated recoveries on unsettled claims such as salvage or subrogation.

## NOTE 11 - SUBSEQUENT EVENTS

The Hamilton County Board of Commissioners have approved a seven percent sewerage rate increase effective January 9, 2003.

## NOTE 12 - PRIOR YEAR RESTATEMENTS

In 2002, the District implemented GASB Statement No. 34, "Basic Financial Statements - Management's Discussion and Analysis for State and Local Governments", GASB Statement No. 37, "Basic Financial Statements - and Management's Discussion and Analysis - For State and Local Governments: Omnibus," and GASB Statement No. 38, "Certain Financial Statement Note Disclosures." The primary impact of adopting the statements included changing the presentation of fund equity to net assets and the presentation of "Management's Discussion and Analysis".

The form of the legal approving opinion of Peck. Shaffer & Williams LLP. bond counsel. is set forth below. The actual opinion for each separate issue will be delivered on the dates of delivery of the Series 2003A Bonds and the Series 2003B Bonds referred to therein and may vary from the form set forth to reflect circumstances both factual and legal at the time of each such delivery. Recirculation of the Final Official Statement shall create no implication that Peck. Shaffer & Williams LLP have reviewed any of the matters set forth in such opinion subsequent to the date of each such opinion.

Seasongood & Mayer, LLC
Cincinnati, Ohio

Conners & Co.. Inc.
Cincinnati, Ohio

Loop Capital Markets, LLC
Chicago, Illinois

Citigroup
Chicago, Illinois

Ladies and Gentlemen:

We have examined the transcript of proceedings relative to the issue of [$160,065,000] [$55,510,000] Sewer System Improvement and Refunding Revenue Bonds, 2003 Series [A] [B] (The Metropolitan Sewer District of Greater Cincinnati) (the "2003 Bonds"), of the Board of County Commissioners of the County of Hamilton. Ohio (the "County"), dated June 1, 2003. The 2003 Bonds are issued in definitive form as registered bonds in the denomination of $5,000 or any integral multiple thereof, numbered from 1 upward.

The 2003 Bonds are authorized pursuant to a resolution, and any amendments thereto, duly passed by the Board of County Commissioners of the County on June 4, 2003, and are issued pursuant to the laws of the State of Ohio, particularly Chapter 6117, Ohio Revised Code and Section 133.08, Ohio Revised Code, and appropriate resolutions of the Board of County Commissioners of the County.

We have also examined the executed Trust Agreement between the County and U.S. Bank National Association, Cincinnati, Ohio (the "Trustee"), dated October 1, 1985, as amended (the "Trust Agreement"), securing the 2003 Bonds and all outstanding Bonds (as defined therein); the bond legislation contained in said Trust Agreement and particularly Section 12 thereof pertaining to the issuance of Additional Bonds (as defined therein); the Ninth Supplemental Trust Agreement between the County and the Trustee, relating to the 2003 Bonds; the Agreement between the City of Cincinnati and the Board of County Commissioners of the County dated April 10, 1968, as amended, governing the operation of The Metropolitan Sewer District of Greater Cincinnati; and the provisions of the laws of Ohio, under authority of which the 2003 Bonds are issued.

We further certify that we have examined a signed and authenticated bond of the first maturity of this issue and approve its form and execution.

From our examination of the aforementioned transcript, we are of the opinion that:

1.    Such proceedings show lawful authority for the issuance of the 2003 Bonds under the laws of the State of Ohio.

2.    Said 2003 Bonds are valid and legally binding upon the County according to the import thereof.

3.    Said 2003 Bonds, together with the outstanding Bonds and any Additional Bonds ranking on a parity therewith that have been and may be issued and outstanding under the conditions and restrictions set forth in said proceedings, are and will continue to be payable solely from the Pledged Revenues (as defined in the Trust Agreement) to be derived from the operation of the Sewer System of The Metropolitan Sewer District of Greater Cincinnati, after provision only for the Operating and Maintenance Expenses (as defined in the Trust Agreement), and the general credit of and taxing power of the County are not pledged to the payment thereof or any part thereof.

4.    Under the laws, regulations, rulings and judicial decisions in effect as of the date hereof, interest including original issue discount, on the 2003 Bonds is excludable from gross income for Federal income tax purposes, pursuant to the Internal Revenue Code of 1986, as amended (the "Code"). Furthermore, interest on the 2003 Bonds will not be treated as a specific item of tax preference, under Section 57(a)(5) of the Code, in computing the alternative minimum tax for individuals and corporations. In rendering the opinions in this paragraph, we have assumed continuing compliance with certain covenants designed to meet the requirements of Section 103 of the Code.

