UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ET AL., | : | **CASE NO. C-1-02-107** |
| | : | (Consol. With C-1-02-108 and |
| Plaintiffs, | : | C-1-02-135) |
| | : | |
| v. | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Hogan |
| BOARD OF COUNTY COMMISSIONERS | : | |
| OF HAMILTON COUNTY, OHIO, ET AL. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**SIERRA CLUB AND MARILYN WALL'S RESPONSE TO THIS COURT'S
ORDER OF JANUARY 27, 2004 REQUESTING ITS POSITION
ON THE USE OF A SETTLEMENT MASTER**

In its Order of January 27, 2004, (Doc.107) ("Order") this Honorable Court requested that the parties, including Intervenor Sierra Club and Marilyn Wall, come to the Status Conference on February 12, 2004, prepared to discuss their views on the appointment of a Settlement Master and other issues.  In its Motion for a Status Conference and its Reply (and the topical comments on the Consent Decree, which were attached thereto), the Sierra Club noted, *inter alia*, that, because of the complexity of the Decrees, their many loopholes, contingencies, and opportunities for abuse, a post-decretal Special Master should be appointed by the Court to oversee both financial and engineering issues.[1]

---

[1] In its Motion for a Status Conference, Sierra Club attached its topical comments to the Second Decree and indicated that it would be subsequently submitting its paragraph-by-paragraph comments.  Those paragraph-by-paragraph comments (attached hereto and incorporated herein as Ex. "A") were submitted to the United States Department of Justice during its 30-day comment period on the Second Decree.

1

.

There appears to be some confusion among the parties about the meaning of the term "Settlement Master". Hence, the Sierra Club will provide this Court with its thoughts under both meanings of the term.

To the extent the term means a master to assist the parties in arriving at a resolution of the unresolved issues, the Sierra Club favors the appointment of such a master. Although the Sierra Club was systematically excluded from participation in the negotiations of the IPCD and the Second Decree, it has provided to the government plaintiffs, the Defendants and the Court very detailed criticisms on many, critical aspects of the two Decrees. Because of the detailed nature of its criticisms, the Club believes that a revised Consent Decree could be negotiated within a reasonable period of time that would be acceptable to it, if face-to-face negotiations are conducted under the supervision of a Settlement Master. While the Club realizes that, in the give-and-take of face-to-face negotiations, it may not get all of the changes that it is advocating in its submitted comments, it believes that major improvements to the Decrees would result.

Also of importance is the fact that the improvements to the Decrees suggested by Sierra Club would reduce the monitoring burden on the Court and on the post-decretal Special Master by eliminating illegal provisions in the Decree, providing interim benchmarks to track and enforce compliance dates, and by eliminating opportunities for abuse and delay of the ultimate compliance date (see discussion below).[2]

---

[2] Appointment of a Special Master under Rule 53 has been held appropriate in cases that are particularly complex, especially in the financial area. See *Triple Five of Minn., Inc. v. Simon*, 2003 U.S. Dist. LEXIS 17922 (D. Minn. 2003). In Defendants' Memorandum Accounting for Expenditures, submitted on February 9, 2004, they state: "…Defendants respectfully note that management of the financial affairs of the Metropolitan Sewer District of Greater Cincinnati ("MSD") is a highly complex undertaking…" See also, *Active Products Corp. et al. v. A.H. Choitz and Co., et al.*, 1995 U.S. Dist. LEXIS 22061,**19-27 (N.D. Indiana 1995).

If the Court was seeking the parties' position on the use of a master to represent the Court in post-settlement matters, i.e. what the Club has termed a "Special Master", the Club favors the appointment. In fact, it is Sierra Club's position that a post-decretal, Special Master will be *necessary* to assist the Court in enforcing compliance with these complex Decrees (see, Ex. "A", Para.-by-Para. comments, pages 2, 4, 11-12, 14, 16, 18, and 19).

The MSD has a very long history of ignoring violations of state and federal clean water laws and even ignoring orders to correct those violations. The Second Consent Decree is riddled with loopholes and indefinite contingencies that make it impossible for the Court and the public to know when MSD's violations of the Clean Water Act will finally cease. See Dague v. City of Burlington, 935 F.2d 1343, 1352 (2d Cir.1991), rev'd on other grounds, 505 U.S. 557, on remand, 976 F.2d 801 (2d Cir. 1992) (no diligent prosecution where state did not demand discontinuance of violations and granted respondent many extensions of time).

