# APPENDIX B

# UNREPORTED CASES

## APPENDIX B - UNREPORTED CASES

- Best v. City of Findlay, Hancock App. No. 5-97-22, 1997 Ohio App. LEXIS 5479 (Dec. 5, 1997)

- Bibbs v. Cinergy Corporation, No. C-010390, 2002 WL 537628 (Ohio App. 1 Dist. Apr. 12, 2002)

- Kendle v. Summit County, No. 15268, 1992 Ohio App. LEXIS 2005 (Apr. 15, 1992)

- Safeco Insurance Companies v. Colerain Township Trustees & Hamilton County Metro. Sewer District, No. C-800050, 1981 WL 9657 (Ohio App. 1 Dist. March 4, 1981)

- Verbarg v. Hamilton County Board of County Commissioners, No. C-970593, 1998 WL 241788 (Ohio App. 1 Dist. May 15, 1998)

LEXSEE 1997 OHIO APP LEXIS 5479

**ROGER BEST, ET AL., PLAINTIFFS-APPELLANTS v. CITY OF FINDLAY, DEFENDANT-APPELLEE**

**CASE NUMBER 5-97-22**

**COURT OF APPEALS OF OHIO, THIRD APPELLATE DISTRICT, HANCOCK COUNTY**

**1997 Ohio App. LEXIS 5479**

**December 5, 1997, Date of Judgment Entry**

**PRIOR HISTORY:** [*1] CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas Court.

**DISPOSITION:** JUDGMENT: Judgment reversed and cause remanded.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant property owners sought review of a judgment from the Hancock County Common Pleas Court (Ohio), which found for appellee city in the owners' action that was brought to recover a sewer connection fee and expenses incurred to repair sewer stacks. In seeking review, the owners claimed that parol evidence had been admissible to explain an agreement's true consideration and that the city had been liable for the sewer stacks' repairs.

**OVERVIEW:** The predecessors in interest sold a piece of property to the city under a warranty deed that stated the transfer was "for the consideration of $ 1.00 and other good and valuable consideration." Thereafter, the predecessors in interest transferred property to the owners, who were then required to pay a sewer connection charge and repair sewer stacks damaged by vegetation. Consequently, the owners brought an action against the city, seeking to recover the connection charge and the repair expenses. When the owners offered parol evidence to explain that the warranty deed's consideration had included the connection fee's waiver, the trial court excluded the evidence and found for the city. Upon review, the court held the parol evidence had been admissible because by reflecting the meaning of the phrase "other good and valuable consideration," the evidence had merely supplemented the deed to incorporate the sale's true consideration. The court also held the city had been responsible for the sewer stacks' repairs because by allowing vegetation to damage the stacks, the city had breached its duty to maintain the sewer and keep it in good repair.

**OUTCOME:** The court reversed the judgment which found for the city in the owners' action that was brought to recover a sewer connection fee and expenses incurred to repair sewer stacks.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

***Contracts Law > Contract Interpretation > Parol Evidence RuleContracts Law > Consideration > Adequate ConsiderationContracts Law > Consideration > Sufficient Consideration***

[HN1] When parties deliberately put an engagement into writing in such terms as impart a legal obligation without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the entire engagement of the parties, and the extent and manner of the undertaking, are reduced to writing. All parol testimony of prior or contemporaneous conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent, in the absence of fraud. As long as evidence of additional consideration is not inconsistent with or contradictory of the writing, the parol evidence rule is not violated. Further, parol evidence is admissible to support true consideration on a deed transferring real property.

***Civil Procedure > Jury Trials > Province of Court & JuryContracts Law > Contract Interpretation > Interpretation Generally***

[HN2] When the terms of a contract remain a factual question, not a legal one, the issue is one to be resolved by a finder-of-fact.

***Torts > Public Entity Liability > LiabilityGovernments > Local Governments > Claims By & AgainstGovernments > Public Improvements > Sanitation & Water***

[HN3] Ohio Rev. Code Ann. ch. 2744 states the law of political subdivisions' tort liability. Ohio Rev. Code Ann. § 2744.02 states that a municipal corporation can be liable for negligence if the incident complained of occurs during the performance of a proprietary function.The construction and institution of a sewer system is a governmental matter, and there is no liability for mere failure to construct sewers. However, the operation and upkeep of sewers is not a governmental function but is a ministerial or proprietary function of a city. The same rule is codified in Ohio Rev. Code Ann. § 2744.01(C)(2)(1), (G)(2)(d). Similarly, the codified rule of law, Ohio Rev. Code Ann. § 2744.02(B)(2), which makes political subdivisions liable for the negligent performance of proprietary functions, is merely a recitation of the common-law rule: the obligation to repair is purely ministerial. When, therefore, a municipal corporation assumes the control and management of a sewer or drain which is constructed in a public street under its supervision, it is bound to use reasonable diligence and care to keep such sewer or drain in good repair and is liable in damages to any property owner injured by its negligence in this respect.

***Torts > Public Entity Liability > LiabilityGovernments > Local Governments > Claims By & AgainstGovernments > Public Improvements > Sanitation & Water***

[HN4] A municipality is not obliged to construct or maintain sewers, but when it does construct or maintain sewers it becomes its duty to keep the sewers in repair and free from conditions which will cause damage to private property. A municipality becomes liable for damages caused by its negligence in this regard in the same manner and to the same extent as a private person under the same circumstances.

**COUNSEL:** DRAKE, PHILLIPS, KUENZLI & CLARK, William E. Clark, Attorney at Law, Findlay, OH, For Appellants.

DAVID A. HACKENBERG, City Law Director, Findlay, OH, For Appellee.

**JUDGES:** HADLEY, J. EVANS, P.J., and SHAW, J., concur.

**OPINIONBY:** HADLEY

**OPINION:** OPINION

HADLEY, J. Plaintiffs/appellants, Roger and Nancy Best ("Best") appeal the judgment of the Hancock County Common Pleas Court finding that Best was responsible for payment to Defendant/appellee, the City of Findlay for a sewer connection charge, and that Best was responsible for the repair to existing sewer stacks. For the reasons that follow, we reverse the judgment of the trial court and remand this action for further proceedings.

On March 12, 1995 Best purchased thirty-seven unimproved residential building lots in Hawthorne Estates in Findlay, Ohio from the beneficiaries of a terminated trust. Best wanted to develop the residential building lots. As part of the development, Best paid, under protest, $ 37,202.10 for a sewer connection fee to the City of Findlay. Additionally, some of the existing sewer stacks on the [*2] property needed repair due to vegetation that had infiltrated and damaged the stacks. Best paid $ 6,092.50 to repair the damaged sewer stacks.

In 1968 the City of Findlay constructed the South Side Interceptor Sewer. The sewer passes under and was constructed to service the property now owed by Best. The original engineering plans included fourteen sewer stacks on the property. Additionally, the City of Findlay acquired a portion of one lot for one dollar from the trust that owned the property at the time. The purpose of acquiring the property was to construct a sewer lift station. The trustees agreed to pay $ 150 for each additional sewer stack constructed. No stacks have been added from 1968.

The first dispute arose when Best attempted to access the sewer. The city charged Best $ 37,202.10 for sewer connection. Best argues that the city waived the connection fee in 1968 in consideration for the land the city acquired to build the lift station. The next dispute arose when Best attempted to physically access the sewer. A number of the sewer stacks were damaged and required repair. Best spent over $ 6,000 to repair the stacks. Best filed suit against the city in November, 1995 seeking [*3] reimbursement for the sewer connection fee paid under protest, and seeking reimbursement for the expense incurred to repair the sewer stacks.

A trial to the bench occurred on January 23, 1997. On June 24, 1997 the court issued its final judgment in favor of the City of Findlay. This appeal follows with Best asserting three assignments of error.

