UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., | CASE NO. C-1-02-107 |
| Plaintiffs, | |
| and | |
| SIERRA CLUB, ET AL., | Judge S. Arthur Spiegel |
| Intervenors, | |
| v. | |
| BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO, ET AL. | |
| Defendants. | |

**PLAINTIFF INTERVENOR SIERRA CLUB'S MOTION FOR
COURT-APPOINTED SPECIAL MASTER**

Pursuant to Federal Rule of Civil Procedure 53 ("Rule 53"), and in response to Plaintiffs Ohio and federal environmental agencies' ("Agencies") Motion for Entry of Consent Decrees (Doc. No.116), Plaintiff Intervenor Sierra Club ("Sierra Club") respectfully moves this Court to appoint an independent special master to monitor and oversee compliance with any consent decree entered by the Court. Sierra Club's Memorandum in Opposition to Entry of the Consent Decrees (Doc. No.118) ("Memorandum in Opposition") is incorporated by reference into this Motion and supporting memorandum.

For the reasons set forth in the memorandum attached hereto and in the Memorandum in Opposition, a special master is necessary and authorized under the Court's Rule 53 authority, the Court's inherent authority, and the Court's injunctive authority to:

1) assure that any decree entered by the Court is scrutinized by a person who operates with the full authority of the Court to end the pattern of delay that has frustrated the enforcement of the Clean Water Act ("CWA") for decades;

2) immediately and effectively restrain the direct threats to human health resulting from these CWA violations;

3) assist the Court in assuring compliance with the decrees, to the extent they remain complex and still contain vague deadlines, even after modified;

4) coordinate enforcement with both the Agencies' and Defendant's multiple layers of decision-makers, which have both political and bureaucratic potential for stalemate.  A special master is also necessary to coordinate efforts by ORSANCO, which has an interest in and limited authority over the Ohio River, but is a coalition of eight (8) states and is run by committees with varying interests that do not necessarily coincide with or relate to the interests of victims of the broad pattern of MSD's CWA violations; and

5) assist the Court in meeting its duty to ensure compliance with any decree entered.

Because the Court has ample authority to appoint a special master in this case, and because justice so requires, Sierra Club's Motion should be granted.

Respectfully Submitted,

 /s/ D. David Altman_____
D. David Altman
D. David Altman Co., L.P.A.
15 East 8th Street, Suite 200W
Cincinnati, OH 45202
721-2180

/s/ Albert J. Slap
Albert J. Slap, Esq. (#0074579)
Law Office of Albert J. Slap
20 Erie Ave.
Glendale, OH 45246
(513-771-7800)

**MEMORANDUM IN SUPPORT**

I.  ARGUMENT

If any incident encompasses the need for a special master, it is the spewing of sewage into homes for years while the agencies charged with protecting public health and the environment sit idle, taking limited action only when the public health threat is revealed to a court by citizen-intervenors.  This is the situation now before this Court.

For at least the past seven (7) years, the state and federal agency plaintiffs (the "Agencies") have known of the sewage-in-basement ("SIB") problems plaguing thousands of Hamilton County residents served by the Defendants' severely inadequate sewer collection systems.  The Lehan affidavit and videotape, attached as Exhibit 3 to Plaintiff Intervenor Sierra Club's ("Sierra Club") Memorandum in Opposition to Entry of the Consent Decrees (Doc. No.118), are recent dramatic evidence of the bacteria-laden sewage the SIB victims, including the Lehans, have been forced to live with for years. Apart from being disgusting and destroying property (as shown on the Lehan videotape), the sewage backups pose a severe and undeniable health threat to the Lehan family and those like them.

Yet, despite the Agencies' longstanding knowledge of the plight of the SIB victims, no immediate relief was ever pursued by any of the Agencies.  Even the U.S. Environmental Protection Agency ("EPA"), which has explicit authority under the Clean Water Act ("CWA") to "*immediately restrain*" a pollution source presenting an

"***imminent and substantial endangerment to the health of persons***,"[1] failed to act quickly, let alone immediately, to stop raw sewage from spewing into the SIB victims' homes, despite undeniable evidence of the endangerment. See 42 U.S.C. §1364. Thus, during the excessively long period of negotiations, the government either did not know that sewage-filled basements pose an imminent and substantial endangerment to the health of the individuals and families forced to live in such conditions, or it simply chose not to use its authority.

Instead, it was only after the Sierra Club talked to the home owners and shop owners directly effected by the SIB problems, obtained visual evidence like the Lehan video and the broader Sierra Club video (see Attachment K to Exhibit 1 of Plaintiff Sierra Club's Notice of Filing of Comments on Consent Decrees (Doc. No. 114), and Exhibit 1 to the United States' Motion for Entry of Consent Decrees (Doc. No. 116)), and exposed the matter to this Court, that the Agencies hastily put together a county program that the Agencies admit is the first of its kind. See Motion for Entry of Consent Decrees, at 1.

