**TAB A**

PLAINTIFF'S
EXHIBIT
13

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 16 2001

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLE

SIERRA CLUB
                                                PLAINTIFF

V.                          NO. 4:00CV022JMM

CITY OF LITTLE ROCK;
LITTLE ROCK PUBLIC WORKS
DEPARTMENT; LITTLE ROCK SANITARY
SEWER COMMITTEE; LITTLE ROCK
WASTEWATER UTILITY                      DEFENDANTS

## JUDGMENT ON COUNT ONE (FIRST CAUSE OF ACTION) OF PLAINTIFF'S COMPLAINT AGAINST DEFENDANT LITTLE ROCK SANITARY SEWER COMMITTEE AND DISMISSAL OF ALL OTHER CAUSES OF ACTION AGAINST DEFENDANT LITTLE ROCK SANITARY SEWER COMMITTEE

Upon the stipulation of Plaintiff Sierra Club and Defendant Little Rock Sanitary Sewer Committee ("LRSSC") that they have agreed to settle all claims by Plaintiff against Defendant LRSSC and for good cause shown,

IT IS HEREBY ORDERED that a Judgment on liability of Defendant LRSSC for past alleged violations of the Clean Water Act for Sanitary Sewer Overflows, as alleged in Plaintiff's First Cause of Action, and as set forth in this Court's March 5, 2001 Order, referred to as count one, shall be entered in the above-entitled action in favor of Plaintiff Sierra Club and against Defendant LRSSC; and, all other causes of action alleged by Plaintiff Sierra Club against Defendant LRSSC, including the Second and Third Causes of Action, for alleged violations of

Defendant LRSSC's NPDES permits, the Clean Water Act and the Resource Conservation and Recovery Act are dismissed with prejudice, subject to the provisions of the Settlement Agreement between Plaintiff and Defendant LRSSC.

IT IS FURTHER ORDERED that the Settlement Agreement dated September 12, 2001, between Plaintiff and Defendant LRSSC and attached hereto is adopted, approved, and incorporated by reference herein.

IT IS FURTHER ORDERED that this Judgment is entered without prejudice as to the other pending claims by Plaintiff against Defendant City of Little Rock, as well as the defenses of Defendant City of Little Rock, and also that the Settlement Agreement between Plaintiff S/C and Defendant LRSSC shall not prejudice the rights of Defendant City of Little Rock in this litigation.

IT IS FURTHER ORDERED that Defendant LRSSC is otherwise dismissed as a party to this litigation, subject to the provisions of the Settlement Agreement between Plaintiff and Defendant LRSSC and this Court's retention of jurisdiction, as set forth in paragraph No. 13 of the Settlement Agreement between Plaintiff and Defendant LRSSC.

DATED this 16 day of _____ Nov _____, 2001.

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
ON 11/19/01 BY ab

_Janer M Moog_
U. S. DISTRICT COURT JUDGE

# SETTLEMENT AGREEMENT

# BETWEEN

# SIERRA CLUB

# and

# LITTLE ROCK SANITARY SEWER COMMITTEE

Dated:  September 12, 2001
Consisting of pages i-vi, and 1-31
Exhibit 1 (Fourche Creek Wetland Map, page 32)
Exhibit 2 (First Tee Project Map, page 33)
Exhibit 3 (Proposed Judgment consisting of 4 pages)

SETTLEMENT AGREEMENT BETWEEN
SIERRA CLUB and LITTLE ROCK SANITARY SEWER COMMITTEE

---

SETTLEMENT AGREEMENT DATED
September 12, 2001

---

REPRESENTATIVES OF PARTIES:

FOR THE SIERRA CLUB:

Sierra Club
P. O. Box 22446
Little Rock, Arkansas  72221

Hank Bates
McMath, Vehik, Drummond, Harrison & Ledbetter
711 West Third Street
Little Rock, Arkansas  72201
(501) 396-5413
Fax:  (501) 374-5118
Attorneys for Sierra Club

Peter G. Kumpe
Williams & Anderson LLP
111 Center Street, Suite 2200
Little Rock, Arkansas  72201
(501) 372-0800
Fax:  (501) 372-6453
Attorneys for Sierra Club

FOR LITTLE ROCK SANITARY SEWER COMMITTEE:

James R. Pender, Chairman
Little Rock Sanitary Sewer Committee
900 S. Shackleford Road, Suite 750
Little Rock, Arkansas  72211
(501) 312-2020
Fax:  (501) 312-2021

Dale J. Wintroath, Vice Chair
Little Rock Sanitary Sewer Committee
400 West Capitol Avenue, Seventh Floor
Little Rock, Arkansas  72201
(501) 371-6702
Fax:  (501) 371-8827

Stuart S. Mackey, Secretary
Little Rock Sanitary Sewer Committee
100 Morgan Keegan Drive, Suite 120
Little Rock, Arkansas  72202
(501) 663-5400
Fax:  (501) 663-5408

Charles G. Goss, Member
Little Rock Sanitary Sewer Committee
6000 Stagecoach Road
Little Rock, Arkansas  72204
(501) 455-2427
Fax:  (501) 455-4233

Patrick D. Miller, Member
Little Rock Sanitary Sewer Committee
425 West Capitol Avenue, Suite 3300
Little Rock, Arkansas  72201
(501) 975-0250
Fax:  (501) 376-6256

Reggie A. Corbitt, Manager
Little Rock Wastewater Utility
221 East Capitol
Little Rock, Arkansas  72202
(501) 688-1404
Fax:  (501) 376-3541

Don F. Hamilton, General Counsel
Little Rock Sanitary Sewer Committee
221 East Capitol
Little Rock, Arkansas   72202
(501) 688-1403
Fax:   (501) 376-3541
Attorney for Little Rock Sanitary Sewer Committee

