IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>        v. )<br>)<br>THE BOARD OF COUNTY )<br>COMMISSIONERS, HAMILTON )<br>COUNTY, OHIO, et al., )<br>)<br>    Defendants. )<br>_____)<br>)<br>STATE OF OHIO, )<br>)<br>    Plaintiff, )<br>)<br>        v. )<br>)<br>THE BOARD OF COUNTY )<br>COMMISSIONERS OF HAMILTON )<br>COUNTY, OHIO and THE CITY OF )<br>CINCINNATI, )<br>    Defendants. )<br>_____) | Civil No. C-1-02-107<br><br>Judge S. Arthur Spiegel |

**PLAINTIFFS' OPPOSITION TO INTERVENOR SIERRA CLUB'S
MOTION FOR COURT-APPOINTED SPECIAL MASTER**

Intervenor Sierra Club has filed a Motion for Court-Appointed Special Master and Memorandum in Support ("SC Memo"). Sierra Club also relies upon a portion of Sierra Club's Memorandum in Opposition to the Entry of the Consent Decrees ("SC Op.") to support its motion. Sierra Club's Motion should be denied because, as the United States demonstrated in its Memorandum in Support of Motion for Entry of Consent Decrees ("US Memo") at 37-43, and as elaborated further below, a Special Master is unnecessary in this case involving three expert regulatory agencies, threatens to impermissibly usurp core functions of these agencies, and at

best, is premature.

A.  **Appointment of a Special Master Is Unnecessary and Would Be Premature at this Juncture**

The principal case relied upon by Sierra Club is New York State Ass'n for Retarded Children, Inc. v. Carey, 551 F. Supp. 1165 (E.D.N.Y. 1982), aff'd in part and rev'd in part, 706 F.2d 956 (2d Cir. 1983).  E.g.., SC Memo p.4.  However, far from supporting Sierra Club's position, this case makes clear that appointment of a special master is unnecessary and premature at this stage of the proceeding.  Sierra Club glosses over the fact that the Carey court agreed to appoint a special master only after the defendant had engaged in "widespread violations" of a consent decree and after some six years of litigation between the parties over the consent decree.  551 F. Supp. at 1167, 1181.

Cronin v. Browner, 90 F. Supp. 2d 364, 377 (S.D.N.Y. 2000), the only environmental case cited by Sierra Club, SC Op. p. 36, similarly dealt with appointment of a special master several years after a consent decree was entered.[1]  Specifically, the court in Cronin stated only

---

[1] Sierra Club cites two other cases, which are similarly unpersuasive.  SC Op. pp. 36, 38.  Reed v. Cleveland Board of Education, 607 F.2d 737, 740, 744-45 (6th Cir. 1979) was a school desegregation case in which the court considered whether fees charged by a special master and the special master's assistants were allowable.  The Reed court upheld appointment of a special master because the case involved "constitutional problems in public institutions" compelling the court to "issue orders which require fundamental changes in the administrative and financial structures of the institutions involved." Id. at 743.  As the Reed court stated, "to accomplish these ends with fairness to all concerned a judge in equity has inherent power to appoint persons from outside the court system for assistance." Id. (emphasis added).  By contrast, the very parties in this case who possess the greatest expertise and incentive to appropriately oversee implementation of the Decrees are the plaintiffs in the case (the regulators); therefore, a special master is unnecessary.  The only issue regarding special masters in Wuori v. Concannon, 551 F. Supp. 185, 190-91 (D. Me. 1982) was the reasonableness of legal costs charged by the plaintiffs' counsel for working on the reappointment of a special master to oversee implementation of a consent decree.  Wuori therefore has no application to the instant case.

that it was "prepared to appoint a special master in this case if the parties have not agreed on a schedule for final action" for issuance of cooling water intake regulations required under a consent decree. 90 F. Supp. 2d at 377. The court found that a special master might be appropriate because "of the limited progress that has been made thus far [nearly five years] in the implementation of the Consent Decree." Id. Thus, Carey and Cronin make clear that appointment of a special master at this stage is premature and unnecessary.

