THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., | CASE NO. C-1-02-107 |
| Plaintiffs, | |
| and | |
| SIERRA CLUB, ET AL., | **Judge S. Arthur Spiegel** |
| Intervenors, | |
| v. | |
| BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO, ET AL. | |
| Defendants. | |

### PLAINTIFF INTERVENOR SIERRA CLUB'S REPLY IN SUPPORT OF ITS MOTION FOR COURT-APPOINTED SPECIAL MASTER

The Intervenors Sierra Club and Marilyn Wall ("Sierra Club") hereby reply to the United States' and State of Ohio's (the "Agencies") Opposition ("Opposition) (Doc. No.125) to Intervenor Sierra Club's Motion for Court-Appointed Special Master. ("Motion") (Doc. No. 120).

The record in this case, including the admissions of the MSD and the declarations of Sierra Club's experts, clearly demonstrates the financial and engineering complexities and the entrenched, historic management practices that will present obstacles to sewer overflow remediation and reform. The Agencies are not opposed to appointment of an

"Ombudsman" who could assist with oversight of the SIB/WIB program. Opposition at 6. Sierra Club appreciates that the Agencies have recognized that something more is necessary in this area. To be clear, Sierra Club urges the Court to appoint a Special Master/ombudsman[1] with authority over not only the sewage-in-basement program, but over all imminent and substantial endangerments to the public health and the environment that may arise in the course of the Court's continuing jurisdiction.

A.     **Appointment of a Special Master is Not Premature**

Notwithstanding their recognition of the need for an ombudsman, the Agencies argue that the appointment of a special master is premature. It is not. The purpose of a special master is *not* to assist a party to litigation in carrying out the terms of a consent decree. Special masters are appointed to assist *courts* in fulfilling their duty to assure that orders and consent decrees entered by the court are fully executed and enforced. In the event that the Court approves the Decrees, its oversight role begins immediately. The Agencies argue that the Court should rely solely on the Agencies' determinations of the effectiveness of their own enforcement rather than those of an independent, disinterested third party. However, without even considering the diligent prosecution issues, there is ample *recent* evidence (such as the MSD's use of "unconscionable" claims releases) that it is Sierra Club's challenges and the Court's interest in the issues that prevented the use of such devices by MSD. It is not efficient or possible for the either Sierra Club or the Agencies to "police" all aspects of such a major public remediation program. In order for

---

[1] Under Federal Rule 53, the authority of a special master can be narrow or broad, as dictated by the Court. The Motion refers to the person or office as a "special master" because the court has clear authority to appoint a special master and the word "ombudsman" does not appear, to Sierra Club's knowledge, in the rules of civil procedure. An ombudsman who reports to the court should probably be designated a special master, but it is the substance, not the title, which Sierra Club cares about.

2

the Court to be secure that the Decrees are being implemented consistently with the Court's understanding, appointment of a special master/ombudsman is warranted now. Cf. *Cobell v. Norton*, 334 F.3d 1128 (D.C. Circuit 2003) (recognizing that federal district courts appoint special masters pursuant to Rule 53 to supervise implementation of court orders, especially remedial orders requiring major structural reform of a state institution). The imminent and substantial endangerment issues, especially, cannot wait.

Contrary to the Agencies' argument, neither *Carey* nor *Cronin*, cited in the Motion, stand for the proposition that appointment of a special master at the time a consent decree is entered is premature and unnecessary. Neither case precludes the appointment of a special master until after a consent decree is entered. Rather, these cases highlight that 1) courts have the authority to appoint a special master at the remedy stage; and 2) violations of consent decrees can, and do, occur without oversight by an independent party. The SIB victims and others exposed to imminent and substantial endangerments (such as homeowners with SSOs or sewage releases in their yards, MSD sewage releases in parks and playgrounds) need the additional help that only a Special Master can provide.

Further, the facts of this case undermine the Agencies' incorrect argument that, under the Motion's reasoning, "a special master should be appointed out of an abundance of caution every time a consent decree is entered in a case brought by the government in case funding ever diminishes." Opposition at 4. In fact, this is not what the Motion argues at all. Instead, the Motion argues that a special master should be appointed in cases such as this, where public health is directly at stake, has been for years, and the Decrees embody a highly complex (engineering and financial) remedial program with

multiple and overlapping re-opener provisions. The aphorism "justice delayed is justice denied" is certainly applicable to the thousands of sewage in basement victims in Hamilton County.

**B. As "Eyes and Ears of the Court," a Special Master Would Not Intrude on Regulatory Functions.**

A second theme of the Opposition is the Agencies' concern that appointing a special master in this case "impermissibly usurps" agency functions, "intrudes on regulatory functions," and raises "separation of powers" issues. Opposition at 7.

In fact, appointing a special master would not impermissibly encroach on the Agencies' authority or responsibilities under the Consent Decrees. As argued in the Motion, Sierra Club does not seek a special master to perform the Agencies functions for them. Rather, a special master would merely act as the "eyes and ears" of the court by overseeing the status of compliance and reporting to the Court. See *New York State Association for Retarded Children, Inc. v. Carey*, 551 F.Supp. 1165 (E.D. NY 1982). To that extent, a special master actually stems from the separation of powers ideal by allowing a court to fulfill its *judicial* obligations.

Even the one case relied on by the Agencies undermines their "separation of powers" argument. The Agencies rely on the court's statement in *Cobell v. Norton*, 334 F.3d 1128 (D.C. Circuit 2003) that "when the parties consent to *such an arrangement*, we have no occasion to inject ourselves into their affairs. When a party has for a non-frivolous reason denied its consent, however, the district court must confine itself and its agents to its accustomed judicial role." *Id.* at 1142 (emphasis added). The Agencies' argument implies that the court was referring to the appointment of a special master, in general. In fact, the court's statement was made with respect to particular aspects of the

4

special master's role in *that* particular case. In *Cobell*, the special master's role far exceeded any role suggested in the Motion.

In *Cobell*, a monitor (who was later upgraded to special master) was vested with "wide-ranging extrajudicial duties" over the government's objection. *Id.* The court noted that his "portfolio was truly extraordinary; instead of resolving disputes brought to him by the parties, he became something like a party himself. The Monitor was charged with an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial legal system." *Id.* This is the context of the court's statement cited by the Agencies – the "arrangement" referred to by the court. Thus, the holding in *Cobell* is strictly limited to the "truly extraordinary" case in which a special master is vested with authority well beyond the traditional, much more limited role as the "eyes and ears" of the court. *Cobell* simply does not stand for the blanket proposition that the ordinary powers of a special master create a "license to intrude" into governmental affairs. Opposition at 7.

Further, the Agencies' reliance on the purportedly long-standing[2] Department of Justice ("DOJ") policy against the use of special masters in cases involving the United States is similarly unpersuasive. In defining what it believes to be the "appropriate role for special masters," the DOJ policy explicitly states that "[m]asters can also play a role in the remedial stage of a proceeding, where there is a need for monitoring of a judicial order clear enough to require no adjudicative decisions by the master." Meese Memorandum, at 2. This is precisely the type of situation before this Court. Sierra Club has never requested that a special master be given authority to make adjudicative

---

[2] The Edwin Meese III memorandum attached to the Opposition is not dated.

5

decisions. Thus, the Motion withstands even the DOJ's policy regarding special masters.[3]

Void of any authority supporting its argument that a special master should not be appointed to oversee compliance with the Consent Decrees, the Opposition fails. Sierra Club's Motion to Appoint a Special Master should be granted.

## II. CONCLUSION

For the reasons set forth above, Sierra Club's Motion to Appoint a Special Master should be granted.

Respectfully submitted,

/s/ D. David Altman_____

D. David Altman, Esq.
(#0021457)
D. David Altman Co., L.P.A.
15 East 8th St., Suite 200W
Cincinnati, OH 45202
(513-721-2180)

/s/ Albert J. Slap_____
Albert J. Slap, Esq. (#0074579)
Law Office of Albert J. Slap
20 Erie Ave.
Glendale, OH 45246
(513-771-7800)

---

[3] Further, it is ironic that the Agencies' raising "separation of powers" concerns are citing to an **executive branch** policy outlining when the **judicial branch** should use its authority to appoint a special master.

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 27, 2004, a copy of the forgoing Plaintiff Intervenor Sierra Club's Reply in Support of its Motion for Court-Appointed Special Master was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        /s/ D. David Altman
        D. David Altman (0021457)
        D. DAVID ALTMAN CO., L.P.A.
        15 East 8th Street, Suite 200W
        Cincinnati, OH 45202
        E-mail: daltman@one.net