IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>      v.<br><br>THE BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO and THE CITY OF CINCINNATI,<br>           Defendants. | Civil Action No.<br>C-1-02-107<br>(Consol. with C-1-02-108<br> and C-1-02-135) |
| STATE OF OHIO,<br><br>           Plaintiff,<br><br>      v.<br><br>THE BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO and THE CITY OF CINCINNATI,<br>           Defendants. | |

**INTERIM PARTIAL CONSENT DECREE ON SANITARY SEWER OVERFLOWS**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>      v.<br><br>THE BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO and THE CITY OF CINCINNATI,<br>        Defendants. | Civil Action No.<br>C-1-02-107<br>(Consol. with C-1-02-108<br> and C-1-02-135) |
| STATE OF OHIO,<br><br>        Plaintiff,<br><br>      v.<br><br>THE BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO and THE CITY OF CINCINNATI,<br>        Defendants. | |

**INTERIM PARTIAL CONSENT DECREE ON SANITARY SEWER OVERFLOWS**

**TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE . . . . . . . . . . . .  - 6 -

II.     PARTIES . . . . . . . . . . . . . . . . . . .  - 7 -

III.    BINDING EFFECT . . . . . . . . . . . . . . .  - 8 -

IV.     OBJECTIVES . . . . . . . . . . . . . . . . .  - 10 -

V.      DEFINITIONS . . . . . . . . . . . . . . . . .  - 10 -

VI.     CAPITAL IMPROVEMENT PROJECTS AND SSO 700 . . .  - 11 -
        A.   Capital Improvement Projects . . . . . . .  - 15 -
        B.   SSO 700 Interim Measures . . . . . . . . .  - 16 -
        C.   Permanent Remedial Measures for SSO 700 . .  - 20 -
        D.   Evaluation and Correction Period . . . . .  - 23 -
        E.   Modification of the Tunnel
             Notice or Remedial Plan . . . . . . . . . .  - 25 -

VII.    COMPREHENSIVE SSO REMEDIATION PROGRAM . . . . .  - 26 -
        A.   Introduction . . . . . . . . . . . . . . .  - 26 -
        B.   Sanitary Sewer System Hydraulic Model . . .  - 27 -
        C.   Capacity Assessment Plan . . . . . . . . .  - 28 -
        D.   Capacity Assessment Report . . . . . . . .  - 31 -
        E.   Capacity Assurance Program Plan . . . . . .  - 32 -
        F.   SSO Monitoring And Reporting Plan . . . . .  - 35 -
        G.   Sewer Overflow Response Plan . . . . . . .  - 35 -
        H.   Operation and Maintenance Program . . . . .  - 35 -
        I.   Industrial Waste SSO/CSO Discharge
             Management and Minimization Plan . . . . .  - 36 -
        J.   Pump/Lift Station Operation and
             Maintenance Procedures . . . . . . . . . .  - 36 -

- i -

VIII.     SHORT-TERM ADEQUATE CAPACITY  . . . . . . . . . . - 36 -

IX.       REPORTING REQUIREMENTS AND SUBMISSIONS
          TO ORSANCO  . . . . . . . . . . . . . . - 38 -

X.        DOCUMENT RETENTION/CERTIFICATION OF SUBMISSIONS   - 40 -

XI.       STIPULATED PENALTIES  . . . . . . . . . . . . - 41 -

XII.      FORCE MAJEURE BETWEEN DEFENDANTS
          AND THE UNITED STATES   . . . . . . . . . . . - 50 -

XIII.     POTENTIAL FORCE MAJEURE BETWEEN
          DEFENDANTS AND THE STATE  . . . . . . . . . . - 52 -

XIV.      DISPUTE RESOLUTION  . . . . . . . . . . . . . - 54 -

XV.       RIGHT OF ENTRY  . . . . . . . . . . . . . . . - 57 -

XVI.      NOT A PERMIT/COMPLIANCE WITH
          OTHER STATUTES/REGULATIONS  . . . . . . . . . - 58 -

XVII.     FAILURE OF COMPLIANCE . . . . . . . . . . . . - 59 -

XVIII.    EFFECT OF CONSENT DECREE AND
          NON-WAIVER PROVISIONS . . . . . . . . . . . . - 60 -

XIX.      COSTS OF SUIT . . . . . . . . . . . . . . . . - 64 -

XX.       NOTICES . . . . . . . . . . . . . . . . . . . - 64 -

XXI.      MODIFICATION  . . . . . . . . . . . . . . . . - 65 -

XXII.     REVIEW OF SUBMITTALS  . . . . . . . . . . . . - 67 -

XXIII.    CONTINUING JURISDICTION . . . . . . . . . . . - 68 -

XXIV.     CONTINGENT LIABILITY OF STATE OF OHIO . . . . . - 68 -

XXV.      TERMINATION . . . . . . . . . . . . . . . . . - 69 -

XXVI.     PUBLIC COMMENT  . . . . . . . . . . . . . . . - 70 -

XXVII.    SIGNATORIES/SERVICE   . . . . . . . . . . . . - 70 -

- ii -

EXHIBIT 1:   NON-MSD SEWER SYSTEM

EXHIBIT 2:   ADDITIONAL WASTEWATER TREATMENT PLANTS

EXHIBIT 3:   CAPITAL IMPROVEMENT PROJECTS

EXHIBIT 4:   METROPOLITAN SEWER DISTRICT OF GREATER
             CINCINNATI MODEL AND DATA COLLECTION WORK
             PLAN AND ADDENDUM

EXHIBIT 5:   SSO MONITORING AND REPORTING PLAN

EXHIBIT 6:   SEWER OVERFLOW RESPONSE PLAN

EXHIBIT 7:   OPERATION AND MAINTENANCE PROGRAM

EXHIBIT 8:   INDUSTRIAL WASTE SSO/CSO DISCHARGE MANAGEMENT
             AND MINIMIZATION PLAN

EXHIBIT 9:   PUMP/LIFT STATION OPERATION AND MAINTENANCE
             PROCEDURES

EXHIBIT 10: SHORT TERM ADEQUATE CAPACITY PROGRAM PLAN

WHEREAS, plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("U.S. EPA"), filed a Complaint herein concurrently with lodging of this Interim Partial Consent Decree on Sanitary Sewer Overflows ("Consent Decree" or "Decree"), alleging that Defendants Board of County Commissioners of Hamilton County, Ohio (the "County") and the City of Cincinnati (the "City") (collectively, "Defendants"), acting through the Metropolitan Sewer District of Greater Cincinnati ("MSD"), have Sanitary Sewer Overflows ("SSOs") in the MSD Sanitary Sewer System which have violated and continue to violate Section 301 of the Federal Water Pollution Control Act (the "Clean Water Act" or the "Act"), 33 U.S.C. § 1311;

WHEREAS, Plaintiff State of Ohio, on behalf of the Ohio EPA, filed a separate Complaint (Civ. No. C-1-02-108) against Defendants concurrently with the lodging of this Consent Decree concerning the SSOs, alleging violations of the Act, 33 U.S.C. § 1251 et seq., and Chapter 6111 of the Ohio Revised Code ("O.R.C"), and all Parties agree that the Complaints filed by the United States and the State of Ohio should be consolidated and the Court did in fact consolidate them under Civil Action No. C-1-02-107;

WHEREAS, the Complaints allege that Defendants have discharged pollutants from their Sanitary Sewer System, which discharges were not authorized under Section 301(a) of the Act,

- 1 -

33 U.S.C. § 1311(a), and the Complaints seek injunctive relief for these SSOs, but not civil penalties at this time;

WHEREAS, Plaintiffs maintain that various other wet weather issues, including Combined Sewer Overflows (CSOs) from Defendants' Combined Sewer System and capacity-related issues at certain of Defendants' Wastewater Treatments Plants ("WWTPs"), have led to additional violations of the Act beyond those alleged in the Complaints, but Plaintiffs' claims for these violations are not addressed by this Consent Decree, because they will be resolved through later negotiations designed to find a global solution to these issues, and/or by other future enforcement efforts;

WHEREAS, in response to orders issued by Ohio EPA, Defendants have already taken some measures to address SSOs through a program established in 1992 designed to identify SSOs and remedy them through an infiltration/inflow reduction program, and rehabilitation and construction of new sewers, which have resulted in the elimination of a number of SSOs;

WHEREAS, MSD asserts that it is in compliance with the 1992 State of Ohio Director's Final Findings and Orders ("DFFO") regarding SSOs;

WHEREAS, MSD has engaged in environmental research both through studies and pilot-scale operations conducted by its own staff and funding of cooperative research performed by the University of Cincinnati, the Water Environment Research

Foundation, the Ohio River Valley Water Sanitation Commission ("ORSANCO"), U.S. EPA and other organizations;

WHEREAS, ORSANCO, which is participating in an advisory and consultative capacity in this Consent Decree, was created by an interstate compact, the Ohio River Valley Water Sanitation Compact, June 30, 1948 ("Compact"), to promote, establish and enforce water quality standards for the Ohio River Basin and to educate the public regarding those standards;

WHEREAS, MSD has been an active participant in the national discussion of SSO policy through the Association of Metropolitan Sewerage Agencies and the Water Environment Federation;

WHEREAS, the Parties are entering into this Partial Consent Decree because they recognize the need for the Defendants: 1) to continue work they have already begun to address certain SSOs by implementing certain capital improvement projects, which Defendants had already planned; 2) to implement interim and permanent remedial measures at SSO 700; and 3) to evaluate their Sewer System in order to allow them to develop and propose a comprehensive SSO elimination program;

WHEREAS, the Parties nevertheless recognize that wet weather issues in and remedial measures for the Sanitary Sewer System are directly related to wet weather issues in and remedial measures for other parts of MSD's collection system.  This is especially true with respect to CSOs from Defendants' Combined Sewer System and capacity-related issues at certain of Defendants' WWTPs;

WHEREAS, MSD asserts that it has undertaken a program to address CSOs by implementation of the Nine Minimum Controls and preparation and submission to U.S. EPA and Ohio EPA of a Long Term Control Plan, which efforts will be the subject of future discussions with the Plaintiffs;

WHEREAS, the confluence of these and other factors requires an integrated and costly response that addresses SSOs, CSOs and WWTP issues;

WHEREAS, Defendants are in the process of analyzing and considering global solutions for these wet weather issues and other Sewer System challenges, including possible construction of a deep storage tunnel beneath Mill Creek that will be approximately 16 miles in length and in excess of thirty feet in diameter ("the Mill Creek Deep Tunnel");

WHEREAS, the Parties recognize the need expeditiously to commence discussions concerning global solutions to address the remaining Sewer System issues; and further recognize that because the schedule for implementing the SSO remedial measures that are to be proposed under the Capacity Assurance Program Plan required by this Decree is related to certain other Sewer System solutions, this Decree neither requires implementation of, nor provides a final construction completion date for, the SSO remedial measures that will be proposed under the Capacity Assurance Program Plan pursuant to this Decree;

WHEREAS, the Parties intend expeditiously to commence negotiations concerning: provisions for implementation of the

Capacity Assurance Program Plan's SSO remedial measures, including a completion date for such measures; solutions for other alleged violations of the Act (including, among other things, CSOs and certain WWTPs); and for a civil penalty to address both the unauthorized discharges from the Sanitary Sewer System (some of the injunctive relief for which is incorporated in this Partial Consent Decree) and the other alleged violations;

WHEREAS, the Parties recognize that if they are unable to timely negotiate a resolution of these issues, future litigation may be necessary;

WHEREAS, the Parties explicitly recognize that this Partial Consent Decree does not resolve any claims the Plaintiffs may have for penalties for the SSO violations alleged in the Complaints; that this Partial Consent Decree does not fully resolve Plaintiffs' claims for injunctive relief arising from the SSO violations alleged in the Complaints because it does not require implementation of the remedial measures to be proposed under the Capacity Assurance Program Plan; that this Partial Consent Decree does not resolve any claims Plaintiffs may have for penalties or injunctive relief for violations that have not yet been alleged in any complaint; and that the Parties reserve all claims and defenses that they may have concerning all these matters;

WHEREAS, as required by 28 C.F.R. § 50.7, the United States published notice of the Consent Decree in the Federal Register;

a public notice and comment period was held concerning the
Decree; and certain comments were received;

WHEREAS, after this public comment period, the Parties
recognized that certain minor modifications to the Decree were
warranted; and these amendments were negotiated by, and agreed to
by, all Parties and are now incorporated in this Consent Decree;

WHEREAS, the Parties agree and the Court, by entering this
Decree, finds that settlement of this matter without further
litigation is in the public interest and that entry of this
Consent Decree is the most appropriate means of resolving the
matter;

NOW, THEREFORE, upon consent of the Parties hereto, before
the taking of testimony, without any adjudication of issues of
fact or law, and without admission by the Defendants of the non-
jurisdictional allegations in the Complaint, it is hereby
ORDERED, ADJUDGED AND DECREED as follows:

I.    **JURISDICTION AND VENUE**

A.    This Court has jurisdiction over the subject matter of
this action and over the Parties, pursuant to Section 309(b) of
the Act, 33 U.S.C. § 1331, and 28 U.S.C. §§ 1331, 1345, and 1355.
This Court has supplemental jurisdiction over the claims asserted
by the State of Ohio pursuant to 28 U.S.C. § 1367.  The United
States' Complaint states a claim upon which relief can be granted
pursuant to Section 309 of the Act, 33 U.S.C. § 1319.  The
State's Complaint states claims upon which relief can be granted
pursuant to O.R.C. §§ 6111.07 and 6111.09.  The Defendants agree

not to contest the jurisdiction of the Court to enter and enforce
this Decree.

   B.    Venue is properly in this District pursuant to Section
309(b) of the Act, 33 U.S.C. § 1319(b), and under 28 U.S.C.
§§ 1391 and 1395.

## II.  **PARTIES**

   A.    Plaintiff, United States of America, is acting at the
request and on behalf of the Administrator of the United States
Environmental Protection Agency.

   B.    Plaintiff, State of Ohio, is acting at the written
request of the Director of the Environmental Protection Agency of
the State of Ohio.

   C.    Defendant Board of Commissioners of Hamilton County
("the County") is the duly authorized governing body of Hamilton
County, Ohio, pursuant to the laws of the State of Ohio.  The
County is the holder of various NPDES permits that govern
discharges from the County's Wastewater Treatment Plants and
Sewer System.  As such, it is responsible for operating the
County's Wastewater Treatment Plants and Sewer System.  The
County has established the MSD, a county sewer district
established pursuant to Chapter 6117 of the Ohio Revised Code,
and acts as the principal of MSD, including maintenance of
funding authority for MSD.  Prior court decisions in Ohio hold
that MSD cannot be sued in its own name, and thus, MSD is not
made a Party to this action.

D.    Defendant City of Cincinnati ("the City") is a chartered municipal corporation, organized and existing under the laws of the State of Ohio.  Pursuant to an agreement with the County, and subject to the pertinent provisions of the Ohio Revised Code, the City also serves as the agent for the County in the management and operation of MSD.  It is in this capacity that the City is named as Defendant.

## III.  **BINDING EFFECT**

A.    The provisions of this Consent Decree shall apply to, and be binding upon the Defendants and their officers, directors, employees, agents, servants, successors and assigns, and upon all persons, firms and corporations in active concert or participation with the Defendants or the Defendants' officers, directors, employees, agents, servants, successors or assigns, and upon the United States, and the State of Ohio.

B.    Effective from the Date of Lodging of this Consent Decree until its termination, any sale or transfer of either Defendant's interests in or operating role with respect to the Sewer System or WWTPs shall not in any manner relieve either Defendant of its responsibilities for meeting the terms and conditions of this Consent Decree, except as provided in Paragraph C.

C.    If either Defendant seeks to name a successor in interest to assume any or all of its interests in, or operating role with respect to, the Sewer System or WWTPs, such Defendant

may request modification of this Consent Decree from U.S.
EPA/Ohio EPA to amend this Consent Decree in accordance with the
role to be assumed by the proposed successor in interest.  Upon
such Defendant's request, the Parties shall discuss the matter.
If the Parties agree on a proposed modification to the Consent
Decree, they shall prepare a joint motion to the Court requesting
such modification and seeking leave to join the proposed
successor in interest.  If the Parties do not agree, and the
Defendant still believes modification of this Decree and joinder
of a successor in interest is appropriate, it may file a motion
seeking such modification in accordance with Federal Rule of
Civil Procedure 60(b); provided, however, that nothing in this
Paragraph is intended to waive the Plaintiffs' right to oppose
such motion and to argue that such modification is unwarranted.

D.    If this Consent Decree is modified to allow a successor
in interest to assume any or all of the obligations hereunder,
Defendants shall give written notice of and provide a copy of
this Consent Decree to any such successor in interest prior to
transfer of ownership or operation of any portion of their WWTPs
or Sewer System.

E.    Defendants shall notify U.S. EPA and Ohio EPA in
writing, as specified in Section XX, of any successor in interest
at least twenty-one (21) days prior to any such transfer.

F.    Defendants shall advise each engineering, consulting
and contracting firm to be retained to perform any activities
described in this Decree of the existence of this Decree and

- 9 -

shall make copies of this decree available to such firms upon
execution of any contract relating to such work.  Defendants
shall also advise each engineering, consulting and contracting
firm, already retained for such purpose, of the existence of this
Decree and shall make copies of this Decree available to such
firms no later than thirty (30) days after the Date of Lodging of
this Consent Decree.

IV.  **OBJECTIVES**

It is the express purpose of the Parties entering into this
Partial Consent Decree to further the objectives set forth in
Section 101 of the Act, 33 U.S.C. § 1251, and to partially
resolve the claims of the Plaintiffs for injunctive relief for
unpermitted discharges from the Defendants' Sanitary Sewer
System, as alleged in Plaintiffs' Complaints.  In light of these
objectives, Defendants agree, _inter_ _alia_:  to use sound
engineering practices, consistent with industry standards, to
perform investigations, evaluations and analyses and to design
and construct any remedial measures required by this Decree; to
use sound management, operational, and maintenance practices,
consistent with industry standards, to implement all the
requirements of this Consent Decree; and to achieve expeditious
implementation of the provisions of this Decree with the goal of
eliminating all Sanitary Sewer Overflows.

## V.   DEFINITIONS

A.    Unless otherwise defined herein, terms used in this Consent Decree shall have the meaning given to those terms in the Clean Water Act, 33 U.S.C. §§ 1251 et seq., and the regulations promulgated thereunder.

B.    The following terms used in this Consent Decree shall be defined as follows:

"Calendar Quarter" shall mean the three-month periods ending on March 31st, June 30th, September 30th, and December 31st.

"City" shall mean the City of Cincinnati, Ohio.

"Combined Sewer System" means the portion of the Defendants' Sewer System designed to convey municipal sewage (domestic, commercial and industrial wastewaters) and stormwater runoff through a single-pipe system to the Defendants' Wastewater Treatment Plants or Combined Sewer Overflows.

"Compact" shall mean the Ohio River Valley Water Sanitation Commission Compact, an interstate compact entered into by signatory states on June 30, 1948, and the Pollution Control Standards promulgated by ORSANCO pursuant to the Compact.

"Consent Decree" shall mean this Consent Decree.

"County" shall mean Hamilton County, Ohio and the Board of County Commissioners of Hamilton County.

"Date of Entry" shall mean the date the Consent Decree is approved and signed by a United States District Court Judge.

"Date of Lodging" shall mean the date the Consent Decree is filed for lodging with the Clerk of the Court for the United

- 11 -

States District Court for the Southern District of Ohio, Western Division.

"Day" or "Days" as used herein shall mean a calendar day or calendar days, unless otherwise indicated.  When the day a report or other deliverable is due under this Consent Decree falls on a Saturday, Sunday, federal holiday or legal holiday for Defendants, Defendants shall have until the next calendar day that is not one of the aforementioned days for submittal of such report or other deliverable.

"Infiltration" shall mean the water entering a sewer system and service connections from the ground, through such means as, but not limited to, pipes, pipe joints, connections, or manhole walls.

"Inflow" shall mean the water discharged into a sewer system, including service connections, from such sources as, but not limited to: roof leaders; cellars, yard and area drains; foundation drains; cooling water discharges; drains from springs and swampy areas; manhole covers; cross connections from storm sewers; surface run-off; street wash waters; or drainage.

"I/I" shall mean the total quantity of water from both infiltration and inflow without distinguishing the source.

"Mill Creek Deep Tunnel" shall mean a tunnel designed to provide flood control and CSO control in the Mill Creek drainage basin.

"Non-MSD Sewer System" shall mean any wastewater collection and transmission system or piping that is designed to collect and

convey domestic, commercial or industrial sewage and/or stormwater, but that is not owned or controlled by MSD at the time of lodging of this Consent Decree.  The wastewater collection and transmission system and the piping comprising the Non-MSD Sewer System are generally depicted in Exhibit 1 to this Decree.

"Ohio River Basin" shall mean the waters of the Ohio River and its tributaries.

"ORSANCO" shall mean the Ohio River Valley Water Sanitation Commission.

"Paragraph" shall mean a portion of this Consent Decree identified by an uppercase letter.

"Parties" shall mean the United States, the State and/or Defendants.

"Plaintiff" or "Plaintiffs" shall mean the United States and/or the State, as appropriate.

"Sanitary Sewer Discharge" and "SSD" shall mean any discharge to waters of the State or United States from Defendants' Sanitary Sewer System through a point source not specified in any NPDES permit.

"Sanitary Sewer Overflow," "SSO," and "Overflow" shall mean any discharge to waters of the State or United States from Defendants' Sanitary Sewer System through point sources not specified in any NPDES permit, as well as any release of wastewater from Defendants' Sanitary Sewer System to public or private property that does not reach waters of the United States

- 13 -

or the State, such as a release to a land surface or structure that does not reach waters of the United States or the State; provided, however, that wastewater backups into buildings that are caused by blockages, flow conditions, or malfunctions in a building lateral, other piping or conveyance system that is not owned or operationally controlled by Defendants are not SSOs for the purposes of this Consent Decree.

"Sanitary Sewer Overflow 700," or "SSO 700," shall mean the SSO located at State plane coordinates E 1,418,903; N 455,867.

"Sanitary Sewer System" or "SSS" shall mean all portions of the Defendants' Sewer System that are not a part of the Defendants' Combined Sewer System.  SSS does not include any non-MSD Sewer System.

"Section" shall mean a portion of this Consent Decree identified by an uppercase Roman Number.

"Sewage" means municipal sewage, including domestic, commercial and industrial sewage.

"Sewer System" means the wastewater collection and transmission system owned or operated by Defendants designed to collect and convey municipal sewage (domestic, commercial and industrial) to the Defendants' Wastewater Treatment Plants or overflow structures.

"Sub-Basin" means the following portions of the Defendants' Sewer System: West Branch Mill Creek, East Branch Mill Creek, South Branch Mill Creek, Polk Run, Sycamore, California, Dry Run-

Newtown-Clough, Duck Creek, Delta, Muddy Creek, Taylor Creek, Rapid Run, Muddy Creek-Ohio River and Cleves.

"Surcharge" means the condition that exists when the surface of the wastewater in manholes rises above the top of the sewer pipe, or the sewer is under pressure or head, rather than at atmospheric pressure.

"Ten-Year Storm" shall mean a SCS Type II storm with a ten-year return and 24-hour duration.

"U.S. EPA/Ohio EPA" shall mean "U.S. EPA and Ohio EPA" unless Plaintiffs jointly elect (in their unreviewable discretion) to assign a particular task or responsibility to one of them.  To make that election, Plaintiffs shall notify Defendants in writing of the task or responsibility that U.S. EPA or Ohio EPA is assigned.  Collectively, U.S. EPA/Ohio EPA are referred to as "Plaintiffs," and each individually is a "Plaintiff" under this Decree.

"Wastewater Treatment Plant(s)" ("WWTP(s)") shall refer to: 1) the following wastewater treatment plants:  Mill Creek, Little Miami, Muddy Creek, Sycamore, Polk Run, Indian Creek, and Taylor Creek; and 2) the permitted treatment facilities owned or operated by Defendants identified in Exhibit 2 to this Decree.

**VI.  <u>CAPITAL IMPROVEMENT PROJECTS AND SSO 700</u>**

    **A.  Capital Improvement Projects**

        1.  Defendants shall construct Capital Improvement Projects (CIP) consistent with the descriptions set forth in

Exhibit 3 and in accordance with the Construction Complete Dates
for each project set forth in Exhibit 3; provided however, that
Defendants may seek to modify the project descriptions and
schedule set forth in Exhibit 3 to address deficiencies in these
projects identified by the Sanitary Sewer System Hydraulic Model
completed pursuant to Paragraph VII.B of this Consent Decree.
Any such new schedule proposed by Defendants shall be as
expeditious as practicable.  Defendants shall submit any proposed
modifications to the project descriptions and/or schedule set
forth in Exhibit 3 to U.S. EPA/Ohio EPA for review and approval.

2.    U.S. EPA/Ohio EPA may approve the submittal or
decline to approve it and provide written comments.  Within 60
days of receiving U.S. EPA/Ohio EPA's written comments,
Defendants shall either: (i) alter the submittal consistent with
U.S. EPA/Ohio EPA's written comments, and submit the submittal to
U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter
for dispute resolution under Section XIV of this Decree.

3.    Upon receipt of U.S. EPA/Ohio EPA's final approval
of the submittal, or upon completion of the submittal pursuant to
dispute resolution, Defendants shall implement the revised
Capital Improvement Project(s) in accordance with the schedule in
the approved submittal.

**B.    SSO 700 Interim Measures**

1.    No more than eleven months from the lodging of
this Consent Decree, Defendants shall submit an SSO 700 Interim
Remedial Measures (IRM) Plan to build a Chemically Enhanced High

Rate Settling (CEHRS) and Storage Facility, to reduce the amount
of contaminant loading and improve the quality of discharges from
SSO 700 while alternatives for final remedial measures for SSO
700 are being developed, evaluated and implemented.  The CEHRS
and Storage Facility will consist of a storage basin, a
Chemically Enhanced High Rate Settling (CEHRS) treatment system,
and the piping, pumps, controls and equipment necessary to allow
the system to operate as a storage, treatment, and disinfection
facility.  The CEHRS treatment system shall utilize the ballasted
flocculation process (in which chemicals and a fine sand are
added to the wastewater prior to settling, to improve solids
removal rates and treatment system capacity) or another CEHRS
treatment process that will provide an equivalent or better
reduction in discharge volume and pollutant load to the Mill
Creek.  Defendants shall spend a minimum of $10 million and up to
$15 million in total project costs on the CEHRS and Storage
Facility.  Defendants shall utilize their available hydraulic
modeling capabilities to assess whether marginal increases in
system capacity and total project cost above $10 million (up to
$15 million) are justified based on a "knee of the curve"
analysis.  The IRM Plan shall contain the results of such an
evaluation of system cost/performance, and a discussion of
proposed system capacities and capital costs, based on those
cost/performance analyses. The IRM Plan shall also provide a
detailed technical description of the proposed CEHRS and Storage
Facility, including its proposed design performance

- 17 -

characteristics (including expected treatment capacity and
associated "design" storm magnitude, hydraulic loading rates,
ballast and chemical feed rates, expected modes of operation,
etc.); its expected impact on SSO 700 activation frequency,
duration and volume of discharge in a "typical" year; and
associated pollutant loads in a "typical" year (under both
current uncontrolled conditions and following implementation of
the CEHRS and Storage Facility).  The IRM Plan shall also include
a schedule that is as expeditious as practicable, and that
achieves completion of construction by no later than December 31,
2007.  At a minimum, the schedule shall include critical
construction milestones, including, at a minimum, deadlines for
submission of a Permit to Install; commencement of construction,
and completion of construction.

    2.    U.S. EPA/Ohio EPA may approve the IRM Plan or
decline to approve it and provide written comments.  Within 60
days of receiving U.S. EPA/Ohio EPA's written comments,
Defendants shall either: (i) alter the IRM Plan consistent with
U.S. EPA/Ohio EPA's written comments, and submit the IRM Plan to
U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter
for dispute resolution under Section XIV of this Decree.

    3.    Upon receipt of U.S. EPA/Ohio EPA's final approval
of the IRM Plan, or upon completion of the IRM Plan pursuant to
dispute resolution, Defendants shall implement the IRM Plan in
accordance with the schedule in the approved Plan.

4.    Once construction is completed and the CEHRS and Storage Facility is placed in service, Defendants shall operate and maintain the CEHRS and Storage Facility in a manner consistent with the goals of (1) reducing SSO 700 pollutant discharges and, (2) successfully completing the CEHRS and Storage Facility Effectiveness Study, required by subparagraph VI.B.6, in accordance with the approved CEHRS and Storage Facility Effectiveness Study Plan.

5.    Within 60 days of completion of construction of the CEHRS and Storage Facility, Defendants shall provide U.S. EPA and Ohio EPA with documentation regarding the total project cost, and the components of that total cost (e.g., land acquisition, design, equipment acquisition and construction, etc.), of the CEHRS and Storage Facility.

6.    CEHRS and Storage Facility Effectiveness Study.

(a)    Within 30 months of the entry of this Consent Decree, Defendants shall submit to U.S. EPA and Ohio EPA, for approval, a work plan for conducting a two year study ("CEHRS and Storage Facility Effectiveness Study") of the effectiveness of the CEHRS and Storage Facility.  The study shall commence immediately after completion of construction of the CEHRS and Storage Facility and shall include, but not be limited to, an analysis of:  (a) the effectiveness of those facilities at removing fecal coliform and E. coli, suspended solids, carbonaceous biochemical oxygen demand (or biochemical oxygen demand), total Kjeldahl nitrogen (TKN),  ammonia and total

- 19 -

phosphorus; (b) any difficulties encountered in or limitations involved with using those facilities over a range of flow conditions, chemical feed rates and other operational control parameters; and (c) measures that MSD has taken to optimize use of those facilities.  The work plan shall also include a schedule for the study and for production of a report that presents the results of the study.

(b)  U.S. EPA/Ohio EPA may approve the CEHRS and Storage Facility Effectiveness Study Plan or decline to approve it and provide written comments.  Within 60 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the CEHRS and Storage Facility Effectiveness Study Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the CEHRS and Storage Facility Effectiveness Study Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

(c)  Upon receipt of U.S. EPA/Ohio EPA's final approval of the CEHRS and Storage Facility Effectiveness Study Plan, or upon completion of the CEHRS and Storage Facility Effectiveness Study Plan pursuant to dispute resolution, Defendants shall implement the CEHRS and Storage Facility Effectiveness Study Plan in accordance with the schedule in the approved Plan.

C.    **Permanent Remedial Measures for SSO 700**

1.   As soon as sufficient information becomes available on which to base their decision, but no later than

December 31, 2005, Defendants shall submit to U.S. EPA/Ohio EPA a notice concerning the Mill Creek Deep Tunnel ("Tunnel Notice"). The Tunnel Notice shall contain a statement either: (a) that Defendants will pursue construction of the Mill Creek Deep Tunnel; or (b) that Defendants will not pursue construction of the Mill Creek Deep Tunnel.

　　　　2.　　It is the current understanding of the Parties that Defendants intend to pursue construction of the Mill Creek Deep Tunnel with assistance and/or funding from a third party project sponsor, which is not a signatory to this Consent Decree. However, whether or not Defendants actually receive such assistance and/or funding shall have no effect on Defendants' obligations under this Consent Decree, including, but not limited to, the requirement that Defendants complete construction of permanent remedial measures for SSO 700 in the manner and in accordance with the applicable schedule set forth in subparagraph VI.C.3.

　　　　3.　　Defendants shall submit to U.S. EPA/Ohio EPA an SSO 700 Remedial Plan by December 31, 2009. The SSO 700 Remedial Plan shall set out a plan for installation of remedial measures that have the goal of eliminating SSOs from SSO 700. The SSO 700 Remedial Plan shall provide a schedule for design and construction of the proposed remedial measures, which shall include critical construction milestones, including, at a minimum, deadlines for submission of a Permit to Install; commencement of construction, and completion of construction. If

Defendants intend to address SSOs from SSO 700 in whole or in part by the operation of the Mill Creek Tunnel, the schedule shall be as expeditious as practicable and shall achieve construction of the Tunnel and any other proposed remedial measures by December 31, 2016.  If Defendants intend to address SSOs from SSO 700 by means other than the operation of the Mill Creek Tunnel, the schedule shall be as expeditious as practicable and shall achieve construction of the proposed remedial measures by December 31, 2022.  The SSO 700 Remedial Plan shall also include a detailed technical description of the proposed remedial measures, estimated costs (capital, annual operation and maintenance (O&M) and either present value or annualized costs), and information regarding the expected performance of the proposed remedial measures (including the expected performance of the measures during storms of various sizes and the maximum storm that the measures can be expected to capture or otherwise address).  In addition, the Plan shall indicate whether the CEHRS and Storage Facility will remain in operation after construction of the proposed remedial measures, and if so, in what capacity and with what expected performance results.

          4.     U.S. EPA/Ohio EPA may approve the SSO 700 Remedial Plan or decline to approve it and provide written comments. Within 90 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the SSO 700 Remedial Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the SSO 700 Remedial Plan to U.S. EPA/Ohio EPA for final

approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

     5.    Upon receipt of U.S. EPA/Ohio EPA's final approval of the SSO 700 Remedial Plan, or upon completion of the SSO 700 Remedial Plan pursuant to dispute resolution, Defendants shall implement the SSO 700 Remedial Plan in accordance with the schedule in the approved Plan.

**D.    Evaluation and Correction Period.**

     1.    After the completion of the permanent remedial measures for SSO 700, Defendants may evaluate the effectiveness of the rehabilitative work completed.  Defendants may have two years after the completion of construction date for the remedial measures set forth in the SSO 700 Remedial Plan to evaluate system performance.

     2.    If Defendants need additional time to eliminate SSOs from SSO 700 or to correct other problems identified during the evaluation period, they may petition U.S. EPA/Ohio EPA for an extension of the previously applicable deadline for completion of construction of the SSO 700 remedial measures to allow for the implementation of additional remedial measures.  Such petition shall include the reason(s) that the deadline extension is deemed necessary and shall be submitted within thirty (30) days of the end of the two-year evaluation period.  Defendants shall submit a petition as soon as practicable after they identify a problem(s) that they believe warrants correction, and may submit more than one petition if they identify multiple problems.

3.    U.S. EPA/Ohio EPA may approve the petition or decline to approve it and provide written comments, provided however, that U.S. EPA/Ohio EPA's approval shall not be arbitrarily and capriciously denied if the permanent remedial measures have been designed and constructed in accordance with the SSO 700 Remedial Plan approved by U.S. EPA/Ohio EPA pursuant to Paragraph VI.C of this Decree.  Within 45 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the petition consistent with U.S. EPA/Ohio EPA's written comments, and submit the petition to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

4.    Upon receipt of U.S. EPA/Ohio EPA's final approval of the petition, or upon completion of the petition pursuant to dispute resolution, Defendants shall have 90 days to submit a Revised SSO 700 Remedial Plan (including a schedule that is as expeditious as practicable for completion of the additional remedial measures) to U.S. EPA/Ohio EPA for review and approval.

5.    U.S. EPA/Ohio EPA may approve the Revised SSO 700 Remedial Plan or decline to approve it and provide written comments.  Within 90 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the Revised SSO 700 Remedial Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the Revised SSO 700 Remedial Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

6.    Upon receipt of U.S. EPA/Ohio EPA's final approval of the Revised SSO 700 Remedial Plan, or upon completion of the Revised SSO 700 Remedial Plan pursuant to dispute resolution, Defendants shall implement the revised SSO 700 Remedial Plan in accordance with the schedule included in the approved revised Plan.

**E.    Modification of the Tunnel Notice or Remedial Plan**

1.    At any time after submission of the Tunnel Notice, or the SSO 700 Remedial Plan, if Defendants reasonably believe in good faith that the decision reflected in the Tunnel Notice or the SSO 700 Remedial Plan should be significantly modified or that alternative remedial measures that have the goal of eliminating SSOs from SSO 700 should be implemented, Defendants may submit to U.S. EPA and Ohio EPA a Revised Tunnel Notice and/or a Revised SSO 700 Remedial Plan.  The Revised Tunnel Notice and/or the Revised SSO 700 Remedial Plan will set out the nature of the modification to the Tunnel Notice and/or the SSO 700 Remedial Plan and the reasons for such modifications. U.S. EPA/Ohio EPA shall review the submittal and in their sole and unreviewable discretion may approve or disapprove the proposed submittal.  Upon receipt of U.S. EPA/Ohio EPA's approval of the submittal, Defendants shall implement the approved submittal in accordance with its terms.

2.    If U.S. EPA/Ohio EPA do not approve the submittal, and Defendants believe modification of this Decree is appropriate, they may file a motion seeking such modification in

accordance with Federal Rule of Civil Procedure 60(b); provided, however, that nothing in this subparagraph is intended to waive the Plaintiffs' right to oppose such motion and to argue that such modification is unwarranted.

## VII. COMPREHENSIVE SSO REMEDIATION PROGRAM

### A.    Introduction

1.    As further set forth in this Section, Defendants shall undertake a comprehensive program to evaluate and propose rehabilitation measures for their Sanitary Sewer System in order to meet the objectives of this Consent Decree as described in Section IV and as further described in this Section VII.  This program builds upon the Capital Improvement Projects required by Section VI and Exhibit 3 of this Consent Decree, will take place in phases, and includes the following elements:

Data Collection and Modeling

- Sanitary Sewer System Hydraulic Model (and associated monitoring and data collection) (¶VII.B)

Analysis and Assessment

- Capacity Assessment Plan (¶VII.C)
- Capacity Assessment Report (¶VII.D)

Program Development and Implementation

- Capacity Assurance Program Plan Development (¶VII.E)
- SSO Monitoring and Reporting Program (¶VII.F)

- Sewer Overflow Response Program (¶VII.G)

- Operation and Maintenance Program (¶VII.H)

- Industrial Waste SSO/CSO Management and Minimization Program (¶VII.I)

- Pump/Lift Station Operating and Management Procedures (¶VII.J)

- Short Term Adequate Capacity Program Plan (§VIII)

2.    Defendants' plans, programs, and other submittals shall be based on good engineering practices and industry standards and shall be consistent with the following standard references, or revisions thereto, as applicable:

- EPA's Handbook: Sewer System Infrastructure Analysis and Rehabilitation, EPA/625/6-91/030, Oct. 1991;

- Water Environment Federation's Manual of Practice FD-6/ASCE Report No. 62, Existing Sewer Evaluation & Rehabilitation, 1994.

**B.    Sanitary Sewer System Hydraulic Model**

1.    Defendants shall develop and employ, as required by Paragraph VII.C, a hydraulic model of Defendants' Sanitary Sewer System ("the Sanitary Sewer System Model" or "the Model) in accordance with the "Metropolitan Sewer District of Greater Cincinnati Model and Data Collection Work Plan and Addendum (August 2001) (Model Plan) which is attached as Exhibit 4 to this Consent Decree.

2.    The Model Plan describes how Defendants will develop and implement a hydraulic model of their Sewer System. The Model Plan also describes the extensive Sewer System precipitation, groundwater, flow, and other monitoring and data collection that Defendants have performed or will be performing, and how Defendants will use those data in calibrating and validating the Model.

3.    Defendants shall complete calibration and validation of the Model through actual flow measurements by October 31, 2003, unless there have not been adequate precipitation events to allow for the technically sound calibration and validation of the Model.  If there have not been adequate precipitation events, Defendants shall so notify U.S. EPA/Ohio EPA in writing and then shall complete calibration and validation of the Model through actual precipitation and flow measurements as expeditiously as practicable.  Defendants shall immediately notify U.S. EPA/Ohio EPA in writing when validation has been completed.

C.    **Capacity Assessment Plan**

1.    Defendants shall carry out an assessment of the capacities of the following portions of their Sanitary Sewer System:  all pump stations, all gravity sewer lines of 12 inches diameter or greater, force mains and syphons (as specified in the Model Plan), all known overflow points, specified sewers that hydraulically affect all known overflow points, and any other portions of the Sewer System (including portions of the Combined

- 28 -

Sewer System 18 inches or greater, such as interceptors) that
must be assessed so as to allow the technically sound evaluation
of the causes of all known capacity-related SSOs, and the
identification of appropriate measures that have the goal of
eliminating those capacity-related SSOs.  This assessment shall
specifically identify the hydraulic capacities of the
aforementioned portions of the Sewer System, and compare those
capacities to existing and future projected (through year 2025,
or another future date chosen consistent with industry standards)
average and peak, dry and wet weather flows.  This capacity
assessment shall take into account impacts on future collection
system capacities that may result from the completion of the
Capital Improvement Projects required pursuant to Section VI and
Exhibit 3.  This assessment shall identify, within the
aforementioned portions of Defendants' Sewer System, those
portions of the Sewer System that experience and/or are expected
to experience and/or cause SSOs and/or Surcharge conditions under
existing and future projected (through year 2025, or another
future date chosen consistent with industry standards), average
and peak, dry and wet weather flows, and the degree to which
those portions experience or cause, under current or projected
future conditions, SSOs and/or Surcharge conditions.  It is
specifically noted that the programs in this Consent Decree do
not seek, _per_ _se_, to eliminate all Surcharge conditions in
Defendants' Separate Sewer System; rather, identification of
Surcharge conditions is required as Surcharge conditions are

typically indicative of limited additional capacity in a sewer
line.

2.   This assessment shall consider local rainfall data
and the impact of appropriate rainfall events on peak wet weather
flows within those portions of Defendants' Sewer System
identified in subparagraph C.1, above.  Defendants shall use the
Model, as described in the Model Plan attached as Exhibit 4, to
accomplish this assessment.

3.   Defendants shall submit to U.S. EPA/Ohio EPA for
review and approval a comprehensive Capacity Assessment Plan
within 120 days of completion of validation through actual flow
measurements of the model developed pursuant to the Model Plan
attached to this Decree as Exhibit 4.  This Capacity Assessment
Plan shall describe how Defendants will undertake an engineering
study to comprehensively evaluate the hydraulic capacities of
specified portions of the Sewer System, as described above in
subparagraph VII.C.1.  The Plan shall also include a schedule
that is as expeditious as practicable for the completion of that
Assessment for the completion and submission to U.S. EPA/Ohio EPA
of a Report summarizing the Assessment, and for the completion
and submission of a Capacity Assurance Program Plan, pursuant to
the requirements of Paragraph VII.E.

4.   U.S. EPA/Ohio EPA may approve the Capacity
Assessment Plan or decline to approve it and provide written
comments.  Within 60 days of receiving U.S. EPA/Ohio EPA's
written comments, Defendants shall either: (i) alter the Capacity

Assessment Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the Capacity Assessment Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

5.    Upon receipt of U.S. EPA's/Ohio EPA's final approval of the Plan, or upon completion of the Capacity Assessment Plan pursuant to dispute resolution, Defendants shall implement the Capacity Assessment Plan in accordance with the schedule included in the approved Plan.

**D.    Capacity Assessment Report**

1.    Defendants shall submit a Report, consistent with the schedule in the approved Capacity Assessment Plan required pursuant to Paragraph VII.C, that presents and summarizes the results of implementation of the Capacity Assessment Plan to U.S. EPA/Ohio EPA for review, comment and approval.  This Capacity Assessment Report shall describe the analyses carried out, and shall specifically identify, both in narrative and using schematics and maps, within the aforementioned portions of Defendants' Sewer System, portions of the Sewer System experiencing or causing SSOs and/or Surcharge, and/or having inadequate capacity under current and future conditions, and both dry and wet weather conditions, and shall characterize those capacity limitations.  The Report shall provide detailed information demonstrating that the assessment has been carried out in accordance with the approved Plan.

2.    U.S. EPA/Ohio EPA may approve the Capacity
Assessment Report or decline to approve it and provide written
comments.  Within 60 days of receiving U.S. EPA/Ohio EPA's
written comments, Defendants shall either: (i) alter the Capacity
Assessment Report consistent with U.S. EPA/Ohio EPA's written
comments, and submit the Capacity Assessment Report to U.S.
EPA/Ohio EPA for final approval; or (ii) submit the matter for
dispute resolution under Section XIV of this Decree. Upon receipt
of U.S. EPA's/Ohio EPA's final approval of the Capacity
Assessment Report, or upon completion of the Report pursuant to
dispute resolution, Defendants shall utilize the assessment to
develop the Capacity Assurance Program, pursuant to the
requirements of Paragraph VII.E.

E.    **Capacity Assurance Program Plan**

1.    Defendants shall develop a Capacity Assurance
Program Plan, based upon the system capacities revealed by the
Capacity Assessment pursuant to Paragraphs VII.C-VII.D,
Defendants' knowledge of the condition of their Sewer System, and
projected impacts of the Capital Improvement Projects required
pursuant to Section VI and Exhibit 3, and any other planned
improvements, changes, or additions to Defendants' Sewer System.
The Capacity Assurance Program Plan shall identify additional
feasible remedial measures that have the goal of eliminating all
capacity-related SSOs and/or that are necessary to insure that
there is adequate capacity in the SSS under current and projected
future conditions so that there will be no capacity-related SSOs

- 32 -

under projected future conditions (as defined in subparagraph
VII.C.1). If insufficient capacity, compared to current or
projected future conditions (as defined in subparagraph VII.C.1),
exists in any portion of the Defendants' Sanitary Sewer System or
those other portions of Defendants' Sewer System that convey
sanitary Sewage to the WWTPs, Defendants shall identify
additional feasible measures needed to provide adequate capacity
under current and projected future conditions and/or that have
the goal of eliminating capacity-related SSOs and shall provide
detailed information on the methodologies used to select the
proposed remedial measures.  It is the intent of the Parties that
the Capacity Assurance Program Plan shall identify only those
measures the construction or implementation of which is necessary
in light of information and analyses developed pursuant to
Sections VI and VII, which construction and/or implementation
shall not be required under this decree and shall only be
required pursuant to future negotiations and/or other enforcement
action.

      2.   Measures proposed by Defendants to address
capacity limitations may include removal of I/I sources,
increases in pump station and sewer capacities in both the
Sanitary Sewer System and the Combined Sewer System,
storage/equalization facilities, or increases in wastewater
treatment plant capacity.

      3.   The Capacity Assurance Program Plan shall provide
information regarding the effectiveness of the Capital

Improvement Projects required pursuant to Section VI and Exhibit 3, and their compatibility with the other remedial projects chosen and the ultimate goal of eliminating SSOs.

      4.   The Plan shall provide estimated costs (capital, annual O&M and either present value or annualized costs) and information regarding the expected performance of all considered and proposed measures.  U.S. EPA/Ohio EPA shall consider the information concerning costs and performance of measures in their review of Defendants' Plan.

      5.   The Plan shall provide a schedule that is as expeditious as practicable for design and construction of all proposed measures.  The schedule shall be broken out by Sub-Basin, and shall specify critical construction milestones for the projects in each Sub-Basin, including, at a minimum, deadlines for submission of Permit(s) to Install, commence construction, and complete construction, for each project, and a deadline for the completion date of all work in each Sub-Basin.

      6.   It is the intent of the Parties that this Partial Consent Decree does not include a specific date by which all design and construction in all Sub-Basins must be accomplished, but that this date will be proposed by Defendants in the schedule required by subparagraph VII.E.5, and will be subject to future negotiations and/or dispute resolution in connection with the review and approval process for the Capacity Assurance Program Plan under subparagraph VII.E.8.

7.    The Plan shall be submitted to U.S. EPA/Ohio EPA for review and approval, in accordance with the schedule in the approved Capacity Assessment Plan required pursuant to Paragraph VII.C.

8.    U.S. EPA/Ohio EPA may approve the Capacity Assurance Program Plan or decline to approve it and provide written comments.  Within 90 days of receiving U.S. EPA/Ohio EPA's written comments, Defendants shall either: (i) alter the Capacity Assurance Program Plan consistent with U.S. EPA/Ohio EPA's written comments, and submit the Capacity Assurance Program Plan to U.S. EPA/Ohio EPA for final approval; or (ii) submit the matter for dispute resolution under Section XIV of this Decree.

9.    It is the intent of the Parties that implementation of the Capacity Assurance Program Plan shall not be required under this Decree, but shall only be required pursuant to future negotiations and/or other enforcement action.

**F.    SSO Monitoring And Reporting Plan**

Defendants shall implement the SSO Monitoring and Reporting Plan attached to this Consent Decree as Exhibit 5.

**G.    Sewer Overflow Response Plan**

Defendants shall implement the Sewer Overflow Response Plan attached to this Consent Decree as Exhibit 6.

**H.    Operation and Maintenance Program**

Defendants shall implement the Operation and Maintenance Program attached to this Consent Decree as Exhibit 7.

I.    **Industrial Waste SSO/CSO Discharge Management and Minimization Plan**

Defendants shall implement the Industrial Waste SSO/CSO Discharge Management and Minimization Plan attached to this Consent Decree as Exhibit 8.

J.    **Pump/Lift Station Operation and Maintenance Procedures**

Defendants shall implement the Pump/Lift Station Operation and Maintenance Procedures attached to this Consent Decree as Exhibit 9.

VIII.    **SHORT-TERM ADEQUATE CAPACITY**

A.    Defendants shall implement the Short-Term Adequate Capacity Program Plan (STACP Plan) attached to this Consent Decree as Exhibit 10.  Defendants shall authorize only those new sewers or sewer extensions or an increase in flow associated with new development that are in conformance with this Plan.  The conditions of this Plan shall apply to each Sub-Basin or part of a Sub-Basin only until such time as the Sub-Basin remedial measures set forth in Defendants' Capacity Assurance Program Plan, required pursuant to Paragraph VII.E above, have been satisfactorily completed.  Nothing contained in the STACP Plan shall be construed as setting standards for, or changing any of the requirements for or objectives of, the remedial measures for the Defendants' Sewer System as required above by Paragraph VII.E of this Consent Decree.

- 36 -

B.   The STACP Plan describes the process(es) that shall be used for authorizing those new sewers and/or sewer extensions including forms, procedures, methods, equations, staffing plans, flow meter locations, and the information or methods for obtaining information necessary to support such authorizations.

C.   The objective of the STACP Plan is to prevent any wastewater flows from new development from aggravating or in any way adding to the quantity discharged from any downstream SSO. Specifically, the objective of the STACP Plan is to ensure that more flow is removed from the system than is added from a proposed new sewer, sewer extension, or increased flow associated with new development upstream of the SSO, as determined by the criteria and formulae set out in the STACP Plan.  The current STACP Plan utilizes a removal credit trade ratio, as determined by the criteria and formulae set out in the Plan, that a minimum of 5 gallons of flow from a downstream SSO is to be removed for every gallon of flow added from the proposed new sewer, sewer extension, or increased flow associated with new development upstream of the SSO.  In evaluating the proposed removal/addition for consistency with the STACP Plan, Defendants shall use design I&I conditions and estimated peak flow from the new development.

D.   The STACP Plan may be modified to incorporate new or revised flow figures or methodologies for improvements undertaken by the Defendants to remove extraneous water (I/I) from the SSS, or to change the removal credit trade ratio.  Any such

modification  shall be subject to the modification process set
out in Section 6.0 of the STACP Plan.

E.    Defendants agree to notify the public and permit
applicants no later than 90 days after lodging of this Decree, of
the program requirements in this Section.


IX.  **REPORTING REQUIREMENTS AND SUBMISSIONS TO ORSANCO**

A.    Beginning within the thirty (30) days of the close of
the first full Calendar Quarter following the Date of Lodging of
this Consent Decree, and within thirty (30) days of the close of
each subsequent Calendar Quarter, Defendants shall submit to U.S.
EPA and Ohio EPA, a summary report containing the following
information pertaining to the Calendar Quarter just concluded:  a
brief synopsis of the current status of the major remedial
measures (i.e., each CIP project, the development of the Model
and associated data collection activities, the Capacity
Assessment, the Capacity Assurance Program, and the deliverables
associated with, and implementation of, these remedial measures)
specified in Sections VI and VII of this Consent Decree and
progress made with respect to such remedial measures since the
last report; a brief synopsis of the implementation of the SSO
Monitoring and Reporting Plan, Sewer Overflow Response Plan.
Operation and Maintenance Program, Industrial Waste SSO/CSO
Management and Minimization Plan, Pump/Lift Station Operating and
Management Procedures, and Short Term Adequate Capacity Program
Plan (e.g., compliance with performance measures); the number of

- 38 -

Permit(s) to Install that have been applied for and/or issued;
and a description of compliance or non-compliance with the
requirements of this Consent Decree and its attachments and, if
applicable, reasons for non-compliance.  This report shall also
identify any anticipated delays in the completion of any of the
remedial measures specified in Sections VI and VII of this
Consent Decree.  It is anticipated that these reports will
provide summary information, preferably in the form of narrative
tables.  Notification to U.S. EPA or Ohio EPA pursuant to this
Paragraph of any anticipated delay, shall not, by itself, excuse
the delay.

B.    Along with the quarterly reports required by Paragraph
IX.A, Defendants shall also submit at the same time to U.S. EPA
copies of monthly summaries of SSO information and certifications
that Defendants have submitted to Ohio EPA pursuant to the SSO
Monitoring and Reporting Plan and the Short Term Adequate
Capacity Program Plan in the previous Calendar Quarter.

C.    Beginning within the 30 days of the first year
anniversary of the Date of Lodging of the Consent Decree, and
within 30 days of each subsequent anniversary, Defendants shall
submit to U.S. EPA/Ohio EPA notice of:  any staffing changes that
occurred in the prior year as required by Exhibit 6 (Sewer
Overflow Response Plan); any revisions to the procedures or
schedules set forth in Appendices C or D to Exhibit 9 (Pump/Lift
Station O&M Procedures); any revisions to the equipment owned by
MSD as set forth in Appendix A to Exhibit 7 (O&M Program); any

- 39 -

changes to permanent monitoring locations that Defendants made in the prior year as required by Exhibit 4 (Model Plan); and any other revisions made in accordance with the terms of Exhibits 5-10.

D.    The Parties shall simultaneously transmit to ORSANCO any document required to be transmitted to any other Party under the terms of this Consent Decree, including but not limited to the submittals required pursuant to Sections VI-VII and any responses of the Plaintiffs thereto.

X.    **DOCUMENT RETENTION/CERTIFICATION OF SUBMISSIONS**

A.    Defendants shall maintain copies of any underlying research and data in their possession, custody or control for any and all documents, reports, or permits submitted to U.S. EPA/Ohio EPA pursuant to this Consent Decree for a period of five (5) years after submission.  Defendants shall require any independent contractor(s) implementing this Consent Decree to also retain such materials for a period of five (5) years.  Defendants shall submit such supporting documents to U.S. EPA/Ohio EPA upon request.

B.    At the conclusion of this document retention period, Defendants shall notify U.S. EPA, Ohio EPA, U.S. Department of Justice, and the Ohio Attorney General at least 90 days prior to the destruction of any such materials, and upon request by any of these agencies, Defendants shall deliver any such materials to that agency or other specified agency.

C.   In all notices, documents or reports submitted to the United States and State pursuant to this Consent Decree, Defendants shall, by a senior management official, sign and certify such notices, documents and reports as follows:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## XI.  **STIPULATED PENALTIES**

A.   Defendants shall pay stipulated penalties, as set forth below, for each day they fail to timely submit submittals or meet any of the milestones or requirements set forth in Paragraphs XI.C through XI.G below.  Fifty (50%) percent of the total stipulated penalty amount due shall be paid to the United States and fifty (50%) percent shall be paid to the State.  All stipulated penalties arising under this Section shall, in the

- 41 -

first instance, be levied against funds collected under Section 6117 of the Ohio Revised Code for the operation of MSD to the extent such funds are available, without limitation on recourse by the United States or the State in the event that such funds are not available within the sixty (60) day period for payment specified by Paragraph XI.I or are insufficient to pay such stipulated penalties.

B.    "Timely submit", as used in this Section, shall mean that the submittal is made by the date specified in this Consent Decree or in a document approved pursuant to this Consent Decree. "Timely submit" shall further mean that the submittal must include all of the elements pertaining to the submittal as set forth in this Consent Decree or in a document approved pursuant to this Consent Decree.

C.    **Stipulated Penalties for Critical Path Submittals and Critical Remedial Milestones**

1.    Defendants shall be subject to the following stipulated penalties for a failure to timely submit the submittals listed in subparagraph XI.C.2, below, or for a failure to meet the critical remedial milestones set forth in subparagraph XI.C.2, below, in accordance with all requirements, and objectives provided under this Consent Decree or in submittals subsequently approved by U.S. EPA/Ohio EPA pursuant to the provisions of this Consent Decree:

| 1-30 days | $1500/day |
|-----------|-----------|
| 31-60 days | $3000/day |

over 60 days                    $5000/day

    2.  The following submittals are "critical path submittals," subject to the stipulated penalties of subparagraph XI.C.1, above:

- SSO 700 Interim Remedial Measures Plan
- CEHRS & Storage Facility Effectiveness Study Plan
- Tunnel Notice
- SSO 700 Remedial Plan
- Capacity Assessment Plan
- Capacity Assessment Report
- Capacity Assurance Program Plan

The following deadlines are "critical milestones," subject to the stipulated penalties of subparagraph XI.C.1, above:

- the Construction Completion Date for each Capital Improvement Project set forth in Exhibit 3
- the critical milestones, as required by subparagraph VI.B.1, set forth in the construction schedules contained in the approved SSO 700 Interim Remedial Measures Plan; provided, however, that Defendants shall not be subject to stipulated penalties in connection with achievement of the "proposed design performance characteristics, expected impact on SSO 700 activation frequency, duration and volume of discharge," or expected impact on "pollutant loads" set forth in the SSO

- 43 -

700 Interim Remedial Measures Plan, as required by
subparagraph VI.B.1.

- the critical milestones, as required by
  subparagraph VI.C.3, set forth in the construction
  schedules contained in the approved SSO 700
  Remedial Plan

- the date for calibration of the Sanitary Sewer
  System Model, as set forth in subparagraph VII.B.3

- the final date for implementation of the Sanitary
  Sewer System Model, as set forth in Exhibit 4

**D.    Stipulated Penalties for Reporting Requirements**

Defendants shall be subject to the following stipulated
penalties for a failure to timely submit any of the reports
required by Section IX of this Consent Decree:

| | |
|---|---|
| 1-7 days | $500/day |
| 8-60 days | $1000/day |
| over 60 days | $1500/day |

**E.    Stipulated Penalties for SSDs**

1.    Pre-Remedial Measures SSDs

For the time periods set forth below, Defendants shall be
subject to stipulated civil penalties of $3000 per day for each
day of each SSD 1) that was caused by Defendants' failure to
comply with their Operation and Maintenance Program or their
Pump/Lift Station Operation and Maintenance Procedures or for
which Defendants' failure to comply with these O&M requirements
contributed to the volume or the duration of such SSD; or 2) for

- 44 -

which Defendants failed to follow their SSO Response Plan in
responding to and mitigating the impact of the discharge:

- For an SSD from any location (other than from SSO
  700) within any Sub-Basin, prior to the completion
  of the remedial measures for that Sub-Basin in
  accordance with the approved Capacity Assurance
  Program Plan;

- For an SSD from SSO 700, prior to the later of the
  completion of construction date set forth in the
  SSO 700 Remedial Measures Plan required pursuant
  to subparagraph VI.C.3 or any schedule completion
  date extensions or revisions that are be made
  pursuant to Paragraph VI.D of this Consent Decree.

These stipulated civil penalties shall be in lieu of any
stipulated penalties under Paragraph XI.G below for Defendants'
failure to comply with their Operation and Maintenance Program or
their SSO Response Plan.

    2.   <u>SSDs Following Completion of Permanent Remedial</u>
<u>Measures for SSO 700</u>

    (a)  Except as provided in subparagraphs
XI.E.2(b)-(c), Defendants shall be subject to a stipulated
penalty of $3000 per day for each day of each SSD from SSO 700
that occurs after the later of: (1) the date for completion of
all SSO 700 remedial measures pursuant to the SSO 700 Remedial
Plan of this Consent Decree; or (2) any schedule completion date
extensions or revisions that are be made pursuant to Paragraph

- 45 -

VI.D of this Consent Decree.  However, U.S. EPA/Ohio EPA will not demand payment for stipulated penalties under this subparagraph until after the two-year evaluation period set forth in Paragraph VI.D of this Consent Decree and shall not be entitled to stipulated penalties under this subparagraph for SSDs that occur prior to the later of the date for completion of all SSO 700 remedial measures pursuant to the SSO 700 Remedial Plan of this Consent Decree or any schedule completion date extensions or revisions that are made pursuant to Paragraph VI.D of this Consent Decree.

(b)   Defendants shall not be liable for stipulated penalties under subparagraph 2(a) during the six month period (a "shake down" period) following the date for completion of all SSO 700 remedial measures pursuant to the SSO 700 Remedial Plan.

(c)   Defendants shall not be liable for stipulated penalties for SSDs that are caused by a ten-year or greater storm event.

**F.   Stipulated Penalties for Improper Sewer Connections**

Defendants shall be subject to a stipulated penalty of $5,000.00 for each connection authorized by Defendants other than in full compliance with the requirements of Section VIII of this Consent Decree.

G.    **Stipulated Penalties for Violations of Exhibits and Submittals**

Failure to comply with any requirements set forth in the following attached Exhibits to this Consent Decree, or in the following submittals (subsequently approved by U.S. EPA/Ohio EPA pursuant to the provisions of this Consent Decree) shall subject Defendants to a stipulated penalty of $2,000 per day for each violation:

- CEHRS & Storage Facility Effectiveness Study Plan
- SSO 700 Remedial Plan or Revised Remedial Plan
- Model Plan (Exhibit 4)
- Capacity Assessment Plan
- SSO Monitoring and Reporting Program (Exhibit 5)
- Sewer Overflow Response Program (Exhibit 6)
- Operation and Maintenance Program (Exhibit 7)
- Industrial Waste SSO/CSO Discharge Management and Minimization Program (Exhibit 8)
- Pump/Lift Station Operation and Maintenance Procedures (Exhibit 9)
- Short-Term Adequate Capacity Program Plan (Exhibit 10).

H.    Stipulated civil penalties shall automatically begin to accrue on the first day Defendants fail either to meet any of the

schedules of performance required by this Consent Decree or to satisfy any other obligation or requirement of this Consent Decree.

I.    Stipulated civil penalties shall be paid to <u>both</u> Plaintiffs within sixty (60) days of a written demand by <u>either</u> Plaintiff for payment of any stipulated penalty owing pursuant to this Consent Decree.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.  Either Plaintiff may, in the exercise of its unreviewable discretion, waive its right to any or all of its portion of the stipulated penalty amount.

J.    Penalties owed to the United States shall be paid by submitting a cashier's or certified check payable to "Treasurer, United States of America", and shall be tendered to U.S. EPA Region V, Post Office Box 70753, Chicago, Illinois 60673.  The transmittal letter accompanying the check shall specify the caption and docket number of this action, the facility and the violations for which the stipulated penalties are being paid, and DOJ Ref. No. 90-5-1-6-341A.  A copy of the letter and the check shall simultaneously be sent to U.S. EPA Region V, Water Compliance Branch, Compliance Section, WCC-15J, 77 West Jackson Boulevard, Chicago, Illinois 60604, and to Chief, Environmental Enforcement Section, United States Department of Justice, Post Office Box 7611, Washington, D.C. 20044-7611.

K.    Penalties owed to the State shall be paid by submitting a cashier's or certified check payable to "Treasurer, State of

Ohio", and shall be tendered to Administrative Assistant, Ohio

Attorney General's Office, 30 E. Broad Street, 25th floor,

Columbus, Ohio 43215-3428. The transmittal letter accompanying

the check shall specify the caption and docket number of this

action and the facility and the violations for which the

stipulated penalties are being paid. A copy of the letter and

the check shall simultaneously be sent to Enforcement

Coordinator, Division of Surface Water, P.O. Box 1049, Columbus,

Ohio 43216.

    L.  In the event that a stipulated civil penalty is not

paid within sixty (60) days of a written demand as required by

Paragraph XI.I, the stipulated civil penalty shall, upon written

demand of the United States, be payable with interest from the

original due date (sixty days after the written demand) to the

date of payment, at the statutory judgment rate set forth at

28 U.S.C. § 1961(a).

    M.  Payment of stipulated civil penalties as set forth

above shall be in addition to any other rights or remedies that

may be available to the United States, the State, or their

agencies by reason of the Defendants' failure to comply with

requirements of this Consent Decree, and all applicable Federal,

state or local laws, regulations, NPDES permit(s) and all other

applicable permits. The payment of such stipulated penalties

shall not be construed to relieve Defendants from specific

compliance with this Decree or applicable federal or State law,

nor shall it limit the authority of U.S. EPA or Ohio EPA to
require compliance with such laws.


XII. **FORCE MAJEURE BETWEEN DEFENDANTS AND THE UNITED STATES**

A.   If any event occurs that causes or may cause Defendants
to violate any provision of this Consent Decree, Defendants shall
notify U.S. EPA in writing within fourteen (14) days from the
date Defendants first knew, or in the exercise of reasonable
diligence should have known, that compliance with the Consent
Decree would be prevented or delayed.  The notice shall reference
this Section of the Consent Decree and shall describe in detail
the anticipated length of time the violation may persist, the
precise cause or causes of the violation, the measures taken or
to be taken by Defendants to prevent or minimize the violation
and the timetable by which those measures will be implemented.
Defendants shall adopt all reasonable measures to avoid or
minimize any such violation.  Defendants shall make all
reasonable efforts to identify events that cause or may cause a
violation of this Consent Decree.  Failure by Defendants to
comply with the notice requirements of this Paragraph shall
constitute a waiver of Defendants' rights to obtain an extension
of time or other relief under this Section based on such
incident.

B.   If U.S. EPA agrees that the violation has been or will
be caused by circumstances beyond the control of Defendants or
any entity controlled by it, including its consultants and