IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>THE STATE OF OHIO, and<br>OHIO RIVER VALLEY WATER<br>SANITATION COMMISSION<br><br>        Plaintiffs,<br><br>        v.<br><br>THE BOARD OF COUNTY<br>COMMISSIONERS OF HAMILTON<br>COUNTY, OHIO and THE CITY OF<br>CINCINNATI,<br>        Defendants. | Civil Action No. C-1-02-107<br>Judge S. Arthur Spiegel |

**CONSENT DECREE ON COMBINED SEWER OVERFLOWS, WASTEWATER TREATMENT**

**PLANTS AND IMPLEMENTATION OF CAPACITY ASSURANCE PROGRAM PLAN FOR**

**SANITARY SEWER OVERFLOWS**

TABLE OF CONTENTS

I.          JURISDICTION AND VENUE  . . . . . . . . . . . . . . . 6

II.         PARTIES . . . . . . . . . . . . . . . . . . . . . . 7

III.        BINDING EFFECT  . . . . . . . . . . . . . . . . . . 8

IV.         OBJECTIVES  . . . . . . . . . . . . . . . . . . 11

V.          DEFINITIONS . . . . . . . . . . . . . . . . . . 12

VI.         CAPITAL IMPROVEMENT PROJECTS  . . . . . . . . . . 18

VII.        LONG TERM CONTROL PLAN UPDATE . . . . . . . . . . 19

VIII.       IMPLEMENTATION OF CAPACITY ASSURANCE PROGRAM PLAN . 27

IX.         COMPLETION OF CONSTRUCTION DEADLINES  . . . . . . . 30

X.          POST-CONSTRUCTION MONITORING STUDY  . . . . . . . . 34

XI.         REMEDIAL MEASURES ADDRESSING NINE MINIMUM CONTROLS  37

XII.        COMPLIANCE WITH EFFLUENT LIMITATIONS; MONITORING,
            RECORD-KEEPING AND REPORTING REQUIREMENTS; AND
            OPERATION AND MAINTENANCE REQUIREMENTS AT WASTEWATER
            TREATMENT PLANTS  . . . . . . . . . . . . . . . . . . 46

XIII.       WATER-IN-BASEMENT PROGRAM . . . . . . . . . . . . . 46

XIV.        SUPPLEMENTAL ENVIRONMENTAL PROJECTS . . . . . . . . 48

XV.         REPORTING REQUIREMENTS  . . . . . . . . . . . . . . 50

XVI.        DOCUMENT RETENTION/CERTIFICATION OF SUBMISSIONS . . 53

XVII.       STIPULATED PENALTIES  . . . . . . . . . . . . . . . 54

XVIII.      FORCE MAJEURE BETWEEN DEFENDANTS AND THE UNITED STATES
            . . . . . . . . . . . . . . . . . . . . . . . . . . 68

XIX.        POTENTIAL FORCE MAJEURE BETWEEN DEFENDANTS AND THE
            STATE . . . . . . . . . . . . . . . . . . . . . . . 71

XX.         FORCE MAJEURE BETWEEN DEFENDANTS AND ORSANCO  . . . 73

XXI.        DISPUTE RESOLUTION  . . . . . . . . . . . . . . . . 75

XXII.      CIVIL PENALTY . . . . . . . . . . . . . . . . 80

XXIII.     RIGHT OF ENTRY . . . . . . . . . . . . . . . 83

XXIV.      NOT A PERMIT/COMPLIANCE WITH OTHER STATUTES/REGULATIONS
           . . . . . . . . . . . . . . . . . . . . . 85

XXV.       FAILURE OF COMPLIANCE . . . . . . . . . . . . 86

XXVI.      EFFECT OF CONSENT DECREE AND NON-WAIVER PROVISIONS   86

XXVII.     COSTS OF SUIT . . . . . . . . . . . . . . . . 91

XXVIII.    NOTICES . . . . . . . . . . . . . . . . . . . 92

XXIX.      MODIFICATION . . . . . . . . . . . . . . . . 93

XXX.       REVIEW OF SUBMITTALS . . . . . . . . . . . . 96

XXXI.      CONTINUING JURISDICTION . . . . . . . . . . . 98

XXXII.     CONTINGENT LIABILITY OF STATE OF OHIO . . . . . . 99

XXXIII.    TERMINATION . . . . . . . . . . . . . . . . . 99

XXXIV.     PUBLIC COMMENT . . . . . . . . . . . . . . . 100

XXXV.      SIGNATORIES/SERVICE . . . . . . . . . . . . . 101

EXHIBIT 1:  CAPITAL IMPROVEMENT PROJECTS

EXHIBIT 2:  PUBLIC PARTICIPATION PLAN

EXHIBIT 3:  MONITORING AND MODELING WORK PLAN

EXHIBIT 4:  LONG TERM CONTROL PLAN UPDATE WORK PLAN

EXHIBIT 5:  CSO PUBLIC NOTIFICATION PROGRAM

EXHIBIT 6:  WATER-IN-BASEMENT PREVENTION PROGRAM PLAN

EXHIBIT 7:  WATER-IN-BASEMENT CUSTOMER SERVICE PROGRAM PLAN

EXHIBIT 8:  WATER-IN-BASEMENT CLAIMS PROCESS PLAN

EXHIBIT 9:  SUPPLEMENTAL ENVIRONMENTAL PROJECTS PLAN

WHEREAS, Plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("U.S. EPA"), filed a Complaint in this matter on February 15, 2002, alleging that Defendants Board of County Commissioners of Hamilton County, Ohio (the "County") and the City of Cincinnati (the "City") (collectively, "Defendants"), acting through the Metropolitan Sewer District of Greater Cincinnati ("MSD"), have Sanitary Sewer Overflows ("SSOs") in the MSD Sanitary Sewer System, which have violated and continue to violate Section 301 of the Federal Water Pollution Control Act (the "Clean Water Act" or the "Act"), 33 U.S.C. § 1311;

WHEREAS, Plaintiff State of Ohio, on behalf of the Ohio EPA, filed a separate Complaint on February 15, 2002, against Defendants concerning the SSOs, alleging violations of the Act, 33 U.S.C. § 1251 et seq., and Chapter 6111 of the Ohio Revised Code ("O.R.C"), and the SSO Complaints filed by the United States and the State of Ohio were consolidated on March 7, 2002;

WHEREAS, the SSO Complaints alleged that Defendants had discharged pollutants from their Sanitary Sewer System, which discharges were not authorized under Section 301(a) of the Act, 33 U.S.C. § 1251 et seq., and the Complaints sought injunctive relief for those SSOs, but not civil penalties;

WHEREAS, MSD has engaged in environmental research both through studies and pilot-scale operations conducted by its own

1

staff and funding of cooperative research performed by the
University of Cincinnati, the Water Environment Research
Foundation, ORSANCO, U.S. EPA and other organizations;

WHEREAS, MSD has been an active participant in the national
discussion of SSO and CSO policy through the Association of
Metropolitan Sewerage Agencies and the Water Environment
Federation;

WHEREAS, an Interim Partial Consent Decree on Sanitary Sewer
Overflows ("SSO Decree") was lodged in this matter on February
15, 2002, requiring, among other things, the Defendants: 1) to
continue work they had already begun to address certain SSOs by
implementing certain capital improvement projects, which
Defendants had already planned; 2) to implement interim and
permanent remedial measures at SSO 700; and 3) to evaluate their
Sewer System and develop and propose a Capacity Assurance Program
Plan for elimination of all SSOs other than SSO 700;

WHEREAS, Plaintiffs maintain and the SSO Decree states that
various other wet weather issues, including Combined Sewer
Overflows (CSOs) from Defendants' Combined Sewer System and
capacity-related issues at certain of Defendants' Wastewater
Treatments Plants ("WWTPs"), have led to additional violations of
the Act beyond those alleged in the SSO Complaints, but
Plaintiffs' claims for those violations were not addressed by the
SSO Decree, because the Parties intended for those claims to be

2

resolved through later negotiations designed to achieve a global solution to these issues, and/or by other future enforcement efforts;

WHEREAS, the Parties nevertheless recognize and the SSO Decree states that wet weather issues in and remedial measures for the Sanitary Sewer System are directly related to wet weather issues in and remedial measures for other parts of MSD's collection system.  (This is especially true with respect to CSOs from Defendants' Combined Sewer System and capacity-related issues at certain of Defendants' WWTPs.);

WHEREAS, the confluence of these and other factors requires an integrated and costly response that addresses SSOs, CSOs and WWTP issues;

WHEREAS, MSD asserts that it has undertaken a program to address CSOs by implementation of the Nine Minimum Controls and preparation and submission to U.S. EPA and Ohio EPA of a Long Term Control Plan in 1996, which efforts are being updated and supplemented by this Consent Decree;

WHEREAS, at the time the SSO Decree was entered, Defendants were in the process of analyzing and considering global solutions for these wet weather issues and other Sewer System challenges, including possible construction of a deep storage tunnel beneath Mill Creek that could be approximately 16 miles in length and in excess of thirty feet in diameter ("the Mill Creek Deep Tunnel");

WHEREAS, the SSO Decree includes specific recognition of the need expeditiously to commence discussions concerning global solutions to address the remaining Sewer System issues, and further recognizes that because the schedule for implementing the SSO remedial measures that are to be proposed under the Capacity Assurance Program Plan required by the SSO Decree is related to certain other Sewer System solutions, the SSO Decree neither requires implementation of, nor provides a final construction completion date for, the SSO remedial measures that will be proposed under the Capacity Assurance Program Plan pursuant to the SSO Decree;

WHEREAS, the SSO Decree states that the Parties intend expeditiously to commence negotiations concerning:  provisions for implementation of the Capacity Assurance Program Plan's SSO remedial measures, including a completion date for such measures; solutions for other alleged violations of the Act (including, among other things, CSOs and discharges at certain WWTPs); and for a civil penalty to address both the unauthorized discharges from the Sanitary Sewer System (some of the injunctive relief for which was incorporated in the SSO Decree) and the other alleged violations;

WHEREAS, the Parties did commence those negotiations and have reached agreement on a resolution of these issues in this Consent Decree on Combined Sewer Overflows, Wastewater Treatment

4

Plants and Implementation of Capacity Assurance Program Plan for Sanitary Sewer Overflows ("Consent Decree" or "Decree");

WHEREAS, the United States, on behalf of the U.S. EPA, is filing a Joint Amended Complaint herein (with the State of Ohio and ORSANCO, as discussed below) concurrently with lodging of this Consent Decree, alleging that Defendants' discharges from their Combined Sewer System, Sanitary Sewer System and Wastewater Treatment Plants have violated and will continue to violate Section 301 of the Federal Water Pollution Control Act (the "Clean Water Act" or the "Act"), 33 U.S.C. § 1311;

WHEREAS, Plaintiff State of Ohio, on behalf of the Ohio EPA, is joining the Joint Amended Complaint against Defendants, alleging that Defendants' discharges from their Combined Sewer System, Sanitary Sewer System and Wastewater Treatment Plants have violated and will violate the Act, 33 U.S.C. § 1251 et seq., and Chapter 6111 of the Ohio Revised Code ("O.R.C");

WHEREAS, Plaintiff Ohio River Valley Water Sanitation Commission ("ORSANCO") is joining the Joint Amended Complaint and bringing claims against the Defendants pursuant to ORSANCO's authority under the Ohio River Valley Water Sanitation Compact, June 30, 1948 (the "Compact"), alleging that Defendants' discharges from their Combined Sewer System, Sanitary Sewer System, and Wastewater Treatment Plants violate the Compact and the pollution control standards promulgated thereunder, and

5

negatively impact the quality of water and impair uses thereof in the Ohio River Basin;

WHEREAS, the Joint Amended Complaint seeks injunctive relief and civil penalties for these violations;

WHEREAS, the Parties agree and the Court, by entering this Decree, finds that settlement of this matter without further litigation is in the public interest and that entry of this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, upon consent of the Parties hereto, before the taking of testimony, without any adjudication of issues of fact or law, and without admission by the Defendants of the non-jurisdictional allegations in the Joint Amended Complaint, it is hereby ORDERED, ADJUDGED AND DECREED as follows:


I.   **JURISDICTION AND VENUE**

A.   This Court has jurisdiction over the subject matter of this action and over the Parties, pursuant to Sections 309(b) and 505(a) of the Act, 33 U.S.C. §§ 1331, 1365(a), and 28 U.S.C. §§ 1331, 1345, and 1355.  This Court has supplemental jurisdiction over the state law claims asserted by the State of Ohio pursuant to 28 U.S.C. § 1367.  The Joint Amended Complaint states claims upon which relief can be granted pursuant to Sections 309 and 505(a) of the Act, 33 U.S.C. §§ 1319, 1365(a), and pursuant to O.R.C. §§ 6111.04, 6111.07 and 6111.09.  This Court has

6

jurisdiction over the claims of ORSANCO pursuant to the Compact, Articles VI and IX, O.R.C. § 6113.03, and 33 U.S.C. § 1365(b)(1)(B).  The Defendants agree not to contest the jurisdiction of the Court to enter and enforce this Decree.

B.    Venue is properly in this District pursuant to Section 309(b) of the Act, 33 U.S.C. §§ 1319(b), 1365(c), and under 28 U.S.C. §§ 1391 and 1395.  Venue in this District is also proper under the Compact, Art. IX.

## II.  **PARTIES**

A.    Plaintiff, United States of America, is acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency.

B.    Plaintiff, State of Ohio, is acting at the written request of the Director of Environmental Protection of the State of Ohio.

C.    Plaintiff, ORSANCO, is acting pursuant to its authority under the Compact, Art. VI, IX and its statutory authority conferred by O.R.C. § 6113.03.

D.    Defendant, Board of Commissioners of Hamilton County ("the County"), is the duly authorized governing body of Hamilton County, Ohio, pursuant to the laws of the State of Ohio.  The County is the holder of various NPDES permits that govern discharges from the County's Wastewater Treatment Plants and

7

Sewer System.  As such, it is responsible for operating the County's Wastewater Treatment Plants and Sewer System.  The County has established the MSD, a county sewer district established pursuant to Chapter 6117 of the Ohio Revised Code, and acts as the principal of MSD, including maintenance of funding authority for MSD.  Prior court decisions in Ohio hold that MSD cannot be sued in its own name, and thus, MSD is not made a Party to this action.

E.    Defendant, City of Cincinnati ("the City"), is a chartered municipal corporation, organized and existing under the laws of the State of Ohio.  Pursuant to an agreement with the County, and subject to the pertinent provisions of the Ohio Revised Code, the City also serves as the agent for the County in the management and operation of MSD.  It is in this capacity that the City is named as Defendant.

## III. **BINDING EFFECT**

A.    The provisions of this Consent Decree shall apply to, and be binding upon the Defendants and their officers, directors, employees, agents, servants, successors and assigns, and upon all persons, firms and corporations in active concert or participation with the Defendants or the Defendants' officers, directors, employees, agents, servants, successors or assigns, and upon the United States, the State of Ohio, and ORSANCO.

8

B.   Effective from the Date of Lodging of this Consent Decree until its termination, any sale or transfer of either Defendants' interests in or operating role with respect to the Sewer System or WWTPs shall not in any manner relieve either Defendant of its responsibilities for meeting the terms and conditions of this Consent Decree, except as provided in Paragraph III.C.

C.   If either Defendant seeks to name a successor in interest to assume any or all of its interests in, or operating role with respect to, the Sewer System or WWTPs, such Defendant may request modification of this Consent Decree from U.S. EPA/Ohio EPA/ORSANCO to amend this Consent Decree in accordance with the role to be assumed by the proposed successor in interest.  Upon such Defendant's request, the Parties shall discuss the matter.  If the Parties agree on a proposed modification to the Consent Decree, they shall prepare a joint motion to the Court requesting such modification and seeking leave to join the proposed successor in interest.  If the Parties do not agree, and the Defendant still believes modification of this Decree and joinder of a successor in interest is appropriate, it may file a motion seeking such modification in accordance with Federal Rule of Civil Procedure 60(b); provided, however, that nothing in this Paragraph is intended to waive the

Plaintiffs' right to oppose such motion and to argue that such modification is unwarranted.

D.   If this Consent Decree is modified to allow a successor in interest to assume any or all of the obligations hereunder, Defendants shall give written notice of and provide a copy of this Consent Decree to any such successor in interest prior to transfer of ownership or operation of any portion of their WWTPs or Sewer System.

E.   Defendants shall notify U.S. EPA, Ohio EPA, and ORSANCO in writing, as specified in Section XXVIII, of any successor in interest at least twenty-one (21) days prior to any such transfer.

F.   Defendants shall advise each engineering, consulting and contracting firm to be retained to perform any activities described in this Decree of the existence of this Decree and shall make copies of this decree available to such firms upon execution of any contract relating to such work.  Defendants shall also advise each engineering, consulting and contracting firm, already retained for such purpose, of the existence of this Decree and shall make copies of this Decree available to such firms no later than thirty (30) days after the Date of Lodging of this Consent Decree.

IV.  **OBJECTIVES**

It is the express purpose of the Parties entering into this Partial Consent Decree to further the objectives set forth in Section 101 of the Act, 33 U.S.C. § 1251, and to resolve the claims of the Plaintiffs for injunctive relief and civil penalties for the violations alleged in Plaintiffs' Joint Amended Complaint in the manner set forth in Section XXVI.  In light of these objectives, Defendants agree, _inter alia_:  to use sound engineering practices, consistent with industry standards, to perform investigations, evaluations and analyses and to design and construct any remedial measures required by this Decree; to use sound management, operational, and maintenance practices, consistent with industry standards, to implement all the requirements of this Consent Decree; and to achieve expeditious implementation of the provisions of this Decree with the goals of eliminating all Sanitary Sewer Overflows and Unpermitted Overflows and coming into and remaining in full compliance with the requirements of the Clean Water Act, U.S. EPA's 1994 Combined Sewer Overflow (CSO) Policy, Chapter 6111 of the Ohio Revised Code and the rules promulgated thereunder, the Compact and the pollution control standards promulgated thereunder, and Defendants' Current Permits.

V.    **DEFINITIONS**

A.    Unless otherwise defined herein, terms used in this Consent Decree shall have the meaning given to those terms in the Clean Water Act, 33 U.S.C. §§ 1251 <u>et seq.</u>, and the regulations promulgated thereunder.

B.    The following terms used in this Consent Decree shall be defined as follows:

"Calendar Quarter" shall mean the three-month periods ending on March 31st, June 30th, September 30th, and December 31st.

"Capacity Assurance Program Plan" or "CAPP" shall mean the plan that is required to be developed pursuant to Paragraph VII.E of the SSO Consent Decree and that shall be implemented pursuant to Section VIII of this Consent Decree.

"City" shall mean the City of Cincinnati, Ohio.

"Combined Sewer System" means the portion of the Defendants' Sewer System designed to convey municipal sewage (domestic, commercial and industrial wastewaters) and stormwater runoff through a single-pipe system to the Defendants' Wastewater Treatment Plants or Combined Sewer Overflow Outfalls.

"Combined Sewer Overflow" or "CSO" shall mean any discharge from any outfall identified as a combined sewer overflow or CSO in Defendants' Current Permits as defined below.

"Combined Sewer Overflow Outfall" or "CSO Outfall" shall mean the outfall from which CSOs are discharged.

12

"Compact" shall mean the Ohio River Valley Water Sanitation Compact, an interstate compact entered into by signatory states on June 30, 1948, and Pollution Control Standards promulgated by ORSANCO pursuant to the Compact.

"Consent Decree" shall mean this Consent Decree on Combined Sewer Overflows, Wastewater Treatment Plants and Implementation of Capacity Assurance Program Plan, including all attached Exhibits and all subsequently approved submittals.

"County" shall mean Hamilton County, Ohio and the Board of County Commissioners of Hamilton County.

"CSO and Unpermitted Overflow Outfalls" shall refer to CSO Outfalls and Unpermitted Overflow Outfalls collectively.

"CSO Policy" shall mean U.S. EPA's "Combined Sewer Overflow (CSO) Policy," which was published in the Federal Register on April 19, 1994 (59 Fed. Reg. 18688).

"Current Permits" means all National Pollutant Discharge Elimination System ("NPDES") permits pertaining to Defendants' Wastewater Treatment Plants and Sewer System that are in effect at a particular time in question. "Current Permits" include, but are not limited to, NPDES Permit Nos. IPX00022*AD (CSO Permit); 1PM00001*ID (Mill Creek WWTP); 1PK00006*ID (Muddy Creek WWTP); 1PK00005*HD (Sycamore WWTP); 1PL00000*KD (Little Miami WWTP); 1PK00019*ED (Polk Run WWTP); 1PK00006*ID (Indian Creek WWTP); 1PK00015*CD (Taylor Creek WWTP), and any such permits that

13

succeed those permits and are in effect at a particular time in question.

"Date of Entry" shall mean the date the Consent Decree is approved and signed by a United States District Court Judge.

"Date of Lodging" shall mean the date the Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of Ohio, Western Division.

"Day" or "Days" as used herein shall mean a calendar day or calendar days, unless otherwise indicated.  When the day a report or other deliverable is due under this Consent Decree falls on a Saturday, Sunday, federal holiday or legal holiday for Defendants, Defendants shall have until the next calendar day that is not one of the aforementioned days for submittal of such report or other deliverable.

"Mill Creek Deep Tunnel" shall mean a tunnel designed to provide flood control and CSO control in the Mill Creek drainage basin.

"Non-MSD Sewer System" shall mean any wastewater collection and transmission system or piping that is designed to collect and convey domestic, commercial or industrial sewage and/or stormwater, but that is not owned or controlled by MSD during the pendency of this Decree or the SSO Decree.  The wastewater collection and transmission system and the piping comprising the

14

Non-MSD Sewer System, at the time of lodging of the SSO Decree, are generally depicted in Exhibit 1 to the SSO Decree.

"Ohio River Basin" shall mean the waters of the Ohio River and its tributaries.

"ORSANCO" shall mean the Ohio River Valley Water Sanitation Commission.

"Paragraph" shall mean a portion of this Consent Decree identified by an uppercase letter.

"Parties" shall mean the United States, the State of Ohio, ORSANCO, and/or the Defendants.

"Plaintiff" or "Plaintiffs" shall mean the United States, the State of Ohio, and/or ORSANCO, as appropriate.

"Sanitary Sewer Discharge" and "SSD" shall mean any discharge to waters of the State or United States from Defendants' Sanitary Sewer System through a point source not specified in any NPDES permit.

"Sanitary Sewer Overflow" and "SSO" shall mean any discharge to waters of the State or United States from Defendants' Sanitary Sewer System through point sources not specified in any NPDES permit, as well as any release of wastewater from Defendants' Sanitary Sewer System to public or private property that does not reach waters of the United States or the State, such as a release to a land surface or structure that does not reach waters of the United States or the State; provided, however, that wastewater

15

backups into buildings that are caused by blockages, flow conditions, or malfunctions in a building lateral, other piping or conveyance system that is not owned or operationally controlled by Defendants are not SSOs for the purposes of this Consent Decree.  As such, the term SSO includes Water-in-Basements ("WIBs") released from Defendants' Sanitary Sewer System.

"Sanitary Sewer System" or "SSS" shall mean all portions of the Defendants' Sewer System that are not a part of the Defendants' Combined Sewer System.  SSS does not include any non-MSD Sewer System.

"Section" shall mean a portion of this Consent Decree identified by an uppercase Roman Number.

"Sewage" shall mean municipal sewage, including domestic, commercial and industrial sewage.

"Sewer System" shall mean the wastewater collection and transmission system owned or operated by Defendants designed to collect and convey municipal sewage (domestic, commercial and industrial) to the Defendants' Wastewater Treatment Plants or overflow structures.

"Sewer System Hydraulic Model" shall mean the hydraulic model developed in accordance with Paragraph VII.B of the SSO Decree.

"SSO Decree" shall mean the Interim Partial Consent Decree on Sanitary Sewer Overflows that was lodged in this case on February 15, 2002.

"SSO Outfall" shall mean an outfall from which SSOs are discharged.

"Substantial Completion of Construction" shall mean completion of construction and installation of equipment such that the system may be placed in full operation, and will both function and perform as designed.  This specifically includes all control systems, instrumentation and all residual handling systems.

"Ten-Year Storm" shall mean a SCS Type II storm with a ten-year return and 24-hour duration.

"Unpermitted Overflow" shall mean any discharge to waters of the United States from Defendants' Sewer System that is not a CSO or SSO as defined by this Consent Decree.

"Unpermitted Overflow Outfall" shall mean the outfall from which Unpermitted Overflows are discharged.

"U.S. EPA/Ohio EPA/ORSANCO" shall mean "U.S. EPA and Ohio EPA and ORSANCO" unless Plaintiffs jointly elect (in their unreviewable discretion) to assign a particular task or responsibility to one or more of them.  To make that election, Plaintiffs shall notify Defendants in writing of the task or responsibility that U.S. EPA or Ohio EPA or ORSANCO is assigned. Collectively, U.S. EPA/Ohio EPA/ORSANCO are referred to as

"Plaintiffs," and each individually is a "Plaintiff" under this Decree.

"Wastewater Treatment Plant(s)" ("WWTP(s)") shall refer to: 1) the following wastewater treatment plants: Mill Creek, Little Miami, Muddy Creek, Sycamore, Polk Run, Indian Creek, and Taylor Creek; and 2) the permitted treatment facilities owned or operated by Defendants identified in Exhibit 2 to the SSO Decree.

"Water-in-Basement(s)" ("WIB(s)") shall mean any release of wastewater from Defendants' Sewer System to buildings that (i) is not the result of blockages, flow conditions, or malfunctions of a building lateral or other piping/conveyance system that is not owned or operationally controlled by Defendants; and (ii) is not the result of overland, surface flooding not emanating from Defendants' Sewer System.

## VI.  CAPITAL IMPROVEMENT PROJECTS

Defendants shall construct Capital Improvement Projects (CIP) consistent with the descriptions set forth in Exhibit 1 to this Consent Decree and in accordance with the Substantial Completion of Construction Dates for each project set forth in Exhibit 1. In light of the substantial costs and magnitude of the remedial measures that will be required to be implemented by Sections VI (Capital Improvement Projects); VII (Long Term Control Plan Update); and VIII (Implementation of Capacity

18

Assurance Program Plan) of this Consent Decree; and by Section VI of the SSO Decree (Capital Improvement Projects and SSO 700), the Parties expect that proper construction and implementation of the remedial measures for the Sycamore WWTP in Exhibit 1 to this Consent Decree will be the feasible alternatives to bypassing at the Sycamore WWTP.


## VII. LONG TERM CONTROL PLAN UPDATE

### A.    Long Term Control Plan Update Report

1.    As further set forth in this Section, Defendants shall undertake a comprehensive program to identify remedial measures and a schedule (the "Long Term Control Plan Update") with the goals of insuring that: (1) Defendants construct and implement all feasible alternatives to eliminate bypasses at Defendants' WWTPs or, if Defendants demonstrate during the course of developing the Long Term Control Plan Update that elimination of bypassing is not feasible, to reduce bypasses at the WWTPs to the maximum extent feasible and to provide maximum feasible treatment for any remaining bypasses (where appropriate, feasible alternatives to bypassing may include, without limitation, high rate physical-chemical treatment units and/or primary clarification and disinfection); (2) Defendants' CSOs comply with the requirements of the Clean Water Act, U.S. EPA's CSO Policy, Chapter 6111 of the Ohio Revised Code and the rules promulgated

thereunder, the Compact and the pollution control standards promulgated thereunder, and Defendants' Current Permits; and (3) Defendants eliminate Unpermitted Overflows.  In the development of the Long Term Control Plan Update, Defendants shall implement the Public Participation Program attached to this Consent Decree as Exhibit 2; utilize a planning-level model based on their Sewer System Hydraulic Model; develop and utilize water quality models in accordance with the Monitoring and Modeling Work Plan attached to this Consent Decree as Exhibit 3; and implement the Long Term Control Plan Update Work Plan attached to this Consent Decree as Exhibit 4.

     2.   By June 30, 2006, Defendants shall submit a report, the "Long Term Control Plan Update Report," to U.S. EPA/Ohio EPA/ORSANCO for review, comment and approval.  The Long Term Control Plan Update Report shall be developed in accordance with the Long Term Control Plan Update Work Plan, and shall contain the information specified in Section II of the Long Term Control Plan Update Work Plan attached to this Consent Decree as Exhibit 4, including, but not limited to:  the Long Term Control Plan Update, and a schedule that is developed in accordance with Paragraph II.F of the Long Term Control Plan Update Work Plan and coordinated with projects developed pursuant to the Capacity Assurance Program Plan prepared under the SSO Decree as required by Section II.F of the Long Term Control Plan Update Work Plan.

The schedule shall be as expeditious as practicable for design, construction and utilization of the remedial measures specified in the Long Term Control Plan Update and shall contain a deadline for Substantial Completion of Construction of all remedial measures that is as expeditious as practicable. Except as provided in Section IX (Completion of Construction), the date for Substantial Completion of Construction of all construction under the Long Term Control Plan Update shall be no later than February 28, 2022.

      3.   U.S. EPA/Ohio EPA/ORSANCO may approve the Long Term Control Plan Update Report or decline to approve it and provide written comments. Within 120 days of receiving U.S. EPA/Ohio EPA/ORSANCO's written comments, Defendants shall either: (i) alter the Long Term Control Plan Update Report consistent with U.S. EPA/Ohio EPA/ORSANCO's written comments, and submit the Long Term Control Plan Update Report to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.

      4.   Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final approval of the Long Term Control Plan Update Report, or upon completion of the Report pursuant to dispute resolution, Defendants shall implement the Long Term Control Plan Update contained in the Long Term Control Plan Update Report in

accordance with the schedule in the approved Long Term Control
Plan Update Report.

    B.   Modification of Long Term Control Plan Update if
Anticipated Changes to Legal Requirements Do Not Occur

    1.   The CSO Policy recognizes that information
developed during the course of long term control planning may
serve as a basis for seeking revisions to water quality standards
or NPDES permit requirements, particularly where that information
demonstrates that it will not be feasible to attain water quality
standards.  If the Long Term Control Plan Update in the Long Term
Control Plan Update Report is based upon Defendants' belief that
the requirements of the Clean Water Act, U.S. EPA's CSO Policy,
Chapter 6111 of the Ohio Revised Code and/or the rules
promulgated thereunder, and/or the Compact, and/or the pollution
control standards promulgated thereunder will be revised, and if
information subsequently becomes available that indicates that
those revisions are not going to occur in the manner set forth in
Defendants' Long Term Control Plan Update Report, U.S. EPA, Ohio
EPA, or ORSANCO may notify Defendants in writing that the
expected revisions are not going to occur.

    2.   Within 180 days of their receipt of the written
notice described above, Defendants must submit to U.S. EPA/Ohio
EPA/ORSANCO for review and approval a Revised Long Term Control
Plan Update that includes all of the elements of a Long Term

Control Plan Update set out in Paragraph VII.A above and
Paragraph II.H.4 of the Long Term Control Plan Update Work Plan
(including a schedule that is as expeditious as practicable for
completion of the remedial measures but that may be later than
February 28, 2022, if it is not practicable to complete those
measures by that date), but does not assume or rely on water
quality standards that have not been revised or approved by Ohio
EPA, U.S. EPA and ORSANCO, and does not assume or rely on NPDES
permit requirements that have not been included in an NPDES
permit to which U.S. EPA did not object.

    3.  U.S. EPA/Ohio EPA/ORSANCO may approve the Revised
Long Term Control Plan Update or decline to approve it and
provide written comments.  Within 90 days of receiving U.S.
EPA's/Ohio EPA's/ORSANCO's written comments, Defendants shall
either: (i) alter the Revised Long Term Control Plan Update
consistent with U.S. EPA's/Ohio EPA's/ORSANCO's written comments,
and submit the Revised Long Term Control Plan Update to U.S.
EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the
matter for dispute resolution under Section XXI of this Decree.

    4.  Upon receipt of U.S. EPA's/Ohio EPA's/ORSANCO's
final approval of the Revised Long Term Control Plan Update, or
upon completion of the Revised Long Term Control Plan Update
pursuant to dispute resolution, Defendants shall implement the
Revised Long Term Control Plan Update in accordance with the

schedule included in the approved Revised Long Term Control Plan
Update.

**C.    Evaluation and Correction Period**

    1.    At any point following the Substantial Completion
of Construction and implementation of any measures specified in
the Long Term Control Plan Update, up to and including two years
after Substantial Completion of Construction of all measures
specified in the Long Term Control Plan Update, Defendants may
evaluate the effectiveness of the work completed.

    2.    If Defendants need additional time to implement
additional remedial measures necessary to meet the requirements
set forth in Subparagraph VII.D.2, they may petition U.S.
EPA/Ohio EPA/ORSANCO for an extension of the previously
applicable deadline for Substantial Completion of Construction of
all of the measures specified in the Long Term Control Plan
Update to allow for the implementation of additional remedial
measures.  Such petition shall include the reason(s) that the
deadline extension is deemed necessary and a general description
of the additional measures that may be needed (if known) and
shall be submitted no later than thirty (30) days from the end of
the two-year evaluation period.  Defendants shall submit a
petition as soon as practicable after they identify a problem(s)
that they believe warrants correction, and may submit more than
one petition if they identify multiple problems.

24

3.    U.S. EPA/Ohio EPA/ORSANCO may approve the petition or decline to approve it and provide written comments, provided however, that U.S. EPA's/Ohio EPA's/ORSANCO's approval shall not be arbitrarily and capriciously denied if the measures have been designed and constructed in accordance with the Long Term Control Plan Update or Revised Long Term Control Plan Update approved by U.S. EPA/Ohio EPA/ORSANCO pursuant to Paragraph VII.A.4 or VII.B.4 of this Decree, as applicable.  Within 45 days of receiving U.S. EPA's/Ohio EPA's/ORSANCO's written comments, Defendants shall either: (i) alter the petition consistent with U.S. EPA's/Ohio EPA's/ORSANCO's written comments, and submit the petition to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.   Upon receipt of U.S. EPA's/Ohio EPA's/ORSANCO's final approval of the petition, or upon completion of the petition pursuant to dispute resolution, Defendants shall have 90 days to submit an Addendum to the Long Term Control Plan Update that identifies the additional remedial measures that need to be implemented and includes all of the elements set forth in VII.A, above, and Paragraph II.H.4 of the Long Term Control Plan Update Work Plan (Exhibit 4) (including a schedule that is as expeditious as practicable for completion of the additional remedial measures) to U.S. EPA/Ohio EPA/ORSANCO for review and approval.

4.    U.S. EPA/Ohio EPA/ORSANCO may approve the Addendum to the Long Term Control Plan Update or decline to approve it and provide written comments.  Within 90 days of receiving U.S. EPA's/Ohio EPA's/ORSANCO's written comments, Defendants shall either: (i) alter the Addendum to the Long Term Control Plan Update consistent with U.S. EPA's/Ohio EPA's/ORSANCO's written comments, and submit the Addendum to the Long Term Control Plan Update to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.

5.    Upon receipt of U.S. EPA's/Ohio EPA's/ORSANCO's final approval of the Addendum, or upon completion of the Addendum pursuant to dispute resolution, Defendants shall implement the Addendum to the Long Term Control Plan Update in accordance with the schedule included in the approved Addendum.

**D.    Compliance after Implementation**

1.    The remedial measures specified in the Long Term Control Plan Update, the Revised Long Term Control Plan Update, or the Addendum to the Long Term Control Plan Update, as applicable, shall be constructed in accordance with the design criteria set forth in the Long Term Control Plan Update, as applicable, the Revised Long Term Control Plan Update, or the Addendum; and once constructed and placed in service, shall meet the performance criteria set forth in the Long Term Control Plan

26

Update, the Revised Long Term Control Plan Update, or the Addendum to the Long Term Control Plan Update, as applicable, and shall be operated and maintained in a manner consistent with the goal of reducing pollutant discharges.

       2.   Upon Substantial Completion of Construction of all measures under the Long Term Control Plan Update, the Revised Long Term Control Plan Update, or the Addendum to the Long Term Control Plan Update, as applicable, Defendants' CSOs shall comply with the Clean Water Act, U.S. EPA's CSO Policy, Chapter 6111 of the Ohio Revised Code and the rules promulgated thereunder, the Compact and the pollution control standards promulgated thereunder, and Defendants' Current Permits, and Defendants shall not have Unpermitted Overflows.

## VIII.    IMPLEMENTATION OF CAPACITY ASSURANCE PROGRAM PLAN

     A.   A Capacity Assurance Program Plan ("CAPP"), including a schedule for implementation, is required to be developed pursuant to Subparagraph VII.E.8 of the SSO Decree, although the SSO Decree does not specify a date for completion of construction. Pursuant to Subparagraph VII.E.8 of the SSO Decree, the CAPP must identify additional feasible remedial measures that have the goal of eliminating all capacity-related SSOs and/or that are necessary to insure that there is adequate capacity in the Sanitary Sewer System under current and projected future

27

conditions such that there will be no capacity-related SSOs under projected future conditions.  The Parties intend that this Consent Decree shall govern the implementation schedule for the CAPP in that such schedule shall be as expeditious as practicable, but, except as provided in Section IX (Completion of Construction Deadlines), the date for Substantial Completion of Construction of all construction under the CAPP shall be no later than February 28, 2022.  Upon receipt of U.S. EPA's/Ohio EPA's final approval of the CAPP in accordance with Subparagraph VII.E.8 of the SSO Decree, or upon completion of the CAPP pursuant to dispute resolution under the SSO Decree, the CAPP shall be incorporated into this Consent Decree, and Defendants shall implement the CAPP in accordance with the schedule included in the approved CAPP.

B.    **Evaluation and Correction Period**

1.    At any point following completion of construction and implementation of any measure specified in the CAPP, up to and including two years after completion of all measures specified in the CAPP for a particular Sub-Basin, Defendants may evaluate the effectiveness of the work completed.

2.    If Defendants need additional time to eliminate SSOs from SSO Outfalls other than SSO 700 or to correct other problems identified during the evaluation period, they may petition U.S. EPA/Ohio EPA/ORSANCO for an extension of the

previously applicable deadline for completion of work in that
Sub-Basin to allow for the implementation of additional remedial
measures in or concerning that Sub-Basin.  Such petition shall
include the reason(s) that the deadline extension is deemed
necessary and shall be submitted no later than thirty (30) days
from the end of the two-year evaluation period.  Defendants shall
submit a petition as soon as practicable after they identify a
problem(s) that they believe warrants correction, and may submit
more than one petition if they identify multiple problems.

      3.    U.S. EPA/Ohio EPA/ORSANCO may approve the petition
or decline to approve it and provide written comments, provided
however, that U.S. EPA/Ohio EPA/ORSANCO's approval shall not be
arbitrarily and capriciously denied if the permanent remedial
measures have been designed and constructed in accordance with
the CAPP approved by U.S. EPA/Ohio EPA/ORSANCO pursuant to
Paragraph VII.E.8 of the SSO Decree.  Within 45 days of receiving
U.S. EPA/Ohio EPA/ORSANCO's written comments, Defendants shall
either: (i) alter the petition consistent with U.S. EPA/Ohio
EPA/ORSANCO's written comments, and submit the petition to U.S.
EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the
matter for dispute resolution under Section XXI of this Decree.

      4.    Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final
approval of the petition, or upon completion of the petition
pursuant to dispute resolution, Defendants shall have 90 days to

submit a CAPP Addendum (including a schedule, including the
critical construction milestones set forth in Subparagraph
VII.E.5 of the SSO Decree, that is as expeditious as practicable
for completion of the additional remedial measures) to U.S.
EPA/Ohio EPA/ORSANCO for review and approval.

5.   U.S. EPA/Ohio EPA may approve the CAPP Addendum or
decline to approve it and provide written comments.  Within 90
days of receiving U.S. EPA/Ohio EPA/ORSANCO's written comments,
Defendants shall either: (i) alter the CAPP Addendum consistent
with U.S. EPA/Ohio EPA/ORSANCO's written comments, and submit the
CAPP Addendum to U.S. EPA/Ohio EPA/ORSANCO for final approval; or
(ii) submit the matter for dispute resolution under Section XXI
of this Decree.

6.   Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final
approval of the CAPP Addendum, or upon completion of the CAPP
Addendum pursuant to dispute resolution, Defendants shall
implement the Addendum in accordance with the schedule included
in the approved revised Plan.

IX.  **COMPLETION OF CONSTRUCTION DEADLINES**

A.   **Extension of Deadlines If There Are Not Adequate
Precipitation Events to Allow for Collection of Monitoring Data**

The deadlines contained in Section VII of the Consent Decree
for submission of the Long Term Control Plan Update Report and

Substantial Completion of Construction of all remedial measures specified in the Long Term Control Plan Update are premised on the assumption that there will be sufficient precipitation for Defendants to complete wet-weather sampling in accordance with the Monitoring and Modeling Work Plan attached to this Consent Decree as Exhibit 3. Specifically, the deadlines are premised on the assumption that there will be sufficient precipitation for Defendants to complete, by October 15, 2005: wet-weather sampling of CSOs, SSOs and stormwater discharges; and for wet-weather sampling in receiving streams other than the Ohio River, for three separate wet-weather events; and for wet-weather sampling in the Ohio River, for one or two events wet-weather events, as provided in Paragraph 2.2.2 of the Monitoring and Modeling Work Plan (see <u>Dry and Wet-Weather Events</u>). If there have not been adequate precipitation events to meet these requirement, Defendants shall notify U.S. EPA/Ohio EPA/ORSANCO in writing as to which requirement(s) has or have not been met and then shall continue performing wet-weather sampling, as expeditiously as practicable, until such requirement(s) has/have been met, and the deadlines for submission of the Long Term Control Plan Update Report and Substantial Completion of Construction of all remedial measures specified in the Long Term Control Plan Update shall be extended by the number of days after October 15, 2005, that it takes for Defendants to complete the

31

additional wet-weather sampling in accordance with the Monitoring and Modeling Work Plan.

**B.    Extension of Deadlines If Capital Costs Exceed $1.5 Billion**

The schedule for Substantial Completion of Construction for the remedial measures in the Long Term Control Plan Update and the Capacity Assurance Program Plan shall be as expeditious as practicable, but in no event later than February 28, 2022, unless Defendants demonstrate that the expected capital costs (in 2006 dollars) of the remedial measures in the Long Term Control Plan Update and the CAPP are expected to exceed $1.5 billion.  If such capital costs are expected to exceed $1.5 billion, then the deadline for completion of all remedial measures specified in the Long Term Control Plan Update and the CAPP must be specified in the Plan(s) and must still be as expeditious as practicable, but may be later than February 28, 2022, if it is not practicable to complete the CAPP and Long Term Control Plan Update remedial measures by that date.

1.    <u>Sewer Relining and Manhole Rehabilitation Measures</u>:  Defendants may include a Sewer Relining and Manhole Rehabilitation Program Plan (consisting of capital measures designed to reduce infiltration and inflow) as an element of their Long Term Control Plan Update, in accordance with the Paragraph II.E.3 of the Long Term Control Plan Update Work Plan

32

(Exhibit 4).  The expected capital costs of any such measures
included in the approved Long Term Control Plan Update may be
included in determining whether the capital costs for remedial
measures set forth above in this Paragraph are expected to exceed
$1.5 billion.

2.  <u>Water-in-Basement Capital Expenditures</u>:
Defendants may include measures necessary to meet the adequate
capacity requirements of Paragraph XIII.D, including measures
implemented pursuant to the Water-in-Basement Prevention Program
(Exhibit 6), as an element of their Long Term Control Plan
Update, in accordance with Paragraph II.E.3 of the Long Term
Control Plan Update Work Plan (Exhibit 4).  The expected capital
costs of any such measures included in the approved Long Term
Control Plan Update may be included in determining whether the
capital costs for remedial measures set forth above in this
Paragraph are expected to exceed $1.5 billion.

3.  <u>Remedial Measures for Complying With New Legal
Requirements</u>:  The parties recognize that Defendants' NPDES
permits pertaining to their WWTPs or Sewer System may be revised
in the future to contain new or more stringent requirements, and
that it may be necessary for Defendants to construct remedial
measures in addition to those that will otherwise be required by
the Long Term Control Plan Update and CAPP.  Defendants may
include remedial measures necessary to comply with new or more

33

stringent requirements that are included or expected to be included in future NPDES permits pertaining to their WWTPs or Sewer System as an element of their Long Term Control Plan Update, in accordance with Paragraph II.E.3 of the Long Term Control Plan Update Work Plan (Exhibit 4).  The expected capital costs of any such measures included in the approved Long Term Control Plan Update may be included in determining whether the capital costs for remedial measures set forth above in this Paragraph are expected to exceed $1.5 billion.

X.    **POST-CONSTRUCTION MONITORING STUDY**

A.    Within five years of approval of the Long Term Control Plan Update Report, Defendants shall submit to U.S. EPA/Ohio EPA/ORSANCO, for approval, a Work Plan for conducting an ongoing study or series of studies ("Post-Construction Monitoring Study") to help determine:  1) whether the Long Term Control Plan Update measures, when completed, meet all design criteria and performance criteria specified in the Long Term Control Plan Update; 2) whether Defendants' CSOs comply with the requirements of the Clean Water Act, U.S. EPA's CSO Policy, Chapter 6111 of the Ohio Revised Code and the rules promulgated thereunder, the Compact and the pollution control standards promulgated thereunder, and Defendants' Current Permits; and 3) that there are no Unpermitted Overflows.

B.   The Work Plan shall contain a schedule for performance of the study or series of studies at key points during the course of implementation of the remedial measures, as well as after completion of the remedial measures, specified in the Long Term Control Plan Update and Capacity Assurance Program Plan.  The Work Plan also shall indicate the years (at least biannually) in which data generated during implementation of the Work Plan will be included in the last Quarterly Report submitted under Section XV of this Consent Decree.

C.   U.S. EPA/Ohio EPA/ORSANCO may approve the Post-Construction Monitoring Study Work Plan or may decline to approve it and provide written comments.  Within sixty (60) days of receiving U.S. EPA's/Ohio EPA's/ORSANCO's comments, Defendants shall either: (i) alter the Post-Construction Monitoring Study Work Plan consistent with U.S. EPA's/Ohio EPA's/ORSANCO's comments, and submit the Work Plan to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.

D.   Upon receipt of U.S. EPA's/Ohio EPA's/ORSANCO's final approval of the Post-Construction Monitoring Study Work Plan, or upon completion of the Work Plan pursuant to dispute resolution, Defendants shall implement the approved Work Plan in accordance with the schedule in the approved Work Plan.

E.   Within one hundred twenty (120) days after completion of the Post-Construction Monitoring Study, Defendants shall submit a Final Post-Construction Monitoring Report to U.S. EPA/Ohio EPA/ORSANCO, for review, comment and approval, that:

1.   demonstrates that Defendants performed the Post-Construction Monitoring Study in accordance with the approved Work Plan and schedule set forth in the approved Work Plan; and

2.   summarizes the data collected during the Post-Construction Monitoring Study and analyzes whether the completed control measures have met and/or are meeting the design and performance criteria specified in the Long Term Control Plan Update and whether Defendants' CSOs comply with the requirements of the Clean Water Act, U.S. EPA's CSO Control Policy, the Compact and the pollution control standards promulgated thereunder, and Defendants' Current Permits.

F.   U.S. EPA/Ohio EPA/ORSANCO may approve the Final Post-Construction Monitoring Report or may decline to approve it and provide written comments.  Within sixty (60) days of receiving U.S. EPA's/Ohio EPA's/ORSANCO's comments, Defendants shall either: (i) alter the Final Post-Construction Monitoring Report consistent with U.S. EPA's/Ohio EPA's/ORSANCO's comments, and submit the Report to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.  Approval of the Final Post-

Construction Monitoring Report only constitutes U.S. EPA's/Ohio
EPA's/ORSANCO's approval that the report contains the information
required by Paragraph X.E; it does not mean that U.S. EPA/Ohio
EPA/ORSANCO believe Defendants have complied with any other
requirement of this Consent Decree or the law.

XI.  **REMEDIAL MEASURES ADDRESSING NINE MINIMUM CONTROLS**

   A.   **CSO Operation and Maintenance Plan Requirement**

   Defendants shall comply with the operation and maintenance
requirements of Defendants' Current Permits applicable to
Defendants' Sewer System.

   B.   **CSO Public Notification Program**

   Defendants shall implement the CSO Public Notification
Program attached to this Consent Decree as Exhibit 5.

   C.   **Maximization of Transport and Storage**

      1.   Defendants shall perform a study, the
"Maximization of Transport and Storage Study," that will focus on
initial flow maximization opportunities already identified by
Defendants' ongoing efforts known as the "Real Time Control
Analysis" Project.  The "Real Time Control Analysis" Project is
an evaluation of Defendants' Combined Sewer System using
Defendants' Sewer System Hydraulic Model, to identify
opportunities for making Minor Modifications to Defendants' Sewer
System to increase the amount of sewage that could be transported

through Defendants' Combined Sewer System, or stored for later transport, to Defendants' WWTPs for treatment.  "Minor Modifications" shall include any of the measures described in Sections 3.1 and 5.1 of U.S. EPA's "Guidance for Nine Minimum Controls," but shall not include remedial measures for increasing capacity to address wet weather flows involving significant engineering studies or major construction, as such measures for increasing capacity to address wet weather flows will instead be addressed by the Long Term Control Plan Update.  This evaluation has already identified opportunities for making Minor Modifications in the following five areas:  four CSO areas in the Mill Creek Basin (Badgely Run, Ross Run, Lick Run, and Mitchell Avenue) where inflatable dams may be practical; and at the headworks of the Little Miami WWTP, where an alternative pumping strategy may provide additional capture of combined sewage.  The "Maximization of Transport and Storage Study" shall focus on the assessment of the feasibility, cost, and expected performance of each of the opportunities in the five areas described in the preceding sentence.

        2.   By March 31, 2005, Defendants shall submit to U.S. EPA/Ohio EPA/ORSANCO for review, comment and approval, a report, the "Maximization of Transport and Storage Report," that contains the following:

(a)   Information that demonstrates that Defendants performed the Maximization of Transport and Storage Study in accordance with Subparagraph XI.C.1;

(b)   The results of the study including, but not limited to, an identification of all Minor Modifications that could practically be made to the five aforementioned areas of Defendants' Combined Sewer System to increase the amount of sewage that could be transported through Defendants' Combined Sewer System, or stored for later transport, to Defendants' WWTPs for treatment;

(c)   To the extent that Defendants conclude that Minor Modifications could not be made with regard to each of the five areas specified in Subparagraph XI.C.1, a detailed explanation as to the basis of that conclusion for each specific location and Minor Modification; and

(d)   For all Minor Modifications identified in accordance with Subparagraph XI.C.2(b) that could be made to the five aforementioned areas of Defendants' Combined Sewer System, a "Minor Modifications Implementation Plan" that identifies recommended measures, and includes an estimate of capital costs and a schedule that is as expeditious as practicable for implementation of those measures.

3.   U.S. EPA/Ohio EPA/ORSANCO may approve the Maximization of Transport and Storage Report or decline to

approve it and provide written comments.  Within 60 days of
receiving U.S. EPA/Ohio EPA/ORSANCO's written comments,
Defendants shall either: (i) alter the Maximization of Transport
and Storage Report consistent with U.S. EPA/Ohio EPA/ORSANCO's
written comments, and submit the Maximization of Transport and
Storage Report to U.S. EPA/Ohio EPA/ORSANCO for final approval;
or (ii) submit the matter for dispute resolution under Section
XXI of this Decree.

      4.   Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final
approval of the Maximization of Transport and Storage Report, or
upon completion of the Report pursuant to dispute resolution,
Defendants shall implement the Minor Modifications Implementation
Plan contained in the Maximization of Transport and Storage
Report in accordance with the schedule in the approved
Maximization of Transport and Storage Report.

    D.   **Non-High Water Dry Weather Combined Sewer Overflows**

      1.   Defendants shall perform a study, the "Non-High
Water Dry Weather Overflow Study," of records that Defendants
currently possess pertaining to CSOs (*e.g.*, citizen complaints;
Sewer System operation, maintenance and inspection records; CSO
monitoring reports) that have occurred subsequent to April 30,
2001, to determine whether any of Defendants' CSO outfalls have
discharged more than twenty-four hours after a precipitation
event, as a result of other than High Water Conditions or as a