result of other than continued runoff or infiltration and inflow from a precipitation event, on more than one occasion subsequent to April 30, 2001; and to identify measures to prevent or reduce, to the maximum extent practicable, such discharges from such specified outfalls. For the purposes of this Study only, "High Water Conditions" shall mean situations where elevated surface water levels inundate portions of Defendants' collection system so as to cause discharge to take place more than 24 hours after a precipitation event, and the phrase "more than 24 hours after a precipitation event" shall mean the time period beginning 24 hours after the last precipitation fell in a particular event.

2.    By October 31, 2004, Defendants shall submit to U.S. EPA/Ohio EPA/ORSANCO for review, comment and approval, a report, the "Non-High Water Dry Weather Overflow Report," that contains the following:

(a)    Information that demonstrates that Defendants performed the Non-High Water Dry Weather Overflow Study in accordance with Subparagraph XI.D.1;

(b)    Description of the records that Defendants reviewed and the methodology used to carry out the Study;

(c)    The results of the study including, but not limited to, an identification of all CSO outfalls that discharged more than twenty-four hours after a precipitation

41

event, as a result of other than High Water Conditions or as a result of other than continued runoff or infiltration and inflow from a precipitation event, on more than one occasion subsequent to April 30, 2001;

(d)  For each CSO outfall identified in accordance with Subparagraph XI.D.2(c), a description of the cause(s) (if known) of the CSO discharges that occurred more than twenty-four hours after a precipitation event, as a result of other than High Water Conditions or as a result of other than continued runoff or infiltration and inflow from a precipitation event, on more than one occasion subsequent to April 30, 2001; a description of remedial measures (such as repairing or replacing failing or outdated equipment; increasing maintenance activities; raising overflow weirs or increasing interceptor connection pipe size) that are needed to prevent or reduce, to the maximum extent practicable, future discharges occurring from the identified CSO outfalls as a result of other than High Water Conditions or as a result of other than continued runoff or infiltration and inflow from a precipitation event; and

(e)  For all remedial measures identified in accordance with Subparagraph XI.D.2(d), a "Non-High Water Dry Weather Overflow Reduction Implementation Plan" that contains an estimate of capital cost and a schedule that is as expeditious as practicable for implementation of those measures, except that

42

Defendants need not include a schedule for implementation of remedial measures that are already included in the list of Capital Improvement Projects attached as Exhibit 1 to this Consent Decree or for remedial measures for increasing capacity to address wet weather flows, as measures for increasing capacity to address wet weather flows will instead be addressed by the Long Term Control Plan Update.

    3.    U.S. EPA/Ohio EPA/ORSANCO may approve the Non-High Water Dry Weather Overflow Report or decline to approve it and provide written comments.  Within 60 days of receiving U.S. EPA/Ohio EPA/ORSANCO's written comments, Defendants shall either: (i) alter the Non-High Water Water Dry Weather Overflow Report, consistent with U.S. EPA/Ohio EPA/ORSANCO's written comments, and submit the Non-High Water Dry Weather Overflow Report to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.

    4.    Upon receipt of U.S. EPA/Ohio EPA/ORSANCO's final approval of the Non-High Water Dry Weather Overflow Report, or upon completion of the Report pursuant to dispute resolution, Defendants shall implement the Non-High Water Dry Weather Overflow Reduction Implementation Plan contained in the Non-High Water Dry Weather Overflow Report in accordance with the schedule in the approved Non-High Water Dry Weather Overflow Report.

**E.    Control of Solid and Floatable Materials in CSOs**

1.    Defendants shall comply with all requirements in Defendants' Current Permits regarding control of solid and floatable materials in CSOs.

2.    Defendants shall perform an engineering study, the "Control of Solid and Floatable Materials in CSOs Study," to identify the costs, benefits and effectiveness of all past (within the last five years), current and future measures that Defendants have taken, are taking or will be taking to control solid and floatable materials in Defendants' CSOs; and to identify and evaluate the need, costs, benefits, effectiveness and feasibility of Defendants' implementing (in addition to those measures identified above that Defendants have, are or will be implementing) the measures described in Section 7 of U.S. EPA's "Guidance for Nine Minimum Controls."

3.    By December 1, 2004, Defendants shall submit to U.S. EPA/Ohio EPA/ORSANCO for review, comment and approval, a report, the "Control of Solid and Floatable Materials in CSOs Report," that contains the following:

(a)    Information that demonstrates that Defendants' performed the Control of Solid and Floatable Materials in CSOs Study in accordance with Subparagraph XI.E.2, including a description of the steps that Defendants took to obtain the information specified in Subparagraph XI.E.2;

44

   (b) The results of the study including, but not limited to, a description of the need, costs, benefits and effectiveness of all past (within the last five years), current and future measures that Defendants have taken, are taking or will be taking to control solid and floatable materials in Defendants' CSOs; a description of the costs, benefits, effectiveness and feasibility of Defendants' implementing (in addition to those measures identified above that Defendants have, are or will be implementing) the measures described in Section 7 of U.S. EPA's "Guidance for Nine Minimum Controls;" and, to the extent that Defendants are not implementing any of the measures described in Section 7, an explanation as to why Defendants are not doing so.

   4. U.S EPA/Ohio EPA/ORSANCO may approve the Control of Solid and Floatable Materials in CSOs Report or decline to approve it and provide written comments. Within 60 days of receiving U.S. EPA/Ohio EPA/ORSANCO's written comments, Defendants shall either: (i) alter the Control of Solid and Floatable Materials in CSOs Report consistent with U.S. EPA/Ohio EPA/ORSANCO's written comments, and submit the Control of Solid and Floatable Materials in CSOs Report to U.S. EPA/Ohio EPA/ORSANCO for final approval; or (ii) submit the matter for dispute resolution under Section XXI of this Decree.

XII. **COMPLIANCE WITH EFFLUENT LIMITATIONS; MONITORING, RECORD-KEEPING AND REPORTING REQUIREMENTS; AND OPERATION AND MAINTENANCE REQUIREMENTS AT WASTEWATER TREATMENT PLANTS**

Defendants shall comply with the effluent limitations; monitoring, record-keeping and reporting requirements; and operation and maintenance requirements of Defendants' Current Permits applicable to Defendants' Wastewater Treatment Plants. These limitations and requirements include, but are not limited to, the requirements in Parts I.A, I.B, II (other than Pretreatment Requirements), and III.3-III.7 of Defendants' Current Permits applicable to Defendants' Wastewater Treatment Plants.

XIII. **WATER-IN-BASEMENT PROGRAM**

Defendants shall implement the Water-in-Basement Program components set forth in Paragraphs XIII.A, XIII.B, and XIII.C, below, and Exhibits 6, 7, and 8, until the Consent Decree terminates in accordance with Section XXXIII.

A. **Prevention of Water-in-Basement**

Defendants shall implement, in accordance with the requirements and schedules therein, the Water-in-Basement (WIB) Prevention Program, attached to this Consent Decree as Exhibit 6. The WIB Prevention Program shall utilize a variety of remedial

measures to address WIBs, including but not limited to, installation of grinder pump systems, and property purchase.

**B.    Water-in-Basement Customer Service Program**

1.    Defendants shall implement, in accordance with the requirements and schedules therein, the Water-In-Basement Customer Service Program Plan, attached to this Consent Decree as Exhibit 7, to promptly clean up WIB and to otherwise assist customers who experience WIB with cleanup activities.

2.    Defendants shall initially fund the Water-in-Basement Customer Service Program from the monies currently accumulated in the Environmental Security Account established pursuant to Section XVIII of the Consent Order dated August 16, 1985 in Civil Action C-1-85-0693.  When those funds are depleted, Defendants shall continue to implement the program in accordance with the requirements and schedules in Exhibit 7.

**C.    Water-in-Basement Claims Program**

Defendants shall implement, in accordance with the requirements and schedules therein, the Water-in-Basement Claims Process Plan, attached to this Consent Decree as Exhibit 8, to compensate customers who experience WIB for real or personal property losses or expenses.  Such losses may include, _inter alia_, building restoration costs, and loss of furniture and/or property stored in the flooded areas.

47

### D.    Adequate Capacity

Defendants shall implement remedial measures, including the WIB Prevention Program, to ensure that upon completion of implementation of the remedial measures required by the CAPP and the Long Term Control Plan Update, 1) Defendants' Sanitary Sewer System has adequate capacity to meet the requirements of Paragraph VIII.A of this Consent Decree, which includes not having any capacity-related SSOs under current and projected future conditions; and 2) Defendants' Combined Sewer System shall have capacity that is consistent with appropriate design standards or be equipped with other measures so as to prevent capacity-related WIBs.  Such "other measures" shall be consistent with the WIB Prevention Plan (Exhibit 6) and shall specifically not preclude continued discharge to Defendants' Sewer System by "WIB properties" during frequently encountered wet weather conditions.


### XIV. SUPPLEMENTAL ENVIRONMENTAL PROJECTS

A.    Defendants shall complete Supplemental Environmental Projects ("SEPs"), in accordance with the Supplemental Environmental Project Plan ("SEP Plan") attached to this Consent Decree as Exhibit 9, which the parties agree are intended to secure significant environmental protection and improvements that are not otherwise required by law.

48

B.    Defendants shall complete the SEPs pursuant to the plans and the time schedules set forth in the SEP Plan.

C.    Defendants shall spend at least $5.3 million implementing  the SEPs identified in the SEP Plan.  No part of this expenditure shall include federal or State funds, including federal or State low interest loans, contracts, or grants. Defendants shall include documentation of expenditures made in connection with the SEPs as part of the SEP Completion Reports required by Paragraph XIV.D, below.

D.    Defendants shall submit to U.S. EPA/Ohio EPA/ORSANCO a SEP Completion Report for each SEP described in the SEP Plan no later than 60 days from the date for completion of the SEP set forth in the SEP Plan.  The Report shall contain the following information for the SEP:  a) a detailed description of the SEP as implemented; b) a description of any operating problems encountered and the solutions thereto; c) itemized costs; d) certification that the SEP has been fully implemented pursuant to the SEP Plan and the provisions of this Consent Decree; e) a description of the environmental and public health benefits resulting from implementation of the SEP.

E.    U.S. EPA/Ohio EPA/ORSANCO may, in their discretion, require information in addition to that described in Paragraph XIV.D, in order to determine the adequacy of SEP completion or

eligibility of SEP costs, including additional cost documentation to support the itemized costs.

F.    Defendants hereby certify that they are not required to perform or develop the SEPs by any federal, state or local law or regulation; nor are Defendants required to perform or develop the SEPs by agreement, grant or as injunctive relief in this or any other case or in compliance with state or local requirements. Defendants further certify that they have not received, and are not presently negotiating to receive, credit for the SEPs in any other enforcement action or any proceeding involving the U.S. EPA or the Ohio EPA.

XV.    **REPORTING REQUIREMENTS**

A.    Beginning within the thirty (30) days of the close of the first full Calendar Quarter following the Date of Lodging of this Consent Decree, and within thirty (30) days of the close of each subsequent Calendar Quarter, Defendants shall submit to U.S. EPA, Ohio EPA, and ORSANCO a summary report containing the following information pertaining to the Calendar Quarter just concluded:  a brief synopsis of the current status of the major remedial measures (e.g., CIP projects, the Long Term Control Plan Update and its components, implementation of the CAPP, Post-Construction Monitoring, Nine Minimum Controls and its components, and the deliverables associated with, and

50

implementation of, those measures) specified in Sections VI - XI of this Consent Decree and of the SEPs (specified in Section XIV and the SEP Plan, Exhibit 9) and progress made with respect to such remedial measures and SEPs since the last report; an itemized accounting of costs expended for each SEP during the quarter; the number of Permit(s) to Install that have been applied for and/or issued; and a description of compliance or non-compliance with the requirements of this Consent Decree and, if applicable, reasons for non-compliance.  This report shall also identify any anticipated delays in the completion of any of the remedial measures specified in Sections VI - XI of this Consent Decree or of the SEPs specified in Section XIV and the SEP Plan, Exhibit 9.  It is anticipated that these reports will provide summary information, preferably in the form of narrative tables.  Notification to U.S. EPA, Ohio EPA, or ORSANCO pursuant to this Paragraph of any anticipated delay, shall not, by itself, excuse the delay.

   B.    Defendants also shall include in the quarterly reports required by Paragraph XV.A a description of whether any CSO or bypass that occurred in the previous Calendar Quarter was caused by Defendants' failure to comply with their Operation and Maintenance Program (SSO Consent Decree Exhibit 7), their Pump/Lift Station Operation and Maintenance Procedures (SSO Consent Decree Exhibit 9), or the operation and maintenance

51

requirements of Defendants' Current Permits applicable to
Defendants' Sewer System or Wastewater Treatment Plants; or
whether Defendants' failure to comply with any of these O&M
requirements contributed to the volume or the duration of any CSO
or bypass that occurred in the previous Calendar Quarter.

    C.   Defendants also shall include in the quarterly reports
required by Paragraph XV.A, a report concerning implementation of
the Water-in-Basement Program, required by Section XIII and
Exhibits 6, 7, and 8.  This report shall include for the previous
calendar quarter: 1) as to the Water-in-Basement Prevention
Program (Exhibit 6), the date and address of any requests for
installation of devices, the date and disposition of any such
requests (including what type of device, if any, was installed),
the address, date, and disposition of any other investigations or
installations that defendants initiate under the program; 2) as
to the Water-in-Basement Customer Service Program (Exhibit 7),
the address of each customer that has requested customer service
under the program, the date of the request, the disposition of
the request (e.g., service request denied, initial investigation
completed, cleanup completed) and the date of the disposition; 3)
as to the Water-in-Basement Claims Program (Exhibit 8), the
address of the claimant, the date the claim was made, the amount
of the claim, the disposition of the claim (including the amount
paid if any), the date of the disposition, or whether the claim

is still pending.  In addition, defendants shall report annually, beginning with the quarterly report submitted after the first anniversary of the Date of Lodging of this Decree, the amount Defendants spent in the previous year on remedial measures under the WIB Prevention Program (Exhibit 6).

## XVI. DOCUMENT RETENTION/CERTIFICATION OF SUBMISSIONS

A.   Defendants shall maintain copies of any underlying research and data in their possession, custody or control for any and all documents, reports, or permits submitted to U.S. EPA/Ohio EPA/ORSANCO pursuant to this Consent Decree for a period of five (5) years after submission.  Defendants shall require any independent contractor(s) implementing this Consent Decree to also retain such materials for a period of five (5) years. Defendants shall submit such supporting documents to U.S. EPA/Ohio EPA/ORSANCO upon request.

B.   At the conclusion of this document retention period, Defendants shall notify U.S. EPA, Ohio EPA, ORSANCO, U.S. Department of Justice, and the Ohio Attorney General at least 90 days prior to the destruction of any such materials, and upon request by any of these agencies, Defendants shall deliver any such materials to that agency or other specified agency.

C.   In all notices, documents or reports submitted to the United States, the State, and ORSANCO pursuant to this Consent

53

Decree, Defendants shall, by a senior management official, sign and certify such notices, documents and reports as follows:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## XVII.    <u>STIPULATED PENALTIES</u>

A.    Defendants shall pay stipulated penalties, as set forth below, for each day they fail to timely submit submittals or meet any of the milestones or requirements set forth in Paragraphs XVII.C through XVII.H, below. Except as provided in Paragraph XVII.H, one-third of the total stipulated penalty amount due shall be paid to the United States, one-third shall be paid to the State, and one-third shall be paid to ORSANCO. All stipulated penalties arising under this Section shall, in the first instance, be levied against funds collected under Section 6117 of the Ohio Revised Code for the operation of MSD to the extent such funds are available, without limitation on recourse by the United States, the State, or ORSANCO in the event that such funds are not available within the sixty (60) day period for

payment specified by Paragraph XVII.J or are insufficient to pay such stipulated penalties.

B.    "Timely submit", as used in this Section, shall mean that the submittal is made by the date specified in this Consent Decree or in a document approved pursuant to this Consent Decree. "Timely submit" shall further mean that the submittal must include all of the elements pertaining to the submittal as set forth in this Consent Decree or in a document approved pursuant to this Consent Decree.

C.    **Stipulated Penalties for Critical Path Submittals and Critical Remedial Milestones**

1.    Defendants shall be subject to the following stipulated penalties for a failure to timely submit the submittals listed in Subparagraph XVII.C.2, below, or for a failure to meet the critical remedial milestones set forth in Subparagraph XVII.C.2, below, in accordance with all requirements and objectives provided under this Consent Decree or in submittals subsequently approved by U.S. EPA/Ohio EPA/ORSANCO pursuant to the provisions of this Consent Decree:

| | |
|---|---|
| 1-30 days | $1500/day |
| 31-60 days | $3000/day |
| over 60 days | $5000/day |

2.   The following submittals are "critical path submittals," subject to the stipulated penalties of Subparagraph XVII.C.1, above:

- Long Term Control Plan Update Report

- Addendum to the Long Term Control Plan Update

- Revised Long Term Control Plan Update

- CAPP Addendum

- Post-Construction Monitoring Study Work Plan

- Final Post-Construction Monitoring Report

- Maximization of Transport and Storage Report

- Non-High Water Dry Weather Overflow Report

- Control of Solid and Floatable Materials in CSOs Report

The following deadlines are "critical milestones," subject to the stipulated penalties of Subparagraph XVII.C.1, above:

- the Dates for Substantial Completion of Construction for each CIP set forth in Exhibit 1

- the "critical construction milestones" set forth in the construction schedules contained in the approved Long Term Control Plan Update, Addendum to the Long Term Control Plan Update or Revised Long Term Control Plan Update

- the "critical construction milestones," as required by Subparagraph VII.E.5 of the SSO

56

Decree, set forth in the construction schedules
contained in the approved Capacity Assurance
Program Plan and/or Capp Addendum

- the date for completion of all measures under the
Minor Modification Implementation Plan, as
required by Subparagraph XI.C.4, set forth in the
approved Maximization of Transport and Storage
Report

- the date for completion of all measures under the
Non-High Water Dry Weather Overflow Reduction
Implementation Plan, as required by Subparagraph
XI.D.4, set forth in the approved Non-High Water
Dry Weather Overflow Report

**D.    Stipulated Penalties for Reporting Requirements**

Defendants shall be subject to the following stipulated penalties
for a failure to timely submit any of the reports required by
Section XV or any post-construction monitoring reports required
by Paragraph X.B of this Consent Decree:

| | |
|---|---|
| 1-7 days | $500/day |
| 8-60 days | $1000/day |
| over 60 days | $1500/day |

E.    **Stipulated Penalties for Bypasses, CSOs, Unpermitted Overflows, and SSDs**

1.    <u>Bypasses and Pre-Remedial Measures CSOs and Unpermitted Overflows</u>

Defendants shall be subject to stipulated civil penalties of $1000 per day for each day of each bypass, CSO or Unpermitted Overflow that was caused by Defendants' failure to comply with their O&M Program (SSO Decree Exhibit 7), their Pump/Lift Station O&M Procedures (SSO Decree Exhibit 9), the operation and maintenance requirements of Defendants' Current Permits applicable to Defendants' Sewer System, or the operation and maintenance requirements of Defendants' Current Permits applicable to Defendants' Wastewater Treatment Plants; or for which Defendants' failure to comply with any of these O&M requirements contributed to the volume or the duration of such CSO or bypass.  These stipulated civil penalties shall be in addition to any stipulated penalties under Paragraph XI.H of the SSO Decree for Defendants' failure to comply with their O&M Program (SSO Decree Exhibit 7) or their Pump/Lift Station O&M Procedures (SSO Decree Exhibit 9); or under Paragraph XVII.F of this Consent Decree for Defendants' failure to comply with the operation and maintenance requirements of Defendants' Current Permits applicable to Defendants' Sewer System and Wastewater Treatment Plants.  Defendants shall not be liable for stipulated

58

penalties under this subparagraph for CSOs or Unpermitted

Overflows for which Defendants are liable for stipulated

penalties under subparagraph XVII.E.2.

    2.  <u>CSOs and Unpermitted Overflows Following</u>

<u>Completion of Remedial Measures Specified in the Long Term</u>

<u>Control Plan Update</u>

        (a)  Except as provided in Subparagraphs

XVII.E.2(b)-(c), Defendants shall be subject to a stipulated

penalty of $3000 per day for each day of each CSO or Unpermitted

Overflow that violates the Clean Water Act, U.S. EPA's CSO

Policy, the Compact and the pollution control standards

promulgated thereunder, or any of Defendants' Current Permits

that occurs after the later of 1) the date for completion of all

remedial measures specified in the Long Term Control Plan Update,

the Addendum to the Long Term Control Plan Update, or the Revised

Long Term Control Plan Update, as applicable, or 2) any schedule

completion date extensions or revisions that are made pursuant to

Paragraph VII.C of this Consent Decree.  However, U.S. EPA/Ohio

EPA/ORSANCO will not demand payment for stipulated penalties

under this subparagraph until after the two-year evaluation

period set forth in Paragraph VII.C of this Consent Decree and

shall not be entitled to stipulated penalties under this

subparagraph for CSOs or Unpermitted Overflows that occur prior

to the later of 1) the date for completion of all remedial

measures specified in the Long Term Control Plan Update, the
Addendum to the Long Term Control Plan Update, or the Revised
Long Term Control Plan Update, as applicable, or 2) any schedule
completion date extensions or revisions that are made pursuant to
Paragraph VII.C of this Consent Decree.

(b)  Defendants shall not be liable for
stipulated penalties under Subparagraph XVII.E.2(a) during the
six month period (a "shake down" period) following the date for
completion of all remedial measures specified in the Long Term
Control Plan Update, the Addendum to the Long Term Control Plan
Update, or the Revised Long Term Control Plan Update, as
applicable.

(c)  Defendants shall not be liable for
stipulated penalties for CSOs or Unpermitted Overflows that are
caused by a ten-year or greater storm event.

3.    SSDs Following Completion of Capacity Assurance
Program Plan

(a)  This Consent Decree does not include
provisions governing stipulated penalties for SSDs that occur
from any location prior to completion of the remedial measures
set forth in the Capacity Assurance Program Plan because
stipulated penalties for those SSDs are covered by Subparagraph
XI.E.1 of the SSO Decree.

60

(b)   Except as provided in Subparagraphs XVII.E.3(c)-(d), Defendants shall be subject to a stipulated penalty of $3000 per day for each day of each SSD within any Sub-Basin that occurs after the later of: (1) the date for completion of all remedial measures for the particular Sub-Basin pursuant to the Capacity Assurance Program Plan of the SSO Decree; or (2) any schedule completion date extensions or revisions that are made for that Sub-Basin pursuant to Paragraph VIII.B of this Consent Decree.  However, U.S. EPA/Ohio EPA/ORSANCO will not demand payment for stipulated penalties under this subparagraph until after the two-year evaluation period set forth in Paragraph VIII.B of this Consent Decree and shall not be entitled to stipulated penalties under this subparagraph for SSDs that occur prior to the later of the date for completion of all remedial measures for the particular Sub-Basin pursuant to the Capacity Assurance Program Plan of the SSO Decree or any schedule completion date extensions or revisions for that particular Sub-Basin that are made pursuant to Paragraph VIII.B of this Consent Decree.

(c)   Defendants shall not be liable for stipulated penalties under Subparagraph XVII.E.3(b) during the six month period (a "shake down" period) following the date for completion of all remedial measures for the particular Sub-Basin pursuant to the Capacity Assurance Program Plan.

(d)  Defendants shall not be liable for stipulated penalties for SSDs that are caused by a ten-year or greater storm event.

**F.    Stipulated Penalties for Violations of Exhibits, Submittals, and Permit O&M Requirements**

Unless already addressed in Paragraphs XVII.C-XVII.E, failure to comply with any of the following requirements shall subject Defendants to a stipulated penalty of $2,000 per day for each violation:

1.  The operation and maintenance requirements of Defendants' Current Permits applicable to Defendants' Sewer System and Wastewater Treatment Plants.

2.  Material requirements set forth in the following Exhibits or submittals (subsequently approved by U.S. EPA/Ohio EPA/ORSANCO pursuant to the provisions of this Consent Decree):

- Public Participation Plan (Exhibit 2)
- Monitoring and Modeling Work Plan (Exhibit 3)
- Long Term Control Plan Update Work Plan (Exhibit 4)
- Long Term Control Plan Update
- Addendum to Long Term Control Plan Update
- Revised Long Term Control Plan Update
- CAPP
- CAPP Addendum

62

- Post-Construction Monitoring Study Work Plan
- CSO Public Notification Program (Exhibit 5)
- Minor Modification Implementation Plan
- Non-high Water Dry Weather Overflow Reduction Plan
- Water-in-Basement Prevention Plan (Exhibit 6)
- Water-in-Basement Customer Service Program Plan (Exhibit 7)
- Water in Basement Claim Process Plan (Exhibit 8)

G.    **Stipulated Penalties for Violations of Effluent Limitations; Monitoring, Record-keeping and Reporting Requirements; and Control of Solid and Floatables Requirements**

1.    Effluent Limit Violations

Defendants shall be subject to the following stipulated penalties for failure to comply as required by Section XII of this Consent Decree with any effluent limitations in Defendants' Current Permits applicable to Defendants' WWTPs:

| | |
|---|---|
| Daily Effluent Limit | $1,000 per violation |
| 7-Day Average Limit | $2,000 per 7-Day violation |
| 30-Day Average Limit | $8,000 per 30-Day violation |

Loading limits and concentration limits for the same parameter are separate effluent limitations so that, for example, a violation of a 7-Day concentration limitation for suspended solids and a violation of a 7-Day loading limitation for suspended solids are separate violations. However, if Defendants

63

violate both the 7-Day average concentration limit and the 7-Day loadings limit for the same pollutant parameter for the same period of time at the same WWTP, Defendants shall only be subject a stipulated penalty for one of those violations.  If Defendants violate a 30-Day average limit, Defendants shall not be subject to stipulated penalties for any violations of 7-Day average limitations for the same parameter that occurred during that 30-Day period at the same WWTP.

> 2.   <u>Monitoring, Record-keeping, Reporting; and Control of Solids and Floatables Requirements</u>

Defendants shall be subject to the following stipulated penalties per day per violation for failure to comply with the monitoring, record-keeping, or reporting requirements of Defendants' Current Permits applicable to Defendants' WWTPs as required by Section XII of this Consent Decree, or the requirements in Defendants' Current Permits regarding control of solid and floatable materials in CSOs as required by Paragraph XI.E of this Consent Decree:

| | |
|---|---|
| 1-7 days | $500/day |
| 8-60 days | $1000/day |
| over 60 days | $1500/day |

H.   **Stipulated Penalties for the Supplemental Environmental Projects**

Defendants shall be subject to the following stipulated penalties for a failure to meet the milestones set forth in the SEP Plan (Exhibit 9), in accordance with all requirements and objectives provided under this Consent Decree or in submittals subsequently approved by U.S. EPA/Ohio EPA/ORSANCO pursuant to the provisions of this Consent Decree, or failure to timely submit the SEP Completion Reports, required by Paragraph XIV.D in accordance with the requirements of this Consent Decree:

| Period of Noncompliance | Penalty per Milestone Date per Day of Violation |
|---|---|
| 1st to 30th day | $ 1,000 |
| 31st to 60th day | $ 1,500 |
| After 60 days | $ 2,250 |

In addition, if the total amount expended on implementing the SEPs (including any SEP(s) pursuant to Section V (Additional Projects) of the SEP Plan) is less than $5.3 million, Defendants shall be subject to a stipulated penalty equal to the difference between the amount spent and $5.3 million.  Penalties under this paragraph shall be paid, upon demand, 50% to the United States and 50% the State, in accordance with the provisions of Paragraphs XVII.I - XVII.L.

I.   Stipulated civil penalties shall automatically begin to accrue on the first day Defendants fail either to meet any of the schedules of performance required by this Consent Decree or to

satisfy any other obligation or requirement of this Consent Decree.

J.   Stipulated civil penalties shall be paid to all Plaintiffs within sixty (60) days of a written demand by any Plaintiff for payment of any stipulated penalty owing pursuant to this Consent Decree.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiffs.  Any Plaintiff may, in the exercise of its unreviewable discretion, waive its right to any or all of its portion of the stipulated penalty amount.

K.   Penalties owed to the United States shall be paid by submitting a cashier's or certified check payable to "Treasurer, United States of America", and shall be tendered to U.S. EPA Region V, Post Office Box 70753, Chicago, Illinois 60673.  The transmittal letter accompanying the check shall specify the caption and docket number of this action, the facility and the violations for which the stipulated penalties are being paid, and DOJ Ref. No. 90-5-1-6-341A.  A copy of the letter and the check shall simultaneously be sent to U.S. EPA Region V, Water Compliance Branch, Compliance Section, WCC-15J, 77 West Jackson Boulevard, Chicago, Illinois 60604, and to Chief, Environmental Enforcement Section, United States Department of Justice, Post Office Box 7611, Washington, D.C. 20044-7611.

66

L.   Penalties owed to the State shall be paid by submitting a cashier's or certified check payable to "Treasurer, State of Ohio", and shall be tendered to Administrative Assistant, Ohio Attorney General's Office, 30 E. Broad Street, 25th floor, Columbus, Ohio  43215-3400.  The transmittal letter accompanying the check shall specify the caption and docket number of this action and the facility and the violations for which the stipulated penalties are being paid.  A copy of the letter and the check shall simultaneously be sent to Enforcement Coordinator, Division of Surface Water, P.O. Box 1049, Columbus, Ohio 43216.

M.   Penalties owed to ORSANCO shall be paid by submitting a cashier's or certified check payable to, "Executive Director, Ohio River Valley Water Sanitation Commission," and shall be tendered to Ohio River Valley Water Sanitation Commission, 5735 Kellogg Avenue, Cincinnati, Ohio 45228.  The transmittal letter accompanying the check shall specify the caption and docket number of this action, and reference the facility and the violations for which the stipulated penalties are being paid.

N.   In the event that a stipulated civil penalty is not paid within sixty (60) days of a written demand as required by Paragraph XVII.J; the stipulated civil penalty shall, upon written demand of the United States, be payable with interest from the original due date (sixty days after the written demand)

67

to the date of payment, at the statutory judgment rate set forth
at 28 U.S.C. § 1961(a).

O.    Payment of stipulated civil penalties as set forth
above shall be in addition to any other rights or remedies that
may be available to the United States, the State, ORSANCO, or
their agencies by reason of the Defendants' failure to comply
with requirements of this Consent Decree, and all applicable
Federal, state or local laws, regulations, the Compact and
pollution control standards promulgated thereunder, NPDES
permit(s) and all other applicable permits.  The payment of such
stipulated penalties shall not be construed to relieve Defendants
from specific compliance with this Decree, applicable federal or
State law, or the Compact and the pollution control standards
promulgated thereunder, nor shall it limit the authority of U.S.
EPA, Ohio EPA, or ORSANCO to require compliance with such laws.


XVIII.    **FORCE MAJEURE BETWEEN DEFENDANTS AND THE UNITED STATES**

A.    If any event occurs that causes or may cause Defendants
to violate any provision of this Consent Decree, Defendants shall
notify U.S. EPA in writing within fourteen (14) days from the
date Defendants first knew, or in the exercise of reasonable
diligence should have known, that compliance with the Consent
Decree would be prevented or delayed.  The notice shall reference
this Section of the Consent Decree and shall describe in detail

68

the anticipated length of time the violation may persist, the precise cause or causes of the violation, the measures taken or to be taken by Defendants to prevent or minimize the violation and the timetable by which those measures will be implemented. Defendants shall adopt all reasonable measures to avoid or minimize any such violation.  Defendants shall make all reasonable efforts to identify events that cause or may cause a violation of this Consent Decree.  Failure by Defendants to comply with the notice requirements of this Paragraph shall constitute a waiver of Defendants' rights to obtain an extension of time or other relief under this Section based on such incident.

     B.   If U.S. EPA agrees that the violation has been or will be caused by circumstances beyond the control of Defendants or any entity controlled by it, including its consultants and contractors, and that Defendants could not have prevented such violation, the time for performance of the requirement in question may be extended for a period not to exceed the actual delay resulting from such circumstance, and stipulated penalties shall not be due for such delay or non-compliance.  In the event U.S. EPA does not agree that the violation was caused by circumstances beyond the control of the Defendants and notifies Defendants of such determination, Defendants may invoke the

dispute resolution provisions in Section XXI of this Consent Decree.

C.    If Defendants invoke dispute resolution and U.S. EPA or the Court determines that the violation was caused by circumstances beyond the control of Defendants or any entity controlled by it, and that Defendants could not have prevented such violation, Defendants shall be excused as to that violation, but only for the period of time the violation continues due to such circumstances.

D.    Defendants shall bear the burden of proving that any delay or violation has been or will be caused by circumstances beyond its control, and that Defendants could not have prevented such violation, as set forth above.  Defendants shall also bear the burden of establishing the duration and extent of any delay or violation attributable to such circumstances, that such duration or extent is or was warranted under the circumstances and that, as a result of the delay, a particular extension period is appropriate.  An extension of one compliance date based on a particular circumstance beyond Defendants' control shall not automatically extend any subsequent compliance date or dates.

E.    Changed financial circumstances or unanticipated or increased costs or expenses associated with implementation of this Consent Decree, shall not serve as a basis for excusing violations of or granting extensions of time under this Decree,

70

except as provided in Section IX (Completion of Construction Deadlines).  Failure to apply for a required permit or approval or to provide in a timely manner all information required to obtain a permit or approval that is necessary to meet the requirements of this Consent Decree shall not, in any event, be considered Force Majeure events.

     F.   Defendants shall make a showing of proof regarding the cause of each delayed incremental step or other requirement for which an extension is sought.  Defendants may petition for the extension of more than one compliance date in a single request.

## XIX. <u>POTENTIAL FORCE MAJEURE BETWEEN DEFENDANTS AND THE STATE</u>

     A.   If any event occurs that causes or may cause the Defendants to violate any provision of this Consent Decree, Defendants shall notify the Ohio EPA in writing within fourteen (14) days from when they knew, or in the exercise of reasonable diligence under the circumstances should have known, that compliance with the Decree would be prevented or delayed, describing in detail the precise cause or causes of the delay or violation, the anticipated length of the delay if applicable, the measures taken by Defendants to prevent or minimize the delay and the timetable by which those measures will be implemented. Defendants shall adopt all reasonable measures to avoid or minimize any such violation.  Defendants shall make all

reasonable efforts to identify events that cause or may cause a violation of this Consent Decree.

B.    In any action by the State of Ohio to enforce any of the provisions of this Consent Decree, Defendants may raise at that time the question of whether they are entitled to a defense that their conduct was caused by circumstances beyond their control such as, by way of example and not limitation, acts of God, strikes, acts of war or civil disturbances. While the State of Ohio does not agree that such a defense exists, it is, however, hereby agreed by Defendants and the State of Ohio that it is premature at this time to raise and adjudicate the existence of such a defense and that the appropriate point at which to adjudicate the existence of such a defense is at the time, if ever, that the proceeding to enforce this Consent Decree is commenced by the State. At that time the burden of proving that any delay was or will be caused by circumstances beyond the control of Defendants shall rest with Defendants. Failure by Defendants to timely comply with the notice requirements of Paragraph XIX.A shall, at the option of Ohio EPA, constitute a waiver by Defendants of any right they may have to raise such a defense. Changed financial circumstances or increased costs associated with the implementation of any action required by this Consent Decree shall not in any event constitute circumstances entirely beyond the control of Defendants or serve as a basis for

an extension of time under this Decree, except as provided in Section IX (Completion of Construction Deadlines).

## XX.  FORCE MAJEURE BETWEEN DEFENDANTS AND ORSANCO

A.   If any event occurs that causes or may cause Defendants to violate any provision of this Consent Decree, Defendants must give ORSANCO written notice within fourteen (14) days from the date that Defendants first knew, or in the exercise of reasonable diligence should have known, that they faced the threat of prevention or delay of timely compliance with this Decree.  The notice to ORSANCO shall reference this Section of the Consent Decree, and shall describe in detail how long the Defendants anticipate the violation will persist, the precise cause or causes thereof, any measures Defendants have taken or will take to prevent or minimize the violation, and the timetable for implementing those measures.  Defendants shall adopt all reasonable measures to avoid violations, and to minimize any violations that do occur.  Defendants' failure to comply with notice provisions of this paragraph shall waive Defendants' rights to an extension of time or other relief under this Section based on a Force Majeure incident.

B.   If ORSANCO agrees that the violation has been or will be caused by circumstances beyond the control of Defendants, their agents, or any entity controlled by them, including their

73

contractors and consultants, ORSANCO may extend time for performance to reflect but not exceed the actual delay caused by the circumstances.  If ORSANCO agrees that a Force Majeure event caused the delayed or failed compliance, ORSANCO agrees to waive any stipulated penalties due it, or other remedies available to it for such delayed or failed compliance.  If ORSANCO notifies Defendants that it does not agree that circumstances beyond Defendants' control caused the violation, Defendant may invoke the dispute resolution provisions contained in Section XXI of this Consent Decree.

C.   If Defendants invoke dispute resolution, and ORSANCO or the Court concludes that the violation was caused by circumstances beyond the control of Defendants, their agents, or any entity controlled by them, and that Defendants could not have prevented the violation, Defendants shall be excused for that violation, but only for the period of time the violation persists due to such circumstances.

D.   Defendants bear the burden of proof for proving that any delay or violation was caused by circumstances beyond their control, and beyond their power to prevent.  Defendants shall also bear the burden of proving the duration and extent of any delay or violation caused by uncontrollable circumstances. Defendants must also prove that the delay caused by such uncontrollable circumstances warranted an extension.  An

extension granted on the basis of a particular uncontrollable circumstance shall not automatically extend any subsequent compliance date or dates.

E.   Neither changed financial conditions nor unanticipated increased costs or expenses arising from implementation of this Consent Decree shall excuse violations or warrant granting extensions for compliance with this Decree, except as provided in Section IX (Completion of Construction Deadlines).  Defendants' failure to timely apply for a required permit or approval, or to provide all required information to obtain such permit or approval, will not constitute a Force Majeure event.

F.   Defendants shall show proof regarding the cause of each delayed incremental step or other requirement for which they seek an extension.  Defendants may seek an extension of more than one compliance date in a single request.

## XXI. DISPUTE RESOLUTION

A.   This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and for the purpose of adjudicating all disputes among the Parties (including ORSANCO) that may arise under the provisions of this Consent Decree, to the extent that Paragraph XXI.D, below, provides for resolution of disputes by the Court.

B.   The issuance, renewal, modification, denial or
revocation of a permit and the issuance of orders or other
actions of the Director of Environmental Protection (Ohio EPA),
including but not limited to decisions with respect to revisions
to water quality standards, are not subject to dispute resolution
under this Decree but, rather, shall be subject to challenge
under Chapter 3745, Ohio Revised Code.  The term "actions of the
Director of Environmental Protection" shall be consistent with
the definitions set forth in Chapter 3745, Ohio Revised Code.

C.   U.S. EPA actions to approve, disapprove, or promulgate
new or revised water quality standards pursuant to 33 U.S.C.
§ 1313(c), and to object, not object or issue NPDES permits
pursuant to 33 U.S.C. § 1342, are not subject to dispute
resolution under this Decree.

D.   Except as provided in paragraphs XXI.B and C, above,
any dispute that arises with respect to the meaning, application,
implementation, interpretation, amendment or modification of this
Consent Decree, or with respect to Defendants' compliance
herewith (including the adequacy of the Defendants' performance
of the remedial measures and adequacy of the submittals required
by this Decree) or any delay hereunder, the resolution of which
is not expressly provided for in this Consent Decree, shall in
the first instance be the subject of informal negotiations.  If
any Party believes it has a dispute with any other Party, it

76

shall notify all the other Parties in writing, including notice to the U.S. Department of Justice and the Ohio Attorney General, setting forth the matter(s) in dispute, and the Parties will proceed initially to resolve the matter in dispute by informal means.  Such period of informal negotiations shall not exceed thirty (30) days from the date the notice was sent, unless the Parties agree otherwise.

E.    In order for ORSANCO to take any position in either informal or formal dispute resolution that is materially different from the position taken by the United States and the State, ORSANCO must obtain the approval of its Executive Committee and the approval of two-thirds of the commissioners from the State of Ohio.  Further, ORSANCO bears the burden of showing that its position will assure Defendants' compliance in a manner more appropriate with, the terms, conditions, requirements and objectives of this Consent Decree, the Clean Water Act, R.C. 6111, and the Compact than the position advanced by the United States and the State.

F.    If the informal negotiations are unsuccessful, the position of the United States and the State and ORSANCO (assuming its position is not materially different) shall control unless, within twenty (20) days after the conclusion of the informal negotiation period, the Defendants or ORSANCO (assuming its position is materially different) (hereinafter, "Petitioner(s)")

invoke the formal dispute resolution procedures of this Section
by serving on the other Parties, including on U.S. DOJ and the
Ohio Attorney General, a written statement of position on the
matter in dispute.

G.    Within thirty (30) days of receiving the Petitioner's
statement of position, the United States and/or the State and/or
ORSANCO (assuming it is not the Petitioner) will serve on the
Petitioner and the other Parties its/their written statement of
position.

H.    The United States' and/or the State's and/or ORSANCO's
(assuming it is not the Petitioner) statement of position shall
control unless Petitioner files a petition with the Court
describing the nature of the dispute and a proposal for its
resolution.  Such petition must be filed no more than twenty (20)
days after receipt of the United States' and/or the State's
and/or ORSANCO's (assuming it is not the Petitioner) statement of
position.  The other Parties shall then have 30 days to file a
response setting forth its/their position and proposal for
resolution.  In any such dispute, the Petitioner shall have the
burden of proof, and the standard of review shall be that
provided by applicable law.

I.    Submission of any matter to the Court for resolution
shall not extend any of the deadlines set forth in this Consent

78

Decree, unless the Parties agree to such extension in writing or the Court allows the extension upon motion.

J.    If the United States and the State provide Defendants with materially different or irreconcilable positions on the issue(s) in dispute, or if ORSANCO has provided a materially different position on the issue than that provided by the United States and the State and has invoked dispute resolution with respect to such different position, Defendants' obligation to perform an action necessarily affected by the materially different or irreconcilable positions (and Defendants' liability for stipulated penalties concerning such obligation) shall be stayed until the dispute is resolved.

K.    Stipulated penalties with respect to any disputed matter (and interest thereon) shall accrue in accordance with Paragraphs XVII.I and XVII.J; however, payment of stipulated penalties, and any accrued interest, shall be stayed pending resolution of the dispute, as follows:

1.    If the dispute is resolved by informal agreement before appeal to this Court, Defendants shall pay accrued penalties (and interest), if any, determined to be owing within 60 days of the agreement or the receipt of the United States' and/or the State's and/or ORSANCO's (assuming its position is not materially different) final position in writing.

79

2.    If the dispute is appealed to this Court and the United States and/or the State and/or ORSANCO (assuming its position is not materially different) prevails in whole or in part, Defendants shall pay all accrued penalties (and interest) determined to be owing within 60 days of the Court's decision or order.

3.    In the event of an appeal, Defendants shall pay all accrued penalties (and interest) determined to be owing within 60 days of a final decision no longer subject to judicial review.

## XXII.    CIVIL PENALTY

A.    Defendants shall pay a civil penalty of $1.2 million (plus interest thereon) to the United States and the State of Ohio as required by Paragraph XXII.B.  In lieu of paying $100,000 of this civil penalty to the State of Ohio, Defendants shall pay $100,000 to ORSANCO, as provided in Paragraph XXII.B, as partial funding to support ORSANCO's work to: 1) develop Wet Weather Bacterial Water Quality Standards for the Ohio River and 2) develop TMDLs for pollutants of concern in the Ohio River in the area around and below Cincinnati.  The Parties all acknowledge: 1) that the payment to ORSANCO is being made by Defendants in satisfaction of a portion of the Defendants' civil penalty

80