UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, ET AL.,          **CASE NO. C-1-02-107**

Plaintiffs,

and

SIERRA CLUB, ET AL.,                               **Judge S. Arthur Spiegel**

Intervenors,

v.

BOARD OF COUNTY COMMISSIONERS
OF HAMILTON COUNTY, OHIO, ET AL.

Defendants.

DECLARATION OF D. DAVID ALTMAN
IN SUPPORT OF APPLICATION FOR ATTORNEYS FEES

I, D. David Altman, pursuant to 33 U.S.C. §1365(d), make this declaration in support of a determination of the attorneys' fees requested in the Sierra Club and Marilyn Wall's Motion for Attorneys' Fees and Costs.

1. I am an attorney licensed to practice law before the Supreme Court of Ohio, the United States District Court for the Southern District of Ohio, the United States District Court for the Northern District of Ohio, and the United States Court of Appeals for the Sixth Circuit.

2. I have been in private practice at my own firm since graduating from the University of Cincinnati, College of Law in 1974. Since the mid-1980s, my practice has focused primarily on representing neighborhoods, citizens, regional and national environmental groups and local units of government seeking to enforce environmental laws.

3. After discussions in October and November, 2001, I agreed in December 2001 to serve as co-counsel with attorney Albert J. Slap in the above-captioned case. Since that date, my office has continued its representations of the Sierra Club and Marilyn Wall in coordination with Mr. Slap.

4. While I was at the University of Cincinnati, College of Law, I served as one of the subcommittee chairs of the Ohio Governor's environmental task force that oversaw the beginning operations of the newly-formed Ohio Environmental Protection Agency. I also served as a committee chair on the 1972 City of Cincinnati Mayor's Task Force on the Environment. The Mayor's Task Force drafted a comprehensive report on environmental issues facing the City of Cincinnati.

5. I have also served on many committees and boards promoting community and civic interests, including: Member of the City of Cincinnati's Environmental Advisory Council (EAC) from 1975 to 1987; Chairman of the Cincinnati EAC from 1977 to 1978 and from 1982 to 1985; Chair, Environmental Section of the Ohio Academy of Trial Lawyers from 1989 to 1995 and a Member of the Board of the National Civic League from 2000 to the present.

6. Since 1984, my practice has been primarily devoted to complex environmental litigation. Many of these federal enforcement cases involved representation of

neighborhood and community groups and have had a lasting impact on the field of environmental law.  For example, the case of <u>Jones v. Inmont</u>, 584 F.Supp. 1425 (S.D. Ohio 1984) for the first time allowed private citizens adversely affected by pollution the ability to obtain relief under CERCLA and under the Imminent Hazard provision of RCRA.  The Court's decision and order also introduced the concept of cost recovery for medical monitoring activities and lead to the U.S. Congress legislatively adopting the imminent hazard provision as a direct part of the RCRA citizen suit provision.

7.  I have also been lead counsel in many other cases that have led to innovative environmental and law enforcement relief.  These include representing Neighbors Opposing Pit Expansion ("N.O.P.E.") in a dispute with the Cincinnati Gas & Electric Co. (resulting in a community-wide settlement of a fly ash disposal dispute in Pierce Township, Ohio); <u>Hopkins v. Elano Corporation, et al.</u>, Case No. C-3-88-0067 (S.D. Ohio 1988) (bringing relief to area residents with contaminated drinking water wells and *obtaining citizen oversight* under a federal consent decree); <u>Hertzler v. Vernay Laboratories</u>, Case No. C-3-99-451 (S.D. Ohio 1999) (addressing widespread groundwater contamination as well as water and air pollution violations on behalf of neighboring residents.  A consent decree, that *included citizen oversight*, was lodged in this case and approved by Judge Walter Herbert Rice); <u>St. Bernard v. Phthalchem</u>, Case No. C-1-89-618 (S.D. Ohio 1989) and <u>State of Ohio and St. Bernard v. Phthalchem, Inc.</u>, Case No. A-8907973 (enforcing Clean Air Act violations and groundwater contamination and *granting direct oversight rights* to the City of St. Bernard); <u>CF/Water v. Schregardus, et al.</u>, Case Nos. ERAC 123520, 123567,

113521, 113568 (March 8, 1996) (overturning Ohio EPA's permit decision for Danis' Clarkco Landfill on behalf of the community based environmental organization); Buchholz v. Dayton International Airport, Case No. C-3-94-435 (S.D. Ohio 1994) (enforcing, via injunction, violations of the Clean Water Act on behalf of area residents); and Arnett, et al. v. Willard Industries, Case No. C-1-02-87 (S.D. Ohio 2002) (obtaining Consent Decree under the Clean Air Act, *including citizen oversight*, leading to the installation of equipment that air pollution testing demonstrates will yield an 80% reduction in volatile organic compound emissions). In 1990, I served as co-lead class counsel in Nelson v. BASF Corporation, Case No. A9007577, obtaining class-wide relief including a medical evaluation program for class members.

8.  Many of the aforementioned cases have provided for environmental cleanups that have required my firm to engage in the ongoing oversight of technical environmental and legal matters. For example, we have represented three Cincinnati neighborhoods that comprise the Citizens Concerned About Hilton Davis (CCHD) organization for the last 15 years in *monitoring and overseeing the clean-up* of the Hilton Davis site required pursuant to State of Ohio v. Sterling Drug, et al., Case No. A8608219 (Consent Order entered Oct. 20, 1986). We also engage in ongoing oversight in Hertzler v. Vernay Laboratories, Case No. C-3-99-451 (S.D. Ohio 1999) and Booth, et al. v. Georgia-Pacific Corporation, et al., Case No. 90CVC05-3535. Specifically, Booth was a class action arising from a plant explosion and Clean Air Act violations. The resolution of the case includes a "liaison program" that involves oversight by "special masters" who report to the court and the class. The resolution of Booth also

includes a medical program to evaluate health problems, including environmentally-related health issues, of participating class members.

9. I also currently represent, and in the past have represented, numerous regional and national environmental organizations on a variety of environmental matters including: Sierra Club; Sierra Club (Ohio Chapter); Citizen Action of Ohio; Rivers Unlimited; Ohio Public Interest Research Group; the City of Toledo, Ohio; the City of ST. Bernard, Ohio; Portage County, Ohio Solid Waste District; Neighbors Opposed to Pit Expansion (N.O.P.E. – a 300 member community organization in Pierce Township, Ohio); and C/F. Water (Citizens for Water – a community organization in Springfield, Ohio). Currently, I am one of the lawyers representing the Sierra Club in the case of U.S. et al. v. AK Steel, where the Sierra Club is a co-plaintiff with the United States.

10. Finally, I was the plaintiffs' attorney in two earlier Hamilton County MSD-related cases, Prince v. MSD (S.D. Ohio) and Ohio Public Interest Research Group v. General Electric (S.D. Ohio). Both cases ended in court-approved consent decrees.

11. I am "AV" rated by Martindale Hubbell Law Directory, which is the highest rating denominated by that publication and was one of only two environmental attorneys to be named by Cincinnati Magazine in the list of Cincinnati's top 56 attorneys.

12. I have delivered over 70 lectures at legal and environmental seminars regarding civil environmental litigation, interpretation of environmental statutes, practice techniques, and legal ethics. For example, in the late 1980s, I was a lecturer at the Pennsylvania/New Jersey Trial Lawyers Boardwalk Seminar Series. The faculty included many of the top environmental litigators in the United States. In the 1980s, I also lectured on environmental topics to such organizations as the National League of

Cities (Annual Meeting) and the Bureau of National Affairs lecture series. Other

seminars in which I have participated include: ATLA/NJTL Seminar in 1987 and

1988; U.S. EPA Seminars in 1993; OATL Workshops from 1987 to 1993; Ohio State

Bar Association Seminars in 1989 and 1991. I also spoke at the Executive Enterprises

Environmental Regulation Course from 1992 to 1994.

13. I have testified before the U.S. Congress and both house of the Ohio legislature on

environmental issues, including environmental secrecy and nuclear safety.

14. From 1981 to 2000, I was an adjunct professor at the University of Cincinnati

teaching an undergraduate and graduate level course in environmental law.

15. Among my many publications is the 1991 publication, Local Health Agencies; The

Silent Partners in the Environmental Enforcement Network, 18 Northern Kentucky

Law Review 213 (also published in the spring 1992 edition of the *Ohio Trial

Magazine*).

16. My associate Amy J. Leonard graduated, cum laude, from Tulane Law School in

1988, where she was the founding editor of the Tulane Environmental Law Journal.

In 1986, she clerked at the Tennessee Department of Health and Environment and in

1987, she clerked for the Energy Law section of the State of Louisiana's Attorney

General's office. Ms. Leonard joined my firm in 1988 where she has focused her

practice in representing neighborhood groups, citizens, environmental organizations

and local governments in their attempts to address pollution problems in their

communities. Ms. Leonard was a member of the Cincinnati Environmental Advisory

Council from 1993 to 1997 and chair of the Environmental Law section of the Ohio

Academy of Trial Lawyers for two terms, from 1998 to 2000. She has published

*Environmental Secrecy in Ohio*, Ohio Trial Magazine, Spring, 1998 Vol. Issue 2. Ms.
Leonard has assisted in various aspects of the litigation throughout this case.

17. My associate Elizabeth Ungar Natter joined my firm earlier this year. Ms. Natter
graduated magna cum laude from Georgetown University Law School, where she was
on the staff of The American Criminal Law Review. Ms. Natter was admitted to the
practice of law in 1985 in Maryland (now inactive); and in 1987 in Kentucky. Prior
to studying law, she graduated with general and departmental honors from the Johns
Hopkins University Department of Geography and Environmental Engineering with a
concentration in Systems Analysis and Economics for Public Decision-Making, and
was a member of Tau Beta Pi, the National Engineering Honor Society. She has
more than 18 years experience in the practice of law, including Clean Water Act,
Superfund, RCRA, Clean Air Act and local government litigation. She worked as an
attorney and attorney manager for the Kentucky Natural Resources and
Environmental Protection Cabinet from 1987 to 1990. She worked from 1990 to 2000
with nonprofits focusing on assisting citizens in participating in environmental and
other government decisions affecting their communities with the Kentucky Resources
Council, the Mountain Association for Community Economic Development and the
Democracy Resource Center. She has represented communities and affected citizens
in challenging and achieving revisions to landfill permits, and challenging air and
water permits and siting decisions for various types of facilities. She authored
"Hazardous Waste and Hazardous Substances Site Cleanup Standards Under
Kentucky Law," Northern Kentucky Law Review, January 1991, co-taught a one day
seminar on hazardous waste management for universities, presented material on

Superfund, hazardous waste, and other environmental issues at CLE and other

seminars, and co-authored numerous citizens' guides including "Where We Live: A

Citizens Guide to Conducting a Community Environmental Inventory," Island Press

1995. From 2001 to 2004, she was employed as a contract attorney with Graddy and

Associates, conducting and assisting with Clean Air Act, Clean Water Act and other

litigation. She received a Fulbright Senior Scholar award to teach and do research at

the University of Leipzig, where she taught citizen participation in environmental

decision-making in the U.S. during the academic year 2001-2002.

18. My associate Amy M. Beiersdorfer has been employed by my firm since May, 2003

and has worked exclusively on complex environmental litigation. She was involved

with important aspects of this case, including the Sierra Club's opposition to the entry

of the Consent Decrees and its Motion for Court-Appointed Special Master. Ms.

Beiersdorfer graduated from Northland College and from Vermont Law School in

2001. She graduated magna cum laude from Northland College with a major in

Sociopolitical Environmental Studies. At Vermont Law School, in addition to

earning her J.D., Ms. Beiersdorfer graduated cum laude with a Masters of Studies in

Environmental Law. While at Vermont Law School, Ms. Beiersdorfer clerked for the

Environmental and Natural Resources Division of the U.S. Department of Justice.

She is admitted to practice in Ohio.

19. My former associate Lance D. Himes, who was involved in every stage of this case

up until he moved to Columbus, Ohio to work for the Ohio Department of Health in

late January, 2004, graduated from Wittenberg University and the University of

Cincinnati, College of Law in 1997. Mr. Himes graduated from Wittenberg

University with a double major in Business Administration and Geography (Urban Planning) and was also a member of the Honors Program. While at the College of Law, Mr. Himes concentrated his studies on environmental law and was Vice President of the Environmental Law Society. Mr. Himes has also interned with the Ohio Environmental Protection Agency's legal department. Mr. Himes has been a guest lecturer on the Clean Air Act at the University of Cincinnati. He has also served on the City of Cincinnati's Office of Environmental Management's committee to coordinate the public's understanding of new information to be released under the Clean Air Act. He joined my firm in 1997 and worked exclusively on complex environmental litigation. He is admitted to practice in Ohio and the United States District Court for the Southern District of Ohio.

20. As a result of the experience described above, I have gained substantial knowledge and expertise in the investigation, litigation and settlement of complex environmental litigation, class action litigation, and community representation.

21. I am familiar with the hourly rates charged by environmental attorneys in the Cincinnati market and elsewhere in the country in complex and environmental litigation matters. I have determined that the rates charged by our firm are consistent with the rates of other litigation specialists in our field.

22. My firm maintains daily detailed time records for all of our professional services. My hourly billing rate in complex litigation of this type is currently $410 per hour. However, my hourly rate for this case is $390 per hour. Hourly rates for my associates are $300 (Amy J. Leonard and Liz Natter) and $200 (Amy M. Beiersdorfer and Lance D. Himes. In this case, Ms. Leonard and Ms. Natter are billed at $295 per

hour. Legal assistant services provided by our firm are billed in this case at $90 per hour for law clerks and $75 for other legal assistants.

23. Attachment A is a summary of recoverable time spent on this case. It is provided in summary form to delete work product and privilege issues; however, complete time is available to the Court for in camera inspection upon request.

24. Because of the nature of this case, it has represented a great deal of risk for our small firm. If not for the prospect of receiving an adequate attorney's fee in this case, I would not have been able to accept responsibility as co-lead counsel in this case and could not have committed the amount of time expended by my firm on the matter.

25. I have reviewed all the time expended by the attorneys who worked on this case and, given the nature of the case, the time spent was adequate, reasonable, and more than commensurate with the results achieved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this __th day of August, 2004

D. David Altman

**D. DAVID ALTMAN CO., LPA - SIERRA CLUB/SSO TIME AND EXPENSES:**

1.    **December, 2001:**

Review documents provided;
Staff communications with AJS re: case;
Internal staff communications-- organization of case;
Review Notice Letter;
Follow-up conference re: Notice and related issues;
Review representation agreement;
Communications with Department of Justice

Services rendered by: DDA, AJL:    4.92 Hours    FEES: $1,330.35

2.    **January, 2002:**

Communictions with AJS re: case, review file;
Preparation for conferences and respond to emails;
Conferences with clients;
Communications re: litigation strategy, including MSD industrial discharge
        practices;
Review draft Powerpoint presentation for U.S. EPA;
Review communication re: Chicago trip;
Return communications re: same;
Conferences with AJS re: presentation;
File review at MSD;
Communications with staff re: file review;
Review client communications re: status of file review;
Conferences with AJS and clients;
Preparation for 2/1 conference call with U.S. EPA;
Prepare for conference call;
Communications with clients.

Services rendered by: DDA, LC:    10.42 Hours    FEES: $2,387.47

3.    **February, 2002:**

Continue to prepare for conference call;
Conference call with U.S. EPA, et al re: SSO Decree;
Follow-up conference call with clients;
Conferences with AJS and clients re: conference call;
Follow-up conferences with clients, AJS re: conference call issues;
Review communications re: Decree, overflows, plant by-passes;

1

Respond to same; review response of expert to questions;
Communications with staff re: penalty policy;
Assign complaint review to staff;
Review and revise Complaint and draft comments from team;
Communication with U.S. EPA;
Communication with AJS re: conference call with Hamilton County Council;
Communication with AJS re: pertinent degradation issue;
Continue review of Complaint;
Phone conference with AJS re: status of discussions;
Further review and revision of Complaint;
Communication with AJS re: Complaint issues;
Conference with AJS, client and staff re: public communication;
Discuss stand still issue and offer to county/city;
Conferences with Heile;
Conferences with Murphy and Chinn;
Attend commission meeting;
Discuss stand still agreement;
Conference with client following meeting;
Conferences re: revisions to Complaint;
Further research diligent prosecution issues;
Conferences with AJS re: pre-filing issues;
Conferences with AJL and AJS re: pro hoc motion, affidavit and other federal
        court requirements;
Review research with staff;
Phone conference economist expert re: Hawaii case;
Prepare pro hoc motion for AJS;
Review affidavits;
Draft and revise SSO Complaint;
Review diligent prosecution standard;
Confirm commissioner information;
Confirm information from expert conference calls;
Revision to draft Complaint;
Further review and conferences re: revised Complaint and technical issues;
Review emails re: draft Complaint;
Review due diligence issues with AJS;
Outside conference with AJS re: litigation plan;
Obtain copies of state Complaint filing;
Return to office;
Conferences with client re: status of filing issues;
Conferences with SC staff and staff re: filing;
Prepare for filing;
Review addendum;
Waiver of service;
File Complaint;
Visit home of SSO victim to highlight plight of SSO victims;
Revise Pro Hoc Motion;

Draft Certificate of Service;
File Pro Hoc Motion.

Services rendered by: DDA, AJL,
LC, LDH:                          71.38          FEES: $18,450.52


4.    **March, 2002:**

Respond to inquiries about filing of Complaint;
Review county liability issues;
Sheprardize Supreme Court cases;
Research taking issue and sewer overflow questions;
Conference with staff re: SSO issues;
Conferences with AJS re: SSOs;
Long distance phone call to Malone re: SSO issues;
Conferences AJS re: community issues;
Further communications re: SSO issues;
Review interrogatories;
Review service options;
Communication with Clerk's office;
Review and revise interrogatories;
Obtain Clerk's signature on summons;
Prepare and serve summons on MSD;
Communication with City Manager's office re: acting city manager's tenure for
        summons;
Communication with Malone re: scope of state's Complaint; communications
        with AJS re: interrogatories;
Actions required to file proof of service summons;
Communication with AJS re negotiations with county;
Respond to communications re: negotiations;
Conferences re: Rule 26;
Conferences re: interrogatory review and set up discovery meeting;
Review automatic disclosure issues;
Communication with client re: standing issues;
Meeting with staff and AJS re: interrogatories;
Review diligent prosecution issues and interrogatories;
Review POTW regs and TSD issues;
Conference with client and staff re: comment letter and modifications;
Review Consent Decree comments;
Review consolidation of SC case with U.S./Ohio case;
Review consolidation motion;
Communications with AJS re: same;
Continue review of consolidation issues;
Continue review of draft;
Communications with AJS re: consolidation intervention motions;

Call Murphy;
Phone conference with court re: Motion;
Revise Motion to Consolidate;
Office conference with staff re: Motion to Consolidate;
Further revisions of draft Motion;
Further communications with staff re: same.

Services rendered by: DDA, LDH,
AJL, LC:                              54.08 Hours    FEES: $15,711.22


5.    **April 2002:**

Communication with deputy clerk re: rules;
Further revisions of Motion to Consolidate;
File Motion to Consolidate;
Courtesy copies of Judges Beckwith and Weber;
Plan meeting;
Communications with AJS re: status of issues;
Review Motion to Dismiss;
Communications re: Motion to Consolidate;
Phone conference AJS re: Motion to Intervene and Motion to Consolidate and
        plan for 4/10 meeting;
Review TMDL issues and related topics;
Communications with AJS re: MSJ;
Review Motion and exhibits;
Research their response to Motion to Dismiss;
Communications with AJS re: Motion and 4/10 meeting and planning for 4/10
        meeting;
Office conference staff re: 6th Circuit research related to Motion to Dismiss;
Review draft response;
Communications with AJS re: status and updates;
Office conference with AJS re: prep for 4/10 meeting with U.S. EPA, OEPA,
        ORSANCO at MSD;
Meeting with clients;
Meeting with Allen and clients;
Communications with AJS re: meeting and Motion responses;
Office conference with staff re: Memorandum in Opposition and draft Motion
        Contra;
Obtain the answers to questions about same;
Communication with AJS and staff re: intervention;
Conference call re: affidavits from experts;
Response to Motion to Dismiss;
Continue to draft and research Memo Contra on Motion to Dismiss;
Research MSD AJS political subdivision;
Communication re: recusal;

Research Judge Spiegel's opinion re: denying 12(b)(1) Motion to Dismiss;
Office conference AJS and staff re: class revised brief;
Revise same;
Prepare table of contents of authorities for same;
Review county commissioners' meeting video for inclusion in same;
Communications with staff re: brief;
Review Motion Contra re: MSD's dismissal AJS a party;
Further drafts and revisions of same;
Further communications with AJS re: same;
File preparation for filling of the Motion Contra;
Phone call from Malone re: recusal;
Dictate letter to Judge Beckwith re: recusal following research of recusal issues
Prepare Motion for Recusal upon insistence of Judge Beckwith's staff;
Review recusal Motion.

Services rendered by: DDA, LDH,
LC, AJL:                              122.05 Hours    FEES:        $31,126.51


6.    **May, 2002:**

Staff conferences re: response to Motion for Scheduling Order;
Review revisions to Motion;
Communications re: Recusal Motion;
Revise same;
Review Motion to Intervene;
Review U.S. statement re: recusal;
Review defendants' statement re: recusal;
Review reply brief and Motion to Strike;
Phone call from Murphy re: reply brief on MSD issue;
Phone call to Murphy re: certificate of service;
Further review of Motion to Strike in cases cited;
Phone conference to Murphy re: extension;
Further review of Motion to Strike case law;
Draft Notice of Appearance for AJS;
Further review of reply in support of Motion to Dismiss MSD;
Further revisions of Motion to Intervene;
Review intervention cases and review same;
File Motion in Response at Courthouse;
Letter to Malone, revisions of same;
Communication with clients re: SSO issues;
Draft Rule 16 in intervention memos, revise same;
Office conferences with staff re: same;
Memo re: status conference, revise same;
Staff communications re: Surreply;
Review Surreply, revise same:

Communications with AJS re: 26(f) meeting;
Further review and revision of Surreply to Motion to Dismiss;
Office conference with AJS and staff re: 26(f) meeting;

Services rendered by: DDA, LDH,
AJL, LC:                           61.13 Hours    Fee:    $12,891.94


6.    **June, 2002:**

Continue to draft Motion to Strike Response;
Conference with staff re: same;
Continue to draft response to Motion to Dismiss;
Communication with staff re: research and evidentiary issues, including hearsay;
FRE 803(3) research;
Staff communications re: admissibility standard;
Review particular cases;
Revise memoranda;
Review U.S. and state reply re: scheduling conference;
Staff meeting re: Motion to Strike, finalize Motion, file;
Review Order of Recusal;
Phone conference with AJS re: same;
Call to clerk's office re: reassignment;
Review issues with public notice of Consent Decree;
Communications with AJS re: status and strategy;
Staff meeting and call to clients re: case developments;
Staff communication re: U.S. EPA's statement re: case management order;
Review MSD memo opposing intervention, memo re: Motion to Strike.

Services rendered by: DDA, LDH,
AJL, LC:                           43.56 Hours    Fees:   $9,750.21


7.    **July, 2002:**

 Further review and revision of reply to Motion to Intervene;
Communications with AJS re: core litigation issues;
Review and revise Motion for Extension of Time;
Review and revise letters to Allen and Malone re: request to take part in
        negotiations;
Review articles re: Toledo MSD issues;
Communications with staff and AJS re: briefs due;
Review draft Surreply;
Staff comments on reply to Motion to Intervene and Case Management Order;
Review Case Management Order issues with staff;
Communications with staff and AJS re: briefs;

File Motions and Memoranda;
Review and revise reply to support of intervention;
Communications re: 26(f) issues;
Phone call with court re: preliminary pre-trial and Motion to Dismiss argument;
Communications with AJS re: discovery conference;
Attend 26(f) conference with counsel from county;
Communications with AJS and staff re: joint discovery plan;
Review and revise 26(f) report;

Services rendered by: DDA, LDH,
AJL:                                            38.44 Hours    Fees:   $12,401.85


8.   **August, 2002:**

Staff comments re: review and revisions of 26(f) report;
26(f) research;
Review 26(f) discovery plan;
Draft and review 37(g) and 26(f) Motions;
Review case law re: same;
Staff conferences with AJS re: same;
Further review and revisions of discovery plan with AJS and staff;
Further draft and review of 37(g) Motion and Memorandum;
Communications with AJS re: 26(f) and 37(g) filings;
Revisions to same;
Review communications with Murphy re: same;
Communications with AJS re: joint report filing
Review 26(f) Motion and 37(g) Motion;
File finalized 26(f) plan;
Further discussions with staff re: 37(g) Motion;
Draft Motion to Compel;
Review authority and office conference with staff re: same;
Draft 37(g) Motion;
Meetings with staff and AJS re: 26(a)(1) disclosures;
Review initial disclosures;
Review Motion to Compel, sanctions affidavit;
Staff meetings re: Motion to Compel, case law, research and summary;
Review Surreply opposition;
Courthouse file and copy SSO motions;
Finalize Motion to Compel for filing;
Prepare for preliminary pre-trial;
Review pertinent 6th Circuit cases;
Further research of intervention issues;
Office conferences re: status conference prep;
Phone conference with expert and AJS re: Decree;
Review docket sheet;

Attend status conference with Judge Spiegel;
Research due process issues;
Review cases in response to objections;
Memo summarizing status conference;
Review issues re: hearings under similar laws;
Phone conference with expert and AJS re: affidavits;
Staff conferences re: need for discovery and hearing;
Review case law re: objections to Motion for Entry;
Research discovery/hearing issues related to intervention;
Review cases re: evidentiary hearings;

Services rendered by:  DDA, LDH,
AJL, LC:                                     102.41 Hours   FEES $19,103.67


9.    **September, 2002:**

Continue review of cases on evidentiary hearings;
Draft memos re: same;
Review communications on hearing right and disposal of individual rights;
Review SSO revised outline for brief;
Research deference and Consent Decree standard;
Office conferences re: research;
Communications with staff re: Title 7 cases;
Communications with staff re: objections to Motion to Enter;
Review draft memo in opposition to Motion to Enter;
Further review objections to Motion to Enter;
Staff review of brief in opposition to Motion to Enter Decree;
Revise same;
Communications with AJS re: affidavits and revisions;
Draft specific sections of brief;
Coordinate staff insertions in brief;
Review SSO documents and commissioner quotes;
Review tape of commissioner meetings;
Prepare transcript of sections;
Further revisions of brief;
Further revisions of objections to Motion to Enter;
Draft appendix for pending motions;
Staff review and comments on objections to Motion to Enter;
Conference calls re: same;
Further revisions to brief;
Review expert affidavits;
Draft O & M section of brief;
Review and revise opposition;
Prepare for filing brief;
Coordinate AJS revisions;

8

Review final revisions of brief in opposition to Motion to Approve;
Review communications re: Army Corp testimony;
Review defendants' memo in opposition to Motion to Compel Initial Disclosures;
Communications with SC re: research resources;
Communications with staff in support of Motion for Sanctions;
Review communications to and from Pritchard;
Further research and review of revised Motion to Compel;
Research and review Duren authority;
Review printed attachments;
File revised Reply Memorandum;
Review insertions of lack of jurisdiction.

Services rendered by:  DDA. LDH,
AJL, LC:                              171.74 hours   FEES: $35,232.36


10.    **October, 2002:**

Staff communications re: deposition of Murphy and Motion;
Communications with staff re: Motion for Leave to Take Deposition;
Review facts from Allen re: depositions;
Review issues re: deposition notices;
Communications with AJS re: same;
Revise Motion;
Revise Notice of Supplemental Authority;
Review draft Motion to Depose Murphy;
Review 8/28 pre-trial notes;
Communications with staff re: same;
Review notice cases;
Preparation of trial notebooks for Motion to Dismiss hearing;
Staff conferences including AJS re: Motion to Dismiss hearing;
File Motion for Leave, courtesy copy to Judge;
Review Judge Spiegel's Order granting intervention;
Communications with staff re: hearing issues;
Further conferences re: preparation of trial notebooks for hearing;
Communications with AJS re: 10/8 oral argument;
Review supplemental authority Motion to Dismiss;
Research hearsay, affidavit for Motion to Dismiss;
Further research on specific cases concerning Motion to Dismiss;
Review Powerpoint charts;
Communications with AJS re: evidence issues;
Further review of Motion to Dismiss pleadings;
Review jurisdiction and merits arguments, including case law and research;
Review 12(b)(1) research;
Review factual vs. facial attacks;
Review 6th Circuit 12(b)(1) cases;

Prepare for argument on Motion to Dismiss;
Meet with clients;
Hearing on outstanding motions;
Prepare hand-outs for argument;
Attend hearing on motion at Courthouse;
Review Order from Judge Spiegel;
Communications with AJS re: discovery call to Wiethe;
Further draft of joint discovery plan;
Phone conference with Wiethe re: discovery plan;
Communications re: expert testimony on inadequacy of Consent Order;
Communications with Leslie Allen;
Revise proposed joint discovery plan, fax to Wiethe;
Review discovery of settlement negotiations;
Negotiate discovery plan;
Review plan and revise same;
Further research of Federal Rule 408;
Pick up plan at U.S. Attorney's office, take plan to Judge's chambers;
Office conference re: hearing with Judge Spiegel;
Prepare for hearing with Judge Spiegel;
Conference with Judge Spiegel;
Meeting recapping conference;
Communications with staff re: October 18, 2002 submittal to court;
Call from Wiethe and Allen;
Review October 18 correspondence from Wiethe re: discovery plan;
Communications with AJS re: RFAJS and RFPs;
Review and revise stipulations and requests for documents;
Communications with Malone re: filing;
Further review of discovery stipulations and admissions;
Further revisions of same;
Phone call from Allen and Pritchard re: offer to sit at the table in CSO case;
Discuss settlement issues;
Review communications from expert;
Further review discovery drafts;
Communications with staff re: same;
Communications with AJS;
Revise RFAJS, interrogs and RFPs.

Services rendered by: DDA, LDH    161.64 Hours FEES: $38,250.47
AJL, LC:


11.    **November, 2002:**

Further revisions of discovery;
Review communications to Allen re: discovery;
Communications with AJS re: Malone;

Communication with Malone re: discovery;
Conference call with AJS and client;
Further communications re: expert issues;
Review Ohio discovery inquiry;
Communications with Malone NAJS re: stipulations;
Review San Diego case;
Communications with counsel re: same;
Draft initial responses to Motion to Stay;
Prepare binders of Motion to Stay documents;
Review deposition notice for Karney;
Review interrogatories re: objections;
Communications with AJS re: discovery issues, objections and notices;
Meeting with client re: document production;
Review audio visual tapes from county;
Communications with AJS re: document production;
Review objection issues, revise objections to document requests and
        interrogatories;
Review documents from client.

Services rendered by: DDA, LDH,
AJL, BSP:                         70.97 Hours    FEES: $16,135.41


12.    **December, 2002:**

Further review of interrogatories, requests for production, revisions of same;
Research re: same;
Research request for admissions;
Review responses to requests for admissions;
Review draft interrogatory answers;
Communications with staff and AJS re: same;
Further revision of objections to interrogatory requests;
Further revisions of interrogatory responses;
Further revisions of admissions;
Research issues re: communications between experts;
Review logistics of copying discovery responses;
Communications with staff re: Karney deposition;
Review of SSO privilege log;
Attend Karney deposition (partial);
Staff communication with St. John re: discovery responses;
Staff meeting re: document production;
Draft letter re: production of documents;
Prepare for document production;
Bates stamp and copy documents;
Communications re: Judge Spiegel's Order;
Draft reply to Motion to Clarify;

Communication with staff re: decree withdrawal order;
Draft letter to Allen and Malone;
Review testimony re: budget cuts at MSD;
Draft letter to defendants;
Continue to Bates stamp documents and finalize document production;
Staff communication to St. John re: document disclosures;
Respond to communication re: Judge's action;
Review documents from commissioners;
Staff communication re: status of discovery;
Communications with AJS re: agenda and discovery issues;
Review communication from Allen re: discovery production;
Further draft of Motion for Clarification;
Revise communications from AJS to Malone and Allen;
File Motion to Clarify, courtesy copy to Judge;

Services rendered by: DDA, LDH     85.66 hours     FEES: $21,501.46
AJL, BSP:


13.    **January, 2003:**

Communications with staff re: discovery questions;
Communications re: SSO interrogatories;
Review SSO Summary Judgment;
Staff communications re: depositions;
Review U.S. EPA letter re: discovery;
Draft memo on Summary Judgment;
Communications with AJS re: work product issue and research;
Communications with staff re: same;
Communications with clients re: factual information from former MSD employee,
        ethics check on related issues;
Staff communications re: Motion to Compel;
Research re: discovery of expert documents;
Draft memo re: work product privilege;
Further review and revision of memo on summary judgment;
Staff communications re: document production problems and discovery of expert
        materials;
Further work product research;
Communication to Allen or AJS;
Communications with AJS re: Motion for Summary Judgment;
Communications with staff re: same;
Communications re: investigator and CSO notice issues;
Deposition preparation;
Communications re: document production;
Inventory documents produced for copying;
Further review of summary judgment issues and staff communications re: same;

Review reply memo;
Communications with AJS re: depositions; additional focus on SIB victims;
Draft communications to Allen and others;
Research expert disclosure memo to staff re: same;
Review DOJ privilege logs;
Communications with staff re: reply to Motion for Clarification;
Draft reply;
Review MSD and government responses to Motion;
Staff communications re: reply;
Further revisions of reply;
File reply;
Communications with client re: litigation issues;
Preliminary work on Motion to Compel;
Communications with AJS re: errors in MSD's economic analysis;
Follow up on Karney deposition;
Communications re: 2/4/03 expert meeting;

Services rendered by: DDA, AJL,
BSP, LDH:                              44.38 Hours   FEES:$ 10,001.90


14.    **February, 2003:**

Drive to off-site meeting with AJS and experts re: deposition;
Communications with St. John re: deposition;
Review Kavanaugh affidavit issues;
Outside conference with AJS and expert re: deposition status;
Review communications to Allen re: negotiations;
Draft and review letter to counsel;
Communications with AJS re: same;
Review expert deposition follow up;
Review report;
Communications with AJS re: deposition outcome.

Services rendered by: DDA, BSP    5.78 Hours    FEES: $2,225.83


15.    **March, 2003:**

Review communications from Allen re: status of negotiations;
Communications with AJS re: same;
Communications with AJS re: negotiations and client's position on court's order;
Communications with AJS re: intervention issues;

Services rendered by: DDA        .79 Hours    FEES: $304.53

16. **April, 2003:**

Review expert affidavit;
Communications with AJS re: same;
Review Motion to Enforce;
Communications with AJS re: same;
Review plans for status conference;
Review memos re: SIB issues;
Communications with AJS re: 4/15/03 status conference;
Continue review of related issues;
Communications with AJS re: 4/15/03 meeting;
Communications with client re: status conference;
Prepare for hearing;
Communications with AJS re: prep for hearing;
Further preparation for hearing;
Further communications with AJS re: same;
Attend status conference;
Follow-up communications re: status conference;
Review of memo re: status conference;
Review client communications re: status conference and SEPs;
Further communications with client re: CSO/SSO issues;
Communications with AJS re: SSO 700 and need for communications on why
     interim system is being used;

Services rendered by: DDA, LDH: 11.32 Hours     FEES: $4,374.61

17. **May, 2003:**

Communications with AJS and staff re: meeting;
Attend meeting with AJS, defendants APA;
Draft memo re: 5/1/03 SSO meeting;
Communications to staff and AJS re: same;
Review communication from AJS re: status of cases;
Communications with AJS re: same;

Services rendered by DDA, BSP:     9.49 hours     FEES: $1,799.32

18. **June, 2003:**

Communications with AJS re: litigation and negotiation issues;
Communications with client re: same;

Services rendered by DDA:     1.31 Hours     FEES: $508.19

14

19. **July, 2003:**

   Review comments on Decree;
   Communications with AJS re: update;
   Review memo from AJS.

   Services rendered by DDA:          1.68 Hours      FEES: $655.10


20. **August, 2003:**

   Communications with AJS re: update on issues, plan meeting and discuss
        conference with Judge;
   Further communications with AJS and client re: 9/3/03 status conference.

   Services rendered by DDA:          1.51 Hours      FEES: $588.47


21. **September, 2003:**

   Review of Powerpoint presentation and communications re: same;
   Communication with AJS re: status conference;
   Communications with staff re: status conference;
   Attend status conference;
   Meet with AJS and client re: same;
   Review related sewer decision;
   Review communications re: sewer issues;
   Communication with AJS re: public meeting and nuisance issues;
   Communication with AJS re: SIB problems and count commissioners;
   Communication from client re: SIB issues and amended complaint;
   Communications with AJS and client re: final decree and tunnel.

   Services rendered by DDA:          8.37 Hours      FEES: $3,197.20


22. **October, 2003:**

   Review of communications re: Consent Decree;
   Review communications re: flaws in Consent Decree;
   Communications with AJS re: same;
   Review admissions concerning MSD problems;
   Communications with AJS and staff re: same;
   Further communications with AJS and staff re: same;
   Prepare for meetings re: same;

Draft position re: issues.

Services rendered by DDA, LDH:     6.08 hours     FEES: $2,361.23

23.     **November, 2003:**

Review of communications re: Consent Decree comments;
Communications with client re: same;
Further review of comments, highlight language of concern;
Communications with clients re: same;
Communications with staff re: language issues;
Communications with client re: public comment;
Review comment issues;
Communications with AJS re: status of comments;
Communication with client re: sewer meeting;
Review related issues;
Communications with client re: conference call;
Further review of Decree comments;
Review status report, revise same;
Communications with AJS re: same;
Revise status report;
Review filings;
Communications with AJS re: same.

Services rendered by DDA,
LDH, JOD:                    7.94 Hours     FEES: $3,017.09

24.     **December, 2003:**

Draft Motion for Status Conference;
Revise memorandum for same;
Go to Courthouse;
Review communications re: status conference;
Communications with AJS re: same;
Communications with client re: status conference;
Communications with staff re: research;
Communications re: client re: cost issues to insure accuracy of Petition;
Communications with AJS re: reply to request for status conference;
Review issues re: public input and process;
Review key court decision and provide analysis to staff;
Revise status conference motion and reply;
Communications with AJS re: same;
Review and further revise reply;
Communications re: county budget;

Communications with AJS re: same and 1/2/04 meeting.

Services rendered by DDA,
LDH, AMB:                14.63 Hours    FEES: $5,178.86

25.    **January, 2004:**

Review technical comments;
Communications with AJS and client re: same;
Communications to client re: changes to draft comments;
Review notice;
Review issues re: public documents and MSD budgets;
Review communications re: meeting and new Order;
Communications with staff re: Judge's Order re: status conference;
Communications with staff re: Motion for Status Conference;
Review Judge's Order;
Communications with staff re: same;
Communications with AJS and experts;
Communications re: inconsistency in 1/27/04 Order;
Communication to court staff re: same;

Services rendered by DDA,
AMB, LDH:                8.66 Hours    FEES: $3,063.48

26.    **February, 2004:**

Communications with AJS re: his call re: settlement master, expert declaration
    and need for MSD audit;
Communications with AJS re: special master and expert affidavit;
Review and revise same;
Draft revised response to Court's request for opinion on appointment of special
    master;
File same;
Communications with staff, client and AJS re: hearing prep;
Attend status conference;
Follow-up meeting with client re: same;
Review Powerpoint presentation and edit;
Communications with AJS re: status, discuss budget issues;
Further communications with AJS and client re-cap to 2/12 status conference;
Preliminary planning for Consent Decree hearing;
Communications with client re: statements of SIB victims;
Client conference re: hearing.

Services rendered by DDA, AMB: 11.15 hours    FEES: $4,080.77

27.   **March, 2004:**

     Involved summary jury trial – no billable time. Preparation and trial of unrelated case.

28.   **April, 2004:**

     Communications with AJS re: Powerpoint presentation;
Review issues and Motion;
Communication with client re: SIB issues;
Communications re: substantial revisions of presentation;
Review download and review U.S. brief;
Staff communication re: standard of review for Consent Decree challenge;
Communications with AJS re: video and need for declaration;
Office conference re: special master;
Further review of Motion for Entry;
Dictate and revise memos re: same;
Communications with AJS re: CSO policy;
Begin research and draft of opposition to Motion to Enter;
Outline issue re: same;
Communications with AJS re: same;
Review memo in support of Motion to Enter Consent Decree;
Staff communications re: same:
Communications with AJS and expert re: CSO/SSO fallacy in Motion for Entry;
Staff assignments re: brief;
Dictate and revise response to U.S. brief re: appointment of special master;
Further review of memo in support of Motion for Entry and draft response;
Communications with AJS re: same;
Dictate outline of argument;
Further work on special master portion of response to Motion;
Prepare analysis of same;
Review expert declaration and modifications to same;
Communications with AJS re: expert conference call;
Communications to client re: SIB program and SC;
Communications with experts and staff re: declarations;
Review authorities cited by U.S. in brief;
Further communications re: response to Motion to Enter;
Review draft of Motion to Enter to identify further research issues;
Review SIB victim affidavit re: SIB issues;
Draft intro in case analysis to brief;
Communications with AJS and client re: brief;
Staff communications re: brief;
Review and revise response to Motion for Entry.

Services rendered by DDA,
AMB,LN, JN:                 64.90 hours     FEES: $20,974.23

29.    **May, 2004:**

Communications with AJS re: brief;
Staff conference calls re: same;
Further review and revision of drafts of response to Motion for Entry;
Communications re: same with staff;
Communications with AJS re: same;
Prepare exhibits, table of authorities for brief;
Review and revise final draft;
Communications with AJS and staff re: same;
Courthouse manual filing of Lehan videotape;
Distribute tapes to parties;
Communications with AJS re: Lehan video and Motion for Special Master;
Staff communications re: Rule 53 Motion;
Draft Motion to Appoint Special Master;
Revise same;
Revise and file Notice of Errata;
Review faxes and other communications re: hearing prep and motions;
Prepare outline of hearing argument;
Communications with client re: Consent Decree hearing dates;
Communications with AJS re: same;
Communications with client re: contents of declarations;
Further preparation of hearing presentation;
Staff conferences re: same;
Communications with AJS re: hearing and Surreply;
Additional expert affidavits;
Review communications re: fairness hearing;
Staff review of SSO reply materials;
Communications with expert re: declaration;
Staff communications re: Powerpoint presentation and needed revisions;
Prepare for hearing;
Communications with expert re: Little Rock Decree, CSO/SSO issues, CMOM
        Construction Grant Guidance;
Revise affidavit;
Staff conference re: hearing presentation;
Meeting with AJS re: same;
Review diligent prosecution issues;
Further review of Powerpoint presentation;
Communications with AJS re: same;
Communications with expert re: secondary treatment and amount of metals
        removed;

Further revisions of Powerpoint presentation;
Further calls to experts re: points in presentation;
Further hearing preparation;
Review Motion for Leave and Surreply;
Revise same;
Communications with AJS and staff re: same;
Attend fairness hearing, including meetings with clients during same;
Draft reply in support of Motion for Court Appointed Expert;
Review post-hearing issues;
Communications with county resident re: sewage in creek;
Communications with client re: same;
Staff communications re: hearing follow-up;
Revise reply in support of Motion for Court Appointed Special Master;
Communications with experts re: hearing outcome.

Services rendered by DDA
AMB, JOD, LN:                    152.62 Hours  FEES: $45,436.40

30.    **June, 2004:**

Review memos;
Communications with AJS re: Fee Petition;
Attend 6th Circuit argument re: related Citizen Suit fee issues;
Review MSD SIB victim issues;
Review communications re: Fee Petition;
Communications with AJS re: same.

Services rendered by DDA:        2.85 Hours    FEES: $1,110.64

30.    **July, 2004:**

Communications to AJS re: CSO program and fee motion;
Return communications re: ombudsman;
Review memoranda in support and client's fees and costs;
Research case law re: Fee Petition;
Staff communication re: same;
Communications with environmental lawyers re: fee issues;
Communications with AJS re: research;
Substantial revisions of draft Petition;
Streamline same;
Staff communications re: research;
Coordinate re-draft of Fee Petition;
Further research of Clean Water Act fee standard;

Quality control check re: sewage backup at numbers and other issues in Fee
    Petition;
Review and dictate memos re: Fee Petition issues;
Review and dictate 2002 time for Fee Petition;
Review time records and dictate and delete work product issues – December 2001
    thru February 2002;
Review 2003-2004 time;
Delete work product issues and dictate Fee Petition.


Services rendered by DDA,
LN, AMB:                                115.69 Hours  FEES: $27,098.55




EXPENSES ADVANCED BY D. DAVID ALTMAN
CO., L.P.A.:                                                        $7,290.89

FEES PAYABLE TO D. DAVID ALTMAN CO., L.P.A.:        $370,249.84

TOTAL FEES AND EXPENSES:                              $377,540.73