# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| United States of America, *et al.*,     ) | |
|                      ) | |
|        Plaintiffs,       ) | |
|                      ) | **Case No. 1:02cv00107** |
| Sierra Club, *et al.*,        ) | (Consol. with C-1-02-108 and |
|                      ) | C-1-02-135) |
|        Intervenors,    ) | Judge S. Arthur Spiegel |
| v.                    ) | |
|                      ) | |
| The Board of County Commissioners,   ) | |
| Hamilton County, Ohio, *et al.*,    ) | |
|                      ) | |
|        Defendants.    ) | |

## MEMORANDUM OF DEFENDANTS BOARD OF COUNTY COMMISSIONERS, HAMILTON COUNTY, AND THE CITY OF CINCINNATI IN OPPOSITION TO SIERRA CLUB AND MARILYN WALL'S MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

SUMMARY OF ARGUMENT PURSUANT TO LOCAL RULE 7.2(a)(3) .............................. vi

I.     INTRODUCTION ...................................................................................................... 1

II.    LEGAL ANALYSIS.................................................................................................. 2

     A.     Intervenors Are Not Entitled to Fees Because They Did Not
          Substantially Prevail on the Merits of Their § 1365 Action ................................. 2

          1.     Intervenors Are Not Entitled to Fees and Costs as a Result of
               their Limited and Flawed Citizen Suit ...................................................... 4

               a.     Intervenors' Citizen Suit Only Extends as Far as Their
                    Notice Letter, Which Describes Only Reported SSOs
                    with Any Specificity ...................................................... 4

               b.     Intervenors Lack Authority to Seek Any Relief for
                    WIBs under the Clean Water Act, Prohibiting Them
                    from Seeking Fees and Costs for the WIB Program...................... 7

               c.     This Court Has No Jurisdiction over Intervenors'
                    Citizen Suit Because the United States and Ohio Were
                    Diligently Prosecuting Violations of the Clean Water
                    Act................................................................................ 10

          2.     Because the Statutory Authorization for Attorneys' Fees in §
               1365(d) Extends Only to Actions "Brought Pursuant to" §
               1365, Intervenors who Do Not Themselves Assert a Valid
               Citizen Suit Claim Cannot  Claim an Entitlement to Fees....................... 11

          3.     Intervenors Did Not Prevail or Substantially Prevail .............................. 16

               a.     Intervenors Are Not Entitled to Fees and Costs under
                    the Catalyst Theory ...................................................... 17

                 b.     Intervenors Did Not Prevail or Substantially Prevail
                    Because They Received No Judicial Relief on their
                    Claims ........................................................................ 20

     B.     If Intervenors Are Entitled to an Award of Fees and Costs – and Again
          They Are Not – this Court Should Substantially Reduce the Amount
          Claimed to Reflect Intervenors' Limited Impact on the Decrees....................... 25

III.     CONCLUSION.................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ailor v. City of Maynardville*, 368 F.3d 587 (6th Cir. 2004) .................................................. *passim*

*Am. Canoe Ass'n v. D.C. Water & Sewer Auth.*, 306 F. Supp. 2d 30 (D.D.C. 2004) .....................9

*American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423 (11th Cir. 1999) ...............27

*American Lung Ass'n v. Reilly*, 144 F.R.D. 622 (E.D.N.Y. 1992).................................................27

*Armstrong v. ASARCO, Inc.*, 138 F.3d 382 (8th Cir. 1998).......................................................3, 28

*Atl. States Legal Found., Inc. v. United Musical Instruments, U.S.A., Inc.*, 61 F.3d 473 (6th Cir. 1995)..................................................................................................................5, 6

*Atl. States Legal Found., Inc. v. Universal Tool & Stamping*, 798 F. Supp. 522 (N.D. Ind. 1992)...................................................................................................................12

*Atwell v. KW Plastics Recycling Div.*, 173 F. Supp. 2d 1213 (M.D. Ala. 2001)...........................6

*Bd. of Trs. of Painesville Township v. City of Painesville, Ohio*, 200 F.3d 396 (6th Cir. 1999) ..................................................................................................................4

*Bennett v. Yoshina*, 259 F.3d 1097 (9th Cir. 2001)......................................................................18

*Buchholz v. Dayton Int'l Airport*, No. C-3-94-435, 1995 U.S. Dist. LEXIS 9490 (S.D. Ohio June 26, 1995)................................................................................................9

*Buckhannon Bd. and Care Home, Inc., v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598 (2001) .............................................................................................. *passim*

*Comfort Lake Ass'n., Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351 (8th Cir. 1998)..............6, 24

*Comm. for Consideration of Jones Falls Sewage Sys. v. Train*, 387 F. Supp. 526 (D. Md. 1975).....................................................................................................................9

*Donnell v. United States*, 682 F.2d 240 (D.C. Cir. 1982).............................................................28

*Frilling v. Village of Anna*, 924 F. Supp. 821 (S.D. Ohio 1996) ...............................................v, 5

*GFI, Inc. v. Franklin Corp.*, 227 F. Supp. 2d 602 (N.D. Miss. 2002) .........................................15

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987)...............12, 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................. ix, 26, 27

*Hewitt v. Helms,* 482 U.S. 755 (1987) ...........................................................................3

*Jones v. City of Lakeland,* 224 F.3d 518 (6th Cir. 2000) ............................................10

*Jones v. Inmont Corp.*, 548 F. Supp. 1425 (S.D. Ohio 1984) .......................................8

*Kasza v. Whitman,* 325 F.3d 1178 (9th Cir. 2003) .............................................. viii, 18

*Key Tronic Corp. v. United States,* 511 U.S. 809 (1994) ...........................................2

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) .............................. vii, 17

*Legal Envtl. Assistance Found., Inc. v. Pegues*, 717 F. Supp. 784 (M.D. Ala. 1989) ...................9

*Loggerhead Turtle v. County Council of Volusia County*, 307 F.3d 1318 (11th Cir. 2002) ........................................................................................................... viii, 19

*Nat'l Wildlife Fed'n v. Consumer Power Co.*, 862 F.2d 580 (6th Cir. 1988) ................9

*Natural Resources Defense Council v. Fox*, 129 F. Supp. 2d 666 (S.D.N.Y. 2001) ...................16

*Oil, Chem., & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452 (D.C. Cir. 2002) .................................................................................................... viii, 18

*Public Interest Research Group v. Hercules*, 50 F.3d 1239 (3d Cir. 1995) ....................5

*Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756 (S.D. Ohio 2003).. vi, 5, 6, 7

*Sierra Club v. City of Little Rock*, 351 F.3d 840 (8th Cir. 2003) .................................. viii, 20, 23

*Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers,* 531 U.S. 159 (2001) ............................................................................7

*UNITE v. United States Immigration and Naturalization Service*, 336 F. 3d 200 (2nd Cir. 2003) .................................................................................................19

*United States v. City of Green Forest*, 921 F.2d 1394 (8th Cir. 1990) ........................15

*United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984) ................... vi, 8

*United States v. Maine Dep't of Transp.*, 980 F. Supp. 546 (D. Maine 1997)...................... *passim*

*United States v. Stone Container Corp.*, 196 F.3d 1066 (9th Cir. 1999)........................ vii, 13, 15

*United States v. Wayne County*, 369 F.3d 508 (6th Cir. 2004)......................................7

*Williams Pipe Line Co. v. Bayer Corp.,* 964 F. Supp. 1300 (S.D. Iowa 1997) ............................10

**Statutes**

33 U.S.C. § 1319 ..........................................................................................................14

33 U.S.C. § 1362 ........................................................................................................ vi, 9

33 U.S.C. § 1364 .......................................................................................................7, 8

33 U.S.C. § 1365 ..................................................................................................... *passim*

33 U.S.C. § 1365(a) ............................................................................................4, 10, 14

33 U.S.C. § 1365(b) ...............................................................................................4, 20

33 U.S.C. § 1365(b)(1)(A) ..........................................................................................v, 4

33 U.S.C. § 1365(b)(1)(B) ......................................................................................10, 11

33 U.S.C. § 1365(d) ............................................................................................... *passim*

42 U.S.C. § 300(i) ........................................................................................................8

42 U.S.C. § 6973 .........................................................................................................8

42 U.S.C. § 7604(d) ..................................................................................................13

**Regulations**

28 C.F.R. § 50.7 .........................................................................................................24

40 C.F.R. § 135.3(a) ...................................................................................................4

**SUMMARY OF ARGUMENT PURSUANT TO LOCAL RULE 7.2(a)(3)**

I.    **INTRODUCTION**.......................................................................................................1

Intervenors Sierra Club and Marilyn Wall are not prevailing or substantially prevailing parties under § 1365(d) of the Clean Water Act ("CWA"), because they did not obtain some relief as a result of an "action brought pursuant to" § 1365. 33 U.S.C. § 1365(d).

II.   **LEGAL ARGUMENT**...............................................................................................2

    A.    **Intervenors Are Not Entitled to Fees Because They Did Not Substantially Prevail on the Merits of Their § 1365 Action**...............................................................................................2

The Supreme Court has instructed "that a plaintiff [must] receive at least some relief on the merits of ***his claim*** before he can be said to 'prevail.'" *Buckhannon Bd. and Care Home, Inc., v. West Virginia Dep't of Health and Human Res.,* 532 U.S. 598, 603-04 (2001) (emphasis added). Since Intervenors do not have a valid claim under § 1365, they are not entitled to an award of attorneys' fees. *See Ailor v. City of Maynardville,* 368 F.3d 587, 601 (6th Cir. 2004).

        1.    **Intervenors Are Not Entitled to Fees and Costs as a Result of their Limited and Flawed Citizen Suit**...................................4

            a.    **Intervenors' Citizen Suit Only Extends as Far as Their Notice Letter, Which Describes Only Reported SSOs with Any Specificity**...................................4

Under CWA § 1365(b)(1)(A), a citizen suit plaintiff must "provide notice of the *specific* limitations, standards or orders alleged to be violated" 60 days before filing suit. *Frilling v. Village of Anna*, 924 F. Supp. 821, 833 (S.D. Ohio 1996). *See also Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756, 763-64 (S.D. Ohio 2003). Because Intervenors' notice letter addresses only certain specified SSOs, their citizen suit cannot provide a basis for claiming success for WIBs, unreported SSOs, or combined sewer overflows.

**b.    Intervenors Lack Authority to Seek Any
Relief for WIBs under the Clean Water Act,
Prohibiting Them from Seeking Fees and
Costs for the WIB Program**..........................................................7

The citizen suit provision of the CWA only permits citizens to challenge a violation of an effluent standard or limitation.  33 U.S.C. § 1365.  It does not authorize citizens to enforce non-mandatory, discretionary authorities such as the United States' emergency powers under § 1364.  *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984).  Although WIBs may be actionable under state law, Defendants do not violate "an effluent standard or limitation" under the CWA when capacity issues cause a basement backup because a WIB event does not constitute a "discharge" to the navigable waters of the United States.  33 U.S.C. § 1362.  Because the water and sewage from WIBs are typically contained in the affected basement, there is no evidence that these temporary releases ever reach navigable waters.  Thus, WIB events simply do not fall under the ambit of § 1365.

**c.    This Court Has No Jurisdiction over
Intervenors' Citizen Suit Because the United
States and Ohio Were Diligently Prosecuting
Violations of the Clean Water Act**..............................................10

Lastly, this Court does not have jurisdiction over the Intervenors' citizen suit because the USEPA and the OEPA filed and were diligently prosecuting a civil action against the City and County within the 60-day notice period following Intervenors' notice letter.  Because this Court cannot award attorneys' fees based on a suit over which the Court did not have jurisdiction, it cannot award attorneys' fees based on Intervenors' citizen suit.  *See Ailor*, 368 F.3d at 601 (stating that the court could not award attorneys' fees under the CWA if citizens had not filed a valid citizen suit).

2.    **Because the Statutory Authorization for Attorneys' Fees in § 1365(d) Extends Only to Actions "Brought Pursuant to" § 1365, Intervenors who Do Not Themselves Assert a Valid Citizen Suit Claim Cannot Claim an Entitlement to Fees**...................................................11

Intervenors are not entitled to attorneys' fees because the CWA's fee-shifting provision allows courts to award costs and fees only to a prevailing party "in any action ***brought*** pursuant to this section," 33 U.S.C. § 1365(d) (emphasis added). Because Intervenors did not "bring" the enforcement actions that were settled by the Consent Decrees, they are not entitled to base their fee award upon the results gained by the United States and the States of Ohio in those actions. The citizen-suit provision was meant to encourage citizens to take action only when the federal or state regulatory agencies fail to act. *See United States v. Maine Dep't of Transp.*, 980 F. Supp. 546, 549 (D. Maine 1997). Therefore, it makes no sense to award attorneys' fees to an intervenor who joins an ongoing enforcement action brought by the United States and state regulators. *See United States v. Stone Container Corp.*, 196 F.3d 1066 (9th Cir. 1999). Congress, therefore, could not have intended that Intervenors be awarded attorneys' fees for intervening in an ongoing enforcement action and unsuccessfully opposing the settlement reached by the United States and State of Ohio with Defendants.

3.    **Intervenors Did Not Prevail or Substantially Prevail**..........................16

Because the determination of "whether a plaintiff is a 'prevailing party' within the meaning of the fee-shifting statutes is a ***threshold question*** that is separate from the question of the degree to which the plaintiff prevailed," *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998) (emphasis added), Intervenors must first demonstrate that they prevailed on an issue before discussing whether that issue is significant enough to qualify them as a "prevailing or substantially prevailing party."

a.    **Intervenors Are Not Entitled to Fees and Costs under the Catalyst Theory**........................................................17

Intervenors argue that the so-called "catalyst theory" entitles them to fees and costs because they were the primary reason for changes in the Consent Decrees. After the Supreme

Court's decision in *Buckhannon*, 532 U.S. at 603-04, however, the catalyst theory is no longer a valid basis for an award of attorneys' fees under statutes that require the requesting party to have "prevailed or substantially prevailed."  Although the Sixth Circuit has yet to decide whether *Buckhannon* – which analyzed fee-shifting statues with a "prevailing party" standard – is applicable to statutes with a "prevailing or substantially prevailing" standard, the weight of case law and the reasoning of the Supreme Court support rejection of the catalyst theory here.  *See, e.g., Kasza v. Whitman,* 325 F.3d 1178, 1180 (9th Cir. 2003) (applying *Buckhannon* to RCRA, which also contains the "prevailing or substantially prevailing" standard); *Oil, Chem., & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002) (concluding that "FOIA's addition of the modifier 'substantially' might possibly be taken as limiting the category of 'prevailing parties,' but it cannot be taken as expanding the universe of parties eligible for a fee award"); *Loggerhead Turtle v. County Council of Volusia County*, 307 F.3d 1318, 1322 & n.4 (11th Cir. 2002) (recognizing that the difference between a "prevailing party" and a party that has "substantially prevailed" is "inconsequential").

**b.    Intervenors Did Not Prevail or Substantially Prevail Because They Received No Judicial Relief on their Claims**.................................................................20

Without the catalyst theory upon which to rely, Intervenors cannot be considered a "prevailing or substantially prevailing party" because this Court entered the Consent Decrees without modification over Intervenors' strenuous objections – hence they achieved no judicial relief on their claims.  Moreover, the entry of the Consent Decrees cannot provide Intervenors with a basis under *Buckhannon* to claim they "prevailed" because they did not negotiate these settlements and are not parties to the agreements themselves.  *See Sierra Club v. City of Little Rock*, 351 F.3d 840 (8th Cir. 2003) (applying *Buckhannon* in a CWA citizen-suit case and holding that to constitute a prevailing party the judicially sanctioned relief obtained must alter the legal relationship between the parties).  Intervenors are clearly not a prevailing or substantially prevailing party" as they achieved no judicially sanctioned change in the legal relationship of the parties.  *See Buckhannon*, 532 U.S. at 601.  In fact, all of the changes

ix

allegedly caused by Intervenors were accepted voluntarily by the Government-Plaintiffs and Defendants during negotiation of the Consent Decrees or during the mandated public comment periods, and were proposed for entry by the United States and Defendants in spite of Intervenors' ongoing objections.

B.    **If Intervenors Are Entitled to an Award of Fees and Costs – and Again They Are Not – this Court Should Substantially Reduce the Amount Claimed to Reflect Intervenors' Limited Impact on the Decrees**......................................................................................25

In order for a court to award fees, the petitioner must satisfy the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Because Intervenors merely obtained "limited success," (if they obtained any success at all), the Court "should award only that amount of fees that is reasonable in relation to the results obtained." *Id*. at 440. Furthermore, where there are unsuccessful claims "distinct from" successful claims, there is no recovery for the former. *See id.* The Intervenors' fee application – approximately $1.1 million for all time and costs expended – bears no relation any success Intervenors achieved on the merits, and makes no attempt to segregate time and costs for efforts that were clearly unsuccessful. Intervenors even claim fees and costs for litigation strategies that they were warned by this Court not to repeat in the future. Moreover, Intervenors have made no attempt to exercise billing judgment, and have attempted to recover costs for lunches and parking fees. The time spent for D. David Altman's firm is only generally described on a monthly basis, providing no opportunity to judge the reasonableness of the amounts claimed. If this Court should decide that Intervenors are entitled to fees as a prevailing or substantially prevailing party on some issue, Defendants request an opportunity for supplemental briefing on the proper quantum of fees – which can only be determined based on claims, if any, on which this Court determines Intervenors prevailed.

III.    **CONCLUSION**...........................................................................................................29

## I.     INTRODUCTION

At every stage of this proceeding, Sierra Club and Marilyn Wall ("Intervenors") have attempted to delay settlement between the Defendants and the Government-Plaintiffs, repeatedly raising baseless legal challenges that this Court has rejected. Because Intervenors have not prevailed in opposing the entry of the Interim Partial Consent Decree for Sanitary Sewer Overflows ("IPCD") and the Consent Decree on Combined Sewer Overflows ("Final Decree"), and, in fact, have failed to secure any judicial relief on their claims, Intervenors are not entitled to fees or costs under the Clean Water Act's ("CWA") fee-shifting provision.

In order to be a prevailing or substantially prevailing party under § 1365(d) of the CWA, Intervenors must obtain some relief as a result of an "action brought pursuant to" § 1365. *See* 33 U.S.C. § 1365(d). Intervenors collapse the legal action on which they base their fee request into an undifferentiated whole, simply stating that they have "substantially prevailed in the consolidated cases" and citing both the previously filed federal and state enforcement actions, as well as their citizen suit. *See* Intervenors' Motion for Attorneys' Fees and Costs (doc. 136) ("Motion for Fees") at 8. Intervenors appear to be claiming fees either on the basis of their citizen-suit or their intervention into the United States' action, and both claims have serious flaws. First, they may not claim prevailing party status as a result of their citizen suit because that action was jurisdictionally flawed in three important respects: (1) Intervenors' initial notice letter was limited to reported SSOs; (2) Intervenors lack jurisdiction to assert any claims related to water-in-basement ("WIB") events, as WIBs do not constitute a violation of an effluent standard or limitation or constitute a discharge to the navigable waterways of the United States; and, (3) the Court lacks subject matter jurisdiction over Intervenors' citizen-suit because the United States and the State of Ohio were diligently prosecuting Defendants' alleged violations of the CWA.

Second, Intervenors claim some right to fees because they intervened into the broader United States CWA enforcement action, citing the Court's June 9, 2004, Order (doc. 129) ("Entry

Order") as the basis for their claim.  *See* Motion for Fees at 10.  Case law confirms, however, that citizen-intervenors who join existing federal enforcement actions are not entitled to attorneys' fees under the CWA.  Because the citizen-suit provision was meant to supplement rather than trump federal enforcement, there is no purpose in awarding fees in a matter in which the United States had taken action to enforce the law.

Even if Intervenors can overcome these preliminary jurisdictional hurdles, they have not substantially prevailed because they have not succeeded on any significant issue that they asserted in litigation.  They cannot escape the fundamental fact that this Court entered the IPCD and the Final Decree ("Consent Decrees") over the objections of Intervenors without any modification, and specifically rejected all three of Intervenors' main arguments in the Entry Order.  Simply, Intervenors are not entitled to fees or costs as neither their citizen suit nor their intervention into the ongoing federal enforcement action altered the substantive legal relationship between Intervenors and the other parties in this matter.

Finally, even if Intervenors can establish that they prevailed on a discrete claim, their claim for ***all of the costs*** expended on this matter is outrageous and entirely out of proportion with any supposed benefit gained.  Intervenors even have the audacity to claim reimbursement for fees for their work on their Response to the United States' Motion for Clarification (doc. 81) and their Motion for Sanctions (doc. 57), tactics that this Court termed "scurrilous" and warned Intervenors not to repeat in the future.  *See* January 29, 2003, Order (doc. 88).  Intervenors must not recover fees for their "derisive rhetoric," *see id.,* or for other unsuccessful work in opposing the Consent Decrees.

## II.    LEGAL ANALYSIS

### A.    Intervenors Are Not Entitled to Fees Because They Did Not Substantially Prevail on the Merits of Their § 1365 Action

Under the so-called "American Rule," courts may not award fees "to a prevailing party absent explicit statutory authority."  *Key Tronic Corp. v. United States,* 511 U.S. 809, 819 (1994).  Intervenors have claimed the right to recover their fees under the CWA's citizen suit

provision, which permits a court, in an "action brought pursuant to" § 1365, to award attorneys' costs and fees to "a prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). Under this two-pronged standard, Intervenors must prove that they are a "prevailing or substantially prevailing party" and also must demonstrate that an award of fees is appropriate in this circumstance. *See Armstrong v. ASARCO, Inc.*, 138 F.3d 382, 387-388 (8th Cir. 1998) (reviewing the ruling on whether a plaintiff was a prevailing party *de novo*, but reviewing the question of appropriateness under an abuse of discretion standard).

The Supreme Court has made clear "that a plaintiff [must] receive at least some relief on the merits of **his claim** before he can be said to prevail." *Buckhannon Bd. and Care Home, Inc., v. West Virginia Dep't of Health and Human Res.,* 532 U.S. 598, 603-04 (2001) (emphasis added). *See also Hewitt v. Helms,* 482 U.S. 755, 760 (1987) (same). In other words, in order to maintain a claim for attorneys' fees, Intervenors must have "been awarded some relief" on their specific claims against Defendants. *Buckhannon*, 532 U.S. at 603. Accordingly, if Intervenors did not have a valid claim, they are not entitled to an award of attorneys' fees. *See Ailor v. City of Maynardville*, 368 F.3d 587, 601 (6th Cir. 2004) (concluding that "because Plaintiffs never had a valid claim for civil penalties or injunctive relief, they cannot in any way be considered the 'prevailing or substantially prevailing party,' *see* 33 U.S.C. § 1365(d), [and] attorney fees are not warranted in this case."). Because Intervenors' § 1365 action suffers from various jurisdictional flaws that limit the relief they could request in this matter, and because they merely intervened in a preexisting federal enforcement action that was settled over their direct objections, this Court should reject Intervenors' Motion for Fees.

1. **Intervenors Are Not Entitled to Fees and Costs as a Result of their Limited and Flawed Citizen Suit**

   a. **Intervenors' Citizen Suit Only Extends as Far as Their Notice Letter, Which Describes Only Reported SSOs with Any Specificity**

In their Motion for Fees, Intervenors have asserted that they are eligible for attorneys' fees and costs under § 1365(d) for their contributions to the Consent Decrees, including improvements related to the CSO and SSO treatment systems, as well their efforts in the WIB program. Intervenors argue that they are entitled to these fees because they properly filed an "independent" citizen suit against the County and City under § 1365(a). *See* Motion for Fees at 9. But under § 1365(b), citizens may only bring a citizen suit if they have given adequate notice to those they are intending to sue. Here, Intervenors filed a notice letter that limited their intention to sue only to specific, reported SSOs. Therefore, Intervenors are jurisdictionally barred from bringing citizen-suit claims regarding CSOs, WIBs, or any SSOs not identified in their notice letter and, therefore, cannot now be entitled to attorneys' fees and costs related to improvements in these areas based upon their invalid citizen suit. *See Ailor*, 368 F.3d at 601.

The CWA requires any citizen wishing to bring suit under § 1365 to comply with the Act's strict notice requirements. Section 1365(b)(1)(A) states that no action may be commenced "prior to sixty days after the plaintiff has given notice of the alleged violation[.]" Notice, as required by the CWA, is a jurisdictional requirement. *Bd. of Trs. of Painesville Township v. City of Painesville, Ohio*, 200 F.3d 396, 400 (6th Cir. 1999) ("[T]his court has long recognized [the statutory notice requirement under § 1365] as a jurisdictional prerequisite to maintaining a cause of action under the Act."). Furthermore, under § 1365, a plaintiff's mandatory notice must include "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a).

In the Sixth Circuit, "sufficient information" has been interpreted to require plaintiffs to "provide notice of the *specific* limitations, standards or orders alleged to be violated." *Frilling v. Village of Anna*, 924 F. Supp. 821, 833 (S.D. Ohio 1996) (emphasis in original) (applying the standard of specificity spelled out in *Atl. States Legal Found., Inc. v. United Musical Instruments, U.S.A., Inc.*, 61 F.3d 473 (6th Cir. 1995), to the notice requirement for the CWA).[1] Plaintiffs are required to give specific notice of the order allegedly violated, not just "notice in fact, which is enough notice to allow the recipient to identify the order violated itself, even if the plaintiff has not clearly identified the order." *Frilling*, 924 F. Supp. at 832-33. *See also Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756, 763-64 (S.D. Ohio 2003).

As Intervenors are undoubtedly aware,[2] their § 1365 citizen suit is jurisdictionally flawed to the extent that the County and City did not have specific notice of certain violations alleged by Intervenors. Intervenors' notice letter provides the County and the City notice of their intention to sue only for explicitly reported SSOs, claiming a CWA violation for SSOs in "each monthly report from MSD to OEPA on sanitary sewer overflows dating back five-years from the date of this notice letter[.]" Admittedly, as to these reported SSOs, Intervenors notified the County and City of their intent to sue with the specificity required by § 1365.[3]

Intervenors, however, also make reference in their notice letter to injuries caused by "any additional SSOs to the Little Miami River and/or the Mill Creek of which MSD has actual

---

[1] Although other circuits, most notably the Third Circuit, have held that "notice in fact" is sufficient under § 1365, *see Public Interest Research Group v. Hercules*, 50 F.3d 1239 (3d Cir. 1995), the Sixth Circuit has not adopted this approach.

[2] Sierra Club Ohio Chapter, again represented by Mr. Slap, recently participated in a very similar case in front of Judge Marbley in the Southern District of Ohio. *See City of Columbus*, 282 F.2d at 756. In that case, Sierra Club's complaint under the CWA was dismissed because it failed to satisfy the CWA's mandatory pre-suit notice requirement. *Id.* at 757.

[3] It appears from analyzing Intervenors' claims of success that the only relief they claim that could be related to the previously reported SSOs is related to changes in the interim treatment at SSO 700 and in the STACP verification plan. These unfounded claims are discussed in detail at pp. 23-24, *infra*.

notice, but which were not reported to OEPA, as required."  Notice as to these SSOs is ***not specific enough*** for the County and the City to respond to Intervenors' letter.  Addressing a similar situation, the Sixth Circuit found that a notice letter referencing previous violations "not yet known" did not create a sufficient basis for jurisdiction.  *See United Musical Instruments*, 61 F.3d at 478.  The "vague warning" was not enough to allow the recipient of the notice letter to identify the violation over which the plaintiff was intending to sue.  *Id.*  Here, as in *United Musical Instruments,* Intervenors' notice is too vague as to those violations not reported to OEPA.  Intervenors must allege, specifically, the actual violation in order for notice to be adequate.  *See Atwell v. KW Plastics Recycling Div.*, 173 F. Supp. 2d 1213, 1228 (M.D. Ala. 2001) (dismissing an allegation of "all additional unreported monitoring results that were obtained by or on behalf of Defendants" in light of § 1365's notice requirement); *see generally City of Columbus*, 282 F.2d at 762-76 (requiring extremely specific notice of intention to sue).

Intervenors' notice letter cannot constitute adequate notice as to any of the other categories of alleged CWA violations addressed by the Consent Decrees.  The notice letter simply does not, for example, mention any WIB violations.  Even under a liberal approach to the notice requirement, which has not been adopted by the Sixth Circuit,[4] "[a] citizen suit is limited to violations that are closely related to and of the same type as the violations specified in the notice of intent to sue."  *Comfort Lake Ass'n., Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 355 (8th Cir. 1998).  The Intervenors are therefore jurisdictionally barred from bringing claims related to WIB-related injuries, and they cannot now claim attorneys' fees for claims that they could not have brought in the first place.

Similarly, the notice letter does not identify—indeed, fails even to mention—any injuries relating to CSOs.  As Judge Marbley's opinion demonstrates, the CWA's notice provision

---

[4] As Judge Marbley noted in his *City of Columbus* opinion, Sierra Club "fail[ed] to cite a single case from either this Court, the Sixth Circuit, or the Supreme Court indicating a 'notice in fact' standard can be properly applied to this Court's review of the sufficiency of the notice letters sent prior to bringing suit under the Clean Water Act."  282 F.2d at 765.

requires Intervenors to allege the specific CSO permit violations.  *See City of Columbus*, 282 F.2d at 765-76.  This failure to notify bars Intervenors from claiming that they should receive fees for CSO-related claims that could not have been brought.  Because adequate notice was not given to the County and City with respect to CWA violations other than previously reported SSOs, this Court does not have jurisdiction over Intervenors' citizen suit with respect to WIBs, CSOs, or other unreported SSOs, and does not have the authority to grant Intervenors' request for costs and fees based on claims related to those alleged violations.

> **b.    Intervenors Lack Authority to Seek Any Relief for WIBs under the Clean Water Act, Prohibiting Them from Seeking Fees and Costs for the WIB Program**

In this action, the United States asserts jurisdiction over WIB-related issues solely under the emergency powers provision of the CWA.  *See* Joint Amended Complaint at 2 ("The United States also brings this action pursuant to Section 504 of the CWA, 33 U.S.C. § 1364, for injunctive relief to address an imminent and substantial endangerment resulting from the release of sewage into buildings and other areas.") (doc. 100).[5]  The emergency powers provision of the

---

[5] The constitutionality of the United States' invocation of § 1364 as a jurisdictional basis for its challenge to county-specific problems concerning "releases of sewage into buildings and other areas" is questionable in light of the Supreme Court's Commerce Clause analysis in *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers,* 531 U.S. 159 (2001).  In *SWANCC*, the Court declared that "[p]ermitting respondents to claim federal jurisdiction over ponds and mudflats falling within the 'Migratory Bird Rule' would result in a significant impingement of the States' traditional and primary power over land and water use." *Id*. at 174.  Federal control over the creation of a temporary impoundment with no demonstrated connection to a permanent body of water seems far beyond the intended scope and the constitutionally valid reach even of the CWA's emergency powers.  The Sixth Circuit has recently recognized that, while discharges to the waterways are actionable under the CWA, basement flooding is regulated under state law.  *See United States v. Wayne County*, 369 F.3d 508, 514 (6th Cir. 2004) (denying a city's attempt to modify a CWA sewer settlement on the basis of liability it would suffer under Michigan law for basement backups if the number of bypasses to Lake Michigan were not expanded).  Because of a desire to settle this matter, and a desire to benefit the citizens of Cincinnati, Defendants agreed not to challenge the United States' jurisdiction over WIBs.  The agreement not to challenge jurisdiction, however, does not extend to Intervenors' subsequent attempt to assert jurisdiction for purposes of their fee application over incidents that are not actionable under the CWA's citizen suit provision, the very provision that supplies Intervenors' only right to fees.

CWA permits the United States to bring suit in federal court to enjoin "any pollution source or combination of sources that presents an imminent and substantial endangerment to the health of persons or to the welfare of persons." 33 U.S.C. § 1364. Because § 1365 is much more limited than § 1364, providing citizens the right only to challenge a violation of an effluent standard or limitation, *see United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984), this Court lacks jurisdiction to award attorneys' fees to Intervenors for any claimed successes on WIB-related claims.

In *Hooker*, the Second Circuit reviewed a case in which several environmental groups sought to intervene in an action originally brought by the government. The action was brought pursuant to the emergency provisions of the Safe Drinking Water Act, 42 U.S.C. § 300(i), the Resource Conservation and Recovery Act, 42 U.S.C. § 6973, and the Clean Water Act, 33 U.S.C. § 1364. *Id.* The court explained that "[i]ntervention is limited to government initiated actions that **could have been brought** by the individual but for the government action," *id.* at 978 (emphasis added), and that in this case, "[t]he district judge held that a suit brought under the emergency powers provisions is not one that a citizen could have commenced, and thus is not one in which he is given a statutory right to intervene." *Id.* The appeals court upheld that finding, stating that, "[o]ur analysis of the language, structure and legislative histories of these acts leads us to agree . . . that neither the CWA nor the SDWA nor the RCRA affords [the would-be intervenors] a statutory right to intervene in a government initiated action under the emergency powers provisions of those acts." *Id.* at 979. With specific reference to the CWA, the court held that § 1365 refers only to a citizen's authority to enforce effluent standards and limitations, not to his authority to bring suit to prevent "an imminent and substantial endangerment" from a pollution source, noting that the legislative history confirms that holding. *Id.* at 980.[6] *See also Comm. for Consideration of Jones Falls Sewage Sys. v. Train*, 387 F. Supp.

---

[6] In *Jones v. Inmont Corp.*, 548 F. Supp. 1425 (S.D. Ohio 1984), this Court found that the citizen suit provision of ***RCRA*** authorizes intervention in a suit under that statute's emergency power. The Jones

[Footnote continued on next page]

526, 530 (D. Md. 1975) (holding that "[s]ince section 1364 is discretionary, plaintiffs cannot proceed under section 1365 on this ground").[7]

Although WIBs may be actionable under state law, Defendants do not violate "an effluent standard or limitation" under the CWA when capacity issues cause a basement backup.  Under the CWA, "the discharge of any pollutant by any person [is] unlawful."  *Nat'l Wildlife Fed'n v. Consumer Power Co.*, 862 F.2d 580, 582 (6th Cir. 1988).  A WIB event, however, does not constitute a "discharge" because the CWA defines "discharge" in relevant part as "any addition of any pollutant to navigable waters from any point source. . . ." 33 U.S.C. § 1362.  Although Defendants recognize the deleterious effects of WIBs on the residents of the greater Cincinnati area, such effects do not create federal jurisdiction or jurisdiction for this Court to award attorneys' fees under federal law.  The water and sewage from WIBs are typically contained in the affected basement and eventually returned to Defendants' collection system.  There is no evidence that pollutants discharged temporarily into the basements of Cincinnati residents ever reach the navigable waters of the United States.  The WIB events simply do not fall under the ambit of § 1365.  Accordingly, the court has no jurisdiction over the Intervenors' WIB claims and, therefore, no jurisdiction to award attorneys' fees to Intervenors based on claims of success for WIBs.

---

[Footnote continued from previous page]

decision never mentions the distinct emergency power provision in the CWA.  As *Hooker* noted, the RCRA citizen suit provision makes a more difficult case on whether it allows intervention than that of the CWA, which clearly does not.  749 F.2d at 979 and 981.

[7] This Court has previously limited citizen enforcement of the CWA to instances of violations of an effluent standard or limitation.  *See Buchholz v. Dayton Int'l Airport*, No. C-3-94-435, 1995 U.S. Dist. LEXIS 9490 (S.D. Ohio June 26, 1995) (stating that "[u]nder the Clean Water Act, the Plaintiffs have the right to enforce the CWA against a person who is in violation of an effluent standard or limitation").  *See also Am. Canoe Ass'n v. D.C. Water & Sewer Auth.*, 306 F. Supp. 2d 30, 39 (D.D.C. 2004) ("A plaintiff has standing to bring a citizen suit so long as she alleges violation of a CWA or NPDES permit provision."); *Legal Envtl. Assistance Found., Inc. v. Pegues*, 717 F. Supp. 784, 787-88 (M.D. Ala. 1989) (holding that a citizen suit brought against state officials and a methane gas producer challenging the issuance of an NPDES permit was not valid because "it appears from the face of plaintiff's complaint that the present action does not fall within that class of suits specifically allowed by § 1365").

     **c.**     **This Court Has No Jurisdiction over Intervenors' Citizen Suit Because the United States and Ohio Were Diligently Prosecuting Violations of the Clean Water Act**

Lastly, as argued at length by the County and City in previous pleadings, this Court does not have jurisdiction over the Intervenors' citizen suit, because the USEPA and the OEPA had filed and were diligently prosecuting a civil action against the City and County within the 60-day notice period following Intervenors' notice letter. Because this Court cannot award attorneys' fees based on a suit over which the Court did not have jurisdiction, it cannot award attorneys' fees based on Intervenors' citizen suit.

Section 1365(a) authorizes a citizen to commence a civil action against alleged violators of the CWA only if USEPA or an authorized state— in this case Ohio—has not "commenced and is [not] diligently prosecuting a civil or criminal action" in court "to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B). These requirements are jurisdictional in nature. *See, e.g., Jones v. City of Lakeland,* 224 F.3d 518, 520-21 (6th Cir. 2000) (en banc) (reviewing trial court's jurisdictional dismissal of CWA citizen suit due to diligent prosecution). Because both USEPA and OEPA filed civil actions against the City and County to enforce the CWA with respect to the very conduct that was the subject of Intervenors' subsequent suit, which again was limited in scope to reported SSOs by its underlying notice letter, this Court has jurisdiction over this matter only if Intervenors can show that the actions filed by <u>both</u> regulatory agencies did not constitute diligent prosecution with respect to the reported SSOs. Therefore, claims that the IPCD did not adequately address WIBs, CSOs or treatment plant issues are irrelevant because Intervenors had no jurisdiction to address those violations in the first place.

Intervenors' "burden is heavy, because the enforcement agency's diligence is presumed." *Williams Pipe Line Co. v. Bayer Corp.,* 964 F. Supp. 1300, 1324 (S.D. Iowa 1997); *see also* Entry Order at 7 (citing *Akzo,* 949 F.2d at 1436, for the proposition that "[j]udicial deference to a settlement is 'particularly strong' when a settlement 'has been negotiated by the Department of Justice on behalf of a federal administrative agency like the EPA which enjoys substantial

expertise in the environmental field'").  At the time Intervenors filed their complaint, the USEPA and OEPA were clearly already diligently prosecuting the City and County for violations of the CWA.  *See* Defendants' Motion to Dismiss Intervenors' Citizen Suit for Lack of Subject Matter Jurisdiction (doc. 9 in C-1-02-135) and corresponding Reply Brief (doc. 17).  Because the Court does not have jurisdiction over Intervenors' citizen suit, it cannot award attorneys' fees or costs based on any improvements claimed pursuant to that suit.  *See Ailor*, 368 F.3d at 601 (stating that the court could not award attorneys' fees under the CWA if citizens had not filed a valid citizen suit).

> **2.    Because the Statutory Authorization for Attorneys' Fees in § 1365(d) Extends Only to Actions "Brought Pursuant to" § 1365, Intervenors who Do Not Themselves Assert a Valid Citizen Suit Claim Cannot Claim an Entitlement to Fees**

Section 1365(d) clearly authorizes a court to award fees and costs if a citizen prevails in a properly filed citizen suit.  It does not, however, authorize a fee award to citizens who merely intervene in an ongoing government enforcement action that was filed within the statutory 60-day notice period, especially when the intervenor fails to obtain any judicial relief altering the proposed settlement between the government and the alleged violator.

Intervenors are not entitled to attorneys' fees because the CWA fee-shifting provision allows courts to award costs and fees only to a prevailing party "in any action ***brought*** pursuant to this section,"  33 U.S.C. § 1365(d) (emphasis added).  Section 1365, which is entitled "Citizen suits," permits a citizen to intervene "as matter of right" into a civil enforcement matter that the "Administrator or State has commenced and is diligently prosecuting," 33 U.S.C. § 1365(b)(1)(B) (forbidding citizens to bring a citizen suit if the government is diligently prosecuting the alleged violations of the CWA).  A citizen who invokes this right, however, has not "brought" the underlying action in question, but merely acts as a participant in the ongoing federal or state action.

This reading of the fee-shifting provision is confirmed by the underlying purpose of the citizen-suit provision.  Congress incorporated the citizen suit provision into the CWA "to

supplement rather than supplant governmental action . . . permitting citizens to abate pollution when the government **cannot or will not command compliance**." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60-62 (1987) (emphasis added). In order to effectuate this intent, Congress strategically curtailed the power of citizens to enforce the CWA to circumstances when the government fails to take action after 60-days following the citizen's notice of its intent to sue. *See United States v. Maine Dep't of Transp.*, 980 F. Supp. 546, 549 (D. Maine 1997) ("*Maine DOT*") (stating that Congress included the notice requirement to limit citizen suits to circumstances where Federal, State, and local agencies fail to exercise their enforcement responsibility). If the government has fulfilled its responsibility by filing suit within that established 60-day notice period, an award of fees to an intervenor runs directly counter to Congress's rationale for including the fee-shifting provision in the citizen-suit provision. *See Atl. States Legal Found., Inc. v. Universal Tool & Stamping*, 798 F. Supp. 522, 542 (N.D. Ind. 1992) (recognizing that "the importance of the fee shifting provision [is to] promote enforcement of the substantive provisions of the CWA"). Therefore, where a private party is not "truly compelled to commence litigation because of federal or state reluctance to solve a serious environmental problem," *Ailor*, 368 F.3d at 601, that party is not entitled to fees.

The United States District Court for the District of Maine thought this reading of the CWA fee-shifting provision was self-evident when it denied an intervenor's claim for fees in *Maine DOT*. The court stated that the intervening environmental group who had "participated in settlement discussions with the other parties and intervened in the United States' civil enforcement suit . . . [fell] outside of the statutory authorization of fees in subsection 1365(d)." *Id*. Even though the citizen group in *Maine DOT* had actively participated in the settlement negotiations that led to the resolution of the United States enforcement action – unlike Intervenors here who were specifically ordered by this Court not to disrupt the ongoing

negotiations between the Government-Plaintiffs and Defendants – the court decided that "it was the United States, not Plaintiff-Intervenors, that 'prevailed' in this litigation." *Id.*[8]

The interpretation applied to § 1365(d) in *Maine DOT* is supported by the Ninth Circuit's interpretation of the similarly structured attorneys' fee provisions of the Clean Air Act ("CAA"). In *United States v. Stone Container Corp.*, 196 F.3d 1066 (9th Cir. 1999), the Ninth Circuit found that the CAA's provision authorizing an award of fees for citizen suits, 42 U.S.C. § 7604(d), did not justify an award of fees to an intervenor in a government enforcement action, even though the intervenor had worked with the federal government attorneys, who submitted affidavits supporting the citizen group's fee application. Although it relied primarily upon the language of the CAA, which is slightly different than the CWA, in rejecting an intervenor's right to attorneys' fees, the Ninth Circuit recognized that:

> [o]ur holding today is reinforced by the policy underlying citizen suit provisions in federal environmental legislation. As the Supreme Court has emphasized, Congress's intent was to encourage citizen suits only if the Federal, State, and local agencies fail to exercise their enforcement responsibility. Where the government does take action, as the EPA did in this case, the need to provide incentives for private party participation diminishes.

*Stone Container*, 196 F.3d at 1070 (internal citations omitted).[9]

Intervenors have attempted in their Motion for Fees to distinguish these decisions. First, they argue that the holding of *Maine DOT* does not apply here because they have filed an independent § 1365 citizen suit against Defendants, unlike the citizen group in *Maine DOT* who

---

[8] The *Maine DOT* court further pointed out that there had to be a direct connection between utility of the suit and entitlement to a fee award and found that "[s]ince there was no need for citizen enforcement in this case, there was no basis for an award of attorneys' fees." 980 F. Supp. 546, 549. Here, as in *Maine DOT*, there was no need for a citizen suit because the federal government had already filed a CWA enforcement action against Defendants, and the Consent Decrees were entered over the objections of Intervenors without alteration.

[9] The fact that the citizen-suit provisions in the CAA and CWA have been deemed to have similar functions supports reading them consistently and finding guidance in the CAA's statutory language and its interpretation. *See Gwaltney*, 484 U.S. at 62 (indicating that "both the Senate and House Reports explicitly connected § 505 [§ 1365] to the citizen suit provisions authorized by the Clean Air Act . . .").

merely intervened.  As discussed above, however, because Intervenors' attempted commencement of a § 1365 action was invalid for lack of subject matter jurisdiction from the moment of its filing, it cannot serve as the basis for their claim for costs and fees.  As the Sixth Circuit held in *Ailor*, Intervenors cannot rely upon an invalid citizen suit as the basis of their fee application.  *See* 368 F.3d at 601.

Intervenors also claim that this case is different from the circumstances faced by the court in *Maine DOT* (which involved only a claim by the United States under its general enforcement powers found in 33 U.S.C. § 1319) because the State of Ohio has also asserted jurisdiction under § 1365.  Therefore, as Intervenors argue, because the underlying enforcement action is an action "brought" under § 1365, they are entitled to fees as a prevailing party because the Court entered the Consent Decrees settling those claims.  *See* Motion for Fees at 10 (claiming that the *Maine DOT* decision resulted in part from the fact that the "action intervened in was not brought pursuant to section 1365").  This reasoning fails on several levels.  First, as discussed below, the fact that the United States and the State of Ohio settled their claims against Defendants over the explicit objections of Intervenors does not change the fact that Intervenors did not prevail on their ***own*** CWA claims "brought" under § 1365.

Second, the fact that the State of Ohio joined the United States enforcement action does not alter the fact that this action was initially "brought" pursuant to 33 U.S.C. § 1319 by the United States, just like the action at issue in *Maine DOT*.   The United States filed its initial complaint on February 15, 2002 (doc. 1), stating that it was bringing a civil action pursuant to § 1319, and naming Ohio as a Defendant under that same section.  Although the State of Ohio subsequently filed a complaint against Defendants asserting jurisdiction under 33 U.S.C. § 1365(a), it is unclear whether Ohio could have pursued this action independently because it never issued a formal notice under the citizen suit provision.  Regardless, Ohio's complaint was later consolidated with the federal enforcement action, which remained the primary focus in settling the CWA violations.  *See* Transcript at 85:14-17 (Ms. Malone agreeing that Ohio is "piggy-backing with the federal government").  It would be illogical to presume that Congress

meant to encourage intervenors by authorizing fees where, as in this case, both the federal government and a state are joining forces to promote compliance (and can consequently invoke § 1365 as one of their claims), but meant to preclude fees where, as in *Maine DOT*,  the federal government alone has brought suit.

Under Intervenors' reading of § 1365(d), any citizen who merely participates as an intervenor "as a matter of right" in a previously filed federal/state enforcement action is entitled to attorneys' fees if the regulatory agencies who brought the enforcement action voluntarily incorporate any ideas put forward by intervenors into the resulting consent decree.  This cannot have been the Congressional intent behind the CWA's fee-shifting provision.  *See Stone Container*, 196 F.3d at 1070 ("As the Supreme Court has emphasized, Congress's intent was to encourage citizen suits *only* if the Federal, State, and local agencies fail to exercise their enforcement responsibility.") (emphasis added).  This Court should reject Intervenors' proposed expansive reading as it ignores clear Congressional intent and the language in the statute.  *See GFI, Inc. v. Franklin Corp.*, 227 F. Supp. 2d 602, 605 (N.D. Miss. 2002) (recognizing that "fee-shifting statues . . . are to be construed narrowly because they are in derogation of the common law 'American Rule' that parties are to bear their own attorneys' fees").  The Eighth Circuit has likewise recognized the limited role played by intervenors in *City of Green Forest*, ruling that a denial of intervention is harmless error because all an intervenor has the right to do in a CWA enforcement action brought by the United States is submit comments.  *United States v. City of Green Forest,* 921 F.2d 1394, 1402 (8th Cir. 1990).[10]  Because intervenors are not "able to

---

[10] Intervenors seek to rely on the decision in *City of Green Forest* to support their contention that they are entitled to fees as intervenors.  *See* Motion for Fees at 9.  In that case, however, the fee petitioners had filed a citizen suit *well in advance* of any government enforcement, were denied the right to intervene in the later government enforcement action against one of the defendants in the citizen suit, and found their claims against that defendant precluded as a result of collateral estoppel.  The Court acknowledged that fees would be appropriate both because the citizen-suit plaintiffs' case preceded the government enforcement action and because "their efforts were instrumental in spurring the EPA into finally taking action against the City."  *Id*. at 1402.  In this case, the federal government and the State of Ohio filed their suit and lodged the IPCD *before* Intervenors filed their jurisdictionally infirm

[Footnote continued on next page]

compel a consent decree on their own terms," but merely submit comments on the pending settlement, they cannot be considered "a prevailing party" unless they can successfully block entry of that settlement. Congress could not have intended for a court to award fees under the CWA to an intervenor who unnecessarily compounds the scope of litigation by actively opposing the settlement reached between defendants and the federal/state regulators, and whose objections are ultimately rejected by the court.

### 3.    Intervenors Did Not Prevail or Substantially Prevail

Despite their failure to obtain any alteration in the Consent Decrees, Intervenors ask this Court to award them nearly $1.1 million in fees and costs as the "prevailing or substantially prevailing party." Intervenors reach this absurd result by arguing that they substantially prevailed "by achieving substantial public benefits that [they] sought in bringing suit," Motion for Fees at 10, despite the fact that the Court specifically rejected their claims that the Consent Decrees were inadequate and illegal. Intervenors, moreover, misstate the current law on the subject of when a party qualifies as "prevailing."

Intervenors rely heavily on *Natural Resources Defense Council v. Fox*, 129 F. Supp. 2d 666, 668-669 (S.D.N.Y. 2001), as the basis for their instruction that this Court apply a "generous" standard for determining when a party prevails, misinterpreting the applicability of the holding in that case. *See* Motion for Fees at 10. In *Fox*, the plaintiff seeking fees ***had actually succeeded*** at obtaining summary judgment on one of its thirteen CWA claims against the United States. *Id*. at 669. Thus, unlike Intervenors here, the plaintiff in *Fox* had clearly prevailed on the merits in one of its claims. The court's subsequent discussion of the degree to which a party must prevail to qualify as  "prevailing" – and therefore its application of a

---

[Footnote continued from previous page]

complaint, and both the years spent in government-defendant negotiations and the level of detail of the IPCD demonstrate that Intervenors' efforts did not prompt the proposed consent decree, which rather was the culmination of years of active negotiation efforts. *See* USEPA Motion for Entry of the IPCD at 16, 64-65 (doc. 116).

"generous standard" – is irrelevant because the determination of "whether a plaintiff is a 'prevailing party' within the meaning of the fee-shifting statutes is a ***threshold question*** that is separate from the question of the degree to which the plaintiff prevailed."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998) (emphasis added).  Therefore, Intervenors must first demonstrate that they prevailed on an issue before discussing whether that issue is significant enough to qualify them as a "prevailing or substantially prevailing party."

Intervenors have not prevailed on any issue.  They argue primarily that they have prevailed based upon language in this Court's Entry Order interpreting the Consent Decrees and upon changes obtained in the Consent Decrees themselves settling the United States' and State of Ohio's CWA allegations against Defendants.  *See* Motion for Fees at 11 (claiming to have prevailed because they "effected important changes and additions to the consent decree and vindicated important societal interests").  Intervenors' position that they are a prevailing party must fail, however, because they did not negotiate the Consent Decrees' terms, and, in fact, consistently opposed entry of the Decrees.  Under existing case law, if Intervenors cannot point to a judicial order or a consent decree that resolves ***their specific claims***, they are not entitled to fees.  *See Buckhannon*, 532 U.S. at 603 (holding that a party must receive at least some judicial relief on the merits of his claim before he can be said to "prevail").  Under *Buckhannon*, it is no longer sufficient to have been the catalyst that prompted other parties to act to qualify as a prevailing party – instead, a plaintiff must secure a judicial order or a court-approved settlement that alters the legal relationship between itself and the party from which fees are being sought. *See id* at 603 ("This view that a 'prevailing party' is one who has been awarded some relief by the court can be distilled from our prior cases.").

> **a.    Intervenors Are Not Entitled to Fees and Costs under the Catalyst Theory**

Despite the Supreme Court's disapproval of the catalyst theory for fee-shifting statutes that require a party to "prevail," Intervenors assert that the "'catalyst theory' remains a valid basis for cost recovery under the CWA section 1365(d)," Motion for Fees at 12, n.7, presumably in

support of the argument that because they were the catalyst for certain changes in the Consent Decrees, they are entitled to fees. Plaintiffs argue that the *Buckhannon* case is limited only to the exact statutes that were before the Court, *see id.* ("rejecting the catalyst theory in relation to ***those statutes***") (emphasis in original), and that "unlike § 1365(d), the fee shifting provisions at issue in *Buckhannon* do not contain the 'substantially prevailing' or 'whenever . . . appropriate' language." *Id*. The distinction drawn by Intervenors, however, is a difference without import. Although the Sixth Circuit has stated that it is "an open question" whether *Buckhannon* applies to the CWA, *see Ailor*, 368 F.3d at 601, the weight of authority in other jurisdictions and the scope of the Supreme Court's decision confirms that the catalyst theory no longer applies to the CWA or any other fee-shifting statutes that employ a "prevailing party" standard.

Because the Supreme Court in *Buckhannon* relied explicitly on the definition of a "prevailing party," its rationale is clearly applicable to other statutes that require fee-seekers to qualify as a "prevailing party," as well as those statutes that use a "prevailing or substantially prevailing party" standard such as the CWA. *See, e.g., Bennett v. Yoshina*, 259 F.3d 1097, 1100 (9th Cir. 2001) (stating that, "[t]here can be no doubt that the Court's analysis in *Buckhannon* applies to statutes other than the two at issue in that case.").

Courts have found absolutely no difference between statutes that use the CWA's "substantially prevailing" standard and the basic "prevailing party" standard discussed in *Buckhannon*. *See Kasza v. Whitman,* 325 F.3d 1178, 1180 (9th Cir. 2003) (applying *Buckhannon* to RCRA, which also contains the "prevailing or substantially prevailing" standard); *Oil, Chem., & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002) (interpreting the Freedom of Information Act's ("FOIA") fee-shifting standard in light of *Buckhannon* and concluding that "FOIA's addition of the modifier 'substantially' might possibly be taken as limiting the category of 'prevailing parties,' but it cannot be taken as expanding the

universe of parties eligible for a fee award").[11]  In fact, the very case that Intervenors cite to
support their application of the catalyst theory to the CWA acknowledges that the difference
between a "prevailing party" and a party that has "substantially prevailed" is "inconsequential."
*Loggerhead Turtle v. County Council of Volusia County*, 307 F.3d 1318, 1322 & n.4 (11th Cir.
2002) (holding that the catalyst theory is still applicable under the Endangered Species Act's fee-
shifting provision that allows court to award fees and costs "whenever. . . appropriate" but
contains no requirement that a party prevailed or substantially prevailed like the CWA).

Intervenors' alternative argument, that the CWA's "whenever . . . appropriate" clause
preserves the catalyst theory, is similarly misplaced.  First, the fee-shifting clause at issue in
*Buckhannon* contained similar language that permitted a court to award fees and costs to a
prevailing party "in its discretion."  532 U.S. at 601.  The slight difference between "appropriate"
and "discretion" (if any) does not permit this Court to distinguish the language at issue in
*Buckhannon* from the CWA.  Second, the "whenever . . . appropriate" standard in the CWA
applies ***only*** after a party has qualified as a prevailing or substantially prevailing party, and
cannot invalidate *Buckhannon's* rejection of the catalyst theory under that specific standard.  *See*
*Loggerhead*, 307 F.3d at 1326, n.11 (recognizing that Congress amended the CWA in 1987 to
provide that courts could only award attorneys' fees to a "prevailing or substantially prevailing
party" and distinguishing that decision from statutes that contain only a "whenever appropriate"

---

[11]  The Second Circuit has followed the D.C. Circuit in finding that the *Buckhannon* rejection of the
catalyst theory applies to FOIA's fee-shifting statute, which also awards fees to a "prevailing or
substantially prevailing" party.  *UNITE v. United States Immigration and Naturalization Service*, 336
F. 3d 200, 208 (2nd Cir. 2003).  After reviewing various definitions of the word "substantial," the
court stated that "[t]hese definitions of 'substantial' and the Supreme Court's interpretation of that term
indicate that the term 'substantially' as used in FOIA's fee-shifting provision alters the amount or
degree of recovery necessary to obtain fees – not the method or manner in which the recovery must
be obtained.  In rejecting the catalyst theory, the Supreme Court's decision in *Buckhannon* limited the
methods of recovery that may give rise to an award of fees; it did not change the amount of recovery
required.  Accordingly, any difference between the term 'prevailing party,' as analyzed in
*Buckhannon*, and the term 'substantially prevailing' party, as used in FOIA [and in the CWA], is not
significant to our analysis."  *Id*. at 208-209.

standard like the CAA and the ESA).  Despite Intervenors' attempts, there is no possible way to limit *Buckhannon's* impact on the CWA citizen-suit fee-shifting provision.  Because the catalyst theory no longer applies, a party can only "prevail" by obtaining either an enforceable judgment or comparable relief through a consent decree that ***directly benefits*** that party at the time of judgment or settlement.  *See Buckhannon*, 532 U.S. at 601.

> **b.**    **Intervenors Did Not Prevail or Substantially Prevail Because They Received No Judicial Relief on their Claims**

After the Supreme Court's decision in *Buckhannon*, prevailing parties must base their claim for attorneys' fees on a "judgment on the merits" or "settlement agreements enforced through a consent decree." 532 U.S. at 604.  Intervenors may not claim that they have prevailed by entry of the Consent Decrees, however, as they did not negotiate these settlements and are not parties to the agreements themselves.[12]  This distinction is important, as demonstrated in the Eighth Circuit's holding in *Sierra Club v. City of Little Rock*, 351 F.3d 840 (8th Cir. 2003) (applying *Buckhannon* in a CWA citizen-suit case and holding that to constitute a prevailing party the judicially sanctioned relief obtained must alter the legal relationship between the parties).  In *City of Little Rock,* Sierra Club brought a citizen suit alleging illegal SSOs against both the sewer committee (an interagency group established under Arkansas law) and the city. After settling its suit with the sewer committee, Sierra Club pursued its suit against the city directly, seeking an injunction and other relief based on a belief that the city would not cooperate with the sewer committee in implementing the separate settlement.  Although the court found that the city had violated the CWA, it refused to award Sierra Club ***any of the relief it sought in its lawsuit*** and denied its motion for attorneys' fees because it was not a "prevailing party."  *See*

---

[12] Although the United States has committed to supplying Sierra Club with copies of deliverables under the Consent Decrees, Intervenors have no right to enforce the Consent Decrees' terms directly against Defendants without first petitioning this Court – a right that every citizen has under the CWA's "intervention as of right" standard.  *See* 33 U.S.C. § 1365(b).  *See also* United States Motion for Entry of Consent Decrees at 43-44 (stating that Intervenors will have no right to directly enforce the Consent Decrees against Defendants) (doc. 116).

*id*. The Eighth Circuit refused to allow Sierra Club to claim that it prevailed based on its settlement with the separate sewer committee because

> Sierra Club can point to no "actual relief on the merits" as against the City. While the Sewer Committee entered a Settlement Agreement and agreed to address the sanitary sewer overflows, the City was not party to the agreement. Although the district court granted summary judgment in Sierra Club's favor, all Sierra Club received was a declaration that the City had violated its permit. The court declined to grant any of the relief that Sierra Club sought, not even a requested order enjoining the City from future violations of its permit. . . . Sierra Club can point to no effect that the judicial declaration had on the City's behavior toward Sierra Club. Further, without any relief to enforce, Sierra Club did not receive an "enforceable judgment" and was not a prevailing party.

*Id.*

Similarly, Intervenors can "point to no actual relief on the merits" against Defendants in this matter. In its Order, this Court entered the Consent Decrees over the objections of Intervenors, who had argued at length that the Decrees were illegal and unfair. After reviewing these objections, the Court rejected Sierra Club's points because it recognized that its role (and the role of Intervenors) was not to "micro-manage" the settlement. *See* Entry Order at 6. The Court also specifically rejected Sierra Club's principal arguments, namely that a Settlement Master be appointed to oversee implementation and that the Final Decree contained two "openers" that allowed Defendants to change the water quality standards or extend the final deadlines. *See id*. In fact, Intervenors succeeded on ***none*** of the objections they lodged against the Consent Decrees.[13]

---

[13] Intervenors claim they "substantially prevailed" when the Court ordered that an "ombudsman" be appointed to oversee the WIB program, Motion for Fees at 19, and when the Court discussed the "openers" in the Consent Decrees. *Id.* at 20. A simple review of the record belies their claims. First, the Entry Order recognizes that the idea for an ombudsman to oversee the WIB program originated with the federal government in its motion for entry. *See* Entry Order at 7 ("The Court finds it appropriate to defer to the government's position that a Settlement Master is not necessary. However, the Court finds well-taken the government's proposal that an ombudsman be appointed. . . ."). Far from prevailing on this issue, Intervenors attempted to convince the Court to appoint a Settlement Master pursuant to Rule 53, continually criticizing the United States' suggested ombudsman solution. *See* Intervenors' Response in Opposition to Entry of the Consent Decrees at 38, n.50 (doc. 118) ("Intervenors' Opposition"); Transcript of Proceedings 137:15-21 (doc. 132) ("Transcript"). In short, Intervenors gained no relief from the Court, who denied their motion and supported the government's position.

[Footnote continued on next page]

The main assertion of success by Intervenors is the addition of the "Sewage-in Basement" Program (which the Defendants and Government-Plaintiffs refer to as the WIB Program) into the Final Decree.  As noted above, Intervenors' action brought pursuant to 33 U.S.C. § 1365 has no jurisdiction to address WIB events under the CWA, and therefore they are not entitled to fees under § 1365(d) (awarding fees and costs for actions "brought under this section").[14]  Regardless, Intervenors are clearly not a "prevailing or substantially prevailing party" as they achieved "no judicially sanctioned change in the legal relationship of the parties" on the WIB issues.  *Buckhannon*, 532 U.S. at 605.  Again, the Final Decree does not alter the "legal relationship" between Intervenors and the rest of the settling parties.  Intervenors are not a party to the Consent

---

[Footnote continued from previous page]

Similarly, the Court rejected Sierra Club's demand that it amend the Consent Decrees to address "reopeners" that it believed existed.  *See* Intervenors' Opposition at 8 (arguing that the Decrees were not diligent prosecution because they have multiple "loops" that allow violations to last forever); Transcript at 149-152 (arguing that the Court should insist on a change in language because the government might not enforce the decree against MSD).  The Court rejected Intervenors' suggestion, relying upon the language of the Consent Decrees and the presumption of good faith owed the government, stating that it found that "the above section does not provide an 'opener' based on Defendants' ability to lobby for change, but only provides flexibility in the event that standards do not change, and that compliance with the unchanged standard creates onerous hardship.  These conditions are not evidence of a loophole, but rather are reasonable, and conform to the requirements of the Clean Water Act."  Entry Order at 9.  Again, this finding represents a clear repudiation of Intervenors' claims, and cannot serve as the basis of their claim to be a "prevailing party."

[14]  The same argument applies with even greater force to the Court's statement that the releases previously used by the City's Solicitors' Office were improper.  *See* Entry Order at 7.  The issue of the propriety of releases is even more removed from the CWA fee-shifting provision – and outside of the jurisdiction of the citizen plaintiffs' lawsuit – than the WIB claims.  The enforceability of releases obtained by the City Solicitors' Office under a City program can in no way be termed an action under § 1365 of the CWA, and any success on that point cannot be a basis for a prevailing party finding.  In addition, as Defendants and this Court recognized, *see* Transcript at 38, Entry Order at 7, once the complaints about the scope of the release were voiced by citizens, the City revised its release form so as to only require waiver of further claims of property damage arising from the WIB incident that is being settled by payment.  Again, even if Intervenors can claim that they were a catalyst that motivated that voluntary decision by the City, that is not enough under the *Buckhannon* standard.  Moreover, Intervenors did not cite the use of the release forms as a part of their underlying CWA claim, but as a single piece of evidence supporting their argument that the WIB Program was unfair and not in the public interest.  *See* Intervenors' Opposition at 29-30.  Because the Court entered the Final Decree without modification over the objections of Intervenors, Intervenors cannot be termed a "prevailing party" on that issue.

Decrees and cannot enforce their terms without first seeking a court order modifying the Decrees –a right that every citizen has under the CWA.  In fact, Intervenors were prohibited by this Court's January 29, 2003, Order (doc. 90) from taking part in the negotiations that led to the Consent Decrees.  Because the Entry Order merely entered a settlement between Intervenors and Government-Plaintiffs, and specifically rejected all of Intervenors' objections to the Consent Decrees, it cannot serve as the basis for Intervenors' prevailing party status.

Intervenors' argument is simply a rehash of the catalyst theory, asserting that their suit caused Defendants and Government-Plaintiffs to voluntarily change their actions and negotiate a settlement for WIBs that was separately demanded by Intervenors.[15]  As discussed earlier, the catalyst theory is no longer a proper basis for costs and fees under the CWA's "prevailing or substantially prevailing" standard after *Buckhannon*.  Therefore, even if Intervenors had been the primary cause of Defendants' motivation to institute the WIB Program in the Final Decree – and there is no convincing evidence that they were – Intervenors did not "prevail" because "without any relief to enforce, Sierra Club did not receive an 'enforceable judgment' and was not a prevailing party."  *City of Little Rock*, 351 F.3d at 845.

Moreover, as required by federal regulations, the United States published the Consent Decrees in the federal register and solicited public comments on their terms and conditions.  *See*

---

[15]  Even if the catalyst theory still applied to the CWA fee-shifting provision, Intervenors have not demonstrated sufficiently "whether [their] lawsuit was a substantial rather than an insubstantial cause of the defendant's change in conduct; [and] whether the defendant's change in conduct was motivated by the plaintiff's threat of victory rather than threat of expense. . . ."  *Buckhannon,* 532 U.S. at 610 (holding that the catalyst theory requires an extensive factual determination that the prevailing party standard does not).  Intervenors claim that their actions directly led to the WIB Program, but the facts cited do not establish that conclusion.  *See* Motion for Fees at 13-14.  At the outset, Government-Plaintiffs and Intervenors always planned to have the IPCD address only SSOs, while the Final Decree would address the system-wide solution, including WIBs.  As the United States stated in its Opposition to Intervenors' Motion for Status Conference, "the parties were well aware that this consent decree (the Final Decree) must adequately address the all-too-frequent occurrence of sewage backups in basements."  *Id*. at 15.  Although it is true that Sierra Club advocated a WIB program, and that Defendants and Government-Plaintiffs ultimately included a WIB Program in the Final Decree, there is no proof Intervenors were the substantial cause of that decision or that the decision was motivated by a fear of Sierra Club's claims.

28 C.F.R. § 50.7.  Sierra Club submitted extensive comments on both Decrees, and the United States reviewed these comments and provided detailed responses in the United States' Motion for Entry (doc. 116).  Many of the alterations that Intervenors claim to have forced in the Consent Decrees were raised in their public comments, and it was those comments that may have prompted Defendants and Government-Plaintiffs to alter their settlement to reach the best deal possible for the citizens of Cincinnati.[16]  These changes were not achieved by Intervenors' legal objections to the Consent Decrees and their opposition to their entry but through the right to object granted to every citizen.  Intervenors therefore are not a prevailing party in this circumstance.  *See Comfort Lake Assoc.*, 138 F. 3d at 357 (stating that a citizen group was not a catalyst because the regulatory agency began enforcing the permit before the group's notice of intent to sue, and because the citizen group "actually impeded" agency enforcement by suing the agency and then actively opposing the proposed agreement, which was entered over the citizen's objections).

Conversely, Intervenors' claim that they substantially prevailed by causing alterations to the SSO 700 interim treatment system is simply wrong on its face.  The IPCD contains a provision that required Defendant to submit an Interim Remedial Measures Plan ("IRM Plan") for SSO 700 that would include details and a construction schedule for the interim measure selected by Defendants.  *See* IPCD ¶ VI.B.1.  Defendants submitted this plan on schedule to the Government-Plaintiffs, initially proposing a Chemically Enhanced High Rate Settling with Ballasted Flocculation (the "CEHRS") system and storage facility sized at one million gallons.

---

[16] Intervenors claim to have "substantially prevailed" because the United States decided to modify the IPCD's Short-Term Adequate Capacity Program Plan because it agreed with Sierra Club's public comments on that issue.  *See* United States Memorandum in Support of Entry of the IPCD (Doc. 56) at 26-27.  Again, the fact that Defendants and Government-Plaintiffs voluntarily adopted helpful public comments submitted by Intervenors does not constitute legal relief on their legal claims – Intervenors were not part of those negotiations and the change in the IPCD did not result from relief on their legal claims.  Rather, the change demonstrates that the United States was acting in the public's interest by trying to obtain the best settlement possible, and reveals that Intervenors' lawsuit and motions merely prolonged the legal proceedings in this case.

*See* Declaration of Martin Umberg in Support of Defendants' Memorandum in Opposition to Intervenors' Motion for Fees ("Umberg Decl.") at ¶ 4.

After reviewing the IRM Plan, Mark Klingenstein, the United States' expert, pointed out that by increasing the storage capacity, the interim solution could fully contain a ten-year storm event. *See id.* at ¶ 6. After MSD consulted with its contractors, the decision was made to increase the size of the storage facility to 3.6 million gallons. *See id.* at ¶ 7. MSD's decision to provide the additional storage capacity was considered a relatively inexpensive way to provide facility capacity for a 10-year storm – which was considered to be a substantial benchmark for SSO control. *See id.* at ¶ 8. Moreover, Sierra Club's claim that Defendants added a disinfection system to make the CEHRS system more like secondary treatment is simply untrue, as the system was always designed to use disinfection. *See id.* at ¶ 4. Even after these changes were implemented, Intervenors continued to object to the plan to use interim treatment at SSO 700, arguing that any solution short of a full secondary treatment was *per se* illegal. *See* Intervenors' Memorandum in Opposition at 22-25, Transcript of Proceedings at 184 ("It is not legal."). Again, the Court rejected these arguments and entered the Consent Decrees without alteration – a result that is a far cry from prevailing or substantially prevailing on the merits.[17]

**B.    If Intervenors Are Entitled to an Award of Fees and Costs – and Again They Are Not – this Court Should Substantially Reduce the Amount Claimed to Reflect Intervenors' Limited Impact on the Decrees**

Even if this Court should find that Intervenors have prevailed or substantially prevailed – which, as indicated above, they have not – it would nonetheless be inappropriate and an abuse of

---

[17] Intervenors also are misguided in claiming they prevailed in forcing the parties to enter the Consent Decrees together. *See* Motion for Fees at 19. Intervenors' objections to the IPCD had no impact on the Defendants' or Government-Plaintiffs' decision to negotiate and enter the Final Decree. As the explicit terms of the IPCD stated at the outset, the parties always contemplated the adoption of a comprehensive agreement to address all capacity-related sewer issues. *See* Government Reply to Intervenors' Opposition to the Motion for Entry of the IPCD at 3 (stating that "this partial settlement, followed by negotiations (and if necessary, litigation) over the remaining issues, is an appropriate approach that serves the public interest, and Sierra Club's rhetoric only undermines its credibility") (doc. 64).

discretion to award the amount of fees requested in this case, because it is strikingly incongruous with any success obtained by Intervenors.  In order for a court to award fees, the petitioner must satisfy the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Rather than citing specific claims on which they have been successful and the amount of time dedicated to each, Intervenors in this case simply assert that their efforts in this case "involved a common core of facts and law" and claim entitlement for the undifferentiated whole. Motion for Fees at 24.  The "common core" test, however, is relevant to merit fees on unsuccessful claims *only* if the party has obtained "substantial relief;" otherwise, if the party has merely obtained "limited success," the "district court should award only that amount of fees that is reasonable in relation to the results obtained."  *Hensley*, 461 U.S. at 440.  Furthermore, *Hensley* holds that where there are unsuccessful claims "distinct from" successful claims, there is no recovery for the former.  *See id.*

Since this Court rejected all of Intervenors' objections to the Consent Decrees in its Entry Order, it is clear that Intervenors did not obtain substantial relief, and any relief they could plausibly claim would be considered limited success, at best.  Furthermore, the areas in which Intervenors claim success are easily segregable, such that the claims on which Intervenors were unsuccessful (even though they were successful on *none* of their claims) should be ruled out as distinct claims ineligible for inclusion in a fee award.  Intervenors' invalid citizen-suit complaint was based on different facts and law, for example, than its Rule 26 motion for sanctions and its subsequent opposition to the Consent Decrees; the fact that Intervenors divided up their time based on these different stages indicates it is possible to determine the number of hours actually dedicated to each individual task.

Moreover, the fees and expenses Intervenors' counsel seek to recover defy the *Hensley* Court's requirement that "billing judgment" be exercised.  *See Hensley*, 461 U.S. at 437.  Instead of exercising such judgment, counsel in this case billed everything from *lunch and parking* to countless hours of block time for reviewing and communicating with each other and clients

26

regarding unsuccessful motions:  fees and costs included in the fee petition that clearly violate

the *Hensley* requirement that "[c]ounsel for the prevailing party should make a good faith effort

to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ."

*Id.* at 434.  Courts have repeatedly indicated that they will cut down hours unreasonably spent.

*See, e.g., American Lung Ass'n v. Reilly*, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) ("The excesses of

overstaffing, unnecessary and redundant time expenditures occurred in all phases of the litigation

and must be deducted from the application"); *American Civil Liberties Union of Georgia v.*

*Barnes*, 168 F.3d 423, 428-432 (11th Cir. 1999) (declaring that "[c]ourts are not authorized to be

generous with the money of others" and reducing fees to reasonable amounts; finding, in an

illustrative example, that "lead counsel should have been able to draft a complaint comprised

primarily of material derived from other sources and with only 24 completely original

paragraphs in no more than 40 hours").  Moreover, the bills supplied by D. David Altman's firm

are summarized on a monthly basis, providing almost no indication on the reasonableness of the

amount of time spent on specific issues.

Because Defendants believe that there is no entitlement to costs and fees for Intervenors

in this matter, the City and County will refrain from a line-by-line analysis of the fees requested

by Intervenors' counsel.[18]  Should this Court – despite the failure of Intervenors to obtain more

than *de minimis* relief through their own efforts – decide to award fees, it must carefully consider

the quantum of relief justified by the results achieved by Intervenors, reviewing the alleged bases

for their requested fee awards.  Other courts have explicitly rejected many of the same types of

fees and costs claimed by Intervenors.  For example, in *Armstrong v. ASARCO, Inc.*, 138 F.3d at

389, the Eighth Circuit overturned an award of attorneys' fees to a party who had unsuccessfully

opposed the entry of a consent decree.  Because the consent decree had been entered without

---

[18]  If this Court determines that Intervenors are entitled to an award of attorneys' fees and costs,
Defendants respectfully request a supplemental briefing to address more fully the question of the
amount of fees and costs, which will be determined in part by the Court's decision on the scope of
entitlement.

alteration, the decision to award fees was an abuse of discretion "because such work [opposing the decree] was not reasonably related to the results obtained." *Id. See also Donnell v. United States*, 682 F.2d 240, 247 (D.C. Cir. 1982) (holding that where a private party intervenes in a government action and requests fees for such work "intervenors may be denied fees where their participation was unnecessary in light of the efforts of the prevailing government litigant").

Intervenors have failed entirely to satisfy their burden of linking the fees claimed to their alleged victories for purposes of justifying a fee award under *Hensley* or *Buckhannon*. As demonstrated above, there are, in fact, ***no claims*** that they initially filed that would warrant an award of fees. Defendants therefore ask this Court to recognize that, as a result of such lack of success, Intervenors cannot be awarded fees even if they were found to be a prevailing party.

### III.    CONCLUSION

For the reasons stated above, this Court should deny Intervenors' Motion for Fees and

Costs or, in the alternative, significantly reduce the amount of their claim to reflect the limited

nature of their success, if any.


Respectfully Submitted,
Dated this 31st day of August, 2004.


_____/s/Nee Fong Chin_____
Nee Fong Chin, Trial Attorney                       Terrance A. Nestor, Of Counsel
Ohio Bar # 0038095                                  Assistant City Solicitor
Assistant County Prosecutor                         Room 214, City Hall
Hamilton County Prosecutor's Office                 801 Plum Street
230 East 9th Street, Suite 4000                     Cincinnati, Ohio 45202
Cincinnati, OH  45202

Christopher H. Buckley, Jr., Of Counsel
Peter P. Murphy, Of Counsel
Gibson, Dunn and Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306


For the Board of County Commissioners Of
Hamilton County, Ohio and the City of Cincinnati

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2004, a copy of the forgoing Memorandum of Defendants Board of County Commissioners, Hamilton County, and the City of Cincinnati in Opposition to Sierra Club and Marilyn Wall's Motion for Attorneys' Fees and Costs was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties my access this filing through the Court's system.

__/s/Michael K. Murphy__
Michael K. Murphy
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
E-mail: mmurphy@gibsondunn.com
