**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

UNITED STATES OF AMERICA, ET AL.,            **CASE NO. C-1-02-107**

        Plaintiffs,        )

        and        )

SIERRA CLUB, ET AL.,        )        **Judge S. Arthur Spiegel**

        Intervenors,        )

        v.        )

BOARD OF COUNTY COMMISSIONERS  )
OF HAMILTON COUNTY, OHIO, ET AL.

            )

        Defendants.        )

**SIERRA CLUB AND MARILYN WALL'S REPLY IN SUPPORT OF THEIR**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................iv

SUMMARY OF ARGUMENT ......................................................................................vii

I. INTRODUCTION ......................................................................................................1

II. ARGUMENT .............................................................................................................2

    A. The Sierra Club is a prevailing party because it obtained specific court-sanctioned
    relief achieving substantial benefits it sought in the litigation. ................................2

        1. Sierra Club prevailed by obtaining relief granted in an *enforceable* Order of
        this Court......................................................................................................3

            (a) The Sierra Club prevailed through the Court's appointment of an
            ombudsman ................................................................................................6

            (b) The Sierra Club prevailed through the Court's Order invalidating any
            previously executed releases.......................................................................6

            (c) The Sierra Club prevailed by achieving legally enforceable interpretations
            of ambiguities in the schedule for compliance .............................................7

            (d) The Sierra Club prevailed through the Order requiring MSD to be
            responsible for cleanup, remedies, and dimunition in value of real estate ....8

            (e) The Sierra Club prevailed by obtaining an Order in which the Court
            retained jurisdiction to an extent not required by the terms of the Decrees
            alone..........................................................................................................8

            (f) The Sierra Club prevailed through the inclusion of the WIB program
            directly in the Decrees ...............................................................................8

    B. Since the Sierra Club prevailed, MSD's efforts to have this Court litigate or
    relitigate defenses are misguided.............................................................................9

    C. Sierra Club prevailed under the *Buckhannon* standard............................................10

        1. The *Buckhannon* standard requires only that the prevailing party receive relief
        with a "judicial imprimatur", such as either the Order or the Decrees in the
        instant case...................................................................................................10

        2. Under *Buckhannon*, the ultimate agreement by MSD and Plaintiffs that a WIB
        program is needed does not deprive the Sierra Club of prevailing party status ..12

    3.  Under *Buckhannon*, obtaining relief that was not precisely enumerated in the initial complaint does not change SC's status as prevailing party ...................... 13

D.  A CWA intervenor is entitled to attorneys' fees as a prevailing party where it achieves the benefits it seeks through court-sanctioned consent decrees ................. 14

E.  Under the catalyst theory, which still applies to the CWA, Plaintiff-Intervenors are prevailing parties ........................................................................ 15

    1.  The catalyst theory still applies to the CWA ...................................... 16

    2.  The Sierra Club meets the catalyst theory test .................................. 19

F.  MSD'S attempts to create a hole in the Court's jurisdiction fail .............................. 21

    1.  Notice requirements do not foreclose the Sierra Club's eligibility for fees ........ 21

        (a)  The Sierra Club's notice complies with all requirements ........................... 22

        (b) Notice requirements serve no purpose to intervention in claims already brought ......................................................................................... 25

        (c) Supplemental jurisdiction cures any defects in notice that the Defendants claim exist ................................................................. 26

    2.  A citizen suit bar based on diligent prosecution, while irrelevant in this case, would be illusory if applied after the conclusion of the litigation ...................... 27

G.  The Sierra Club is a party to an action brought pursuant to Section 1365 ............... 29

    1.  Intervenors are eligible for fees ......................................................... 29

    2.  The Sierra Club is not a "mere intervenor." ........................................ 30

H.  The Sierra Club has established entitlement to an award and documented the appropriate hours expended ........................................................................ 32

III. CONCLUSION ................................................................................................. 34

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*Ailor v. City of Maynardville.* 368 F.3d 587 (6th Cir. 2004) .................................................9, 10, 19

*Alvardo v. J.C. Penney Co., Inc.*, 768 F.Supp. 769 (D. Kan. 1991) .....................................21

*Armstrong v. ASARCO*, 138 F.3d 382 (8th Cir. 1998).............................................14, 16, 22, 33

*Atlantic States Legal Foundation v. United Musical Instruments, U.S.A., Inc.*, 61 F.3d
473 (6th Cir. 1995).................................................................................................24, 25

*Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)....................................................34

*Atwell v. KW Plastics Recycling Division*, 173 F.Supp.2d 1213 (M.D. Ala. 2001) ..............23, 29

*Brickwood Contractors, Inc. v. US*, 49 Fed. Claims 738 (2001) ..........................................10

*Buckhannon Board and Care Home, Inc., et al. v. West Virginia Department of Health
and Human Resources et al.*, 532 U.S. 598 (2001)...............................................................passim

*Chesapeake Bay Foundation v. American Recovery Co., Inc.*, 769 F.2d 207 (4th Cir.
1985) ................................................................................................................................28

*Comfort Lake Ass'n., Inc. v. Dresel Contracting, Ind.*, 138 F.3d 351 (8th Cir. 1998) ..........24

*Conservation Law Foundation of New England v. Secretary of the Interior*, 790 F.2d 965
(1st Cir. 1986) ................................................................................................................17

*Cornett v. Welding Alloys (USA), Inc.*, civil action no. 02-42-DLB (E. D. Ky. 2003)..........22

*Farrell v. International Brotherhood of Teamsters*, 1990 U.S. App. LEXIS 21850 (6th
Cir. 1990) ........................................................................................................................19

*Frilling v. Village of Anna*, 924 F.Supp. 821, 836 (S.D. Ohio 1996)...................................28

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct.
376 (1987) ........................................................................................................................18, 20

*Habich v. Dearborn, 331 F.3d 524(6th Cir. 2003)*.............................................................11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................2, 3, 4, 6, 11, 33

*In re: Atlas Van Lines, Inc.*, 209 F.3d 1064 (8th Cir. 2000) ……………………………..32

*Kasza v. Whitman*, 325 F.3d 1178 (9th Cir. 2003) ...............................................................19

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2nd Cir. 1998)..................................13, 16

*Loggerhead Turtle v. The County Council of Volusia County, Florida*, 307 F.3d 1318
(11th Cir. 2002)...................................................................................................................18

*Lykins v. Westinghouse Electric*, 1988 U.S. Dist. LEXIS 3609 (E.D. Ky. 1988) ................25

*Natural Resources Defense Council v. Fox*, 129 F. Supp.2d 666
(S.D. N.Y. 2001)................................................................................................4, 5, 6, 11

*Natural Resourced Defense Council v. Southwest Marine*, 236 F.3d 985
(9th Cir. 2000)....................................................................................................................21

*Oil, Chemical and Atomic Workers International Union v. Dept. of Energy*, 288 F.3d 452,
(D.C. Cir. 2002) ...............................................................................................................11

*Oregon Natural Desert Association v. Thomas*, 940 F.Supp. 1534 (D. Ore. 1996) .............25

*Parham v. Southwestern Bell Telephone*, 433 F. 2d 421 (8th Cir. 1970) .............6, 12, 14, 16, 17

*Posters 'N' Things v. U.S.*, 511 U.S. 513 (1994)...................................................................20

*Rice Services v. U.S.*, 59 Fed. Cl. 619 (Ct. Cl. 2004) ...........................................................11

*Roberson v. Guiliani*, 346 F.3d 75 (2d Cir. 2003) ................................................................11

*Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983) ................................................16, 17, 19, 20

*Sierra Club v. City of Columbus*, 282 F.Supp.2d 756 (S.D. Ohio 2003).............................23

*Sierra Club v. City of Little Rock*, 351 F.3d 840 (8th Cir. 2003).........................................5, 19

*Sierra Club v. Environmental Protection Agency*, 322 F.3d 718 (D.C. Cir. 2003)..............19

*UNITE v. United States Immigration and Naturalization Service*, 336 F.3d 20 (2nd Cir.
2003) ....................................................................................................................................17

*United States  v. Environmental Waste Control, Inc.*, 710 F.Supp. 1172 (N.D. Ind. 1989)
.................................................................................................................................25, 26, 30

*United States v. Fiorillo*, 186 F.3d 1136 (9th Cir. 1999)......................................................16

*United States v. Maine DOT*, 980 F.Supp. 546 (D. Maine 1997).........................................15, 30

*United States v. Stone Container Corp.*, 196 F.3d 1066, 1069 (9th Cir. 1999) .......................15, 30

*U.S. EPA  v. City of Green Forest*, 921 F.2d 1394 (9th Cir. 1990) .......................................14, 16, 30

## Statutes

28 U.S.C. §1346(a) ...................................................................................................26

33 U.S.C. § 1365 .................................................................................................passim

33 U.S.C. § 1365(b) .................................................................................................22

33 U.S.C. § 1365(b)(1)(B) ......................................................................................28

33 U.S.C. § 1365(d) ...........................................................................................passim

42 U.S.C. § 7604 .....................................................................................................16

42 U.S.C. § 7604(d) .................................................................................................16

## Rules

40 C.F.R. §135.3(a) .................................................................................................22

Fed. R. Civ. P. 24 ....................................................................................................26

## Other

S. Rep. No. 50, 99th Cong., 1st Sess. 33 (1985) .......................................................17

## SUMMARY OF ARGUMENT PER LOCAL RULE 7.2(a) (3)

**I.     INTRODUCTION………………………………………………..…p. 1**

The Sierra Club and Marilyn Wall ("Sierra Club") have prevailed in this litigation by obtaining benefits sought in their Complaint and intervention – benefits that have received a "judicial imprimatur" in both the final Court-approved Consent Decrees ("Decrees") and the June 2004 Order granting additional relief.  Thus, the Sierra Club is a prevailing party in an action brought pursuant to 33 U.S.C. §1365(d).  While the Court need not reach the catalyst theory to award fees, that theory applies and the Sierra Club would prevail under that test.

**II.     ARGUMENT…………………………………………………..p. 5**

Part A (p. 2) explains that the Sierra Club prevailed by obtaining relief granted in an enforceable Order of this Court that secures relief and benefits sought by the Sierra Club.  MSD ignores the clear standard set forth by the U.S. Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) that, to be a prevailing party for attorney's fees purposes, a party need only succeed on any significant issue in litigation which achieves some of the benefit sought in bringing suit.  The Sierra Club meets this standard.  MSD ignores court-ordered results achieved by the Sierra Club as well as the Sierra Club's achievements in both the IPCD as well as the final, global Decree ("Decrees").

Part B (p. 9) explains that, MSD improperly seeks to have the Court re-examine a host of issues ranging from diligent prosecution to notice.  The case authority relied on by MSD does not support the reopening of the merits of a case upon a fee petition, after a settlement has been reached or a party has otherwise prevailed.  See *Ailor v. City of Maynardville*, 368 F.3d 587 (6th Cir. 2004).

Part C (p. 10) demonstrates that the Sierra Club prevails, even under the Supreme Court's holding in *Buckhannon Bd. And Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598 (2001). First (p. 11), *Buckhannon* only requires that the prevailing party receive relief with a "judicial imprimatur." Both the Decrees and Court's Order entering the Decrees amount to the requisite judicial imprimatur. Thus, contrary to MSD's argument, the Sierra Club is a prevailing party under *Buckhannon*. Second (p. 14), the fact that the WIB program was ultimately included in the court-approved Decrees agreed to by the agencies does not defeat the Sierra Club's status as a prevailing party. Third (p. 13), case law demonstrates that the relief granted need not be identical to that sought for a party to be a 'prevailing party.'

Part D (p. 14) explains that, contrary to MSD's assertions, intervenors are not categorically barred from fee awards. MSD cites no authority holding that an intervenor, such as the Sierra Club, who obtains relief not sought by other parties, is ineligible for fees under the Clean Water Act. In fact, case law indicates the opposite. See *U.S. EPA v. City of Green Forest*, 921 F.2d 1394 (9th Cir. 1990); *Armstrong v. ASARCO*, 138 F.3d 382 (8th Cir. 1998); *U.S. v. Environmental Waste Control*, 710 F.Supp. 1172 (N.D. Ind. 1989); and *U.S. v. Maine Dept. of Transportation*, 980 F.Supp. 546 (D. Maine 1997).

Part E (p. 15) sets forth the reasons why Plaintiff-Intervenors are also prevailing parties under the catalyst theory. While the Court need not reach the catalyst theory, because the Sierra Club obtained court-sanctioned relief, analysis of the language and legislative history of the CWA, 33 USC 1365(d) demonstrates that the catalyst theory applies under the CWA. In fact, the 'prevailing or substantially prevailing' language was

added to clarify only the **degree** to which a party must prevail, not the **method** or **manner** by which relief must be obtained.

The "prevailing or substantially prevailing" language was added in response to *Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983) (p. 18), which required that a party receive some success, even if no major success. The Senate Report, S. Rep. No. 50, 99th Cong., 1st Sess. 33 (1985) (p.19), demonstrates that the term 'prevailing or substantially prevailing' was not added to change the broad **method** or **manner** by which a party must prevail to be eligible for fees. Indeed, the U.S. Supreme Court in *Gwaltney of Smithfield, Ltd v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987) (p. 20) observed that the legislative history states explicitly that "the award of costs 'should extend to plaintiffs in actions which result in successful abatement but do not reach a verdict.'"

Moreover, the Sierra Club meets the catalyst theory test (p.19). The Sixth Circuit applies a two prong test. *Farrell v. Intl. Brotherhood of Teamsters*, 1990 U.S. App. LEXIS 21850.  The lawsuit must be causally related to the relief obtained, and the relief secured must have some minimum basis in law. The Sierra Club's lawsuit and intervention were clearly causally related to the relief obtained, and have much more than just a minimum basis in law.

Section F (p. 22) explains that MSD's eleventh hour jurisdictional arguments do not diminish the Sierra Club's eligibility for fees. Since the Court now has jurisdiction over the Decrees, and could have granted an injunction providing the relief in the 1365 actions brought by Sierra Club and the Government, these defenses, which could have been the subject of costly litigation earlier in the case, cannot defeat the Sierra Club's eligibility to fees as a prevailing party.

Moreover, the Sierra Club's notice complies with all requirements. A notice letter need only include "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated." 40 CFR 135.3(a) (p. 24). The Sierra Club's notice letter and Complaint clearly incorporate those violations of which Defendants had "actual notice" or "knowledge." Second, the notice incorporated notice of WIBs. In fact, the Consent Decree entered by the Court defines SSOs to include SIB/WIBs.

In addition, notice requirements serve no purpose where a citizen intervenes in claims already brought. *U.S. v. Environmental Waste Control*, 710 F. Supp. 1192 (N.D. Ind. 1989) (p. 26). Furthermore, even if there were defects in the notice as defendants claim, supplemental jurisdiction would cure them. *Id.*

The diligent prosecution bar asserted by MSD does not apply to prevailing parties. Diligent prosecution is also irrelevant when a citizen-plaintiff is also an intervenor. The issues sought to be addressed by the Sierra Club exceeded those in the IPCD, so diligent prosecution could at best be only a partial bar. However, since diligent prosecution operates as a bar at the outset of the litigation, it cannot bar the relief obtained at the end of litigation.

Section G (p. 30) explains that the Sierra Club is a party to an action brought under section 1365 of the CWA. Intervenors in section 1365 actions are eligible for fees. *Id*. (p. 31). MSD cites no authority interpreting the unambiguous language of that section as categorically barring intervenors from fee awards. Moreover, the Sierra Club is not merely an intervenor but also brought its own claims.

Section H (p. 34) shows that Sierra Club has established entitlement to an award and documented the appropriate hours expended. The Sierra Club obtained substantial, not de minimus relief. The Sierra Club's work involves a common core of facts and law and its work on interrelated issues is not easily segregated, as argued by MSD. *Hensley*, supra.

**III. CONCLUSION**……………………………………………………………….34

## I.    INTRODUCTION

In their May 24, 2002 Motion to Intervene in the consolidated federal and state actions against the Defendants ("MSD")[1](Doc. No. 26), the Sierra Club and Marilyn Wall ("Sierra Club") explicitly advocated for "***full participation in the adversarial process…***" Motion to Intervene, at 5 (emphasis added).   In their opposition to the Sierra Club's intervention, MSD never argued for any limitations to the scope of the Sierra Club's intervention. Rather, MSD argued that intervention should be denied in whole, based on, e.g. timeliness issues, procedural objections, and purported prejudicial effects.  *See* Defendants' Memorandum in Opposition to Sierra Club and Marilyn Wall's Motion to Intervene (Doc. No. 38).

Not only did the Court reject each of MSD's arguments in opposition to intervention, ***it granted intervention without any condition,*** setting forth no restrictions or limitations on its scope. See October 4, 2002 Order (Doc. No. 69).  In fact, in its Order granting intervention, the Court recognized that the Clean Water Act ("CWA") confers an unconditional right to intervene and that citizens have been given this right "presumably to prosecute…[their] interests when they feel that the government is doing less than an adequate job of protecting the interests of the intervenors themselves as well as the public at-large."  See Doc. No. 69, at 5.   The record reflects that this is the exact course the Sierra Club followed.

Now, at the very end of this litigation, despite the wide intervention granted by the Court (and the consolidation of the Sierra Club's citizen suit), and after the Sierra Club has spent years and many hundreds of thousands of dollars of time and expense

---

[1] References to "MSD" throughout refer to the Memorandum of Defendants Board of County Commissioners, Hamilton County, and the City of Cincinnati in Opposition to Sierra Club and Marilyn Wall's Motion for Attorney's Feed and Costs (Doc. No. 140).

ensuring that its and the public's interests are protected in the litigation, MSD attempts to circumvent the fee issue before the Court by making numerous objections to the Court's jurisdiction.  All of these objections ignore the Sierra Club's unlimited intervenor status and the consolidation of all three cases, and are, consequently, fundamentally and fatally flawed. Because the Sierra Club is an unrestricted party to all the claims in this litigation, the Court can award fees to the Sierra Club for ***any issue the Court has jurisdiction over*** that the Sierra Club has affected.

The Sierra Club is entitled to fees and costs because it is a prevailing party under the standards set by the Supreme Court in both *Hensley* and *Buckhannon* (see Part II. A, infra).  That is, the benefits sought by and obtained by the Sierra Club have received a "judicial imprimatur" in both the final court-approved Consent Decrees ("Decrees") and the June 2004 Order ("Order") granting additional relief.  Further, even if the Court needs to reach the catalyst theory to award fees – which it does not – the Sierra Club would prevail under that test.

## II. ARGUMENT

### A. The Sierra Club is a prevailing party because it obtained specific court-sanctioned relief achieving substantial benefits it sought in the litigation.

The Supreme Court in *Hensley v. Eckerhart* (*Hensley*) articulates the standard for determining whether a party is eligible for attorney's fees as a "prevailing party;" "'plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which **achieves some of the benefit the parties sought in bringing suit.**'" *Hensley*, 461 U.S. 424, 432 (1983) (emphasis added, citation omitted).

2

MSD's argument that the Sierra Club has not prevailed on any issue is false.  The Sierra Club obtained significant court-ordered benefits Sierra Club sought in the Complaint, which sought relief for WIB victims from the discharge of  "any **raw sewage** from sanitary sewers overflows….**on to public and private property (including… basements**)" Complaint at 17-18.  In addition, throughout this litigation, the Sierra Club made a special effort to protect the interests of its members and other members of the public who are WIB victims. The addition of the unprecedented WIB program in the Decrees, as well as the additional protections for WIB victims in the Order are the type of benefits that far exceed the *Hensley* prevailing party test.

Specifically, the Sierra Club obtained relief achieving substantial benefits with respect to the following exemplar issues: oversight of the Decrees (through retention of Court jurisdiction), firm SSO deadlines (through the Court's interpretation of the 7B and 9B provisions) and abatement of the WIB hazards (through the Order imposing obligations on MSD and appointing the Ombudsman). Further, the Sierra Club prevailed when its court-ordered role in the negotiations led to inclusion of a WIB program in the *final version* of the Decrees.[2]  These achievements are the gravaman of the WIB relief sought by Sierra Club throughout the litigation.

In this case, "prevailing" involves court-sanctioned benefits in *both* the Court's June 9, 2004, Order (Doc. No. 129), and the Decrees that it approved.

1**. Sierra Club prevailed by obtaining relief granted in an *enforceable* Order of this Court.**

MSD ignores the Court-ordered results achieved by the Sierra Club as well as the Sierra Club's achievements in the Decrees. Further, because the Order set forth legally

---

[2] The Court, in its Orders (Doc. Nos. 78 and 90), directed the Sierra Club to participate in the negotiations.

binding and enforceable interpretations of the Decrees, and granted specific relief that
provides the benefits to the Sierra Club, its members and the public sought by the Sierra
Club in its Complaint, the ***Order*** "materially alters the legal relationship between the
parties," rendering the Sierra Club a prevailing party.  The MSD ignores the fact that the
Order:

- **Appoints an ombudsman** who is to "ensure that WIB victims obtain effective
  and timely assistance," Order at 7, and "ensure that the WIB program is working,
  investigate complaints, and keep the Court informed of the status of such
  program." Order at 8.

- Provides that the Court **retains jurisdiction** over the matter and "will not
  countenance unreasonable delay in correcting the problems that the decree
  addresses." *Id*.

- **Holds Defendant MSD "responsible"** for clean-up costs, remedies and any
  dimunition in the value of real estate" for the thousands of citizens (including
  Sierra Club members) affected by WIB releases. *Id*.

- Provides that "Sections 7B and 9B of the Final Decree **shall be interpreted** in
  accordance with this Order." *Id*. At 9.

- Finds the releases previously prepared by the Cincinnati Solicitor's Office "highly
  improper" *Id* at 7, and "**DECLARES the releases** the purporting to extinguish
  WIB victims right to past or future recovery for damages **unenforceable**."
  MSD ignores that each of these items directly grants substantial public benefits
  sought by the Sierra Club. See *NRDC v. Fox*, 129 F.Supp. 2d 666  (SDNY 2001)
  ("Fox"). Sierra Club is a party to the action, both as a citizen's suit plaintiff and as

4

a plaintiff-intervenor. ***None of the other parties sought an Order with any effect other than to enter the Consent Decree.*** The DOJ's statement that it would "not object" to the inclusion of some sort of an ombudsman does not diminish the Sierra Club's clear success on significant issues in the litigation that achieved these benefits. See id.

Again, all of these benefits were derived from the Sierra Club's advocacy throughout the litigation.

The MSD also ignores the environmental application of *Hensley* in *Fox*. In *Fox*, the Plaintiff prevailed on one of thirteen counts, and lost on twelve. *Id* at 668. The Court held that "By prevailing on this significant issue, NRDC ***achieved some of the benefit it sought when bringing this suit***, and is therefore a prevailing party for attorneys' fees and costs purposes." *Id* at 670 (emphasis added). Similarly, Sierra Club prevailed in the case at bar by obtaining a program benefiting thousands of WIB victims throughout Hamilton County by protecting them from the SSO discharges, and by assuring court-monitored expeditious remediation.

MSD relies on *Sierra Club v. City of Little Rock,* 351 F.3d 840 (8th Cir. 2003), to try to deny fees to Sierra Club. In fact, *Little Rock*'s holding is not inconsistent with an award of fees in the case at bar. In that case, the Court of Appeals did not allow recovery of fees because the Sierra Club did not receive any court-sanctioned or court-ordered relief. The court held that "**a plaintiff must receive at least some relief on the merits of his claim before he can be said to prevail.**" *Id* at 845 (citations omitted, emphasis added). In the instant case, the Sierra Club, both as a citizen suit plaintiff and as an intervenor, received court-ordered relief in the Order and court-sanctioned relief in the

5

Decrees. See discussion of *Parham*, below (analyzed by the Supreme Court in Buckhannon to clarify that continuing oversight by a court is sufficient relief to qualify as a "prevailing party").

      *(a) The Sierra Club prevailed through the Court's appointment of an ombudsman*.

      The MSD argues that, since the Ombudsman is not called a "special master," the Sierra Club is not responsible for the direct oversight benefit achieved by the creation of the Ombudsman.  In fact, the Order appoints an ombudsman "to ensure that the WIB program is working, investigate complaints, and keep the Court informed of the status of such program." Order at 8. It was the Sierra Club, not any other party, that brought the plight and needs of the WIB victims to the attention of the Court and the other parties. While the US finally agreed with the Sierra Club's request for special WIB victim protections by stating that it "would not object to assistance in the form of an ombudsman who could assist with oversight of the WIB programs," it was only the Sierra Club that sought that the entry of the Decrees be conditioned on this type of oversight of the program's impact on WIB victims.  See Plaintiff's Opposition to Intervenor Sierra Club's Motion for Court-Appointed Special Master at 6.   Thus, while Sierra Club did not achieve the relief with the legal title "special master," the Sierra Club obtained the substance of the relief it sought. The Sierra Club believes the ombudsman plan with the direct oversight by the Court that emerged in the Order is actually superior to the special master plan and better achieves the benefit sought by the Sierra Club, and said so in its Motion for Fees (Doc. No. 136).

      *(b) The Sierra Club prevailed through the Court's Order invalidating any previously executed releases.*

The MSD ignores the fact that the Order's invalidation of the releases improperly extracted from SSO/WIB victims is another clear example of 'relief' ordered by the Court on behalf of the interests Sierra Club sought to protect in the litigation. By invalidating releases obtained by MSD from members of the public and ordering that only the revised releases as described to the Court are valid, the Court protected Sierra Club members, like Ms. Barbara Ross, as well as the other SSO/WIB victims whose interests the Sierra Club sought to protect.

### (c) The Sierra Club prevailed by achieving legally enforceable interpretations of ambiguities in the schedule for compliance.

The Complaint sought to remedy the plight of the SSO/WIB victims "as expeditiously as possible." The Sierra Club achieved significant relief on its claim by obtaining legally enforceable interpretations of language in the 7B and 9B schedule relief provisions in the Decrees. Under the terms of the Order, the **public** and the Sierra Club are now assured, that ***regardless of changes in government agency policies, personnel, or would-be interpretations of the Decrees, that the Court has made its interpretations of these provisions an enforceable part of the Decrees***. Order at 8 (providing that the 7B and 9B reopeners in the Decree "shall be interpreted" in accordance with the Order).

For example, Section 9B contains a provision that was subject to the "plain language" interpretation that, if at any time, costs were "expected" to exceed $1.5 billion, MSD could extend the schedule. See Order at 10.[3]  However, in response to the Sierra Club's raising the issue, the Court after inquiry at the fairness hearing, determined that it

---

[3] This is due to the grammatical ambiguity caused by the dangling modifier "in the LTCPU update" found in 9B. Under normal grammatical rules, this phrase would modify the term "remedial measures," that is, that the schedule for completing the remedial measures outlined in the plan could be extended upon such a showing.

was the schedule **in the 2006 plan update** that could be extended (only in 2006) under the provision, and not the completion of remedial measures that could be extended whenever the MSD made such a cost determination. See Order at 10.

>*(d) The Sierra Club prevailed through the Order requiring MSD to be responsible for cleanup, remedies, and dimunition in value of real estate.*

As noted, it was the Sierra Club that brought before the Court the interests of WIB victims from the start. As noted, the Sierra Club sought prompt relief for WIB victims, and obtained substantial relief and key benefits by obtaining the Order requiring MSD to be responsible for clean-up costs, remedies and diminution in value of real estate. This relief immediately addresses the burden on WIB victims and creates oversight to ensure fairness of the procedures.

>*(e) The Sierra Club prevailed by obtaining an Order in which the Court retained jurisdiction to an extent not required by the terms of the Decrees alone.*

The Order sets in place a system to oversee the Decrees that was different from what the Decrees provided. Even more importantly, the Court, itself, retained jurisdiction over potential delays in a way not contemplated by the Decrees, alone. Under the terms of the Decrees, only in the case of the agency-parties invoking dispute resolution would matters be brought to the attention of the court. Under the Order, the Sierra Club may bring undue delays to the Court's attention, as a party through a Rule 60(b) motion, and the Court has indicated, in its Order, that it will directly oversee the implementation of the Decrees and the Order.

>*(f) The Sierra Club prevailed through the inclusion of the WIB program directly in the Decrees.*

The MSD urges the Court to discount the fact that the Sierra Club is the party to this litigation that made claims for and sought benefits on behalf of WIB victims from the outset. Under the cases that provide for the award of fees to intervenors in Clean Water Act cases, obtaining the first-ever WIB program in a federal consent decree with judicial oversight is sufficient to establish the Sierra Club's status as a prevailing party. The WIB program was added as a result of Sierra Club's efforts in the litigation after the Sierra Club's critique of the SSO/WIB inadequacies of the July 2003 version of the Decrees.

MSD attempts to label the Sierra Club a "mere catalyst" in obtaining these results. MSD overlooks the fact that the Sierra Club offered its input in the negotiations over the Decrees pursuant to two orders of this Court. The fact that the DOJ finally agreed (in the "Global" Decree) with the Sierra Club's repeated negotiation input that a WIB victim program was needed cannot be used by the MSD to rob Sierra Club of its prevailing party status.

**B. Since the Sierra Club prevailed, MSD's efforts to have this Court litigate or relitigate defenses are misguided.**

Based on a misreading of *Ailor*, MSD asks this Court to allow it to litigate potential merits defenses to try to undermine Sierra Club's eligibility for attorney's fees. As is explained below, the Sierra Club's claims for relief before this Court are and were valid. However, MSD errs in asserting that this Court need even reach that question. MSD's support for its assertion that the Court, to find Sierra Club a prevailing party, must re-examine a range of issues from diligent prosecution to notice is an out-of-context quote from *Ailor v. City of Maynardville*. 368 F.3d 587 (6th Cir. 2004). But MSD's reliance on the single quote from *Ailor*, a citizen's suit where no court-ordered relief was obtained, is misplaced. *Id.*

**Ailor is not an invitation to reopen the merits of a case upon a fee petition after consent decrees have been judicially approved and Court Orders have been issued, or after a party has otherwise prevailed.[4] In Ailor, the court had already awarded summary judgment, denying Plaintiff any relief whatsoever, on the grounds of mootness.** *Ailor v. City of Maynardville*. 368 F.3d 587, 599-600 (6th Cir. 2004)  Since, in this case, the Sierra Club prevailed by obtaining court-ordered and sanctioned final relief (which was not appealed) addressing significant issues in its case, the court need not examine the merits of each and every potential merits defense of the MSD. Moreover, *Ailor* is distinguishable because 1) there was a pre-existing,  affirmative finding pursuant to a Motion for Summary Judgment that the Plaintiffs' citizen suit was not valid and 2) there was no court approved relief, only voluntary action of the defendant.

**C. Sierra Club prevailed under the *Buckhannon* standard.**

    *1. The Buckhannon standard requires only that the prevailing party receive relief with a "judicial imprimatur", such as either the Order or the Decrees in the instant case.*

    MSD argues that Sierra Club cannot qualify for fees in light of *Buckhannon*.[5] This is wrong. First, the question of the applicability of *Buckhannon* to the CWA has not been resolved. See *Ailor*, supra. Second, if that question had been resolved, it would be clear

---

[4] A court-ordered consent decree, for example, directly satisfies the *Buckhannon* prevailing party standard. *Buckhannon* at 604. But in the case of a plaintiff that prevails through a consent decree, the court is not required to review and re-litigate all the defenses the defendant might have raised to show that a plaintiff did not have a 'valid claim.' If the plaintiff achieved court-ordered relief on a substantial interest sought to be protected, the Plaintiff may be awarded fees. Indeed, one of the very critiques cited by the *Buckhannon* court was the requirement under the catalyst theory, not the *Buckhannon* prevailing party analysis, for the court to perform the kind of analysis of the merits of the plaintiffs' claim sought by the Defendant in this case. "'A request for attorneys' fees should not result in a second major litigation.'" *Id* at 609.

[5] The *Buckhannon* Court did not overrule or address any cases applying the catalyst theory to the CWA. There is a substantial body of jurisprudence discussing whether *Buckhannon* applies to laws beyond those directly construed in the opinion. See e.g., *Brickwood Contractors, Inc. v. US*, 49 Fed. Claims 738 (2001) (cited in dissent in Oil, Chemical and Atomic Workers International Union v. Dept. of Energy 288 F.3d 452, 462 (D.C. Cir. 2002).

that the catalyst theory still applies under the CWA. See discussion, infra. However, even if the *Buckhannon* decision applied to the CWA, the Sierra Club would still qualify as a prevailing party, because the relief it obtained has a "judicial imprimatur."  In fact, the benefits obtained by the Sierra Club meet the requirements of *Hensley*, *Fox*, and *Buckhannon* for a prevailing party.

In *Buckhannon*, the Supreme Court addressed the catalyst theory as applied by the majority of circuit courts for the purposes of awarding plaintiffs prevailing party status under fee-shifting provisions of civil rights statutes. *Buckhannon* at 605. The Court rejected the catalyst theory, but only to the extent that it would allow a party to recover attorney's fees **without obtaining court-ordered or court-sanctioned relief.** See *Id*. **Buckhannon does not apply where the plaintiff obtains any benefit sought through a court order or court-sanctioned consent decree.**  *Buckhannon* stands for the proposition that there is a line between a change in legislation or other voluntary action **outside of court** that achieves the plaintiff's ends, and a remedy with a 'judicial imprimatur,' expressly including a consent decree and/or a court's order. A 'judicial *imprimatur'* on agreed or ordered benefits sought by a plaintiff entitles that plaintiff to fees as a prevailing party. *Id* at 605. [6]

The Court found that "the view that **a 'prevailing party' is one who has been awarded some relief by the court can be distilled from our prior cases**." *Id* at 603. As is explained above, the Sierra Club has obtained relief through the Order and through the

---

[6] See, e.g., *Roberson v. Guiliani*, 346 F.3d 75,  81 (2d Cir. 2003) (joining "the majority of courts" in concluding judicial action other than judgment on the merits or consent decree supports attorneys fees, and finding district court retaining jurisdiction in Order for the purpose of enforcing out-of-court settlement agreement sufficient judicial imprimatur); *Habich v. Dearborn*, 331 F.3d 524, 534-535 (6th Cir. 2003) (instruction by court to defendant during preliminary injunction hearing sufficient 'judicial imprimatur' under Buckhannan to justify fee award); *Rice Services v. U.S.*, 59 Fed. Cl. 619 (Ct. Cl. 2004) (Order requiring remedial action described in defendant's voluntary plan sufficient 'judicial imprimatur' on those actions under Buckhannon).

terms of the Decrees approved by the Court's Order, thereby addressing the interests the Sierra Club pursued in the lawsuit.    The *Buckhannon* majority's analysis found that even a simple retention of jurisdiction by the court for the purposes of monitoring compliance with the law can be sufficient relief to prevail.[7] Specifically, the *Buckhannon* majority found the plaintiff in *Parham* prevailed.  See *Buckhannon*, at 607, n. 9.   In *Parham*, the plaintiff, in an employment discrimination suit, sought money damages and injunctive relief on behalf of blacks as a class, both of which were denied. *Id*. at 422. However, the court retained jurisdiction to oversee compliance based on a finding of past discrimination and awarded attorney's fees.  *Id*. at 429.

The *Buckhannon* majority found that retention of jurisdiction, together with the finding that defendant had acted unlawfully (albeit in the past) as sufficient for Parham to be a 'prevailing party' under *Buckhannon.  Buckhannon* at 607, note 9. The Court found that "…*Parham* stands for the proposition that an enforceable judgment permits an award of attorney's fees," even though the only judgment Parham had to enforce was the district court's retention of jurisdiction to monitor compliance with a voluntary equal employment opportunity policy. *Id*.

The Sierra Club, through the Order, obtained both a finding that MSD's WIB releases were illegal, and the court's retention of jurisdiction and oversight of MSD's ongoing actions in relation to the WIB victims.  In addition, the Sierra Club obtained additional relief, as described above.

### 2. Under **Buckhannon***, the ultimate agreement by MSD and Plaintiffs that a WIB program is needed does not deprive the Sierra Club of prevailing party status.*

---

[7] Moreover, although the *Parham* court stated that its fee award was based on the "catalyst theory," the Supreme Court indicated that the retention of jurisdiction to monitor continuing compliance with the law where a defendant had violated the law in the past was sufficient to justify a fee award under the *Buckhannon* test. *Id* at 607, note 9.

As noted, the Sierra Club, in response to the Court's directive, ultimately achieved the WIB program in the final Decrees. The Court in *Buckhannon* clearly states that a court-ordered consent decree is sufficient court-ordered relief to qualify a Plaintiff as a prevailing party. *Buckhannon* at 604.  In the case of a consent decree, the parties, by definition, always ultimately agree to the final remedy. This does not prevent the plaintiff from being a 'prevailing party' under *Buckhannon*. *Id*.

In the instant case, the Sierra Club, a party to the litigation, advocated for relief for the WIB victims throughout the litigation, including throughout discovery, negotiations, and discussions in status conferences.  The Sierra Club even produced videos demonstrating the nature of SIB conditions. The fact that the inclusion of the WIB program was in the court-approved Decrees does not change the Sierra Club's status as a prevailing party.

### 3. Under **Buckhannon**, *obtaining relief that was not precisely enumerated in the initial complaint does not change SC's status as prevailing party.*

Contrary to the MSD, obtaining relief different than that initially sought is not a bar to being a prevailing party. In *Le-Blanc Sternberg*, the Court rejected an argument by the defendant Village that a fee award would be unreasonable where plaintiffs failed to get any injunctive relief different from the government's, and received only nominal damages. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748,757 (2d Cir. 1998) (plaintiffs were prevailing parties where they sought dissolution of village and one million dollars, but received only nominal damages and identical relief to that of government addressing enforcement of zoning ordinances). In the instant case, the Sierra Club obtained enforceable, favorable interpretations of the Decrees, and enforceable relief beyond that

sought by government agencies. See also *Parham*, supra.  Under the case law, the relief

granted need not be identical to that sought in the complaint to meet the prevailing party

test.

**D. A CWA intervenor is entitled to attorney's fees as a prevailing party where it
achieves the benefits it seeks through court-sanctioned consent decrees.**

Sierra Club is entitled to attorneys' fees both as an intervenor and as a plaintiff in

a properly brought citizen's suit. ***MSD asks this Court to make new law when it asks the***

***Court to find that an intervenor who is a prevailing party is not entitled to fees under***

***the CWA.*** MSD has cited no case that stands for the proposition that an intervenor that

obtains relief not sought by the other parties is ineligible for attorney's fees under the

CWA.  On the contrary, the case law indicates that intervenors who prevail are entitled to

attorneys' fees.  For example, in *City of Green Forest,* cited in the Motion, the Court

overturned a denial of intervention for the express purpose of allowing the citizens who

had commented on the consent decree and sought intervention to seek attorneys' fees.

*U.S. EPA v. City of Green Forest*, 921 F.2d 1394, 1402 (9th Cir. 1990).  See also

*Armstrong v. ASARCO*, 138 F.3d 382, 389.

The *Armstrong* case, relied on by MSD, awarded attorney's fees to CWA

plaintiffs in a citizens suit consolidated with US EPA prosecution, for activities the Court

found led to the inclusion of provisions in a government consent decree that were not in

the initial version proposed by the government. Id at 385. (noting that government had

added provisions for Supplemental Environmental Projects and interim treatment as a

result of intervenor's activities). *Id*.  **Under the holding and rationale of Armstrong, *the***

***addition of the WIB program to the Decrees between July and October 2003 would***

***suffice to make the Sierra Club a prevailing party***. However, unlike the citizens in

14

*Armstrong*, the Sierra Club received additional court-ordered relief separate from EPA's consent decree.

*Buckhannon* does not impinge upon the cases holding intervenors are entitled to prevailing party status where they  pressed for and received changes to consent decrees. Rulings allowing fees for court-sanctioned relief, such as those in *Armstrong* and *Green Forest,* meet the *Buckhannon* criteria for prevailing, even if they use the language of the catalyst theory. Changes in and additions to a court-sanctioned consent decree constitute relief with a 'judicial imprimatur,' and an intervenor is clearly a 'party' under the plain meaning of "prevailing party."

The cases cited by MSD for the proposition that intervenors are not entitled to attorney's fees are all cases in which the intervenors did not receive any relief on issues they specifically brought to the litigation. See discussion of *Stone Container and Maine DOT*, infra. In this case, the Sierra Club also obtained relief in the Order that was not sought by any other party to the action.

Moreover, Sierra's Clubs efforts were not duplicative of the government's. The Sierra Club both **sought** relief different from the government (by making claims on WIB issue from its very first complaint and Motion for Intervention); achieved relief different from that sought by other parties throughout the litigation, in the form of the Order, not sought by any other party, interpreting the decrees, appointing an oversight authority, declaring releases unenforceable, and imposing obligations on MSD.  Further, the Sierra Club achieved provisions adding the WIB program to the Decrees, beyond those proposed by the government in the initial version of the final consent decree.

**E. Under the catalyst theory, which still applies to the CWA, Plaintiff-Intervenors are prevailing parties.**

Even though the Sierra Club achieved significant judicially sanctioned benefits and the Court does not need to reach the catalyst theory for Sierra Club to prevail, the Sierra Club also prevails under a catalyst theory analysis.

1. **The catalyst theory still applies to the CWA.**

MSD's catalyst theory argument incorrectly presumes that the "prevailing or substantially prevailing" language of section 1365(d) was added to limit the broad *manner* or *method* of relief required to justify a fee award, which has always been encompassed in the 'whenever…appropriate" standard of the fee provision.[8]  Yet, that language was added – in direct response to a Supreme Court decision – only to clarify the *degree* of relief necessary to obtain fees.[9]

In *Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983), the Supreme Court analyzed the meaning and history of the "whenever…appropriate" standard under a CAA fee provision,[10] and held that, while an award of costs and fees is not appropriate where a plaintiff achieves *no* degree of success on the merits, it is appropriate to award costs and fees to partially prevailing parties – parties achieving

---

[8] The "whenever…appropriate" standard is found in major environmental statutes, including the CAA, the CWA, the Resource Conservation and Recovery Act, and the Endangered Species Act.  When Congress enacted the CWA in 1972 and the CAA in 1970, the citizen suit provisions in both statutes contained identical language authorizing a court to award costs to any party in a citizen suit "whenever the court determines that such an award is appropriate."  (codified at 33 U.S.C. §1365(d); 42 U.S.C. §7604(d)).  The CAA still contains the same language.

[9] The MSD's claim that the Court is not permitted to distinguish the language in *Buckhannon* from the CWA fails to consider the fact that the Supreme Court, itself, recognizing the ambiguity of the "whenever…appropriate" standard, looked to legislative history to interpret its true meaning.  *Ruckelshaus*, at 683.  There is a "basic assumption that Congress does not use different language in different provisions to accomplish the same result." *U.S. v. Fiorillo*, 186 F.3d 1136, 1148 (9th Cir. 1999).  Thus, rather than blindly assuming that *facially different* standards in *unrelated* statutes have the same meaning, the difference in language is precisely what *requires* this Court to analyze 1365(d) to determine its true meaning.

[10] While the fee-shifting provision at issue in *Ruckleshaus* was not that of the CAA's citizen suit statute (section 304), the court compared the two provisions, noting that "similar attorney's fee provisions should be interpreted *pari passu*."  *Ruckelshaus*, 463 U.S. at 691.

some success, even if no major success.  *Id.* at 688.[11]  *Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983).  Thus, the *Ruckelshaus* holding explains the ***degree*** of relief necessary to justify a fee award.

In 1987, Congress amended section 1365(d), in response to *Ruckleshaus*, to clarify the degree to which a party must prevail. While retaining the "whenever…appropriate" standard, Congress amended section 1365(d) by added the words "prevailing or substantially prevailing" before the word "party."  101 Stat. 76 (1987).  Directly agreeing with *Ruckelshaus*, the Senate Report "clarifies the circumstances under which costs of litigation may be awarded" and states that the amendment is intended to "limit the awarding of costs under the [CWA] to prevailing or substantially prevailing parties," as opposed to non-prevailing parties.  S. Rep. No. 50, 99th Cong., 1st Session (1985).[12]  The Senate Report demonstrates that the term "prevailing or substantially prevailing" was ***not*** added to change the broad ***method*** or ***manner*** by which a party must prevail to be eligible for fees. [13]

The method or manner by which a party must prevail is still governed by the "whenever…appropriate" standard.  With respect to such manner or method, *Ruckleshaus* recognizes that:

> Congress found it necessary to explicitly state that the term appropriate "extended" to suits that forced defendants to abandon illegal conduct,

---

[11] The First Circuit later interpreted *Ruckleshaus*, with respect to the Endangered Species Act.  It stated that, "[w]e believe that the *Ruckelshaus* Court's phrase 'some success, even if not major success,' may be taken as notable progress, short of full achievement, on any issue of substance."  *Conservation Law Foundation of New England v. Secretary of the Interior*, 790 F.2d 965, 967 (1st Cir. 1986).

[12] "Congress' characterization of…[an] amendment as merely 'clarifying' the law suggests that the original phrase…was not a reference to a fundamentally different concept."  *Posters 'N' Things v. U.S.*, 511 U.S. 513, 521 (1994).

[13] Defendants own authority proves this point.  See *UNITE v. United States Immigration and Naturalization Service*, 336 F.3d 200, 208 (2nd Cir. 2003) (finding that the modifier "substantially" in a prevailing party fee statute "alters the amount or degree of recovery necessary to obtain fees – not the method or manner in which the recovery must be obtained").

although ***without a formal court order***; this was no doubt viewed as a somewhat expansive innovation, since, under then-controlling law…some courts awarded fees only to parties formally prevailing in court.

*Ruckelshaus*, 463 U.S. at 687, n.8, citing S. Rep. No. 91-1196, p. 38 (emphasis added).

Thus, MSD's argument runs directly counter to congressional intent in "whenever…appropriate" statutes.

Indeed, courts have already held that *Buckhannon* does not preclude applicability of the catalyst theory in other environmental statutes that, like the pre-1987 CWA, permit fee awards to any party "whenever…appropriate." *Sierra Club v. Environmental Protection Agency*, 322 F.3d 718 (D.C. Cir. 2003) (holding that the CAA permits fee awards to catalysts). See also, *Loggerhead Turtle v. The County Council of Volusia County, Florida*, 307 F.3d 1318 (11th Cir. 2002). Even the *Loggerhead Turtle* court recognized that "there is unambiguous evidence that Congress intended the 'whenever…appropriate' fee provisions of the Clean Air Act and the [pre-1987 CWA] to allow fee awards to plaintiffs who do not obtain court-ordered relief but whose suit has a positive catalytic effect." *Id.* at 1326.[14] As discussed above, ***the 1987 CWA amendment did not alter or modify the "whenever…appropriate" standard with respect to the manner or method by which a party must prevail***.

This is confirmed by the Supreme Court's interpretation of 1365(d) ten months ***after*** the amendment. In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376 (1987), a CWA case, the Supreme Court discussed the

---

[14] Defendants' reliance on dicta in *Loggerhead Turtle* concerning Congress' intent in amending the CWA is misplaced. To the extent the court in that case presumed Congress' intent in amending section 1365(d), such presumption is unpersuasive as it fails to cite to or even consider the actual legislative history of the amendment.

18

possibility that statutory violators could strategically moot enforcement actions by complying with the statute after an action had been filed. The Court observed that:

> The legislative history of this [the whenever…appropriate standard] states explicitly that the award of costs "***should extend to plaintiffs in actions which result in successful abatement but do not reach a verdict***…S. REP. NO. 92-414, p.81 (1971), 2 Leg. Hist. 1499.

*Id.*, at 67 (emphasis added). Thus, under *Gwaltney*, citizen-plaintiffs are entitled to fees even if extrajudicial events have made their legal claims moot.

MSD relies on *Kasza v. Whitman*, 325 F.3d 1178 (9th Cir. 2003) (applying *Buckhannon* to the fee provision of the Resource Conservation and Recovery Act) and *Sierra Club v. City of Little Rock*, 351 F.3d 840 (8th Cir. 2003) (applying *Buckhannon* to the CWA). However, both of these cases apply *Buckhannon* blindly, with no recognition or analysis of the plain differences in statutory language or the legislative history. As such, the holdings in both *Kasza* and *Little Rock* are highly suspect. In fact, the Sixth Circuit, in *Ailor*, explicitly acknowledged that the issue of whether the catalyst theory remains available under the CWA is still "an open question." *Ailor*, 368 F.3d at 601.

### 2. The Sierra Club meets the catalyst theory test.

The Sixth Circuit has adopted a two-pronged standard for determining whether a lawsuit was a sufficient catalyst to justify fees to a plaintiff. *Farrell v. International Brotherhood of Teamsters*, 1990 U.S. App. LEXIS 21850 (6th Cir. 1990) (attached as Exhibit 1). First, the lawsuit must be "causally related to securing the relief obtained." *Id.* at *8. Second, the relief secured must have "some minimum basis in law." *Id.* The relief obtained by the Sierra Club meets these requirements.

The Sierra Club's citizen suit and intervention was clearly causally related to the relief it obtained. To be causally related, a lawsuit need only be a "substantial factor" in

causing a defendant to act.  *Id.*  Further, in establishing a causal relationship, "the sequence or chronology of events is an important factor." *Id.*  The governments in this case spent years – ***with no enforcement action taken*** – discussing MSD's sewer problems.  Yet, it was not until the Sierra Club notified the governments and the MSD of its intent to sue that a complaint and a purported settlement were filed (despite the Sierra Club's offer to enter into a stand-still agreement) on the last day of the notice period.  Even case law cited by MSD recognizes that "[w]hen a polluter settles with government authorities following the commencement of a citizen suit, it is permissible to infer that the citizen suit motivated the settlement, thereby making the plaintiff a prevailing party." *Armstrong*, supra, 138 F.3d at 387.[15]  The same can be said where, as here, the MSD did not consent to a global decree until 2 years after the citizen suit notice.  Moreover, the relief sought and secured by the Sierra Club, including the WIB program and the ombudsman oversight, was steadfastly opposed by the MSD, and was only incorporated in the Decrees upon the Sierra Club's continued insistence.[16]  Thus, the MSD cannot reasonably now deny that the Sierra Club's suit and intervention was a substantial factor in causing the MSD to act.

Neither can the MSD reasonably deny that the relief secured by the Sierra Club had some minimum basis in law.  A court "need only consider whether the plaintiff's claim is 'frivolous, unreasonable, or groundless.'" *Id.*, citing *Nadeau v. Helgemoe*, 581

---

[15] Here, even the so-called "IPCD" was not approved for two years after it was first lodged and, then, it was part of a more extensive court-ordered/approved package.

[16] Notwithstanding the fact that the Court blocked all discovery relating to the negotiation process other than final decisions, Defendants now claim that the decision to increase the size of the raw sewage storage tank at SSO 700 from 1 million gallons to 3.6 million gallons was an economic decision resulting solely from Mr. Klingenstein's suggestion.  Defendants' claim is inappropriate in light of the fact that the Sierra Club was not entitled to discovery on these negotiation issues.  Mr. Klingenstein agreed with the Sierra Club after the Sierra Club made its position known.  Post hoc government agreements cannot trump the fact that it was the Sierra Club that raised this issue for the first time and for benefit of the public.

F.2d 275 (1st Cir. 1978).  The MSD does not contest that WIBs – the basis of the Sierra Club's suit and the relief sought –violate the CWA.  The Sierra Club's suit and intervention, therefore, have much more than just a ***minimum*** basis in law.  Further, the fact that the Sierra Club's action was not "frivolous, unreasonable, or groundless" is underscored by the Sierra Club's intervention and consolidation, granted by the Court without restriction.  Thus, the Sierra Club easily passes the catalyst test.

**F.  MSD'S  attempts to create a hole in the Court's jurisdiction fail.**

   **1.  Notice requirements do not foreclose the Sierra Club's eligibility for fees.**

   MSD argues that the Sierra Club's eligibility for fees extends only as far as its notice letter.  Yet, unless a court instructs otherwise, an intervenor is entitled to litigate ***fully on the merits***.  See *Alvardo v. J.C. Penney Co., Inc.*, 768 F.Supp. 769 (D. Kan. 1991), *citing* 7C Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* §1920 (1986). Thus, the Sierra Club, as an independent litigant ***and*** an intervenor, worked to prosecute not only the claims raised in its citizen suit, but also those already raised by the governments in their consolidated actions, that were brought under section 1365.

   Moreover, the Court has jurisdiction over everything in the Decrees and Order, including the releases and WIB issues for multiple reasons: 1) everything in the Consent Decree and the Order is related subject matter over which the court had jurisdiction, and 2) all the relief was relief that could have been granted to the citizens or the state of Ohio pursuant to 42 USC 1365.[17]

---

[17] Hence, even if these issues could have been subject to costly litigation, earlier in the case, the matter has been resolved by order of this Court . "District courts have 'broad latitude in fashioning equitable relief when necessary to remedy an established wrong.'" *NRDC v. Southwest Marine*, 236 F.3d 985, 999 (9th Cir. 2000). MSD did not appeal the Court's Order granting relief on relating to the releases and WIB victims; it

The Sierra Club provided adequate notice for all of these claims.  The adequacy of the Sierra Club's notice, however, is immaterial since 1) no notice is required for the claims brought by the Sierra Club that were already pending before the Court via the governments' action; and 2) the court has ancillary/supplemental jurisdiction over any claims brought by the Sierra Club that exceed the scope of the governments' action.

### (a) The Sierra Club's notice complies with all requirements.

Defendants admit that the Sierra Club's notice letter is adequate with respect to the SSOs reported to Ohio EPA.  Opposition, at 5.  Defendants claim, however, that the notice is inadequate as to 1) the Sierra Club's claims for SSOs, of which the MSD **had knowledge** but were not reported to Ohio EPA; 2) the Sierra Club's claims relating to sewage-in-basement (WIB) problems; and 3) the United States' claims prosecuting combined sewer overflows (CSOs).  Opposition, at 5-6.  Contrary to MSD's arguments, the Sierra Club's notice letter meets all statutory and regulatory specificity requirements for each of these claims.

The U.S. EPA's regulation interpreting the notice requirements of section 1365(b) clearly states that, with respect to alleged violations, a notice letter need only include "sufficient information **to permit the recipient to identify** the specific standard, limitation, or order alleged to have been violated." 40 C.F.R. §135.3(a)(emphasis added). See J. David L. Bunning's November 26, 2003 Memorandum Opinion and Order, *Cornett v. Welding Alloys (USA), Inc.*, civil action no. 02-42-DLB (E. D. Ky. 2003) (holding that a three-year timeframe alleged in a citizen suit notice letter "was sufficient

---

may not now relitigate the validity of the relief awarded on a motion for fees. (see Part B., infra). Compare Firefighters v. Cleveland,  478 US 501 (1986) (court had authority to enter consent decree containing provisions specifically prohibited by statute stating "no order of the court shall require…")

to permit Welding Alloys USA to identify when the violations occurred") (excerpt attached as Exhibit 2).

Even courts, cited to by MSD, taking a "strict interpretive approach" to the sufficiency of notice under this regulation, recognize the flexibility of the notice regulation. "[T]he language of the regulation clearly requires something less than a thoroughly detailed account of every possible allegation." *Atwell v. KW Plastics Recycling Division*, 173 F.Supp.2d 1213, 1218 (M.D. Ala. 2001). Rather, the regulation simply requires a plaintiff to provide enough information to enable a notice recipient to "identify the pertinent aspects of the alleged violations without undertaking an extensive investigation of their own." *Id.* at 1222.[18] The Sierra Club's notice permits identification of all pertinent aspects of its SSO, WIB/SIB, and CSO violations without extensive investigation. The discovery record makes this clear.

First, with respect to unreported SSOs, the Sierra Club's notice letter and Complaint clearly incorporate **those of which Defendants had "actual notice" or "knowledge**," occurring during the specific timeframe set forth. See Plaintiffs' notice letter (attached as Exhibit 3) and Complaint, at ¶38. Discovery by the Sierra Club revealed that the Defendants had detailed information of these unreported SSOs that was only revealed through the Sierra Club's discovery efforts. Defendant's knowledge of unreported SSOs is in the record before this Court.

---

[18] In *Atwell*, the plaintiff alleged violations of reporting requirements in his complaint. His notice letter referenced reporting requirements contained in at least four "thoroughly detailed" sections of the defendant's permit. The court found that, to determine, from the notice, what the plaintiff might have alleged in the complaint would have required "an extensive audit of past reports over the past four years." *Atwell*, 173 F.Supp.2d at 1225. Similarly, in *Sierra Club v. City of Columbus*, the defendants would have had to sift through numerous, detailed permit requirements with no indication as to which would be the basis for the complaint. *City of Columbus*, 282 F.Supp.2d 756 (S.D. Ohio 2003). *Atwell* and *City of Columbus* are completely inapposite here, where the notice clearly stated what the Sierra Club was going to, and did, allege – CWA violations for **all** SSOs known to the Defendants.

Unlike in *Atlantic States Legal Foundation v. United Musical Instruments, U.S.A., Inc.*, 61 F.3d 473 (6th Cir. 1995), where the inadequate notice referenced violations "not yet known" even by the ***plaintiffs*** of "other…reporting requirements," the Sierra Club simply noticed additional violations, ***already known*** by the ***Defendants***, of the ***same requirements*** that apply to the reported SSOs.   Thus, Defendants' contention that they could not have had knowledge of SSO violations, of which they had knowledge, runs contrary to both law and logic.

Second, Defendants cannot reasonably contend that the Sierra Club's notice of SSOs did not incorporate notice of WIBs.  A SSO is simply a sewer overflow caused by lack of capacity in the MSD sewer system.  Similarly, a SIB/WIB is a sewer overflow that backs up into a basement.  Thus, SIB/WIBs ***are*** SSOs.  ***Indeed, the Global Decree entered by the Court defines SSOs to include SIB/WIBs.***

Notwithstanding this blatant admission, Defendants recognize that the violations alleged in a citizen suit need only be "closely related to" and "of the same type" as the violations specified in a notice letter.  Opposition, at 6, citing *Comfort Lake Ass'n., Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 355 (8th Cir. 1998). Even if SIB/WIB violations were different than SSO violations, they are certainly "closely related to" and "of the same type" as one another.  Regardless, the Sierra Club gave notice as to ***all*** SSO violations known to MSD, including those that make their way to basements.

In arguing for the global decree, the government and MSD contended that it was not possible to fix SSOs without addressing CSOs. Now, the MSD wants to separate these for the purposes of the fee petition. It is true that CSOs cannot properly be corrected without fixing inflow from SSO portions of the sewer district. Again, since CSOs are

"closely related to" and "of the same type" as SSO violations, Sierra Club's notice was sufficient.

### (b)  Notice requirements serve no purpose to intervention in claims already brought.

First, MSD concedes that Sierra Club's notice is sufficient to bring an action under 1365(d).  Second, even if, arguendo, the Sierra Club's notice were deficient in some respect, citizen suit notice requirements do not apply to claims pending in the intervention action, even if the original plaintiffs were not seeking the same benefits or relief on which the intervenor ultimately prevails.  MSD fails to cite a single case applying the 60-day notice requirements to intervenors.  In fact, case law demonstrates that "notice of claims already pending would be a pointless act."  *U.S. v. Environmental Waste Control, Inc.*, 710 F.Supp. 1172, 1188, 1192 (N.D. Ind. 1989) (finding that a citizen-intervenor is not required to give pre-filing notice of its claims to the extent those claims did not exceed the scope of the EPA's claims).  See also *Lykins v. Westinghouse Electric*, 1988 U.S. Dist. LEXIS 3609 (E.D. Ky. 1988) (finding, where state intervened in citizen suit and alleged same violations as the plaintiffs, that notice is not a prerequisite to bringing a CWA claim where intervention is sought) (attached as Exhibit 4); and *Oregon Natural Desert Association v. Thomas*, 940 F.Supp. 1534 (D. Ore. 1996).  This is because notice requirements are designed to "allow government agencies to take action and [to] let the alleged violator cure the violation…"  *United Musical Instruments*, 61 F.3d at 476. Such considerations are immaterial when, as here, a citizen intervenes in a pre-existing

25

action, where the defendant has not cured the violation and the government has taken

action (even if such action, as here, is not diligently prosecuted).[19]

Because the Sierra Club, as intervenors, are prosecuting their own claims as well

as the governments' claims, the Sierra Club was not required to provide notice to

Defendants of any issue raised by the governments' action, including SSOs, CSOs, and

WIBs.

(c)  *Supplemental jurisdiction cures any defects in notice that the Defendants claim exist.*

Finally, Defendants ignore the fact that, for purposes of judicial economy and

fairness, the Court has authority over all of the claims the Sierra Club is prosecuting by

virtue of the doctrine of ancillary (supplemental) jurisdiction.[20]  "When the right to

intervene is absolute, no independent ground of federal jurisdiction need be shown to

support the intervention; the intervention is properly regarded as coming within the

court's ancillary jurisdiction."  *Environmental Waste Control*, 710 F.Supp. at 1192, *citing*

3B J. Moore & J. Kennedy, *Moore's Federal Practice* para. 24.18[1], at 24-198 (1987).

In *Environmental Waste Control*, the court noted that it could exercise its

supplemental jurisdiction, even though the EPA and citizen claims were different in

nature, because all the claims were for violations of RCRA.  *Id.*    Similarly, **all** the

claims at issue in this case arise from CWA violations stemming from sewer overflows.

Thus, the claims are all so related that they form the same case or controversy and can be

---

[19] Further, requiring 60 days notice before intervention also runs contrary to rule that applications for intervention be timely.  See Fed. R. Civ. P. 24.

[20] The doctrine of ancillary jurisdiction is codified as supplemental jurisdiction at 28 U.S.C. §1346.  Under supplemental jurisdiction, the Court has jurisdiction over all claims that are "so related to claims in the action within…original jurisdiction that they form part of the same case or controversy…such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. §1346(a).

reached by the Court through supplemental jurisdiction.  The record created by MSD and the Plaintiffs establishes that the global fix for SSOs and CSOs is interrelated.

> **2.  A citizen suit bar based on diligent prosecution, while irrelevant in this case, would be illusory if applied after the conclusion of the litigation.**

MSD attempts to litigate the diligent prosecution issue at the very **_end_** of this case, after remedies have been negotiated by all the parties and modified and strengthened based on the Sierra Club's input, and approved by the Court.   This attempt cannot bar the Sierra Club's recovery of fees as a prevailing party.

First, aside from the fact that the Interim Partial Consent Decree ("IPCD") failed to amount to diligent prosecution,[21] the diligent prosecution bar simply does not apply to prevailing parties, such as the Sierra Club (see Part B, supra).[22]

Second, diligent prosecution is irrelevant when a citizen-plaintiff is also an intervenor.  Even Defendants recognize that, when a government is actually diligently prosecuting an action, section 1365(b)(1)(B) permits citizen-plaintiffs to intervene in the government's suit.  Opposition, at 11.  As discussed above, once the Sierra Club was granted intervention in the governments' actions, it became a party to the case, entitled to fully litigate on the merits.  Further, once it became a party to the cases – including Ohio's section 1365 action – the Sierra Club became eligible for fees pursuant to section 1365(d).

---

[21] At the time the Sierra Club filed its Complaint, the only action taken by the governments was the lodging of the IPCD.  In fact, Defendants relied on the IPCD in their Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 40).  As the Sierra Club countered in its opposition to that Motion (Doc. No. 9), the IPCD had numerous gaps and shortcomings precluding its ability to bar the Sierra Club's suit.  Indeed, the IPCD was later held in abeyance by this Court at the United State's request, until a second decree was entered.  See Doc. No. 90.  A consent decree with no teeth to stand on its own is evidence of a failure of prosecution; it is certainly not evidence of diligent prosecution.

[22] MSD's argument that the Sierra Club's citizen suit is barred ignores the fact that this case is not a subsequent attempt by a citizen to relitigate what has been resolved by a **_prior_** approved consent decree.

Finally, a diligent prosecution bar at the end of litigation would be of no consequence, and is, therefore, illusory. As a ***bar*** to a citizen suit, the issue of diligent prosecution applies at the ***outset*** of a case. Even MSD admits that diligent prosecution is determined "[a]t the time Intervenors filed their complaint." Opposition, at 11. See also, *Chesapeake Bay Foundation v. American Recovery Co., Inc.*, 769 F.2d 207 (4th Cir. 1985) (jurisdiction, including the applicability of the diligent prosecution bar, "is normally determined as of the time of the filing of a complaint").

Diligent prosecution by a government can only even potentially apply to those issues sought to be addressed in a citizen action that overlap with the issues sought to be addressed in a government. See *Frilling v. Village of Anna*, 924 F.Supp. 821, 836 (S.D. Ohio 1996). As argued in the Sierra Club's Opposition to Defendants' Motion to Dismiss, the issues sought to be addressed by the Sierra Club significantly exceed those sought to be addressed in the IPCD.[23] Thus, even if, arguendo, diligent prosecution was relevant here, Defendants, at best, could only achieve a "partial bar" (i.e. a bar that applied to only limited issues).

Yet, any such arguable partial bar cannot bar the relief ***actually obtained at the end of litigation*** – relief that was agreed to by the parties and approved by the Court. For example, the IPCD only addressed 16 of 101 numbered illegal SSOs. By contrast, the Sierra Club's Complaint sought elimination of ***all*** illegal SSOs. The MSD does not contest that the Sierra Club gave proper notice for at least 101 SSOs. A partial bar would

---

[23] The *Frilling* court also found that, "[g]iven that the parties entered into a pre-negotiated Consent Order on the same day that the suit was commenced, this Court will rely on both the Order, and the State's Complaint, to determine whether the State sought to require compliance with the particular standard, limitation or order at issue in this litigation." *Frilling*, 924 F.Supp. at 836. Similarly, the governments in the case at bar filed their complaints on the same day as the IPCD was lodged with the Court. Thus, the true scope of the governments' action includes any limitations incorporated into the IPCD.

not change the fact that ***the Sierra Club secured relief that applies to all SSOs, not just the 16 covered by the governments' action***.    Thus, any diligent prosecution bar raised now would only be illusory and would fail to preclude the Sierra Club from an award of fees to which it is entitled.

## G.  The Sierra Club is a party to an action brought pursuant to Section 1365.

MSD argues that a citizen who invokes his right to intervene has not "brought" suit pursuant to 1365(d), as required by the statute, and that, to prevail, a party must prevail on ***his own*** claims.  Opposition, at 11, 14.    Defendants' argument is flawed because 1) it wrongly assumes that intervenors are categorically ineligible for fees and 2) it fails in the face of the fact that the Sierra Club is not merely an intervenor in this case.

### 1.  Intervenors are eligible for fees.

Contrary to MSD's argument, section 1365(d) simply does not limit fee awards to "original" prevailing or substantially prevailing parties to an action. "It is axiomatic that 'the starting point for interpreting a statute is the language of the statute itself.'"  *Atwell v. KW Plastics Recycling Division*, 173 F.Supp.2d 1213, 1217 (M.D. Ala. 2001), citing *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).   Section 1365(d) is unambiguous that costs and fees may be awarded to "***any*** prevailing or substantially prevailing ***party***" to "***any*** action brought under" section 1365.  33 U.S.C. §1365(d) (emphasis added).  An intervenor is clearly a party to the action in which they have intervened and, unless restricted by a court, is entitled to litigate fully on the merits.  Further, if the underlying action in which an intervenor intervenes is brought pursuant to section 1365, it clearly meets the "***any*** action brought under" requirement of section 1365(d).

MSD cites no authority interpreting this unambiguous language as categorically barring intervenors from fee awards.  In fact, at least one court has concluded that "Congress intended for citizen groups intervening as a matter of right to be able to recover their costs and attorney fees."  *Environmental Waste Control*, supra, 710 F. Supp. at 1248.   See also *Green Forest* (reversing a denial of intervention insofar as it precluded the citizens from seeking their fees).[24]

MSD claims support for its argument in *Maine DOT*.  MSD asserts that the *Maine DOT* court's denial of the intervenor's claim for fees was based on the premise that an intervenor's fee application falls outside the statutory authorization of 1365(d).  Opposition, at 12.  This is simply ***not*** what the court stated.  The court actually stated that the fee application fell outside the scope of 1365(d) because "[p]laintiff-intervenors never brought an action pursuant to 33 U.S.C. §1365," but intervened in the government's action ***brought pursuant to a different CWA provision***.  *United States v. Maine DOT*, 980 F.Supp. 546, 549 (D. Maine 1997).  See also *United States v. Stone Container Corp.*, 196 F.3d 1066, 1069 (9th Cir. 1999) (applying the counterpart Clean Air Act fee provision and denying fees to intervenors because the underlying action was, contrary to the fee provision, ***brought pursuant to a different CAA provision and because intervenors neither sought nor received any relief different from the government***).  *Maine DOT* and *Stone Container* simply demonstrate that, if statutory requirements are met, an intervenor ***is*** eligible for fees.

### 2. The Sierra Club is not a "mere intervenor."

---

[24] Defendants attempt to factually distinguish *Green Forest* is unpersuasive.  Defendants point out that the citizen suit in that case pre-dated the government's action.  However, as in *Green Forest*, the Sierra Club's notice clearly motivated the governments to finally take action.  After years of unproductive discussions with the Defendants, the government finally filed suit only after the Sierra Club sent its notice letter, and, indeed, ***with only one day remaining in the 60-day notice period.***

Second, the MSD's argument is undercut by the fact that the Sierra Club is not merely an intervenor in this action.[25]  MSD's only counter to the Sierra Club's section 1365 action is that it is invalid for the purported jurisdictional reasons analyzed above. However, as already demonstrated (see Part F, supra), each of these reasons is fatally flawed.  MSD also contends that the governments' actions pursuant to section 1365 are irrelevant because intervenors must prevail on their ***own*** claims.  Opposition, at 14. Aside from the fact that, as argued above, the Sierra Club did, in fact, prevail on its own citizen suit claims, MSD cites no authority for their proposition, and again distort the unambiguous statutory language that, under section 1365(d), costs and fees may be awarded to "***any*** prevailing or substantially prevailing ***party***" to "***any*** action brought under" section 1365.  33 U.S.C. §1365(d) (emphasis added).  Nothing in the statute limits a court's authority to award fees strictly to parties prevailing in the action they, themselves, brought.

The fact that the underlying action was ***initially*** brought by the United States pursuant to 33 U.S.C. §1319 is of no consequence.  As MSD admits, on March 7, 2002, the Court consolidated the State's complaint with the United States' complaint. Therefore, when the Court granted the Sierra Club's Motion to Intervene on October 4, 2002, the Sierra Club became a party to the consolidated action, which included claims brought pursuant to section 1365.[26]  Whether Ohio was "piggy-backing" with the federal

---

[25] The Sierra Club brought its own citizen action pursuant to section 1365 and this action was unconditionally consolidated with the governments' actions.  Moreover, both the State's February 14, 2002 Complaint, and the governments' December 3, 2003 Joint Amended Complaint (Doc. No. 100) clearly allege claims pursuant to section 1365.  State's Complaint, at 1 and Joint Amended Complaint, at 1.

[26] Further, the U.S. and the State filed a Joint Amended Complaint that is brought pursuant to section 1319 ***as well as*** section 1365.  "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect….Hence…federal courts must resolve questions of subject matter jurisdiction by examining the face of the amended complaint." *In re: Atlas Van*

government's action in no way minimizes the merits or enforceability of the State's

claims.  The facts remain that the Sierra Club is a party to an action brought pursuant to

section 1365, that its action was consolidated with another action brought under section

1365, and that it is entitled to fees for issues on which it prevailed or substantially

prevailed.

**H.  The Sierra Club has established entitlement to an award and documented the appropriate hours expended.**

MSD argues that the Sierra Club 1) obtained de minimis, rather than substantial

relief because the Court entered the Decrees notwithstanding the Sierra Club's

objections; 2) claims successes for claims that are easily segregable; and 3) is required to

detail for the Court the amount of time spent on each specific claim.  MSD is wrong on

each of these contentions

First, as set forth in detail in its fee application and this Reply, the Sierra Club,

through its Complaint and intervention, sought to enforce the goals and policies of the

CWA by seeking comprehensive relief for all SSOs, including WIBs.  In the end, the

Sierra Club, as discussed above, obtained changes to assure that the Decrees will do just

that.  Without the Sierra Club, no comprehensive program designed to provide relief for

WIB victims would have been developed and other loopholes and inadequacies would

have remained in the Decrees.  By even the most stringent of standards, this *is* substantial

relief – it immediately effects up to ten thousand WIB/SSO victims across the County.

---

*Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (internal citations omitted).  Thus, the initial action, relied on by Defendants, has been superceded by the Joint Amended Complaint.

The value of the property of the most impacted citizens exceeds $235,000,000. MSD cannot reasonably claim that such relief is merely "de minimis."[27]

Second, the work performed on the Sierra Club's claims is not easily segregable, as Defendant contends. In fact, the governments have stated, throughout this litigation, that all of the SSO, CSO, and WIB claims are interrelated. Moreover, a significant portion of the legal time spent in this case was devoted to litigating defense motions that would have terminated the case, including motions that were first raised in C-02-135, the Sierra Club's citizen suit, once it was consolidated with the Government's case (C-02-107).

Third, *Hensley* simply does not require the Sierra Club to detail the amount of time spent on each specific claim. *Hensley* recognizes that "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437, n.12. Rather, counsel should at least "identify the general subject matter of his time expenditures." *Id.* The Sierra Club's lawyers provided a monthly break down of the work performed, with a listing of the general subject matter. This is more than sufficient to meet the *Hensley* test.

If the Court questions the legitimacy of the sworn fee and cost evidence submitted by counsel or the Sierra Club, each will address the Court's questions or concerns or provide additional information. However, the Court might use the yardstick of comparative fees in the same case to determine reasonableness. While the plaintiff Sierra Club was incurring the fees and costs sought, County records show that MSD's ***defense*** counsel billed the County's taxpayers over $3,286,000 (from 2001 to 2004). Further, the

---

[27] MSD's reliance on *Armstrong* is misplaced. Unlike here, the plaintiffs in *Armstrong* obtained no relief in the form of a court order.

cost of a bifurcated fee hearing will further drain the small firms representing the Sierra Club and unduly delay the Court's decision of the fee application, all at greater expense to all County tax payers.

**III. CONCLUSION**

For the reasons set forth above, the Sierra Club's Motion for Fees and Costs should be granted.

Respectfully submitted,

/s/ D. David Altman_____

D. David Altman, Esq.
(#0021457)
D. David Altman Co., L.P.A.
15 East 8th St., Suite 200W
Cincinnati, OH 45202
(513-721-2180)

/s/ Albert J. Slap_____
Albert J. Slap, Esq. (#0074579)
Law Office of Albert J. Slap
20 Erie Ave.
Glendale, OH 45246
(513-771-7800)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2004, a copy of the forgoing Sierra Club and Marilyn Wall's Reply in Support of their Motion for Attorneys' Fees and Costs was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ D. David Altman
D. David Altman (0021457)
D. DAVID ALTMAN CO., L.P.A.
15 East 8th Street, Suite 200W
Cincinnati, OH 45202
E-mail: daltman@one.net

35