LEXSEE 1990 U.S. APP. LEXIS 21850

PEGGY FARRELL, RON LINDSAY, GLORIA McCULLAR, and KAREN POAG, Plaintiffs-Appellants, v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMAN & HELPERS OF AMERICA (AIRLINE DIVISION), Defendant-Appellee

No. 89-1425

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*1990 U.S. App. LEXIS 21850; 136 L.R.R.M. 2392*

April 4, 1990, Filed

**NOTICE:** [*1]

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** On Appeal from the United States District Court for the Eastern District of Michigan, No. 88-74398; Friedman, Judge.

**LexisNexis(R) Headnotes**

**JUDGES:**

*Jones* and *Ryan,* Circuit Judges; and *Douglas W. Hillman,* Chief District Judge. *

* The Honorable Douglas W. Hillman, Chief District Judge for the Western District of Michigan, sitting by designation.

**OPINIONBY:**

PER CURIAM

**OPINION:**

Plaintiffs-appellants, Peggy Farrell, Ron Lindsay, Gloria McCullar, and Karen Poag (Flight Attendants), appeal the order denying their application for attorneys fees. For the following reasons, we remand to the district court.

*I.*

A complete history of the incidents surrounding the present dispute can be found in *Farrell v. International Brotherhood of Teamsters, 888 F.2d 459 (6th Cir. 1989).* Facts pertinent to the instant case follow.

The Flight Attendants, all [*2] previous employees of Republic Airlines, now work for Northwest Airlines. Their services were retained when Republic was merged into Northwest in 1986. Before the merger, employees of Republic had been represented in labor negotiations by the Association of Flight Attendants (AFA), and employees of Northwest were represented by defendant-appellee, International Brotherhood of Teamsters (Teamsters). After the merger, Northwest recognized the Teamsters as the collective bargaining representative for the merged unit. In order to win over the former Republic employees, the Teamsters offered to create new locals in Memphis and Detroit. Subsequently, the Teamsters prevailed in the certification election.

A dispute arose between the Flight Attendants and the Teamsters over the payment of dues and a timetable for establishment of the new local unions. On November 1, 1988, frustrated with their attempts to request the charter of a local union, the Flight Attendants filed the present action in the United States District Court of the Eastern District of Michigan, Judge Bernard A. Friedman presiding. Under the provisions of the Labor-Management Reporting and Disclosure Act of 1959, *29 U.S.C. § 401,* [*3] *et seq.* (1982) (LMRDA), the complaint sought an injunction to compel the Teamsters to form local unions for the Flight Attendants' use and to schedule local elections.

On November 21, 1988, in the wake of the Flight Attendants' filing, the Teamsters chartered new local 2757 in Detroit to serve Northwest employees in both Detroit and Memphis. On the same day, the Teamsters placed the new local under a trusteeship, which precluded any election of local officers. The district court then entered an order dismissing the action because the formation of a new local had mooted the prayer for that relief and because under the LMRDA the court lacked the power to terminate the trusteeship. This court affirmed, noting that where a local union is controlled by a trustee, aggrieved union members' remedies are found under Title III of the Act, under which the Secretary of Labor investigates upon the filing of a complaint. *888 F.2d at 462*. This court further noted that local union elections, the major goal of the Flight Attendants, are inconsistent with a local union run by a trustee. Id.

On January 23, 1989, the Flight Attendants filed an application for attorney fees, arguing [*4] that they were responsible for the Teamsters' action to charter the new local unions. The Flight Attendants sought attorney fees for the hours expended up to the time that the Teamsters informed them that a new local union had been chartered, amounting to $ 3,350.00. The Teamsters opposed the request for attorney fees, arguing that the district court no longer had jurisdiction to entertain post-judgment proceedings, that the application for attorney fees was not timely, and that the lawsuit was not responsible for the chartering of the new local union. Without conducting discovery, the district court denied the application for attorney fees:

Number one, the Court believes that, though I agree with the position of law as Ms. Harvey [counsel for the Flight Attendants] has indicated, as I indicated before, it's a good proposition of law, that it has to be apparent as a matter of fact, that that's what occurred to some extent. . . .

And the Court can't make a factual determination that what the proposition that the Plaintiff relies on is such that they're entitled to attorney fees in this particular matter on that theory, excluding even the procedural 30 day thing, because I think [*5] that is a mandatory thing.

But even excluding it, the 30 day provision in our local rules just based upon the state of the pleadings and the state of the facts as they exist today, the Court believes that the Motion for Attorney Fees should be denied and therefore, it will be denied.

J. App. at 102-3.

*II.*

A lower court's decision on whether to award attorney fees is reviewed under an "abuse of discretion" standard. *Loudermill v. Cleveland Board of Education, 844 F.2d 304, 308-09 (6th Cir. 1988), cert. denied, 109 S.Ct 377 (1988).*

*A. Timeliness of the Application*

The Flight Attendants' first argue that the district court improperly held that the application for attorney fees was untimely. Under Local Rule 17(n) in the Eastern District of Michigan, an application for attorney fees by a prevailing party must be "filed within 30 days after entry of judgment." The Teamsters argued that because the district court entered its judgment dismissing the Flight Attendants' case on December 21, 1988 and the application for fees was filed on January 23, 1989, more than 30 days later, the application was not timely -- and therefore, a waiver [*6] of any right to attorney fees. While the district court did not explicitly decide the timeliness of the filing, it relied upon the 30-day rule as an alternate basis for its denial of attorney fees.

The district court's judgment, though signed on December 21, 1988, was not entered until December 28, 1988. n1 The date of entry of judgment is clearly the relevant date stated in Local Rule 17(n). Therefore, we conclude that because the application was not untimely, Local Rule 17(n) was not a sufficient basis for denying attorney fees.

---

n1 A judgment is deemed "entered" when the clerk of the court records it in the civil docket pursuant to *Fed. R. Civ. P. 79(a)*. See 6A Moore's Federal Practice 58.03 at 58-23 (1989).

---

*B. Legal Standard for Attorney Fees*

The Flight Attendants asked for attorney fees on the basis of the "catalyst theory." Under the catalyst theory of recovery, a party can recover attorney fees even where it has lost in the courtroom, if its legal action caused the other party to alter its [*7] behavior in the manner

sought under the lawsuit. In *Hewitt v. Helms, 482 U.S. 755, 760-61 (1987)*, the Supreme Court stated the relevant inquiry under the theory:

> . . . relief need not be judicially decreed in order to justify a fee award under § 1988. A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment -- *e.g.* a monetary settlement or a change in conduct that redresses the plaintiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor. . . . If the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed.

See also *Loudermill, 844 F.2d at 312* ("a plaintiff may also qualify as the prevailing party if his lawsuit is found to be the 'catalyst' which causes the defendant to make significant changes in its past practices, though no direct relief is obtained.") (citation omitted).

This Circuit has adopted the *Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir. 1978),* [*8] two-pronged standard for determining whether a lawsuit was a sufficient catalyst for the plaintiff to be considered a "prevailing party": (1) the plaintiff must demonstrate that his "lawsuit was causally related to securing the relief obtained." *Johnston v. Jago, 691 F.2d 283, 286 (6th Cir. 1982);* and (2) the "plaintiff must establish some minimum basis in law for the relief secured. . . . This legal inquiry does not entail full trial on the merits. Rather, the trial court need only consider whether the plaintiff's claim is 'frivolous, unreasonable, or groundless.'" Id., quoting *Nadeau, 581 F.2d at 281.* In determining whether the lawsuit was causally related to the change in behavior, the sequence or chronology of events is an important factor in determining whether the "plaintiff's actions were a significant catalyst or a substantial factor in causing defendants to act." *Luethje v. Peavine School District, 872 F.2d 352, 354 (10th Cir. 1989).*

### C. Factual Determination of Causation

The issue in the instant case is whether the Flight Attendants have met the first prong of the test -- a causal relationship. The Flight [*9] Attendants contend that their lawsuit was successful because it prompted the Teamsters to specifically perform on its promise to charter a new local union. They point to the chronology of events: a demand letter was sent by the flight Attendants to the Teamsters on September 30, 1988; the charter application was signed on October 7, 1988; the lawsuit was filed on November 1, 1988; and the new local union was chartered on November 21, 1988. The Flight Attendants also note that any steps the Teamsters allegedly took toward establishment of a charter starting in May 1988 and continuing through the October 7, 1988 charter application were never communicated to the Flight Attendants.

The Teamsters respond that the lawsuit was not a catalyst for the charter. They argue that the activity for creating a charter began in May 1988, culminating with the charter application of October 7, 1988. Ken Daugherty, a Teamsters official who administered the Detroit and Memphis offices between 1986 and 1988, stated in his affidavit that he sent several budget proposals in the summer of 1988 on the costs of one local union versus two locals. Daugherty claims that a decision was reached in September 1988 [*10] to establish one union in Detroit, with a satellite office in Memphis. Subsequently, he contends that he began the preparation of a charter application, which was signed and then approved on October 7, 1988. In sum, because the activity for creation of a charter began in May 1988, months before the lawsuit was filed, the Teamsters argue that the lawsuit was not a "catalyst."

We hold that the district court did not present a record sufficient for this court to review its findings. In *Webster v. Sowders, 846 F.2d 1032, 1038 (6th Cir. 1988),* this court remanded the case to the district court for more particularized findings of whether the plaintiff's lawsuit acted as a catalyst. The Webster court noted that:

> On remand, the District Court should make detailed findings of fact and conclusions of law and provide record support for any award of attorney fees. . . . Only then can the Court of Appeals rationally review the action of a District Court on such issues.

Similarly, in the instant case, the district court has not made specific factual findings on whether the Flight Attendants' lawsuit was responsible for the Teamsters' actual chartering of the local [*11] unions. The court's statement that it "can't make a factual determination that what the proposition that the Plaintiff relies on is such that they're entitled to attorney fees" is ambiguous and subject to different interpretations. On remand, the district court should make specific factual findings of whether the lawsuit is a causal factor for the local charter.

### III.

For the foregoing reasons, we REMAND the case to the district court for findings with regard to the award or denial of attorney fees.