Eastern District of Kentucky
FILED
NOV 26 2003
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 02-42-DLB

CHARLES CORNETT, ET AL                        PLAINTIFFS

VS.           **MEMORANDUM OPINION & ORDER**

WELDING ALLOYS (USA), INC, ET AL               DEFENDANTS

*********************************

Plaintiffs, Charles and Reva Cornett ("Cornetts"), have brought suit against Welding Alloys USA and Welding Alloys, Ltd. under the "citizen suit" provision of the Clean Air Act (CAA), 42 U.S.C. § 7604, which allows for private enforcement of violations of federal air pollution control standards. The Cornetts have also alleged state law claims of negligence, nuisance, trespass, as well as both negligent and intentional infliction of emotional distress.

On June 13, 2003, Welding Alloys USA filed a motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. # 44). The Cornetts responded and requested oral argument. (Doc. #54) Welding Alloys USA filed a reply. (Doc. #59) Magistrate Judge Gregory Wehrman then granted Plaintiffs' motions to file a surreply and to amend the complaint. (Doc. #81) Both the Surreply (Doc. #83) and the Amended Complaint (Doc. #82) were filed on November 10, 2003. The Amended Complaint added a new claim under the CAA and also added Welding Alloys, Ltd. as a

1

motion. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.), *cert. denied*, 498 U.S. 867 (1990).

B.   **Notice Under the Clean Air Act.**

Under the CAA, "[n]o action may be commenced prior to 60 days after the plaintiff has given notice of the violation to the Administrator [of the EPA], to the State in which the violation occurs, and to any alleged violator." 42 U.S.C. § 7604(b)(1)(A). Under the EPA's regulation:

> Notices to . . . alleged violators regarding violation of an emission standard or limitation or an order issued with respect to an emission standard or limitation, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name and address of the person giving the notice.

40 C.F.R. § 54.3(b).

The Supreme Court has held that the "notice and 60-day delay requirements are mandatory conditions precedent to commencing suit" and "a district court may not disregard these requirements at its discretion." *Hallstrom v. Tillamook County*, 493 U.S.

20, 31 (1989).[3] *See also Board of Trustees v. City of Painesville*, 200 F.3d 396, 400 (6th Cir. 1999) ("This circuit has always required plaintiffs to adhere to § 1365's [Clean Water Act's] notice provision because compliance with the notice requirement is a jurisdictional prerequisite to recovery under the statute."); *Walls v. Waster Resource Corp.*, 761 F.2d 311, 316 (6th Cir. 1985) ("compliance with the sixty day notice requirement is a jurisdictional prerequisite to bringing suit against private defendants under the ... [Clean Water Act]").[4]

In *Atlantic States Legal Foundation, Inc. v. United Musical Instruments, USA, Inc.*, 61 F.3d 473 (6th Cir. 1995), the Sixth Circuit applied the *Hallstrom* decision to the substantively identical notice provision of the Emergency Planning and Community Right-to-Know Act (EPCRA). The notice alleged violations based on the failure to file certain forms for the calendar years 1987-1990. *Id.* at 478. The notice did not specifically mention a 1991 violation, but stated that the defendant "may also be responsible for violations not yet known." *Id.* Plaintiff argued that this language was sufficient to create jurisdiction over

---

[3]*Hallstrom* involved a citizen suit under the Resource Conservation and Recovery Act (RCRA). 493 U.S. at 22. However, the citizen suit provision of RCRA is modeled after the CAA. Id. at 23. Thus, the result in *Hallstrom* compels a similar result in construing the notice provision of the CAA.

[4]However, the legislative history of the Clean Water Act indicates that Congress sought to strike a balance between providing notice with sufficient information to identify the alleged violation and not placing an undue burden on the citizen:

> The regulations should not require notice that places impossible or unnecessary burdens on citizens but rather should be confined to requiring information necessary to give a clear indication of the citizens' intent. These regulations might require information regarding the identity and location of the alleged polluter, a brief description of the activity alleged to be in violation, and the provision of law alleged to be violated.

S.Rep. No. 92-414 at 80 (1971), 92d Cong. 1st Sess., reprinted in U.S.Code Cong. & Admin.News 1972, pp. 3668, 3745. Certainly it was Congress' intent to not place an unnecessary burden on citizens filing suit under the parallel provision of the CAA.

6

the 1991 violation alleged in the complaint. The court noted that "[o]ne of the important purposes of the notice requirement under environmental statutes is to facilitate 'dispute resolution by EPA negotiation [and thereby] reduce the volume of costly litigation.'" *Id.*, citing *Walls v. Waste Resource Corp.*, 761 F.2d 311, 317 (6th Cir.1985). The court stated that "the vague warning of possible other claims failed to inform [the defendant] of the year of the additional alleged violation or event he specific EPCRA reporting requirements involved." *Id.* Therefore, the court found that the notice of the alleged 1991 violation was inadequate. *Id.*

In *Sierra Club Ohio Chapter v. City of Columbus*, 282 F.Supp.2d 756, 764-65 (S.D. Ohio 2003) and *Frilling v. Village of Anna*, 924 F.Supp. 821, 833 (S.D. Ohio 1996), the Southern District of Ohio interpreted the holdings in *Hallstrom* and *United Musical Instruments* to require notice of *specific* limitations, standards, or orders alleged to be violated.[5] In doing so, Southern District of Ohio rejected the "notice in fact" standard adopted by the Third Circuit in *Public Interest Research Group v. Hercules, Inc.*, 50 F.3d 1239 (3d Cir. 1995).

In applying its stringent standard of notice, the Southern District of Ohio granted summary judgment on three counts of a complaint because they referenced provisions of a permit and specific federal regulations which were not identified in the notice. *Frilling*, 924 F.Supp. at 835. The court also found notice inadequate where it failed to indicate the dates or specific locations of the violations. *Sierra Club*, 282 F.Supp.2d at 766-69, 771-74, citing *Frilling v. Honda of America Mfg., Inc.*, No. C-3-96-181, 1996 WL 1619348 (S.D.

---

[5] Both these cases involved the Clean Water Act, which has a notice provision in its regulations identical to that found at 40 C.F.R. § 54.3(b).

Ohio, Oct. 21, 1996) (unpublished).

Although unpublished, *Frilling v. Honda of America Mfg., Inc.* includes an extensive discussion by Judge Rice of the sufficiency of notice. In *Frilling*, the notice letter stated that one violation occurred on a "nearly daily" basis and that other violations occurred on a "continuous" or "intermittent" basis. *Id.* at *5. It was also alleged that other violations occurred a specific number of times (ranging from 1-220 times) over a time frame of roughly five years. *Id.* The court stated that given the Supreme Court's admonition in *Hallstrom* that the 60-day notice and delay requirements are to be strictly construed, the court would hold that "the pertinent federal regulation should, likewise, be literally construed." *Id.*

The court held that the plaintiffs' references to a specific number of violations over a five-year period was insufficient to allow the defendant to identify the "date or dates" of the alleged violations because such references did "not even assist the Defendant in identifying the specific year or years of the alleged violations." *Id.* at *6, citing to *United Musical Instruments*, 61 F.3d at 478; *California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F.Supp. 792, 799 (E.D. Cal.1995) (holding that the phrase "for the previous five years on hundreds of occasions" did not provide sufficient notice because "the date or dates of the violation must be stated with some specificity . . . at the least plaintiff should give a range as to date that is reasonably limited"); *Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Center, Inc.*, 891 F.Supp. 152, 154 (S.D.N.Y.1995) (requiring the plaintiff "to specify at the very least a discrete, specific time-frame" of the alleged violations).

8

The court also held that the plaintiffs' assertion that violations occurred on an "intermittent" basis was insufficient to allow the Defendant to identify the date or dates of the violations. *Id.*

The court stated that it was a closer question whether the terms "continuous" and "nearly daily" were sufficient. *Id.* The court concluded that there was "considerable ambiguity" in these terms, and the defendant would be required to examine records for each and every day within the five year time frame alleged to identify the date or dates of the alleged violations. *Id.*

A similar result was reached in *National Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 175 F.Supp.2d 1071 (E.D. Tenn. 2001). There, the court required strict compliance with the statutory notice requirements of the CAA. *Id.* at 1066. The court concluded that the notice inadequate because it only stated that the TVA has "regularly violated" the standard "for at least the last five years. . . ." *Id.* The court stated that the plaintiff failed to provide the specificity in its notice which would allow the defendant to determine when the alleged violations occurred. *Id.*

The Court finds the above persuasive authority applicable to the present case. The Cornetts' notice to Welding Alloys USA states:

> . . . Welding Alloys has operated and will continue to operate its facility in violation of emission standards and limitations under the CAA and Kentucky SIP (including violations of KRC 224 et seq. and regulations promulgated thereunder).
>
> In 1999, Welding Alloys built an additional building next their then-existing facility. This new building is situated directly behind the Cornetts' property. Also in 1999 Welding Alloys installed and began operating air contaminant sources in this new building. Thereafter, Welding Alloys has continued to install and operate new sources of air contaminants, including a December 2000 addition of a new powder handling system, at its facility.

9

(Doc. #44, Exh. B)

Strictly construing the notice requirement in 40 CFR § 54.3, this notice does state with some specificity when the alleged violations occurred. The notice states that the violations began in 1999 when Welding Alloys USA built an additional building next to their existing facility and continued until the present. The notice also states that the addition of a new powder handling system at its facility in December of 2000 created a new source of air contaminants. This information provides Welding Alloys USA with a date that is reasonably limited by the operation of the new facility and the new powder handling system. The violations did not begin until 1999 and continued until notice was given in 2001. This specific, three-year time frame was sufficient to permit Welding Alloys USA to identify when the violations occurred.[6] Therefore, Welding Alloys USA motion to dismiss on this basis is **DENIED**.

C. **Enforcement of State Implementation Plans (SIPs) under the Clean Air Act.**

Under 42 U.S.C. § 7410, states must promulgate and enforce a State Implementation Plan (SIP) aimed at attaining the National Ambient Air Quality Standards (NAAQS) established by the EPA. The SIP, once approved by the EPA, becomes enforceable under the Clean Air Act. 42 U.S.C. § 7604(f)(4).

First, Welding Alloys USA argues that certain provisions of the KAR that are alleged to have been violated are "non-objective" standards that are unenforceable under the CAA. Second, Welding Alloys USA argues that other provisions of the KAR alleged to have been

---

[6] The Amended Complaint repeats this same time frame. (Doc. #82, ¶¶ 50-52) However, it should be made clear that the Cornetts will not be permitted to rely on any violations occurring before 1999 to prove its claims under the CAA.

10

2. Defendant Welding Alloys USA's motion to dismiss (Doc. # 44) is **GRANTED** in part, as it relates to Plaintiffs' claims based on violations of 401 KAR 52:040 and 401 KAR 52:070;

3. Defendant Welding Alloys USA's motion to dismiss (Doc. # 44) is **DENIED** in all other respects;

4. Plaintiffs' request for oral argument (Doc. #54) is **DENIED**.

This 26th day of November, 2003.

DAVID L. BUNNING
**UNITED STATES DISTRICT JUDGE**

G:\DATA\Opinions\2-02-42-MTD.wpd

17