UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ET AL., | | CASE NO. C-1-02-107 |
| Plaintiffs, | ) | |
| and | ) | |
| SIERRA CLUB, ET AL., | ) | **Judge S. Arthur Spiegel** |
| Intervenors, | ) | |
| v. | ) | |
| BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

## SIERRA CLUB'S RESPONSE TO THE OMBUDSMAN'S DECEMBER 15, 2005 REPORT

**Background**

After two years of operation of the Sewage-in-Basement program and one and one-half years of MSD'S operation under the final Consent Decree, the Sierra Club still finds undue delays by the MSD in: (a) responding to citizens; (b) owning up to the financial impact of SIBs; (c) addressing long term management issues; (d) identifying the scope of the SIB problem; and, (e) fixing the SIB releases that were invalidated by this Court. The ability of the MSD to delay its responsibilities has too often trumped the ability of the Ombudsman to spur MSD to prompt action.

Despite the vast scope of these concerns, the Sierra Club has continued to work directly with SIB victims and to work extensively with the Ombudsman, the Long Term Control Plan Steering Committee and MSD officials.

The Sierra Club has shared these observations, the results of Sierra Club citizen surveys and other MSD-related concerns with Cincinnati City Council, the Ombudsman and the MSD via both face-to-face and written communications. These communications include the October 6, 2005 letter to the Ombudsman (Attachment A); the November 1, 2005 memo to City Council (Attachment B); and a recent document from the top MSD official that illustrates MSD's inability to answer even some basic management questions (Attachment C).

With this background, the Sierra Club offers the Court the following observations – in addition to the information in the attachments – and two preliminary recommendations:

**Lack of Responsiveness to Citizens**

The Sierra Club reports that citizens have told the Club's staff and volunteers that it is difficult to figure out the status of SIB claims in the MSD's system. Citizens are told, "Call back if you don't receive a check in 60 days." In one instance the claim had somehow been lost, and the citizen had to resubmit the claim and was told to wait another 60 days. City solicitor staff, however, was responsive when Sierra Club called, explained the situation and asked that the claim processing be expedited.

The Club notes that other citizens have reported structural damage that they believe is due, at least in part, to sewage backups. Citizens tell the Club that MSD has

not been responsive in assessing these situations or loss of property value due to these backups.

**Financial Impact**

For many citizens, the loss of property represents a significant financial loss and delays in resolving claims worsen that situation. Structural damage may result in significant losses when homes are sold, if they even can be sold.

**Long-term Management Issues**

Sierra Club requested, now that the MSD's obligations set forth in the Consent Decree are over two years old, that MSD respond to a number of the Club's questions about the long-term management of the program. In the e-mail attached at D, the MSD Director replies that "We are currently in development of this major program, *and as such can not address most of the questions outlined below."* (emphasis added)

**Scoping and Speed of SIB program**

The Sierra Club notes that the full extent of the SIB threat has not been identified. MSD has reported that it mailed over 2,700 letters to SIB victims, yet MSD has repeatedly stated that *for every SIB reported, there are apt to be three more SIB locations*. MSD's files contain over 10,000 complaints from 1997 to 2004. MSD's self-evaluation does not identify these problems as "House Tap Problem or Unrelated to MSD." If the true number is even one-half of 10,000, then more residents need to be promptly identified and their property evaluated for the program. Furthermore, at the current rate of installation of backup prevention devices (108 in 2004; 109 in the first six months of 2005) the Club observes that MSD will not achieve SIB relief within the promised five years. Furthermore, since MSD is ***not*** planning to increase capacity in

CSO areas, these residents may never obtain relief. MSD will need to fix or replace these pumps permanently, something many residents do not realize or, if they do, are not satisfied with. Since the sewage that would have backed up in people's homes has been blocked from entering those homes, it still has to go somewhere. The Sierra Club points out that the problems will migrate to a home next door or into surface waters.

The presentation at the October 20, 2005 Long Term Control Plan Steering Committee meeting announced that "no water in basement by 2010" was the *milestone* that MSD expected to meet for sanitary sewers. This is two years longer than previously stated by MSD. Sierra Club reports that it asked MSD about this, and was told that "2010 was not necessarily correct," but there has been no errata correcting the information. Such mistakes cause confusion and often become entrenched once they are communicated.

**Information Access and Long Term Control Plan**

Sierra Club has sought information from MSD on a number of aspects of the Consent Decree's plans and progress. While some questions have been answered, many have been either unanswered or incompletely answered. The Club considers this information crucial to its role on the Steering Committee for the Long Term Control Plan and in assisting SIB victims. Furthermore, in December 2005, the "steering committee" for the Long Term Control Plan met for the eighth and final time, and the ***LTCP Steering Committee still has not been provided with even a draft plan***, much less the underlying detail, various options for improving the system, their costs and benefits. The Club has been able to glean some information, after repeated efforts.

- **ORSANCO,** a party to this case, is considering lowering water quality standards, at the behest of sewer districts, rather than MSD using the state process outlined to the court. Public participation in the ORSANCO process has been limited and may turn out to be non-existent. Hence, an individual *plaintiff* on the Consent Decree can grant the *defendant* relief from the Consent Decree.

- Interviews with consultants as part of the long term workplan have revealed that MSD plans to use numerous High Rate Treatment ("HRT") systems, despite the expectation that the systems will last only 20 years – the same amount of time as the LTCP is taking to plan and implement. Further these HRT systems do not comply with the Clean Water Act, as Sierra Club witnesses have previously testified.

- Some areas of the MSD system have <u>significant issues</u> that have not been made clear to the public or, in some cases, the LTCP Steering Committee. For example, the Mill Creek interceptor and the auxiliary interceptor are in extremely poor condition and need repair.  Further, the Sycamore collection system is either in poor condition (excessive leakage of sewage out and stormwater in) or has numerous combined sewers that were not legal at the time they were installed, or both. Sierra Club reports receiving conflicting information as to whether or not the SRP, Stormwater

Removal Program, is or could still result in significant reductions in removal of stormwater from the system.

- MSD does not intend to address capacity issues in the CSO area. This is particularly troubling for SIB victims. This means there is no end to the SIB program.

- To save money and be "affordable" *where region-wide affordability is being determined by the income levels of the lowest areas of the region*, areas of the city that have long suffered from the most pollution will continue to have the worst quality water in the region. These communities, primarily along Mill Creek, already suffer from significant, cumulative adverse environmental impacts. Sierra Club reports that this condemns these areas to another 20 years of polluted water, while more suburban areas – for example, along the Little Miami River – will see improvements to water quality. Many of these unimproved communities along Mill Creek qualify as "Environmental Justice" communities. In other words, because there are poor areas in the county, the expenditures are being capped at $1.5 billion for "affordability" but the bulk of the money will be spent in higher income areas, and *inadequate solutions or no solutions* will be chosen in low-income areas.

- In 2002, MSD initiated a 10-year program of videotaping all its sewer lines to identify sewer lines in need of repair/replacement. MSD has been finding problems "faster than they can fix them." The current backlog of repairs is "guesstimated" at $15 million. The next round of sewer lines videos will be in the older part of the city. The Club reports that this unfunded backlog of repairs will grow significantly due to the age of the system. The lack of knowledge about the basic condition of the system means that MSD is more likely to make flawed decisions.

**Sierra Club's Commitment**

As noted, the Sierra Club has worked extensively with SIB victims and continues to. The Club would like to see the Ombudsman's office be far more aggressive in addressing the victims concerns and issues. The Sierra Club has been forced to supplement the role of the Ombudsman. While this is necessary, it is neither effective nor desired, but is being undertaken at the behest of SIB victims. The Club has had many formal and informal meetings with both MSD and the Ombudsman, called and e-mailed the Ombudsman and MSD seeking redress and information for SIB victims. More people are now aware that there is an Ombudsman, but the Club remains concerned that many SIB victims still do not know about the program.

The Sierra Club intends to continue to work toward genuine improvement of the MSD Sewer System. However, the Club recommends that: (1) The Court hold a hearing focused solely on the development of the comprehensive plan for the MSD and the impact of that plan on the Long Term Control Plan and related Consent Decree plans;

and, (2) In three months the Court hold a follow-up hearing on the issues raised in this report and the attachments.

                                                        Respectfully submitted,

                                                        /s/ D. David Altman_____

                                                        D. David Altman, Esq.
                                                        (#0021457)
                                                        D. David Altman Co., L.P.A.
                                                        15 East 8th St., Suite 200W
                                                        Cincinnati, OH 45202
                                                        513-721-2180

## CERTIFICATE OF SERVICE

      I hereby certify that on December 20, 2005, a copy of the forgoing Sierra Club's Response to the Ombudsman's Report was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                        /s/ D. David Altman_____
                                        D. David Altman (0021457)
                                        D. DAVID ALTMAN CO., L.P.A.
                                        15 East 8th Street, Suite 200W
                                        Cincinnati, OH  45202
                                        E-mail:  daltman@one.net