

THE METROPOLITAN SEWER DISTRICT
OF GREATER CINCINNATI
HAMILTON COUNTY, OHIO

# SANITARY SEWER NO. 5484
## C.I.P. NO. 2003-23
# WATER IN BASEMENT
# PREVENTION PROJECT
# 3012 WESTKNOLLS LANE, CITY OF CINCINNATI
## WIB NO. 20042350

### INDEX OF SHEETS:

| SHEET NO. | DESCRIPTION |
|---|---|
| 1 | TITLE SHEET |
| 2 | SITE PLAN |
| 3 | BASEMENT PLAN |
| 4 | SITE SEWER DETAILS |
| 5 | MISC SITE SEWER DETAILS |
| 6 | ELECTRICAL DETAILS |

### DRAWINGS PREPARED BY:

BURGESS & NIPLE, INC.
312 PLUM STREET, 12TH FLOOR
CINCINNATI, OHIO 45202
PHONE 513-579-0042
FAX 513-579-0321



SITE LOCATION
(FLOOR ISOMERIC (SON)
3012 WESTKNOLLS LANE)

CINCINNATI

QUEEN CITY AVE

**VICINITY MAP**
NO SCALE

### PROPERTY OWNER:
FLORENCE V SMITH
3012 WESTKNOLLS LANE
CINCINNATI, OHIO 45211
PHONE 513-661-4569

### PLANS APPROVED BY:



FLORENCE V SMITH _____ DATE

KEVIN JENKINS (SON) 3-31-05
HAS POWER OF ATTORNEY      DATE

THE METROPOLITAN SEWER DISTRICT
OF GREATER CINCINNATI
HAMILTON COUNTY
SANITARY SEWER NO. 5484
CIP 2003-23
WATER IN BASEMENT
PREVENTION PROJECT
3012 WESTKNOLLS LANE, CITY OF CINCINNATI
WIB NO. 20042350 (SMITH)
SCALE AS SHOWN



BURGESS & NIPLE



UNDERGROUND UTILITIES
2 WORKING DAYS
BEFORE YOU DIG
CALL TOLL FREE 800-362-2764
OHIO UTILITIES PROTECTION SERVICE

| JOB NO. | 35924 |
|---|---|
| DESIGNED BY: | TLZ |
| DRAWN BY: | TLZ |
| CHECKED BY: | GB |
| APPROVED BY: | GB |
|  | 2/3/05 |

SHEET 1 OF 6



(1) CUT INTO EXISTING 6" SAN CLAY LATERAL PIPE WITH WHOLE HOUSE SEWAGE PUMP RECEIVING HOUSE SEWAGE FLOW. SEE SEWAGE PUMP DETAIL AS SHOWN ON SHEET 4.

(2) PROVIDE 3/4" ELECTRICAL CONDUIT BURIED MIN 2'-0" BELOW GROUND BETWEEN NEW PUMP STATION AND HOUSE CONCRETE FOUNDATION WALL. SEE TRENCH DETAIL ON SHEET NO 4.

(3) NEW 2" PVC SEWAGE PUMP DISCHARGE LINE. TIE INTO MSD SEWER WITH A 2" X 6" REDUCER AND FERNCO TYPE COUPLING AS PER DETAIL SHOWN ON SHEET 4.

(4) PROVIDE A 20 AMP, 2P GFCI CIRCUIT BREAKER AND A 20 AMP, 1P GFCI CIRCUIT BREAKER AND INSTALL IN NEW ELECTRICAL PANEL SEE ELECTRICAL DETAILS SHEET NO 6.

(5) NEW 3/4" PVC ELECTRICAL CONDUIT. HOMERUN ALONG BASEMENT CEILING AND/OR WALL TO NEW ELECTRICAL PANEL IN BASEMENT.

(6) MOUNT RAINPROOF NEMA 4X ENCLOSURE ON EXTERIOR HOUSE WALL ABOVE GROUND FOR DETAIL SEE SHEET 6.

(7) CAP AND SEAL EXISTING PIPE BY INSTALLING PVC CAP ON SHORT LENGTH OF PIPE AND ATTACH TO EXISTING PIPE WITH COUPLING AS PER DETAIL SHOWN ON SHEET NO 4.

(8) INSTALL NEW OUTDOORS STORM DEWATERING PUMP. POWER CABLE IN 1/2" CONDUIT ALONG WALL AND CEILING TO NEW ELECTRICAL PANEL IN BASEMENT.

(9) INSTALL 4" PVC SDR 35 DRAIN PIPE AT MIN 1/8" PER FOOT SLOPE. SEE TRENCH DETAIL ON SHEET NO 5.

(10) INSTALL NEW OUTDOORS STORM WATER PUMP STATION. SEE TRENCH DETAIL SHEET NO 5.

(11) TIE 4" PVC SDR 35 DRAIN PIPE INTO EXISTING 6" CLAY PIPE WITH FERNCO COUPLINGS PER DETAIL SHEET NO 4.

(12) RESTORE CONCRETE PATIO TO MATCH EXISTING PATIO. SEE TRENCH DETAIL ON SHEET 5.

(13) REPAIR DISTURBED CONCRETE DRIVE AS PER TRENCH DETAIL ON SHEET NO 5.

(14) INSTALL 4" CLEANOUT SEE DETAIL SHEET NO 4.

(15) INSTALL 4" SDR 35 PVC INLET PIPE TO NEW STORM PUMP AT MIN 1/8" PER FOOT SLOPE. REPLACE INLET DRAIN IF NEEDED AND APPROVED. SEE TRENCH DETAIL SHEET NO 5.

(16) PLUG EXIST DOWNSPOUT AND CONNECT NEW 4" DOWNSPOUT LINE WITH CLEANOUT AS PER DETAIL SHOWN ON SHEET NO 5.

(17) INSTALL DOWNSPOUT TRAP / DRAIN WITH CLEANOUT AT DOWNSPOUT LINE CONNECTION TO HOUSE SEWER LATERAL. SEE DETAIL SHT NO 5.

(18) INSTALL 1 1/2" PVC STORM PUMP DISCHARGE LINE. SEE STORM PUMP DETAIL SHEET NO 5

(19) INSTALL 4" SDR 35 PVC DRAIN PIPE MIN 1/8" PER FOOT SLOPE AND CONNECT TO CLEAN OUT. SEE TRENCH DETAIL AND CLEANOUT DETAIL ON SHEET NO 5

NOTE:
SAFETY AND DESIGN PROCEDURES FOR ALL EXCAVATIONS ALONG WITH WORKER TRAINING, INSPECTION AND SAFETY ENFORCEMENT ARE THE RESPONSIBILITY OF THE CONTRACTOR AND SHALL BE DONE IN ACCORDANCE WITH THE CURRENT OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION (OSHA) REGULATIONS, SECTION V: CHAPTER 2, ENTITLED:- EXCAVATIONS: HAZARD RECOGNITION IN TRENCHING AND SHORING OF THE OSHA TECHNICAL MANUAL, CAN BE OBTAINED FROM OSHA'S WEBSITE AT "WWW.OSHA.GOV."

NOTE:
EXISTING BURIED DRAIN PIPING AND STRUCTURES SHOWN HEREON WHERE LOCATED BY THE BEST METHODS AVAILABLE AND ARE NOT NECESSARILY ACCURATE AS TO LOCATION, TYPE, SIZE AND DEPTH. CONTRACTOR TO VERIFY ALL BURIED PIPES AND STRUCTURES BEFORE BEGINNING ANY WORK.

GRAPHIC SCALE

1 inch = 10ft.

SITE PLAN

THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI HAMILTON COUNTY
SANITARY SEWER NO. 5484
CIP 2003-23
WATER IN BASEMENT PREVENTION PROJECT
3012 WESTKNOLLS LANE, CITY OF CINCINNATI
WIB NO. 20042350 (SMITH)
SCALE: 1" = 10'

BURGESS & NIPLE

| JOB NO. | 35524 |
| DESIGNED BY | TLZ |
| DRAWN BY | TLZ |
| CHECKED BY | GB |
| APPROVED BY | GB |
| DATE | 2/3/06 |

SHEET 2 OF 6

GAS METER

PLUG DOWNSPOUT INTO BASEMENT SEE SITE PLAN SHEET NO 2

G

DS

FLOOR DRAIN FF 788.41

GARAGE IN BS'MT FF 788.85

NOTE:
FOR NEW OUTSIDE STORM DEWATERING PUMP STATION AND ELECTRICAL WORK SEE SITE PLAN SHT NO 2

CONC DRIVE

INLET T/C 788.37

WATER HEATER

FURNACE

N

NOTE:
HOUSE DOWNSPOUTS AND DRIVE INLET DRAIN TO INTERIOR HOUSE PLUMBING SYSTEM

WATER METER

SINK

PLUG DOWNSPOUT INTO BASEMENT SEE SITE PLAN SHEET NO 2

W

4" VCP DRAIN

DRYER

DS

WESTKNOLLS LANE

6" VCP SAN LATERAL SEWER TO MSD 24" COMBINED SEWER IN STREET

CONC PORCH ABOVE

FLOOR CLEANOUT 15" DEEP

1 1/2 STY HOUSE #3012 W/ FINISHED BAS'MT

WASHER

SINK

TOILET

CONC PORCH ABOVE

NOTE:
FOR NEW OUTSIDE SEWAGE GRINDER PUMP STATION, ELECTRICAL WORK AND DOWNSPOUT LINES SEE SITE PLAN SHT NO 2

NEW ELECTRICAL POWER/ALARM CONDUIT SEE DETAIL SHT NO 2

NEW ELECTRICAL POWER CONDUIT SEE DETAIL SHT NO 2

REMOVE ELECTRICAL PANEL

FLOOR DRAIN T/C 579.30

SHOWER STALL WITH FLOOR DRAIN

TILE FLOOR, TILE CEILING AND WOOD PANEL WALLS

NOTE:
EXISTING BURIED DRAIN PIPING AND STRUCTURES SHOWN HEREIN WHERE LOCATED BY THE BEST METHODS AVAILABLE AND ARE NOT NECESSARILY ACCURATE AS TO LOCATION, TYPE, SIZE AND DEPTH. CONTRACTOR TO VERIFY ALL BURIED PIPES AND STRUCTURES BEFORE BEGINNING ANY WORK.

E

NEW ELECTRICAL PANEL SEE DETAILS SHT NO 6

ELECTRIC METER

CONC FOUNDATION WALL

**BASEMENT PLAN**

THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI HAMILTON COUNTY

SANITARY SEWER NO. 5484
CIP 2003-23
WATER IN BASEMENT PREVENTION PROJECT
3012 WESTKNOLLS LANE, CITY OF CINCINNATI
WIB NO. 20042350 (SMITH)

SCALE: 1" = 7'

GRAPHIC SCALE

1 inch = 7 ft.

BURGESS & NIPLE

SHEET 3 OF 6



NOTE:
PUMP ALARM REMOTE MONITOR TO BE MOUNTED ON BASEMENT WALL LOCATION PER OWNER

4" X 4" X 4" NEMA 4X SCH 40 PVC JUNCTION BOX W/ WATERPROOF CONNECTORS

FINISH GROUND

FIBERGLASS PUMP BASIN

3/4" SEALED CONDUIT PVC SCH 40 ELECTRICAL FROM HOUSE

ADAPTAFLEX GROMET SEAL

PUMP POWER CABLE

3/16" DIA STAINLESS STEEL LIFTING CABLE

SANITARY DRAIN PIPE FROM HOUSE

BOLTED EMVRON BOOT OR EQUAL

POWER CABLE 12-3 W/ GROUND TO RAINPROOF NEMA 4X BOX ON FOUNDATION WALL, SEE SITE PLAN SHT NO 2. EXTEND POWER CABLE TO NEW ELECTRIC PANELBOARD AND CONNECT TO A CONTRACTOR FURNISHED 20A/2P CIRCUIT GFCI BREAKER. INSTALL AND WIRE PER MANUFACTURER'S SPECIFICATIONS AND DIRECTIONS. FURNISH RECEPTACLE AS REQUIRED BY MANUFACTURER.

ALARM CABLE FURNISHED BY ALARM MANUFACTURE. ROUTE TO TO NEW RAINPROOF NEMA 4X BOX ON FOUNDATION WALL, SEE SITE PLAN SHT NO 2. EXTEND POWER CABLE TO NEW ELECTRIC PANELBOARD AND CONNECT TO A CONTRACTOR FURNISHED 20A/1P CIRCUIT GFCI BREAKER. INSTALL AND WIRE ALARM PER MANUFACTURER'S SPECIFICATIONS AND DIRECTIONS. MONITOR MOUNTED ON 1ST FLOOR WALL LOCATION PER OWNER. FURNISH RECEPTACLE AS REQUIRED BY MANUFACTURER.

2 " MUSHROOM VENT
ALARM CABLE TO RUN INSIDE ELEC. PVC CONDUIT
3/8" DIA SS EYE BOLT FOR LIFTING CABLE
1/4" THICK ALUMINUM TREAD COVER
4" PVC CLEAN OUT W/ REMOVEABLE CAP

SS PULL ROD
2" BRASS SLIDE/DISCONNECT
2" PVC SHUT OFF VALVE
2" PVC DISCHARGE LINE
2" X 4" PVC TEE WYE OR TEE
NOTE: USE PRESSURE PVC FITTINGS INSIDE PIT

2" BOLTED EMVRON BOOTS OR EQUAL
2" X 2" PVC ADAPTOR
2" PVC CHECK VALVE

SANITARY SEWER HOUSE LATERAL TO MSD SEWER

FERNCO COUPLING
PVC ELBOW BEND
2" ANTI-SIPHON VALVE
3/16" VENT HOLE FIELD INSTALLED
PUMP STAND (316 STL SL)

CONCRETE ANTI-FLOATATION TIE ANCHOR. USE 200 LBS OF CONCRETE FOR EVERY FOOT OF DEPTH
MIN 4" COMPACTED GRAVEL BASE ODOT ITEM 304

ALARM

FLOW

UNDISTURBED EARTH

12"    24"    12"

**OUTDOOR WHOLE HOUSE SEWAGE GRINDER PUMP ZOELLER MODEL 820 OR APPROVED EQUAL**
NOT TO SCALE

NOTE:
PUMP STATION, PIPING AND ELECTRICAL INSTALLATION SHALL MEET ALL MANUFACTURERS REQUIREMENTS.

EX GROUND

MIN 6" TOPSOIL WITH MATCHING GRASS OR PLANTER MATERIAL DISTURBED

METALLIC TAPE MARKED ELECTRIC 12" COVER

TRENCH

UNDISTURBED GROUND
COMPACTED EARTH BACKFILL
PVC CONDUIT
SAND BEDDING ODOT 703.77

I.D. + 12"

**ELECTRICAL CONDUIT TRENCH DETAIL**
NOT TO SCALE

NO-HUB PIPE ENDS
FERNCO COUPLING OR EQUAL
STAINLESS STEEL BAND CLAMPS

NEW PIPE          EXISTING PIPE

**PIPE CONNECTION DETAIL**
NOT TO SCALE

NOTE:
SAFETY AND DESIGN PROCEDURES FOR ALL EXCAVATIONS ALONG WITH WORKER TRAINING, INSPECTION AND SAFETY ENFORCEMENT ARE THE RESPONSIBILITY OF THE CONTRACTOR AND SHALL BE DONE IN ACCORDANCE WITH THE CURRENT OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION (OSHA) REGULATIONS, SECTION V: CHAPTER 2, ENTITLED:- EXCAVATIONS: HAZARD RECOGNITION IN TRENCHING AND SHORING OF THE OSHA TECHNICAL MANUAL CAN BE OBTAINED FROM OSHA'S WEBSITE AT "WWW.OSHA.GOV."

**PIPE MATERIAL NOTE**
NEW PIPE USED WITHIN THE BUILDING LIMITS TO BE PVC SCHEDULE 40 TYPE
NEW PIPE USED OUTSIDE OF BUILDING LIMITS TO BE PVC SDR 35 TYPE

**SITE SEWER DETAILS**
THE METROPOLITAN SEWER DISTRICT OF GREATER CINCINNATI
HAMILTON COUNTY
SANITARY SEWER NO. 5484
CIP 2003-23
WATER IN BASEMENT PREVENTION PROJECT
3012 WESTKNOLLS LANE, CITY OF CINCINNATI
WIB NO. 20042350 (SMITH)
SCALE AS SHOWN

| NO. | REVISIONS | DATE | BY | CKD. | | |
|---|---|---|---|---|---|---|
| | | | | | JOB NO. | 39624 |
| | | | | | DESIGNED BY | TLZ |
| | | | | | DRAWN BY | TLZ |
| | | | | | CHECKED BY | GB |
| | | | | | APPROVED BY | GB |
| | | | | | DATE | 2/3/05 |

BURGESS & NIPLE

SHEET 4 OF 6





| | DESCRIPTION | LOAD | C/B | | | C/B | LOAD | DESCRIPTION | |
|---|---|---|---|---|---|---|---|---|---|
| | EXIST. LOAD | EXISTING | 20 | 1 | 2 | 20 | EXISTING | EXIST. LOAD | |
| | EXIST. LOAD | EXISTING | 20 | 3 | 4 | 15 | EXISTING | EXIST. LOAD | |
| | EXIST. LOAD | EXISTING | 30/2 | 5 | 6 | 30/2 | EXISTING | EXIST. LOAD | |
| | EXIST. LOAD | EXISTING | | 7 | 6 | | EXISTING | EXIST. LOAD | |
| | EXIST. LOAD | EXISTING | 15 | 9 | 10 | 15 | EXISTING | EXIST. LOAD | |
| | EXIST. LOAD | EXISTING | 15 | 11 | 12 | 15 | EXISTING | EXIST. LOAD | |
| | SPARE | | 20 | 13 | 14 | 20 ** | 50 | NEW SEWAGE PUMP ALARM | |
| | SPARE | | 30 | 15 | 16 | | 1120 | NEW SEWAGE PUMP | |
| | NEW STORM PUMP | 1120 | 20/2 ** | 17 | 18 | 20/2 ** | 1120 | | |
| | | 1120 | | 19 | 20 | | | SPACE | |

NEW PANEL **PANEL**
VOLTAGE: 240V/120
PHASE/CONNECTION: 1∅, 3W

RM: BASEMENT
MAIN: 200A. BUS — 150 A. MAIN CB
SC AMPS: 22000

** PROVIDE GFCI TYPE CIRCUIT BREAKER AND "LOCK-ON-CLIP".

ELECTRICAL CALCULATIONS BASED ON NEC EXAMPLE D2(a) OPTIONAL CALCULATION FOR ONE-FAMILY DWELLING, AIR CONDITIONING LARGER THAN HEATING.

ELECTRICAL CONTRACTOR TO COORDINATE WITH THE UTILITY COMPANY, ELECTRICAL OUTAGES AND UTILITY METER/BASE CHANGE-OVER.

REMOVE EXISTING ELECTRICAL 100A SERVICE RISER CONDUCTORS. ELECTRICAL CONTRACTOR TO PROVIDE A NEW 150A. 240/120V. ELECTRICAL SERVICE RISER FEEDER FROM PANEL BOARD, THRU METER BASE TO WEATHERHEAD. EXTEND CONDUCTORS AS REQUIRED BY UTILITY COMPANY, FOR CONNECTION TO UTILITY COMPANY AERIAL SERVICE CONDUCTORS. FEED THE NEW PANELBOARD WITH 3#1 CU., 1#8 CU. GND. CONDUCTORS SIZED PER NEC TABLE 310.15(B).

ELECTRICAL CONTRACTOR TO PROVIDE A NEW 150A. 240/120V. ELECTRICAL PANELBOARD. REMOVE EXISTING ELECTRICAL APPARATUS. RECONNECT EXISTING LOADS TO NEW PANELBOARD. IT IS NOT THE RESPONSIBILITY OF THIS CONTRACTOR TO CORRECT EXISTING CODE VIOLATIONS.

ELECTRICAL CONTRACTOR TO PROVIDE AND INSTALL GROUNDING TO EXISTING DRIVEN GROUND ROD AND EXISTING WATER SERVICE PIPING PER NEC ART. 250.

IT IS NOT THE RESPONSIBILITY OF THIS CONTRACTOR TO CORRECT EXISTING CODE VIOLATIONS.

INFORMATION GIVEN FOR EXISTING LOADS, IS DERIVED FROM SCHEDULES FURNISHED BY THE HOME OWNER.

PROVIDE GFCI TYPE CIRCUIT BREAKER FOR CIRCUITS, WHERE REQUIRED BY THE NEC.

PROVIDE "ARC FAULT" TYPE CIRCUIT BREAKER FOR CIRCUITS, WHERE REQUIRED BY THE NEC.

ELECTRICAL CONTRACTOR SHALL NOT MAKE WIRING SPLICES INSIDE THE PANELBOARD ENCLOSURE. PROVIDE AN AUXILIARY SPLICE BOX OR REUSE EXISTING PANEL BOX AND PROVIDE A PAINTED BLANK BOLT-ON COVER.

| PNL. CONNECTED | DEM. % | VA DEMAND | |
|---|---|---|---|
| 5391 | 125% | 6738.75 | LIGHTING AND RECEPT. = 3VA X 1757 SQ. FT. |
| 3000 | 100% | 3000 | (2) 1500 W. KITCHEN APPLIANCE CIRCUITS |
| 9000 | 100% | 9000 | RANGE |
| 1260 | 100% | 1260 | HEATING (EXISTING GAS) FURNACE BLOWER |
| 1500 | 100% | 1500 | LAUNDRY CIRCUIT (EXISTING) |
| 5000 | 100% | 5000 | CLOTHES DRYER (EXISTING) |
| 0 | 100% | 0 | WATER HEATER (GAS) |
| 3290 | 100% | 4490 | NEW SEWAGE PUMP & ALARM, NEW STORM PUMP |
| | | 30988.75 | TOTAL GENERAL LOAD |
| 10000 | 100% | 10000 | FIRST 10 KVA @100% |
| 20988.75 | 40% | 8395.5 | REMAINDER @40% |
| 5000 | 100% | 5000 | AIR CONDITIONING UNIT |
| | | 23395.5 | TOTAL "VA" HOUSE PANEL |
| | | 97.49 | TOTAL AMPS |

## ELECTRICAL DETAILS

THE METROPOLITAN SEWER DISTRICT
OF GREATER CINCINNATI
HAMILTON COUNTY

SANITARY SEWER NO. 5484
CIP 2003-23
WATER IN BASEMENT
PREVENTION PROJECT
3012 WESTKNOLLS LANE, CITY OF CINCINNATI
WIB NO. 20042350 (SMITH)

| NO. | REVISIONS | DATE | BY | PNL. |
|---|---|---|---|---|

JOB No. 35924
DESIGNED BY: TLZ
DRAWN BY: TLZ
CHECKED BY: GB
APPROVED BY: GB
DATE: 2/3/05

BURGESS & NIPLE

SHEET 6 OF 8

COURT OF COMMON PLEAS
CIVIL DIVISION
HAMILTON COUNTY, OHIO

KELVIN JENKINS                    :
3012 West Knolls                  :
Cincinnati, Ohio 45211            :
                    Plaintiff     :
                                  :
vs.                               :
                                  :
HAMILTON COUNTY  BOARD            :
OF COUNTY COMMISSIONERS           :
C/O HAMILTON COUNTY               :
PROSECUTOR                        :
138 East Court Street             :
Cincinnati, Ohio 45202            :
                                  :
                                  :
and                               :
                                  :
CITY OF CINCINNATI                :
C/O Rita McNeil                   :
City Solicitor                    :
214 City Hall                     :
801 Plum St.                      :
Cincinnati, Ohio 45202            :
                                  :
                                  :
and                               :
                                  :
METROPOLITAN SEWER                :
DISTRICT OF GREATER               :
CINCINNATI                        :
C/O Rita McNeil                   :
City Solicitor                    :
214 City Hall                     :
801 Plum St.                      :
Cincinnati, Ohio 45202,           :
                                  :
and                               :

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

OCT 16 2006

GREGORY HARTMANN
COMMON PLEAS COURTS

Case No. A 0 6 0 8 9 7 0

COMPLAINT

METROPOLITAN SEWER                  :
DISTRICT OF GREATER                 :
CINCINNATI                          :
C/O HAMILTON COUNTY                 :
PROSECUTOR                          :
230 E. 9th St.           :
Suite 4000                          :
Cincinnati, Ohio 45202              :
                                    :
and                                 :
                                    :
John and Jane Does                  :
Employees 1-50 of the City of       :
Cincinnati and/or Hamilton County:
and/or Metropolitan Sewer District of :
Greater Cincinnati                  :
Defendants                          :
Names and addresses unknown         :
                        Defendants  :

Now comes the Plaintiff, by and through counsel, and for his Complaint states as follows:

## PARTIES

1.  The Plaintiff, Kelvin Jenkins, is the owner of real estate located at 3012 West
    Knolls, Cincinnati, Ohio 45211.

2.  The Defendant, Hamilton County Board of County Commissioners
    [hereinafter referred to as **'County']** is a political subdivisions organized
    pursuant to the laws of the State of Ohio.

3.  The Defendant, City of Cincinnati [hereinafter referred to as **'City']** is a
    municipal corporation organized pursuant to the laws of the State of Ohio and
    was the administrator of the Water in Basement program through the
    Metropolitan Sewer District.

4.  The Defendant, Metropolitan Sewer District [hereinafter referred to as
    **'MSD']** of Greater Cincinnati is a County Sewer District which is
    administered, managed and operated by the Defendant City of Cincinnati
    pursuant to a contract between the City and County Defendants for the benefit

2

of the residents of Hamilton County and as such is either a Political Subdivision of the State of Ohio or is a "District" of the Defendant County.

5.    At all times relevant to this matter the Defendants John & Jane Doe Employees 1-50 of the Defendants County, City and MSD, were employees of said Defendants and involved in the maintenance, operation and management of the Sewer system for the residents of Hamilton County, Ohio

## FACTS

6.    The allegations contained in paragraphs 1 through 5 are incorporated herein as if fully rewritten.

7.    On or about June 9, 2004, as a result of the requirements of the 'Clean Water Act' the United States of America, State of Ohio, The Ohio Valley Sanitation Commission along with the City and the County entered into a Consent Decree in the United States District Court for the Southern District of Ohio whereby the City and County agreed to, inter-alia, institute a program called the Water in Basement program [hereinafter referred to as **'WIB'**] to compensate residents for damages to their property caused by sewer back-ups/surcharges [hereinafter referred to as **'back-ups'**].

8.    By entering into the above-mentioned consent decree the Defendants have waived any claims to sovereign immunity as to claims submitted pursuant to the WIB program.

9.    The express terms of the Consent Decree require the Defendant to allow the WIB claimants to pursue their remedy in State Court subject only to the damage limitation contained in the provisions of **R.C. §2744.05.**

10.    On or about October 18, 2004, the sewer system operated by the Defendants backed up into the basement of the Plaintiff causing severe property damage to the finished basement at the Plaintiff's residence and to personal property of the Plaintiff which has rendered the basement uninhabitable and destroyed the personal property.

11.    The sewer back-up was the type of event contemplated by the Consent Decree and subject to the recovery of damages pursuant to the WIB program.

3

12.  In an attempt to repair the back up problem with the sewer system the Defendants erected sewer pumps on the property of the Plaintiff in a manner which severely diminishing the value of the Plaintiff's property.

13.  The Defendant's were negligent and/or reckless and/or willful or wanton in their failure to properly care and maintain their sewer system which was the proximate cause of the damages to the Plaintiff's property.

14.  The Defendants accepted full responsibility for said back-up and the subsequent damages and requested that the Plaintiff submit a claim for damages through the **WIB** program which was set up pursuant to the above-mentioned Consent Decree.

15.  The Plaintiff complied with all of the requirements of the WIB program and retained the services of Able Services restoration, Inc. [hereinafter referred to as 'Able'] to repair the damages to his property.

16.  The Plaintiff submitted a repair estimate from Able to the Defendants in the amount of **$28,921.53**.

17.  In his claim, the Plaintiff also requested damages for the destruction of several items of furniture in the amount of **$2,500.00**.

18.  The erection of sewer pumps in the Plaintiff's front yard diminished the value of the Plaintiff's property in an amount in excess of **$4,000.00**. Plaintiff provided the Defendants with an appraisal estimate to support this loss.

19.  The value of the Plaintiff's loss of use of his basement has exceeded **$5,000.00**.

20.  Therefore on March 6, 2006 in compliance with the WIB program, the Plaintiff submitted a claim to the City in the amount of **$45,000.00** pursuant to its responsibility as administrators of the WIB program.

21.  The City refused to pay the amount of the claim and instead sought to pay a much smaller amount which would not cover the damages incurred by the Plaintiff to repair his property and    recover its value.

## COUNT ONE

22.  Paragraphs one through twenty-one are hereby incorporated herein as if fully rewritten.

4

23.    The Defendants have wrongfully refused to compensate Plaintiff for
reasonable damages incurred as a result of the back-up.

**WHEREFORE**, the Plaintiffs pray for judgment against the Defendants, jointly and/or
severally as follows:

1.    **Compensatory damages in an amount in excess of $45,000.00;**

2.    **Punitive or exemplary damages, costs, expenses, attorney fees and/or
lost wages in an amount determined at trial;**

3.    **Any and all relief the Court deems just and equitable.**

Respectfully submitted,

**HARMON, DAVIS & ASSOCIATES**

**Arthur W. Harmon, Jr. (#0022221)**
**Trial Attorney for Plaintiff**
1200 Cypress Street
Cincinnati, Ohio 45206
Telephone: 513-241-1991
Facsimile: 513-333-4768
Email: hda@cinci.rr.com
*Attorney for Plaintiffs*

5



**Able Services Restoration, Inc.**

4104 Harrison Ave.
Cincinnati, OH 45211
(513)481-1583    513 481-1588(fax)
e-mail: ableservices@yahoo.com
Website  www.ableservices.com

### 050275-CINTI-SCOPE

| | | | |
|---|---|---|---|
| Room: BASEMENT | | | LxWxH 25'6" x 13'6" x 8'0" |
| Subroom 1: Offset | | | LxWxH 15'6" x 10'0" x 8'0" |
| Subroom 2: Offset | | | LxWxH 7'6" x 3'0" x 8'0" |
| 1,200.00  SF Walls | 521.75  SF Ceiling | | 1,721.75  SF Walls & Ceiling |
| 521.75  SF Floor | 57.97  SY Flooring | | 150.00  LF Floor Perimeter |
| 388.00  SF Long Wall | 212.00  SF Short Wall | | 150.00  LF Ceil. Perimeter |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| STRUCTURAL | | | | |
| 1. Clean floor | 521.75 SF | 0.00 | 0.25 | 130.44 |
| 2. R&R Vinyl tile | 556.00 SF | 0.61 | 2.83 | 1,912.64 |
| 3. Floor preparation for sheet goods | 521.75 SF | 0.00 | 0.55 | 286.96 |
| 4. R&R Paneling | 1,200.00 SF | 0.19 | 2.35 | 3,048.00 |
| 5. R&R Baseboard - 2 1/4" | 150.00 LF | 0.19 | 2.01 | 330.00 |
| 6. Seal & paint baseboard | 150.00 LF | 0.00 | 0.92 | 138.00 |
| 7. Disinfect affected wall/ceiling framing | 1,200.00 SF | 0.00 | 0.20 | 240.00 |
| 8. Seal stud wall for odor control | 1,200.00 SF | 0.00 | 0.70 | 840.00 |
| 9. Content manipulation charge - per hour | 16.00 HR | 0.00 | 26.76 | 428.16 |
| 10. Stain & finish trim | 210.00 LF | 0.00 | 0.82 | 172.20 |
| 11. Seal & paint trim | 150.00 LF | 0.00 | 0.56 | 84.00 |
| 12. Detach & Reset Heat/AC register | 2.00 EA | 0.00 | 0.00 | 10.90 |
| 13  Clean register - heat / AC | 2.00 EA | 0.00 | 3.08 | 6.16 |
| 14. Panel trim( around bulkheads, and inside and outside corners) | 1.00 EA | 0.00 | 420.00 | 420.00 |
| 15. Stain & finish trim | 320.00 LF | 0.00 | 0.82 | 262.40 |
| 16. R&R Interior door unit | 2.00 EA | 13.37 | 148.66 | 323.96 |



**Able Services Restoration, Inc.**
4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583    513-481-1588(fax)
e-mail: ableservices@yahoo.com
Website: www.ableservices.com

### CONTINUED - BASEMENT

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 17. Stain & finish door slab only (per side) | 4.00 EA | 0.00 | 22.86 | 91.44 |
| 18. Clean door / window opening (per side) | 4.00 EA | 0.00 | 6.09 | 24.36 |
| 19. Paint door or window opening (per side) | 4.00 EA | 0.00 | 12.37 | 49.48 |
| 20. Detach & Reset Handrail - wall mounted | 12.00 LF | 0.00 | 0.00 | 48.96 |
| 21. Stain & finish handrail - wall mounted | 12.00 LF | 0.00 | 0.85 | 10.20 |
| 22. Frame around electric service box and alarm system | 1.00 EA | 0.00 | 175.00 | 175.00 |
| 23. Contents - move out then reset - Extra large room | 1.00 EA | 0.00 | 101.06 | 101.06 |
| 24. R&R Batt insulation - 10" - R30 | 1,200.00 SF | 0.25 | 0.87 | 1,344.00 |
| 25. R&R Cabinetry - lower (base) units | 13.50 LF | 6.81 | 112.45 | 1,610.02 |
| 26. Detach & Reset Light fixture-Wall Lights | 3.00 EA | 0.00 | 0.00 | 74.16 |
| 27. Clean light fixture | 3.00 EA | 0.00 | 4.97 | 14.91 |
| 28. Clean Hard Furn | 16.00 HR | 0.00 | 28.50 | 456.00 |
| 29. Clean Misc Contents | 12.00 HR | 0.00 | 28.50 | 342.00 |

Structural Totals.                                                                                                12,975.41

Room Totals: BASEMENT                                                                                   12,975.41

 **Able Services Restoration, Inc.**
4104 Harrison Ave
Cincinnati, OH 45211
(513)481-1583     513 481-1588(fax)
e-mail: ableservices@yahoo.com
Website: www.ableservices.com

**Room: BATHROOM**                                                                                   **LxWxH 7'6" x 6'6" x 8'0"**

| | | | | | |
|---|---|---|---|---|---|
| 224.00 | SF Walls | 48.75 | SF Ceiling | 272.75 | SF Walls & Ceiling |
| 48.75 | SF Floor | 5.42 | SY Flooring | 28.00 | LF Floor Perimeter |
| 60.00 | SF Long Wall | 52.00 | SF Short Wall | 28.00 | LF Ceil. Perimeter |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| STRUCTURAL | | | | |
| 30. Disinfect affected wall/ceiling framing | 1.00 EA | 0.00 | 75.00 | 75.00 |
| 31. R&R 1/2" drywall - hung, taped, floated, ready for paint | 112.00 SF | 0.24 | 1.10 | 150.08 |
| 32. Seal then paint the walls (2 coats) | 224.00 SF | 0.00 | 0.50 | 112.00 |
| 33. Sink - single - Detach & reset | 1.00 EA | 0.00 | 55.95 | 55.95 |
| 34. Toilet - Detach & reset | 1.00 EA | 0.00 | 92.72 | 92.72 |
| 35. R&R Toilet seat | 1.00 EA | 3.03 | 23.03 | 26.06 |
| 36. Remove Vinyl tile | 48.75 SF | 0.61 | 0.00 | 29.74 |
| 37. Vinyl tile | 56.00 SF | 0.00 | 2.83 | 158.48 |
| 38. R&R Baseboard - 2 1/4" | 28.00 LF | 0.19 | 2.01 | 61.60 |
| 39. Seal & paint baseboard | 28.00 LF | 0.00 | 0.92 | 25.76 |
| 40. Detach & Reset Interior door unit | 1.00 EA | 0.00 | 0.00 | 42.45 |
| 41. Clean door (per side) | 2.00 EA | 0.00 | 3.43 | 6.86 |
| 42. Paint door slab only (per side) | 2.00 EA | 0.00 | 16.32 | 32.64 |
| 43. R&R Casing | 1.00 EA | 2.99 | 28.04 | 31.03 |
| 44. Paint door or window opening (per side) | 1.00 EA | 0.00 | 12.37 | 12.37 |
| 45. Floor preparation for sheet goods | 48.75 SF | 0.00 | 0.55 | 26.81 |

Structural Totals:                                                                                   939.55



**Able Services Restoration, Inc.**
4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583    513-481-1588(fax)
e-mail: ableservices@yahoo.com
Website: www.ableservices.com

## CONTINUED - BATHROOM

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| Room Totals: BATHROOM | | | | 939.55 |

**Room: UTILITY ROOM**   LxWxH 7'0" x 7'0" x 8'0"
**Subroom 1: Offset**   LxWxH 14'6" x 7'0" x 8'0"

| | | | | |
|---|---|---|---|---|
| 568.00 | SF Walls | 150.50 | SF Ceiling | 718.50   SF Walls & Ceiling |
| 150.50 | SF Floor | 16.72 | SY Flooring | 71.00   LF Floor Perimeter |
| 172.00 | SF Long Wall | 112.00 | SF Short Wall | 71.00   LF Ceil. Perimeter |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| STRUCTURAL | | | | |
| 46. R&R Paneling | 96.00 SF | 0.19 | 2.35 | 243.84 |
| 47. Disinfect affected wall/ceiling framing | 1.00 EA | 0.00 | 75.00 | 75.00 |
| 48. Clean floor | 150.50 SF | 0.00 | 0.25 | 37.63 |
| 49. Paint door slab only - full louvered (per side) | 4.00 EA | 0.00 | 24.99 | 99.96 |
| 50. Seal then paint the walls (2 coats) | 568.00 SF | 0.00 | 0.50 | 284.00 |
| 51. Extra fee to paint around obstacles ( pipes, vents etc) | 568.00 SF | 0.00 | 0.35 | 198.80 |
| 52. Washing machine - Remove & reset | 1.00 EA | 0.00 | 20.10 | 20.10 |
| 53. Dryer - Remove & reset | 1.00 EA | 0.00 | 18.10 | 18.10 |
| 54. Clean furnace - forced air | 1.00 EA | 0.00 | 24.76 | 24.76 |
| 55. Clean water heater | 1.00 EA | 0.00 | 11.09 | 11.09 |



**Able Services Restoration, Inc.**
4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583    513 481-1588(fax)
e-mail- ableservices@yahoo.com
Website: www.ableservices.com

CONTINUED - UTILITY ROOM

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 56. Contents - move out then reset | 1.00 EA | 0.00 | 33.69 | 33.69 |
| Structural Totals: | | | | 1,046.97 |
| **Room Totals: UTILITY ROOM** | | | | **1,046.97** |

**Room: GARAGE**                                                 LxWxH  29'0" x 12'0" x 8'0"

| | | | | | | |
|---|---|---|---|---|---|---|
| 656.00 | SF Walls | 348.00 | SF Ceiling | 1,004.00 | SF Walls & Ceiling | |
| 348.00 | SF Floor | 38.67 | SY Flooring | 82.00 | LF Floor Perimeter | |
| 232.00 | SF Long Wall | 96.00 | SF Short Wall | 82.00 | LF Ceil. Perimeter | |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| STRUCTURAL | | | | |
| 57. Clean floor | 348.00 SF | 0.00 | 0.19 | 66.12 |
| 58. Disinfect affected wall/flooring and misc contents | 543.37 SF | 0.00 | 0.10 | 54.34 |
| Structural Totals: | | | | 120.46 |
| Room Totals: GARAGE | | | | 120.46 |

**Room: General & Misc.**

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| STRUCTURAL | | | | |
| 59. Dumpster load - Extra large | 1.00 EA | 471.82 | 0.00 | 471.82 |
| 60. Portable storage unit - rental | 2.00 MO | 0.00 | 175.00 | 350.00 |



**Able Services Restoration, Inc.**

4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583    513-481-1588(fax)
e-mail: ableservices@yahoo.com
Website: www.ableservices.com

CONTINUED - General & Misc.

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 61. Portable storage unit - delivery & pickup | 1.00 EA | 0.00 | 235.00 | 235.00 |
| Structural Totals: | | | | 1,056.82 |
| **Room Totals: General & Misc.** | | | | **1,056.82** |
| **AREA Structural Totals:** | | | | **16,139.21** |
| **Line Item Subtotals:**<br>**050275-CINTI-SCOPE** | | | | **16,139.21** |



**Able Services Restoration, Inc.**

4104 Harrison Ave.
Cincinnati, OH 45211
(513)481-1583    513-481-1588(fax)
e-mail: ableservices@yahoo.com
Website: www.ableservices.com

| Adjustments for Base Service Charges | Adjustment |
|---|---|
| Carpenter - Finish, Trim/Cabinet | 68.24 |
| Cleaning Technician | 33.68 |
| Drywall Installer/Finisher | 127.51 |
| Electrician | 75.02 |
| Flooring Installer | 69.24 |
| Heating / A.C. Mechanic | 90.41 |
| Insulation Installer | 71.78 |
| Plumber | 75.27 |
| Painter / Wallpaperer | 46.37 |
| | |
| Total Adjustments for Base Service Charges: | 657.52 |
| **Line Item Totals:** | **16,796.73** |
| **050275-CINTI-SCOPE** | |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 2,648.00 | SF Walls | 1,069.00 | SF Ceiling | 3,717.00 | SF Walls & Ceiling |
| 1,069.00 | SF Floor | 118.78 | SY Flooring | 331.00 | LF Floor Perimeter |
| 832.00 | SF Long Wall | 472.00 | SF Short Wall | 331.00 | LF Ceil. Perimeter |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 0.00 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | 0.00 | Area of Face 1 |



**Able Services Restoration, Inc.**

4104 Harrison Ave
Cincinnati, OH 45211
(513)481-1583    513-481-1588(fax)
e-mail: ableservices@yahoo.com
Website: www.ableservices.com

## Summary

| | | | | | |
|---|---|---|---|---|---|
| Structural Items | | | | | 16,139.21 |
| Line Item Total | | | | | 16,139.21 |
| Total Adjustments for Base Service Charges | | | | | 657.52 |
| Subtotal | | | | | 16,796.73 |
| Overhead | @ | 10.0% | x | 16,796.73 | 1,679.67 |
| Profit | @ | 10.0% | x | 16,796.73 | 1,679.67 |
| **Grand Total** | | | | | **20,156.07** |

Bob Goshorn



**ABLE SERVICES**
FIRE & WATER *Restoration* WIND & SMOKE

| | | | | |
|---|---|---|---|---|
| Client: | Jenkins, Kelvin | | Home: | (513) 661-4599 |
| | | | Cellular: | (513) 293-2682 |
| Property: | 3012 Westknolls Lane | | | |
| | Cinti., OH 45211 | | | |
| Estimator: | Bob Goshorn | | Business: | (513) 481-1583 |
| Business: | 4104 Harrison Ave. | | | |
| | Cincinnati, OH 45211 | | | |
| Company: | City Solicitor City of Cincinnati | | Business: | (513) 771-5246 |
| Business: | 801 Plum St. Room 214 | | | |
| | Cincinnati, OH 45202 | | | |
| Type of Estimate: | Water Damage | | | |
| Dates: | | | | |
| Date Est. Completed: | 05/17/05 | | | |
| Estimate: | 050275-5/4-B | | | |
| File Number: | 050275-5/4 | | | |

**Claim Number 20042350**



**Able Services Restoration, Inc.**

4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583    513-481-1588(fax)
e-mail- ableservices@yahoo.com
Website: www.ableservices.com

## 050275-5/4-B

| | | |
|---|---|---|
| **Room: BASEMENT** | | **LxWxH 25'6" x 13'6" x 8'0"** |
| **Subroom 1: Offset** | | **LxWxH 15'6" x 10'0" x 8'0"** |
| **Subroom 2: Offset** | | **LxWxH 7'6" x 3'0" x 8'0"** |
| 1,200.00  SF Walls | 521.75  SF Ceiling | 1,721.75  SF Walls & Ceiling |
| 521.75  SF Floor | 57.97  SY Flooring | 150.00  LF Floor Perimeter |
| 388.00  SF Long Wall | 212.00  SF Short Wall | 150.00  LF Ceil. Perimeter |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 1.  Clean floor | 521.75 SF | 0.00 | 0.25 | 130.44 |
| 2.  Clean Hard Furniture | 12.00 HR | 0.00 | 28.50 | 342.00 |
| 3.  Clean Miscellaneous Contents | 24.00 HR | 0.00 | 28.50 | 684.00 |
| 4.  R&R Vinyl tile | 556.00 SF | 0.61 | 2.83 | 1,912.64 |
| 5.  Floor preparation for sheet goods | 521.75 SF | 0.00 | 0.55 | 286.96 |
| 6.  R&R Paneling | 1,200.00 SF | 0.19 | 2.35 | 3,048.00 |
| 7.  R&R Baseboard - 2 1/4" | 150.00 LF | 0.19 | 2.01 | 330.00 |
| 8.  Seal & paint baseboard | 150.00 LF | 0.00 | 0.92 | 138.00 |
| 9.  Remove Acoustic ceiling tile | 521.75 SF | 0.35 | 0.00 | 182.61 |
| 10.  Acoustic ceiling tile | 556.00 SF | 0.00 | 2.75 | 1,529.00 |
| 11.  Disinfect affected wall/ceiling framing | 1,200.00 SF | 0.00 | 0.20 | 240.00 |
| 12.  Seal stud wall for odor control | 1,200.00 SF | 0.00 | 0.70 | 840.00 |
| 13.  Content manipulation charge - per hour | 16.00 HR | 0.00 | 26.76 | 428.16 |
| 14.  Portable storage unit - rental | 2.00 MO | 0.00 | 175.00 | 350.00 |
| 15.  Portable storage unit - delivery & pickup | 1.00 EA | 0.00 | 235.00 | 235.00 |
| 16.  Ceiling trim | 150.00 LF | 0.00 | 2.10 | 315.00 |
| 17.  Stain & finish trim | 210.00 LF | 0.00 | 0.82 | 172.20 |
| 18.  Seal & paint trim | 150.00 LF | 0.00 | 0.56 | 84.00 |
| 19.  Detach & Reset Light fixture | 6.00 EA | 0.00 | 0.00 | 148.32 |
| 20.  Clean recessed light fixture | 6.00 EA | 0.00 | 4.98 | 29.88 |
| 21.  Detach & Reset Heat/AC register | 2.00 EA | 0.00 | 0.00 | 10.90 |
| 22.  Clean register - heat / AC | 2.00 EA | 0.00 | 3.08 | 6.16 |
| 23.  Panel trim( around bulkheads, and inside and outside corners) | 1.00 EA | 0.00 | 420.00 | 420.00 |
| 24.  Stain & finish trim | 320.00 LF | 0.00 | 0.82 | 262.40 |
| 25.  R&R Interior door unit | 2.00 EA | 13.32 | 148.66 | 323.96 |
| 26.  R&R Door lockset - interior | 2.00 EA | 3.21 | 42.31 | 91.04 |
| 27.  Stain & finish door slab only (per side) | 4.00 EA | 0.00 | 22.86 | 91.44 |
| 28.  Clean door / window opening (per side) | 4.00 EA | 0.00 | 6.09 | 24.36 |



**Able Services Resto. .on, Inc.**

4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583   513-481-1588(fax)
e-mail- ableservices@yahoo.com
Website: www.ableservices.com

## CONTINUED - BASEMENT

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 29. Paint door or window opening (per side) | 4.00 EA | 0.00 | 12.37 | 49.48 |
| 30. Detach & Reset Handrail - wall mounted | 12.00 LF | 0.00 | 0.00 | 48.96 |
| 31. Stain & finish handrail - wall mounted | 12.00 LF | 0.00 | 0.85 | 10.20 |
| 32. Frame around electric service box and alarm system | 1.00 EA | 0.00 | 175.00 | 175.00 |
| 33. Install access panel(s) to alarm and electric systems | 1.00 EA | 0.00 | 135.00 | 135.00 |
| 34. PERMITS AND FEES-Special for circumstances | 1.00 EA | 0.00 | 350.00 | 350.00 |
| 35. Contents - move out then reset - Extra large room | 1.00 EA | 0.00 | 101.06 | 101.06 |
| 36. R&R Batt insulation - 10" - R30 | 1,200.00 SF | 0.25 | 0.87 | 1,344.00 |
| 37. Clean Sofa | 1.00 EA | 0.00 | 95.00 | 95.00 |
| 38. R&R Cabinetry - lower (base) units | 13.50 LF | 6.81 | 112.45 | 1,610.02 |
| 39. R&R Countertop - post formed plastic laminate | 13.50 LF | 1.84 | 33.05 | 471.02 |
| 40. Detach & Reset Light fixture-Wall Lights | 3.00 EA | 0.00 | 0.00 | 74.16 |
| 41. Clean light fixture | 3.00 EA | 0.00 | 4.97 | 14.91 |
| 42. Clean Hard Furn | 16.00 HR | 0.00 | 28.50 | 456.00 |
| 43. Clean Misc Contents | 12.00 HR | 0.00 | 28.50 | 342.00 |

Room Totals: BASEMENT                                                     17,933.28

**Room: BATHROOM**                                              LxWxH  7'6" x 6'6" x 8'0"

|   | 224.00 SF Walls | 48.75 SF Ceiling | 272.75 SF Walls & Ceiling |
|---|---|---|---|
|   | 48.75 SF Floor | 5.42 SY Flooring | 28.00 LF Floor Perimeter |
|   | 60.00 SF Long Wall | 52.00 SF Short Wall | 28.00 LF Ceil. Perimeter |

| DESCRIPTION | QNT | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 44. Disinfect affected wall/ceiling framing | 1.00 EA | 0.00 | 75.00 | 75.00 |



**Able Services Resto...ion, Inc.**

4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583    513-481-1588(fax)
e-mail- ableservices@yahoo.com
Website: www.ableservices.com

## CONTINUED - BATHROOM

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 45. R&R 1/2" drywall - hung, taped, floated, ready for paint | 112.00 SF | 0.24 | 1.10 | 150.08 |
| 46. Seal then paint the walls (2 coats) | 224.00 SF | 0.00 | 0.50 | 112.00 |
| 47. Sink - single - Detach & reset | 1.00 EA | 0.00 | 55.95 | 55.95 |
| 48. Clean sink | 1.00 EA | 0.00 | 6.09 | 6.09 |
| 49. Toilet - Detach & reset | 1.00 EA | 0.00 | 92.72 | 92.72 |
| 50. Clean toilet | 1.00 EA | 0.00 | 10.21 | 10.21 |
| 51. R&R Toilet seat | 1.00 EA | 3.03 | 23.03 | 26.06 |
| 52. Remove Vinyl tile | 48.75 SF | 0.61 | 0.00 | 29.74 |
| 53. Vinyl tile | 56.00 SF | 0.00 | 2.83 | 158.48 |
| 54. R&R Baseboard - 2 1/4" | 28.00 LF | 0.19 | 2.01 | 61.60 |
| 55. Seal & paint baseboard | 28.00 LF | 0.00 | 0.92 | 25.76 |
| 56. Detach & Reset Interior door unit | 1.00 EA | 0.00 | 0.00 | 42.45 |
| 57. Clean door (per side) | 2.00 EA | 0.00 | 3.43 | 6.86 |
| 58. Paint door slab only (per side) | 2.00 EA | 0.00 | 16.32 | 32.64 |
| 59. R&R Casing | 1.00 EA | 2.99 | 28.04 | 31.03 |
| 60. Paint door or window opening (per side) | 1.00 EA | 0.00 | 12.37 | 12.37 |
| 61. Floor preparation for sheet goods | 48.75 SF | 0.00 | 0.55 | 26.81 |

Room Totals: BATHROOM                                                                                          955.85

---

**Room: UTILITY ROOM**                                         LxWxH  7'0" x 7'0" x 8'0"
**Subroom 1: Offset**                                          LxWxH  14'6" x 7'0" x 8'0"

| | | | |
|---|---|---|---|
| 568.00  SF Walls | 150.50  SF Ceiling | 718.50  SF Walls & Ceiling | |
| 150.50  SF Floor | 16.72  SY Flooring | 71.00  LF Floor Perimeter | |
| 172.00  SF Long Wall | 112.00  SF Short Wall | 71.00  LF Ceil. Perimeter | |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 62. R&R Paneling | 96.00 SF | 0.19 | 2.35 | 243.84 |
| 63. Disinfect affected wall/ceiling framing | 1.00 EA | 0.00 | 75.00 | 75.00 |
| 64. Clean floor | 150.50 SF | 0.00 | 0.25 | 37.63 |



**Able Services Resto...aon, Inc.**

4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583    513-481-1588(fax)
e-mail- ableservices@yahoo.com
Website: www.ableservices.com

### CONTINUED - UTILITY ROOM

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 65. Paint door slab only - full louvered (per side) | 4.00 EA | 0.00 | 24.99 | 99.96 |
| 66. Seal then paint the walls (2 coats) | 568.00 SF | 0.00 | 0.50 | 284.00 |
| 67. Extra fee to paint around obstacles ( pipes, vents etc) | 568.00 SF | 0.00 | 0.35 | 198.80 |
| 68. Clean miscellaneous contents | 6.00 HR | 0.00 | 28.50 | 171.00 |
| 69. Clean washing machine | 1.00 EA | 0.00 | 18.59 | 18.59 |
| 70. Washing machine - Remove & reset | 1.00 EA | 0.00 | 20.10 | 20.10 |
| 71. Dryer - Remove & reset | 1.00 EA | 0.00 | 18.10 | 18.10 |
| 72. Clean Clothes dryer | 1.00 EA | 0.00 | 19.29 | 19.29 |
| 73. Clean furnace - forced air | 1.00 EA | 0.00 | 24.76 | 24.76 |
| 74. Clean water heater | 1.00 EA | 0.00 | 11.09 | 11.09 |
| 75. Contents - move out then reset | 1.00 EA | 0.00 | 33.69 | 33.69 |

Room Totals: UTILITY ROOM                                                1,255.85

**Room: GARAGE**                                          **LxWxH  29'0" x 12'0" x 8'0"**

| 656.00  SF Walls | 348.00  SF Ceiling | 1,004.00  SF Walls & Ceiling |
| 348.00  SF Floor | 38.67  SY Flooring | 82.00  LF Floor Perimeter |
| 232.00  SF Long Wall | 96.00  SF Short Wall | 82.00  LF Ceil. Perimeter |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 76. Clean floor | 348.00 SF | 0.00 | 0.19 | 66.12 |
| 77. Disinfect affected wall/flooring and misc contents | 543.37 SF | 0.00 | 0.10 | 54.34 |
| 78. Clean Misc Contents | 24.00 HR | 0.00 | 28.50 | 684.00 |

Room Totals: GARAGE                                                       804.46



### Able Services Restoration, Inc.

4104 Harrison Ave.
Cincinnati, OH 45211
(513)481-1583    513-481-1588(fax)
e-mail- ableservices@yahoo.com
Website: www.ableservices.com

### Room: General & Misc.

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 79. Dumpster load - Extra large | 1.00 EA | 471.82 | 0.00 | 471.82 |
| 80. Content manipulation charge - per hour | 12.00 HR | 0.00 | 26.76 | 321.12 |
| 81. Portable storage unit - rental | 2.00 MO | 0.00 | 175.00 | 350.00 |
| 82. Portable storage unit - delivery & pickup | 1.00 EA | 0.00 | 235.00 | 235.00 |

| Room Totals: General & Misc. | 1,377.94 |
|---|---|

| Line Item Subtotals:  050275-5/4-B | 22,327.38 |
|---|---|

| **Adjustments for Base Service Charges** | Adjustment |
|---|---|
| Carpenter - Finish, Trim/Cabinet | 68.24 |
| Cleaning Technician | 33.68 |
| Drywall Installer/Finisher | 127.51 |
| Electrician | 75.02 |
| Flooring Installer | 69.24 |
| Heating / A.C. Mechanic | 90.41 |
| Insulation Installer | 71.78 |
| Plumber | 75.27 |
| Painter / Wallpaperer | 46.37 |

| Total Adjustments for Base Service Charges: | 657.52 |
|---|---|

| **Line Item Totals: 050275-5/4-B** | **22,984.90** |
|---|---|



**Able Services Restoration, Inc.**

4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583    513-481-1588(fax)
e-mail- ableservices@yahoo.com
Website: www.ableservices.com

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 2,648.00 | SF Walls | 1,069.00 | SF Ceiling | 3,717.00 | SF Walls & Ceiling |
| 1,069.00 | SF Floor | 118.78 | SY Flooring | 331.00 | LF Floor Perimeter |
| 852.00 | SF Long Wall | 472.00 | SF Short Wall | 331.00 | LF Ceil. Perimeter |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 0.00 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | 0.00 | Area of Face 1 |



### Able Services Resto....ion, Inc.

4104 Harrison Ave.
Cincinnati, OH. 45211
(513)481-1583    513-481-1588(fax)
e-mail- ableservices@yahoo.com
Website: www.ableservices.com

## Summary

| | | | | |
|---|---|---|---|---|
| Line Item Total | | | | 22,327.38 |
| Total Adjustments for Base Service Charges | | | | 657.52 |
| | | | | |
| Subtotal | | | | 22,984.90 |
| Overhead | @ | 10.0% x | 22,984.90 | 2,298.49 |
| Profit | @ | 10.0% x | 22,984.90 | 2,298.49 |
| | | | | |
| **Grand Total** | | | | **27,581.88** |

Bob Goshorn

# WC WARE CONSTRUCTION CO..IPANY, INC.

1823 HIGHLAND AVENUE · CINCINNATI, OHIO 45202 · (513) 651-9221

MARK A. WARE
*Owner*

## CONTRACT

This agreement is made as of June 22, 2005 between the owner, Kelvin Jenkins, who resides at 3012 West Knolls Lane and the contractor, Ware Construction Company for repairs to property legally owned by the owner located at the same address.

The Owner and Contractor agree the contractor shall execute the work as described in the job specifications that are attached and become part of this contract as if fully rewritten here.

Owner and Contractor agree the work shall begin approximately 10-30 days from the date a signed contract is received and shall be substantially complete approximately 10 working days from the date of commencement. This completion schedule is contingent upon delays caused by weather, local authorities, unavailability of materials or any other unforeseen event outside the control of the contractor.

The Owner shall pay the Contractor for the contractor's performance of the contract the sum of $26,759.74 subject to additions and deletions that may arise subsequent to the date of this contract. Any such additions and deletions will be documented by the contractor on a "change order form", the price to be agreed upon between both parties, and all other terms remain the same as this contract.

This contract may be withdrawn by the Contractor at any time prior to the start of work. The Owner may cancel this contract within three full business days plus the remaining portion of the date this contract is accepted by providing written notice to the Contractor within this time period.

Contractor will mail an invoice upon substantial completion of work. Final payment shall be due within ten days of the date on said invoice and shall be made by the owner. This contract is binding upon the owner for the full sum of the amount of repairs not withstanding any insurance policy deductible that the owner may have under the applicable insurance policy.

## GENERAL CONDITIONS

1. Ware Construction Company will complete the work as specified in this document. Any additions, deletions or modifications to the specified work must be documented in writing and accomplished by agreement between the Owner and Ware Construction Co.

2. Workers are covered under Ohio State Worker's Compensation.

3. All personnel are covered under liability and property damage insurance in the amount of $1,000,000.00 per occurrence and $2,000,000.00 aggregate. Personal injury insurance in the amount of $1,000,000.00 provided and $5,000,000.00 umbrella coverage.

4. All work is guaranteed for 1 year from the completion date. This guarantee covers material and labor for that period. Owner agrees to notify Ware Construction Co. of the faulty repair items immediately upon discovering them and agrees to allow Ware Construction to complete corrective repairs.

5. Materials used in the repairs will be of quality equal to or better that materials existing in the structure, provided Owner's insurance company agrees to pay for materials of like kind and quality. Ware Construction will provide applicable material allowances where needed. Materials requiring the owner's selection will be chosen from samples supplied by Ware Construction unless otherwise agreed.

6. Owner shall select paint colors, brands and finishes to be used. All painted areas will be properly prepared before painting. Only quality paints are to be used.

7. Ware Construction Co. shall secure all applicable permits.

8. Ware Construction Co. is not responsible for additional work related to the specified work due to code upgrades mandated by local building authorities.

9. All unused materials and construction debris are the property of Ware Construction Co. and will be removed from the premises.

10. Owner agrees to allow Ware Construction Co. reasonable access to the property for the purpose of completing repairs.

11. Owner agrees to allow Ware Construction Co. use of electric and water necessary to complete the work. The resulting costs are not part of the repair specifications and are the owner's responsibility.

12. Upon completion of repairs, the job site will be left clean.

13. This contract may be withdrawn by Ware Construction Co. at any time prior to the commencement of repairs. This contract may be canceled by the owner within three full business days following the date of the signature on the specifications page of this document by providing written notification of contract cancellation to the address on the letterhead.

14. Subject to the laws of the applicable state, the Contractor may file a mechanics lien against the property if payment is not made under the terms of the contract upon completion of repairs. In the event of a dispute regarding these repairs, the parties agree to submit the matter to an arbitrator to be agreed upon by both parties. The arbitrator's decision shall be binding. If the parties cannot agree upon an arbitrator, the parties may agree to allow the courts to appoint one. If the arbitration procedure cannot be agreed upon, the applicable court of law having jurisdiction shall resolve the dispute.

15. Stated quantities in the job specifications are for estimating purposes only. Actual quantities may vary. The estimate and job specifications are for the purpose of arriving at an agreeable total repair amount for this contract.

16. One third (1/3) of payment is due upon removal of paneling, ceiling tile, floor tile and any other miscellaneous work for preparation of new installations.

17. Final payment is due and payable within ten (10) days from receipt of the final invoice. Interest in the amount of 1½ % per month will be added to any invoice unpaid after ten (10) full days from receipt and every thirty (30) days thereafter.

## SPECIFICATIONS

Other conditions or provisions:

1. Specifications are listed in the repair estimate which is part of this contract.

Job Description: Bill for water damage in basement.

Respectfully submitted

_Merk A. Ware_          Date _6-22-05_

Acceptance: Signing this form indicates that the above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Signature _____          Date _6-22-05_

Signature _____          Date _____

**Room** (Main Room)                l x w x h  25'6" x 13'6" x 8'

**Subroom 1**: Rear Area            l x w x h  15'6" x 10' x 8'

**Subroom 2**: Base of Stairs       l x w x h   7'6" x 3' x 8'

| | | |
|---|---|---|
| 1200 SF walls | 522 SF Ceiling | 1722 SF walls & ceiling |
| 522 SF floor | 58 SY flooring | 150 LF floor perimeter |
| 388 SF long wall | 210 SF short wall | 150 LF ceiling perimeter |

| | DESCRIPTION | QUANTITY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|---|
| 1. | Contents - move out then reset large quantity of items | 1 ea | 102.68 | 102.68 | 102.68 |
| 2. | R & R paneling | 1200 sf | .20 | 2.28 | 2,976.00 |
| 3. | R & R baseboard | 150 lf | .22 | 2.14 | 354.00 |
| 4. | Paint baseboard | 150 lf | .00 | 1.12 | 168.00 |
| 5. | Manipulation charge per hour | 16.00 hr | .00 | 29.00 | 464.00 |
| 6. | R & R acoustic ceiling tile | 522.00 sf | .32 | 2.30 | 1,628.64 |
| 7. | Heat/AC register | 2 ea | .00 | 7.75 | 15.50 |
| 8. | Light fixture - detach & reset | 6 ea | 12.50 | 12.50 | 150.00 |
| 9 | R & R pre-hung door | 2 ea | 12.16 | 150.00 | 324.32 |
| 10. | Clean light fixture | 3 ea | .00 | .00 | 70.00 |
| 11. | Install new door lock set | 2 ea | .00 | 45.00 | 90.00 |
| 12. | Clean floor | 522 sf | .00 | .30 | 150.60 |
| 13. | Remove & replace vinyl tile | 522 sf | .56 | 2.78 | 1,743.48 |
| 14. | Floor preparation for sheet goods | 522 sf | .00 | .50 | 261.00 |
| 15. | Clean miscellaneous contents | 40 hr | .00 | 29.00 | 1,160.00 |
| 16. | Clean solid furniture & sofa | 24 hr | .00 | 29.00 | 696.00 |
| 17. | Clean recessed light fixture | 6 ea | .00 | 5.00 | 30.00 |
| 18. | Disinfect wall & ceiling framing | 1200 sf | .00 | .25 | 300.00 |
| 19. | Prep walls for odor control | 1200 sf | .00 | .68 | 816.00 |
| 20. | Remove ceiling trim | 150 lf | .00 | 3.40 | 510.00 |
| 21. | Install pre-finished trim | 210 lf | 00 | 1.45 | 304.50 |
| 22. | Stain & finish door | 4 ea | 00 | 22.75 | 91.00 |
| 23. | Clean door & windows | 4 ea | 00 | 7.00 | 28.00 |
| 24. | Paint door & window openings | 4 ea | .00 | 12.00 | 48.00 |
| 25. | Frame closet around septic tank alarm and electrical panel | 1 ea | .00 | 350.00 | 350.00 |
| 26. | Install door for closet | 1 ea | .00 | 175.00 | 175.00 |
| 27. | Paint closet door & trim | 1 ea | .00 | 35.00 | 35.00 |
| 28. | Remove and reset handrail | 12 lf | 50.00 | .00 | 50.00 |
| 29. | Clean and stain handrail | 12 lf | .00 | .80 | 15.00 |
| 30. | R & R counter top | 13.50 lf | 1.80 | 3.00 | 510.30 |
| 31. | R & R Base cabinets | 13.50 lf | 7.22 | 115.00 | 1,649.97 |
| 32. | Permit fees | 1 ea | .00 | .00 | 350.00 |
| 33. | R & R Insulation R 13 3-1/2 | 1200 sq | .22 | .85 | 1,284.00 |
| 34. | Detach and reset wall light fixtures | 3 ea | 10.50 | 15.50 | 78.00 |
| 35. | Trim paneling - inside & outside corners | 1 ea | .00 | 460.00 | 460.00 |
| 36. | Clean light fixtures | 3 ea | 4.50 | | 13.50 |

TOTAL    1? '52.49

**Room: Bathroom**  l x w x h  7'8" x 6'x6" x 8'0"

| | | | | |
|---|---|---|---|---|
| 265.00 sf walls | 51.67 sf ceiling 316.67 sf walls & ceiling | | | |
| 51.67 sf floor | 5.74 sy flooring  35.33 lf floor perimeter | | | |
| 110.00 long wall | 75.00 sf short wall  35.23 lf ceiling perimeter | | | |

| | | | | |
|---|---|---|---|---|
| 1. Toilet - Detach & Reset | 1.00 | .00 | 90.56 | 90.56 |
| 2. Single Sink - Detach & Reset | 1.00 | .00 | 55.00 | 55.00 |
| 3. R & R ½ drywall - hung, taped, floated, ready for paint | 110 sf | .24 | 1.20 | 158.40 |
| 4. Disinfect damaged wall - ceiling and framing | 1.00 ea | .00 | 87.00 | 87.00 |
| 5. Prime & paint walls - 2 coats | 220 sf | .00 | .55 | 121.00 |
| 6. Clean sink& toilet | - | .00 | 15.00 | 15.00 |
| 7. R & R toilet seat | - | 3.00 | 25.00 | 28.00 |
| 8. R & R vinyl tile | 51.67 sf | .57 | 2.85 | 176.71 |
| 9. R & R base board | 30.0 lf | .15 | 2.10 | 67.50 |
| 10. Prime & paint base board 2 1/4 | 30.0 lf | .00 | .90 | 27.00 |
| 11. Detach & reset interior & frame | 1.00 ea | .00 | 40.00 | 40.00 |
| 12. Clean & paint door ( per side) | 2.00 ea | .00 | 18.00 | 36.00 |
| 13. R & R casing | 1.00 ea | 2.85 | 28.00 | 30.85 |
| 14. Paint door opening (per side) | 2.00 | | 18.00 | 36.00 |
| 15. Floor preporation for sheet goods | | 51.67 | .50 | 25.84 |

|  |  |
|---|---|
| **TOTAL** | **994.86** |

**Room: Stairway**

| | | | | |
|---|---|---|---|---|
| 1. R & R carpet on steps | 1.0 | 125.00 | 275.00.00 | 400.00 |

|  |  |
|---|---|
| **TOTAL** | **400.00** |

**Room: Laundry & utility room**
**subroom 1:  offset**

7x7 x 7'6"
14'6" x 7 x 7'6"

| | | | |
|---|---|---|---|
| 586.00 sf walls | 150 sf ceiling | 716 sf walls & ceiling | |
| 150.00 sf floor | 16.68 sy flooring | 70 lf floor perimeter | |
| 170.00 sf long wall | 112 sf short wall | 70 lf ceiling perimeter | |

| | | | | |
|---|---|---|---|---|
| 1. R & R washing machine | 1.0 ea | .00 | 20.00 | 20.00 |
| 2. R & R dryer | 1.0 ea | .00 | 18.00 | 18.00 |
| 3. R & R paneling | 96 sf | .20 | 2.28 | 238.08 |
| 4. Disinfect walls & ceiling | 1.0 ea | .00 | 80.00 | 80.00 |
| 5. Clean room & floor | 7.0 hr | .00 | 27.00 | 189.00 |
| 6. Prime & paint walls | 566 sf | .00 | .55 | 311.30 |
| 7. Additional charge for painting around water, sewer pipe, etc. | 566 sf | .00 | .08 | 215.08 |
| 8. Paint full louvered door | 4.00 ea | .00 | 23.78 | 95.12 |
| 9. Clean washing machine | | | 25.00 | 25.00 |
| 10. Clean dryer | | | 23.00 | 23.00 |
| 11. Clean water heater | | 15.00 | | 15.00 |
| 12. Clean furnace | | | 25.00 | 25.00 |

|  |  |
|---|---|
| **TOTAL** | **1254.58** |

| Room: Garage | 656 sf walls | 348 sf ceiling | 108+ | | |
| | 348 sf floor | 38.67 sy flooring | 82 lf floor perimeter | | |
| | 232 sf long wall | 96 sf short wall | 82 lf floor perimeter | | |

| | | | | |
|---|---|---|---|---|
| 1. Clean garage contents | 24.00 hr | .00 | 27.00 | 648.00 |
| 2. Clean floor | 348 sf | .00 | .20 | 69.60 |
| 3. Disinfect wall & floor where necessary | 545 sf | .00 | .14 | 76.30 |
| | | | Totals | 793.90 |

**Room: General & Miscellaneous**

| | | | | |
|---|---|---|---|---|
| 1. Dumpster load - 30 yard | 1.0 ea | 40.00 | .00 | 400.002. |
| 2. Dumpster labor cost | 14.00 | 00 | 27.00 | 378.00 |
| 3. Portable storage unit - rental | 2.0 mo | 00 | 187.25 | 374.50 |
| 4. Portable storage unit delivery & pickup | 1.0 ea | 00 | 251.45 | 251.45 |
| | | | Totals | 1,403.95 |

## Summary

| | | | | |
|---|---|---|---|---|
| Line Item Total | | | | 22,299.78 |
| | | | | |
| Subtotal | | | | 22,229.78 |
| Overhead | @ | 10.0% x | 22,299.78 | 2,229.98 |
| Profit | @ | 10.0% x | 22,299.78 | 2,229.98 |
| **GRAND TOTAL** | | | | **26,759.74** |

**FROM:**

David G. Beard

Real Property Appraisal Company

P.O. Box 29374

Cincinnati, Oh 45229-0383

Telephone Number: 513-861-7762        Fax Number: 513-861-7762

# INVOICE

| INVOICE NUMBER | |
|---|---|
| DATE | 2/20/06 |

**TO:**

ATTORNEY ARTHUR HARMON

ATTORNEY ARTHUR HARMON

CINCINNATI, OH 45206

Telephone Number: 241-1991        Fax Number:

Alternate Number:        E-Mail:

**REFERENCE**

Internal Order #:

Lender Case #:

Client File #:

Main File # on form:

Other File # on form:

Federal Tax ID:    31-134971

Employer ID:

## DESCRIPTION

| | | | |
|---|---|---|---|
| **Lender:** ATTORNEY ARTHUR HARMON | | **Client:** ATTORNEY ARTHUR HARMON | |
| **Purchaser/Borrower:** KELVIN JENKINS | | | |
| **Property Address:** 3012 WESTKNOLLS LANE | | | |
| **City:** CINCINNATI | | | |
| **County:** HAMILTON | | **State:** OH | **Zip:** 45211 |
| **Legal Description:** LOT 78 ORLAND ACS SUBDIVISION BLK C | | | |

## FEES

| | AMOUNT |
|---|---|
| Full Appraisal | 400.00 |
| **SUBTOTAL** | 400.00 |

## PAYMENTS

| | | | AMOUNT |
|---|---|---|---|
| Check #: | Date: 11/5/2006 | Description: PAID IN ADVANCE | 200.00 |
| Check #: | Date: | Description: | |
| Check #: | Date: | Description: | |
| | | **SUBTOTAL** | 200.00 |
| | | **TOTAL DUE** | $    200.00 |

# SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 3012 WESTKNOLLS LANE |
| | Legal Description | LOT 78 ORLAND ACS SUBDIVISION BLK C |
| | City | CINCINNATI |
| | County | HAMILTON |
| | State | OH |
| | Zip Code | 45211 |
| | Census Tract | 88.00 |
| | Map Reference | ENCLOSED |
| **SALES PRICE** | Sale Price | $ N/A |
| | Date of Sale | N/A |
| **CLIENT** | Borrower / Client | KELVIN JENKINS |
| | Lender | ATTORNEY ARTHUR HARMON |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 1,102 |
| | Price per Square Foot | $ |
| | Location | WESTWOOD |
| | Age | 42 YRS. |
| | Condition | AVERAGE |
| | Total Rooms | 6 |
| | Bedrooms | 3 |
| | Baths | 2 |
| **APPRAISER** | Appraiser | DAVID G. BEARD, RA |
| | Date of Appraised Value | 2/10/06 |
| **VALUE** | Final Estimate of Value | $ 93,000 |

Real Property Appraisal Company (513) 661-7762

Case 1:02-cv-00107-SAS   Document 172-2   Filed 04/19/2007   Page 36 of 70

# Uniform Residential Appraisal Report
File #

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 3012 WESTKNOLLS LANE | City CINCINNATI State OH Zip Code 45211 |
| Borrower KELVIN JENKINS | Owner of Public Record | County HAMILTON |

Legal Description LOT 78 ORLAND ACS SUBDIVISION BLK C

Assessor's Parcel # 206-0012-0067    Tax Year 2004    R.E. Taxes $ 772.00

Neighborhood Name WESTWOOD    Map Reference ENCLOSED    Census Tract 88.00

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 8.24 URBAN FOREST ☐ PUD    HOA $ N/A ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) DETERMINE THE DAMAGE OF A SEWER ACCESS DRAIN

Lender/Client ATTORNEY ARTHUR HARMON    Address CINCINNATI, OH 45206

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). MLS, PACE, CT. HOUSE

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? ☒ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | PRICE $ (000) | AGE (yrs) | One-Unit 80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | 20 Low | 20 | 2-4 Family 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 235 High | 60 | Multi-Family 5 % |

Neighborhood Boundaries MCHENRY AVE, BALTIMORE AVE, YOAST AVE, NORTH AND WEST | 102 Pre | 43 | Commercial 10 % / Other %
BOUNDARY OF BALTIMORE PIKE CEMETERY, BAKER PL, HARRISON AVE, MCHENRY AVE.

Neighborhood Description THIS IS A WEST SIDE NEIGHBORHOOD OF GREATER CINCINNATI. SCHOOLS, SHOPPING, PARKS, EMPLOYMENT, FREEWAYS, AND PLACES OF WORSHIP ARE ALL NEARBY.

Market Conditions (including support for the above conclusions) THE MARKET IS PRESENTLY IN BALANCE WITH HOMES SELL IN TYPICALLY LESS THAN 90 DAYS.

Dimensions 50 X 115    Area 5,750 Sq.Ft.    Shape RECTANGULAR    View RESIDENTIAL

Specific Zoning Classification RESIDENTIAL    Zoning Description SINGLE FAMILY

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street MACADAM | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone C    FEMA Map # 390210 0016 B    FEMA Map Date 10/15/82

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls POURED/GOOD | Floors U/K/U/K |
| # of Stories 1 | ☒ Full Basement ☐ Partial Basement | Exterior Walls BRICK/AVG. | Walls DRYWALL/AVG. |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | Basement Area 1,102 sq.ft. | Roof Surface COMP/AVG. | Trim/Finish WOOD/AVERAGE |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 50 % | Gutters & Downspouts ALUM/AVERAGE | Bath Floor U/K/U/K |
| Design (Style) RANCH | ☒ Outside Entry/Exit ☐ Sump Pump | Window Type ALUMINUM/AVG. | Bath Wainscot U/K/U/K |
| Year Built 1962 | Evidence of ☐ Infestation NONE | Storm Sash/Insulated YES/GOOD | Car Storage ☐ None |
| Effective Age (Yrs) 20-30 YRS | ☐ Dampness ☐ Settlement | Screens YES/GOOD | ☒ Driveway # of Cars |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # | Driveway Surface |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel | ☐ Fireplace(s) # ☒ Fence | ☒ Garage # of Cars 1 |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck ☐ Porch | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 6 Rooms 3 Bedrooms 2 Bath(s) 1,102 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). CENTRAL AIR CONDITIONING.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). THIS WAS AN EXTERIOR APPRAISAL, THE APPRAISER DID NOT HAVE ACCESS TO THE INTERIOR.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Freddie Mac Form 70 March 2005    Page 1 of 6    Fannie Mae Form 1004 March 2005

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report
File #

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 3012 WESTKNOLLS LANE | City CINCINNATI   State OH   Zip Code 45211 |
| Borrower KELVIN JENKINS   Owner of Public Record | County HAMILTON |

Legal Description LOT 78 ORLAND ACS SUBDIVISION BLK C

Assessor's Parcel # 206-0012-0067        Tax Year 2004        R.E. Taxes $ 772.00

Neighborhood Name WESTWOOD        Map Reference        Census Tract 88.00

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 8.24 URBAN FOREST ☐ PUD   HOA $ N/A ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) DETERMINE THE DAMAGE OF A SEWER ACCESS DRAIN

Lender/Client ATTORNEY ARTHUR HARMON    Address CINCINNATI, OH 45206

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). MLS, PACE, CT. HOUSE

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? ☒ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | PRICE   AGE | One-Unit 80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000)   (yrs) | 2-4 Unit 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | 20 Low 20 | Multi-Family 5 % |
| | | 235 High 60 | Commercial 10 % |
| | | .02 Pred. 43 | Other % |

Neighborhood Boundaries MCHENRY AVE, BALTIMORE AVE, YOAST AVE, NORTH AND WEST BOUNDARY OF BALTIMORE PIKE CEMETERY, BAKER PL, HARRISON AVE, MCHENRY AVE.

Neighborhood Description THIS IS A WEST SIDE NEIGHBORHOOD OF GREATER CINCINNATI. SCHOOLS, SHOPPING, PARKS, EMPLOYMENT, FREEWAYS, AND PLACES OF WORSHIP ARE ALL NEARBY.

Market Conditions (including support for the above conclusions) THE MARKET IS PRESENTLY IN BALANCE WITH HOMES SELL IN TYPICALLY LESS THAN 90 DAYS.

Dimensions 50 X 115    Area 5,750 Sq.Ft.    Shape RECTANGULAR    View RESIDENTIAL

Specific Zoning Classification RESIDENTIAL    Zoning Description SINGLE FAMILY

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street MACADAM | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone C   FEMA Map # 390210 0016 B   FEMA Map Date 10/15/82

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls POURED/GOOD | Floors U/K/U/K |
| # of Stories 1 | ☒ Full Basement ☐ Partial Basement | Exterior Walls BRICK/AVG. | Walls DRYWALL/AVG. |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | Basement Area 1,102 sq.ft. | Roof Surface COMP/AVG. | Trim/Finish WOOD/AVERAGE |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 50 % | Gutters & Downspouts ALUM/AVERAGE | Bath Floor U/K/U/K |
| Design (Style) RANCH | ☒ Outside Entry/Exit ☐ Sump Pump | Window Type ALUMINUM/AVG. | Bath Wainscot U/K/U/K |
| Year Built 1962 | Evidence of ☐ Infestation NONE | Storm Sash/Insulated YES/GOOD | Car Storage ☐ None |
| Effective Age (Yrs) 20-30 YRS | ☐ Dampness ☐ Settlement | Screens YES/GOOD | ☒ Driveway # of Cars |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # | Driveway Surface |
| ☐ Drop Stair ☐ Stairs | ☐ Other  Fuel | ☐ Fireplace(s) # ☒ Fence | ☒ Garage # of Cars 1 |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck ☐ Porch | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 6 Rooms   3 Bedrooms   2 Bath(s)   1,102 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). CENTRAL AIR CONDITIONING.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). THIS WAS AN EXTERIOR APPRAISAL, THE APPRAISER DID NOT HAVE ACCESS TO THE INTERIOR.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

## Uniform Residential Appraisal Report

File #

| | | | | | | |
|---|---|---|---|---|---|---|
| There are | 205 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 24,000 | | to $ 244,000 | | |
| There are | 320 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 20,000 | | to $ 235,000 | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3012 WESTKNOLLS LANE CINCINNATI, OH 45211 | 2925 WESTKNOLLS LANE | | 2905 WESTKNOLLS LANE | | 2918 AQUADALE LANE | |
| Proximity to Subject | | 0.17 miles | | 0.20 miles | | 0.15 miles | |
| Sale Price | $ N/A | $ 93,000 | | $ 97,000 | | $ 87,200 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 84.39 sq.ft. | | $ 88.02 sq.ft. | | $ 79.13 sq.ft. | |
| Data Source(s) | | PACE/MLS/CT. HOUSE | | PACE/MLS/CT. HOUSE | | PACE/MLS/CT. HOUSE | |
| Verification Source(s) | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | CONVENTIONAL NONE | | CONVENTIONAL NONE | | CONVENTIONAL NONE | |
| Date of Sale/Time | | 6/05 | | 10/04 | | 9/05 | |
| Location | WESTWOOD | WESTWOOD | | WESTWOOD | | WESTWOOD | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | .13 ACRE | .14 ACRE | | .14 ACRE | | .23 ACRE | -3,000 |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | RANCH | RANCH | | RANCH | | RANCH | |
| Quality of Construction | BRICK | BRICK | | BRICK | | BRICK | |
| Actual Age | 42 YRS. | 45 YRS. | | 45 YRS. | | 44 YRS. | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6   3   2 | 6   3   2 | | 6   3   2 | | 6   3   2 | |
| Gross Living Area | 1,102 sq.ft. | 1,102 sq.ft. | | 1,102 sq.ft. | | 1,102 sq.ft. | |
| Basement & Finished Rooms Below Grade | FULL, 1 ROOM | FULL, 1 ROOM | | FULL, 1 ROOM | | FULL, 1 ROOM | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | GAS/CAC | GAS/CAC | | GAS/WALL | | GAS/CAC | |
| Energy Efficient Items | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Garage/Carport | 1 CAR B-I | 1 CAR B-I | | 1 CAR B-I | | 1 CAR B-I | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO | |
| FENCE | YES | NO | +500 | NO | +500 | YES | |
| SEWER ACCESS | YES | NO | -2,000 | NO | -2,000 | NO | -2,000 |
| Net Adjustment (Total) | | ☐ + ☒ - $ | 1,500 | ☐ + ☒ - $ | 1,500 | ☐ + ☒ - $ | 5,000 |
| Adjusted Sale Price of Comparables | | $ | 91,500 | $ | 95,500 | $ | 82,200 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    MLS, CT. HOUSE, PACE
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    MLS, COURT HOUSE, PACE
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 3/05 | 12/04 | N/A | N/A |
| Price of Prior Sale/Transfer | U/K-QUIT CLAIM | 63,000 | N/A | N/A |
| Data Source(s) | CT. HOUSE, MLS, PACE | CT. HOUSE, MLS, PACE | CT. HOUSE, MLS, PACE | CT. HOUSE, MLS, PACE |
| Effective Date of Data Source(s) | 2/06 | 2/06 | 2/06 | 2/06 |

Analysis of prior sale or transfer history of the subject property and comparable sales    THE SUBJECT TRANSFERED IN 3/05 VIA QUIT CLAIM WITH THE PRICE UNKNOWN, AND IN 12/04 FOR AN UNDISCLOSED AMOUNT ALSO.

Summary of Sales Comparison Approach    ALL OF THE SALES ARE FROM THE SUBJECTS IMMEDIATE NEIGHBORHOOD. THE LOT SIZE OF SALE REQUIRED AN ADJUSTMENT BECAUSE IT WAS MUCH LARGER THAN THE SUBJECT, AND THE WALL AIR CONDITIONING OF SALE #2 IS ALSO DIFFERENT FROM THE SUBJECT & REQUIRED AN ADJUSTMENT. IN ORDER TO ACCURATELY REFLECT THE NEGATIVE EFFECT SEWER ACCESS WOULD HAVE ON THE VALUE OF THE SUBJECT A SALE WOULD HAVE TO TAKE PLACE WITH THE SUBJECT OR ON ANOTHER PROPERTY WHERE THIS HAS OCCURED AND ONE COULD THAN EXTRAPALATE THE DIFFERECE THAT THIS FEATURE HAD ON THE SALE PRICE OF THAT PROPERTY. IN THIS REPORT ALL OF THE SALES ARE IDENTICLE TO THE SUBJECT EXCEPT FOR THE LOT S OF #3 & THE COOLING IN #2. IN MY OPINION THE SEWER ACCESS WOULD HAVE NO MORE THAN A MINIMAL EFFECT ON THE SUBJECT VALUE, I WOULD SAY $2,000.

Indicated Value by Sales Comparison Approach $   93,000

Indicated Value by: Sales Comparison Approach $ 93,000    Cost Approach (if developed) $ 82,783    Income Approach (if developed) $ N/A
THE MARKET APPROACH INDICATED A VALUE RANGE FROM $83,200-$96,500. THE COST APPROACH TO VALUE IS NOT CONSIDERED RELEVANT IN THIS REPORT BECAUSE OF THE AGE OF THE SUBJECT AND THE SPECULATION USED IN DETERMINING THE DEPRECIAT PERCENTAGE.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 93,000 , as of 2/10/06 , which is the date of inspection and the effective date of this appraisal.

Form 1004 — *TOTAL for Windows* appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File #

### ADDITIONAL COMMENTS

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  LAND SALES OVER THE LAST FEW YEARS FOR

SIMILAR SIZE SITES HAS BEEN IN A RANGE FROM $10,000-20,000.

| COST APPROACH | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 15,000 |
| Source of cost data  MARSHALL & SWIFT | DWELLING | 1,102 Sq.Ft. @ $ | 65.00 | =$ | 71,630 |
| Quality rating from cost service  AVG.    Effective date of cost data  1/05 | | 1,102 Sq.Ft. @ $ | 20.00 | =$ | 22,040 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | =$ | 2,000 |
| | Garage/Carport | Sq.Ft. @ $ | | =$ | |
| | Total Estimate of Cost-New | | | =$ | 95,670 |
| | Less    Physical | Functional | External | | |
| | Depreciation    31,887 | | | =$( | 31,887) |
| | Depreciated Cost of Improvements | | | =$ | 63,783 |
| | "As-is" Value of Site Improvements | | | =$ | 4,000 |
| Estimated Remaining Economic Life (HUD and VA only)    40 Years | INDICATED VALUE BY COST APPROACH | | | =$ | 82,783 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| INCOME | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)  * SINGLE FAMILY HOMES ARE NOT TYPICALLY AVAILABLE FOR RENTAL

HOMES IN THIS AREA.

### PROJECT INFORMATION FOR PUDs (If applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No  Unit type(s) ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| PUD INFORMATION | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File #

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File #

**APPRAISER'S CERTIFICATION:**   The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

---

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Uniform Residential Appraisal Report    File /

21. The lender/client may disclose or distribute this appraisal report to: the borrow⸴r; another lender at the reque⸴ of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government spᵒⁿsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client ma⸴ be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on thiⴻ appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**   The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiⴻr's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

---

**APPRAISER** DAVID G. BEARD, RA

Signature

Name   DAVID G. BEARD, RA

Company Name   REAL PROPERTY APPRAISAL COMPANY

Company Address   P.O. BOX 29374, CINCINNATI, OHIO
45229-0383

Telephone Number   513-861-7762

Email Address   davidbeard@fuse.net

Date of Signature and Report

Effective Date of Appraisal   2/10/06

State Certification #

or State License #   384519

or Other (describe) _____ State # ⸴

State  OH

Expiration Date of Certification or License   12/11/2006

ADDRESS OF PROPERTY APPRAISED
3012 WESTKNOLLS LANE
CINCINNATI, OH 45211

APPRAISED VALUE OF SUBJECT PROPERTY $   93,000

LENDER/CLIENT

Name  ATTORNEY ARTHUR HARMON

Company Name   ATTORNEY ARTHUR HARMON

Company Address   CINCINNATI, OH 45206

Email Address

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature

Name

Company Name

Company Address

Telephone Number

Email Address

Date of Signature

State Certification #

or State License #

State

Expiration Date of Certification or License

**SUBJECT PROPERTY**

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection

**COMPARABLE SALES**

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

---

# Subject Photo Page

| Borrower/Client | KELVIN JENKINS | | | | |
|---|---|---|---|---|---|
| Property Address | 3012 WESTKNOLLS LANE | | | | |
| City CINCINNATI | | County HAMILTON | State OH | | Zip Code 45211 |
| Lender ATTORNEY ARTHUR HARMON | | | | | |



### Subject Front

3012 WESTKNOLLS LANE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,102 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | WESTWOOD |
| View | RESIDENTIAL |
| Site | .13 ACRE |
| Quality | BRICK |
| Age | 42 YRS. |

### Subject Rear

### Subject Street



**Building Sketch**

| | | | | |
|---|---|---|---|---|
| Borrower/Client | KELVIN JENKINS | | | |
| Property Address | 3012 WESTKNOLLS LANE | | | |
| City CINCINNATI | County HAMILTON | State OH | Zip Code 45211 | |
| Lender ATTORNEY ARTHUR HARMON | | | | |



38

29

1 s Br

B

(1102)

GR4

**Comparable Photo Page**

| | |
|---|---|
| Borrower/Client  KELVIN JENKINS | |
| Property Address  3012 WESTKNOLLS LANE | |
| City  CINCINNATI          County  HAMILTON | State  OH          Zip Code  45211 |
| Lender  ATTORNEY ARTHUR HARMON | |



### Comparable 1

2925 WESTKNOLLS LANE
| | |
|---|---|
| Prox. to Subject | 0.17 miles |
| Sale Price | 93,000 |
| Gross Living Area | 1,102 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | WESTWOOD |
| View | RESIDENTIAL |
| Site | .4 ACRE |
| Quality | BRICK |
| Age | 45 YRS. |



### Comparable 2

2905 WESTKNOLLS LANE
| | |
|---|---|
| Prox. to Subject | 0.20 miles |
| Sale Price | 97,000 |
| Gross Living Area | 1,102 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | WESTWOOD |
| View | RESIDENTIAL |
| Site | .14 ACRE |
| Quality | BRICK |
| Age | 45 YRS. |



### Comparable 3

2918 AQUADALE LANE
| | |
|---|---|
| Prox. to Subject | 0.15 miles |
| Sale Price | 87,200 |
| Gross Living Area | 1,102 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | WESTWOOD |
| View | RESIDENTIAL |
| Site | .23 ACRE |
| Quality | BRICK |
| Age | 44 YRS. |

| | | |
|---|---|---|
| Borrower KELVIN JENKINS | | File No. |
| Property Address 3012 WESTKNOLLS LANE | | |
| City CINCINNATI | County HAMILTON | State OH | Zip Code 45211 |
| Lender ATTORNEY ARTHUR HARMON | | |

**Gross Living Area (GLA)** _____ 1,102 s.f.

**Gross Building Area (GBA)** _____ 2,204 s.f.

| Areas | Square Footage |
|---|---|
| Basement | _____ 1,102 s.f. _____50% of GBA |
| Level 1 | _____ 1,102 s.f. _____50% of GBA |
| Level 2 | _____ 0 s.f. _____0% of GBA |
| Level 3 | _____ 0 s.f. _____0% of GBA |
| Garage | _____ 0 s.f. _____0% of GBA |
| Other | _____ 0 s.f. _____0% of GBA |

| Area Dimensions | | | | | Type of Area | | | | Level | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Measurements | | Factor | | Area | Living | Bsmnt | Garage | Other | One | Two | Three |
| 29.00 X 38.00 | X | 1.00 | = | 1,102.00 | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| 29.00 X 38.00 | X | 1.00 | = | 1,102.00 | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| X | X | | = | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

# APPRAISER DISCLOSURE
# STATEMENT

In compliance with Ohio Revised Code Section 4763.12 (C)

1. **Name of Appraiser:** David G. Beard

2. **Class of Certification/Licensure:**

   _____ Certified General
   _____ Certified Residential
   __x__ Licensed Residential
   _____ Temporary __General ___Licensed

   **Certification/Licensure Number:** 384519

3. **Scope:** This report __x__ is within the scope of my Certification/License

   _____ is not within the scope of my Certification/License

4. **Service provided by:** __x__ disinterested & unbiased third party
   _____ interested & biased third party
   _____ interested third party on contingent fee basis

5. **Signature of person preparing and reporting the appraisal**

**THIS FORM MUST BE INCLUDED IN CONJUNCTION WITH ALL APPRAISAL
ASSIGNMENTS OR SPECIALIZED SERVICES PERFORMED BY A STATE-
CERTIFIED OR STATE-LICENSED REAL ESTATE APPRAISER.**

**STATE OF OHIO**
Department of Commerce
Division of Real Estate & Professional Licensing
Appraiser Section
Cleveland OH
(216) 787-3100
Fax (216) 787-4449
www.com.state.oh.us

Form SС1    sTOTAL for Windows" appraisal software by a la mode, inc.    1-800-ALAMODE

# STATE OF OHIO
# DIVISION OF REAL ESTATE
# AND PROFESSIONAL LICENSING

**AN APPRAISER LICENSE/CERTIFICATE**

has been issued under ORC Chapter 4763 to:

NAME: David G Beard

LIC/CERT NUMBER: 00038451'9

LIC LEVEL: Licensed Residential Real Estate Appraiser

CURRENT ISSUE DATE:  12/14/2005

EXPIRATION DATE:  12/11/2006

Form SC1    *TOTAL for Windows* appraisal software by a la mode, inc.    1-800-ALAMODE

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and* seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> * Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Real Property Appraisal Company (513) 861-7762
Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**  3012 WESTKNOLLS LANE, CINCINNATI, OH 45211

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name:  DAVID G. BEARD, RA | Name: |
| Date Signed: | Date Signed: |
| State Certification #: | State Certification #: |
| or State License #:  384519 | or State License #: |
| State:  OH | State: |
| Expiration Date of Certification or License:  12/11/2006 | Expiration Date of Certification or License: |

☐ Did    ☐ Did Not Inspect Property

Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

Location Map

| Borrower/Client | KELVIN JENKINS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3012 WESTKNOLLS LANE | | | | | |
| City | CINCINNATI | County | HAMILTON | State | OH | Zip Code 45211 |
| Lender | ATTORNEY ARTHUR HARMON | | | | | |



## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 3012 WESTKNOLLS LANE |
| | Legal Description | LOT 78 ORLAND ACS SUBDIVISION BLK C |
| | City | CINCINNATI |
| | County | HAMILTON |
| | State | OH |
| | Zip Code | 45211 |
| | Census Tract | 88.00 |
| | Map Reference | ENCLOSED |

| | | |
|---|---|---|
| **SALES PRICE** | Sale Price | $ N/A |
| | Date of Sale | N/A |

| | | |
|---|---|---|
| **CLIENT** | Borrower / Client | KELVIN JENKINS |
| | Lender | ATTORNEY ARTHUR HARMON |

| | | |
|---|---|---|
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 1,102 |
| | Price per Square Foot | $ |
| | Location | WESTWOOD |
| | Age | 42 YRS. |
| | Condition | AVERAGE |
| | Total Rooms | 6 |
| | Bedrooms | 3 |
| | Baths | 2 |

| | | |
|---|---|---|
| **APPRAISER** | Appraiser | DAVID G. BEARD, RA |
| | Date of Appraised Value | 2/10/06 |

| | | |
|---|---|---|
| **VALUE** | Final Estimate of Value | $ 93,000 |

# Uniform Residential Appraisal Report
File #

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | |
|---|---|
| Property Address 3012 WESTKNOLLS LANE | City CINCINNATI  State OH  Zip Code 45211 |
| Borrower KELVIN JENKINS | Owner of Public Record  County HAMILTON |

Legal Description  LOT 78 ORLAND ACS SUBDIVISION BLK C
Assessor's Parcel # 206-0012-0067    Tax Year 2004    R.E. Taxes $ 772.00
Neighborhood Name WESTWOOD    Map Reference    Census Tract 88.00
Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 8.24 URBAN FOREST ☐ PUD  HOA $ N/A ☐ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) DETERMINE THE DAMAGE OF A SEWER ACCESS DRAIN
Lender/Client ATTORNEY ARTHUR HARMON  Address CINCINNATI, OH 45206
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s).  MLS, PACE, CT. HOUSE

## CONTRACT

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A  Date of Contract N/A  Is the property seller the owner of public record? ☒ Yes ☐ No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No
If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | PRICE $(000) | AGE (yrs) | One-Unit 80 % | |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | 2-4 Unit 5 % | |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 20 Low 20 | | Multi-Family 5 % | |
| Neighborhood Boundaries MCHENRY AVE, BALTIMORE AVE, YOAST AVE, NORTH AND WEST | | 235 High 60 | | Commercial 10 % | |
| BOUNDARY OF BALTIMORE PIKE CEMETERY, BAKER PL, HARRISON AVE, MCHENRY AVE. | | 102 Pred. 43 | | Other % | |

Neighborhood Description  THIS IS A WEST SIDE NEIGHBORHOOD OF GREATER CINCINNATI. SCHOOLS, SHOPPING, PARKS, EMPLOYMENT, FREEWAYS, AND PLACES OF WORSHIP ARE ALL NEARBY.

Market Conditions (including support for the above conclusions)  THE MARKET IS PRESENTLY IN BALANCE WITH HOMES SELL IN TYPICALLY LESS THAN 90 DAYS.

## SITE

Dimensions 50 X 115    Area 5,750 Sq.Ft.    Shape RECTANGULAR    View RESIDENTIAL
Specific Zoning Classification RESIDENTIAL    Zoning Description SINGLE FAMILY
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street MACADAM | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone C  FEMA Map # 390210 0016 B  FEMA Map Date 10/15/82
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

## IMPROVEMENTS

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls POURED/GOOD | Floors U/K/U/K |
| # of Stories 1 | ☒ Full Basement ☐ Partial Basement | Exterior Walls BRICK/AVG. | Walls DRYWALL/AVG. |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 1,102 sq.ft. | Roof Surface COMP/AVG. | Trim/Finish WOOD/AVERAGE |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 50 % | Gutters & Downspouts ALUM/AVERAGE | Bath Floor U/K/U/K |
| Design (Style) RANCH | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type ALUMINUM/AVG. | Bath Wainscot U/K/U/K |
| Year Built 1962 | Evidence of ☐ Infestation NONE | Storm Sash/Insulated YES/GOOD | Car Storage ☐ None |
| Effective Age (Yrs) 20-30 YRS | ☐ Dampness ☐ Settlement | Screens YES/GOOD | ☒ Driveway # of Cars |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | Driveway Surface |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel | ☐ Woodstove(s) # | ☒ Garage # of Cars 1 |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | ☐ Fireplace(s) # ☒ Fence | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☒ Patio/Deck ☐ Porch | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains: 6 Rooms  3 Bedrooms  2 Bath(s)  1,102 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).  CENTRAL AIR CONDITIONING.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  THIS WAS AN EXTERIOR APPRAISAL, THE APPRAISER DID NOT HAVE ACCESS TO THE INTERIOR.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Freddie Mac Form 70 March 2005    Page 1 of 6    Fannie Mae Form 1004 March 2005

# Uniform Residential Appraisal Report

File #

| There are | 205 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 24,000 | to $ | 244,000 | |
| There are | 320 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 20,000 | to $ | 235,000 | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3012 WESTKNOLLS LANE CINCINNATI, OH 45211 | 2925 WESTKNOLLS LANE | | 2905 WESTKNOLLS LANE | | 2918 AQUADALE LANE | |
| Proximity to Subject | | 0.17 miles | | 0.20 miles | | 0.15 miles | |
| Sale Price | $ N/A | $ 93,000 | | $ 97,000 | | $ 87,200 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 84.39 sq.ft. | | $ 88.02 sq.ft. | | $ 79.13 sq.ft. | |
| Data Source(s) | | PACE/MLS/CT. HOUSE | | PACE/MLS/CT. HOUSE | | PACE/MLS/CT. HOUSE | |
| Verification Source(s) | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | CONVENTIONA NONE | | CONVENTIONA NONE | | CONVENTIONA NONE | |
| Date of Sale/Time | | 6/05 | | 10/04 | | 9/05 | |
| Location | WESTWOOD | WESTWOOD | | WESTWOOD | | WESTWOOD | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | .13 ACRE | .14 ACRE | | .14 ACRE | | .23 ACRE | -3,000 |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | RANCH | RANCH | | RANCH | | RANCH | |
| Quality of Construction | BRICK | BRICK | | BRICK | | BRICK | |
| Actual Age | 42 YRS. | 45 YRS. | | 45 YRS. | | 44 YRS. | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6   3   2 | 6   3   2 | | 6   3   2 | | 6   3   2 | |
| Gross Living Area | 1,102 sq.ft. | 1,102 sq.ft. | | 1,102 sq.ft. | | 1,102 sq.ft. | |
| Basement & Finished Rooms Below Grade | FULL, 1 ROOM | FULL, 1 ROOM | | FULL, 1 ROOM | | FULL, 1 ROOM | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | GAS/CAC | GAS/CAC | | GAS/WALL | | GAS/CAC | |
| Energy Efficient Items | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Garage/Carport | 1 CAR B-I | 1 CAR B-I | | 1 CAR B-I | | 1 CAR B-I | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO | |
| FENCE | YES | NO | +500 | NO | +500 | YES | |
| SEWER ACCESS | YES | NO | -2,000 | NO | -2,000 | NO | -2,000 |
| Net Adjustment (Total) | | ☐ + ☒ - $ | 1,500 | ☐ + ☒ - $ | 1,500 | ☐ + ☒ - $ | 5,000 |
| Adjusted Sale Price of Comparables | | $ | 91,500 | $ | 95,500 | $ | 82,200 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    MLS, CT. HOUSE, PACE
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    MLS, COURT HOUSE, PACE
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 3/05 | 12/04 | N/A | N/A |
| Price of Prior Sale/Transfer | U/K-QUIT CLAIM | 63,000 | N/A | N/A |
| Data Source(s) | CT. HOUSE, MLS | CT. HOUSE, MLS, PACE | CT. HOUSE, MLS, PACE | CT. HOUSE, MLS, PACE |
| Effective Date of Data Source(s) | 2/06 | 2/06 | 2/06 | 2/06 |

Analysis of prior sale or transfer history of the subject property and comparable sales   THE SUBJECT TRANSFERRED IN 3/05 VIA QUIT CLAIM WITH THE PRICE UNKNOWN, AND IN 12/04 FOR AN UNDISCLOSED AMOUNT ALSO.

Summary of Sales Comparison Approach   ALL OF THE SALES ARE FROM THE SUBJECTS IMMEDIATE NEIGHBORHOOD. THE LOT SIZE OF SALE REQUIRED AN ADJUSTMENT BECAUSE IT WAS MUCH LARGER THAN THE SUBJECT, AND THE WALL AIR CONDITIONING OF SALE #2 IS ALSO DIFFERENT FROM THE SUBJECT & REQUIRED AN ADJUSTMENT. IN ORDER TO ACCURATELY REFLECT THE NEGATIVE EFFECT SEWER ACCESS WOULD HAVE ON THE VALUE OF THE SUBJECT A SALE WOULD HAVE TO TAKE PLACE WITH THE SUBJECT OR ON ANOTHER PROPERTY WHERE THIS HAS OCCURED AND ONE COULD THAN EXTRAPALATE THE DIFFERECE THAT THIS FEATURE HAD THE SALE PRICE OF THAT PROPERTY. IN THIS REPORT ALL OF THE SALES ARE IDENTICLE TO THE SUBJECT EXCEPT FOR THE LOT S OF #3 & THE COOLING IN #2. IN MY OPINION THE SEWER ACCESS WOULD HAVE NO MORE THAN A MINIMAL EFFECT ON THE SUBJECT VALUE, I WOULD SAY $2,000.

Indicated Value by Sales Comparison Approach $   93,000

Indicated Value by: Sales Comparison Approach $ 93,000   Cost Approach (if developed) $ 82,783   Income Approach (if developed) $ N/A
THE MARKET APPROACH INDICATED A VALUE RANGE FROM $83,200-$96,500. THE COST APPROACH TO VALUE IS NOT CONSIDERED RELEVANT IN THIS REPORT BECAUSE OF THE AGE OF THE SUBJECT AND THE SPECULATION USED IN DETERMINING THE DEPRECIAT PERCENTAGE.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 93,000 , as of 2/10/06 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005 | Page 2 of 6 | Fannie Mae Form 1004 March 2005

Form 1004 — *TOTAL for Windows* appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File #

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   LAND SALES OVER THE LAST FEW YEARS FOR SIMILAR SIZE SITES HAS BEEN IN A RANGE FROM $10,000-20,000.

**COST APPROACH**

| | | | | |
|---|---|---|---|---|
| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 15,000 |
| Source of cost data  MARSHALL & SWIFT | DWELLING 1,102 Sq.Ft. @ $ 65.00 | | =$ | 71,630 |
| Quality rating from cost service  AVG.   Effective date of cost data  1/05 | 1,102 Sq.Ft. @ $ 20.00 | | =$ | 22,040 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | 2,000 |
| | Garage/Carport Sq.Ft. @ $ | | =$ | |
| | Total Estimate of Cost-New | | =$ | 95,670 |
| | Less   Physical   Functional   External | | | |
| | Depreciation 31,887 | | =$( | 31,887) |
| | Depreciated Cost of Improvements | | =$ | 63,783 |
| | "As-is" Value of Site Improvements | | =$ | 4,000 |
| Estimated Remaining Economic Life (HUD and VA only) 40 Years | INDICATED VALUE BY COST APPROACH | | =$ | 82,783 |

**INCOME**

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)  * SINGLE FAMILY HOMES ARE NOT TYPICALLY AVAILABLE FOR RENTAL HOMES IN THIS AREA.

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

**PUD INFORMATION**

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report
File #

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or delet___ to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitte_. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

---

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File #

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — *TOTAL for Windows* appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File #

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER   DAVID G. BEARD, RA | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name   DAVID G. BEARD, RA | Name |
| Company Name   REAL PROPERTY APPRAISAL COMPANY | Company Name |
| Company Address   P.O. BOX 29374, CINCINNATI, OHIO | Company Address |
| 45229-0383 | |
| Telephone Number   513-861-7762 | Telephone Number |
| Email Address   davidbeard@fuse.net | Email Address |
| Date of Signature and Report | Date of Signature |
| Effective Date of Appraisal   2/10/06 | State Certification # |
| State Certification # | or State License # |
| or State License #   384519 | State |
| or Other (describe) _____ State # ___ | Expiration Date of Certification or License |
| State  OH | |
| Expiration Date of Certification or License   12/11/2006 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
3012 WESTKNOLLS LANE
CINCINNATI, OH 45211
APPRAISED VALUE OF SUBJECT PROPERTY $     93,000
LENDER/CLIENT
Name   ATTORNEY ARTHUR HARMON
Company Name   ATTORNEY ARTHUR HARMON
Company Address   CINCINNATI, OH 45206

Email Address _____

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection _____
☐ Did inspect interior and exterior of subject property
   Date of Inspection _____

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection _____

**Subject Photo Page**

| | |
|---|---|
| Borrower/Client | KELVIN JENKINS |
| Property Address | 3012 WESTKNOLLS LANE |
| City CINCINNATI | County HAMILTON State OH Zip Code 45211 |
| Lender ATTORNEY ARTHUR HARMON | |



### Subject Front

3012 WESTKNOLLS LANE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,102 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | WESTWOOD |
| View | RESIDENTIAL |
| Site | .13 ACRE |
| Quality | BRICK |
| Age | 42 YRS. |

### Subject Rear



### Subject Street

**Building Sketch**

| Borrower/Client | KELVIN JENKINS | | | | |
|---|---|---|---|---|---|
| Property Address | 3012 WESTKNOLLS LANE | | | | |
| City CINCINNATI | | County HAMILTON | State OH | | Zip Code 45211 |
| Lender ATTORNEY ARTHUR HARMON | | | | | |

38

29

1 s Br
———
B
( 1102 )

▽
GR4

**Comparable Photo Page**

| | |
|---|---|
| Borrower/Client  KELVIN JENKINS | |
| Property Address  3012 WESTKNOLLS LANE | |
| City  CINCINNATI    County  HAMILTON | State  OH    Zip Code  45211 |
| Lender  ATTORNEY ARTHUR HARMON | |



### Comparable 1
2925 WESTKNOLLS LANE
| | |
|---|---|
| Prox. to Subject | 0.17 miles |
| Sale Price | 93,000 |
| Gross Living Area | 1,102 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | WESTWOOD |
| View | RESIDENTIAL |
| Site | .14 ACRE |
| Quality | BRICK |
| Age | 45 YRS. |



### Comparable 2
2905 WESTKNOLLS LANE
| | |
|---|---|
| Prox. to Subject | 0.20 miles |
| Sale Price | 97,000 |
| Gross Living Area | 1,102 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | WESTWOOD |
| View | RESIDENTIAL |
| Site | .14 ACRE |
| Quality | BRICK |
| Age | 45 YRS. |



### Comparable 3
2918 AQUADALE LANE
| | |
|---|---|
| Prox. to Subject | 0.15 miles |
| Sale Price | 87,200 |
| Gross Living Area | 1,102 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | WESTWOOD |
| View | RESIDENTIAL |
| Site | .23 ACRE |
| Quality | BRICK |
| Age | 44 YRS. |

# BUILDING AREA ADDENDUM

| | |
|---|---|
| Borrower KELVIN JENKINS | File No. |
| Property Address 3012 WESTKNOLLS LANE | |
| City CINCINNATI    County HAMILTON    State OH    Zip Code 45211 | |
| Lender ATTORNEY ARTHUR HARMON | |

Gross Living Area (GLA) _____ 1,102 s.f.

Gross Building Area (GBA) _____ 2,204 s.f.

| Areas | Square Footage |
|---|---|
| Basement | 1,102 s.f. 50% of GBA |
| Level 1 | 1,102 s.f. 50% of GBA |
| Level 2 | 0 s.f. 0% of GBA |
| Level 3 | 0 s.f. 0% of GBA |
| Garage | 0 s.f. 0% of GBA |
| Other | 0 s.f. 0% of GBA |

| Area Dimensions | | | | Type of Area | | | | Level | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Measurements | | Factor | Area | Living | Bsmnt | Garage | Other | One | Two | Three |
| 29.00 X 38.00 | X | 1.00 = | 1,102.00 | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| 29.00 X 38.00 | X | 1.00 = | 1,102.00 | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

## APPRAISER DISCLOSURE
## STATEMENT

In compliance with Ohio Revised Code Section 4763.12 (C)

1. Name of Appraiser:___David G. Beard_____

2. Class of Certification/Licensure:

     _____Certified General
     _____Certified Residential
     __x__Licensed Residential
     _____Temporary __General ___Licensed

    Certification/Licensure Number:___384519_____

3. Scope: This report _x___is within the scope of my Certification/License

         _____is not within the scope of my Certification/License

4. Service provided by: _x__disinterested & unbiased third party
         _____interested & biased third party
         _____interested third party on contingent fee basis

5. Signature of person preparing and reporting the appraisal

THIS FORM MUST BE INCLUDED IN CONJUNCTION WITH ALL APPRAISAL
ASSIGNMENTS OR SPECIALIZED SERVICES PERFORMED BY A STATE-
CERTIFIED OR STATE-LICENSED REAL ESTATE APPRAISER.

**STATE OF OHIO**
Department of Commerce
Division of Real Estate & Professional Licensing
Appraiser Section
Cleveland OH
(216) 787-3100
Fax (216) 787-4449
www.com.state.oh.us

# STATE OF OHIO
## DIVISION OF REAL ESTATE
## AND PROFESSIONAL LICENSING

**AN APPRAISER LICENSE/CERTIFICATE**

has been issued under ORC Chapter 4763 to:

NAME: David G Beard

LIC/CERT NUMBER: 00038451'9

LIC LEVEL: Licensed Residential Real Estate Appraiser

CURRENT ISSUE DATE: 12/14/2005

EXPIRATION DATE: 12/11/2006

Form SC1    #TOTAL for Windows# appraisal software by a la mode, inc.    1-800-ALAMODE

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> \* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Real Property Appraisal Company (513) 861-7762
Form ACR — *TOTAL for Windows* appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**   3012 WESTKNOLLS LANE, CINCINNATI, OH 45211

**APPRAISER:**

Signature: _____
Name:  DAVID G. BEARD, RA
Date Signed: _____
State Certification #: _____
or State License #:  384519
State:  OH
Expiration Date of Certification or License:  12/11/2006

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____

☐ Did     ☐ Did Not Inspect Property

**Location Map**

| Borrower/Client | KELVIN JENKINS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3012 WESTKNOLLS LANE | | | | | |
| City | CINCINNATI | County | HAMILTON | State | OH | Zip Code | 45211 |
| Lender | ATTORNEY ARTHUR HARMON | | | | | |



# City of Cincinnati



Department of the City Solicitor
Courts Division

Room 226, City Hall
801 Plum Street
Cincinnati, Ohio 45202-5705
Phone    (513) 352-5333
Fax       (513) 352-5217

J. Rita McNeil
*City Solicitor*

Ernest F. McAdams, Jr.
*City Prosecutor*

March 23, 2006

Arthur W. Harmon, Jr.
Harmon, Davis & Associates
1200 Cypress Street
Cincinnati, Ohio 45206

Re:  Your client Kelvin Jenkins

Dear Mr. Harmon:

Our offer of **$13,280.00** for Mr. Jenkins damages is a final offer.

Please advise your client and if he is willing to accept this final offer of settlement, I will
process the necessary paperwork and send you a Release for your client's signature.

Sincerely,

Geri Geiler
Sr. Assistant Solicitor     *352 -3338*

*Consent Decree*

*msbjc.org*