UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DISTRICT

| | |
|---|---|
| **UNITED STATES OF AMERICA, ET AL.,** <br> **PLAINTIFF** <br><br> VS. <br><br> **BOARD OF HAMILTON COUNTY** <br> **COMMISSIONERS, ET AL.,** <br> **DEFENDANTS** | **CASE NO. 1:02CV0107** <br> **(SPIEGEL, J.)** <br> **(HOGAN, M.J.)** |

## AMENDED REPORT AND RECOMMENDATION
## RESOLUTION OF GAMMARINO CLAIM

Claimant Gammarino and the Defendant, Metropolitan Sewer District, could not amicably resolve the claim, so a hearing was requested, scheduled and conducted on June 20, 2007. The Court heard argument from the Claimant who ably represented himself. The Defendant, Metropolitan Sewer District, was also ably represented by an Assistant City Solicitor. A number of exhibits showing repair estimates and pictures of the premises were considered.

Claimant Al Gammarino was the owner of real estate located at 3291 Beekman Street in Cincinnati, Ohio until its sale on or about October, 2004 to Casey D. Laster, whose plans were to use the property as a barber shop. The purchaser bought the then vacant property, listed at $69,000, for $55,000 on an "as is basis." In January, 2004, Mr. Gammarino's basement flooded, the result of which was approximately two feet of standing water and raw sewage. Through the use of a device, known in the plumbing trade as a "snake" and pumps, the basement was cleared of water. Defendant Metropolitan Sewer District (MSD) obtained the services of Brock Restoration, who removed the contents, pressure washed the walls and floors and provided commercial fans and dehumidifiers to dry and purify the premises. Mr. Gammarino had an insurance policy with limited coverage, but the carrier paid a total of $5,000 less the deductible of $500 to restore the premises. Brock's statement of $1,243.45 was paid by MSD.

The dispute centers around three items, two of which were fixtures really, that were located in the basement, the first of which was a 40-year-old Williamson furnace, which was destroyed by the flood. Mr. Gammarino asserts that the furnace, although old, was working and usable. He obtained an estimate for its replacement from Thompson Heating & Cooling for $5,697.00, a figure which included the replacement of the hot water heater. The Thompson estimate does not itemize individual costs for the two installations, but the City of Cincinnati, who manages MSD, valued the water heater at $563.00 and does not contest, at least initially, either its liability for the replacement or the replacement cost of the water heater. Thus we must assume that the replacement cost for the furnace alone is $5,134.00.

Although the listing price for the real estate in question was $69,000, we have no way of knowing whether or not the listing price was a realistic appraisal of the property's value. We assume that a reasonable buyer would inspect the property before its purchase and that a missing furnace would be quite obvious. We also assume that a missing furnace, and a water heater for that matter, would be a factor in determining the listing price. It is also quite obvious that a building with a furnace and water heater would command a greater price than a building without these fixtures.. The final inference we draw from the evidence base is that a reasonable person might not replace a furnace that was otherwise reliable, notwithstanding its age. On the other hand, a reasonable person might do just the opposite in anticipation of an eventual break-down and the fear of an unplanned expense at an inconvenient time. Mr. Gammarino's initial demand of $14,000, the difference between the listing and sale prices, was withdrawn, perhaps in recognition of the fact that his listing price might not be accepted as proof of market price before the loss.

Mr. Gammarino puts great emphasis on the fact that the measure of damages for damage to real estate is the reasonable cost of restoration, which cannot exceed the difference in market value before and after the damage. We accept that proposition, but the Achilles heel of that argument is that the $69,000 listing price establishes the market value *before* the loss. We agree, however, that $55,000 establishes the market value *after* the loss and that $5,697.00 is a reasonable cost for the replacement of a furnace and water heater. Mr. Gammarino also argues that the Defendants "accepted responsibility" for the loss by engaging Brock's services for the initial clean-up. MSD argues that its investigation showed no defects in its main sewer pipe and

that the problem must be in the homeowner's link to the MSD's sewer pipe. However, Mr. Gamarino found gravel in his basement, which must have come from the main line as no portion of the lateral was broken. The City's argument is contrary to common sense. A properly sized sewer system does not back up into the basements of multiple homes at the same time. There really is no question of liability in this case.

We believe that the City should pay the replacement cost of the furnace. Although it is true that a new furnace puts Mr. Gammarino in a better position than he would have been had the water problem not occurred, there is no market for used furnaces and we were not furnished with any proof of what the market value of the old furnace would have been and have no basis to apportion the loss.

The second item in dispute involves the cost of replacing a walk-in cooler. Mr. Gammarino obtained an estimate for $6,785.45 from Hamilton County Refrigeration Company. It is undisputed that the existing cooler was inoperable before the basement flood and the Court finds it highly unlikely that the absence of an inoperable cooler in an otherwise vacant building had anything to do with the price paid by a buyer intending to use the property as a barber shop. A reasonable buyer might find a walk-in cooler to be a hazzard or as impacting his liability and/or insurance rates. To reimburse Mr. Gammarino for the cost of the cooler would be to unjustly enrich him in our opinion. We agree with the defense position on the walk-in cooler issue and as a result, find that Mr. Gammarino should not recover damages relative to the cooler.

The third item is the most amusing of the three. The parties agree that the reasonable cost of repainting the basement is $2,150.00, which is the amount Mr. Gammarino seeks. The estimate from House Pro's is for the $2,150 figure. However, the position of Cincinnati's Claims Administrator and therefore its Sr. Assistant Solicitor, Terrance Nestor, is that 75% of that figure would be a fair apportionment of the cost. The basis for the 75% allocation does not appear in any of the City of Cincinnati's responses, but oral argument disclosed that the basis was the fact that the flood waters only rose to approximately two feet. This fact caused the Court some level of amusement. Was the 75% allocation designed to restore 75% of the walls when only 25% was discolored? Does the City know a painter who can match paint to the point that one cannot tell at which point the old paint ends and the new paint begins? Would anyone propose such a solution to one's spouse and not be prepared to duck? The City's resolution is

not only ridiculous, but entertaining to everyone but Mr. Gammarino.

A fair resolution of this controversy would be to award Mr. Gammarino the replacement cost of the furnace and water heater, entire amount of the House Pro's estimate for repainting and the replacement of his deductible. That amount is $8,347.00, less than what he wants, more than what the City offered and a reasonable estimate of the difference in value before and after the loss. The interesting thing about this figure is that if it is added to the $55,000 amount of the sale price, the resulting amount of $63,347.00 is approximately 91% of the listing price. A reasonable buyer just might have paid that amount for a small commercial building on Beekman Street with an operable furnace and water heater as well as a freshly painted basement. A reasonable seller might well have accepted such an offer.

## CONCLUSION

Claimant Gammarino should recover a total of $8,347.00 from the Defendant City of Cincinnati minus the $5,000 insurance coverage that he previously obtained for a total of $3,347.00. The return of his $500 deductible is included in the above award.

June 27, 2007

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING
## OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent  ☐ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Al Gammarino<br>3700 E. Galbraith Rd.<br>Cinti, OH 45236 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | |
| PS Form 3811, August 2001   Domestic Return Receipt   102595-01-M-2509 | |

1:02cv107 (Doc. 183)