IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. C-1-02-107 |
| | ) | |
| THE BOARD OF COUNTY | ) | Judge S. Arthur Spiegel |
| COMMISSIONERS, HAMILTON | ) | |
| COUNTY, OHIO, et al., | ) | |
| | ) | |
| | ) | CORRECTED |
| Defendants. | ) | STATUS REPORT BY THE |
| _____ | ) | UNITED STATES, OHIO, AND |
| | ) | ORSANCO |
| STATE OF OHIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF HAMILTON | ) | |
| COUNTY, OHIO and THE CITY OF | ) | |
| CINCINNATI, | ) | |
| Defendants. | ) | |
| _____) | | |

The United States, State of Ohio, and Ohio River Valley Water Sanitation Commission ("ORSANCO") (collectively, "Plaintiffs" or "Regulators") resubmits the Status Report filed with this Court on April 16th, 2008, which inadvertently omitted the Attachment. This corrected version includes Attachment A.

. . . . . .

This Status Report was prepared in anticipation of the now-postponed April 17th Status Conference, to summarize the progress of the Defendants and the activities of the other parties toward implementation of the Consent Decrees entered by this Court on June 9, 2004. Because

the Ombudsman's report filed on March 31, 2008 well describes Defendants' implementation of the Water-in-Basement Program, this report will focus on Defendants' efforts to remediate its sanitary sewer overflows (SSOs) and combined sewer overflows (CSOs) as required by the Consent Decrees.

*Capital Improvement Projects*

- Defendants have complied with the Consent Decrees' schedules for the various capital improvement projects to remediate and eliminate the "highly active" SSOs and CSOs.  *See* SSO Decree ¶ VI.A and Exhibit 3; CSO Decree § VI and Exhibit 1.  According to the 2007 4th quarter status report, Defendants had completed the remedial measures for approximately 17 SSOs and 23 CSOs.  *See* attached excerpt from 4th Quarter 2007 Progress Report, Part I, pp. 1-2, and Part II, pp. 1-4.  According to information provided to counsel for the United States, to date, Defendants have addressed over 80% of annual SSO volume, and combined SSO and CSO projects completed to date have removed more than 200 million gallons of flow on an annual basis.  Significant work continues on projects required by the Decrees and on projects that have been subsequently approved by the Regulators as being consistent with any likely final solutions for the system.

*SSO 700*

- Defendants have complied with the SSO Decree's requirements to build and operate a Chemically Enhanced High Rate Settling and Storage Facility to reduce contaminant loading and improve the quality of discharges from SSO 700 while the permanent solution for SSO 700 is being designed and built.  The facility was

completed by December 31, 2007, as required, began operating, and Defendants are currently addressing remaining "punch list" items. Defendants have begun testing the facility as required by the Two-Year Effectiveness Study required by the SSO Decree. *See* attached excerpt from 4th Quarter 2007 Progress Report, Part I, p. 3.

- The SSO Decree's schedule for the permanent remedy for SSO 700 allowed Defendants to take advantage of a deep tunnel that the parties anticipated would be built by the Army Corps of Engineers for flood control, which could also have been used to reduce CSOs and flows to SSO 700. Unfortunately, this project did not go forward, and, as required by the SSO Decree, Defendants notified EPA that it would not be relying on the tunnel for its SSO 700 permanent remedy. *See* attached excerpt from 4th Quarter 2007 Progress Report, Part I, p. 3. Defendants are currently considering options for SSO 700's final remedy.

*Supplemental Reports, Plans, and Supplemental Environmental Projects*

- Defendants timely submitted and EPA approved the CSO Decree's reports concerning the "Nine Minimum Controls," including the High Water Dry Weather CSO Report; Maximization of Transport and Storage Report; Report on Control of Solids and Floatable Materials. Defendants are working to implement the five remedial projects required by the approved reports. *See* attached excerpt from 4th Quarter 2007 Progress Report, Part II, pp. 8-10.

- Defendants are implementing the Decrees' various requirements for operations and maintenance, and SSO and CSO response, including the SSO Monitoring

> And Reporting Plan, Sewer Overflow Response Plan, Operation and Maintenance Program, Industrial Waste SSO/CSO Discharge Management and Minimization Plan, Pump/Lift Station Operation and Maintenance Procedures, and CSO Public Notification Program. *See* attached excerpt from 4th Quarter 2007 Progress Report, Part I, pp. 4-5, Part II, p. 8.

- Defendants are implementing the six Supplemental Environmental Projects required by the CSO Decree. The two In-Stream Habitat Restoration Projects are completed and in the "warranty period" (at a cost of $338,350 versus the Consent Decree's estimate of $250,000); as is the Village of Elmwood Place Waste Facility Remediation (at a cost of $1.4m versus the Decree's estimated cost of $355,000; the contractor continues to perform "warrantee work."). Work continues on the three Caldwell Seymour Greenway and Ecological Restoration Projects. *See* attached excerpt from 4th Quarter 2007 Progress Report, Part II, pp. 12-15.

*SSO Capacity Assurance Program Plan (CAPP) and CSO Long Term Control Plan Update (LTCPU)*

- Defendants timely completed the significant data collection, modeling, monitoring, public outreach, and analysis required by the decrees prior to the submission of the CAPP and LTCPU.[1]

---

[1] This includes completion of the Sewer System Hydraulic Model, the Capacity Assessment Plan and Report, numerous public outreach meetings and open houses, and frequent update meetings with the Regulators as work proceeded. *See* attached excerpt from 4th Quarter 2007 Progress Report, Part I, p. 3, and Part II, p. 6.

- Defendants submitted a draft LTCPU and CAPP to the Regulators and Sierra Club in the spring of 2006, and both before and after that submission sought input from the public and the regulators as required by the CSO decree and other City and County requirements and protocols. (*See* note 1.)
- Defendants timely submitted the final proposed Wet Weather Improvement Program (including, inter alia, the CAPP and LTCPU) (hereafter, "the Plans") to the Regulators on June 22, 2006. In the Plans, the Defendants proposed to spend almost $2 billion over a 22 year period (by the end of December 2029) to address their significant CSO, SSO, and other system conditions.

*Current Negotiations Concerning LTCPU and CAPP*

After receiving the proposed Plans, the Regulators reviewed them in depth and found that despite the significant planning effort that went into the Plans and the significant projects and outlay of money that were proposed, the Plans might well not achieve the compliance requirements of the Decrees. The Regulators and Defendants have met in person or held conference calls regularly since that time to reach agreement on a solution that will lead to compliance "as expeditiously as practicable" and in a manner that is affordable (under EPA's guidance) for the ratepayers.

In the Spring of 2007, the regulators and Sierra Club encouraged Defendants to consider including a "green infrastructure" component as part of the Plans. "Green infrastructure" refers to measures that can be used to keep rainwater out of the sewer system so that it does not contribute to sewer overflows and also to reduce the amount of untreated runoff discharging to surface waters. Green infrastructure also allows storm water to be absorbed and cleansed by soil

and vegetation and either re-used or allowed to flow back into groundwater or surface water resources.  Green infrastructure measures include green roofs, trees and tree boxes, rain gardens, porous and permeable pavements, vegetated median strips, reforestation/revegetation, rain barrels; and protection and enhancement of wetlands, riparian buffers and floodplains.  Green infrastructure has the potential to reduce the magnitude and costs of the measures that Defendants would be required to construct to address their CSO and SSO problems.

In July 2007, Defendants submitted a report entitled "Green Infrastructure Program," which evaluated the concept of a major storm water minimization program using green infrastructure and related method.  While significant details remain to be worked out, this report represents the most ambitious green infrastructure proposal made to EPA to date by a municipality.  Defendants have worked diligently with the Regulators and have met several times with Sierra Club to refine this effort.  Additional work is underway in response to the Regulators' and Sierra Club's comments and questions, and all Parties plan to confer later this month to review Defendants' findings.

Defendants, the Regulators, and their respective financial experts have also spent significant time and efforts to reach a common understanding of the Defendants' financial capability to fund this extremely costly undertaking.  Financial conditions have changed significantly in the past several years, and the parties are working hard to develop a schedule that will prioritize the work to be performed and that will be "as expeditious as practicable" in keeping with  "affordability" considerations for the ratepayers.  Defendants have also met with Sierra Club to explain the financial constraints and solicit input on its priorities for the necessary work.

The complexity of the technical and financial issues has delayed completion of final, approvable Plans. It is clear, however, that Defendants are proceeding expeditiously, and the Regulators and Defendants are working diligently and in good faith, with input from the Sierra Club, to reach a full resolution of the matters under the Consent Decree. In the meantime, Defendants continue to implement significant capital improvement projects and to comply with the Decrees' other requirements.

        Respectfully submitted,

        RONALD J. TENPAS
        Assistant Attorney General
        Environment and Natural Resources Division
        United States Department of Justice
        Washington, D.C. 20530


        S/LESLIE ALLEN
        LESLIE ALLEN
        Senior Attorney
        Environmental Enforcement Section
        Environment and Natural Resources Division
        United States Department of Justice
        P.O. Box 7611
        Washington, D.C. 20044-7611
        (202) 514-4114

        GREGORY G. LOCKHART
        United States Attorney
        for the Southern District of Ohio


By:   S/DONETTA D. WIETHE (P/T/A/ L.A.)
       DONETTA D. WIETHE (0028212)
       Assistant United States Attorney
       221 East Fourth Street
       Atrium II, Suite 400
       Cincinnati, Ohio 45202

                    (513) 684-3711

OF COUNSEL:

Gary Prichard
Associate Regional Counsel
U.S. EPA, Region 5 (C-14J)
77 West Jackson Blvd.
Chicago, IL 60604-3590

                FOR STATE OF OHIO:
                MARK DANN
                Attorney General


    By:    S/Margaret A. Malone   (p/t/a LA)
                MARGARET A. MALONE (0021770)
                Assistant Attorney General
                Environmental Enforcement Section
                30 East Broad Street
                25th Floor
                Columbus, Ohio 43215-3400
                (614) 466-2766



                FOR OHIO RIVER VALLEY WATER
                SANITATION COMMISSION:


                S/J. Steven Justice (p/t/a LA)
                J. STEVEN JUSTICE
                Taft, Stettinius & Hollister LLP
                110 N. Main St., Ste. 900
                Dayton, OH 45402
                (937) 228-2838

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, Resubmitted Status Report by the United States, State of Ohio, and ORSANCO and its associated attachment, was served on the 17th day of April, 2008, electronically on:

Arthur Walter Harmon, Jr hda@cinci.rr.com

Margaret Ann Malone mmalone@ag.state.oh.us

Dennis David Altman daltman@environlaw.com

Mark Alan Norman lrback@vssp.com, manorman@vssp.com

Nee Fong Chin neefong.chin@hcpros.org

Caleb Brown, Jr cbrownjr@fuse.net

Phillip Jude Smith pjsmith@vssp.com, jasheldon@vssp.com

Joseph Steven Justice justice@taftlaw.com

Louis L McMahon louis.mcmahon@thompsonhine.com

Lance D Himes lhimes@environlaw.com

Terrance A Nestor terry.nestor@cincinnati-oh.gov

Albert J Slap albertslap@slaplaw.com

Jessica Leigh Powell jpowell@lascinti.org

Nicole Lashon Sanders nicole.sanders@cincinnati-oh.gov

Notice has been sent by United States mail to:

Betty J Brown
428 Glenwood Avenue
Cincinnati, OH 45229

Stephanie Mueller
3225 Westbrook Drive
Apartment #1
Cincinnati, OH 45238

Charles Thompson
3294 Greenway Ave
Cincinnati, OH 45248

Ada Washington
11667 Mill Road
Cincinnati, OH 45240

Amy Jo Leonard
D David Altman Co LPA
15 East Eighth Street
Suite 200 W
Cincinnati, OH 45202

  S/Leslie Allen
LESLIE ALLEN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice