UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | : | Case No. 1:02-CV-00107 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE S. ARTHUR SPIEGEL |
| -vs- | : | |
| | : | |
| BOARD OF COUNTY COMMISSIONERS | : | **OMBUDSMAN'S SUPPLEMENTAL** |
| HAMILTON COUNTY, OHIO, et al., | : | **STATUS REPORT** |
| | : | |
| Defendant. | : | |

**I.   Summary**

On March 31, 2008, the Ombudsman submitted a Report to the Court. The report summarized the activities of the Ombudsman since December 2006. It also updated the Court and parties as to the Ombudsman's perspective on Metropolitan Sewer District's ("MSD") ongoing implementation and operation of the Water-in-Basement Program ("WIB"). MSD concurred with the Ombudsman's March 2008 Report.

Since the writing of the March report, three issues have arisen related to MSD's implementation of the WIB program requiring a Supplemental Report to the Court. Specifically, MSD has proposed eliminating clean-up services for homeowners affected by lateral back-ups in the right of way. There is also lack of consensus as to how to best provide public outreach and information to homeowners affected by water in the basement during major rain events. Finally, MSD had assured the Ombudsman that, beginning April 2008, it would begin using "investigative field reports" to homeowners when it came out to a home to investigate a WIB incident. However, as of late June 2008, that had not happened.

Since the Ombudsman's recent hearing request, it has continued to work with MSD and made progress on some of these issues. This Report provides an update on those issues.

The Ombudsman has no objection to the July 16 Status Report, which the Ombudsman requested, being limited to the three WIB-related issues raised above, whereby eliminating the need for all parties to this case to attend the report.

II.     **Cleaning for Backups Caused by Collapses in Laterals in the Right-of-Way**

The issue has arisen whether MSD should continue to provide cleaning services to homeowners affected by backups caused by collapses in customers' lateral lines underneath the public right-of-way. MSD has taken the position that it should not continue to offer cleaning services because it is not legally liable for maintenance of customers' lateral lines, and that it is only responsible for repair of the lateral if it collapses in the right-of-way. MSD's concern is that it cannot spend public funds to clean basements under such circumstances, and that doing so can expose it to liability for unauthorized use of public funds for private benefit. Further, MSD claims that lateral breakages are not covered under the Consent Decree.

The Ombudsman's position is the MSD should continue to offer cleaning for backups which are caused by collapses in laterals in the right-of way. When MSD cannot determine the cause of any type of backup within a reasonable period, it should offer cleanup in order to minimize any harm to the homeowner for which MSD may be responsible.

This position is made on the basis that MSD has been providing cleanup to homeowners affected by backups which are caused by collapses in the laterals in the right-of-way under the WIB program for several years. Failure to provide cleanup in such instances was raised as an issue to the Court in December 2005. The Court's response at that time was to direct MSD to "resolve the small number of damages and cleanup claims that are related to broken laterals in the right-of-way.[1]" The Court appeared to express a preference against automatic denial of cleanup services in such

instances. While the Court may now take a different position on the issue, it is the Ombudsman's role to alert the Court to MSD's proposed change in policy.

Additionally, from the Ombudsman's perspective, when it receives calls from homeowners, MSD is not always certain as the cause of a backup when it investigates a WIB claim. To minimize risk and liability to MSD, it should offer cleanup in any situation where MSD has to make the repair to the lateral right-of-way. As a practical matter, it is confusing to the property owner to have MSD undertake (and pay for) the building sewer right-of-way repair work that caused the backup, but not pay for the cleaning arising from the backup.

In response to MSD's concern that expenditure of public funds for cleaning of basements under such circumstances will expose it to liability for unauthorized use of public funds for private benefit, the Ombudsman's position is the Court can expressly authorize MSD to provide such service. Additionally, as MSD has acknowledged, a decision may be made to authorize use of such funds as a matter of public policy.

In response to MSD's assertion that lateral breakages are not covered under the Consent Decree, the Ombudsman's position is that the Consent Decree only explicitly excludes backups caused by "blockages" in the lateral. It does not preclude cleanup when MSD must undertake right-of-way repair work in the lateral.

### III.     Public Outreach

When the Ombudsman submitted its March 2008 report, it had not done any significant outreach to Hamilton County residents since the spring of 2006, and recommended another round of publicity.

---

1 See 2/03/2006 Order

The Ombudsman further recommended and MSD agreed that if a WIB situation arises in which there was a widespread problem, similar to the rain event that occurred in March 2008, the Ombudsman would collaborate with MSD to help publicize the WIB program and educate consumers through topical media outreach.

For example, MSD staff has access to the media teleprompt technology used by governmental agencies during emergency events. These are the messages that run at the bottom of the television screen on major news stations to indicate a weather emergency (e.g. storm or tornado).

MSD also committed to increasing its use of its web site to disseminate information to the public regarding the program, and sending informational inserts in its bills to Hamilton County customers in the upcoming billing cycle.

The Ombudsman and MSD have agreed to continue discussions and share input on the details of the specific type of outreach that should be used, both during major rain events and, overall, for how to collaboratively enhance public relations for the WIB program.

When the Ombudsman and MSD met in June 9, 2008, and discussed public outreach, there was no consensus or set plan on how to best reach out to customers during major rain events. MSD's concern is that public outreach during a major rain event must be carefully crafted to reach and educate the right audience. If the message is not clear, it could mislead non-County residents and/or persons whose backups are not capacity related. During a major rain event, this could result in a deluge of calls to MSD's customer service line from non-eligible homeowners and delay service to legitimately affected property owners.

The Ombudsman shares MSD's concerns and its goal that public outreach be as clear as possible during major rain events. However, the Ombudsman does not want MSD's desire to perfect the message to unnecessarily delay its actual implementation in a future rain event.

Since the Ombudsman's and MSD's meeting on June 9, the parties reconvened on June 30. Progress has been made on the issue of how to develop a clear plan with set deadlines to issue public outreach about the WIB program during major rain events. Another meeting has been set for August 11, 2008.

MSD has committed that, by July 31, 2008, it will provide for comment to the Ombudsman a list of specific additional public relations measures for the WIB which can be implemented in the near term, including:

- an email notification message that can be sent to alert the media and other interested parties when a storm is forecast;
- new public service announcements; and
- an outline of a community council engagement initiative.

The Ombudsman's overall goal and hope is that an agreed upon public relations plan for the WIB program can be reached, and that the outreach is understandable to the public and able to be efficiently implemented, particularly during major rain events. The Ombudsman and MSD will continue to work together and will report to the Court the status of this effort within 90 days.

### IV.    Investigative Field Reports

Many homeowners call the Ombudsman with questions and confusion about what MSD has found and/or determined after its investigation of a back-up problem and often have little understanding as to the cause of their problems or a grasp of what MSD did or found when they visited the home. Because of this problem, the Ombudsman has collaborated with MSD to develop "Investigative Field Reports" that homeowners will receive any time MSD is called to investigate a back-up. These reports are meant to clarify any confusion that homeowners may have concerning

MSD's investigation of their back-up, give them a better understanding as to the cause of their problems, and describe what MSD found when they visited the home.

MSD advised the Ombudsman that it would begin using its revised Investigative Field Report during the second quarter of 2008, beginning on or around April 1, 2008.  However, the Ombudsman was informed in a meeting with MSD in June 2008 that the forms were not in use.  It is our understanding that the Investigative Field Reports are now in use.  We will continue to work collaboratively with MSD and the City of Cincinnati to revise these forms as needed to provide the best service to homeowners.

**VI.     Conclusion**

The Water-in-Basement Program continues to be a valuable service for the community and has brought much needed relief to MSD customers. It is our opinion that MSD and City of Cincinnati staff continue to work towards its effective implementation.

We recommend that, unless directed otherwise by this Court, that MSD will continue to offer cleanup to homeowners who experience backups caused by collapses in the lateral in the right-of-way, for which only MSD may undertake repairs.

Further, we hope that an agreed public relations plan for the WIB program can be reached, and that any outreach to the public is clear and able to be efficiently implemented, particularly during major rain events.  The Ombudsman and MSD will report to the Court the status of this effort within 90 days.

Finally, we understand that MSD is now using the Investigative Field Reports when it goes out to homes to investigate a back-up.  We expect that these forms will be a work-in-progress, as potential improvements are made to them in upcoming revisions.  The Ombudsman

will work with MSD and provide input on the effectiveness of these forms, as we receive input from customers who call the Ombudsman's line for assistance.

In addition to the above, the Ombudsman will:

1) Continue to investigate and respond to individual phone calls from homeowners;

2) Monitor the right-to-review process that was developed in collaboration with the parties and Magistrate Judge Hogan;

3) Continue to work to resolve individual homeowner's disputes, including any remaining disagreements as to the scope of protection proposed by MSD under the WIBPP;

4) Continue to fulfill its overall role to ensure that the WIB program is working and is understandable to the public; and

5) Continue to report to the Court regarding the status of the WIB program.

Respectfully submitted,

*/s/ Jessica L. Powell*
Jessica L. Powell
Ombudsman for the MSD WIB Program
LEGAL AID SOCIETY OF SOUTHWEST OHIO, LLC
215 E. Ninth Street, Suite 500
Cincinnati, OH 45202
Phone: (513) 241-9400
Fax: (513) 241-7871
E-mail: jpowell@lascinti.org

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served on the following parties, by electronic mail, on this 14th day of July, 2008.

| | |
|---|---|
| Leslie Allen | leslie.allen@usdoj.gov |
| Dennis David Altman | daltman@environlaw.com |
| Nee Fong Chin | neefong.chin@hcpros.org |
| Lance D Himes | lhimes@environlaw.com |
| Joseph Steven Justice | justice@taftlaw.com |
| Louis L McMahon | louis.mcmahon@thompsonhine.com |
| Terrance A Nestor | terry.nestor@cincinnati-oh.gov |
| Mark Alan Norman | lrback@vssp.com, manorman@vssp.com |
| Gary Prichard | prichard.gary@epa.gov |
| Nicole Lashon Sanders | nicole.sanders@cincinnati-oh.gov |
| Albert J Slap | albertslap@slaplaw.com |
| Phillip Jude Smith | hpjsmith@vssp.com, earogers@vssp.com |
| Donetta Donaldson Wiethe | donetta.wiethe@usdoj.gov |
| Margaret Ann Malone | mmalone@ag.state.oh.us |
| Amy Jo Leonard | leonarda@environlaw.com |

Fay Dupuis
Cincinnati City Solicitor
801 Plum St.
Cincinnati, OH 45202

Gregory Gordon Lockhart
United States Attorney's Office - 3
PO Box 280
200 W. Second Street
Room 602
Dayton, OH 45402

Thomas L Sansonetti
Assistant Attorney General
Environment and Natural Resources Div
United States Department of Justice
10th & Pennsylvania Avenue N.W.
Washington, DC 20530

                                              */s/ Jessica L. Powell*
                                              Jessica L. Powell
                                              Attorney at Law

leslie.allen@usdoj.gov; daltman@environlaw.com; neefong.chin@hcpros.org; lhimes@environlaw.com; justice@taftlaw.com; louis.mcmahon@thompsonhine.com; terry.nestor@cincinnati-oh.gov; lrback@vssp.com; manorman@vssp.com; prichard.gary@epa.gov; nicole.sanders@cincinnati-oh.gov; albertslap@slaplaw.com; hpjsmith@vssp.com, earogers@vssp.com; donetta.wiethe@usdoj.gov; mmalone@ag.state.oh.us; leonarda@environlaw.com