## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | : | Case No. 1:02-CV-00107 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE S. ARTHUR SPIEGEL |
| -vs- | : | |
| | : | |
| BOARD OF COUNTY | : | **SIERRA CLUB'S STATUS REPORT** |
| COMMISSIONERS HAMILTON | : | **ON THE WET WEATHER PLAN** |
| COUNTY, OHIO, et al., | : | |
| | : | |
| Defendant. | | |

### I. Introduction

At the July 16, 2008 hearing on the Ombudsman's Supplemental Status Report, the Court made inquiry into the status of the Long-Term Control Plan ("LTCP") required by the June 2004 Global Consent Decree (the "Decree"). Counsel for the Sierra Club and Marilyn Wall (collectively "Sierra Club") answered the Court's immediate question and promised to file this supplemental status report on the broader Wet Weather Plan, which includes the LTCP (the "Plan").

It has been four years since this Court entered the Decree. Under the Decree, the MSD was to have submitted an approvable Plan two years ago. The Plan submitted by the MSD was not approvable in the eyes of both the U.S. EPA and the Sierra Club. Hence, as of July 31, 2008 (the date of this filing), the deliverables and deadlines for complying with the Clean Water Act and the Decree remain unknown, the funding to pay for the fixes to the system has not been identified, and poor water quality continues to plague the region.   While some individual Decree projects have moved forward, there is still no overall plan with solutions to meet the goals of the Clean Water Act and the Decree.   Many major projects remain in their infancy and, at best, are in the early

planning stages.

As noted in the Sierra Club's July 15, 2008 submittal to the Court (Doc. 254), the Sierra Club is deeply concerned about continuing delays, despite a much-improved relationship between the Sierra Club and the MSD and despite seemingly more environmentally-concerned personnel from the MSD and County who are involved with Decree implementation.

The Sierra Club submits that there is a need for a court order to facilitate the still slow and inefficient process to develop a Plan that meets the requirements of the Decree. Under the Decree, the substantial steps required to address the water quality and public health issues from sewage contamination are triggered by approval of the Plan. The inadequacy of the MSD's submittal has jolted the ultimate cleanup to a virtual halt. The U.S. EPA's failure to set clear deadlines contributes to the delays caused by the MSD's submittal. To be clear, while all interested parties apparently agree that the draft Plan submitted two years ago requires revision, the MSD and U.S. EPA have been, thus far, unable to develop even a "pathway to a plan" with a schedule for the submission and approval of a revised Plan. This leaves great uncertainty as to when the revised Plan will be submitted, and more importantly, when the sewage and poor water quality issues that are the subject of the Decree will finally be addressed.

Despite the Sierra Club's repeated requests that the MSD and U.S. EPA commit to a specific schedule with detailed deliverables for revising the Plan and addressing associated issues, the MSD and U.S. EPA have failed to do so. The deficient Plan, poor communication between MSD and U.S. EPA, MSD's delayed provision of information to Sierra Club, and the MSD's continued failures to recognize that fixing

sewer systems  and protecting the public from sewage contamination are high priorities have contributed to the long delays. Given these problems, a court-ordered schedule with firm deadlines for submitting an approvable revised Plan is urgently needed to avoid further delays in work that is long overdue. The Court should also consider other steps to remedy the ongoing problems. For example, audits by a forensic accountant and an independent economist reporting to the Court about the MSD's asset management problems[1] and about project funding are needed to prevent further delays.

## II. Sierra Club's Efforts Relating to the Decree

Since the Decree was entered in June 2004, the Sierra Club has participated in the LTCP Steering Committee and reviewed and commented on the draft Plan that was submitted to U.S. EPA in June 2006.  Further, the Sierra Club has continued to work with MSD staff, EPA regulators, and Hamilton County's MSD Compliance Coordinator, to find cost-effective and expedient strategies to meet Clean Water Act goals.  The MSD and Hamilton County's Compliance Coordinator agreed to consider additional analyses and, in fact, the MSD has performed additional analyses, including Green Infrastructure approaches to reduce Combined Sewer Overflow costs in the Plan.

Since the entry of the Decree, the Sierra Club has discussed, among other issues, a schedule for Decree deliverables, affordability issues associated with the Plan, the potential for implementing Green Infrastructure, and water quality improvement.  In most instances, the Sierra Club was required to discuss these issues separately with U.S. EPA and then again with MSD.  Further, Sierra Club has provided information on rate alternatives to MSD, and the City and County Commission appear to have reached

---

[1] "Asset management" is the term of art that refers to the process of maintaining the sewer system's infrastructure. By all benchmarks, the MSD has spent too little on basic maintenance of the system for years.

an internal agreement to evaluate rate alternatives.  The Sierra Club has sought rate information from MSD, as well. ***This information has revealed that the MSD appears to be proposing an extension of the Decree schedule to 2038.***

### III. Sierra Club's Concerns Relating to the Plan

The Sierra Club has a number of concerns with the Plan as submitted in June 2006 and with the process that was followed in developing and submitting the Plan.

First, most of the information about the Plan was not made available to the LTCP Steering Committee or the Sierra Club during the development of the Plan.  As a result, this necessitated extensive review by the Sierra Club of twenty-four volumes of material during a short time period.  After this review, Sierra Club had numerous questions about the material.  Sierra Club met with MSD seeking answers to these questions during and after the comment period. Further, Sierra Club also met extensively with MSD and its consultants, attempting to obtain necessary information to appropriately evaluate projects and revisions to the Plan.  Since the appointment of the County's Compliance Coordinator, information flow has improved.  However, Sierra Club has not been provided timely access to MSD's plans and data, unnecessarily creating situations in which the Sierra Club must analyze MSD proposals on various issues in short periods of time. This process is inefficient and indefensible given that taxpayers pay for the work relating to MSD's plans and data. To be clear, the Sierra Club does not recommend further delay as a solution to these problems.

Second, in the Plan, the MSD proposed lowering water quality standards, without providing the costs and projects that would be needed to achieve water quality standards.  This was a serious flaw in the Plan. Since June 2006, the Sierra Club

understands that MSD has abandoned the idea of lowering water quality standards and is revising the Plan to meet current standards. The Sierra Club warned the Court at the fairness hearing that the MSD would attempt to delay the process by its efforts to lower water quality standards. This is exactly what has happened.

Third, during the Plan development process and the public comment period, the Sierra Club objected to the MSD's affordability analysis. As this Court is aware, the Decree initially called for the Plan to be implemented by 2022 at a projected cost of $1.5 billion. The Sierra Club was concerned, at that time, that the timeframe was too long and that the projected cost of implementation was too low. Further, Sierra Club was concerned that the MSD would attempt to prolong implementation even further. This concern has proven to be well-founded, as the Plan now calls for $1.9 billion to be spent by 2029. The Sierra Club understands that, since submitting the Plan, the MSD wants to move the deadline back to 2038, further delaying achievement of the requirements of the Decree and the Clean Water Act. The Sierra Club remains concerned that the projected costs are inaccurately low (MSD's projections show a cost of over $3.0 billion) and that the timeframe for implementation is too long.

Fourth, as a corollary to the concern raised in the preceding paragraph, Sierra Club is concerned about "rate politics" being used to delay deadlines and achieve inadequate cleanups. Sierra Club is mindful of the impact that implementation of the Decree could have on low and middle-income residents and has sought alternatives that would lower implementation costs and lessen the impact on such individuals, yet still meet water quality standards in an expedient timeframe. The Sierra Club is concerned that other objectives will continue to be prioritized ahead of maintaining and

improving MSD's infrastructure, cleaning up the water, and protecting public health. The County has maintained a good credit rating, thus indicating the ability to pay for implementation of the Decree. However, the County must prioritize meeting the goals required under the Decree, given the public health concerns associated with delayed implementation.

### IV. A Court Order is Necessary to Move the Plan Forward

The Sierra Club has spent considerable time trying to coordinate and move this process forward with MSD and the U.S. EPA.  These efforts, however, have not achieved the goals of cleaning up the water, as the Decree requires. Without an approved Plan, there is no certainty as to when the goals of the Clean Water Act will be met or when the public will be protected from sewage contamination as required by the Decree.  Accordingly, intervention by this Court is necessary.

The Sierra Club requests that the Court order the MSD, the County, the City, the Sierra Club, and the U.S. EPA to engage in joint discussions about the Plan. Further, the Sierra Club requests that, after such discussions, the parties be ordered to provide the Court with firm deadlines for the submission of the Plan and associated rate or rate alternatives for approval by the Court.   It is also important for U.S. EPA to provide a firm deadline to approve or disapprove the revised Plan after resubmission.  Otherwise, the possibility for additional long delays in the process will remain.

Accordingly, the Sierra Club respectfully requests that the Court grant the relief requested in this filing or schedule a hearing to consider these issues.

Respectfully Submitted,


/s/ D. David Altman_____

D. David Altman (#0021457)
D. David Altman Co., L.P.A.
15 East 8th St., Suite 200W
Cincinnati, OH 45202
Phone: (513) 721-2180
Fax: (513) 721-2299
daltman@one.net

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2008, I caused a true and correct copy of the foregoing to be filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ D. David Altman
Trial Counsel for Sierra Club and
Marilyn Wall