UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>    Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>    Defendants. | Case No. 1:02-cv-107<br>Spiegel, J.<br>Litkovitz, M.J.<br><br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>FOUR E PROPERTIES, INC. |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Four E Properties, Inc. ("Four E"), submitted by Steven Verkley. (Doc. 582). Mr. Verkley, on behalf of Four E, seeks compensatory damages from the Metropolitan Sewer District of Greater Cincinnati ("MSD") for sewer water backup into his basement.

Mr. Verkley's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer Systems or caused by blockages in occupants' own lateral sewer lines.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.*

Four E is the owner of the property located at 7019 Acre Drive, Cincinnati, Ohio. Mr. Verkley, on behalf of Four E, claims $5,305.00 in property damages sustained on September 26, 2011[2], due to alleged sewer backup into the property. Mr. Verkley has attached an itemized list to his request for review detailing these damages. (Doc. 582 at 9). Mr. Verkley also seeks damages to pay off the existing mortgage on the property. (*Id.* at 5).

On November 30, 2011, MSD denied Mr. Verkley's claim to recover damages resulting from a flooded basement during a rain event on September 26, 2011. MSD determined that although the initial review of the September 26, 2011 basement flooding incident seemed to indicate the backup may have been caused by insufficient capacity in the public sanitary sewer line, further investigation revealed that the cause of the basement flooding was overland flooding from intense rainfall that overwhelmed local storm sewers and drainage systems. MSD reported that several inches of rain fell in the area in a very short period of time, causing a fork of Mill Creek to overflow its banks and enter the basement. MSD concluded that it was therefore not responsible for the damages claimed.

---

[2]Mr. Verkley's appeal documents reflect the sewer backup occurred on September 25, 2011, while MSD's denial letter identifies the date as September 26, 2011. The discrepancy on the actual date of the sewer backup does not affect the resolution of Mr. Verkley's appeal.

2

Mr. Verkley disputes MSD's contention that insufficient sewer capacity was not the cause of the flooding at his property on September 26, 2011. Mr. Verkley states there was four to five feet of sewage in the basement following the backup and that MSD promptly cleaned the basement when notified of the backup. He states he was advised to file a claim with MSD for the damages. However, when MSD denied his claim, it was too late to file a claim with his insurance carrier. Mr. Verkley disputes that the backup was caused by overland flooding. He states that there is an outside sump pump drawing water away from the house and over the hill; there is a man door leading to the basement that was undamaged; and there were two working sump pumps inside the basement that pump water outside and over the hill. Mr. Verkley asserts that there was not "enough water coming in through a closed and locked door (undamaged) to overwhelm 2 sump pumps." (Doc. 582 at 3).

MSD argues that the damage to Mr. Verkley's property was caused by overland flooding which is not compensable under the Consent Decree. MSD contends that Mr. Verkley's property is situated within the 100 year floodplain for the West Fork of the Mill Creek. (Doc. 590, Exh. A). MSD states that on the date of the backup, a storm caused the West Fork of the Mill Creek to overflow its banks. A crew was dispatched to the property on September 26, 2011, about four hours after MSD received a call from Mr. Verkley. Upon inspection, the crew found that the mainline appeared to have surcharged but was now open. Upon entering the home, the crew observed several feet of water in the basement. The crew reported this information to dispatch and a second crew was sent to pump the water out of the basement. That same afternoon, Tom Fronk, an Engineering Technical Supervisor with MSD's Special Investigations Division, arrived

3

at the property before the pumping crew finished its work. He observed that a few inches of water remained in the basement at that time, and that the water was slowly receding. Mr. Fronk continued his investigation by pulling the upstream sewer manhole, where he observed that there were a few inches of flow in the channel. He did not observe any evidence that the mainline had surcharged. Mr. Fronk then went to the rear of the property and observed signs of overland flooding on the back of the house. MSD has submitted photographs reflecting the signs of overland flooding. (Doc. 590, Exh. B). Mr. Fronk observed that the waterline on the back of the property indicated flood water depth of about three feet, consistent with the depth of the reported backup. Mr. Fronk determined that because the basement floor elevation is 806.5 feet, and the water in the basement was approximately three to four feet deep, the water would have reached an elevation of approximately 810 feet. MSD has attached a schematic illustrating the differences in elevation between the basement and the public sewer. (Doc. 590, Exh. C). Mr. Fronk concluded that this meant that in order for the sewer to have surcharged to the level alleged by Four E properties, the nine foot deep manhole upstream, with an invert elevation of 801.28 feet, would have to have been near the rim at its peak. However, Mr. Fronk observed the level in the manhole did not indicate that the main sewer rose to this level. When he arrived at the site, a few inches of water remained in the basement, which would have required that over four feet of water remain in the main sewer. Instead, he observed only a few inches in the channel. Mr. Fronk concluded that although the crew observed that the mainline may have surcharged, it could not have caused the flooding in the basement of 7019 Acre Drive. For this reason, MSD determined that overland flooding caused the backup to the property and denied

4

Mr. Verkley's claim.

MSD asserts that Mr. Verkley's appeal is untimely and should be denied for this reason. MSD also asserts that overland flooding is expressly excluded from the SBU program under the Consent Decree and that the appeal should be denied.

Under the procedures for federal court review of the denial of SBU claims by MSD, claimants should file requests for review within 90 days of MSD's denial. (Doc. 162, Exh. C). Mr. Verkley was notified of the 90-day time limit in both MSD's November 30, 2011 denial letter and the "Claims Review Information" included therein. (Doc. 582 at 2, 4). However, Mr. Verkley filed his request for review in this Court on October 26, 2012, nearly one year after MSD's denial of his claim. Therefore, Mr. Verkley's request for review is untimely.

Even if the request for review were timely, the Court must uphold the denial of Mr. Verkley's claim by MSD. As an initial matter, the Court notes that under the Consent Decree, "MSD's provision of cleanup services under this program does not constitute an admission of liability by MSD with regard to any claims that the occupant may have against MSD for real or personal property damage caused by the building backup." (Doc. 131, Exh. 7 at 4). MSD will provide cleanup services when doubt exists about the cause of the backup after an initial investigation. (Doc. 262 at 2). Therefore, the fact that MSD provided this cleaning service to the property at 7019 Acre Drive does not answer the central issue in this case: what was the cause of the sewer backup?

The SBU cases before this Court often present difficult issues to resolve. There is no exact science to determine the cause of basement flooding in many of the cases presented to the

Court. Claimants like Mr. Verkley bear the burden of proof of showing that flood damage was caused by a sewer surcharge and not overland flooding. While the crew that initially responded to the backup at 7019 Acre Drive may have opined that the mainline sewer had surcharged, the later investigation by Mr. Fronk shows overwhelming evidence of overland flooding, leading to the conclusion that the more likely cause of the damage to the property was overland flooding. The Consent Decree explicitly precludes an award of damages for "water in buildings caused by overland flooding not emanating from MSD's Sewer Systems. . . ." (Doc. 131, Consent Decree, Exhibit 8 at 1). In the absence of other evidence establishing the property damage was caused by a discharge in the sewer line, and not overland flooding, the Court is constrained to uphold MSD's decision in this case.

Therefore, the Court denies Four E's claim in this case.

**IT IS SO ORDERED.**

Date: 4/25/13

Karen L. Litkovitz, Magistrate Judge
United States District Court