UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,　　　　Case No. 1:02-cv-107
　　　Plaintiffs　　　　　　　　　　　　　　Spiegel, J.
　　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.

vs

BOARD OF HAMILTON COUNTY　　　　　　ORDER RE: REQUEST
COMMISSIONERS, et al.,　　　　　　　　　FOR REVIEW BY
　　　Defendants　　　　　　　　　　　　　HARRY PEARCE

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Harry Pearce. (Doc. 592). Mr. Pearce seeks compensatory damages from the Metropolitan Sewer District of Greater Cincinnati ("MSD") for water backup into his basement.

I. Background

Mr. Pearce's request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer Systems or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.*

II. Evidence presented

Mr. Pearce is the owner of the property located at 691 Dunwoodie Drive, Anderson Township, Ohio. Mr. Pearce's basement flooded on July 18, 2012, following a rain event during which 1.89 inches of rain fell in a short period of time. Approximately 1000 square feet of basement was covered in two feet of sewer and waste water. Mr. Pearce alleges he sustained $10,424.00 in property damage due to sewer backup. Because Mr. Pearce received $5,000.00 from his insurance company on a claim filed in connection with the backup, he now seeks the balance of $5,424.00 in damages from MSD. Mr. Pearce has submitted an itemized list detailing these damages, which include costs associated with plumbing, cleaning, drywall repair, and carpet replacement. (Doc. 583 at 3).

MSD denied Mr. Pearce's claim, finding that the backup of water into his property was the result of a blockage in the private building sewer line and not a problem in the public sewer. Mr. Pearce disputes MSD's finding and contends there is evidence that the backup did not emanate from his property. Mr. Pearce presents evidence that the tenants who rented the home at 691 Dunwoodie Drive were on vacation for the relevant time period (from July 15 through July

19, 2012). The tenants were out of the home when the sewer water backup occurred, and when they returned from vacation on the evening of July 19, 2012, they discovered sewer water in the basement. Mr. Pearce asserts that because there was no home water use the entire week preceding the backup, it is logical to assume the source of the problem was external to the home. (Doc. 583, Exh. A). Mr. Pearce states that he had not experienced a backup of sewer water at his property prior to the July 18 event.

Mr. Pearce also presents the declaration of George Cummins of Gil Ruehl Plumbing Co. Mr. Cummins is the plumber who investigated the backup at 691 Dunwoodie Drive on July 27, 2012 at Mr. Pearce's request. Mr. Cummins states he found clear evidence of significant back wash in the building lateral line which occurred from a large flash rain storm on July 18, 2012. He opined that because no one was home from July 15 through July 19, 2012, the backup could not have been caused by a problem from inside the house. He also stated that although his investigation revealed some root restriction at the 123 foot mark in the lateral sewer line, this did not keep the sewage and waste from backing up from the public main line. Mr. Cummins opines that in his professional opinion, the "problem was the direct result of a major back up that occurred from the main MSD line to the house." (Doc. 583, Cummins Decl.).

Mr. Pearce also presents a letter from William Wilson of Tri-Weh, the restoration company who did repair work following the backup. (Doc. 583, 10/22/12 Wilson letter). Mr. Wilson states that on July 19, 2012, he observed sewage and waste water backup in the basement of Mr. Pearce's property. Mr. Wilson opines that based on the representation that no one was in the home the week of the backup, "it is logical to assume that sewage and waste water had to come from the mainline backup up through the home owner's outgoing sewer line." *Id.*

3

MSD presents evidence that in response to Mr. Pearce's July 19, 2012 phone call regarding the backup of sewer water, MSD investigated. MSD responded on July 20, 2012, and discovered that 691 Dunwoodie Drive is tapped into the 12-inch public sanitary sewer on Bennett Road. When they arrived, the MSD crew found that the public sewer was open and running and there was no evidence of a surcharge. At the hearing of this matter, Tom Fronk, an Engineering Technical Supervisor with MSD's Special Investigations Division, testified that when the mainline public sewer surcharges, there is evidence of debris, tissue, or waste on the inside walls or ladder rungs of the manhole, as well as debris and waste water on the ground or grass adjacent to the manhole cover. The crew also found no evidence of an overflow at the downstream manhole. The basement of 691 Dunwoodie Drive is approximately the same elevation as the upstream manhole rim, at 782.8 feet. The downstream manhole rim elevation is seven feet lower than the basement of 691 Dunwoodie Drive, at 775.3 feet. The MSD crew told Mr. Pearce to contact a plumber and the crew also put in a request for a separate crew to further investigate the condition of both the sanitary sewer on Bennett Road and the portion of the building sewer that lies within the public right-of-way using closed circuit TV equipment ("TV inspection").

On July 24, 2012, a second MSD crew conducted a TV inspection of two mainline sewer segments on Bennett Road. The TV inspection reports indicate the two segments were found to be in good condition with no signs of an overload or blockage. (Doc. 592, Exh. A). That same day, the MSD crew conducted a TV inspection of the portion of Mr. Pearce's building sewer that lies within the public right-of-way. The TV inspection report indicates that no structural defects were found in the right-of-way that would cause a sewer backup and there was a small amount of roots in the right-of-way lateral line. (Doc. 592, Exh. B).

4

The Court has reviewed video evidence taken by George Cummins, the plumber Mr. Pearce hired. Mr. Cummins conducted a TV inspection of the private lateral sewer line at 691 Dunwoodie Drive on July 27, 2012. (Doc. 592, Exh. C). The video shows the building sewer was backed up and full of sludge at 56 feet. Mr. Cummins then cable cleaned the sewer line and again conducted a TV inspection. This time, the camera reached a ball of roots at the 123 foot mark. On the video, Mr. Cummins can be heard commenting, "Now, we do have a wall of roots here. We got a hole through the roots. We used a 4 inch single knife. So this line here is for the most part blocked off with roots. And, must have been where it was holding at. So, uh, we can't get through that particular hole, so looks like we're going to have to back out from here." *Id.*

MSD states that its investigation revealed that no other homes in the area reported sewer water backup as a result of this rain event. Based on MSD's investigation and the apparent blockage of the lateral sewer line, MSD denied Mr. Pearce's claim on August 16, 2012.

III. Resolution

Under the SBU program governed by the Consent Decree, homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system and not due to blockages in the occupant's own lateral sewer lines. (Doc. 131, Consent Decree, Exhibit 8 at 1). Here, Mr. Pearce has not shown that the wastewater backup into his basement was caused by inadequate capacity in MSD's sewer system. The evidence before the Court shows both sludge and root ball blockages in the lateral line which are the responsibility of the homeowner. In addition, the contemporaneous investigation of the main sewer line disclosed no evidence of any signs of sewer discharge and MSD received no other complaints of sewer backups in the vicinity

of 691 Dunwoodie Drive at the time of Mr. Pearce's reported backup to substantiate a problem with the public sewer line. MSD presents evidence that the elevation of Mr. Pearce's basement is seven feet above the downstream manhole on Bennet Street. This means that if there was a surcharge in the main public sewer line, the downstream manhole would have necessarily surcharged before reaching the elevation of Mr. Pearce's basement. There is also evidence that there were no blockages in the main sewer line to which Mr. Pearce's lateral line connected which could have caused a backup of sewer water into the property. Therefore, any flooding of Mr. Pearce's basement was not the result of a capacity-related problem with the main sewer line, but rather was caused by a blockage in the lateral line for which the homeowner is responsible. There is insufficient evidence to show that the cause of the flooding to Mr. Pearce's basement resulted from inadequate capacity in MSD's Sewer System.

The question left unanswered in this case is how water infiltrated the building lateral that caused the sewer water backup into Mr. Pearce's basement. As indicated at the hearing, there was a significant amount of rain that fell in a short period of time on July 18, 2012, and given the amount of rainfall there was likely groundwater saturation. Whether the flooding of Mr. Pearce's basement was caused by faulty or porous pipes leading to his house, unauthorized storm water connections to the sanitary building/lateral line[2], footer drains/tiles draining into the building lateral sewer line, or some other source is simply unknown.

The Court is not unsympathetic to homeowners such as Mr. Pearce who experience flooding issues such as those that occurred in this case. The Court appreciates Mr. Pearce's

---

[2]Under Section 1201a of the MSD Rules and Regulations, removal of direct or indirect unauthorized storm water connections to a sanitary sewer line is the responsibility of the property owner.

6

frustration at being told by his plumber and restoration company that the backup was likely caused by the public sewer discharging, only to be later advised that MSD is not responsible for the damage. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to his property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater onto the property due to inadequate capacity in MSD's Sewer System. Where, as here, the preponderance of the evidence does not establish that the damage to Mr. Pearce's basement was caused by inadequate capacity in the MSD Sewer System, the Court is constrained to deny Mr. Pearce's claim.

**IT IS SO ORDERED.**

Date: 5/9/13

Karen L. Litkovitz, Magistrate Judge
United States District Court