# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
    Plaintiffs,

    vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
    Defendants.

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

**ORDER RE: REQUEST
FOR REVIEW BY
KENNETH McNEAL**

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Kenneth McNeal (Doc. 785) and the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 790). On March 22, 2016, the Court held a hearing on Mr. McNeal's request for review at which Mr. McNeal and Tom Fronk, MSD Engineering Technical Supervisor, testified and documentary evidence was submitted. (Doc. 801).

Mr. McNeal's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer Systems or caused by blockages in occupants' own lateral

---

[1]The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

sewer lines.

(*Id*. at 1).  In determining the cause of SBU, MSD must exercise its good faith reasonable

engineering judgment and consider the following non-exclusive factors: amount of precipitation,

property SBU history, condition of the sewer system in the neighborhood, results of a visual

inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU

history, capacity of nearby public sewer lines, and topography.  (Doc. 131, Consent Decree, Ex.

8 at 2).  Damages arising from basement backups for which MSD is responsible are limited to

documented real and personal property.  *Id*.  Homeowners who are dissatisfied with MSD's

disposition of a claim under the SBU program may request review of the decision by the

Magistrate Judge, whose decision is binding and not subject to any further judicial review.

(Docs. 154, 190).

Mr. McNeal is the owner of the property located at 6448 Greenfield Drive, Cincinnati,

Ohio.  He seeks compensation for personal property loss sustained on or about July 18, 2015,

due to alleged sewer backup into his basement.  (Doc. 785).  On August 4, 2015, Mr. McNeal

filed an SBU claim with MSD.  MSD denied the claim because Mr. McNeal failed to notify

MSD of the potential backup within 24 hours of the discovery of its occurrence and the evidence

did not show that a public sewer surcharge was the cause of his property's backup.  MSD

concluded that it was therefore not responsible for the damages claimed.  In response to the

denial, Mr. McNeal requested that MSD reconsider its decision.  (Doc. 790, Ex. D).  Mr. McNeal

advised MSD that he did not contact MSD within 24 hours of the backup because he had

previously contacted MSD in May 2013 to report a "sewage backup in [his] home due to heavy

rain fall" and received misleading information from an MSD employee that "MSD did not come

2

out to service that type of situation anymore." (*Id.*). Mr. McNeal also advised MSD that four other homes on Greenfield Drive were damaged by sewer backup as a result of the excessive rain on July 18, 2015. (*Id.*). MSD conducted a further investigation and concluded that overland flooding, and not sewer backup, was the likely cause of Mr. McNeal's backup. Mr. McNeal disagreed and filed this appeal.

At the hearing on this matter, Mr. McNeal did not dispute that he failed to contact MSD within 24 hours of the July 18, 2015 backup. Nevertheless, Mr. McNeal testified that he did not contact MSD until two weeks after the event based on misinformation he had received from an MSD employee. Mr. McNeal stated that in 2009, he experienced a backup in his basement. He contacted MSD, which responded to his property and cleared the blockage in his privately owned building sewer line by rodding the line. (*See also* Def. Ex. H). Mr. McNeal stated he was advised at that time that he could not call MSD back for two years. In 2013, Mr. McNeal called MSD to report another backup. Mr. McNeal testified that he was told by the MSD dispatcher that "MSD does not come out for this situation anymore." Upon further questioning by the Court, Mr. McNeal stated he asked MSD to "come out and run the rooter through it or whatever and the guy told me we don't do that service anymore."

Mr. McNeal also testified that on July 18, 2015, there was a heavy rainfall. He observed raw sewage and water coming out of the drain in his family room basement. Based on the previous information he had received from MSD in 2013 and believing that MSD could do nothing for him, Mr. McNeal did not contact MSD. Instead, he contacted a restoration company to clean his basement and haul away the damaged personal property. This included carpeting that was contaminated with bacteria from the backup. Subsequent to the cleanup, the restoration

3

company recommended that Mr. McNeal call MSD about making a claim for the property damage that was not covered by his insurance. This prompted Mr. McNeal to call MSD on August 4, 2015, and make the claim that is at issue in this case. As relief, Mr. McNeal seeks $5,400.00 in property damage.

MSD presents evidence that its investigation of a neighboring property at 6423 Greenfield Drive on July 19, 2013, showed the public mainline sewer was open and running and was not backed up. (Def. Ex. F). The MSD crew observed no sign of a public sewer surcharge. (*Id.*). MSD was advised that clear water emanated from the garage floor drain, the source of the backup. There was no evidence of any other manhole surcharge in the area. There was also no clear evidence of overland flooding. (*Id.*).

MSD also investigated three other properties on Greenfield Drive in response to Mr. McNeal's request for reconsideration of his claim. The video and photographic information received from one property owner did not show the source of the July 2015 basement backup. In addition, this property had previously reported backups which were caused by issues in the owner's private building sewer. Another homeowner reported that her property had experienced numerous backups over the years; however, after she replaced the clay sewer pipe under her driveway in January 2015, she experienced no further problems with backups into her home despite "major rain storms." (Def. Ex. G). The last homeowner also experienced a backup on July 18, 2015, but did not call MSD. The homeowner advised the MSD investigator that the homeowner's insurance company would not cover the damage as "the water came from the outside in." (Doc. 790, Ex. E). The MSD investigator concluded:

> None of the information gathered from the neighboring property owners indicated a public sewer issue. There is clear evidence of overland flooding contributing to

4

the issues at several properties, including 6448 Greenfield Dr.  These homes have recessed driveways with area drains and likely have their downspouts connected to the building sewer in this combined sewer area.  It is likely that this large amount of stormwater may be overwhelming the aging building sewer plus stormwater overflowing the driveway drains would also contributed (sic) to the issues in these homes during heavy rainfalls.

(*Id.*).

MSD also reviewed its call records and found no evidence of Mr. McNeal's prior call from May 2013.  Thomas Fronk testified that he personally reviewed the call recordings from May 2013 and could not locate a recording of Mr. McNeal's call to MSD.  He further testified that he believes there may have been a misunderstanding about the services MSD provides to customers.  Mr. Fronk explained that by May 2013, MSD had discontinued the practice of rodding private building sewer lines and this may have been the service that was referred to in Mr. McNeal's May 2013 telephone conversation with MSD.  Mr. Fronk's supplemental report indicates that following this change in MSD procedures, MSD would frequently receive calls from customers simply wanting MSD to rod their private building sewer lines.  He further testified that while MSD will not respond to a request to rod a private building sewer line, MSD receives thousands of calls of backups each year to which it does respond.  Finally, Mr. Fronk testified that a photograph showing the damaged exterior of Mr. McNeal's garage is another indication that overland flooding caused Mr. McNeal's damages.

As an initial matter, the Court notes that under the Consent Decree governing the Court's review of SBU appeals, occupants who incur property damage as a result of a basement backup which they believe is MSD's responsibility "must notify MSD within 24 hours of the time that the occupant discovers" the SBU.  (Doc. 131, Consent Decree, Ex. 8).  Mr. McNeal testified that he did not contact MSD within this timeframe because he believed MSD no longer addressed

5

sewer backup problems based on his conversation with an MSD dispatcher in May 2013.  While

Mr. Fronk testified that he was unable to locate a telephone call from Mr. McNeal in May 2013

in MSD's records, the Court nevertheless credits Mr. McNeal's testimony and finds that his

failure to report the basement backup within 24 hours should not bar the claim given the MSD

information upon which he relied.[2]

Even though the Court declines to deny Mr. McNeal's appeal on this procedural ground,

the Court finds that Mr. McNeal's claim must nevertheless be denied.  Mr. McNeal has not met

his burden of proof to show the damage to his property was caused by a backup of MSD's sewer

system.  Claimants like Mr. McNeal who seek review of the denial of an SBU claim bear the

burden of proof of showing that the backup of water into their property was caused by

inadequate capacity in MSD's sewer system (a sewer discharge) and not by overland flooding or

blockages in the homeowner's privately owned building sewer line.  (Doc. 131, Consent Decree,

Ex. 8 at 1).  Here, Mr. McNeal has not established that the water backup into his basement in

July 2015 was caused by inadequate capacity in MSD's sewer system.  Under the Consent

Decree, MSD must consider the history of backups in a neighborhood in determining the cause

of the backup to a particular property.  This includes whether there were other reported sewer

backups in the area at the time of the event in question.  In this case, none of the neighboring

properties showed signs of sewer backup in July 2015 resulting from the incapacity of the public

sewer system.  MSD presents persuasive evidence that a contemporaneous investigation of a

neighboring property on July 19 showed no evidence of a surcharge of the public sewer system.

Another homeowner on Greenfield Drive had no backup into her property from the rain event,

_____

[2] As it has in the past, the Court again strongly urges MSD to revise its customer service information to advise customers of the provision that customers must notify MSD within 24 hours of the time the customer discovers the SBU.

and she reported that the repair of a clay pipe under her driveway apparently resolved her backup issues.  In addition, there is evidence that overland flooding issues existed on Greenfield Drive in July 2015.  The photograph of the exterior of Mr. McNeal's garage door suggests the damage to his garage door was caused by overland flooding.  Another neighboring property owner was denied insurance coverage due to water emanating from "outside in."  The preponderance of the evidence does not establish that the cause of Mr. McNeal's basement backup was from the inadequate capacity of MSD's public sewer system.

There is no exact science to determining the cause of basement flooding in many of the cases presented to the Court and oftentimes the exact cause is unknown.  Whether Mr. McNeal's basement backup was caused by effluent from house usage which backed up from his private building lateral, faulty or porous pipes leading to and underneath his house, ground saturation seeping through the floor and walls, or some other source is simply unknown.  The Court is not unsympathetic to homeowners such as Mr. McNeal who experience a basement backup such as occurred in this case.  Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to a property.  The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater onto the property due to inadequate capacity in MSD's Sewer System.  In the absence of evidence establishing Mr. McNeal's property damage was more likely caused by a surcharge in the public sewer line and not by overland flooding or some other cause, the Court is constrained to uphold MSD's decision in this case.

7

Therefore, the Court denies Mr. McNeal's appeal in this case.

**IT IS SO ORDERED**.

Date: 3/29/16

Karen L. Litkovitz, Magistrate Judge
United States District Court