UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br><br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>WILLA AND EDGAR RUSSELL |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Willa and Edgar Russell (Doc. 829) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 831). On January 18, 2017, the Court held a hearing on the Russells' request for review at which Ms. Russell, Mr. Russell, and Tom Fronk, MSD Engineering Technical Supervisor, testified and documentary evidence was submitted. (Doc. 837).

The Russells' request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

>from MSD's Sewer Systems or caused by blockages in occupants' own lateral sewer lines.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

## I. Background

The Russell property is located at 5836 Red Bank Road, Cincinnati, Ohio 45213. On May 29, 2014, the Russells experienced flooding in their basement and garage. They submitted a claim to MSD under the SBU claims program seeking compensation for personal property loss sustained as a result of the May 29 flooding. On July 25, 2016, MSD denied the Russells' claim. MSD determined that the flood damage to the Russells' property was not caused by the inadequate capacity of MSD's sanitary sewer system. MSD determined that the basement flooding was instead caused by private internal plumbing issues from a storm sewer connected to the basement floor drain and possible overland flooding. The Russells then filed their request for review of MSD's decision in this Court.

2

## II. Evidence

Mr. Russell discovered the basement at 5836 Red Bank Road had flooded on May 29, 2014. He observed water coming from the basement floor drains and states the water rose to a level of three to four feet. Mr. Russell also observed furniture and other items floating in "black" water. The Russells contacted their insurance carrier, who hired a restoration company to clean the property. They then contacted MSD on May 31, 2014 to report the basement backup. Mr. Russell testified that they have lived at the Red Bank Road property for approximately 50 years and have never had basement flooding before or after the May 29, 2014 incident. In support of their claim, the Russells have submitted photographs of the personal property damaged by the flooding and a videotape showing the condition of the basement at or around the time of the backup. The Russells have also submitted a written statement from neighboring property owners at 5866 Red Bank Road which states that their property also had basement flooding on May 29, 2014 and that the "flood waters were coming up through the drains." (Doc. 829 at 5).

On June 1, 2014, MSD responded to the Russells' report of a basement backup. MSD performed a preliminary investigation and determined that the public sanitary sewer was open and running, and the basement was no longer backed up with water. Mr. Russell informed the MSD crew that during the heavy rain on May 29, 2014, water came up through the floor drains. The crew informed Mr. Russell that an additional investigation was needed. Because the cause of the backup had yet to be investigated and determined, MSD provided SBU cleaning services to the Russell residence.

MSD contractors Burgess & Niple ("B&N") conducted an investigation. Dye testing and a closed circuit television inspection of the property were performed on October 21, 2014 and

3

January 22, 2015. B&N determined that the property's recessed driveway trench drain, garage floor drain and basement floor drains were all connected to a public storm sewer, which is separate from the public sanitary sewer. The closed circuit television inspection found "a significant amount of debris and/or roots" in the private building storm sewer lateral. (Doc. 831, Ex. B at p. 6). B&N reported that the basement toilet and utility sink tie into the public sanitary sewer. B&N also reported that the MSD cleaning crew observed the backyard was flooded and water was coming down the recessed driveway "like a waterfall." (Doc. 831, Ex. B at p. 10). B&N also surveyed the elevations of the public sewer system in relation to the level of the Russells' basement floor. B&N reported that the basement floor is roughly 0.54 feet below the upstream storm manhole rim elevation and 1.25 feet above the downstream storm manhole rim elevation. B&N concluded a mainline backup was an unlikely cause of the basement flooding based on the reported four foot depth of the water in the basement and the relative elevations of the two public sewers. B&N reported, "It is unlikely for the basement to flood at the recorded level of 3.5' - 4.5' by a mainline backup given the elevations determined during the Task 3 investigation." Based on the findings of B&N's investigation, MSD concluded that it is improbable that the backup would have been caused by any issues in the public sanitary sewer and denied the Russells' SBU claim.

At the hearing, Mr. Fronk testified that the Kennedy Heights neighborhood where the Russell house is located is serviced by a separate storm sewer and a separate sanitary sewer. Mr. Fronk testified that MSD's investigation showed that on May 29 a large amount of rain water flowed down the recessed driveway and the downspouts, which at that time were tied into the private storm lateral line. Mr. Fronk testified that the B&N investigation revealed significant

4

debris and roots in the private storm lateral line on the Russell property which blocked the rain water from flowing out to the public storm sewer. The blockage caused a large amount of water to back up into the basement through the floor drains. Mr. Fronk also testified that even if there was a surcharge in the public sewer, the elevations of the public sanitary sewer and public storm sewer would not cause four feet of water build-up in the Russells' basement.

Mr. Russell expressed skepticism that the amount of water in his basement could have resulted from rainwater alone and he concluded that MSD's sewer system must have caused the backup. Mr. Russell testified that he observed water coming up from the floor drains and that the photographs he submitted verified that the water rose to approximately four feet in the basement.

### III. Resolution

The Claims Process Plan under the Consent Decree is designed to compensate occupants "who incur damage as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions)." (Doc. 101-9, Ex. 8, I). The Consent Decree defines "Sewer System" as "the wastewater collection and transmission system owned or operated by Defendants designed to collect and convey municipal sewage . . . to Defendants' Wastewater Treatment Plants or overflow structures." (Doc. 131 at PAGEID#: 2639). MSD's "Combined Sewer System" is the portion of MSD's Sewer System "designed to convey municipal sewage . . . and stormwater runoff through a single-pipe system. . . ." (Doc. 131 at PAGEID#: 2635). The Consent Decree and the remedies contained therein do not cover damages resulting solely from storm sewer backups. The Consent Decree covers damages from a backup in a storm sewer only where that storm sewer and the sanitary sewer are

5

combined into a single pipe system as part of the Combined Sewer System. In addition, the Sewer Backup program does not compensate for damages resulting from overland flooding not emanating from MSD's Sewer Systems.

The evidence in this case shows that there are separate sewer systems servicing the property at 5836 Red Bank Road: one for sanitary sewage and one for storm water. The preponderance of the evidence shows that the backup into the basement of the property was most likely caused by a blockage in the owner's private storm sewer line which forced water into the basement through the floor drains. There is no evidence that MSD's sanitary sewer discharged on May 29, 2014. Further, the evidence shows that the basement floor elevation of the property was roughly 0.54 feet below the upstream storm manhole rim elevation and 1.25 feet above the downstream storm manhole rim elevation. These elevations and the reported level of three to four feet of water in the basement, in addition to the backyard flooding and large amount of water flowing down the recessed driveway observed by MSD's crew, strongly suggest that overland flooding, and not a mainline discharge, contributed to the water damage to the Russells' property.

Claimants like the Russells bear the burden of proof of showing that flood damage was caused by a *sanitary* sewer surcharge and not a storm sewer issue or overland flooding. The preponderance of the evidence in this case shows that the damage to the Russells' property was caused by a backup in the owner's storm sewer lateral line and overland flooding. The Consent Decree explicitly precludes an award of damages under these circumstances. (Doc. 131, Consent Decree, Exhibit 8 at 1). In the absence of any evidence establishing the property damage was caused by a discharge in the sanitary sewer line, and not a private storm sewer lateral line

6

blockage or overland flooding, the Court is constrained to uphold MSD's decision in this case. Therefore, the Court denies the Russells' claim in this case.

    **IT IS SO ORDERED**.

Date: 1/25/17

Karen L. Litkovitz, Magistrate Judge
United States District Court