# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>**ORDER RE: REQUEST<br>FOR REVIEW BY HERBIE<br>AND ANGELA SCHELL** |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Herbie and Angela Schell (Doc. 850) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 892). On May 9, 2017, the Court held a hearing on Mr. and Mrs. Schell's request for review of the denial of their SBU claim.

Mr. and Mrs. Schell's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer Systems or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

**I. Background**

Mr. and Mrs. Schell occupy the building located at 515 Delmar Avenue, Cincinnati, Ohio, which is owned by Mr. Schell's company, DGS Development Ltd., and used by the Schells as their residence. On August 28, 2016, a "100-year" rain event caused extensive overland flooding and backup to MSD's sewer system. The Schells sustained damage to their personal and real property, both inside and outside their dwelling. Mr. Schell also lost vacation time to address the cleanup of the property. The Schells made a claim to MSD for the damages they sustained as a result of the August 2016 rain event. MSD's adjuster evaluated the Schells' claim submittal and, in compliance with Ohio Rev. Code § 2744.05(B)(1), deducted the $10,000.00 they received from their insurance carrier from the calculated total damages. MSD's adjuster valuated the real and personal property loss of the building and its contents at $24,894.97. (Doc. 892-3 at 5-6). MSD offered the Schells this amount in settlement of their

claim; however, MSD disallowed any compensation for damage to items outside of the residence, including landscaping, yard fencing, a driveway retaining wall, and other personal items, as well as the Schells' claim for lost vacation time and associated expenses. On January 19, 2017, Mrs. Schell gave MSD a signed agreement releasing the City of Cincinnati and the Hamilton County Board of County Commissioners from "any and all claims, demands, actions, and causes of action whatsoever or in any manner arising from a 'Sewer Backup' incident on or about August 28, 2016 at 515 Delmar Avenue, Cincinnati, OH 45217." (Doc. 892-4 at 4). The settlement check for $24,894.97 was cashed by the Schells on January 20, 2017. (*Id*. at 7). On March 6, 2017, Mr. and Mrs. Schell filed a request for review in this Court of the denial of their claim relating to their outside property and non-property expenses. (Doc. 850).

At the hearing, Mr. and Mrs. Schell stated that the damage to their yard and basement property was caused by an MSD sewer collapse in the parking lot of a local high school, which resulted in the backup of water on a neighboring street and flooding of their subdivision. Mr. and Mrs. Schell stated they were told by MSD representatives that they would be "fully reimbursed" for their loss, only to find out later that much of their property was valued at 50% of its worth. Mr. and Mrs. Schell further alleged they were told by MSD representatives that they should file an appeal of their claim for outside property after the claim associated with the basement and its contents was resolved.

## II. Resolution

There is no dispute that one of the causes of damage to the Schells' property was an MSD sewer backup. MSD appropriately reimbursed the Schells for the depreciated value of their personal belongings and not their replacement value or original cost. The Court notes that under

3

the Consent Decree that governs the Court's review of SBU appeals, damages for SBU claims are determined based on the market value of personal property *as of the date of loss* (the depreciated value) and not on the original purchase price or cost of replacement. Therefore, MSD's valuation of personal property (e.g., furniture, appliances, clothing, etc.) based on the depreciated value was correct. Additionally, damages through the claims process under the Consent Decree are limited to real and personal property loss and cannot be paid for other intangibles such as forfeited vacation time or expenses. (Doc. 131, Consent Decree, Exhibit 8 at 2). Thus, the only issue in this appeal is MSD's denial of the Schells' claim for outside property damage.

Whether the Schells may be compensated for property loss outside of their dwelling is governed by the Consent Decree. "A consent decree is essentially a settlement agreement subject to continued judicial policing," the terms of which a court is obligated to enforce as circumstances dictate. *Shy v. Navistar Intern. Corp.*, 701 F.3d 523, 532 (6th Cir. 2012) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). In interpreting the terms of a consent decree, the Sixth Circuit has clarified:

> "[C]onsent decrees bear some of the earmarks of judgments entered after litigation" and . . . "[a]t the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986). It is this resemblance to contracts that requires that the scope of a consent decree "be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to" the consent decree. *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971).

*Shy*, 701 F.3d at 530.

The clear language of the Consent Decree in this case limits recovery to structural or personal property damage of the building or dwelling of the occupant making an SBU claim.

The Consent Decree defines "Water-in-Basement(s)" [now called Sewer Backup or SBU] as "any *release of wastewater from Defendants' Sewer System **to buildings*** that (i) is not the result of blockages, flow conditions, or malfunctions of a building lateral or other piping/conveyance system that is not owned or operationally controlled by Defendants; and (ii) is not the result of overland, surface flooding not emanating from Defendants' Sewer System." (Doc. 131, Consent Decree at 18) (emphasis added). Similarly, Exhibit 8 to the Consent Decree[2] which governs the SBU claims process sets forth the "Scope of WIBs Covered" as follows:

> The Claims Process will *only reimburse damages arising from basement backups* caused by [1] inadequate capacity in MSD's Sewer System or [2] that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. . . .

(Doc. 131, Consent Decree, Exhibit 8 at 2) (emphasis added). Exhibit 8 to the Consent Decree further clarifies that under the Claims Process, "occupants who incur *damages as a result of the backup of wastewater **into buildings***" due to inadequate capacity in MSD's sewer system or resulting from MSD's negligent maintenance, destruction, operation or upkeep of the sewer system may recover those damages. (Doc. 131, Consent Decree, Exhibit 8 at 1) (emphasis added). There is nothing in the language of the Consent Decree to indicate that outside property damage resulting from a sewer surcharge or a combination of overland flooding and sewer surcharge (as happened in this case) is covered. In examining the four corners of the Consent Decree, the undersigned concludes that the plain language used by the parties to the decree evinces the intent to limit recovery to those damages associated with a claimant's building and

---

[2]Section XIII of the Consent Decree incorporates Exhibit 8 by reference. (Doc. 131, Consent Decree at 47).

5

not the outside yard. Therefore, MSD's denial of the Schells' claim regarding their outside property was correct.

This does not mean that homeowners like the Schells are without a remedy where they believe the damage to their outside property was caused by MSD's negligence. Homeowners who disagree with MSD's decision on their claim may file a lawsuit in the Hamilton County Municipal or Common Pleas Court, as MSD advises in their materials to consumers. *See* Doc. 892-2 at 3. *See also* http://sbu.msdgc.org/sbu/page/filing-a-claim.aspx.

The Court is not unsympathetic to homeowners like Mr. and Mrs. Schell who experience flooding issues such as those occurring in this case. The Court appreciates Mr. and Mrs. Schell's frustration in believing they followed the correct process in seeking reimbursement for the damage to their property, only to be later advised that the claims process under the Consent Decree does not cover outside items. Yet, this Court is bound by the terms of the Consent Decree in this matter and the remedies provided thereunder. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are compensable under the terms of the Consent Decree. Where, as here, the claim is for outside property that is not covered by the Consent Decree, the Court is constrained to deny the claim.

Therefore, the Court denies Mr. and Mrs. Schell's appeal in this case.[3]

**IT IS SO ORDERED.**

Date: 5/12/17

Karen L. Litkovitz, Magistrate Judge
United States District Court

---

[3] The Court declines to rule on whether the release signed by the Schells precludes any further legal action outside of the claims process governed by the Consent Decree.