UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
    Plaintiffs,

vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
    Defendants.

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

**ORDER RE: REQUEST
FOR REVIEW BY
DAVID GUERDAN**

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by David Guerdan (Doc. 857) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 930). On June 13, 2017, the Court held a hearing on Mr. Guerdan's request for review of the denial of his SBU claim.

Mr. Guerdan's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer Systems or caused by blockages in occupants' own lateral sewer lines.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

As an initial matter, the Court notes that there is no dispute that the cause of damage to Mr. Guerdan's property was an MSD sewer backup. The only issue in this case is the amount of compensation for his property loss.

Mr. Guerdan rents the home located at 4518 Camberwell Road, Cincinnati, Ohio. On August 28, 2016, Mr. Guerdan experienced an SBU incident in his basement which resulted in damage to his personal property. Mr. Guerdan made a claim for damages to MSD for the August 2016 sewer backup into his basement. An adjuster evaluated Mr. Guerdan's claim submittal and, in compliance with Ohio Rev. Code § 2744.05(B)(1), deducted the $3,974.00 he received from his insurance carrier from the calculated total damages. MSD's adjuster valuated the personal property loss at $3,271.45, after deducting the insurance carrier's payment. (Doc. 930-3 at 4-5). MSD offered Mr. Guerdan this amount in settlement of his claim. Mr. Guerdan rejected the offer and filed this appeal.

At the hearing of this matter, Mr. Guerdan testified that he disputed MSD's valuation of his personal property, particularly with respect to recreational items, his military uniforms, baby items, and an air purifier and humidifier. Mr. Guerdan testified that he is an active duty army

2

service member and wearing a military uniform is a requirement of his military employment. He disputes MSD's depreciation of his claim for four military uniforms and testified that one cannot obtain a replacement uniform on sites such as Craig's List or eBay. Mr. Guerdan also disputes MSD's valuation of personal items like nursing and pregnancy pillows, and he disputes MSD's depreciation of many of his other items of personal property that were lost in the SBU. In his written request for review, Mr. Guerdan additionally seeks damages for:

> 1. Time taken off from work to personally remove sewage water infested items from his garage and basement: $800.
> 2. Time spent documenting damages, filling out and submitting paperwork, coordinating with ServPro cleaning company, and coordinating with MSD and his insurance adjusters: $550.
> 3. The irreplaceable hard copy photos and childhood keepsakes that were destroyed: $450.
> 4. The files on computers that were lost (hundreds of non-duplicated pictures): $500.
> 5. His excessively high September utility bill, which was $150 over the usual amount due to ServPro running multiple industrial sized dehumidifiers for 72 hours straight after the cleanup: $150.
> 6. Tables purchased for his basement and garage to store household goods: $100.
> 7. Having to stay with family until the residence was cleaned by ServPro (30 days after the incident): $2000.

(Doc. 857 at 4).

MSD contends that Mr. Guerdan's request for compensation for additional items not included in his original claim, including lost income, claim preparation, sentimental items, utilities, future mitigation expenses, and staying with family are not eligible for reimbursement because they are undocumented and outside the scope of the SBU Claims Process Plan. (Doc. 930 at 2). MSD also contends that its adjuster properly assessed damages based on the market value of damaged personal property on the date of the loss, using an industry-accepted method based on the type of item, quantity, age, and cost of purchase or replacement. (Doc. 930-3 at 4).

Mr. Guerdan bases his claim for damages on the replacement value of the items lost. However, damages for SBU claims are determined based on the market value of personal property *as of the date of loss* (the depreciated value) and not on the original purchase price or cost of replacement. Therefore, with the exception of Mr. Guerdan's military uniforms, MSD properly valued the loss of personal property based on the depreciated, and not replacement, value of the items at issue.

Given the unique nature of military uniforms as a requirement for active duty military service, the Court finds the fair market value of such items is their replacement cost. Mr. Guerdan's itemized list of lost property includes one military dress uniform and three military utility uniforms at a replacement cost of $650.00. The Court's independent research establishes that the amount requested by Mr. Guerdan is fair and reasonable under the circumstances. Mr. Guerdan's itemized list also includes a military rucksack ("Alice pack") with a replacement cost of $85.00. (Doc. 857 at 17). The Court's independent research indicates this represents the fair market value of a "used" military "Alice pack." Therefore, the Court awards Mr. Guerdan $650.00 for the lost military uniforms and $85.00 for the military rucksack.

The Court notes that Mr. Guerdan included a claim for a Wii system (with games and two controllers) with a replacement cost of $340.00. MSD's adjuster mistakenly listed the value of this item as $140.00 and depreciated the item at 10% for two years. This appears to be a typographical error. (Compare Doc. 857 at 17 with Doc. 930-3 at 4). Applying depreciation to the correct amount of $340.00 yields a depreciated value of $272.00. Therefore, the Court awards $272.00 in damages for this item.

The Court finds that MSD undervalued several other items of personal property. MSD's adjuster improperly depreciated the value of light bulbs that were new and in the original packaging. Mr. Guerdan fully documented the loss of this property and he is entitled to the replacement value of these items in the amount of $185.00. MSD's adjuster also depreciated the value of non-perishable food items. MSD has represented that its adjuster uses an industry-accepted depreciation guide. (Doc. 913 at 2, Ex. F). This depreciation guide indicates that replacement cost, not depreciated cost, should be used in valuating staple or canned food items. The Court therefore awards $40.00 for these items. Finally, MSD's adjuster applied a 50% depreciation amount to all of the eight recreational items listed by Mr. Guerdan. (Doc. 857 at 17). However, MSD's depreciation guide specifies a depreciation amount of 10% per year for golf items and bicycles. Therefore, the Court awards $305.00 for the three golf bags and $440.30 for the LeMond Revolution Bike Trainer. The Court awards $370.00 for the remaining recreational items.

The Court determines that MSD's assessed value of the remaining items of personal property is fair and reasonable. (Doc. 930-3 at 4-5). Therefore, the Court awards $5,631.70 for these remaining items.

To the extent Mr. Guerdan requests compensation for the additional items listed in his request for review, this request is denied. Damages through the SBU claims process under the Consent Decree are limited to real and personal property loss and cannot be paid for other intangibles such as time off from work, expenses related to making an SBU claim, or items to mitigate a future loss such as tables or shelving to store items off the basement floor. (Doc. 131, Consent Decree, Exhibit 8 at 2). Although family photographs and childhood keepsakes

undoubtedly have sentimental value, they have virtually no market value and are not compensable under the SBU claims process.

Finally, Mr. Guerdan is entitled to compensation for the $250.00 deductible paid to his insurance carrier.

In summary, the Court awards Mr. Guerdan:

- Four military uniforms and rucksack: $735.00
- Wii system: $272.00
- Light bulbs: $185.00.
- Non-perishable food items: $40.00
- Three golf bags: $305.00
- LeMond Revolution Bike Trainer: $440.30
- Other recreational items: $370.00
- Remaining items of personal property: $5,631.70
- Insurance deductible: $250.00
- Subtotal: $8,229.00
- Less: $3,974.00 insurance proceeds

**Total Award: $4,255.00**

In conclusion, the Court awards **$4,255.00** to Mr. Guerdan for the damages sustained in

this case.

**IT IS SO ORDERED**.

Date: 6/19/17

Karen L. Litkovitz, Magistrate Judge
United States District Court