UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>ORDER RE: REQUEST<br>FOR REVIEW BY SUSAN<br>COOK |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Susan Cook (Doc. 897) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1004). On July 27, 2017, the Court held a hearing on Ms. Cook's request for review at which Ms. Cook, her son Christopher Cook, and Tom Fronk, MSD Engineering Technical Supervisor, testified and documentary evidence was submitted.

Ms. Cook's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer Systems or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(*Id*. at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id*. Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

**I. Background**

Ms. Cook owns the property located at 571 Rose Hill Avenue, Cincinnati, Ohio. Ms. Cook sustained damage to real and personal property on August 28, 2016, as a result of a significant rain event. This included damage to a retaining wall outside of her home and personal property within her home. MSD received a report on August 31, 2016 of a sewer backup at Ms. Cook's home, but MSD crews were unable to respond due to the overwhelming number of calls for service resulting from the storm. Nonetheless, MSD acknowledged that the public sewer in this area was overloaded during this storm event. MSD provided both cleaning services and the expedited repair of Ms. Cook's furnace and hot water heater. (See Pl. Exhs. 1 and 2).

On September 16, 2016, Ms. Cook reported another sewer backup to MSD. The responding crew determined the mainline sewer was functioning properly and that the backup

was due to an issue with the private plumbing. (Doc. 1004, Exh. B). Ms. Cook testified that she discovered her lateral sewer line was clogged when her washing machine would not operate. A plumber determined the lateral line was clogged with heavy clay soil and that there was a break in the lateral line. Ms. Cook testified that she believes the soil in the lateral line was from the August 28, 2016 storm. She testified that during the August storm, outside water pressure broke her steel basement door allowing water and mud to enter her basement. Once the water was pumped out, several inches of mud remained on the basement floor, which she believes then entered her floor drains to the lateral line. Ms. Cook incurred $882.75 for the plumber to clear the main drain. (Pl. Exh. 3). The plumber's estimate to replace the broken section of the lateral line is $3,103.00. (Pl. Exh. 4).

Ms. Cook made a claim to MSD for the damages she sustained as a result of the August 2016 rain event. (Doc. 1004, Exh. C). MSD offered Ms. Cook $3,465.14 as compensation for the damages she incurred as a result of the August 28, 2016 event, but excluded the cost of the private plumbing services incurred by Ms. Cook following the September 2016 storm. Ms. Cook declined MSD's offer and filed a request for review in this Court.

In her request for review, Ms. Cook seeks reimbursement of the plumbing expenses for clearing the main drain and replacing the broken pipe. Ms. Cook testified that she did not have problems with her lateral sewer line prior to the August 28, 2016 storm. She alleges her lateral sewer line was clogged with mud and dried paint, which chipped off her painted basement floor and walls as a result of the sewer backup into her basement. Ms. Cook's son testified that he believed the lateral line broke as a result of the weight of water on the basement floor. Ms. Cook

also seeks compensation for the repair and replacement of her retaining wall which was damaged by the August 2016 storm.

Mr. Fronk testified that it was unlikely the collapse of the lateral sewer pipe was caused by a sewer backup. He testified that given the evidence of overland flooding in the area, it was more likely that hydrostatic pressure caused by the increased level of groundwater during the storm caused the soil to shift and the pipe to collapse.

**II. Resolution**

Initially, the Court determines that Ms. Cook may not be compensated for property loss outside of her dwelling, including her retaining wall. The SBU claims process is governed by the Consent Decree in this case. "A consent decree is essentially a settlement agreement subject to continued judicial policing," the terms of which a court is obligated to enforce as circumstances dictate. *Shy v. Navistar Intern. Corp.*, 701 F.3d 523, 532 (6th Cir. 2012) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). In interpreting the terms of a consent decree, the Sixth Circuit has clarified:

> "[C]onsent decrees bear some of the earmarks of judgments entered after litigation" and . . . "[a]t the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986). It is this resemblance to contracts that requires that the scope of a consent decree "be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to" the consent decree. *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971).

*Shy*, 701 F.3d at 530.

The clear language of the Consent Decree in this case limits recovery to structural or personal property damage of the building or dwelling of the occupant making an SBU claim. The Consent Decree defines "Water-in-Basement(s)" [now called Sewer Backup or SBU] as

4

"any *release of wastewater from Defendants' Sewer System **to buildings*** that (i) is not the result of blockages, flow conditions, or malfunctions of a building lateral or other piping/conveyance system that is not owned or operationally controlled by Defendants; and (ii) is not the result of overland, surface flooding not emanating from Defendants' Sewer System." (Doc. 131, Consent Decree at 18) (emphasis added). Similarly, Exhibit 8 to the Consent Decree[2] which governs the SBU claims process sets forth the "Scope of WIBs Covered" as follows:

> The Claims Process will *only reimburse damages arising from basement backups* caused by [1] inadequate capacity in MSD's Sewer System or [2] that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. . . .

(Doc. 131, Consent Decree, Exhibit 8 at 2) (emphasis added). Exhibit 8 to the Consent Decree further clarifies that under the Claims Process, "occupants who incur *damages as a result of the backup of wastewater **into buildings***" due to inadequate capacity in MSD's sewer system or resulting from MSD's negligent maintenance, destruction, operation or upkeep of the sewer system may recover those damages. (Doc. 131, Consent Decree, Exhibit 8 at 1) (emphasis added). There is nothing in the language of the Consent Decree to indicate that outside property damage resulting from a sewer surcharge or a combination of overland flooding and sewer surcharge is covered. In examining the four corners of the Consent Decree, the undersigned concludes that the plain language used by the parties to the decree evinces the intent to limit recovery to those damages associated with a claimant's building and not the outside yard. Therefore, Ms. Cook may not be compensated for the damage to her outside retaining wall.[3]

---

[2]Section XIII of the Consent Decree incorporates Exhibit 8 by reference. (Doc. 131, Consent Decree at 47).

[3]This does not mean that homeowners are without a remedy where they believe the damage to their outside property was caused by MSD's negligence. Homeowners who disagree with MSD's decision on their

5

In addition, Ms. Cook's plumbing expenses following the September 16, 2016 backup are not compensable. Under the SBU program governed by the Consent Decree, homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system and not due to blockages in the occupant's own lateral sewer lines. (Doc. 131, Consent Decree, Exhibit 8 at 1). Here, the basement backup on September 16, 2016 was not caused by a surcharge of MSD's sewer system but by a blockage and breakage of Ms. Cook's lateral sewer line. The evidence before the Court shows that the obstruction in Ms. Cook's lateral sewer line following the August 28, 2016 storm most likely resulted not from SBU but from overland flooding on the date of the storm, which broke her basement door and entered her basement through the opening, bringing water and mud into the basement. In addition, the preponderance of the evidence shows that the collapse of Ms. Cook's lateral sewer line was most likely caused by hydrostatic pressure resulting from the increased level of groundwater during the August 2016 storm and not SBU. There is insufficient evidence to show that the cause of the damaged lateral sewer line, for which the homeowner is responsible, resulted from inadequate capacity in MSD's Sewer System.

The Court is not unsympathetic to homeowners like Ms. Cook who experience flooding issues such as those occurring in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter and the remedies provided thereunder. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are compensable under the terms of the Consent Decree. Where, as here, the claim is for outside property that is

---

claim may seek resort in the state courts, as MSD advises in their materials to consumers. *See* http://sbu.msdgc.org/sbu/page/filing-a-claim.aspx.

not covered by the Consent Decree and for damages to the homeowner's lateral line for which the owner is responsible, the Court is constrained to deny the claim.

Ms. Cook has not disputed the $3,465.14 offered by MSD for damages she incurred from the August 28, 2016 SBU. Accordingly, while the Court denies Ms. Cook's claim for compensation for her outside retaining wall and plumbing expenses, the Court awards Ms. Cook $3,465.14 for her other damages in this case.

**IT IS SO ORDERED.**

Date: 8/9/17

Karen L. Litkovitz, Magistrate Judge
United States District Court