# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
    Plaintiffs,

vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
    Defendants.

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

**ORDER RE: REQUEST FOR REVIEW BY GRETCHEN AICHELE**

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Gretchen Aichele (Doc. 856), the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 968), and MSD's supplemental response to the Request for Review (Doc. 998). On June 27, 2017, the Court held a hearing on Ms. Aichele's request for review at which Ms. Aichele and Tom Fronk, MSD Engineering Technical Supervisor, testified and documentary evidence was submitted. (Doc. 971).

Ms. Aichele's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer Systems or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Ms. Aichele is the owner of the property located at 7040 Wyandotte Drive, Cincinnati, Ohio. She seeks compensation for personal property loss sustained on August 17, 2016, due to alleged sewer backup into her basement. (Doc. 856). On November 2, 2016, Ms. Aichele filed an SBU claim with MSD. MSD denied the claim because "MSD was denied access to [Ms. Aichele's] home" in contravention of program rules. (Doc. 856, Ex. A). MSD also determined that the damage to Ms. Aichele's property did not result from a backup of MSD's sanitary sewer. Ms. Aichele disagreed and filed this appeal. (*Id.*)

Ms. Aichele testified that on the morning of August 17, 2016, she discovered her basement had flooded. There was approximately three inches of water in the basement and it smelled like raw sewage. She presented photographs of her basement floor after the water receded, which appear to show human waste on the basement floor in the vicinity of the floor drain. (Aichele Exs. 1-3). She contacted MSD, but did not receive a response. In the evening,

2

Ms. Aichele saw an MSD truck on her street and approached the MSD worker in the truck. She requested that he observe the condition of her basement, but he refused, saying he was only there to check the manhole. Ms. Aichele testified that she never received a call back from MSD and no one from MSD ever asked to enter her home. Ms. Aichele hired Brock Restoration to clean and sanitize her basement. A letter dated September 27, 2016 from Brock Restoration states that its mitigation technicians removed carpet and padding from the residence "due to being affected by Category 3 water (water which is unsanitary according to the IICRC standards)." (Doc. 856 at 22). Ms. Aichele states that she had never experienced flooding in her basement since moving to her home in 2003. She submitted statements from her insurance company and plumber confirming that the property had not flooded prior to August 2016. (Doc. 856, Exs. B, C). Ms. Aichele also testified that she was aware that two homes on Pickway Drive, an intersecting street to Wyandotte Drive, suffered sewer backups on August 17, 2016 as well.

Ms. Aichele testified that she experienced another basement backup on March 1, 2017. She contacted MSD, which sent a cleaning crew to clean and sanitize her basement. Ms. Aichele states that the two incidents of backup were similar in that she observed numerous cleaning contractor vehicles in her neighborhood after both incidents, indicating the backup to her property was not an isolated incident.

In the meantime, Ms. Aichele hired a plumber to investigate the cause of her basement backup. The plumbing invoice states that on March 7, 2017, the plumber checked the floor drain with a hose and there was no backup. He ran a camera from the basement floor cleanout plug to the public sewer. He reported that the "sewer was in good shape to the water tap" and "the public sewer was almost all the way full of water and looked like it was close to backing into

3

[the] private part of sewer." (Doc. 856 at 33). The plumber recorded his video investigation on a flash drive, which Ms. Aichele submitted as evidence.

Ms. Aichele testified that she experienced another basement backup on June 23, 2017. However, as of the date of the hearing, she had not made claims to MSD for the March or June 2017 backups, stating that she had already lost all of her property in the August 2016 backup. With respect to the August 2016 backup, Ms. Aichele seeks reimbursement for cleaning costs which were not covered by her insurance, carpet replacement, plumber costs related to the relighting of her water heater, and couch replacement.

MSD presented evidence that on August 17, 2016, Ms. Aichele reported her property had experienced flooding. MSD responded the same day to investigate the cause of the flooding. MSD reported that Ms. Aichele's property was serviced by a separate MSD sanitary sewer system and that Green Township maintains the storm sewer system. MSD crews determined that the mainline sewer was open and running, and a check of the manholes upstream and downstream from the property showed no evidence that the public sewer had surcharged. The MSD crew also noted there was no evidence of overland flooding and that the homeowner would not grant them access to her home at that time. (Doc. 968, Ex. A).

Mr. Fronk testified that sewer surcharges are easier to detect with a sanitary only sewer system like Ms. Aichele's (as opposed to a combined sanitary and storm water system) given the heavier concentration of waste and residue visible on the walls and step ladder of the manhole following a surcharge. He testified that there was a five foot differential between the elevation of Ms. Aichele's home and the manhole rim and that the sanitary portion would have had to surcharge approximately five feet in the manhole in order to cause a backup into her home. He

also testified that the Category 3 water reported by the cleaning company does not necessarily mean the backup was from the MSD sanitary sewer. Mr. Fronk testified that water that backs up in a homeowner's building lateral sewer line and exits the floor drain is classified as Category 3 water under Institute of Inspection Cleaning and Restoration Certification (IICRC) Standards even if the backup is caused by sources other than the public sewer system, such as floodwater and groundwater. (*See* Doc. 968, Ex. D).

MSD states that there were no other sewer backups reported on Ms. Aichele's street on August 17, 2016; her property does not have a history of SBUs; and there are no known capacity issues with the sanitary sewer at this location. MSD also contends the plumber's video and report from March 2017 are not relevant to the conditions that existed on August 17, 2016, some seven months earlier, due to the lapse of time and limited nature of the inspection. MSD notes that the video appears to inspect only the portion of the building sewer from the basement floor cleanout located at the front of the building out to the public sanitary sewer, and the video does not show the internal plumbing connections or the floor drain; therefore, the conditions of these connections and the floor drain are not disclosed. When MSD technical staff reviewed the video, they noted there were no apparent structural defects which would contribute to a sewer backup. But they also noted that "the camera is stuck at 3.5-3.9 feet out (video at 11:29:40-11:30:26) and then it appears the video is edited and the mainline appears (video at 12:12:20)" (Doc. 998 at 2), and there is no explanation for this gap of time in the video.

Finally, with respect to the homes on Pickway Drive that Ms. Aichele mentioned were also affected by the August 17, 2016 storm, MSD states:

> The homes on Pickway Drive are served by a different sewer line than Wyandotte Drive, but they are hydraulically connected. MSD has only one report of a sewer

5

> backup on Pickway Drive following the rain event on August 17, 2016 and that is 7085 Pickway Drive. This property is the lowest home upstream from a junction manhole at the intersection of Pickway and Wyandotte, where two 8" pipes and one 6" pipe join in the manhole and exit in one 8" outgoing pipe, which can cause the flow to bottleneck and make this home more prone to backups. Due to the location of Ms. Aichele's home downstream and past the potential bottleneck, it would be unaffected by this portion of the system. There are five homes located between this junction and Ms. Aichele's home, at least three of which sit at or below the elevation of 7085 Pickway Drive. None of these homes or the 39 other homes on Wyandotte Drive reported sewer backups on this occasion.

(Doc. 998 at 2-3 and Ex. F, MSD's investigation of 7085 Pickway Drive). MSD states that the conditions at 7085 Pickway Drive were investigated approximately 20 hours after the rain event – some 15 hours after the investigation of Ms. Aichele's property – and the signs of surcharge were still apparent.

As an initial matter, the Court notes that under the Consent Decree that governs the Court's review of SBU appeals, the provision of cleanup services under this program does not constitute an admission of liability by MSD with regard to any claims that the occupant may have against MSD for real or personal property damage caused by the building backup. (Doc. 131, Ex. 7 at 4). MSD will provide cleanup services when doubt exists about the cause of the backup after an initial investigation based on the health risks posed by floods and water damage. (Doc. 640, Ex. B). Therefore, the fact that MSD provided this cleaning service to Ms. Aichele's home following the March 2017 backup is not evidence that the water in her basement on that date or any other date was caused by a backup of the public sanitary sewer.

The Court finds that Ms. Aichele's claim must be denied because Ms. Aichele has not met her burden of proof to show the damage to her property was caused by a backup of MSD's sanitary sewer system. Claimants like Ms. Aichele who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of water into their property was

caused by inadequate capacity in MSD's sewer system (a sewer discharge) and not by overland flooding or blockages in the homeowner's privately owned building sewer line. (Doc. 131, Consent Decree, Ex. 8 at 1). Ms. Aichele has not established that the water backup into her basement on August 17, 2016 was caused by inadequate capacity in MSD's sanitary sewer system. Under the Consent Decree, MSD must exercise good faith reasonable engineering judgment in determining the cause of a basement backup by considering several factors, including the amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). MSD did so in this case. MSD presented evidence that none of the neighboring properties on Wyandotte Drive reported a sewer backup on August 17, 2016 resulting from the incapacity of the public sanitary sewer system. MSD has presented persuasive evidence that a contemporaneous investigation of Ms. Aichelle's report of a backup showed no evidence of a surcharge of the public sanitary sewer. In addition, there is evidence that the home on Pickway Drive that reported a backup on August 17, 2016 was serviced by a different sewer line, was at an elevation lower than Ms. Aichele's property, and was located near the junction of several sewer lines which increased the potential for a bottleneck of sewer flow, thereby making that property more prone to backups. Ms. Aichele presented photographs which appear to depict human waste on her basement floor from the August 17, 2016 backup; she presented evidence that portions of her lateral sewer line which were inspected in March 2017 showed they were structurally intact; and she testified that she experienced two other backups following the August 17, 2016 incident. This evidence does not outweigh the investigatory

evidence presented by MSD which strongly indicates that the likely cause of the basement backup on August 17, 2016 was not a surcharge of MSD's sanitary sewer system. The preponderance of the evidence does not establish that the cause of Ms. Aichele's basement backup was the inadequate capacity of MSD's public sewer system.[2]

There is no exact science to determining the cause of basement flooding in many of the cases presented to the Court, and often the exact cause is unknown. Whether Ms. Aichele's basement backup was caused by faulty or porous pipes in some portion of her lateral line that was not inspected, ground saturation seeping through the floor and walls, or some other source is simply unknown. The Court is not unsympathetic to homeowners like Ms. Aichele who experience a basement backup such as occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to a property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System. In the absence of a preponderance of the evidence establishing Ms. Aichele's property damage was more likely caused by a surcharge in the public sanitary sewer line and not by some other cause, the Court is constrained to uphold MSD's decision in this case.

---

[2] The Court need not reach the question of whether MSD was denied access to Ms. Aichele's property on August 17, 2016, as the Court concludes MSD's decision should be upheld in any event.

8

Therefore, the Court denies Ms. Aichele's appeal in this case.

**IT IS SO ORDERED**.

Date: 8/21/17

Karen L. Litkovitz, Magistrate Judge
United States District Court