# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>PHILLIP G. CARGILE |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Phillip G. Cargile (Doc. 898) and the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 987). Mr. Cargile requests review of MSD's decision on his SBU claim without a hearing. (Doc. 898 at 3).

Mr. Cargile's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Mr. Cargile is the owner of the property located at 5857 Rhode Island Avenue, Cincinnati, Ohio. He seeks compensation for personal property loss sustained on July 8, 2016 and August 28, 2016, due to alleged sewer backup into his basement. (Doc. 898). On November 14, 2016, Mr. Cargile filed an SBU claim with MSD. MSD denied the July 8, 2016 claim because the alleged sewer backup on that date was never reported to MSD. MSD denied Mr. Cargile's August 28, 2016 claim, finding that Mr. Cargile failed to report this SBU within a reasonable time and the cause of the backup was an issue with the private building sewer and not any failure for which MSD is responsible. Mr. Cargile disagreed and filed this appeal.

Mr. Cargile states that he called MSD following the August 28, 2016 backup. He states he received a busy signal on numerous occasions and when he did get through, he left several messages for MSD to contact him. He states he was unable to speak to an MSD representative until October 2016, when he received a work order number. DH Storm Team, an MSD contractor, was dispatched to his property and performed cleaning services. Mr. Cargile states

2

that MSD had incorrect contact information for him on file and MSD is at fault for the delay in investigating his claim. (Tr. 898 at 5, MSD email). He seeks reimbursement for the personal items in his basement that were damaged and for contaminated drywall. (Doc. 898 at 3).

MSD states that it did not receive a report of a basement backup from Mr. Cargile on or around July 8, 2016 or August 28, 2016. MSD states that it received a report of a basement backup from Mr. Cargile on October 18, 2016 and dispatched a crew to investigate. The MSD crew found the public sewer was open and running. The building sewer's cleanout (near the public right-of-way line) had a float level indicator that did not indicate any surcharging of the public sewer. (Doc. 987-5). MSD staff concluded that the backup was in the main floor drain and advised Mr. Cargile to contact a plumber. (Doc. 987, Ex. C). Mr. Cargile was not home at the time and the crew left information on the door. (Doc. 987-5). On October 22, 2016, Mr. Cargile reported that the backup had occurred on August 28, 2016. In response, MSD provided cleaning services without conducting a field investigation following the October 22 report from Mr. Cargile.

Mr. Cargile's plumber, Help Plumbing and Heating, inspected his property and made the following findings and recommendations in its documents provided to Mr. Cargile dated November 1, 2016:

> a) The sewer line from Mr. Cargile's home "exits the home and goes uphill from the house to the cleanout in the yard."
>
> b) "The second and first floor drains need to go out of the home above the basement floor."
>
> c) "A sewage ejector pump with a pit needs to be added in order to remove the sewage from the future bathroom in the basement and the floor drains. Then a new line will be ran (sic) from the house to the cleanout in the yard."

(Doc. 987, Ex. D).

Tom Fronk, MSD Engineering Technical Supervisor, investigated Mr. Cargile's backup claim and determined that Mr. Cargile's home was built in a manner that did not allow for sufficient drainage down to the MSD line. He noted that the "reverse slope" of the building sewer found by Mr. Cargile's plumber, and not the capacity of MSD's public sewer, was likely the cause of the backups to Mr. Cargile's basement. (Doc. 987-5).

Mr. Cargile reported another SBU in February 2017. An MSD crew responded that day and found the manholes were open and running and the float level indicator in the cleanout indicated the public sewer had not surcharged. Mr. Cargile was advised to contact a plumber. (Doc. 987, Ex. F).

As an initial matter, the Court notes that under the Consent Decree that governs the Court's review of SBU appeals, the provision of cleanup services under this program does not constitute an admission of liability by MSD with regard to any claims that the occupant may have against MSD for real or personal property damage caused by the building backup. (Doc. 131, Ex. 7 at 4). MSD will provide cleanup services when doubt exists about the cause of the backup after an initial investigation based on the health risks posed by floods and water damage. (Doc. 640, Ex. B). Therefore, the fact that MSD provided cleaning services to Mr. Cargile's home following his October 22, 2016 report of a backup is not evidence that the water in his basement on August 28, 2016, or any other date was caused by a backup of the public sewer.

The Court also notes that under the Consent Decree governing the Court's review of SBU appeals, occupants who incur property damage as a result of a basement backup which they believe is MSD's responsibility "must notify MSD within 24 hours of the time that the occupant discovers" the SBU. (Doc. 131, Consent Decree, Ex. 8). This requirement is to allow MSD to

make a contemporaneous investigation of the backup and its causes. Mr. Cargile states that he made numerous attempts to contact MSD in a timely manner and that the delay in his reporting resulted from the overwhelming number of calls MSD received from the August 2016 storm and the incorrect contact information MSD maintained in its file. The Court finds that Mr. Cargile's failure to report the basement backup within 24 hours should not bar his claim given the circumstances of this case.

Even though the Court will not deny Mr. Cargile's appeal on this procedural ground, Mr. Cargile's claim must nevertheless be denied because he has not met his burden of proof to show the damage to his property was caused by a backup of MSD's sewer system. Claimants like Mr. Cargile who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of water into their property was caused by inadequate capacity in MSD's sewer system (a sewer surcharge) and not by overland flooding or blockages in the homeowner's privately owned building sewer line. (Doc. 131, Consent Decree, Ex. 8 at 1). Here, Mr. Cargile has not established that the water backup into his basement in July or August 2016 was caused by inadequate capacity in MSD's sewer system. MSD presents persuasive evidence that the reverse slope of the building sewer line and not a surcharge of MSD's sewer system likely caused the backups to Mr. Cargile's basement. The preponderance of the evidence does not establish that the cause of Mr. Cargile's basement backup was the inadequate capacity of MSD's public sewer system. In addition, even if the Court were to assume that the August 2016 backup was caused by a surcharge in the public sewer, the Court cannot determine that the August 2016 backup proximately caused Mr. Cargile's damages. Mr. Cargile states he experienced a backup in both July and August 2016 and he admits he did not report the July backup. Therefore, it is

unknown whether the July 2016 backup resulted in the property damage for which he seeks compensation or whether those damages resulted from the August 2016 backup.

There is no exact science to determining the cause of basement flooding in many of the cases presented to the Court and oftentimes the exact cause is unknown. The Court is not unsympathetic to homeowners like Mr. Cargile who experience a basement backup such as occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to a property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System. In the absence of evidence establishing Mr. Cargile's property damage was more likely caused by a surcharge in the public sewer line and not by a defect in his building sewer line, the Court is constrained to uphold MSD's decision in this case.

Therefore, the Court denies Mr. Cargile's appeal in this case.

**IT IS SO ORDERED**.

Date: 8/22/17

Karen L. Litkovitz, Magistrate Judge
United States District Court