UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs, <br><br> vs. <br><br> BOARD OF HAMILTON COUNTY <br> COMMISSIONERS, et al., <br> Defendants. | Case No. 1:02-cv-107 <br> Barrett, J. <br> Litkovitz, M.J. <br><br> **ORDER RE: REQUEST** <br> **FOR REVIEW BY** <br> **KAREN MARIE WAGNER** |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Karen Marie Wagner (Doc. 988) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1106). On October 12, 2017, the Court held a hearing on Ms. Wagner's request for review of her SBU claim.

Ms. Wagner's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation,

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

As an initial matter, the Court notes that there is no dispute that one of the causes of damage to Ms. Wagner's personal and real property was an MSD sewer backup. The only issue in this case is the amount of damages for Ms. Wagner's property loss.

Ms. Wagner is the owner and landlord of the property located at 2887 Romana Place, Cincinnati, Ohio. On August 28, 2016, Ms. Wagner experienced an SBU incident in her basement which resulted in damage to her personal and real property. Ms. Wagner made a claim for damages to MSD for the August 2016 sewer backup into her basement. MSD made an offer of $15,193.94 to Ms. Wagner as compensation for her claim. Ms. Wagner rejected the offer and filed this appeal.

In her request for review, Ms. Wagner disputes the amount of compensation offered by MSD for the loss of her commercial, coin operated washer and dryer and wood flooring. Ms. Wagner presents evidence that the wood flooring was reclaimed, meaning it was salvaged or antique. MSD depreciated the flooring at 75%. Ms. Wagner contends that given the nature of the reclaimed wood flooring, it should not have been depreciated. She states:

2

• The salvaged wood flooring was neatly bundled and stored in the basement prior to the SBU and she intended to have it installed in the upper level of the building.

• Her State Farm Rental Dwelling policy considers the flooring as part of the dwelling because it is building material intended for the structure.

• The salvaged wood flooring value on the claim is already depreciated, like an antique, and should not be depreciated further.

• The Douglas Fir flooring was in excellent condition prior to the SBU.

• The estimated value she attributed to the flooring was conservative at $2.50-$3.00 per square foot whereas other quality, reclaimed wood flooring suppliers charge at least $5.00 or more per square foot. *See* Doc. 988 at 21-27.

Ms. Wagner also alleges that her commercial laundry equipment was in excellent condition, and was of a higher quality and had a longer life than consumer laundry equipment. At the hearing, she presented a statement from the owner of a commercial laundry equipment business who opined that he would expect "quality, coin operated washers utilized in apartment buildings to have a 20 year life and dryers, in the same setting, to last 30 years." (Doc. 1122, Pl. Ex. 1). Ms. Wagner testified that she had only one tenant in the building, her elderly mother, who used the washer and dryer on a very limited basis. Ms. Wagner also disputes MSD's denial of her request for compensation for personal and travel expenses. Ms. Wagner does not dispute MSD's valuation of the other items of property loss. (Doc. 988 at 2).

MSD contends that Ms. Wagner is not entitled to compensation for personal and travel expenses under the Consent Decree. (Doc. 1106 at 2, citing Doc. 131, Ex. 8). MSD also argues that its adjuster properly valued the laundry equipment and wood flooring at market value on the date of loss and that the amount MSD offered Ms. Wagner is fair and reasonable. (*Id.* at 2).

Damages for SBU claims are determined based on the market value of personal property *as of the date of loss* (the depreciated value) and not on the original purchase price or cost of

replacement. MSD's adjuster, Tenco Services, Inc., valuated the items lost by Ms. Wagner by applying depreciation to the claimed items based on their age and/or market value. Tenco's Claim Evaluation Worksheet sets forth an itemized list of 71 items of property for which Ms. Wagner sought damages from MSD. With the exception of the items that follow, the Court finds the adjuster's valuations of Ms. Wagner's personal property to be fair and reasonable.

The Court disagrees with MSD's valuation of the reclaimed Douglas Fir wood flooring. Ms. Wagner has presented persuasive evidence that MSD's valuation of the reclaimed wood flooring fails to take into consideration the nature of reclaimed wood. Reclaimed wood is processed wood that is salvaged from its original application, such as shelving, school bleachers, barns, and flooring, for purposes of subsequent use. Reclaimed wood by its very nature is "used" (similar to an antique) and its market value reflects a depreciated and not "new" value. Ms. Wagner has presented evidence regarding the sources and quality of the reclaimed wood that was stored in her basement and intended to be installed in the building. In addition, while Ms. Wagner's insurance company did not provide coverage for the SBU, the insurance policy indicates that an item like reclaimed wood flooring, which is considered a material or supply for use in the alteration or repair of the residential premises, is considered part of the dwelling and not "personal property." (Doc. 988 at 18, 20). Indeed, as Ms. Wagner pointed out at the hearing, had the reclaimed wood flooring been installed in the basement, MSD would have reimbursed her for the full value of the flooring as dwelling or real property damage and, most likely, at a price higher than Ms. Wagner is now seeking. The Court's own research indicates that Ms. Wagner's request for reimbursement at $2.50 and $3.00 per square foot is fair and reasonable. The Court therefore awards Ms. Wagner $3,300.00 for the reclaimed wood flooring.

The Court is also persuaded by Ms. Wagner's evidence that MSD undervalued the commercial laundry equipment. Given the likely life of both the commercial washer and dryer and the original purchase cost, Ms. Wagner's revised request for reimbursement for the washer and dryer (Doc. 1122, Pl. Ex. 2), which includes depreciation of 10% and 50% respectively, is fair and reasonable. Therefore, the Court awards Ms. Wagner $1,019.61 for the commercial washer and $471.45 for the commercial dryer.[2]

Finally, Ms. Wagner seeks reimbursement for personal and travel expenses related to the cleanup and restoration of her property. Under the Consent Decree, compensation through the SBU claims process is limited to real and personal property loss and the diminution of real property value. (Doc. 131, Consent Decree, Exhibit 8 at 2; Doc. 129 at 11). The SBU claims process under the Consent Decree does not cover items such as personal and travel expenses for homeowners, like Ms. Wagner, who do not live in the State of Ohio. Therefore, the Court denies Ms. Wagner's request for reimbursement of personal and travel expenses.

In conclusion, the Court awards **$18,282.17** to Ms. Wagner for the damages sustained in this case ($13,491.11 [MSD's valuation of items, not including the commercial washer and dryer and flooring] + $1,019.61 for the commercial washer + $471.45 for the commercial dryer + $3,300.00 for the reclaimed Douglas Fir wood flooring).

**IT IS SO ORDERED.**

Date: 10/18/17

Karen L. Litkovitz, Magistrate Judge
United States District Court

---

[2] At the hearing, counsel for MSD conceded that Ms. Wagner's revised request for reimbursement of these items appeared reasonable.