# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs, | Case No. 1:02-cv-107 <br> Barrett, J. <br> Litkovitz, M.J. |
| vs. | |
| BOARD OF HAMILTON COUNTY <br> COMMISSIONERS, et al., <br> Defendants. | **ORDER RE: REQUEST <br> FOR REVIEW BY <br> JOSEPH FLACK** |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Joseph Flack (Doc. 964) and the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1065). On September 6, 2017, the Court held a hearing on Mr. Flack's request for review at which Mr. Flack and Tom Fronk, MSD Engineering Technical Supervisor, testified and documentary evidence was submitted. (Doc. 1074). MSD and Mr. Flack also submitted supplemental briefs following the hearing at the request of the Court. (Docs. 1096, 1116).

Mr. Flack's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer Systems or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Mr. Flack is the owner of the property located at 4503 Sunnyslope Terrace, Cincinnati, Ohio. He seeks compensation for real and personal property loss sustained on August 28, 2016, due to alleged sewer backup into his garage and basement. (Doc. 964). On November 3, 2016, Mr. Flack filed an SBU claim with MSD. MSD denied the claim because it determined that the damage to Mr. Flack's property resulted from overland flooding not emanating from MSD's Sewer System and not from a backup of MSD's sanitary sewer. Mr. Flack disagreed and filed this appeal.

Mr. Flack testified that on August 28, 2016, he observed high water flowing down Sunnyslope Drive, which runs parallel to his property and perpendicular to Sunnyslope Terrace.[2] He went to his basement and observed six to eight inches of standing water. Mr. Flack reported that this was the first time in sixteen years that his property backed up. (Doc. 1065-3 at 4).

---

[2] Mr. Flack's house is located at the corner of Sunnyslope Drive and Sunnyslope Terrace.

Mr. Flack contacted MSD on September 3, 2016 to report damage to his real and personal property from the August 28, 2016 flood. Due to the overwhelming number of calls for service that arose from this storm, MSD crews did not respond to Mr. Flack's residence to investigate. An employee from Tenco Services, Inc., MSD's adjuster, inspected Mr. Flack's home for property damage and advised Mr. Flack that he would be contacted regarding the cleanup process and that Mr. Flack should file a claim as soon as possible.

MSD provided cleaning services for Mr. Flack's home prior to conducting a more in-depth evaluation of the cause of flooding "consistent with SBU Program policy and in the interest of public health and safety." (Doc. 1065 at 1). Servpro, an MSD contractor, was dispatched to his property and performed cleaning services. Mr. Flack states that Servpro removed carpet from the garage, hallway, and television room and removed 24 inches of dry wall and wood paneling throughout the garage and basement. Servpro also removed two doors and door jams. Mr. Flack signed a document from Servpro that authorized Servpro "to perform any and all necessary cleaning and/or restoration services on Customer's property located at the property address above as a result of sewer backup for which Metropolitan Sewer District of Cincinnati has accepted responsibility." (Doc. 845 at 11). Mr. Flack testified that he never gave permission to Servpro to remove drywall and wood paneling or remove the doors. Mr. Flack alleges that "[a]t no time during all of the conversations were we told that we would be left with the cost of putting our basement back together again." (Doc. 964 at 4). He alleges that he was led to believe that MSD was accepting responsibility for the damage to his basement and garage when it hired Servpro to clean and sanitize his basement. He argues MSD should not have allowed a cleanup and removal process that rendered his basement unusable when it was

ultimately going to deny his claim.

After further review of the sewer configuration and other available information, MSD made the determination that the flooding at Mr. Flack's home was not caused by a surcharge of the public sewer. The property is located in the Paddock Hills neighborhood of Cincinnati, which experienced heavy rainfall and overland flooding on August 28, 2016. MSD states that Mr. Flack's home is connected to MSD's sewer system near the "head-end," meaning the beginning or the highest point of the local sewer. MSD alleges that because Mr. Flack's home is situated near the top of the local sewer, it receives no additional flow from upstream. In addition, only 11 homes are tapped into this local sewer so it receives relatively low contributing flow. MSD alleges that the location of the storm inlets relative to Mr. Flack's home is also unlikely to create a propensity for a sewer backup.

MSD presents evidence that it received only one other report of a sewer backup that was tapped into the local sewer that serves Mr. Flack's property. The residence located at 1076 Sunnyslope Drive reported experiencing six inches of flooding on August 28, 2016. (Doc. 1065, Ex. E). MSD states that while it has not confirmed that this flooding was due to a sewer backup, it settled that homeowner's claim for $2,430.00. MSD states that the owner's claim documentation was consistent with the amount of damage generally associated with that level of flooding. (Doc. 1065, Ex. G). MSD presents evidence that it settled claims submitted by two other homeowners on Sunnyslope Drive, but it states that those two properties are tapped into a local sewer that is completely separate from the local sewer tied into Mr. Flack's home and 1076 Sunnyslope Drive.

MSD states it has triaged hundreds of SBU claims it received following the August 28,

2016 storm. MSD alleges that it has erred on the side of caution and offered a settlement where its crews were unable to investigate the property and there is no information available to strongly rebut the claim that a sewer backup occurred, as was the case with the SBU claims submitted by the three homeowners at 1076, 1115 and 1119 Sunnyslope Drive. (Doc. 1096 at 1-2).

MSD contends that Mr. Flack's claim is distinguishable from the three Sunnyslope Drive SBU claims it settled given the relative elevation of his property in relation to the building elevation of 1076 Sunnyslope Drive. MSD argues that it would be nearly impossible for Mr. Flack's property to experience a sewer backup in the basement (at approximately 583 feet elevation) unless 1076 Sunnyslope Drive (at approximately 574 feet elevation) experienced a sewer backup of a significantly higher depth than the reported six inches. This conclusion is based on basic hydraulics and the understanding that water seeks its own level. MSD alleges that 1076 Sunnyslope Drive would have had to be flooded near or above the basement ceiling before the sewer backed up even one inch into Mr. Flack's basement, which sits nine feet higher than 1076 Sunnyslope Drive. (Doc. 1096, Exs. H, I). However, the homeowner at 1076 Sunnyslope Drive reported only six inches of water. MSD also points to the absence of reports of sewer backups from any of the four properties tapped into the mainline sewer between Mr. Flack's property and 1076 Sunnyslope Drive. Finally, MSD alleges that Mr. Flack's home has a recessed driveway and garage, which likely facilitated the flow of heavy rains and surface flooding down into the building. Mr. Fronk testified that in an area served by a combined sewer system, like Mr. Flack's, the drain in a recessed driveway will be connected to the basement drain. When water starts to pond in the driveway drain, the head pressure will push the water up the floor drain in the basement as water seeks its own level. Based on the above information,

5

MSD determined that the cause of the flooding to Mr. Flack's basement was overland flooding not emanating from MSD's sewer system and that it was unlikely the public sewer overflowed and contributed to the flood water.

As an initial matter, the Court notes that under the Consent Decree that governs the Court's review of SBU appeals, "MSD's provision of cleanup services under this program does not constitute an admission of any liability by MSD with regard to any claims that the occupant may have against MSD for real or personal property damage caused by the building backup." (Doc. 131, Ex. 7 at 4). MSD will provide cleaning services when doubt exists about the cause of the backup after an initial investigation based on the health risks posed by floods and water damage. (Doc. 640, Ex. B). Therefore, the fact that MSD provided this cleaning service to the property at 4503 Sunnyslope Terrace and paid for such service is not evidence that the water in Mr. Flack's basement was the result of a backup of the public sewer.

The Court finds that Mr. Flack's claim must be denied because Mr. Flack has not met his burden of proof to show the damage to his property was caused by a backup of MSD's sewer system. Claimants like Mr. Flack who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of water into their property was caused by inadequate capacity in MSD's sewer system (a sewer discharge) and not by overland flooding or blockages in the homeowner's privately owned building sewer line. (Doc. 131, Consent Decree, Ex. 8 at 1). Mr. Flack has not established that the water backup into his basement on August 28, 2016 was caused by inadequate capacity in MSD's sewer system. Under the Consent Decree, MSD must consider the history of backups in a neighborhood in determining the cause of the backup into a particular property. This includes whether there were other reported sewer

backups in the area at the time of the event in question. In this case, the only property that tied into the same local sewer line as Mr. Flack's that reported a sewer backup on August 28, 2016, was the home at 1076 Sunnyslope Drive. That property lies approximately nine feet lower than Mr. Flack's property. This means that if there was a surcharge of MSD's sewer system of a sufficient level to reach Mr. Flack's basement, the level of surcharge and flooding in the basement at 1076 Sunnyslope Drive would have been significantly greater than the six inches reported. In addition, there is evidence that Mr. Flack's home has a recessed driveway with a drain connected to the basement drain. The recessed driveway likely facilitated the flow of heavy rains and surface water down into his garage, forcing water through his basement drain. Thus, overland flooding not emanating from MSD's sewer system was the most likely cause of the backup in Mr. Flack's basement. The preponderance of the evidence does not establish that the cause of Mr. Flack's basement backup was from inadequate capacity of MSD's public sewer system.

Nevertheless, Mr. Flack alleges that he did not give Servpro permission to remove drywall, wood paneling, and doors from his basement and garage, and he was led to believe that MSD was responsible for the water damage to his basement and garage. Mr. Flack contends that if he had been informed before the cleanup by Servpro that MSD was not responsible, he would not have moved forward with the cleanup and costly restoration of his home.

There are two forms that Mr. Flack signed at the time Servpro provided cleaning services which show Mr. Flack gave his permission for the removal of damaged items. One is a Servpro form and another is an MSD form. The Servpro form states:

> The undersigned Customer, being the building owner, owner's representative, or resident, authorizes the Contractor identified below *to perform any and all*

*necessary cleaning and/or restoration services* on Customer's property located at the property address above as a result of sewer backup for which Metropolitan Sewer District of Greater of Greater Cincinnati has accepted responsibility.

Customer acknowledges Metropolitan Sewer District of Greater Cincinnati, herein referred to as "Provider," to pay Contractor solely and directly for that portion of the work agreed upon by Provider.

(Doc. 1065-2 at 7) (emphasis added).

In addition to the Servpro form, Mr. Flack also signed an August 28, 2016 SBU Property Offsite Disposal Form, which states:

I am the homeowner of the address noted above.

*I am authorizing MSD, the City of Cincinnati and its Contractors to remove all damaged items from my property and dispose accordingly.*

I certify that I will clearly retain or point out what items should not be removed. I have been instructed of the SBU Claims Process and understand that I may file a claim that is subject to review and approval.

(Doc. 1065-2 at 6) (emphasis added). By signing both forms, Mr. Flack authorized the removal of damaged items, including structural items like drywall, paneling, and doors from his basement and garage as part of the cleaning services.

Mr. Flack also alleges he was led to believe MSD would be responsible for the restoration of his basement and would not have permitted the removal of drywall, paneling, and doors had he known MSD would deny his damages claim. To the extent Mr. Flack may have relied on the provision of cleaning services by MSD as a reason to believe MSD would cover any damages claim, the Consent Decree clearly states that the provision of cleaning services is not an admission of liability by MSD as previously indicated. (Doc. 131, Ex. 7 at 4).

To the extent Mr. Flack may have relied on the language in the Servpro form – "The undersigned Customer . . . authorizes the Contractor identified below to perform any and all

necessary cleaning and/or restoration services on Customer's property located at the property address above *as a result of sewer backup for which Metropolitan Sewer District of Greater of Greater Cincinnati has accepted responsibility* – MSD cannot be held responsible for the damages in this case on this basis. MSD has represented in this case and in the past that Servpro was not authorized by MSD to represent that the damage was caused by SBU for which MSD is responsible. (Doc. 938 at 4).[3] A contractor like Servpro is not authorized to bind MSD under the Consent Decree or to make what amounts to a de facto SBU claims determination simply by virtue of the language it uses on a form. In addition, MSD's authorized form, which was signed by Mr. Flack, indicates that MSD's payment of compensation on claims is not automatic despite the provision of cleaning services. The form states, "I have been instructed of the SBU Claims Process and understand that I may file a claim *that is subject to review and approval*." (Doc. 1065-2 at 6) (emphasis added). The language in MSD's authorized form indicates that SBU claims must be reviewed and approved before a homeowner may be compensated for property loss by MSD. By signing this form at the time property is disposed of by MSD or its contractor, homeowners like Mr. Flack are bound by the conditions set forth therein. MSD's authorized form, unlike Servpro's form, is consistent with the Consent Decree and controls the resolution of this matter.[4]

There is no exact science to determining the cause of basement flooding in many of the cases presented to the Court, and often the exact cause is unknown. Whether Mr. Flack's

---

[3] MSD contends that it is no longer using Servpro as a contractor for clean-up services.

[4] This does not mean that homeowners are without a remedy where they believe the damage to their property is MSD's responsibility. Homeowners who disagree with MSD's decision on their claim may seek resort in the state courts, as MSD advises in their materials to consumers. *See* http://sbu.msdgc.org/sbu/page/filing-a-claim.aspx.

basement backup was caused by faulty or porous pipes leading to and underneath his property, ground saturation seeping through the floor and walls, overland flooding, or some other source is simply unknown. The Court is not unsympathetic to homeowners such as Mr. Flack who experience a basement backup such as occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to a property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System. In the absence of evidence establishing Mr. Flack's property damage was more likely caused by a surcharge in the public sewer line and not by overland flooding or some other cause, the Court is constrained to uphold MSD's decision in this case.

Therefore, the Court denies Mr. Flack's appeal in this case.

**IT IS SO ORDERED**.

Date: 10/18/17

Karen L. Litkovitz, Magistrate Judge
United States District Court