# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
    Plaintiffs,

vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
    Defendants.

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

**ORDER RE: REQUEST
FOR REVIEW BY
DIANE HENSON**

This matter is before the Court on the Request for Review of the denial of a Sewer

Backup ("SBU") claim by Diane Henson (Doc. 955) and the response and supplemental response

of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1091, 1124). On

September 28, 2017, the Court held a hearing on Ms. Henson's request for review at which Ms.

Henson, Bob Zacharias, and Tom Fronk, MSD Engineering Technical Supervisor, testified and

documentary evidence was submitted. (Doc. 1103).

Ms. Henson's request for review is filed under the Sewer Backup[1] program (formerly

known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree,

Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result
> of the backup of wastewater into buildings due to inadequate capacity in MSD's
> Sewer System (both the combined and the sanitary portions) can recover those
> damages. This plan also provides a means for occupants to recover damages
> arising from backups that are the result of MSD's negligent maintenance,
> destruction, operation or upkeep of the Sewer System. The Claims Process is not
> intended to address water in buildings caused by overland flooding not emanating
> from MSD's Sewer System or caused by blockages in occupants' own lateral
> sewer lines.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable

---

[1]The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately
reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc.
452 at 4; Doc. 454 at 16.

engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Ms. Henson is the owner of the property located at 4389 Dalehurst Drive, Cincinnati, Ohio. On March 1, 2017, the area in which Ms. Henson's property is situated experienced heavy rainfall. On March 5, 2017, MSD received a report that 4389 Dalehurst Drive was currently experiencing a sewer backup. MSD crews responded to investigate and found that the home was not currently flooded, but it had previously flooded. Upon inspection of the mainline, toilet paper was observed on a rung 6'2" below the manhole rim, which is an indication that the manhole surcharged at some point in time. (Doc. 1091, Ex. A). MSD states that due to the delayed reporting, an in-depth investigation evaluating these findings and other information to determine the cause of flooding was not performed by MSD.

On March 31, 2017, Ms. Henson filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on March 1, 2017. Ms. Henson states that by 2:00 a.m. on March 1, 2017, water had already made its way into her finished basement family room. She reported that water backed up in the driveway, went into the garage,

2

then the laundry room, and finally made its way into the family room. Ms. Henson states that MSD denied her claim because she did not report the SBU within 24 hours of its occurrence. Ms. Henson alleges that MSD's online information does not specify the 24-hour reporting requirement. She states that when an MSD crew came to her house on March 5, they "said it was their problem" and advised Ms. Henson to call Ohio Valley Restoration. (Doc. 955 at 2-3). She states that the restoration company provided cleaning services three weeks later and tore out drywall and threw away wet items. (Doc. 955 at 3). Ms. Henson seeks compensation for the personal property that was disposed of by the restoration company. (Doc. 955).

Ms. Henson also presents evidence that MSD paid the claim of her father, Bob Zacharias, who lives next door to Ms. Henson. Mr. Zacharias testified that he also reported a basement backup the same day his daughter did. He states MSD reimbursed him $3,071.36 for damages he sustained as a result of the March 1, 2017 storm. *See also* Doc. 1124-2 at 10 (Rumpke Restoration [$2,500.00] + new carpet padding from Carpetland [$426.93] + carpet cleaning by Teasdale Fenton [$144.43]).

MSD presents evidence that out of an abundance of caution and in response to the large storm that occurred on March 1, 2017, MSD authorized cleaning services for both Ms. Henson's and Mr. Zacharias's properties. MSD paid $3,735.33 for the cleaning services provided to Ms. Henson. (Doc. 1124, Ex. F). Mr. Zacharias declined MSD's offer to provide free cleaning services and instead hired his own contractor to clean and sanitize his basement.

MSD received a claim from Mr. Zacharias on March 16, 2017, requesting reimbursement of $3,071.36. (Doc. 1124, Ex. G). Similar to Ms. Henson, his claim was denied due to the delayed reporting. (Doc. 1124, Ex. H). However, MSD later discovered that Mr. Zacharias had

previously been offered cleaning services by MSD and that his SBU claim consisted almost

entirely of cleaning expenses. (Doc. 954 at 15). MSD alleges that this scenario highlights

somewhat of a discrepancy in MSD's responsibilities under the Consent Decree:

> Under the SBU Claims Process Plan (Doc. 131, Consent Decree, Exhibit 8),
> occupants are required to report a SBU within 24 hours of discovery in order to
> initiate a SBU claim. Under the SBU Customer Service Program Plan (*Id.*,
> Exhibit 7), there is no such 24-hour reporting requirement for cleaning services to
> be offered. This sends conflicting messages when occupants are offered free
> cleaning services, pay out of pocket for their own cleaning services, and then are
> denied reimbursement for those expenses through the SBU claims process. To
> remedy this discrepancy, in cases where claims are not eligible for compensation
> for other reasons (i.e., causation, delayed reporting), the City Solicitor's Office
> makes an effort to offer reimbursement for eligible cleaning expenses when those
> services were offered by MSD but declined by the customer. As such, Mr.
> Zacharias was offered compensation for the cleaning expenses. Because MSD
> and the City Solicitor's Office could not justify the use of its limited resources to
> litigate the amount of $426.93 for carpet padding replacement, that amount was
> also included in his offer amount in order to settle the matter.

(Doc. 1124, Ex. I).

MSD disagrees that its website fails to notify homeowners of the 24-hour reporting

requirement. MSD states that on December 9, 2016, MSD added specific language to its website

to emphasize the 24-hour reporting requirement. That language states, "Note: SBUs must be

reported within 24 hours to be eligible for reimbursement of damages." This information is

displayed within an orange box on every page of the SBU website. MSD also added the

following language to the SBU website's "Filing a Claim" page: "Sewer backups must be

reported within 24 hours of discovery to be potentially eligible for compensation under the SBU

Claims Process." (Doc. 1091, Ex. D). In addition to providing notice on its website, MSD also

issued a press release emphasizing the 24-hour reporting requirement related to the March 1,

2017 storm, which was broadcast by local news media. (Doc. 1091, Ex. E).

4

Finally, MSD presented evidence that even though it denied Ms. Henson's claim based on her failure to report the backup within 24 hours, a subsequent review of the MSD public sewer system in her geographical area does not support a finding that Ms. Henson's damages were caused by inadequate capacity of MSD's sewer system. Mr. Fronk testified that the MSD crew was able to detect signs of surcharge in the manhole six feet below the rim of the manhole. Because this was merely a preliminary finding, and to err on the side of caution, the MSD crew referred Ms. Henson's home for cleaning. Mr. Fronk performed a more in-depth investigation following Ms. Henson's SBU claim submittal. Mr. Fronk testified that the house has a slightly recessed driveway approximately three feet below street elevation. The basement elevation is approximately 858 to 859 feet and the surcharge in the manhole rose to a maximum of 855 feet. Mr. Fronk testified that given these elevations, the sewer surcharge level peaked three feet below the level of Ms. Henson's basement. As a result, Mr. Fronk concluded that the surcharge in the public sanitary sewer did not reach the level of the basement in Ms. Henson's home. Mr. Fronk also noted that the scenario described by Ms. Henson – water traveling down her driveway, through the garage and laundry room, and to her finished family room – is typical of overland flooding. Mr. Fronk also explained that this would not be a situation where sewage water comingled with overland flooding because Ms. Henson's home is serviced by separate sanitary and storm sewers, not a combined sewer system. Subsequent to the hearing, MSD submitted a schematic illustrating the separated sewer configuration and the relative height of observed signs of surcharge in relation to the building elevation. (Doc. 1124, Ex. J).

Under the Consent Decree, property owners may recover damages to personal or real property caused by (1) the inadequate capacity in MSD's Sewer System, or (2) MSD's negligent

maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). Property owners are responsible for backups in the building lateral sewer lines, which are owned by the property owner and not MSD. (*Id.*). Occupants of properties damaged as a result of a basement backup must notify MSD within 24 hours of the time the backup is discovered to recover damages under the SBU Claims Process Plan. (*Id.*).

The Consent Decree requires homeowners like Ms. Henson to report a sewer backup within 24 hours to claim compensation for damage to their personal property. (Doc. 131, Consent Decree, Exhibit 8 at 1). It is undisputed that Ms. Henson waited four days to report her basement backup to MSD. Although Ms. Henson asserts she was unaware of the 24-hour reporting requirement, MSD has presented evidence that the requirement has been displayed on its SBU website since December 2016 and was published by the news media following the March 1, 2017 storm. The failure of a claimant to report a basement backup within 24 hours deprives MSD of the ability to timely investigate and evaluate the cause of any potential sewer backup. This is a valid reason to deny an SBU claim.

In addition, the Court notes that under the Consent Decree that governs the Court's review of SBU appeals, "MSD's provision of cleanup services under this program does not constitute an admission of any liability by MSD with regard to any claims that the occupant may have against MSD for real or personal property damage caused by the building backup." (Doc. 131, Ex. 7 at 4). MSD will provide cleaning services when doubt exists about the cause of the backup after an initial investigation based on the health risks posed by floods and water damage. (Doc. 640, Ex. B). Therefore, the fact that MSD provided this cleaning service for the property at 4381 Dalehurst Drive and paid for such service is not evidence that the water in Ms. Henson's

basement was the result of a backup of the public sewer.

Finally, there has been no evidence presented to the Court to establish that the personal property loss for which Ms. Henson seeks compensation is related to a backup of the MSD sanitary sewer. Under the SBU program governed by the Consent Decree, homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system, and not due to other causes such as overland flooding. (Doc. 131, Consent Decree, Exhibit 8 at 1). MSD has presented persuasive evidence that given the relative elevations of the sanitary sewer that services Ms. Henson's home and the elevation of her basement in relation to the level of sewer surcharge, it is unlikely that the water damage to Ms. Henson's basement was caused by a backup of the public sanitary sewer and more likely it was due to overland flooding. The preponderance of the evidence does not establish that the cause of Ms. Henson's basement backup was inadequate capacity of MSD's public sewer system.

Likewise, MSD has explained why it allowed Mr. Zacharias's claim but denied Ms. Henson's claim. As MSD states, there is no 24-hour reporting requirement for the SBU Customer Service Program Plan under which MSD provides cleaning services. (Doc. 131, Exhibit 7). In addition, Mr. Zacharias's claim essentially involved cleaning services, and not a claim for real or personal property loss. MSD initially offered to provide cleaning services for Mr. Zacharias's property, which he declined in favor of hiring his own contractor to expedite the cleaning process. Under this scenario, MSD properly concluded that reimbursement of Mr. Zacharias's cleaning expenses was fair and reasonable, and the Court agrees.

Ms. Henson also suggests that had she been told MSD was going to deny her claim because she failed to report within 24 hours, she would not have let the restoration company dispose of her personal property. However, each of the Property Offsite Disposal Report forms which list the items of property removed by the restoration company is signed by Mr. Henson, who was home at the time the cleaning services were provided. Directly below the signature line is language providing the following:

> By signing this report, I agree that the items listed above will be removed from my property and disposed of offsite. I understand that I may file a claim for reimbursement for these items, but MSD does not promise or guarantee that my claim will be paid. . . .

(Doc. 1091, Ex. B at 11-13). Likewise, the Permission to Enter form advises the claimant that the provision of cleaning services is not a guarantee that MSD will pay for personal property loss:

> By signing this form, I am saying that:
>
> • I understand MSD is providing cleanup services before they have found the cause of the sewer backup. Until the cause of the sewer backup is found, it is not possible to determine who is responsible for the damage.
>
> • I understand MSD is not admitting to being responsible or negligent for the sewer backup by providing cleanup services.
>
> • I understand I may file a claim with MSD for my damages caused by the sewer backup. But, I understand that MSD providing cleanup services does not promise or guarantee that MSD will pay my claim. . . .

(Doc. 1091, Ex. B at 10). By signing these forms, the Hensons authorized the removal of damaged items from their basement as part of the cleaning services and were informed that there was no guarantee that MSD would reimburse them for such items.

Because Ms. Henson did not report any sewer backup to MSD within 24 hours of its occurrence in March 2017, and because MSD has presented persuasive evidence that overland flooding and not a surcharge of the public sanitary sewer system most likely caused Ms. Henson's basement backup, the Court upholds MSD's decision in this case.

**IT IS SO ORDERED**.

Date: _10/30/17_

Karen L. Litkovitz, Magistrate Judge
United States District Court