UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>ORDER ON REQUEST<br>FOR REVIEW BY<br>LAURA MCCREADIE |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Laura McCreadie (Doc. 970), the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1109), Ms. McCreadie's supplement and video in support of her Request for Review (Doc. 1172), and MSD's supplemental response (Doc. 1219). On January 11, 2018, the Court held a supplemental hearing[1] on Ms. McCreadie's request for review at which Ms. McCreadie and Tom Fronk, MSD Engineering Technical Supervisor, testified and documentary evidence was submitted. (Doc. 1223).

I. Background

Ms. McCreadie's request for review is filed under the Sewer Back Up[2] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those

---

[1] The Court previously stayed its decision on Ms. McCreadie's request for review because she had not made an SBU claim to MSD in the first instance. (Doc. 1113). Thereafter, Ms. McCreadie filed an SBU claim with MSD. After MSD denied Ms. McCreadie's claim, she filed a request that her appeal be reopened and the Court scheduled a supplemental hearing.

[2] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

> damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Claimants who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Ms. McCreadie is the owner of the property located at 962 Fashion Avenue, Delhi Township, Ohio. She seeks compensation for personal property loss sustained on April 28, 2017 due to alleged sewer backup into her basement. On October 3, 2017, Ms. McCreadie filed an SBU claim with MSD. MSD denied Ms. McCreadie's claim, finding that the backup of sewer water into her basement was the result of a blockage in the private building sewer line and not a problem in the public sewer. (Doc. 1219, Ex. G). Ms. McCreadie disagreed with MSD's decision and filed this appeal.

II. Evidence

Ms. McCreadie contacted MSD the evening of April 28, 2017 to report a backup of sewer water in her basement. An MSD crew responded the following morning to investigate. The crew found that the toilet, floor drain, and shower stall were still backed up with sewer water. The crew also reported that both the upstream and downstream manholes were currently open and running. MSD submitted photographs depicting the conditions of Ms. McCreadie's basement fixtures and the manholes. (Doc. 1219, Ex. B). The MSD crew also reported that the manholes had not previously surcharged. (*Id.*).

Ms. McCreadie testified that when the MSD crew was at her property, she was with Mr. Wiggins, the MSD crew leader, when he observed one of the manholes. Ms. McCreadie alleges that Mr. Wiggins stated that the water level was "too high" and the sewer had surcharged. However, the contemporaneous report signed by Mr. Wiggins that day states there were no signs of surcharge in any manhole near the property. (*Id.*). Ms. McCreadie also disputes MSD's report that there was no surcharge of the sewer, citing to the photograph of the upstream manhole (Doc. 1219, Ex. B at 3, #20406002), which appears to show debris or other matter hanging from a rung of the manhole ladder. Mr. Fronk testified that the photograph actually depicts the decaying metal rung of the ladder, comparing the diameter of the rung in a 2016 photograph of the manhole (Doc. 1219, Ex. A) to the photograph of the same manhole on March 29, 2017 (Doc. 1219, Ex. B). He also testified that the crew's observation that Ms. McCredie's basement toilet, floor drain, and shower were still holding water when the public sewer was observed to be open and running was an indication that a blockage existed somewhere between the public sewer and those fixtures.

MSD also presented evidence of TV video footage from August 12, 2015 of the property's connection to the mainline which indicated the presence of roots within the private building sewer.[3] (Doc. 1219, Ex. D). MSD performed another TV inspection of the property's building lateral on May 22 and 23, 2017. (Doc. 1219, Ex. E). This footage showed heavy roots within the building lateral. It also revealed that the building sewer changed from a standard six inch pipe to a four inch cast iron pipe. Mr. Fronk testified that while this condition would not have, in and of itself, caused a sewer backup, it does limit the amount of flow that can be conveyed by the private lateral. Because changing this condition required reconstruction within the right of way, MSD performed the work. The four inch pipe was removed and replaced with standard six inch pipe in November of 2017. (Doc. 1219, Ex. F).

Ms. McCreadie also submitted a video of her lateral line performed by Televac on May 2, 2017. (Doc. 1172, attachment). The undersigned has reviewed the video, which shows roots within the lateral at 59 feet, 1 inch and what appears to be a heavier root ball obstructing much of the lateral line at 67 feet, 11 inches. MSD presented still photographs from this video. (Doc. 1223, Ex. D-1). Mr. Fronk testified that there was a more significant root ball depicted at 64 feet, 10 inches, which could cause a backup of the lateral line during a rain event. He testified that the propensity for a backup of the lateral line increases during a rain event as additional water is fed into the lateral line from other sources, such as downspouts, and additional debris carried with the water adds to the current blockage of the line.

III. Resolution

Under the Consent Decree, property owners may recover damages to personal or real property arising from "backup of wastewater into buildings due to inadequate capacity in MSD's

---

[3] Mr. Fronk testified that this video was unrelated to any sewer backup.

4

Sewer System" and "damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 131, Consent Decree, Exhibit 8 at 1). Property owners are responsible for blockages in the owner's building lateral sewer lines, which are owned by the property owner and not MSD. (*Id.*). Homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system and not due to blockages in the occupant's own lateral sewer lines. (Doc. 131, Consent Decree, Exhibit 8 at 1).

Here, Ms. McCreadie has not shown that the wastewater backup into her basement on April 28, 2017 was caused by inadequate capacity in MSD's sewer system. MSD has presented persuasive evidence that the day after the rain event, the fixtures in Ms. McCreadie's basement were still backed up while the public sewer was open and running, indicating that the cause of the basement backup lay somewhere in the building lateral between the public sewer and the basement. In addition, the video evidence presented shows evidence of root ball blockages in Ms. McCreadie's lateral building line. These contemporaneous conditions are persuasive evidence that the cause of the basement backup was not a surcharge of the public sewer but a blockage in the building lateral for which Ms. McCreadie is responsible.

Ms. McCreadie questions why she was not notified by MSD of the roots discovered in her lateral line after MSD performed the 2015 TV video, and she suggests that MSD should be responsible for the blockage in her building lateral. MSD argues that budgetary constraints prohibit the use of rate payer funds to notify building owners of maintenance issues for which owners are responsible.

5

MSD is correct that the responsibility for maintaining and cleaning a building lateral rests with the homeowner. MSD's Rules and Regulations provide, "The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer from the building to the point of connection with the public local sewer." (Doc. 1219, Ex. H, Section 2008, MSD Rules and Regulations). MSD will make repairs in public right-of-way laterals to ensure proper, safe, and consistent repairs where MSD receives notice by means of a valid sewer cleaner contractor's receipt that repair or reconstruction of the lateral in the public right-of-way is necessary. (*Id.*). However, this does not obviate the homeowner's responsibility for routine maintenance and cleaning of the building lateral from the point of connection with the public sewer to the homeowner's building. Because Ms. McCreadie owns and is responsible for maintaining her private building lateral sewer line, including the portion within the public right-of-way, MSD's denial of her claim was correct.

The Court is not unsympathetic to homeowners like Ms. McCreadie who experience flooding issues such as those that occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to her property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System. Where, as here, the preponderance of the evidence does not establish that the damage to Ms. McCreadie's basement was caused by inadequate capacity in the MSD sewer system, the Court is constrained to deny Ms. McCreadie's claim.

Therefore, Ms. McCreadie's appeal is denied.

**IT IS SO ORDERED.**

Date: 1/19/18

Karen L. Litkovitz, Magistrate Judge
United States District Court