UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
    Plaintiffs,

vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
    Defendants.

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

ORDER ON REQUEST
FOR REVIEW BY
MARY CAMPANY

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Mary Campany (Doc. 1173) and the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1216). On January 11, 2018, the Court held a hearing on Ms. Campany's request for review at which Ms. Campany and Tom Fronk, MSD Engineering Technical Supervisor, testified and documentary evidence was submitted. (Doc. 1224).

I. Background

Ms. Campany's request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id*. Claimants who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Ms. Campany is the owner of the property located at 622 Grove Avenue, Wyoming, Ohio. She seeks compensation for personal property loss sustained on August 16, 2016 and March 1, 2017 due to alleged sewer backup into her basement. On December 2, 2016 and May 17, 2017, Ms. Campany filed SBU claims with MSD related to the two separate backups. MSD denied Ms. Campany's claims, finding that the backup of water into her property was the result of a blockage in her private building sewer line and not a problem in the public sewer. (Doc. 1216, Exs. C, G). Ms. Campany disagreed with MSD's decisions and filed this appeal.

II. Evidence

    A. August 16, 2016 backup

On August 16, 2016, Ms. Campany discovered a backup of sewer water in her basement. She contacted MSD on August 17, 2016 to report the backup and an MSD crew responded that

same day to investigate. The MSD crew reported that the eight-inch public sewer mainline between the upstream and downstream manholes was currently open and running. The crew reported that the upstream manhole was a "head" manhole that was "buried." (Doc. 1216, Ex. A). The term head manhole signifies the highest manhole in a local sewer system, meaning there is no existing sewer line upstream of that point. In other words, it signifies the start of a local sewer line. Mr. Fronk explained that in this case, the head manhole is not actually a manhole per se, but signifies the location of the bulkhead (or plug) at the end of the existing sewer pipe line. The MSD crew also reported that the downstream manhole had not previously surcharged and there was no evidence of overland flooding. (*Id.*). The crew advised Ms. Campany to contact a private plumber. Ms. Campany contacted Roto Rooter. On August 19, 2016, Roto Rooter reported: "floor drain backed up upon arrival, augered floor drain, floor drain now unclogged, no backups upon departure." (Doc. 1216, Ex. B; Doc. 1224, Def. Ex. 1). Roto Rooter also used a product called "pipe shield" on the drain, which is a type of liquid drain cleaner. (*Id.*).

B. March 1, 2017 backup

Ms. Campany contacted MSD on March 1, 2017 to report another backup in her basement. That same day, an MSD crew was dispatched to her property. The crew reported that the mainline sewer was open and running, and there was no evidence the downstream manhole had surcharged. The crew further reported there was no evidence of overland flooding and advised Ms. Campany to contact a plumber. Ms. Campany states that sewer water came up in her basement toilet and bathtub, and that she observed plumbing trucks at other houses on her street that date. In her Request for Review, Ms. Campany states she was advised by three different plumbing companies that they could charge her for augering her building lateral line, but it was not needed. (Doc. 1173 at 3). Ms. Campany testified she spoke with someone from

3

Roto Rooter, who advised her that the problem was sewer related, which she understood to mean a problem with the public sewer.

MSD further investigated the backup to Ms. Campany's property. The investigation revealed that Ms. Campany's property taps into the eight-inch sanitary sewer near the beginning/ "head-end" of the sewer, which means her lateral line receives little to no contributing flow from upstream. (Doc. 1216, Ex. F). Mr. Fronk testified that MSD received no other reports of a sewer backup on Grove Avenue for either of the dates Ms. Campany reported a sewer backup. He also testified that there are homes on Wentworth Avenue, which runs directly perpendicular to Grove Avenue, Ms. Campany's street, that have sewer backup prevention devices supplied by MSD. He testified, however, that those homes are connected to a completely separate public sewer from the one servicing Ms. Campany's home. (Doc. 1216, Ex. F; Doc. 1224, Def. Ex. 2).

III. Resolution

Under the Consent Decree, property owners may recover damages to personal or real property arising from "backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System" and "damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 131, Consent Decree, Exhibit 8 at 1). Property owners are responsible for blockages in the owner's building lateral sewer lines, which are owned by the property owner and not MSD. (*Id.*). Homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system and not due to blockages in the occupant's own lateral sewer lines. (Doc. 131, Consent Decree, Exhibit 8 at 1).

Here, Ms. Campany has not shown that the wastewater backups into her basement on August 16, 2016 and March 1, 2017 were caused by inadequate capacity in MSD's sewer system. With respect to the August 16, 2016 backup, the Roto Rooter plumbing receipt indicates that the backup was caused by a blockage in Ms. Campany's building lateral and that after the plumber augered the line, it was open and no longer backed up. There has been no other evidence presented which would suggest that a backup of the public sewer caused Ms. Campany's basement flooding on that date.

With respect to the March 1, 2017 backup, the contemporaneous investigation by MSD's crew indicated that the public sewer was open and running, and there was no evidence the downstream manhole had previously surcharged. In addition, MSD has presented persuasive evidence that Ms. Campany's house is located at the head-end of the public sewer line. As a result, there is little to no additional sewage flow from upstream, thereby limiting the amount of sewage flow in the public sewer line at the point of connection to her building lateral and decreasing the potential for a backup into the lateral line from a surcharge of the public sewer system. Although Ms. Campany alleges she was advised by Roto Rooter and others that her backup resulted from a problem with the public sewers, there is no evidence that any of these plumbers did any investigation of the building lateral or public sewer on or around the date of the backup to confirm or disprove the cause of her backup. The preponderance of the evidence presented indicates that the cause of the basement backup was not a surcharge of the public sewer, but a blockage of the building lateral for which Ms. Campany is responsible.

The Court is not unsympathetic to homeowners like Ms. Campany who experience flooding issues such as those that occurred in this case. However, the responsibility for maintaining and cleaning a building lateral rests with the homeowner. MSD's Rules and

Regulations provide, "The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer from the building to the point of connection with the public local sewer."  (Doc. 1219, Ex. H, Section 2008, MSD Rules and Regulations).  In addition, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to her property.  The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System.  Where, as here, the preponderance of the evidence does not establish that the damage to Ms. Campany's basement was caused by inadequate capacity in the MSD sewer system, the Court is constrained to deny Ms. Campany's claims.

Therefore, Ms. Campany's appeal is denied.

**IT IS SO ORDERED.**

Date: 1/19/18

Karen L. Litkovitz, Magistrate Judge
United States District Court