# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>**ORDER RE: REQUEST<br>FOR REVIEW BY<br>ROY C. JONES** |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Roy C. Jones (Doc. 1006) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1150). On December 20, 2017, the Court held a hearing on Mr. Jones's request for review of his SBU claim at which Sheilah Smith, Mr. Jones's daughter, appeared and testified on behalf of Mr. Jones. (Doc. 1207). The Court also held a supplemental telephone hearing on January 12, 2018 (Doc. 1226) and received a supplemental response from MSD (Doc. 1251).

Mr. Jones's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

> from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

As an initial matter, MSD does not dispute that Mr. Jones's property experienced an SBU that is subject to the claims process under the Consent Decree. (Doc. 1150 at 1). The only issue in this case is the amount of compensation Mr. Jones is entitled to for his property loss.

Mr. Jones is the owner of the property located at 1805 Northcutt Avenue, Cincinnati, Ohio. On August 28, 2016, Mr. Jones experienced sewer backup in his basement which resulted in damage to his personal property. Mr. Jones made a claim for damages in the amount of $34,112.75 to MSD for the sewer backup. MSD's adjuster, Tenco Services, Inc., valued the personal property loss at $17,367.33. (Doc. 1150-1 at 4). MSD offered Mr. Jones this amount in settlement of his claim. Mr. Jones rejected the offer and filed this appeal.

Mr. Jones disputes the amount of compensation MSD has offered and seeks $34,112.75 in damages. Mr. Jones's claim for damages appears to be based on the original purchase price of

2

the items. (Doc. 1006 at 3-10). Damages for SBU claims are determined based on the market value of personal property *as of the date of loss* (the depreciated value) and not on the original purchase price or cost of replacement. MSD properly valued Mr. Jones's personal property at the depreciated value based on the age of the items. The Court adopts as fair and reasonable the MSD's adjuster's estimate for the items of personal property.

In terms of real property damage, the Tenco report states that compensation for one exterior basement door and three interior basement doors is warranted based on the loss. (Doc. 1150-1 at 3). The estimate from Complete Restoration Services-CRS 1st Response includes an estimate for the removal and replacement of one exterior door and the removal and replacement of one interior door. The Tenco Claim Evaluation Worksheet includes compensation for one exterior door and one interior door. However, it appears that Tenco mistakenly omitted compensation for the two additional interior doors that were damaged by the SBU. The Court awards an additional $412.02 for the two interior doors (2 x $206.01) based on the CRS 1st Response removal and replacement value of an interior door.

To the extent Mr. Jones also seeks damages for the estimate provided by Sentry for the removal and repair of exterior and interior doors, these items have already been covered in the estimate provided by Complete Restoration Services-CRS 1st Response and the Court's additional award of $412.02. *See* Doc. 1150-1 at 13-14. Therefore, the Court declines to award further compensation for these items.

Mr. Jones also requests reimbursement for the replacement of basement steps, which he claims were damaged by the SBU but inadvertently omitted from the claim. Following the hearing on his claim, Ms. Smith, Mr. Jones's daughter, submitted an estimate from WIP II, Inc.

3

for the removal of six damaged steps going to the basement from the rear of the house, installation of six new concrete steps, repair of a concrete side wall, and removal and installation of the rear cellar door for a total of $3,865.54. (Doc. 1213). The WIP II, Inc. estimate is not itemized. Therefore, it is not clear how much of the $3,865.54 is attributable to the removal and repair of the steps for which Mr. Jones seeks compensation.

The Court held a supplemental phone hearing on January 12, 2018, to obtain clarification of the WIP II, Inc. estimate. During this hearing, Ms. Smith clarified that the steps were outdoor steps leading from the rear of the house to the basement exterior door.[2] There is an additional rear cellar door covering the outside steps, called a "bilco" cellar door, for which Ms. Smith is also seeking compensation on behalf of her father. The Court granted Ms. Smith two weeks to obtain additional information, including clarification as to how the rear cellar door was affected by the SBU and a revised estimate breaking out the cost to replace the steps and door. To date, the Court has not received any additional information from Ms. Smith.

The Court declines to award compensation for the WIP II, Inc. estimate. The $3,865.54 estimate covers more than the removal and replacement of steps and the rear cellar door for which compensation is sought. While it is conceivable that the bottom step or two may have been damaged by an SBU, there is no documentation verifying this damage. It is also highly unlikely that an SBU would rise to a level reaching the cellar door at the top of the six steps. Moreover, as there is no breakdown of the WIP II, Inc. estimate, the Court is unable to determine the cost of the repair and replacement of any of the steps and rear cellar door. Therefore, the request for compensation for the steps and rear cellar door is denied.

---

[2] The removal and replacement of the exterior basement door is covered by the 1st Response estimate for which compensation has already been awarded.

4

In conclusion, the Court awards $17,779.35 ($17,367.33 [MSD's original estimate of personal and real property damage] plus $412.02 for two additional interior doors) to Mr. Jones for the damages sustained in this case.

**IT IS SO ORDERED**.

Date: 2/8/18

Karen L. Litkovitz, Magistrate Judge
United States District Court