# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>**ORDER RE: REQUEST**<br>**FOR REVIEW BY**<br>**SHEILA J. MOORE** |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Sheila J. Moore (Doc. 1085) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1192). On January 10, 2018, the Court held a hearing on Ms. Moore's request for review at which Ms. Moore and Tom Fronk, MSD Engineering Technical Supervisor, testified and documentary evidence was submitted. (Doc. 1221). MSD and Ms. Moore also submitted supplemental briefs following the hearing at the request of the Court. (Docs. 1243, 1253).

Ms. Moore's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Ms. Moore is the owner of the property located at 3362 Gerold Drive, Cincinnati, Ohio. On March 1, 2017, the area in which Ms. Moore's property is situated experienced heavy rainfall. On March 1, 2017, MSD received a report that 3362 Gerold Drive was currently experiencing two feet of flooding. MSD crews responded to investigate that same day. The crew inspected the mainline and found it was open and running and not currently surcharged. (Doc. 1192, Ex. A). The MSD crew noted there was no evidence that the manholes had previously surcharged. The crew also noted there was evidence of overland flooding, with water coming from behind the house, into the yard, and down the recessed driveway. (*Id.*).

A neighboring property at 3366 Gerold Drive also reported a SBU and MSD crews did identify signs of surcharge in the sewer that the home is tapped into. However, 3366 Gerold Drive is tapped into a different sewer segment than Ms. Moore's property.

2

The following day, MSD received a report of another backup at Ms. Moore's property. Due to the overwhelming number of calls for service from the March 1, 2017 storm, the findings at 3366 Gerold Drive, and in the interest of public health and safety, MSD authorized cleaning services for Ms. Moore's home.

On April 20, 2017, Ms. Moore filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on March 1, 2017. MSD denied the claim because it determined that the damage to Ms. Moore's property resulted from overland flooding not emanating from MSD's Sewer System and not from a backup of MSD's sanitary sewer. Ms. Moore disagreed and filed this appeal.

In her request for review filed in this Court, Ms. Moore states that she received a phone call from MSD on March 4, 2017, indicating that MSD had "accepted responsibility for the sewer backup . . . on March 1" and would send a cleaning crew to clean Ms. Moore's property. (Doc. 1085 at 3). Ms. Moore states the restoration crew that cleaned her basement and garage disposed of most of her property due to sewage contamination. Ms. Moore alleges she believes her property damage was the fault of MSD because she observed water backing up into the basement floor drain, washing machine, and laundry tub on March 1, 2017. Ms. Moore testified that the water was not clear, but dirty and brown in color. She testified that the force of the water "popped" the cover off the floor drain. She also alleges there was three feet of water in the garage and two feet of water in the basement based on the water lines that remained after the water receded. (*Id.*). Ms. Moore testified that she has had water seep into her basement from previous rains but never to this extent. Ms. Moore made a claim with her insurance company, which denied the claim as water damage is not covered under her policy. (Doc. 1085 at 5-6).

3

Mr. Fronk testified that the photographs taken by the crew on March 1, 2017 show that the upstream and downstream manholes at 3362 Gerold Drive were not currently surcharged. (Doc. 1192, Ex. A). Mr. Fronk testified that the MSD crew's investigation also showed no evidence that either the upstream or downstream manholes had previously surcharged. (*Id.*). He also testified that one neighboring property, 3366 Gerold Drive, reported a backup on March 1, 2017. That property, however, tied into a different sewer line than Ms. Moore's property. In addition, the MSD crew found signs of sewer surcharge in the downstream manhole at 3366 Gerold Drive, which Mr. Fronk testified was most likely from the nearby "trunk" sewer to the north of Gerold Drive which tied into that sewer line. (Doc. 1192, Exs. B, C). Mr. Fronk also testified that an inspection revealed that the upstream manhole (#20606032) from 3366 Gerold Drive did not show signs of surcharge, which indicates that the backup did not affect the sewer further upstream, where Ms. Moore's home is tapped in.

Mr. Fronk testified that the MSD crew found signs of overland flooding during their contemporaneous investigation of Ms. Moore's property. He testified that Ms. Moore's backyard is located in an old creek bed and that during heavy rains, water still drains to this area. Mr. Fronk also cited to a topography map showing that the area surrounding Ms. Moore's property slopes towards the rear of Ms. Moore's property and her recessed driveway and garage. (Doc. 1192, Ex. E). He testified that storm water and overland flooding appears brown and dirty because of the debris and dirt it accumulates when it flows.

Mr. Fronk testified that the different heights of water damage reflected on the garage (3 feet) and the basement (2 feet) lend further support to MSD's conclusion that the damage was not caused by sewer surcharge. Mr. Fronk testified that if the sewer had surcharged, the water

4

levels would be identical; however, with overland flooding, water that is restrained by the garage door would still enter the basement but at a slower rate resulting in a lower water line.

The parties dispute how water entered Ms. Moore's floor drain, washing machine, and laundry tub. Mr. Fronk testified that the water most likely came from the building sewer, which could have been overloaded by the drain outside the garage and downspouts connected to the building sewer. Ms. Moore testified that the outside garage drain was completely covered by leaves which would have prevented much water from entering that drain, which was evidenced by the water line on the garage once the water receded.

At the request of the Court, MSD provided additional information following the hearing on whether other property owners on Gerold Drive filed SBU claims and the relative elevations of the upstream and downstream manholes in relation to Ms. Moore's basement. MSD reports that the only other resident of Gerold Drive to file an SBU claim related to the March 1, 2017 rain event is the occupant of 3366 Gerold Drive, discussed above. MSD also presented evidence of the elevations of Ms. Moore's home, the neighboring property at 3366 Gerold Drive, and the nearby manholes. (Doc. 1243, Ex. H). MSD contends that based on the understanding that water seeks its own level, these elevations indicate that the downstream manhole would need to surcharge approximately 9 feet in order for water to back up and overflow through Ms. Moore's basement floor drains. (Doc. 1243 at 2).

In replying to MSD's information, Ms. Moore states she telephoned MSD after the hearing and spoke with a man about sewer surcharges on her Water Works bill. Ms. Moore was advised that any surcharges are indicated on her water bill as sewer usage in cubic feet. Ms. Moore has submitted her water bills from February and May of 2017. The May 2017 bill

5

includes the time frame of March 1, 2017, the date of the incident. The February water bill has a usage of 0.00 cubic feet, yet the May water bill has a surcharge of 2.00 cubic feet. (Doc. 1253 at 2-5). Ms. Moore also alleges she was advised by a plumber following the flooding of a different property to test for sewer water by flushing the toilet: if the water from a flood is clear, it is not sewer water; however, if the water is brown, it is sewer water. Finally, Ms. Moore states that during the cleaning of her basement following the March 2017 rain event, the restoration company advised her that the water in her basement was classified as "Category 3," meaning the water is toxic and items coming into contact with Category 3 water needed to be discarded. (Doc. 1253 at 1).

Under the Consent Decree that governs the Court's review of SBU appeals, property owners may recover damages to personal or real property caused by (1) the inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). Claimants like Ms. Moore who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of water into their property was caused by inadequate capacity in MSD's sewer system (a sewer discharge) and not by overland flooding or blockages in the homeowner's privately owned building sewer line. (Doc. 131, Consent Decree, Ex. 8 at 1). Ms. Moore has not established that the water backup into her basement on March 1, 2017 was caused by inadequate capacity in MSD's sewer system.

As an initial matter, the Court notes that the Consent Decree provides that "MSD's provision of cleanup services under this program does not constitute an admission of any liability by MSD with regard to any claims that the occupant may have against MSD for real or personal

6

property damage caused by the building backup." (Doc. 131, Ex. 7 at 4). MSD will provide cleanup services when doubt exists about the cause of the backup after an initial investigation based on the health risks posed by floods and water damage. (Doc. 640, Ex. B). Therefore, the fact that MSD provided this cleaning service to the property at 3362 Gerold Drive and paid for such service is not evidence that the water in Ms. Moore's basement and garage was the result of a backup of the public sewer.

In addition, waters classified as Category 3 per the Institute of Inspection Cleaning and Restoration Certification's ("IICRC") Standards (Doc. 968, Ex. D) can be attributed to other sources, such as flood and ground waters, as well as sewage (http://www.iicrc.org/registrants/industry-perspective/). Therefore, while the restoration company advised Ms. Moore that her basement was contaminated with Category 3 water, this does not prove that the flooding to her home contained sewage or that it came from MSD's sewer system.

MSD must exercise good faith reasonable engineering judgment in determining the cause of a basement backup by considering several factors, including the amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). MSD did so in this case. MSD presented evidence that the only other property on Gerold Drive filing an SBU claim was connected to a different sewer line than the line servicing Ms. Moore's property. In addition, MSD has presented persuasive evidence that a contemporaneous investigation on March 1, 2017 showed no signs of surcharge of the upstream and downstream manholes servicing Ms. Moore's property. A separate MSD crew found no signs of sewer

surcharge in the manhole upstream of 3366 Gerold Drive (#20606032), which is consistent with MSD's investigation of Ms. Moore's basement finding no signs of surcharge in the sewer segment further upstream of 3366 Gerold (manholes #20606034 and #20606035). Additionally, the MSD crew observed overland flooding on March 1, 2017. As depicted in the topography map submitted by MSD, Ms. Moore's property is situated in a lower lying area of a former creek bed that is prone to overland flooding. Given the topography of the area, overland flooding not emanating from MSD's sanitary sewer system was the most likely cause of the backup in Ms. Moore's basement. Ms. Moore testified that she observed brown, dirty water backing up into her basement floor drain, washer, and laundry tub, which suggests the presence of sewer water. This evidence does not outweigh the investigatory evidence presented by MSD which strongly indicates that the likely cause of the basement backup on March 1, 2017 was not a surcharge[2] of MSD's sanitary sewer system and was more likely due to overland flooding. The preponderance of the evidence does not establish that the cause of Ms. Moore's basement backup was inadequate capacity of MSD's public sanitary sewer system.

The Court is not unsympathetic to homeowners like Ms. Moore who experience a basement backup such as occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to a property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate

---

[2] The "surcharge" referenced by Ms. Moore in her Water Works bill relates to a billing matter, i.e., an additional charge, and is not evidence of overcapacity in the public sewer system, i.e., a "surcharge" of the public sewer system that results in backups into basements.

8

capacity in MSD's Sewer System. In the absence of evidence establishing Ms. Moore's property damage was more likely caused by a surcharge in the public sanitary sewer line and not by overland flooding or some other cause, the Court is constrained to uphold MSD's decision in this case.

Therefore, the Court denies Ms. Moore's appeal in this case.

**IT IS SO ORDERED**.

Date: 2/9/18

Karen L. Litkovitz, Magistrate Judge
United States District Court