# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>    Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>    Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br><br><br>**ORDER RE: REQUEST<br>FOR REVIEW BY KIMYA<br>MOYO ON BEHALF OF<br>MALONE APARTMENT-<br>HOMES, LLC** |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Kimya Moyo on behalf of Malone Apartment-Homes, LLC ("Malone Apartments") (Doc. 1016) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1195). On December 12, 2017, the Court held a hearing on Ms. Moyo's request for review at which Ms. Moyo, her three witnesses, and Tom Fronk, MSD Engineering Technical Supervisor, testified and documentary evidence was submitted. (Doc. 1199). MSD and Ms. Moyo also submitted supplemental briefs following the hearing at the request of the Court. (Docs. 1227, 1254, 1283).

I. <u>Background</u>

Ms. Moyo's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those

---
[1]The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

> damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id*. at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id*. Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Ms. Moyo is the owner of the Malone Apartments, which are located at 3814, 3820, 3826, 3830, 3836, and 3840 Washington Avenue, Cincinnati, Ohio. On August 28, 2016, the area in which Ms. Moyo's properties are situated experienced heavy rainfall. On August 31, 2016, MSD received a report that four of the properties – 3814, 3820, 3826, and 3830 Washington Avenue – had experienced three feet of flooding during the storm on August 28. Due to the overwhelming number of calls for service resulting from the August 28, 2016 weather event and the amount of time that had passed between the event and the reported flooding, MSD crews did not respond to investigate.

On September 12, 2016, Ms. Moyo, on behalf of Malone Apartments, filed an SBU claim

with MSD seeking $46,486.16 in compensation for property damage allegedly resulting from a sewer backup on August 28, 2016. MSD denied the claim because it determined that the damage to the Malone Apartments resulted from overland flooding not emanating from MSD's Sewer System and not from a backup of MSD's sanitary sewer. Ms. Moyo disagreed and filed this appeal.

II. Ms. Moyo's Request for Review

In her request for review filed in this Court, Ms. Moyo states that she contracted with 1st Call Disaster Service ("1st Call") to clean the affected properties following the August 28, 2016 storm. Ms. Moyo submitted a letter dated June 21, 2017 from 1st Call which states that on August 30, 2016, it provided mitigation services to the four apartment buildings affected by the storm. The letter also states, "During recent storms, it was found the city's waste water management system became overwhelmed and entered four units of the building." (Doc. 1016 at 8). Ms. Moyo states that MSD sent two sets of inspectors from Tenco, an MSD contractor, to assess the four properties in October 2016 and January 2017 and both "confirmed [her] claim." (Doc. 1016 at 2). Ms. Moyo alleges she was later advised that her claim was denied because no other neighbors had submitted SBU claims. Ms. Moyo alleges the reason for the denial is incorrect because her neighbor at 515 Clinton Springs Avenue and a tenant in one of her buildings (3830 Washington Avenue) submitted SBU claims and both were compensated for property damage sustained during the August 28, 2016 storm. (*Id*. at 2-3).

III. Hearing evidence

At the hearing, Tom Fronk testified that the 48-51 inch combined sewer (sanitary and storm) that serves the Malone Apartments has no known capacity issues. He also testified that

3

the sewer is more than 15 feet deep, making it unlikely to back up to the extent necessary to affect Ms. Moyo's properties. Mr. Fronk testified that there was no report of a sewer backup in the two Malone Apartment buildings to the north of and adjacent to the four buildings that did report a backup. Mr. Fronk testified that all six of the Malone Apartment buildings are tied into the same sewer line and the two that did not report a backup have basements that sit at or below the elevations of the buildings that did experience flooding. (Doc. 1199, Def. Ex. 1). Mr. Fronk testified that no other properties downstream from the Malone Apartments reported a sewer backup. With respect to the property at 515 Clinton Springs Avenue, Mr. Fronk testified that this property is tied into a separate public sewer and, therefore, is not relevant to the cause of Ms. Moyo's flooding. (Doc. 1199, Def. Ex. 1). In addition, MSD received no reports of sewer overflows upstream from the small street behind the Malone Apartments. Mr. Fronk testified that this indicates there was no commingling of sewer water and overland flood water flowing down the hill to the Malone Apartments.

Mr. Fronk also testified that the topography of the properties and the surrounding area is such that overland flooding was the most likely cause of the flooding to the Malone Apartments. He testified there is an extremely steep hill directly behind these apartments, with a change in elevation of 50 feet, that leads directly to the rear of the four Malone Apartment buildings affected. (Doc. 1195, Ex. C). Mr. Fronk stated that the four affected buildings have side entry, recessed garages and water flowing down the hill funnels directly to the garage doors, which is where the water reportedly entered the buildings.

Mr. Fronk also testified that a floor drain can overflow for reasons other than a sewer backup. For example, a floor drain can overflow when an attached private sewer lateral is

4

overloaded by heavy rainfall, particularly for properties with large storm inlets like those that are present at the Malone Apartments. Mr. Fronk stated that based on the report MSD received that the water was entering the buildings through the garage, the topography of the surrounding area, the lack of any other SBUs reported from neighboring properties tied into the same sewer line, and the known lack of capacity issues with the public sewer serving the Malone Apartments, MSD determined that the cause of the flooding to the Malone Apartments was most likely overland flooding without any commingling from overflowing manholes.

Elizabeth Slater, a tenant of the Malone Apartments at 3840 Washington Avenue, testified that on August 28, 2016, she observed extremely steady, heavy rain. She stated that water was "gushing" down the street and accumulated at the bottom of the hill in front of her home at 3840 Washington Avenue. She photographed a car floating in water in the street in front of 3840 Washington Avenue. (Doc. 1199, Pl. Ex. A).

Richard Hutchins, a Malone Apartments tenant at 3830 Washington Avenue, testified that he observed water travel down the sloped driveway. He also testified that he observed the lid of the sewer in front of his unit move, shake, and jump up and down for a few minutes. He stated that there was water in the garage that rose to the seat level of his car and water in the portion of the basement adjacent to the garage. Mr. Hutchins filed an SBU claim with MSD for damage to the circuit board of his car and received compensation from MSD.

At the hearing, MSD explained that Mr. Hutchins received reimbursement from MSD in the amount of $400.00. Given the large number of claims filed as a result of the August 28, 2016 storm, MSD made an administrative decision to triage SBU claims and based on the cost to

administer and litigate certain claims, MSD made the decision to settle lower cost claims like Mr. Hutchins' claim without a formal determination as to the cause of the backup.

Cush Moyo, who lives at 3826 Washington Avenue, is the son of Ms. Moyo and the maintenance person for the Malone Apartments. Mr. Moyo testified that he observed water coming up from the floor drains in the furnace room and laundry room.

Ms. Moyo testified that there are not many buildings or houses that are comparable to the Malone Apartments and situated on land with similar topography, and this may explain why MSD did not receive other reports of SBUs on Washington Avenue. She testified that the two Malone Apartment buildings that did not flood sit at a higher street elevation than the four that flooded.

In response, Mr. Fronk testified that in determining a sewer backup, the salient measurement is not the ground level of a building in relation to the street level, but rather the basement elevation of the building in relation to the sewer level. He testified that if there was a surcharge of the public sewer system, it would be expected that the two Malone Apartment buildings downstream and to the north of the four that flooded would also have flooded because they have lower basement elevations. He testified that the horizontal distance of the sewer line to the property is not nearly as important as the vertical elevation of the building in relation to the sewer line because of the principle that water seeks its own level.

IV. <u>Post-hearing evidence</u>

At the request of the Court, Ms. Moyo and MSD provided additional information following the hearing. MSD submitted a professional survey of the relative basement elevations of the six Malone Apartment buildings on Washington Avenue and other surrounding properties:

6

| Manhole Number | Rim Elevation | Invert Elevation |
|---|---|---|
| 36816021 | 628.56' | 602.3' |
| 33913016 | 611.42' | 592.24' |

| Address | Basement Elevation |
|---|---|
| 3814 Washington Ave. | 627.34' |
| 3820 Washington Ave. | 627.50' |
| 3826 Washington Ave. | 624.91' |
| 3830 Washington Ave. | 625.00' |
| 3836 Washington Ave. | 623.28' |
| 3840 Washington Ave. | 623.53' |
| 3850-3858 Washington Ave. | 623.8' |
| 3863 Washington Ave. | 615.28' |
| 3870 Washington Ave. | 615.99' |
| 3874 Washington Ave. | 619.10' |
| 515 Clinton Springs Ave. | 599.02' |

(Doc. 1227, Ex. E).

Ms. Moyo presented a second letter from 1st Call Disaster Service, the company that provided mitigation services to the Malone Apartments following the August 2016 flood. This February 2, 2018 letter states that the residual water and damage observed during the August 30, 2016 service call were consistent with a Category II water loss. The property was not categorized as a Category III loss because "no fecal matter, toilet paper, etc. was observed." (Doc. 1254, Ex. B). The letter also states, "1st Call cannot definitively state where the water came from because 1st Call did not observe the water intrusion in progress. However, given the extreme storm experienced in the area prior to 1st Call's inspection and 1st Call's knowledge of water damage to surrounding properties, it is not unreasonable to believe that the water entered the basement through internal drains and/or the municipalities' water and/or sewer management system. . . ." (*Id.*).

In addition, Ms. Moyo presented an April 20, 2017 CME Sewer Repair report of an inspection of the storm drain at 3814 Washington Avenue, one of the four properties that flooded. The inspection of the storm drain and catch basin showed the catch basin was not draining. There was a break found in the inlet line to the pit and the drain at the bottom of the pit was full of debris. CME cleaned and vacuumed out the pit. (Doc. 1254, Ex. A).

Ms. Moyo also presented a depiction of a hydraulic model for Washington Avenue and the affected portion of the Malone Apartments. (Doc. 1254, Ex. D2). Ms. Moyo contends that this model shows the "hydraulic grade line runs directly through the four buildings that flooded and not the two that did not flood as seen on the visual provided." (Doc. 1254 at 2).

Ms. Malone also alleges that sewer work on Greenwood Avenue, which runs perpendicular to Washington Avenue, may have contributed to the overland flow of water to the Malone Apartments. She also alleges that if the sewers on Greenwood Avenue were impacted by the August 28, 2016 storm, that may have also contributed to the sewer conditions on Washington Avenue.

MSD states that it did not receive any reports of sewer backups or overflowing manholes on Greenwood Avenue from the August 28, 2016 rain event. The only work MSD has performed on Greenwood Avenue since August 2016 is a preplanned sewer lining project, which is a preventative maintenance measure, and a private building sewer repair within the right-of-way. (Doc. 1283, Ex. F).

Ms. Moyo presents photographs of survey work performed by MSD in December 2017, which resulted in the discovery of a sinkhole on her property in front of the buildings at 3820 and

8

3826 Washington Avenue. (Doc. 1254, Ex. E). Ms. Moyo alleges that the sinkhole identified by MSD "signals a defect somewhere within the city water management system." (Doc. 1254 at 3).

MSD responds that the sinkhole referenced by Ms. Moyo in her supplemental response is approximately 39 feet from MSD's sewers and, as is consistent with MSD's standard procedures, the hole was dye tested twice to determine if it was caused by a defect or other condition of the public sewer. MSD reports that both tests failed to show any connection between the hole in the ground and MSD's sewer system or a privately owned pipe connected to MSD's sewer system. (Doc. 1283, Ex. G).

V. Resolution

Under the Consent Decree that governs the Court's review of SBU appeals, property owners may recover damages to personal or real property caused by (1) the inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). Claimants like Ms. Moyo who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of water into their property was caused by inadequate capacity in MSD's sewer system (a sewer discharge) and not by overland flooding or blockages in the homeowner's privately owned building sewer line. (Doc. 131, Consent Decree, Ex. 8 at 1). Ms. Moyo has not established that the water backup into the garages and basements of the Malone Apartments on August 28, 2016 was caused by inadequate capacity in MSD's sewer system.

As an initial matter, the Court gives no weight to Ms. Moyo's depiction of a hydraulic model for Washington Avenue and the affected portion of the Malone Apartments. (Doc. 1254, Ex. D2). There is no evidence that this model was created by an individual qualified by relevant

9

mathematical background or experience to analyze a storm/sanitary sewer system's hydraulic behavior.

The Court gives little weight to the conflicting information from 1st Call Disaster Services. The June 21, 2017 letter from 1st Call states that "the city's waste water management system became overwhelmed and entered four units of the building." (Doc. 1016 at 8). Under Institute of Inspection Cleaning and Restoration Certification's ("IICRC") standards, a sewer backup is considered Category III water. *See* [http://www.iicrc.org/registrants/industry-perspective/](http://www.iicrc.org/registrants/industry-perspective/). However, the August 30, 2016 invoice from 1st Call did not indicate the water loss was categorized as IICRC Category III. Rather, 1st Call categorized it as a "Category II, class 2 water loss which stemmed from outside water coming in." (Doc. 1016 at 18). The February 2018 letter from 1st Call states that "it is not unreasonable to believe that the water entered the basement through internal drains and/or the municipalities' water and/or sewer management system." (Doc. 1254, Ex. B). However, the company admits it "cannot definitively state where the water came from because 1st Call did not observe the water intrusion in progress." (*Id.*). The information from 1st Call is inconsistent and does not persuade the Court that the cause of the flood to the Malone Apartments was a sewer backup.

The CME Sewer Repair information from April 20, 2017 does not support a finding of a sewer backup in August 2016. The information post-dates the August 2016 flooding by some eight months and does not reliably indicate the conditions of the storm sewer in August 2016.

In addition, there is no evidence that there was sewer work or a surcharge of the public sewer on Greenwood Avenue, which runs perpendicular to Washington Avenue, that contributed to the overland flow of water to the Malone Apartments. Nor is there evidence that the sinkhole

discovered on the property of the Malone Apartments in December 2017 was connected to a public sewer defect.

Ms. Moyo presents photographs showing street flooding near 3840 Washington Avenue and alleges that these photographs depict the sewer backups on Washington Avenue. This allegation is premised on the belief that the street flooding occurred because the storm sewers were at full capacity and were not able to handle any more water. While this certainly may be one explanation for the temporary ponding of water on Washington Avenue, such ponding of water may also result from the clogging of storm basin grates by leaves, sticks, and other debris that occurs during heavy rainfall and overland flooding. As there is no definitive evidence of the cause of the street flooding, the Court cannot conclude that the storm sewers were at full capacity based solely on the photographic evidence.

The most persuasive evidence presented is the absence of flooding to the two downstream Malone Apartment buildings, which have lower basement elevations than the four buildings that flooded. It is undisputed that the two Malone Apartment properties to the north (3840 and 3836 Washington Avenue) did not experience flooding while the four remaining properties to the south (3814, 3820, 3826, and 3830 Washington Avenue) experienced flooding. The MSD survey shows the two unflooded buildings to the north have lower basement elevations than the four flooded properties. All six of the Malone Apartment buildings are tapped into the same 48-51 inch combined sewer. If this public sewer did back up on August 28, 2016, it would be expected that the floor drains of the buildings with lower basement elevations would have overflowed before the basement floor drains in buildings with higher basement elevations. This conclusion is based on basic hydraulic principles and the understanding that water seeks its own

level. For this reason, it is highly unlikely that the flooding to 3814, 3820, 3826, and 3830 Washington Avenue emanated from the public sewer. In addition, there is other evidence that supports MSD's decision in this case. There are no known lack of capacity issues with the public sewer serving the Malone Apartments. As Mr. Fronk testified and as depicted in the topography maps submitted by MSD, the topography of the properties and surrounding area is such that the four properties are prone to overland flooding. Additionally, there is evidence that the neighboring home at 515 Clinton Springs Avenue that also reported a backup on August 28, 2016 was serviced by a different sewer line and sat at a lower elevation than the Malone Apartments. There is evidence that one of Ms. Moyo's tenants observed the manhole lid moving and "jumping" during the August 28, 2016 storm, which appears to support some disturbance in the sewer line. However, this evidence does not outweigh the other evidence presented, which strongly indicates that the likely cause of the flooding to the four Malone Apartment buildings was not a surcharge in the sanitary sewer system but rather was overland flooding. The preponderance of the evidence does not establish that the cause of the flooding to the four Malone Apartment buildings was the inadequate capacity of MSD's public sewer system.[2]

There is no exact science to determining the cause of basement flooding in many of the cases presented to the Court, and often the exact cause is unknown. The Court is not unsympathetic to homeowners like Ms. Moyo who experience a basement backup such as occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer

---

[2] Ms. Moyo requests that more analysis of the hydraulic forces present in MSD's sewer system should be undertaken before the question of causation is decided. However, the Consent Decree requires MSD to "exercise its good faith reasonable engineering judgment to determine the cause of a [sewer backup]." (Doc. 131, Consent Decree, Ex. 8 at 2). MSD has done so in this case and further analysis is not warranted.

12

problem was the cause of the damage to a property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System. In the absence of evidence establishing Ms. Moyo's property damage was more likely caused by a surcharge in the public sanitary sewer line than by overland flooding or some other cause, the Court is constrained to uphold MSD's decision in this case.

Therefore, the Court denies Ms. Moyo's appeal in this case.

**IT IS SO ORDERED**.

Date: 3/22/2018          *s/Karen L. Litkovitz*
                         Karen L. Litkovitz, Magistrate Judge
                         United States District Court