5.    The interest on the 2003 Bonds is exempt from taxes levied by the State of Ohio and its subdivisions, including the personal income tax. Interest on the 2003 Bonds is also excludable from the net income base used in calculating the Ohio corporate franchise tax.

We express no opinion regarding other federal or state tax consequences of purchasing, holding or disposing of the 2003 Bonds. This opinion is based upon laws, regulations, rulings and decisions in effect on the date hereof. In giving this opinion we have relied upon covenants and certifications of facts, estimates and expectations made by the County and others which we have not independently verified. It is to be understood that the enforceability of the 2003 Bonds and the Trust Agreement may be subject to bankruptcy, insolvency, reorganization, moratorium and other laws in effect from time to time affecting creditors' rights, and to the exercise of judicial discretion.

PECK, SHAFFER & WILLIAMS LLP

# FINANCIAL GUARANTY INSURANCE POLICY

## MBIA Insurance Corporation
### Armonk, New York 10504

Policy No. [NUMBER]

MBIA Insurance Corporation (the "Insurer"), in consideration of the payment of the premium and subject to the terms of this policy, hereby unconditionally and irrevocably guarantees to any owner, as hereinafter defined, of the following described obligations, the full and complete payment required to be made by or on behalf of the Issuer to [PAYING AGENT/TRUSTEE] or its successor (the "Paying Agent") of an amount equal to (i) the principal of (either at the stated maturity or by any advancement of maturity pursuant to a mandatory sinking fund payment) and interest on, the Obligations (as that term is defined below) as such payments shall become due but shall not be so paid (except that in the event of any acceleration of the due date of such principal by reason of mandatory redemption or optional redemption or acceleration resulting from default or otherwise, other than any advancement of maturity pursuant to a mandatory sinking fund payment, the payments guaranteed hereby shall be made in such amounts and at such times as such payments of principal would have been due had there not been any such acceleration); and (ii) the reimbursement of any such payment which is subsequently recovered from any owner pursuant to a final judgment by a court of competent jurisdiction that such payment constitutes an avoidable preference to such owner within the meaning of any applicable bankruptcy law. The amounts referred to in clauses (i) and (ii) of the preceding sentence shall be referred to herein collectively as the "Insured Amounts." "Obligations" shall mean:

[PAR]
[LEGAL NAME OF ISSUE]

Upon receipt of telephonic or telegraphic notice, such notice subsequently confirmed in writing by registered or certified mail, or upon receipt of written notice by registered or certified mail, by the Insurer from the Paying Agent or any owner of an Obligation the payment of an Insured Amount for which is then due, that such required payment has not been made, the Insurer on the due date of such payment or within one business day after receipt of notice of such nonpayment, whichever is later, will make a deposit of funds, in an account with U.S. Bank Trust National Association, in New York, New York, or its successor, sufficient for the payment of any such Insured Amounts which are then due. Upon presentment and surrender of such Obligations or presentment of such other proof of ownership of the Obligations, together with any appropriate instruments of assignment to evidence the assignment of the Insured Amounts due on the Obligations as are paid by the Insurer, and appropriate instruments to effect the appointment of the Insurer as agent for such owners of the Obligations in any legal proceeding related to payment of Insured Amounts on the Obligations, such instruments being in a form satisfactory to U.S. Bank Trust National Association, U.S. Bank Trust National Association shall disburse to such owners, or the Paying Agent payment of the Insured Amounts due on such Obligations, less any amount held by the Paying Agent for the payment of such Insured Amounts and legally available therefor. This policy does not insure against loss of any prepayment premium which may at any time be payable with respect to any Obligation.

As used herein, the term "owner" shall mean the registered owner of any Obligation as indicated in the books maintained by the Paying Agent, the Issuer, or any designee of the Issuer for such purpose. The term owner shall not include the Issuer or any party whose agreement with the Issuer constitutes the underlying security for the Obligations.

Any service of process on the Insurer may be made to the Insurer at its offices located at 113 King Street, Armonk, New York 10504 and such service of process shall be valid and binding.

This policy is non-cancellable for any reason. The premium on this policy is not refundable for any reason including the payment prior to maturity of the Obligations.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed in facsimile on its behalf by its duly authorized officers, this [DAY] day of [MONTH, YEAR].

MBIA Insurance Corporation

SPECIMEN

President
Attest:
Assistant Secretary

[THIS PAGE INTENTIONALLY LEFT BLANK]