One particularly egregious example of the weakness of the Second Decree is Section IX.B. According to this provision, the final end-date for compliance with Clean Water Act requirements can be changed by MSD, itself, if **_MSD_** estimates that capital spending will exceed $1.5 billion in 2006 dollars. Given, MSD's past compliance record, this provision renders the commitment an illusory term.[3]

---

[3] Whether $1.5 billion is sufficient to protect human health and the environment from human waste in the MSD service area is not at all clear. Thirteen years ago, MSD estimated in the 1991 SWIM report that it would take $1.3 billion to make MSD a class B system. Inflation alone would push that cost to $1.7 billion. The EPA's CSO Policy provides for limits on CSO control spending, where a community-specific, affordability analysis has been undertaken and demonstrates that the sewer user rates are at a specified percentage of median household income. No such affordability analysis has been undertaken by the MSD

3

Moreover, the public's historical experience with MSD's capital improvement estimates has been fraught with problems. MSD's first estimate of eliminating sewerage in basements of *some* (but not all) Hamilton County residents was about $250 million, while current estimates are as low as $37 million.[4] Additionally, MSD has proposed duplicative remedial solutions in previous estimates (BBS Study) that overstate capital improvement costs by at least $500 million. A Special Master is necessary to monitor and audit MSD's capital improvement estimates and compare them to actual results and thereby exert discipline on MSD's estimating behavior.

Within the field of economics there is a body of thought dealing with so-called "perverse incentives". This is often referred to as "moral hazard". IX.B creates two moral hazards for MSD. One, MSD is given a direct incentive to **overestimate** capital costs; two, MSD receives **an incentive** to fix a problem using solutions that are biased towards capital and away from preventive maintenance and changes in operations. The incentive is created because MSD receives an automatic benefit – avoiding stipulated penalties from failing to fulfill the requirements of the Consent Decree by February 28, 2022 – by using high estimates of capital spending and spending for capital rather than for O&M.

For these reasons and others to be provided to the Court, effective monitoring and oversight by a Special Master is crucial to proper implementation of the prospective injunctive relief to be set forth in the Consent Decree.

---

to Sierra Club's knowledge that would justify the use of a $1.5 billion limit on remedial, capital improvements in this Decree.
[4] E.g., compare the BBS Report (2001) for "buying out" homeowners with sewerage in basements with the costs of the grinder pump option now being proposed.

Respectfully submitted,

Law Office of Albert J. Slap

                                          DATE:     2/10/04

By:    s/Albert J. Slap by D. David Altman per telephone authorization
        Albert J. Slap, Esq.
        Ohio Atty. Reg. 0074579
        20 Erie Ave.
        Glendale, OH 45246
        513-771-7800
        513-772-6506 (fax)


D. David Altman Co., LPA


By:    s/D. David Altman
        D. David Altman, Esq.
        Ohio Atty. Reg. 0021457
        15 E. 8th St., Suite 200W
        Cincinnati, OH 45202
        513-721-2180
        513-721-2299 (fax)

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a true copy of the foregoing Sierra Club and Marilyn Wall's Response to this Court's Order of January 27, 2004 Requesting Its Position on the Use of a Settlement Master was served on February 10, 2004, via PACER electronic service upon the following:


| | |
|---|---|
| Christopher J. Buckley, Of Counsel<br>Peter P. Murphy, Of Counsel<br>Gibson, Dunn and Crutcher LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036-5306 | Margaret A. Malone<br>Assistant Attorney General<br>Attorney General, State of Ohio<br>Environmental Enforcement Section<br>30 East Broad Street<br>Columbus, Ohio 43266-0410 |
| For the Board of County Commissioners<br>Of Hamilton County, Ohio and the<br>City of Cincinnati | For the State of Ohio |
| | Leslie Allen<br>Senior Attorney<br>Environmental Enforcement Section<br>Environmental and Natural Resources<br> Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611 |
| | Donetta D. Wiethe<br>Assistant United States Attorney<br>221 East Fourth Street<br>Atrium II, Suite 400<br>Cincinnati, Ohio 45202 |
| | Gary Prichard<br>Associate Regional Counsel<br>U.S. EPA, Region 5 (C-14J)<br>77 West Jackson Blvd.<br>Chicago, IL 60604-3590 |
| | For the United States |

and by regular U.S. Mail on:

Nee Fong Chin
Assistant County Prosecutor
Hamilton County Prosecutor's Office

230 East 9th Street, Suite 4000
Cincinnati, Ohio 45202

W. Peter Heile, Of Counsel
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202

For the Board of County Commissioners Of
Hamilton County, Ohio and the City of Cincinnati

                                        s/D. David Altman
                                        D. David Altman (0021457)
                                        Attorney for Plaintiffs-Intervenor