**Assignment of Error No. 1**

**The trial court erred as a matter of law in failing to consider the parol evidence presented in this action with respect to proof of consideration or proof of supplemental agreements as to a written instrument.**

In his first assignment of error Best contends that the trial court erred by not considering the parol evidence offered through the testimony of one of the trust administrators in place when the city constructed the sewer, and during the sale of the lot to the city in the late-1960's. The trustee, James Cummins testified that the city agreed, in exchange for the conveyance of a residential lot, to waive any sewer connection fee. This alleged agreement is not set forth in any written agreement in the record.

The only written agreement in the record is the warranty deed for the lot where [*4] the sewer lift station was to be built. The warranty deed stated in part that the property transference to the city was "for the consideration of One Dollar ($ 1.00) and other good and valuable consideration * * * ."

"It is a general principle that [HN1] when parties have deliberately put their engagement into writing in such terms as impart a legal obligation without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the entire engagement of the parties, and the extent and manner of their undertaking, have been reduced to writing. * * * All parol testimony of prior or contemporaneous conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent, in the absence of fraud." 43 Ohio Jurisprudence 3d (1983), Evidence and Witnesses, Section 541.

"As long as the evidence of additional consideration is not inconsistent with or contradictory of the writing, the parol evidence rule is not violated." *Paul Ford, Inc. v. Rupe* (1993), 90 Ohio App. 3d 638, 644, 630 N.E.2d 78; see *Ayres v. Cook* (1942), 140 Ohio St. 281, 284, 43 N.E.2d 287, overruled in part on other grounds, [*5] *Sherman v. Johnson* (1953), 159 Ohio St. 209, 112 N.E.2d 326. Further, parol evidence is admissible to support true consideration on a deed transferring real property. *Trout v. Parker* (1991), 72 Ohio App. 3d 720, 724, 595 N.E.2d 1015; *Conklin v. Hancock* (1903), 67 Ohio St. 455, 66 N.E. 518, paragraph two of the syllabus; *Russell v. Daniels-Head and Assoc., Inc.*, 1987 Ohio App. LEXIS 7970 (June 30, 1987), Scioto App. No. 1600, unreported, ("Parol evidence is admissible to show the existence of other and additional valuable consideration received when such consideration is recited in the deed.").

In the present case, the warranty deed remains uncertain as to the true consideration of the agreement. Specifically, the deed states that the consideration was one dollar and "other good and valuable consideration." What constitutes "other good and valuable consideration" is not stated in the deed. Additionally, the testimony of Cummins was not inconsistent with or contradictory to the deed. His testimony only reflected the meaning of the phrase "other good and valuable consideration." Cummins' testimony merely supplemented the text of the deed to incorporate what he alleged was the true consideration [*6] for the sale of the property to the city.

Accordingly, the trial court erred as a matter of law in holding that the parol evidence rule barred Cummins' testimony concerning the city's alleged waiver of the sewer connection fee. Cummins' testimony regarding the meaning of the phrase "other good and valuable consideration" is admissible to supplement the deed.

[HN2] The terms of the contract remain a factual question, not a legal one. As such, the issue is one to be resolved by the finder-of-fact. *Normandy Place Assoc. v, Beyer* (1982), 2 Ohio St. 3d 102, 106, 443 N.E.2d 161; *Arnold Palmer Golf Co. v. Fuqua Ind., Inc.* (C.A. 6, 1976), 541 F.2d 584, 588. Therefore, we must remand this action to the trial court for further proceedings to consider, in light of Cummin's testimony, whether consideration for receipt of the property by the city included a waiver of the sewer connection fee.

Best's first assignment of error is well taken.

**Assignment of Error No. 2**

**The trial court erred as a matter of law in the application of Findlay Code Section 925.13.**

Best asserts in his second assignment of error that the trial court incorrectly applied the following municipal [*7] ordinance:

**(b) Application. The [sewer connection charge] shall apply only where the water and/or sewer line has been previously extended across a lot without assessment against the lot, or without cost to the owner of the lot at the time the extension was completed.**

Best contends that his predecessors in interest incurred a cost at the time the city constructed the sewer in the late-1960's. Specifically, Best argues that the property the city obtained from the trust to build its sewer lift station was a cost to the property owners.

However, as we have stated earlier, the determination of what Best and his predecessors in interest received from the city as true consideration for the property is an issue for the trier-of-fact. To prove Best's contentions, we would have to consider the parol evidence offered through Cummins' testimony. Although this evidence is admissible to supplement the terms and conditions of the deed, this decision is one for the trier-of-fact, and not for this court at this time.

Therefore, we overrule Best's second assignment of error.

**Assignment of Error No. 3**

**The trial court erred as a matter of law in finding that Defendant-Appellee [*8] was not responsible for the maintenance and repair of the South Side Interceptor Sewer.**

In his final assignment of error Best argues that the trial court erred by not holding the City of Findlay responsible for maintaining and repairing the sewer stacks which were installed with the trunk line in the late-1960's on his property. When Best attempted to tap into a few of the stacks in the mid-1990's Best discovered that vegetation badly damaged the stacks. Best incurred over $ 6,000 in expenses to repair the stacks.

This court addressed a similar issue in *Nice v. Marysville* (1992), 82 Ohio App. 3d 109, 611 N.E.2d 468. In *Nice*, supra at 117, we held that:

[HN3] "R.C. Chapter 2744 states the law of political subdivisions' tort liability. R.C. 2744.02 states that a municipal corporation can be liable for negligence if the incident complained of occurred during the performance of a proprietary function. * * *

In *Portsmouth v. Mitchell Mfg. Co.* (1925), 113 Ohio St. 250, 255, 148 N.E. 846, * * * the Supreme Court held:

'The weight of authority holds that the construction and institution of a sewer system is a governmental matter, and that there is no liability for mere failure [*9] to *construct sewers*. However, the weight of authority is equally decisive in holding that the *operation and upkeep* of sewers is not a governmental function, but is a ministerial or proprietary function of the city.' (Emphasis added.)

The same rule is codified in R.C. 2744.01(C)(2)(1) and 2744.01(G)(2)(d) currently. Similarly, the codified rule of law, R.C. 2744.02(B)(2), which makes political subdivisions liable for the negligent performance of proprietary functions, is merely a recitation of the common-law rule:

'The obligation to repair is purely ministerial. When, therefore, a municipal corporation assumes the control and management of the sewer or drain which has been constructed in a public street under its supervision, it is bound to use reasonable diligence and care to keep such sewer or drain in good repair, and is liable in damages to any property owner injured by its negligence in this respect.' (Citations omitted.) *Portsmouth* at 255 * * * .

A similar statement was the rule of the Supreme Court in *Doud v. Cincinnati* (1949), 152 Ohio St. 132, 137, 87 N.E.2d 243 * * * :

[HN4] 'A municipality is not obliged to construct or maintain sewers, but when it does [*10] construct or maintain them it becomes its duty to keep them in repair and free from conditions which will cause damage to private property * * * . The municipality becomes liable for damages caused by its negligence in this regard *in the same manner and to the same extent as a private person* under the same circumstances.' (Citations omitted and emphasis added.)"

Therefore, not only did a duty by the city exist immediately after the construction of the sewer, but also at the time when Best attempted to tap into the sewer through the sewer stacks in the mid-1990's.

The facts indicate that the city breached this duty by allowing vegetation to penetrate the sewer stacks and by allowing the stacks to fall into disrepair. A regular maintenance schedule of the stacks could have prevented this damage. Best demonstrated damages to the court when he proved that he incurred over $ 6,000 in expenses to repair the stacks.

Best's third assigned error is well taken, and he is entitled to reimbursement for the expenses he incurred in repairing the sewer stacks.

For the above stated reasons, Assignment of Error No. 2 is overruled. Assignments of Error Nos. 1 and 3 are sustained, and the [*11] judgment of the Hancock County Common Pleas Court is reversed. This cause is remanded to the trial court for further proceedings in accordance with this opinion.

**Judgment reversed and cause remanded.**

**EVANS, P.J., and SHAW, J., concur.**

1103DF

********** Print Completed **********

Time of Request:  April 12, 2004  09:58 AM EDT

Print Number:    1821:0:12656656
Number of Lines:  200
Number of Pages:

Send To:  SWE, KENDRA
          DEPARTMENT OF JUSTICE-ENR
          1425 NEW YORK AVE NW RM 10038
          WASHINGTON, DISTRICT OF COLUMBIA 20005-2108

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, First District, Hamilton County.

Thomas BIBBS, and Gwendolyn Bibbs, Plaintiffs-Appellants,
Thomas BIBBS, Jr., by and through his next friend, Gwendolyn Bibbs, and Donald Anten, Plaintiffs,
v.
CINERGY CORPORATION [FN1] and City of Cincinnati, Metropolitan Sewer District, Defendants-Appellees,

FN1. The party's name appears here as it does on the pleadings, although its correct name is Cinergy Corp., not Cinergy Corporation. The entity, incorporated in Delaware, is the holding company of The Cincinnati Gas & Electric Company.

and
Cincinnati Bell Telephone, Defendant.

No. C-010390.
April 12, 2002.

Homeowners brought negligence claims against gas and electric utility company, telephone utility company, and metropolitan sewer district, alleging that misplaced telephone pole blocked portion of sewer line, causing raw sewage to back up into home. The Court of Common Pleas, Hamilton County, granted summary judgment for defendants. Homeowners appealed. The Court of Appeals, Painter, P.J., held that: (1) summary judgment affidavits were based on personal knowledge; (2) evidence established that gas and electric utility company did not own or move lateral sewer line; and (3) district did not have duty to maintain lateral sewer line.

Affirmed.

West Headnotes

[1] Judgment 🔑185.1(3)
228k185.1(3)

Mere fact that gas and electric utility company's engineering supervisor and its records custodian relied on business records to garner the facts asserted in their affidavits did not establish that the facts were not based on personal knowledge, for purposes of the personal knowledge requirement for summary judgment affidavits. Rules Civ.Proc., Rule 56(E).

[2] Evidence 🔑351
157k351

A document is admissible, under the hearsay exception for business records, if the records custodian shows that it: (1) was made at or near the time, by, or from information by, a person with knowledge; (2) is kept in the course of a regularly conducted business activity; and (3) reflects the regular practice of the business entity to make the document. Rules of Evid., Rule 803(6).

[3] Appeal and Error 🔑1073(1)
30k1073(1)

Trial court's error in failing to strike summary judgment affidavit of defendant electric and gas utility company's engineering consultant was not prejudicial to plaintiff homeowners in their negligence action, though consultant's affidavit did not provide the documents on which he had relied for the facts to which he attested and the reliability of the affidavit was therefore questionable, where the facts attested to were cumulative to facts provided in the proper summary judgment affidavit of company's records custodian, regarding company's lack of responsibility for the misplaced telephone pole which allegedly blocked sewer line and caused raw sewage to back up into home. Rules Civ.Proc., Rule 56.

[4] Municipal Corporations 🔑837
268k837

Metropolitan sewer district did not have immunity, under political subdivision tort liability statutes, from action by homeowners alleging that district's negligent failure to maintain sewer system caused raw sewage to back up into home. R.C. §§ 2744.01(G)(2)(d), 2744.02(B).

[5] Municipal Corporations 🔑827(1)
268k827(1)

Metropolitan sewer district was a "political subdivision," within meaning of political subdivision tort liability statutes. R.C. § 2744.01(F).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

[6] Municipal Corporations 827(2)
268k827(2)

Metropolitan sewer district did not have a duty to homeowners to maintain lateral sewer line that ran from the main sewer line owned and operated by district to the home, where the lateral line was not used for public purposes.

[7] Eminent Domain 269
148k269

A property owner's remedy for an alleged "taking" of private property by a public authority is to bring a mandamus action to compel the authority to institute appropriation proceedings.

[8] Municipal Corporations 827(2)
268k827(2)

If a sewer structure is on private property, a political subdivision is not obligated to maintain it unless the property has been used for public purposes.
Civil Appeal from Hamilton County Court of Common Pleas, Judgment Appealed from is Affirmed.

Forg & Forg and John H. Forg III, for appellants.

Jill T. O'Shea, for appellee Cinergy Corp.

Fay D. Dupuis, Cincinnati City Solicitor, and Frank H. Prouty, Jr. , Assistant City Solicitor, for appellee City of Cincinnati, Metropolitan Sewer District.

DECISION

PAINTER, Presiding Judge.

***1** Please Note: We have *sua sponte* removed this case from the accelerated calendar.

The home of appellants Thomas and Gwendolyn Bibbs was damaged when raw sewage backed up through the plumbing on the first and second floors and flooded the first floor and basement. The home became contaminated with mold, mildew, and bacteria, resulting in Gwendolyn and her son being diagnosed with severe asthma and allergies. The Bibbses vacated the house.

The Bibbses sued appellees Cinergy Corp. (Cinergy), Cincinnati Bell Telephone Company (Cincinnati Bell), and Cincinnati Metropolitan Sewer District (MSD). They alleged that Cinergy and/or Cincinnati Bell had installed a line of telephone poles in the front of their residence so that a pole had blocked a portion of the sewer line. After a thunderstorm in June of 1988, earth loosened and oozed through the break in the sewer created by the misplaced telephone pole, causing the sewer line to block and raw sewage to back up into their home. The Bibbses alleged that Cinergy had a duty to place the pole in a position that would not impede the flow of sewage, and that it had breached that duty. They alleged that MSD had a duty to inspect, operate, and maintain the sewer, and that it had breached that duty, and that it had also appropriated their home for public use without adequate compensation. The Bibbses settled with Cincinnati Bell.

Cinergy and MSD moved for summary judgment. Cinergy argued that Cincinnati Bell installed the pole, had the responsibility regarding its location, and was responsible for any consequent damages caused by the placement. According to Cinergy, The Cincinnati Gas & Electric Company (CG & E) had installed electric utility lines on the telephone poles located on the Bibbses' street in 1925 and had updated the lines in 1972. CG & E had not moved the poles during these projects.

The Bibbses moved to strike the affidavits of Mary Crowe, CG & E's records custodian, and George Scherer, CG & E's engineering supervisor, filed by Cinergy in support of its motion, contending that the affidavits offered improper opinion evidence and were not based on personal knowledge. The Bibbses also moved for summary judgment on the issue of the liability of Cinergy, Cincinnati Bell, and MSD. The trial court granted Cinergy's and MSD's summary-judgment motions and denied the Bibbses' motion to strike the affidavits and their summary-judgment motion.

The Bibbses appeal the entry of summary judgment against them, contending that the trial court erred in (1) denying their motion to strike the affidavits of Crowe and Scherer because their testimony was not based on personal knowledge, (2) granting summary judgment for Cinergy, (3) granting summary judgment for MSD, and (4) denying their summary-judgment motion.

In their motion to strike, the Bibbses argued that the affidavits of Crowe and Scherer constituted opinion evidence that did not comply with Civ.R. 56(E) and Evid.R. 701 and 702, because neither affiant had firsthand knowledge of the subject matter and because neither affidavit would assist the trier of fact. The

Bibbses stated that the business records of CG & E would probably determine the issue of whether Cinergy had a duty to them, but that the affidavits failed to supply the business records. (Crowe's initial affidavit and Scherer's affidavit referred to attached documents, but no documents were attached. Crowe's supplemental affidavit remedied the problem by attaching the documents to which she had referred. Scherer never filed a supplementary affidavit rectifying his omission.)

***2** We have reviewed Crowe's affidavits, including the attached documents, and Scherer's affidavit. It is obvious that Crowe's affidavits contain factual statements based on her personal knowledge and that the attached documents on which she relied were admissible as business records under Evid.R. 803(6).

[1][2] The mere fact that Crowe and Scherer relied on business records to garner their facts does not mean that the facts were not based on personal knowledge. Further, it was not an abuse of discretion for the trial court to consider the attached documents. [FN2] A document is properly admitted under Evid.R. 803(6) if the records custodian shows that it was (1) made at or near the time, by, or from information by, a person with knowledge, (2) kept in the course of a regularly conducted business activity, and (3) reflected the regular practice of the business entity to make the document. Crowe's affidavit provided a sufficient foundation to admit the documents.

FN2. Accord *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 587 N.E.2d 290.

[3] Because Scherer did not provide the documents on which he relied for the facts to which he attested, we question the reliability of his affidavit. We believe that the trial court erred by not striking his affidavit. But because the facts in his affidavit were cumulative of the facts provided by Crowe's affidavit on the issue of Cinergy's lack of responsibility for the pole, we conclude that the error was not prejudicial. We overrule the Bibbses' first assignment.

The Bibbses' remaining assignments challenge the trial court's grant of summary judgment in favor of Cinergy and MSD. This court reviews a grant of summary judgment *de novo.* [FN3] Summary judgment was proper for Cinergy and MSD if (1) there was no genuine issue of material fact; (2) Cinergy and MSD were entitled to judgment as a matter of law; and (3) after construing the evidence most favorably for the Bibbses, reasonable minds could have only reached a conclusion adverse to them. [FN4] If Cinergy and MSD, as the moving parties, met their burden of demonstrating that there was no genuine issue of material fact concerning an essential element of the Bibbses' case, [FN5] the Bibbses had to come forward with specific facts demonstrating a genuine issue of material fact. [FN6]

FN3. See *Doe v. Schaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245.

FN4. See Civ.R. 56; *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, 204.

FN5. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 273.

FN6. See *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

The Bibbses alleged negligence against Cinergy and MSD. To prove negligence, the Bibbses had to demonstrate that Cinergy and MSD owed them a duty, that Cinergy and MSD breached that duty, and that the Bibbses suffered damages proximately resulting from that breach. [FN7]

FN7. See *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707, 710; *Kaczor v. Bellaire* (July 13, 1998), Belmont App. No. 96 BA 60, unreported.

In their second assignment, the Bibbses contend that the trial court erred by granting summary judgment for Cinergy based on the trial court's admission of the affidavits. We have concluded that the admission of Crowe's affidavit was proper and that the improper admission of Scherer's affidavit was not prejudicial. The Bibbses' claim against Cinergy was premised on the misplacement of the pole that crushed the lateral sewer line. Cinergy provided evidence that the pole that had cracked the lateral sewer was not installed, owned, or moved by Cinergy. The Bibbses offered no evidence to dispute these facts. Thus, because we conclude that the trial court properly granted Cinergy summary judgment on the Bibbses' claim, we overrule their second assignment.

***3** [4] The Bibbses contend in their third assignment that the trial court erred in granting summary judgment for MSD. The Bibbses argued below that MSD was liable for negligently maintaining the lateral sewer line. The trial court, in part, determined that MSD was

immune from liability. That portion of its analysis was incorrect.

[5] First, we conclude that MSD is a political subdivision as defined under R.C. 2744.01(F). It admitted in its answer that it was a division of the city of Cincinnati, and it pleaded governmental immunity and limited damages under R.C. Chapter 2744. Further, this issue was implicitly determined in *H. Hafner & Sons, Inc. v. Cincinnati Metro. Sewer Dist.* [FN8]

FN8. See *H. Hafner & Sons, Inc. v. Cincinnati Metro. Sewer Dist.* (1997), 118 Ohio App.3d 792, 694 N.E.2d 111. Accord *Nice v. Marysville* (1992), 82 Ohio App.3d 109, 611 N.E.2d 468; *Best v.. Findlay* (Dec. 5, 1997), Hancock App. No. 5-97-22, unreported; *Kendle v. Summit Cty.* (Apr. 15, 1992), Summit App. No. 15268, unreported.

R.C. 2744.02(A)(1) provides immunity to a political subdivision in a civil action for injury and property damage allegedly caused by an act or omission by that political subdivision or its employees in connection with a governmental or proprietary function. Exceptions to that immunity are found in R.C. 2744.02(B). That section provides, in part, that political subdivisions are liable for injury or loss to persons or property caused by the negligent performance of acts by their employees in connection with governmental or proprietary functions. Under R.C. 2744.01(G)(2)(d), the maintenance of a sewer system constitutes a proprietary function. These **provisions clearly remove** the shield of immunity from MSD. Immunity is re-established, however, if one of the defenses or immunities listed in R.C. 2744.03 is applicable. (MSD does not assert the applicability of R.C. 2744.03, nor do we think any of the enumerated defenses apply.)

[6][7] It is uncontested that the broken sewer line was a lateral or building line running under the Bibbses' property to provide services to them. Thus, we must determine whether summary judgment was proper on the Bibbses' negligence claim against MSD for failure to maintain the lateral sewer. We also note that if we determine that MSD was responsible for the sewage backup, the Bibbses' claim that the sewage backup constituted an unlawful taking is not properly before us. It is well-settled in Ohio that a property owner's remedy for an alleged 'taking' of private property by a public authority is to bring a mandamus action to compel the authority to institute appropriation proceedings. [FN9]

FN9. See *State ex rel. Livingston Apts. v. Columbus* (1998), 130 Ohio App.3d 730, 739-740, 721 N.E.2d 135, 142, quoting *Consol. Rail Corp. v. Gahanna* (May 16, 1996), Franklin App. No. 95APE12-1578, unreported (see cases cited therein).

The Bibbses presented evidence that a previous owner or resident of their home had experienced a problem with a sewer line in 1991 and that MSD had had four feet of the main line replaced due to a cracked pipe. In his deposition, John Turck, a plumber, testified on behalf of the Bibbses that there was a break in the lateral coming from the house in the right-of-way, ten feet from the main sewer. MSD checked the main line and found no blockage, but found that a pole had been placed through the six-inch building or lateral sewer line, diminishing its flow capacity. An MSD crew replaced nineteen feet of the building or lateral sewer line and three feet of the main line sewer.

***4** We conclude that the Bibbses failed to demonstrate that MSD owed them a duty to maintain a lateral sewer line. First, it is undisputed that the defect occurred in the lateral line, on the right-of-way, and not in the main sewer line. Section 1207 of the rules and regulations of MSD states, in part,

> The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer line from the building to the point of connection with the public local sewer and for the maintenance, operation, cleaning, repair, and reconstruction of the building sewer from the building to the property line or point of connection in a public easement. Repair and reconstruction of the building sewer in a public right-of-way shall be the responsibility of the Department.

This only makes sense because it is the main sewer line that is owned and used for the public and in the public domain. The pole was placed on the lateral line. The break occurred in the lateral line, ten feet from the main line. The main line was unobstructed. It was the lateral line that was obstructed and causing the backup. MSD repaired the lateral line. The Bibbses have failed to demonstrate that MSD was responsible for maintaining the lateral line or that the damage was not in the lateral line.

The Bibbses argue that, because Section 1207 of MSD's rules and regulations makes MSD responsible for repair and reconstruction of a lateral sewer in a public right-of-way, MSD is also responsible for maintenance of the lateral line. We disagree. A repair requires someone to fix something that is broken. If the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

rule had been intended to impose liability on MSD for maintenance, it would have specifically stated so, as it did for the property owner. We also take judicial notice of Cincinnati Municipal Code 719-29, which makes a property owner responsible for the maintenance and good condition of any lateral sewer branch except under limited circumstances not demonstrated here.

[8] Further, Ohio common law holds that, where a sewer structure is on private property, a political subdivision is not obligated to maintain it unless the property has been used for public purposes. [FN10] If the line is not used for public purposes but is for purely private use, * * * a city is not obligated to maintain it. Since the homeowner benefits from the tie-in with the main sewer line, even though the city may participate in the original tap-in, the homeowner is responsible for subsequent maintenance of that private service line called a lateral. This is true even where the actual repair to the lateral takes place on city property. [FN11]

FN10. See *Fatobene v. Warren* (May 3, 1996), Trumbull App. No. 95- T-5269, unreported.

FN11. See *Kaczor v. Bellaire, supra; Fatobene v. Warren, supra.*

Because the Bibbses have failed to demonstrate that the lateral line was used for public purposes or that the line causing the problem was not the lateral line, we conclude as a matter of law that MSD owed no duty to the Bibbses. Because the trial court properly granted summary judgment for MSD, we overrule the Bibbses' third assignment.

***5** Because the trial court properly granted Cinergy and MSD summary judgment, it properly denied the Bibbses' motion for summary judgment on the issue of liability. The Bibbses' fourth assignment is overruled.

Accordingly, we affirm the trial court's entry of summary judgment in favor of Cinergy and MSD.

*Judgment affirmed.*

HILDEBRANDT and SUNDERMANN, JJ., concur.

*Please Note:*

The court has recorded its own entry on the date of the release of this Decision.

2002 WL 537628 (Ohio App. 1 Dist.), 2002-Ohio-1851

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

LEXSEE 1992 OHIO APP LEXIS 2005

**TODD KENDLE, et al. Plaintiffs-Appellants v. SUMMIT COUNTY Defendant-Appellee**

**C.A. NO. 15268**

**COURT OF APPEALS OF OHIO, NINTH APPELLATE DISTRICT, SUMMIT COUNTY**

**1992 Ohio App. LEXIS 2005**

**April 15, 1992, Decided**
**April 15, 1992, Filed**

**PRIOR HISTORY:** [*1] APPEAL FROM JUDGMENT ENTERED IN THE COMMON PLEAS COURT COUNTY OF SUMMIT, OHIO. CASE NO. CV 90 12 4428

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant homeowners sought review of a judgment of the Common Pleas Court, County of Summit (Ohio), which granted summary judgment for appellee county in the homeowner's action for property damage caused by a blocked sewer line.

**OVERVIEW:** The blocked sewer line caused sewage to back up and flow to the service line to the homeowners' residence. The homeowners discovered several feet of raw sewage in their basement upon returning from vacation. In their action for negligence and breach of contract, the trial court granted the county's motion for summary judgment. On appeal, the court affirmed, concluding that the homeowner's had made no showing that the sewer was defective, in disrepair, or that any affirmative act caused the blockage. The evidence indicated that the sewer line had been inspected and cleaned three years earlier and that the blockage was due to roots and undergarments. The court disagreed with the trial court's finding of immunity under the public duty doctrine even if the county had been negligent, but agreed that the blockage was not due to any negligence by the county. The possibility of a clogged sewer existed in the absence of any negligence and was an unfortunate circumstance incident to the benefits of a public sewer system. There was no contractual agreement to support the homeowner's breach of contract action.

**OUTCOME:** The court affirmed the trial court's judgment.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

***Civil Procedure > Summary Judgment > Burdens of Production & ProofCivil Procedure > Summary Judgment > Summary Judgment Standard***
[HN1] The court may properly grant summary judgment only when there is no dispute as to any material fact and viewing the facts most favorably for the non-moving party, that party cannot prevail as a matter of law. Ohio R. Civ. P. 56(C). When a party moves for summary judgment, the responding party must set forth specific facts showing that there is a genuine issue for trial. Mere reliance on the pleadings is not sufficient when the motion sets forth facts negating an essential element for which the respondent carries the burden of proof. Ohio R. Civ. P. 56(E).

***Torts > Public Entity Liability > ImmunityTorts > Public Entity Liability > Liability***
[HN2] In a negligence action against a county, as a political subdivision, the claimant must overcome two hurdles. First it must be determined whether the doctrine of sovereign immunity applies to shelter the county from liability. Secondly, even if the county is not immune, the claimant has the burden to prove all of the elements of negligence against the county.

***Torts > Public Entity Liability > ImmunityTorts > Public Entity Liability > LiabilityGovernments > Public Improvements > Sanitation & Water***

[HN3] Generally, the Political Subdivision Tort Liability Act, Ohio Rev. Code Ann. ch. 2744, allows a political subdivision immunity in civil actions for injury to persons or property allegedly caused by any act or omission. Ohio Rev. Code Ann. § 2744.02. However, a political subdivision may be held liable for an employee's negligent performance of a proprietary function. Ohio Rev. Code Ann. § 2744.02(B)(2). Pursuant to Ohio Rev. Code Ann. § 2744.01(G)(2)(d), the maintenance, destruction, operation, and upkeep of a sewer system by a county is a proprietary function.

***Governments > Local Governments > Duties & PowersGovernments > Public Improvements > Public Improvements Generally***

[HN4] Ohio Rev. Code Ann. § 2744.01(C)(2)(p) provides that "governmental functions" include the provision or non-provision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures.

***Governments > Local Governments > Duties & PowersGovernments > Public Improvements > Sanitation & Water***

[HN5] The operation of a sewer system includes a duty to use due diligence to inspect for defects. Accordingly, the county is chargeable with knowledge of what a reasonable inspection would reveal.

***Torts > Public Entity Liability > ImmunityTorts > Public Entity Liability > LiabilityGovernments > Local Governments > Employees & Officials***

[HN6] Under the public duty rule, a public official is immune from individual damages resulting from his negligent performance of a duty imposed by law and owed to the general public. Liability is imposed only if a special duty or relationship exists between the claimant and the public official.

***Torts > Public Entity Liability > ImmunityTorts > Public Entity Liability > Liability***

[HN7] The intent of Ohio Rev. Code Ann. § 2744.02 was to codify the concept of sovereign immunity and, therefore, to abrogate the public duty/special duty theory of governmental liability and immunity.

***Civil Procedure > Appeals > Standards of Review > Standards Generally***

[HN8] The judgment of a trial court must be affirmed if, upon review, there exists any valid grounds to support the judgment.

***Contracts Law > Formation > Formation Generally***

[HN9] A contract to be binding must be reasonably certain, particularly as to the basis for determining the existence of a breach.

**COUNSEL:** APPEARANCES:

MICHAEL A. WEINBERGER and LESLIE S. GRASKE, Attorneys at Law, 234 Portage Trail, Cuyahoga Falls, OH 44221, for Plaintiffs.

JACQUELINE THOMASON, County of Summit, Dept. of Environmental Services, 25 N. Main St., Akron, OH 44308, for Defendant.

**JUDGES:** BAIRD, QUILLIN, COOK

**OPINIONBY:** FOR THE COURT; WILLIAM R. BAIRD

**OPINION:**

DECISION AND JOURNAL ENTRY

Dated: April 15, 1992

This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:

BAIRD, P. J. Appellants, Todd and Marsha Kendle (hereinafter referred to as the Kendles), appeal from the trial court's decision granting appellee's, Summit County (County), motion for summary judgment.

The Kendles' home on Richard Drive is served by the County's sanitary sewer system. On July 15, 1990, the Kendles returned home from vacation to discover between one and two feet of raw sewage in their basement. They immediately notified the County, which dispatched a maintenance crew to investigate the problem. It was determined that the main sewer line, which [*2] is under the exclusive control of the County, was blocked. This caused sewage to back up and flow through the service line connecting the Kendles' home with the main sewer.

The Kendles submitted a claim for property damages to the County which was denied. Thereafter this suit was initiated and the County moved for summary judgment. In support of its motion the County submitted the affidavit of John Doepker, the administrator of the County's Department of Water and Sewer Maintenance.

Doepker stated, based on his investigation, that the blockage was caused by "roots and undergarments" in the sewer. He also stated that the Richard Drive sewer was last inspected and cleaned by his department in October, 1987. This inspection was confirmed by a copy of the County's "Preventive Maintenance" report dated October 20, 1987.

On July 29, 1991, the court granted the County's motion for summary judgment. The Kendles appeal, raising the following assignment of error.

Assignment of Error

"The trial court erred in granting summary judgment for the defendant where the evidentiary materials establish that there was a genuine issue of material fact and where defendant was not entitled to judgment [*3] as a matter of law."

In their complaint the Kendles asserted both a negligence and a breach of contract action against the County. Under this one assignment of error the Kendles contend the trial court erred in granting summary judgment on both claims. For purposes of review we will address these claims separately.

A. Negligence.

[HN1] The court may properly grant summary judgment only when there is no dispute as to any material fact and viewing the facts most favorably for the non-moving party, that party cannot prevail as a matter of law. Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St. 3d 84, 88. See, Temple v. Wean United, Inc. (1977), 50 Ohio St. 2d 317, 327; Civ. R. 56(C). When a party moves for summary judgment, the responding party must set forth "specific facts showing that there is a genuine issue for trial." Mere reliance on the pleadings is not sufficient when the motion sets forth facts negating an essential element for which the respondent carries the burden of proof. Civ. R. 56(E); see, Celotex Corp. v. Catrett (1986), 477 U.S. 317, 324.

The County's motion presented facts that the blockage in the sewer was not the result of its negligence. In [*4] response, the Kendles made no showing that the sewer was defective, in disrepair, or that the County undertook any affirmative act which caused the blockage. Accordingly, the issue in this case is whether the County may be held liable in damages for failing to prevent blockages in its sewer system. The Kendles contend that the County has a duty to reasonably inspect its sewers to detect and eliminate blockages. They argue that an almost three year period since the last inspection of the sewer, prior to the blockage, is inherently unreasonable and presents a triable issue of fact.

[HN2] In a negligence action against a county, as a political subdivision, the claimant must overcome two hurdles. First it must be determined whether the doctrine of sovereign immunity applies to shelter the county from liability. Secondly, even if the county is not immune, the claimant has the burden to prove all of the elements of negligence against the county. Zents v. Bd. of Commrs. (1984), 9 Ohio St. 3d 204, syllabus.

[HN3] Generally, the political Subdivision Tort Liability Act, R.C. Chapter 2744, allows a political subdivision immunity in civil actions for injury to persons or property allegedly caused [*5] by any act or omission. R.C. 2744.02. However a political subdivision may be held liable for an employee's negligent performance of a proprietary function. R.C. 2744.02(B)(2).

The Kendles correctly point out that pursuant to R.C. 2744.01(G)(2)(d), the "maintenance, destruction, operation, and upkeep of a sewer system" by a county is a proprietary function. While the County does not dispute this, it argues that the Kendles negligence claim is predicated on its failure to reasonably inspect its sewers. The County contends that the "provision or nonprovision of inspection services of all types" is statutorily defined as a governmental function for which immunity attaches. R.C. 2744.01(C)(2)(p). But the County has taken this portion of the statute out of context. In its entirety [HN4] R.C. 2744.01(C)(2)(p) states that "governmental functions" include:

"The provision or nonprovision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings [*6] or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures[.]"

This statute refers to inspection services a political subdivision may or may not choose to provide to the public and any liability based thereon. See, Smith v. Minnick (July 13, 1990), Lucas App. No. L-90-126, unreported. It does not encompass the obligation of a political subdivision to inspect the operation of its own proprietary functions. If we were to accept the County's position, political subdivisions might avoid liability by deciding to forego inspection of their proprietary functions. They could put blinders on, ignoring dangers which a reasonable inspection would have revealed. Clearly [HN5] the operation of a sewer system includes a duty to use due diligence to inspect for defects. Accordingly the County is chargeable with knowledge of what a reasonable inspection would have revealed. See,

Restatement of the Law 2d, Torts (1965), 44, Section 289, Comment j.

Alternatively, the County argues that the inspection of its sewers is a duty owed to the public at-large and therefore falls under the public duty rule. [HN6] Under this doctrine [*7] a public official is immune from individual damages resulting from his negligent performance of a duty imposed by law and owed to the general public. Liability is imposed only if a special duty or relationship exists between the claimant and the public official. Sawicki v. Ottawa Hills (1988), 37 Ohio St. 3d 222, paragraphs two, three, and four of the syllabus. The trial court, in granting summary judgment agreed with the County's position specifically stating;

"A city's responsibility to oversee, maintain construction and to maintain, inspect and repair the sewer system is a duty owed to the general public similar to police and fire protection."

We find the court's reliance on the public duty/special duty theory of liability and immunity as set forth in Sawicki, supra, to be misplaced. Sawicki was decided by the Ohio Supreme Court prior to the effective date of R.C. 2744.02. We are in agreement with the holding of the Sixth District Court of Appeals "that [HN7] the intent of the statute was to codify the concept of sovereign immunity and, therefore, to abrogate the public duty/special duty theory of [governmental] liability" and immunity. Amborski v. Toledo [*8] (1990), 67 Ohio App. 3d 47, 51. In this case the trial court erred in applying the public duty doctrine and finding the County immune from liability even if it was negligent in inspecting its sewers.

Having determined that the County is not immune for its negligent operation and inspection of its sewer system, there still remains the issue of whether the County was negligent in this case. Even though the trial court erred in its application of the public duty doctrine, [HN8] the judgment of a trial court must be affirmed if, upon review, there exists any valid grounds to support the judgment. Joyce v. General Motors Corp. (1990), 49 Ohio St. 3d 93, 96; Taylor v. Yale & Towne Mfg. Co. (1987), 36 Ohio App. 3d 62, 63. As previously stated, the Kendles had the burden to set forth specific facts demonstrating triable issues as to the County's negligence. Civ. R. 56(E); Celotex, supra. In the present case there is no basis for finding that the blockage of the sewer was in any way attributable to the negligence of the County.

In support of their position the Kendles cite Portsmouth v. Mitchell Mfg. Co. (1925), 113 Ohio St. 250. In this case the Ohio Supreme Court [*9] held that a municipal corporation "is bound to use reasonable diligence and care to see that [a] storm sewer is not clogged with refuse." Id. at paragraph two of the syllabus. But the facts in Portsmouth are inapposite to the present case. In that case there was "substantial evidence that repeated notice had been given to the city of the condition of the sewers." Id. at 252. The Kendles also bring to our attention Doud v. Cincinnati (1949), 152 Ohio St. 132, 137, wherein the Court held that a municipality has a "duty of inspection of the sewer . . . [and] becomes chargeable with notice of what reasonable inspection would disclose." In Doud the city had not inspected the sewer in over twenty-two years and the defect in the sewer was not a mere blockage, but resulted in substantial damage to the foundation of the petitioner's home. Id.

Unlike these cases there is no showing that the Richard Drive sewer was in any way defective or that the County had any prior notice that the sewer was clogged or about to become clogged. While the Kendles contend the County should have made more frequent inspections of the sewer, there is no evidence that more recent inspections [*10] would have revealed the blockage that occurred in this case. The possibility of a sewer becoming clogged, absent any negligence, is an unfortunate circumstance which we all must face as incident to the benefits received from a public sewer system. Accepting the Kendles argument would make every operator of a public sewer system absolutely liable, absent any fault, for all damages resulting from a clogged sewer. We refuse to impose such an obligation on the County in the absence of some negligent act or omission. See, Steiner v. Lebanon (1973), 40 Ohio App. 2d 219, 222.

B. Contract.

The Kendles next argue that the court erred in granting summary judgment without considering their contract claim. While throughout this case the Kendles claim to have a contract with the County, they have never asserted the basis of their claim. They point to no written or oral agreement with the County. Viewing the evidence most favorable to the Kendles, we acknowledge that one view of the relationship between the parties is that it is contractual, insofar as there is an agreement between the parties to provide sanitary sewers in exchange for the payment of service fees. But the issue is [*11] whether the parties have a contract which includes a condition imposed on the County to keep its sewers free from all obstructions.

[HN9] A contract to be binding must be reasonably certain, particularly as to the basis for determining the existence of a breach. Mr. Mark Corp. v. Rush, Inc. (1983), 11 Ohio App. 3d 167, 169 (citing Restatement of the Law 2d, Contracts (1981) 92, Section 33). In order to prevail on a contract theory the Kendles must argue that

the failure to keep the sewer free from all obstructions was a material breach -- yet this is the exact term which is missing from any agreement the parties may have. The Kendles mere assertion that they have a contract with the County is insufficient to withstand summary judgment. Celotex, supra.

Accordingly, this assignment of error is overruled, and the judgment of the trial court is affirmed.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.

Immediately upon [*12] the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

Costs taxed to appellants.

Exceptions.

WILLIAM R. BAIRD
FOR THE COURT

QUILLIN, J.
COOK, J.
CONCURS

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, First District, Hamilton County.

SAFECO INSURANCE COMPANIES and GREGORY R. OSTENDORF, Plaintiffs-Appellees,
v.
COLERAIN TOWNSHIP TRUSTEES, Defendant, and HAMILTON COUNTY METROPOLITAN SEWER DISTRICT, Defendant-Appellant.

NO. C-800050.

March 4, 1981.

Messrs. McIntosh, McIntosh & Knabe, Thomas R. Schoenfeld of counsel, 3312 Carew Tower, Cincinnati, Ohio 45202, for Plaintiffs-Appellees.

Mr. Richard A. Castellini, City Solicitor, and Ms. Sandra D. Kelly-Schilling, Assistant City Solicitor, Room 214 - City Hall, Cincinnati, Ohio 45202, for Defendant-Appellant.

MEMORANDUM DECISION AND JUDGMENT ENTRY.

PER CURIAM

***1** This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Municipal Court, the briefs and the argument's of counsel.

Now, therefore, the assignment of error having been fully considered is accordingly passed upon in conformity with App. R. 12(A) as follows:

On March 23, 1976 the appellees, Safeco Insurance Companies and Gregory R. Ostendorf, filed a complaint in Hamilton County Municipal Court for property damage against the Colerain Township Trustees and the Hamilton County Metropolitan Sewer District, the appellant herein. Appellees alleged the negligence of the defendants in failing to maintain and repair drainage sewers caused large accumulations of water to cover Cheviot Road in Colerain Township. They alleged this was the direct and proximate cause of an accident on January 10, 1975 wherein the automobile owned and driven by Gregory R. Ostendorf left the paved surface of the road and collided with a telephone pole.

On May 12, 1976 a default judgment was entered against the defendants. On October 10, 1978 the trial court dismissed the action as to the Colerain Township Trustees without prejudice after they had filed a motion for relief from judgment under Civ. R. 60(B). On August 15, 1979 appellant, Hamilton County Metropolitan Sewer District, filed a motion for relief from judgment under Civ. R. 60(B)(5). On January 15, 1980 the motion was overruled. Appellant has brought a timely appeal to this Court in which the overruling of the motion is asserted as the single assignment of error.

In order to prevail on a motion for relief from judgment the movant must show three things: first, it has a meritorious defense to present if relief is granted; second, it is entitled to relief under one of the grounds stated in the rule; and third, the motion is timely. *GTE Automatic Electric, Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St. 2d 146, 351 N.E.2d 113; *Adomeit v. Baltimore* (8th Dist. 1974), 39 Ohio App. 2d 97, 316 N.E.2d 469. The movant has the burden of proving he is entitled to the relief requested or to a hearing on the motion. *Adomeit, supra.* The granting of the motion is discretionary with the trial court and the court's decision will not be disturbed on appeal absent a clear showing of abuse of discretion. *Adomeit, supra.*

Appellant set forth as defenses in its memorandum in support of the motion for relief from judgment that the Hamilton County Metropolitan Sewer District is not a legal entity and cannot be sued, that the storm sewers are not under its control but are within the authority of the Board of County Commissioners, and even if the Sewer District were a legal entity with jurisdiction over the drainage sewers, it had no notice, actual or constructive, as to the condition of Cheviot Road.

The trial court did not state any reason why the motion for relief was overruled. The default judgment was entered on May 12, 1976, yet appellant did not file its motion until August 15, 1979, thirty-nine months later. No justification was given for this long delay. Consequently, it cannot be said that the trial court abused its discretion in overruling the motion insofar as it was brought under Civ. R. 60(B).

***2** However, our inquiry does not end there. If it is true that the Hamilton County Metropolitan Sewer

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

District is not a legal entity, then the trial court was without power to enter the default judgment and it is void. If this is the case, the requirements of Civ. R. 60(B) need not have been met. Civ. R. 60(B), unlike F.R.C.P. 60(b), does not provide for vacation of a void judgment. The reason given in the staff notes for Civ. R. 60(B) is that the court has inherent power, without time limitations, to vacate a void judgment. Reliance is on *Lincoln Tavern v. Snader* (1956), 156 Ohio St. 61, 133 N.E.2d 606. *See also Antonopoulos v. Eisner* (8th Dist. 1972) 30 Ohio App. 2d 187, 284 N.E.2d 194 .

In order for this Court to reverse the trial court's decision on the basis that the judgment was void, that fact must be manifest on the face of the record. In the memorandum in support of the ?? appellant cited to R.C. 6117.01 which authorizes the Board of County Commissioners to establish sewer districts. However, there is no evidence that the Hamilton County Metropolitan Sewer District was created pursuant to R.C. 6117.01. It is **clear** from **R.C**. 6117.01 *et seq.* that the authority for the sewer districts created ?? is placed in the Board of County Commissioners and the sewer ?? themselves do not have any independent existence. However, regional water and sewer districts created pursuant to R.C. 6119.01 *et seq.* are legal entities and may sue or be sued. R.C. 6119.06. Consequently, the nature of the Hamilton County Metropolitan Sewer District must be established. although there is insufficient evidence before this Court to declare the judgment void, appellant raised the issue of whether or not it is a legal entity sufficiently that the trial court should have held a hearing on the mattter.

For this reason, it is the Order of this Court that the judgment or final order herein appealed from be, and the same is hereby reversed and the case remanded for further proceedings according to ??.

It is further Ordered that a mandate be sent to the Hamilton County Municipal Court for execution upon this judgment.

Costs to be taxed in compliance with Rule 24, Appellate Rules.

And the Court being of the opinion that there were reasonable grounds for this appeal, allows no penalty.

It is further Ordered that a certified copy of this Memorandum Decision and Judgment shall constitute the mandate pursuant to App. R. 27.

To all of which the appellees, by their counsel, except.

BLACK, P. J., PALMER and KLUSMEIER, J. J.

1981 WL 9657 (Ohio App. 1 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, First District, Hamilton County.

Harold T. VERBARG and Shirley Verbarg, Plaintiffs-Appellants,
v.
HAMILTON COUNTY BOARD OF COUNTY COMMISSIONERS, Metropolitan Sewer District, and the City of Cincinnati, Defendants-Appellees.

No. C-970593.

May 15, 1998.

Douglas W. Thomson, for Plaintiffs-Appellants.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Thomson Lotspeich Co., L.P.A., and John R. Meckstroth, Jr., for Defendant-Appellee Hamilton County Board of County Commissioners.

Fay D. Dupuis, Cincinnati City Solicitor, and Richard Ganulin, for Defendant-Appellee City of Cincinnati.

*MEMORANDUM DECISION AND JUDGMENT ENTRY.*

MARIANNA BROWN BETTMAN, Judge.

*1 Plaintiffs-appellants Harold and Shirley Verbarg appeal from the dismissal of their challenge to the Rollymeade/Kaywood sanitary sewer project. [FN1] Defendants-appellees are the Hamilton County Board of County Commissioners and the City of Cincinnati (collectively, the defendants). [FN2] The Verbargs bring three assignments of error, [FN3] all of which raise the same issue, namely that the probate court, which statutorily hears such appeals pursuant to R.C. 6117.09, erred in dismissing their case following their opening statement. We agree in part.

FN1. We have *sua sponte* removed this case from the accelerated calendar.

FN2. The Metropolitan Sewer District is also named as a defendant; however the city of Cincinnati and the board of county commissioners are the only properly named defendants. Hamilton County owns the Metropolitan Sewer District, which is operated by the city of Cincinnati. The city has prepared the sole brief, in which the county has joined.

FN3. The Verbargs contend that the trial court erred by (1) granting defendants' motion for directed verdict after plaintiffs' opening statement rather than at the close of plaintiffs' evidence; (2) granting defendants' motion for directed verdict on defendants' claim that plaintiffs' opening statement raised issues outside the pleadings; and (3) granting defendants' motion to dismiss on the grounds of surprise.

Any property owner assessed for a sanitary sewer may appeal to the probate court after following certain steps at the administrative level. However, what a property owner is legally permitted to appeal is strictly limited by statute to three things: the necessity of the improvement, including the question of whether the cost will exceed the benefits, the boundaries of the district, and the tentative apportionment of the assessment. R.C. 6117.09.

The issue in this case is whether the Verbargs only challenged the necessity of the improvement, or whether they also raised the issue of the project boundaries. No challenge was raised about the tentative assessment.

Following the Verbargs' opening statement, the trial court ruled that the Verbargs had conceded the necessity of the entire sewer project and were trying to add a new challenge for the first time at trial, namely the boundaries of the project. Holding that this was an issue raised outside the pleadings and determining that it was unfair to the defendants to be forced to defend against a new allegation at trial, the court dismissed the case.

While we agree with the Verbargs that under Civ.R. 41(B)(2) a dismissal in a nonjury trial will not lie until the plaintiffs have put on their evidence, we conclude from the statement of the proceedings, which is all we have in the absence of a transcript, that the Verbargs did concede in their opening statement that they were not challenging the necessity of the project. There can be no prejudicial error in dismissing an issue that the proponent concedes is not in dispute. However, we disagree with the probate court that the challenge to the boundaries took the defendants by surprise, and that it

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

was unfair to make the city defend on this issue. Therefore, the court erred in dismissing this claim before any evidence was presented.

From the very first time the Verbargs were required to file objections at the administrative level, through the filing of their complaint in the probate court, [FN4] they challenged both the necessity of the project (subsequently dropped) and the boundaries.

FN4. The administrative record is transferred to the probate court on appeal and becomes a part of this record. R.C. 6117.13; *State ex rel. Miami Valley Memory Gardens Assn. v. South* (1970), 24 Ohio App.2d 93, 264 N.E.2d 645.

Pursuant to R.C. 6117.06, any property owner objecting to the project must file written objections within five days of the initial hearing. The Verbargs complied, filing written objections on February 14, 1996, specifically objecting to "their inclusion in this sewer project," and requested that their property be removed from the project. Their objections were overruled by the board of county commissioners, which set the hearing date of March 20, 1996, to consider whether to proceed with the project.

***2** The next step in the administrative process requires anyone planning to appeal the necessity, boundaries, or assessment of the project (the only statutorily appealable factors) to provide written notice by the hearing date. The Verbargs complied by certified letter dated March 14, 1996, specifically stating in pertinent part that they "dispute[d] the boundaries of the assessment district maintaining that the assessment district should not include their property." On March 20, the board passed a resolution to proceed with the project as planned.

The Verbargs then appealed within their statutory ten days to the probate court, by filing a complaint. While the complaint is not as clearly worded as the two letters, paragraph thirteen states that the decision of the board of commissioners to include the Verbargs in the project is "unreasonable, arbitrary, and capricious," and further requests an "order requiring the defendants to exclude them from the proposed sewer project." [FN5]

FN5. We are not persuaded by the city's argument that the magistrate held that the probate court only had jurisdiction to consider paragraph 12 of the complaint. In a challenge by the city to whether the appeal had been properly perfected at all, the magistrate agreed that the constitutional issues raised in Paragraph 11 were beyond the review contemplated by statute. While the magistrate discussed the appropriateness of the necessity issues raised in paragraph 12, she did not limit the case to those issues and did not discuss paragraph 13 at all.

Finally, in response to the defendants' "ambush" claim, in their pretrial statement, the defendants stated that the Verbargs "and they alone should be excluded from a properly constituted service project." Additionally, Harold Verbarg's deposition, filed by the city, and which we consider only to address the defendants' claim of surprise, repeatedly evidences the Verbargs' intent to challenge the boundaries of the sewer project.

According to the probate-court-approved statement of the proceedings pursuant to App.R. 9(C), in opening statement, counsel for the Verbargs stated that the assessment district was too large and should not include the Verbargs. Counsel conceded his clients were not challenging the necessity of the project, but were challenging the boundaries of the assessment district.

We hold that the defendants have been on notice from the very beginning of the Verbargs' intent to challenge the boundaries of the district, and that they were in no way ambushed or surprised by this issue arising at trial. Thus, we hold that the trial court erred in dismissing the Verbargs' challenge to the boundaries of the proposed sewer district, reverse its judgment in part, and remand for further proceedings in accordance with law. On remand, the trial shall be limited to this issue, as set forth in R.C. 6117.09(B) and R.C. 6117.20. [FN6]

FN6. We cannot tell from the limited record whether issues raised pursuant to R.C. 6117.51 are appropriate to a boundaries challenge. We leave this for the court's determination on remand. We also note that R.C. 6117.09(C) specifically empowers the court to dismiss a boundaries challenge upon satisfactory proof of the written consent of the owners of land assessed for 85% of the cost. See, generally, *Hills Plaza, Inc. v. Board of Cty Commrs.* (Nov. 28, 1979), Columbiana App. No. 1205, unreported.

And the Court, being of the opinion that there were reasonable grounds for this appeal, allows no penalty. It is further Ordered that costs be taxed in compliance with App.R. 24, that a copy of this Memorandum

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
**(Cite as: 1998 WL 241788, *2 (Ohio App. 1 Dist.))**
**Page 3**

Decision and Judgment Entry shall constitute the mandate, and that said mandate shall be sent to the trial court for execution pursuant to App.R. 27.

*Judgment reversed in part and cause remanded.*

Gorman, P.J., and Painter, J., concur.

1998 WL 241788 (Ohio App. 1 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works