Moreover, notwithstanding the Agencies' present recognition of "imminent and substantial endangerment," the purported solution offered by the Agencies allows the MSD, and all other entities contributing to the SIB problem, to sidestep their obligations to ***immediately*** stop the CWA violations. Hence, rather than furthering Congress' intent under the CWA to abate imminent and substantial endangerments to public health and

---

[1] The CWA also authorizes EPA to immediately restrain pollution sources presenting an imminent and substantial endangerment to the welfare of persons, "where such endangerment is to the livelihood of such persons…" 42 U.S.C. §1364. The SIB problem harms not only individuals and families in their homes, it has also harmed numerous businesses.

welfare, the Agencies' purported solution actually misleads the Court and the public as to the intent of Congress to immediately stop such problems.[2]

Given the Agencies' transparent and utter failure to prosecute the MSD's violations to the fullest extent of their authority and to protect the public's health to the fullest extent of their ability, a special master is the only means (other than direct judicial oversight) to credibly ensure that the imminent and substantial endangerment to the SIB victims will be abated at the earliest possible date. Only a special master not governed by politics or bureaucracy – ***but who will act solely for the Court*** – can ensure that any decree entered is consistent with federal law and carried out based on facts of each case.

Underscoring the need for a special master, the Agencies suggest that, despite the complexity of their proposed decrees and the health issues at stake, all that may be needed is an "ombudsman" to help ensure "personal and individualized 'customer service' attention to citizen claims." *See* United States' Motion for Entry of Consent Decrees, at 46. It is almost as though law enforcers have adopted the MSD's "spin" on the disruption of the SIB victims' lives. The idea of an ombudsman to guarantee "customer satisfaction" belies the significance of what the Court can see and hear in the Lehan video. The video is strong evidence showing why a special master, as a representative of the Court whose sole goal is to end decades of this kind of injustice, is vitally needed. Specifically, a special master is needed to:

- provide technical support and continuity to the ongoing court involvement for 20+ years;

---

[2] The capital expenditures necessary to abate sewage basement backups will apparently be included in the 2006 Long Term Control Plan Update and compete with all other aspects of the remedial programs, including CSOs. This may result in funding for prevention, cleanup and claims for sewage basement backups being delayed or deferred, especially if the total costs of the program exceed $1.5 billion. See Consent Decree, Section IX.

3

- sift through the complexity of the Decrees and remedial program to provide an accurate and unbiased analysis of the likely effectiveness of the proposed decrees;

- scrutinize the decrees for loopholes and potential for abuse;

- address complex financial and engineering issues to ensure that the Court is not misled or overwhelmed with technical issues;

- help keep the MSD focused on its remedial obligations under the decrees (e.g. the 1968 County/City Agreement establishes a management structure that has failed in the past and will continue to do so in the future until fixed); and

- help restore credibility in MSD reporting to the public.

As fully discussed in Sierra Club's Memorandum in Opposition to Entry of the Consent Decrees (see Section II.F.), the law is clear that the Court has not only the authority to appoint a special master in this case, but has a ***duty*** to enforce any consent decree it may enter. *New York State Association for Retarded Children, Inc. v. Carey*, 551 F.Supp. 1165 (E.D. NY 1982). The Court's authority to appoint a special master comes from Fed. R. Civ. P. 53 as well as the Court's inherent authority to provide itself with the instruments required for the performance of its duties. *Id.*

The Court should not delegate this duty to the Agencies – parties who have thus far failed to exercise their authority to protect the SIB victims, leaving the SIB victims to clean up the mess. The Court does not need an ombudsman to ensure that the SIB victims are **satisfied as customers**. The Court needs an independent special master to ensure that the SIB victims are **protected as citizens** from endangerments – like bacteria-infested sewage – that the CWA was specifically designed to abate.

4

## II. CONCLUSION

For the reasons set forth above and in Sierra Club's Memorandum in Opposition to Entry of the Consent Decrees, Sierra Club's Motion for Court-Appointed Special Master should be granted.

                                        Respectfully submitted,

                                        /s/ D. David Altman_____

D. David Altman, Esq. (#0021457)
D. David Altman Co., L.P.A.
15 East 8th St., Suite 200W
Cincinnati, OH 45202
(513-721-2180)

                                        /s/ Albert J. Slap_____
Albert J. Slap, Esq. (#0074579)
Law Office of Albert J. Slap
20 Erie Ave.
Glendale, OH 45246
(513-771-7800)

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2004, a copy of the forgoing Plaintiff Intervenor Sierra Club's Motion for Court-Appointed Special Master was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ D. David Altman
D. David Altman (0021457)
D. DAVID ALTMAN CO., L.P.A.
15 East 8th Street, Suite 200W
Cincinnati, OH  45202
E-mail:  daltman@one.net