SETTLEMENT AGREEMENT BETWEEN
SIERRA CLUB AND CITY OF LITTLE ROCK, ARKANSAS
and LITTLE ROCK SANITARY SEWER COMMITTEE

## TABLE OF CONTENTS

Preamble .............................................. 1

General ............................................... 3
   1.   Definitions ................................. 3
     (A)   Design Storm Event .................... 3
     (B)   Capacity Related SSOs ................. 4
     (C)   Compliance Deadline .................. 4
     (D)   Effective Date ....................... 5
     (E)   Non-Capacity Related SSO ............. 5
     (F)   Sanitary Sewer Overflow ("SSO") ...... 5
     (G)   Termination Date ..................... 6

Capacity-Related SSOs ................................. 6
   2.   The Study ................................... 6
     (A)   Range of Study ....................... 6
     (B)   Study Completion Date ................ 7
     (C)   Resolution by LRSSC .................. 8
   3.   Program Development ......................... 8

Non-Capacity Related SSOs ............................. 9
   4.   Priority/Forms ............................. 9
   5.   Goals by Years ............................ 10
   6.   Failure to Comply ......................... 11

SSO Response Plan .................................... 12
   7.   Plan Development .......................... 12
     (A)   LRWU/Public Awareness ............... 12
     (B)   Responding to SSOs .................. 12
     (C)   Reporting SSOs ...................... 13
     (D)   Notice .............................. 13
     (E)   LRWU Personnel ...................... 13
     (F)   Photographs ......................... 13
     (G)   Identification of Capacity-
         Related/Non-Capacity Related SSO ....... 13

SSO Notification Program ............................. 14
   8.   SSO Notification Program .................. 14
     (A)   City Owned Property .................. 14
     (B)   Residential Property ................ 15
     (C)   Recurring SSOs ...................... 15

         (D)   Billing Notices ........................ 15
         (E)   Notice of SSOs Threatening
              Public Health ......................... 16

Documents and Reporting ................................ 16
     9.     Copies of Reports to Sierra Club ........... 16

Supplemental Environmental Projects ("SEP") ........... 16
     10.    Establishment of SEP ....................... 16
         (A)   Fourche Creek .......................... 17
         (B)   Bike Paths ............................. 17
         (C)   Little Maumelle River Basin ............ 18
         (D)   First Tee Project ...................... 19

Other Provisions ..................................... 20
     11.    Meeting Deadlines/Extensions ............... 20
     12.    Attorney Fees .............................. 21
     13.    Judgment/Jurisdiction ...................... 22
     14.    Settlement Agreement Without Prejudice
         to Plaintiff S/C and Defendant City
         of Little Rock ............................. 23
     15.    Termination of Agreement ................... 24
     16.    Power to Enforce/Meet and Confer ........... 24
     17.    Release .................................... 24
     18.    Solicitation of Other Claims ............... 25
     19.    Recipients of Notice ....................... 26
     20.    Good Faith ................................. 26
     21.    Department of Justice/EPA Approval/
         Form of Judgment ........................... 26
     22.    Construction ............................... 27
     23.    Separability ............................... 27
     24.    Copies Deemed Originals .................... 27
     25.    Entire Agreement ........................... 28
     26.    Assignment ................................. 28
     27.    Full and Final Settlement .................. 28
     28.    Interpretation/Ambiguities ................. 29
     29.    Signatories Authorization .................. 30
     30.    Laws Governing ............................. 30

Signatories       ..................................... 30

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made on the day hereafter stated by and between the Sierra Club ("S/C") and the Little Rock Sanitary Sewer Committee ("LRSSC") acting through Little Rock Wastewater Utility ("LRWU") by its Manager, Reggie A. Corbitt.  S/C and LRSSC are sometimes collectively referred to herein as the "Parties."

### PREAMBLE

WHEREAS, LRSSC is a committee comprised of five (5) residents of the City of Little Rock qualified to serve as members of LRSSC with the statutory authority through LRWU to operate and maintain the sanitary sewer system owned by the City of Little Rock, situated in Pulaski County, Arkansas, and providing sanitary sewer service to its customers; and,

WHEREAS, LRSSC's point sources discharge into the Arkansas River and are presently regulated pursuant to two National Pollutant Discharge Elimination System Permits ("NPDES Permits") Nos. AR0021806, and AR0040177, issued by the Arkansas Department of Environmental Quality ("ADEQ") dated May 31, 1996, and March 31, 1997, respectively; and,

PROTECTED SETTLEMENT COMMUNICATION
ARK RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

WHEREAS, on January 13, 2000, S/C filed a complaint
against the City of Little Rock ("City") and LRSSC in the
United States District Court for the Eastern District of
Arkansas, entitled <u>Sierra Club v. City of Little Rock and
Little Rock Sanitary Sewer Committee</u>, No. 4:00CV022,
("Lawsuit") alleging violations of LRSSC's NPDES Permits
AR0021806 and AR0040177 under 33 U.S.C. 1311(a) (the "Clean
Water Act") and Resource Conservation and Recovery Act
("RCRA"), on certain dates specified in the complaint; and,

WHEREAS, an order dated March 5, 2001 was entered by
the United States District Court in the Lawsuit granting
S/C's motion for partial summary judgment as to liability
on Count I against LRSSC, but denying any relief sought by
S/C against the City; and,

WHEREAS, a trial has been set in the Lawsuit for
December 4, 2001 for all remaining issues, including S/C's
claims alleged against LRSSC and the City; and,

WHEREAS, S/C and LRSSC each desire to avoid the costs
and uncertainties of litigation, and, therefore, through
their authorized representatives and without trial or final
adjudication of the remaining issues of fact or law with
respect only to S/C's claims against LRSSC in the Lawsuit,
S/C and LRSSC have agreed to settle this matter, provided,

-2-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

however, this settlement is without prejudice as to any

other claims in the Lawsuit between S/C and the City;

WHEREAS, by entering into this Settlement Agreement,

LRSSC is not admitting liability or conceding any alleged

violations whatsoever, nor is it admitting that, by paying

any sum of money or agreeing to perform any act, it is in

any way responsible or liable for any of the claims alleged

in the Lawsuit and, moreover, LRSSC expressly denies any

liability or that any of the SSOs are violations of its

NPDES permits, the Clean Water Act, or RCRA; and,

NOW THEREFORE, in consideration of the terms,

conditions and covenants herein set forth, the Parties

hereto agree as follows:

## GENERAL

1.    **Definitions:**

(A)   <u>Design Storm Event</u>:  Depending on the duration of

a particular rain event or a series of rainfall

events, "Design Storm Event" is defined in the

following table.  Total rainfall for a Design

Storm Event of a duration other than shown in

this table will be determined from 2-year return

period precipitation data, as published by the

-3-

U.S. Department of Commerce at the time of this

Agreement.

| Storm Duration (Hours) | 2-Year Intensity (Inches/hour) | Given Duration Rainfall Total Required for 2-year Event (inches) |
|---|---|---|
| 0.5 | 2.80 | 1.4 |
| 1 | 1.85 | 1.9 |
| 2 | 1.15 | 2.3 |
| 5 | 0.60 | 3.0 |
| 12 | 0.30 | 3.6 |
| 24 | 0.175 | 4.2 |
| 36 | 0.125 | 4.5 |
| 48 | 0.100 | 4.8 |
| 72 | 0.074 | 5.3 |
| 96 | 0.057 | 5.5 |
| 120 | 0.048 | 5.8 |

(B)    Capacity-Related SSO:    A "Capacity-Related SSO"

is an SSO caused primarily by a lack of

sufficient capacity in the sanitary sewer

collection system, such as an SSO caused by

inflow and/or infiltration during a storm event.

(C)    Compliance Deadline: "Compliance Deadline" means

the date by which LRSSC must eliminate all

Capacity-Related SSOs in LRSSC's sanitary sewer

collection and treatment system, except for

Capacity-Related SSOs caused by a storm event

greater than the Design Storm Event.    The

-4-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

"Compliance Deadline" shall be established in accordance with the process set forth in Paragraph 2 of this Agreement.

(D)   Effective Date:   "Effective Date" means the date upon which the Judgment referenced in Paragraph 13 of this Settlement Agreement is entered by the Court.

(E)   Non-Capacity Related SSO: A "Non-Capacity Related SSO" is any SSO from a sewer line or facility owned by the City of Little Rock, Arkansas, and operated and maintained by LRWU other than a "Capacity-Related SSO," including but not limited to SSOs caused by pipe blockages, pipe breaks, equipment failures or power failures.

(F)   Sanitary Sewer Overflow or SSO:   "Sanitary Sewer Overflow" or "SSO" means any discharge from LRSSC's sanitary sewer collection and treatment system other than a discharge to waters of the United States from the two discharge points specifically designated in LRSSC's two NPDES permits, or any additional NPDES permits issued to LRWU after the execution of this agreement.

-5-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

(G)    Termination Date: "Termination Date" means the

date upon which this Settlement Agreement and

LRSSC's obligations thereto terminate, as set

forth in paragraph 13.

### CAPACITY-RELATED SSOS

2.    **The Study:**    LRSSC shall continue the engagement

of a qualified consultant to undertake a study of

alternatives (the "Study") to address Capacity-Related SSOs

in the Little Rock sanitary sewer collection and treatment

system:

(A)    Range of Study:    The Study may consider a range

of alternatives including, but not limited to,

infiltration and inflow (I/I) reduction,

expansion of conveying and treatment systems, and

retention basins.    The Study will identify

alternatives to assure compliance with the

LRSSC's NPDES Permit provisions, recognizing as a

goal the elimination of Capacity-Related SSOs,

and will recommend specific actions for

implementation by LRSSC.    The Study will

establish a Compliance Deadline and serve as the

foundation of a long-term program with the goal

to eliminate Capacity-Related SSOs, except for

-6-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

Capacity-Related SSOs caused by a storm event
greater than the Design Storm Event.

(B)  Study Completion Date:  The Study shall be
completed by March 1, 2002.  Upon completion of
the Study, and at least two (2) weeks before any
public hearing on the Study, LRSSC shall provide
to S/C, at LRSSC's sole expense, one copy of the
Study and pay to S/C $5,000.00 to cover S/C's
review of the Study and the Compliance Deadline
to be performed by Bruce Bell, if available.  Any
portion of the $5,000.00 not expended on the
review shall be reimbursed to LRSSC by S/C.  If,
upon review, S/C determines that the Compliance
Deadline established by the Study is unreasonable
or not supported by the Study, S/C shall have the
opportunity to challenge the Compliance Deadline
in writing with supporting documented findings
and opinions of the qualified engineer, i.e.,
Bruce Bell, if available, and propose an
alternative deadline before the Court, subject to
the meet and confer provisions set forth in
paragraph No. 16.  S/C must file any such
challenge within 45 calendar days from receiving

-7-

a copy of the Study, failing which the Compliance
Deadline shall be deemed accepted.  Any such
challenge filed shall attach thereto a statement
of a qualified licensed engineer containing a
concise statement of the basis for the challenge,
as previously referred to herein.

(C)   Resolution by LRSSC:  By no later than September
30, 2002, LRSSC shall develop, adopt and
implement a program (the "Program") based on the
Study with the goal of eliminating all Capacity-
Related SSOs by the Compliance Deadline, as set
forth in paragraph 2(A).  Failure of LRSSC to
adopt a resolution authorizing the implementation
of the Program by September 30, 2002, shall be a
breach of this Agreement and subject to an order
for specific performance of this provision by
adoption of the authorizing resolution by LRSSC.

3.   **Program Development:**  Any Capacity-Related SSO in
LRSSC's sanitary sewer collection and treatment system
after the Compliance Deadline, except for Capacity-Related
SSOs caused by a storm event greater than a Design Storm
Event, shall be deemed by the Court to constitute a breach
of this Settlement Agreement.  Such determination shall be

-8-

subject to LRSSC's right to assert all defenses available to it under its then-existing NPDES Permits, and under applicable federal and state laws.  Further, S/C reserves all rights to assert, in any action to enforce this Settlement Agreement, that the number of the Capacity-Related SSOs exceeding the goals which occur after the Compliance Deadline also constitute violations of the Clean Water Act, and LRSSC reserves its right to assert all defenses to such Clean Water Act claims that are available to it under its then existing NPDES Permits and under applicable federal and state laws.

## NON-CAPACITY RELATED SSOS

4.    **Priority/Forms:**  Non-Capacity Related SSOs, as well as Capacity-Related SSOs, shall be given top priority in the maintenance of LRSSC's sanitary sewer collection and treatment system.  LRSSC shall clean all SSOs pursuant to its established procedures as soon as possible upon discovery, as conditions allow.  LRSSC shall prepare and maintain overflow report forms and all applicable provisions of the LRWU Sanitary Sewer Collection System Maintenance Procedures manual shall be followed by LRWU maintenance personnel.

-9-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

5.    **Goals by Years**:  LRSSC shall limit the number of

Non-Capacity Related SSOs per 100 miles of sanitary sewer

lines operated and maintained by LRWU in LRSSC's collection

and treatment system in compliance with the following

Interim Schedule for Non-Capacity Related SSOs, said

schedule being based upon the execution and final approval

of this settlement being accomplished on or before

December 31, 2001:

| Calendar Year | Number of Non- Capacity-Related SSOs per 100 miles of Sewer Lines |
|---------------|------------------------------------------------------------------|
| 2002 | 12 |
| 2003 | 11 |
| 2004 | 10 |
| 2005 | 9 |
| 2006 | 8 |
| 2007 | 7 |
| 2008 | 6 |

When LRSSC has reduced the number of Non-Capacity Related

SSOs to 6 per 100 miles of sewer lines for two consecutive

calendar years, LRSSC shall be deemed to have complied with

all provisions of this Agreement related to Non-Capacity

Related SSOs.  For the Calendar Year 2002 LRSSC's treatment

and collection system shall be deemed to contain 1100 miles

of sewer lines.  Thereafter, in the Annual Report required

by Paragraph 9 of this Agreement, LRSSC shall certify the

miles of sewer lines in LRSSC's treatment and collection

-10-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

system for the relevant calendar year. Such certification shall provide sufficient evidence to substantiate any increase or decrease in the length of sanitary sewer lines. The Annual Report shall also include a catalog of each SSO that occurred during the relevant calendar year, including the date and location of the SSO and whether the SSO was a Capacity-Related SSO or a Non-Capacity Related SSO.

6. **Failure to Comply:** LRSSC's failure to comply with the Interim Schedule for Non-Capacity Related SSOs shall create a rebuttable presumption that LRSSC has breached this Settlement Agreement. A determination of breach shall be subject to LRSSC's right to assert all defenses available under its then-existing NPDES Permits, and under applicable federal and state laws, including without limitation the upset defense. Further, S/C reserves all rights to allege in any action to enforce this Settlement Agreement that Non-Capacity Related SSOs also constitute violations of the Clean Water Act, and LRSSC reserves its right to assert all defenses to such Clean Water Act claims that are available to it under its then-existing NPDES Permits and under applicable federal and state laws. If LRSSC does not meet the Interim Schedule, S/C and LRSSC agree to meet promptly upon reasonable notice

-11-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

given by either party to discuss the circumstances and
reasons for the goal not being met and the appropriate
corrective actions.  LRSSC shall notify the City of Little
Rock and give the City of Little Rock an opportunity to be
present at this meeting.  If the parties are not able to
agree on the appropriate corrective actions, S/C may then
file a motion with the U.S. District Court for appropriate
relief consistent with paragraphs 11 and 16.

<u>SSO RESPONSE PLAN</u>

7.    **Plan Development:**  In order to more effectively
respond to all SSOs, on or before September 30, 2002, LRSSC
will review the current procedures for responding to SSOs
and will develop, adopt and implement a formal Sanitary
Sewer Overflow Response Plan that identifies specific
measures to protect the public health and the environment,
including but not limited to mechanisms to:

> (A)    <u>LRWU/Public Awareness:</u>  Provide that LRWU is made
> aware of all SSOs (to the extent possible), so
> that LRWU may take appropriate corrective and
> preventive action as soon as possible;

> (B)    <u>Responding to SSOs:</u>  Provide that LRWU personnel
> respond to SSOs including ensuring that reports
> of SSOs are promptly distributed to appropriate

-12-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

personnel for investigation and appropriate
response;

(C) <u>Reporting SSOs</u>:  Provide that LRWU promptly
report all SSOs to ADEQ and any other authority
required by the applicable LRSSC NPDES permit or
law;

(D) <u>Notice</u>:  Provide that LRWU notify the public,
health agencies, and other impacted entities
(e.g. water suppliers) pursuant to applicable
governmental authorization, as required by the
applicable NPDES permit;

(E) <u>LRWU Personnel</u>:  Provide that appropriate LRWU
personnel are aware of and follow the plan and
are trained;

(F) <u>Photographs</u>:  Provide that LRWU personnel take
photographs of the overflow area before and after
the cleanup, as required by the LRWU's Sanitary
Sewer Collection System Maintenance Procedures in
effect at the time of the occurrence of the SSO;

(G) <u>Identification of Capacity-Related/Non-Capacity
Related SSO</u>:  Provide that LRWU personnel
identify each SSO as either a Capacity-Related

-13-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

SSO or a Non-Capacity Related SSO and provide a
basis for each determination.

LRSSC shall provide S/C with a copy of the Sanitary Sewer
Overflow Response Plan immediately upon adoption.

## SSO NOTIFICATION PROGRAM

8.    **SSO Notification Program:**  LRSSC shall implement
and execute a Sanitary Sewer Overflow Notification Program
("SSONP") that is designed to protect the health and
welfare of persons in the event of SSOs from LRSSC's
sanitary sewer collection and transmission system.   The
SSONP shall meet the following requirements:

(A)    City Owned Property:   If an SSO occurs on City
owned property, LRSSC, during cleanup, shall
place a sign near the location of the SSO
notifying the public that an SSO has occurred.
The sign shall also warn the public of the
possibility of adverse health effects that may be
caused by SSOs and shall provide a contact phone
number so that the public can obtain additional
information about the SSO.  The warning sign
shall remain in place until LRWU has cleaned the
SSO according to LRWU's established procedures

-14-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

and there is no longer the possibility of

significant risk of harm to the public.

(B)   Residential Property:   If an SSO occurs on or

adjacent to residential property, LRSSC shall

provide notice to the homes immediately proximate

to the SSO notifying the owners that an SSO has

occurred.   The notice shall also warn the owner

of the possibility of adverse health effects that

may be caused by SSOs and shall provide a contact

phone number so that the owner can obtain

additional information about the SSO.

(C) - Recurring SSOs:   At those manholes located on

City owned property where SSOs occur more than

once in any twelve-month period, LRSSC shall

place a notice informing the public that SSOs may

occur at the location.   The notice shall also

warn the public of the possibility of adverse

health effects caused by SSOs and shall also

provide a contact number to obtain additional

information about SSOs.

(D)   Billing Notices:   In routine billing notices at

least once a year, during the next three years,

LRSSC shall provide general information about

-15-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

SSOs, the possibility of adverse health effects
caused by SSOs, and how the public can report
SSOs to LRSSC.

(E)  Notice of SSOs Threatening Public Health:  In
instances where SSOs occur that because of their
magnitude or other exceptionable circumstances
pose a possible threat to the public or
environment beyond the immediate vicinity of the
overflow area, LRSSC shall take steps to notify
the public of any public health or environmental
concerns.

## DOCUMENTS AND REPORTING

9.  **Copies of Reports to Sierra Club:**  At the same
time the LRWU submits such report to LRSSC, LRSSC agrees to
copy and to submit to S/C at LRSSC's sole expense, an
annual report summarizing LRSSC's compliance status with
the provisions of this Agreement.  The annual report shall
be made promptly at the end of each reporting period.

## SUPPLEMENTAL ENVIRONMENTAL PROJECTS

10.  **Establishment of SEP:**  The Sewer Committee shall
establish a Supplemental Environmental Project ("SEP").
The SEP shall consist of the following:

-16-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

(A) <u>Fourche Creek</u>:  Subject to the approval necessary by the City of Little Rock Board of Directors and any other appropriate governmental authorities as required by law or regulations, LRSSC shall, within its legal authority to do so, preserve in its existing natural condition approximately 90 acres of wetlands adjacent to the LRWU Fourche Creek Wastewater Treatment Plant, as shown on the attached map marked Exhibit 1.  The Fourche Creek property shall be open for daily use and enjoyment by the public, consistent with the conservation of the property as wetlands and - wildlife habitat and the use and operation of the treatment plant on the adjacent property.  LRSSC shall cooperate with Little Rock Parks and Recreation in the event that the Little Rock Parks and Recreation develops hiking trails on the property, along with signs, to educate users of the property concerning vegetation and wildlife that may be found on the property.

(B) <u>Bike Paths</u>:  LRSSC shall cooperate with the City of Little Rock and Little Rock Parks and Recreation in the event that the Little Rock

-17-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

Parks and Recreation creates and maintains bike
paths on mainline sanitary sewer easements
located on public lands; and such easements
located on private lands where such development
is otherwise permitted by the easement and a
right of ingress and egress from public streets
or City easements makes such development of
reasonable utility.  In the planning of future
extensions of sanitary sewer lines, LRSSC shall
work with Little Rock Parks and Recreation
regarding the provision of bike paths and trails,
consistent with the Little Rock Parks and
Recreation Master Plan, on mainline sanitary
sewer easements.  LRSSC shall also utilize Little
Rock Parks and Recreation as a resource to
address the common goals and objectives of each.

(C)    Little Maumelle River Basin:  LRSSC shall provide
notice and give the public, including S/C, an
opportunity to provide comments during LRSSC's
process of site selection for the construction of
any wastewater treatment facility in the Little
Maumelle River Basin.  A copy of any report
pertaining to environmental impacts of the

-18-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

treatment plant shall be provided to S/C at the
expense of LRSSC.  Prior to the selection of any
location for the construction of a wastewater
treatment facility in the Little Maumelle River
Basin, LRSSC shall prepare and make available to
the public an assessment of (a) the environmental
impacts of the wastewater treatment facility at
the preferred location, and (b) a description of
the comparative environmental merits and
detriments of each alternative location for the
wastewater treatment facility and any other
alternative project to treat sanitary sewage in
the portions of LRSSC's collection system located
in the Little Maumelle River Basin (e.g. pumping
to present treatment facilities).

(D)  First Tee Project:  This project involves the
construction of a golf facility for urban
children to promote their interest in golf.  The
project is located on South University in Little
Rock.  LRWU will participate in this project by
constructing sewer lines to accommodate this
project, which is sponsored by Little Rock Parks
and Recreation.  The cost is approximately

-19-

$50,0000.00 for the on-site sewer improvements.
Work has started on the golf course and the sewer
improvements should be completed in the summer of
2001.  Attached is a copy of a map showing the
project, marked Exhibit 2.

### OTHER PROVISIONS

11.  **Meeting Deadlines/Extensions**:  LRSSC agrees to
use its best efforts to meet the deadlines set forth herein
and expressly acknowledges that monetary cost shall not be
an excuse for failing to meet the deadlines set, unless
LRSCC's good faith effort to obtain any rate increase or
bonded financing necessary to fund the Program is denied by
the Board of Directors of the City of Little Rock.  LRSSC's
obligation to meet any requirement set out in this
Settlement Agreement may be excused or extended only by the
Court or by mutual written agreement of the parties, and
only to the extent that such failure or delay arises out of
causes or circumstances beyond the control of, and without
the fault of, LRSSC.  Examples of such causes include but
are not limited to acts of God, fires, or floods beyond the
reasonable control of LRSSC that prevent contractors from
performing their services, any unsuccessful challenges made
by S/C or any third party under Arkansas law, any court-

-20-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

issued injunction not attributable to the fault of LRSSC, and the inability of LRSSC to obtain required approvals or permits from any regulatory agency with jurisdiction for reasons outside LRSSC's reasonable control. Any requests for extensions of deadlines contained in this Settlement Agreement shall be made to the Court by LRSSC by noticed motion.

12. **Attorney Fees:** LRSSC agrees that S/C is entitled to an award of its reasonable attorneys' fees, expert expenses and other costs of litigation (hereafter "Costs of Litigation") accrued as of the Effective Date of this Settlement Agreement and as arise from the claims-asserted in this litigation against LRSSC, but this agreement and any such award shall be without prejudice to Defendant City of Little Rock or any of its claims and defenses in the pending litigation between S/C and the City of Little Rock. LRSSC and S/C shall attempt to reach agreement as to this sum, but if they are unable to do so, S/C may file an application with the Court for the recovery of its Costs of Litigation. The deadline for filing such an application is hereby extended until one hundred and twenty (120) calendar days after approval and entry of Judgment and the Settlement Agreement by the Court, or such later date as is

-21-

set by the Court upon motion or otherwise. LRSSC shall
have thirty (30) calendar days to respond to any such
application. This agreement is without prejudice to the
rights of S/C to seek an award of costs of litigation from
the City of Little Rock and contend that such an award
should be made without credit to the City for amounts paid
by LRSSC hereunder, as permitted by law. In the event S/C
pursues any claim to compel LRSCC to comply with any
provision of this Settlement Agreement or pursues
compliance through the "meet and confer" provisions set
forth in paragraph 16, the Court may award S/C a reasonable
costs of litigation for any claim or portion of claim upon
which S/C prevails.

13. **Judgment/Jurisdiction:** The Parties hereby agree
that, subject to the Court's approval, a Judgment in the
form attached hereto as Exhibit 3 shall be entered in favor
of S/C on liability against Defendant LRSSC for past
alleged violations of the Clean Water Act for SSOs, as set
forth in the Court's order dated March 5, 2001, granting
S/C's motion for partial summary judgment against LRSSC on
liability on count one. The Parties further agree that the
terms of this Settlement Agreement shall be incorporated
into the Judgment of the Court, and that the Court shall

-22-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

retain jurisdiction over this Lawsuit for purposes of
interpreting, modifying or enforcing the terms of this
Settlement Agreement through thirty (30) months after the
Compliance Deadline or the date of dismissal of this
proceeding, if earlier ("Termination Date").  This
Termination Date shall be extended only if LRSSC obtains
relief from any deadline pursuant to paragraph 11, above,
in which case the jurisdiction of the Court shall be
extended for like period; or, if there is a motion to
enforce this Settlement Agreement pending as of the
Termination Date, the Court shall retain jurisdiction to
adjudicate said motion and to enforce any resulting order.
The Parties further agree that the Court shall retain
jurisdiction over this Lawsuit, to adjudicate any motion
for attorneys' fees and costs filed by S/C against LRSSC.

    14.  **Settlement Agreement Without Prejudice to
Plaintiff S/C and Defendant City of Little Rock:**  This
Settlement Agreement between Plaintiff S/C and Defendant
LRSSC is entered into without prejudice to the claims and
defenses asserted in this proceeding by Plaintiff S/C and
Defendant City of Little Rock with respect to those two
parties.

-23-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

15. **Termination of Agreement**:  This Settlement Agreement shall terminate and be of no further force or effect upon termination of the Court's jurisdiction in accordance with paragraph 13, above.

16. **Power to Enforce/Meet and Confer**:  In the event of a breach of this Settlement Agreement by either party, the Court shall have the power to enforce this Agreement with all available legal and equitable remedies, including contempt and civil penalties.  The provisions of this Settlement Agreement shall not be construed to limit the Parties' respective defenses to any claims of breach alleged by the other party.  Prior to filing a motion with the Court seeking relief for any alleged breach of this Settlement Agreement, the Parties agree to meet and confer with the other party and to make a good faith effort to resolve the dispute and/or fashion an appropriate remedy. In the event an action for breach of this agreement is filed, the prevailing party will be entitled to recover its reasonable attorneys fees incurred plus costs and expenses as a consequence of the action being brought.

17. **Release**:  By executing this Agreement, S/C, its agents, successors, affiliates, assigns, attorneys, representatives and employees, release LRSSC from all

-24-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

claims for relief which arise from violations alleged in the Complaint filed by S/C' in the Lawsuit, including, but not limited to, any alleged violations of LRSSC's NPDES Permits, Nos. AR0021806 and AR0040177, the Clean Water Act or RCRA, up to the date of execution of this Settlement Agreement. S/C, its agents, successors, affiliates, assigns, attorneys, representatives and employees, further release LRSSC from any violations of the provisions in the two NPDES Permits (as they may be amended, modified, or reissued) resulting from Capacity-Related SSOs up to the Compliance Deadline, provided that S/C shall retain the right to seek relief from the Court if it believes that LRSSC is not making a good faith effort to comply with the Compliance Deadline.

18. **Solicitation of Other Claims**: S/C further agrees that neither it nor any of its successors, employees, agents, or attorneys, or any organization S/C controls, will encourage or solicit any third party or any member of S/C, to allege any violation by LRSSC of its NPDES Permits Nos. AR0021806 and AR0040177, or the Clean Water Act or RCRA released under paragraph 17, above.

-25-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

19. **Recipients of Notice:** Documents to be submitted to S/C shall be sent by first-class mail, postage prepaid to:

> Hank Bates
> McMath, Vehik, Drummond, Harrison & Ledbetter, P.A.
> 711 West Third Street
> Little Rock, Arkansas  72211

or to such other person as may be designated in writing by plaintiff's attorney of record herein; and documents to be submitted to LRSSC shall be sent by first-class mail, postage prepaid to:

> Manager
> Little Rock Wastewater Utility
> 221 East Capitol
> Little Rock, Arkansas  72202.

20. **Good Faith:** Both parties agree that they each shall act in good faith in implementing the terms of this Settlement Agreement.

21. **Department of Justice/EPA Approval/Form of Judgment:** The Parties recognize that pursuant to 33 U.S.C. §1365 a Consent Judgment may not be entered by the Court in this case prior to 45 days following the receipt of a copy of the Consent Judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency. The Parties shall submit this Settlement Agreement, and the proposed Judgment attached hereto as

-26-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

Exhibit 3, to the U.S. Department of Justice, Environmental
and Natural Resources Division, Legislation and Special'
Litigation Section for review and comment in writing by the
United States (including Region VI of the U.S.
Environmental Protection Agency) promptly upon execution.
The Parties shall submit to the Court the comments, if any,
of the United States prior to entry of judgment.  In the
event the Court does not adopt this Settlement Agreement
and the proposed Judgment as written, this Settlement
Agreement shall automatically be deemed to be null and void
and of no legal force or effect.

    22.  **Construction**:  The language in all parts of this
Settlement Agreement shall be construed according to its
plain and ordinary meaning.

    23.  **Separability**:  In the event that any provision,
section or sentence of this Settlement Agreement is held by
a court of competent jurisdiction to be unenforceable, the
validity of the enforceable provisions shall not be
adversely affected.

    24.  **Copies Deemed Originals**:  This Settlement
Agreement may be executed in one or more counterparts, and
each executed copy shall be deemed an original, which shall
be binding upon the signatories hereto.

-27-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

25. **Entire Agreement:** This Settlement Agreement constitutes the entire agreement between the Parties, and it is expressly understood and agreed that this Settlement Agreement may not be altered, amended, modified, or otherwise changed, in any respect or particular whatsoever, except by a writing duly executed by the Parties or their authorized representatives. The Parties acknowledge and agree that no one of them will make any claim at any time or place that this Settlement Agreement has been orally altered or orally modified in any respect.

26. **Assignment:** No party to this Settlement Agreement may assign any rights or obligations under this agreement, including the right to enforce this Settlement Agreement, to any third party who is not a successor in interest. This Settlement Agreement, shall be binding on any successors in interest of the Parties hereto.

27. **Full and Final Settlement:** This Settlement Agreement constitutes a full and final settlement of any claims by S/C in this Lawsuit against LRSSC, and resolves all allegations of the Lawsuit against LRSSC through the Termination Date of this Settlement Agreement, with the exception of S/C's motion for attorney's fees and costs and all obligations, rights and defenses expressly set forth in

-28-

this Agreement. It is the intent of the parties that this Settlement Agreement and LRSSC's full compliance with its provisions shall provide a complete and full remedy for (a) all SSOs that occurred prior to the Effective Date of this Settlement Agreement and (b) all SSOs that occur after the Effective Date but prior to the Termination Date. If prior to the Termination Date, any third party brings an action against LRSSC alleging that any action or omission which does not violate this Settlement Agreement is a violation of either the Clean Water Act or any applicable NPDES permit, the Sierra Club agrees to meet and confer in order to determine the effect of such action upon this Settlement Agreement and take whatever action the parties hereto mutually agree upon to prevent any adverse effects from the action upon this settlement and the performance of its terms and provisions by the parties hereto.

28. **Interpretation/Ambiguities:** This Settlement Agreement is the product of arms-length negotiations between the Parties and their respective attorneys. Each of the Parties expressly acknowledges and agrees that this Settlement Agreement shall be deemed to have been mutually prepared so that the rule of construction to the effect that ambiguities are to be resolved against the drafting

-29-

party shall not be employed in the interpretation of this Settlement Agreement.

29. **Signatories Authorization:** The undersigned representatives for S/C and LRSSC each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Settlement Agreement and that this Settlement Agreement binds that party.

30. **Laws Governing:** This Agreement shall be interpreted in accordance with the laws of the State of Arkansas and such federal laws as may be applicable.

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement as of the date first set forth above.

DATED this 12th day of September, 2001.

SIERRA CLUB

By: *Peggy P Wilhelm*
As Its: *VICE CHAIR*
*Exec Committee, Ark. Chapter*

LITTLE ROCK SANITARY SEWER COMMITTEE

By: *James R. Reed*
As Its Chairman

-30-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01

LITTLE ROCK WASTEWATER
UTILITY


By: _Reggie A. Corbitt_____
As Its Manager


APPROVED:

MCMATH, VEHIK, DRUMMOND,
HARRISON & LEDBETTER

By:_____
    Hank Bates
    Attorneys for Plaintiff

WILLIAMS & ANDERSON

By:_____
    Peter G. Kumpe
    Attorneys for Plaintiff


LITTLE ROCK SANITARY SEWER
COMMITTEE and LITTLE ROCK
WASTEWATER UTILITY

By:_____
    Don F. Hamilton
    Attorney for Little
    Rock Sanitary Sewer
    Committee


-31-

PROTECTED SETTLEMENT COMMUNICATION
ARK. RULES OF EVIDENCE, RULE 408; FED. RULE EVID. 408
9/12/01



Arkansas River (Fourche Place Cut-off)

Fourche Creek Wastewater Treatment Plant Wetlands Area

Fourche Creek (Adams) Wastewater Treatment Plant

EXHIBIT I to the LRSSC/Sierra Club Settlement Agreement dated 9/12, 2001



IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SIERRA CLUB                                          PLAINTIFF

V.                             NO. 4:00CV022JMM

CITY OF LITTLE ROCK;
LITTLE ROCK PUBLIC WORKS
DEPARTMENT; LITTLE ROCK SANITARY
SEWER COMMITTEE; LITTLE ROCK
WASTEWATER UTILITY                                   DEFENDANTS

### JUDGMENT ON COUNT ONE (FIRST CAUSE OF ACTION) OF PLAINTIFF'S COMPLAINT AGAINST DEFENDANT LITTLE ROCK SANITARY SEWER COMMITTEE AND DISMISSAL OF ALL OTHER CAUSES OF ACTION AGAINST DEFENDANT LITTLE ROCK SANITARY SEWER COMMITTEE

Upon the stipulation of Plaintiff Sierra Club and Defendant Little Rock Sanitary Sewer Committee ("LRSSC") that they have agreed to settle all claims by Plaintiff against Defendant LRSSC and for good cause shown,

IT IS HEREBY ORDERED that a Judgment on liability of Defendant LRSSC for past alleged violations of the Clean Water Act for Sanitary Sewer Overflows, as alleged in Plaintiff's First Cause of Action, and as set forth in this Court's March 5, 2001 Order, referred to as count one, shall be entered in the above-entitled action in favor of Plaintiff Sierra Club and against Defendant LRSSC; and, all other causes of action alleged by Plaintiff Sierra Club against Defendant LRSSC, including the Second and Third Causes of Action, for alleged violations of

EXHIBIT 3

Defendant LRSSC's NPDES permits, the Clean Water Act and the Resource Conservation and Recovery Act are dismissed with prejudice, subject to the provisions of the Settlement Agreement between Plaintiff and Defendant LRSSC.

IT IS FURTHER ORDERED that the Settlement Agreement dated September 12, 2001, between Plaintiff and Defendant LRSSC and attached hereto is adopted, approved, and incorporated by reference herein.

IT IS FURTHER ORDERED that this Judgment is entered without prejudice as to the other pending claims by Plaintiff against Defendant City of Little Rock, as well as the defenses of Defendant City of Little Rock, and also that the Settlement Agreement between Plaintiff S/C and Defendant LRSSC shall not prejudice the rights of Defendant City of Little Rock in this litigation.

IT IS FURTHER ORDERED that Defendant LRSSC is otherwise dismissed as a party to this litigation, subject to the provisions of the Settlement Agreement between Plaintiff and Defendant LRSSC and this Court's retention of jurisdiction, as set forth in paragraph No. 13 of the Settlement Agreement between Plaintiff and Defendant LRSSC.

DATED this _____ day of _____, 2001.

_____
U. S. DISTRICT COURT JUDGE

2

APPROVED:

SIERRA CLUB


By:_____
        Hank Bates, #98063
        McMath, Vehik, Drummond,
        Harrison & Ledbetter
        Attorneys for Plaintiff
        711 West Third Street
        Little Rock, Arkansas  72201
        Phone:  (501) 396-5413
        Fax:  (501) 374-5118



By:_____
        Peter G. Kumpe, #72073
        Williams & Anderson
        Attorneys for Plaintiff
        111 Center Street, Suite 2200
        Little Rock, Arkansas  72201
        Phone:  (501) 372-0800
        Fax:  (501) 372-6453


LITTLE ROCK SANITARY SEWER
COMMITTEE and LITTLE ROCK
WASTEWATER UTILITY


By:_____
        Don F. Hamilton, #63022
        Attorney for Little
        Rock Sanitary Sewer
        Committee
        221 East Capitol
        Little Rock, Arkansas  72202
        Phone: (501) 688-1403
        Fax: (501) 376-3541

CITY OF LITTLE ROCK

Thomas M. Carpenter
City Attorney

By:_____

        Beth Blevins Carpenter, #91218
        Deputy City Attorney

        Bradley S. Chafin, #92149
        Deputy City Attorney

        City Hall – Suite 310
        500 West Markham
        Little Rock, Arkansas  72201
        Phone: (501) 371-4527
        Fax:  (501) 371-4675