Sierra Club's attempts to rely on two other matters for support of its assertion that a special master is necessary here are equally unavailing. First, in chambers at the February 15, 2004 status conference, counsel for Sierra Club mentioned United States v. Harsco, a Clean Air Act matter before Judge Bertelsman in Covington. Counsel for the United States has spoken both to Steven Justice of Taft, Stettinius and Hollister, LLP (counsel for ORSANCO in this matter and for defendant in Harsco) and the Department of Justice attorney handling the matter for the United States. In Harsco, the United States sued Harsco, a slag processing plant, for Clean Air Act violations, and entered into a consent decree, which is currently being overseen by EPA. A group of citizens who own real property near the facility had also filed suit against Harsco, complaining that Harsco's operation released "fugitive dust" that settled on their property and asserting tort claims and other claims against the facility. Judge Bertelsman issued an injunction in the citizen action and appointed a special master to oversee the injunction concerning the citizen claims, which were not part of the United States' case or consent decree and with which EPA was not involved. Second, in support of Sierra Club's assertion, Sierra Club's experts both discuss their personal involvement with cleanup of a hazardous waste site, where former Senator Torricelli was appointed to oversee cleanup being performed by defendant

under a consent decree. However, this was a private action and was not being overseen either by EPA or New Jersey Department of Environmental Protection. See, e.g., Interfaith Community Organization v. Honeywell Intern., Inc., 263 F. Supp.2d 796, 874 (D.N.J. 2003) (appointing special master to oversee site cleanup in action brought by citizen group); www.pittsburghlive.com/x/tribune-review/opinion/columnists/datelinedc/s_140986.html (discussing Sen. Torricelli's appointment). These matters may well benefit from a special master to assist the citizen plaintiffs in <u>their</u> oversight, but they provide <u>no</u> support for Sierra Club's assertion that additional oversight or coordination is necessary for <u>this</u> matter, where there are already three competent and committed regulatory agencies overseeing the defendants.

Sierra Club also raises the issue of funding, suggesting that because the governments' budgets are uncertain, a special master should be appointed.[2] SC Op. pp. 39-40. Under Sierra Club's reasoning, a special master should be appointed out of an abundance of caution every time a consent decree is entered in a case brought by the government in case funding ever diminishes. No government agency can ever be one-hundred percent certain of continued funding, yet the fact remains that EPA and DOJ have devoted substantial resources (over 15,000 hours of federal personnel time and expert support) toward this case thus far and that Clean Water Act wet-weather enforcement is one of EPA's highest priorities. See US Memo p. 38-40, and n. 46.[3]

---

[2] The consent decree in *Carey* originally provided for a "Review Panel" to monitor the defendant's compliance, however, funding for the Review Panel terminated, and the Panel was *de facto* unable to provide oversight. *See* 551 F. Supp. at 1178.

[3] Sierra Club overlooks the fact that EPA has targeted significant resources toward wet weather enforcement (which expressly includes CSO/SSO cases) and is required to do so in the future. EPA first designated wet weather CSO/SSO cases a national enforcement priority in 1998 and

Dr. Bell opines that a special master is necessary in this case because the Decrees are complex, and that it is his "experience that regulatory agencies do not have sufficient resources to carry out [the] detailed level of review" that would be needed in this case. Third Declaration of Bruce Bell ¶¶ 37, 39 (attached to SC Op.). Dr. Bell, however, provides <u>not a single example</u> to support this bald assertion. The United States has entered into many SSO and/or CSO consent decrees, and is currently litigating numerous others.[4] In general, these consent decrees follow

---

has consistently renewed these cases as an enforcement priority.
*See* U.S. EPA, "FY 1998/1999 OECA Memorandum of Agreement Guidance" at p. 9 (June 5, 1997), **http://www.epa.gov/Compliance/resources/policies/planning/9899moa.pdf**;
U.S. EPA, "FY 2000/2001 OECA Memorandum of Agreement Guidance" at pp. 5-6 (Apr. 14, 1999), **http://www.epa.gov/Compliance/resources/policies/planning/y2kmoa.pdf**;
U.S. EPA, "FY 2002/2003 OECA Memorandum of Agreement Guidance" at p. 5 (June 1, 2001), **http://www.epa.gov/Compliance/resources/policies/planning/2002moa.pdf**.
As noted, the Agency recently affirmed wet weather (including CSO/SSO cases) preliminarily as one of EPA's enforcement priorities for Fiscal Years 2005-2007. 68 Fed. Reg. 68,893, 68,894 (Dec. 10, 2003).

---

[4] The United States entered into SSO judicial consent decrees with the following communities, among others: South Haven, CT; Puerto Rico; Galax, VA; Waterbury, CT; Winchendon, MA; Borough of Indiana, PA; New Albany, IN; Baton Rouge, LA; Mobile, AL; Greenwich, CT; Harris County, TX; Maui, HI; New Orleans, LA: San Diego, CA; Jefferson County, AL; Akron, OH; Honolulu, HI; Miami/Dade County, FL; and Lebanon, MO. The United States has entered into the following CSO judicial consent decrees, among others: Rock Island, IL; Anderson, IL; Youngstown, OH; Port Clinton, OH; Hammond, IN; Gloucester, MA; Bangor, ME; Lowell, MA; Boston, MA; New Bedford, MA; Lynn, MA; and WASA (Washington, D.C., addressing primarily Nine Minimum Control issues). The United States has also entered into one or more decrees for both SSO and CSO injunctive relief with Toledo, OH; Baltimore, MD; and Atlanta, GA. The United States is currently negotiating and/or litigating CSO/SSO matters with: WASA (Washington, D.C.); WSSC (suburban Maryland); ALCOSAN (Pittsburgh and suburbs); Chicago, IL; Indianapolis, IN; Louisville, KY; Branford, CT; Baltimore County, MD; Ft. Wayne, IN; Newburgh, IN; Cambridge, OH; Clyde, OH; Licking County, OH; New Iberia, LA; Okmulgee, OK; and Los Angeles, CA.

the same phased "study, design, and fix" approach as the Decrees here, require defendants to develop remedial measures under plans subject to the regulators approval, and are similarly complex.  See, e.g., Second Declaration of Mark Klingenstein ("Klingenstein Dec. II") ¶ 2, attached as Ex. 1 to US Memo.  Yet, in none of these matters has a special master been assigned to "coordinate enforcement" or otherwise oversee implementation of the decrees.  Sierra Club's Motion for Court Appointed Special Master, p.2.  It is DOJ and EPA's approach in these and other environmental decrees to assign or hire sufficient qualified people to oversee its consent decrees, see Klingenstein Dec. II ¶ , and the United States intends to do the same here.  If funding for EPA or DOJ ever does terminate such that the United States is unable to oversee the Decrees, or if for some reason in the future the regulators need assistance to secure defendants' compliance with the Decrees, this issue can be revisited at that time.[5/]

**B.     A Special Master Would Impermissibly Intrude on Regulatory Functions.**

Finally, as has been discussed, plaintiffs would not object to assistance in the form of an ombudsman who could assist with oversight of the WIB Programs.  However, the types of duties Sierra Club envisions for a special master for the Clean Water Act compliance programs, threaten to encroach on regulatory functions that have been delegated by Congress to by the United States, State, and to a certain extent, ORSANCO.  In Cobell v. Norton, 334 F.3d 1128,

---

[5/] The United States itself has occasionally requested appointment of an independent court monitor in cases involving defendants' who have repeatedly failed to comply with their consent decrees.  See, e.g., U.S. v. City of Detroit, 476 F. Supp. 512, 517 (E.D. Mich. 1979) (after more than a year of non-compliance by defendant with consent decree in sewer system case, EPA requested (and court appointed) monitor to evaluate sanctions for defendant's failure to comply).  Moreover, after appointing Professor Jonathan W. Bulkley of the University of Michigan as an independent monitor, the court appointed Coleman A. Young, Mayor of Detroit, as "Administrator" of the Detroit sewer system to assist with the oversight of defendant's compliance).  Id. at 520.

1141 (D.C. Cir. 2003), the Court of Appeals for the D.C. Circuit recently held that a district court does not have the inherent power to appoint a monitor over the United States' substantial objection, where the United States had objected that the appointment violated the separation of powers. In Cobell case, DOJ and Department of Interior ("DOI") originally consented to the appointment of a special master to "monitor and review" various DOI activities related to compliance with a decree for reform of Indian trust obligations. After a year, the parties were to reassess the role of the monitor, and the United States objected that the monitor "intruded unduly into the function of the Executive Branch." 334 F.2d at 1142. The court did not decide the United States' objection regarding separation of powers on the merits, but held that it was a colorable objection and sufficient to vacate the district court's decision to appoint a monitor. The court said, "when the parties consent to such an arrangement, we have no occasion to inject ourselves into their affairs. When a party has for a nonfrivolous reason denied its consent, however the district court must confine itself and its agents to its accustomed judicial role." Id. at 1142. The court further stated that the powers of the monitor created a "license to intrude into the internal affairs of the Department [of Interior], which simply is not permissible under our adversarial system of justice and our constitutional system of separated powers." Id. at 1143. Use of a special master in this case to oversee the regulators would similarly raise separation of powers concerns.[6]

---

[6] It should also be noted that long-standing Department of Justice policy counsels against special masters in cases involving the United States, except in narrow circumstances not present here, because of constitutional concerns. In addition, Congress has not enacted legislation generally waiving the United States' sovereign immunity with respect to paying the costs for a special master, which could be substantial in this case. See Edwin Meese III, Department Policy Regarding Special Masters, attached hereto.

**CONCLUSION**

For the reasons described above and in the United States Memorandum in Support of Motion for Entry of Consent Decrees at 37-43, Sierra Club's Motion for Court-Appointed Special Master should be denied.

        Respectfully submitted,
        THOMAS L. SANSONETTI
        Assistant Attorney General
        Environment and Natural Resources Division
        United States Department of Justice
        Washington, D.C.  20530


        __S/LESLIE ALLEN__
        LESLIE ALLEN
        Senior Attorney
        Environmental Enforcement Section
        Environment and Natural Resources Division
        United States Department of Justice
        P.O. Box 7611
        Washington, D.C.  20044-7611
        (202) 514-4114

        GREGORY G. LOCKHART
        United States Attorney
        for the Southern District of Ohio


By:    __S/DONETTA D. WIETHE (P/T/A/ L.A.)__
        DONETTA D. WIETHE (0028212)
        Assistant United States Attorney
        221 East Fourth Street
        Atrium II, Suite 400
        Cincinnati, Ohio  45202
        (513) 684-3711

OF COUNSEL:

Gary Prichard
Associate Regional Counsel
U.S. EPA, Region 5 (C-14J)
77 West Jackson Blvd.
Chicago, IL 60604-3590

Andrew Stewart
Attorney-Advisor
U.S. EPA, Office of Enforcement and
 Compliance Assurance
Ariel Rios Building (2243A)
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

              FOR STATE OF OHIO:
              JIM PETRO
              Attorney General


      By:    S/Margaret A. Malone    (p/t/a LA)
              MARGARET A. MALONE (0021770)
              Assistant Attorney General
              Environmental Enforcement Section
              30 East Broad Street
              25th Floor
              Columbus, Ohio 43215-3400
              (614) 466-2766



              FOR OHIO RIVER VALLEY WATER
              SANITATION COMMISSION:



              S/J. Steven Justice (p/t/a LA)
              J. STEVEN JUSTICE
              Taft, Stettinius & Hollister LLP
              110 N. Main St., Ste. 900
              Dayton, OH 45402
              (937) 228-2838

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, United States' Opposition to Motion for Court-Appointed Special Master Reply Memorandum in Support of United States' Motion for Entry of Consent Decrees, and its associated attachments, was served on the 14th day of May, 2004, electronically on:

Donneta D. Wiethe; Gary Prichard; Margaret A. Malone; J. Steven Justice; Christopher J. Buckley; Peter P. Murphy (for himself and Michael K. Murphy); Kevin M. St. John; Nee Fong Chin; Terrance A. Nestor (for himself and the Cincinnati City Solicitor); Albert J. Slap; D. David Altman (for himself and Amy Jo Leonard); and Lance D. Himes.

  S/Leslie Allen
LESLIE ALLEN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice