# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs, <br><br> vs. <br><br> BOARD OF HAMILTON COUNTY <br> COMMISSIONERS, et al., <br> Defendants. | Case No. 1:02-cv-107 <br> Spiegel, J. <br> Litkovitz, M.J. <br><br> **ORDER RE: REQUEST** <br> **FOR REVIEW BY** <br> **ERIC LETT** |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Eric Lett (Doc. 1232) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1345). On May 22, 2018, the Court held a hearing on Mr. Lett's request for review at which Mr. Lett and Tom Fronk, MSD Assistant Superintendent and SBU Response Program Manager, testified and documentary evidence was submitted. (Doc. 1355).

## I. Background

Mr. Lett's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to

---

[1]The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id*. Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Mr. Lett is the owner of property located at 12191 Elkwood Drive, Cincinnati, Ohio. On August 8, 2017, Mr. Lett experienced basement flooding following a water main break in the area in which his property is situated. Mr. Lett subsequently submitted a claim to MSD under the SBU claims program seeking damages for property loss. MSD denied Mr. Lett's claim because it determined that the damage to Mr. Lett's property was not compensable under the Consent Decree that governs the SBU claims program. Mr. Lett disagreed and filed his request for review of MSD's decision in this Court.

**II. Evidence presented**

On August 8, 2017, MSD received a report that Mr. Lett's basement was currently experiencing three inches of flooding. An MSD crew responded shortly after the report to investigate and found MSD's sanitary-only sewer had surcharged. The crew also observed a

2

nearby water main break on the corner of Elkwood Drive and John Gray Road in the vicinity of Mr. Lett's property. The crew initially determined that the sanitary sewer was flooded by water from the water main break. Following further investigation, MSD determined that the force of the water main break had caused structural damage to a nearby manhole. The structural damage and related debris created a blockage in the sanitary sewer. (Doc. 1345, Exs. A, B). Mr. Fronk testified that a nearby pumping station that was designed to pump sanitary sewage became overwhelmed by the flow of water from the water main break. (Doc. 1355, Exs. 1, 2). In addition, he stated that gravel and debris from the structural damage to the manhole prevented sanitary sewage from reaching the pumping station. An MSD field report states that a Cincinnati Water Works main break "blew out" the wall of a nearby manhole allowing gravel and rocks into the mainline and pumping station downstream. (Doc. 1345, Ex. B). Mr. Fronk also testified that the eight-inch sanitary only sewer pipe and four-inch pipe exiting the pumping station are designed solely to handle sanitary flow and not water from a water main, gravel or debris.

Mr. Lett testified that he spoke with Dan Campbell of the Greater Cincinnati Water Works (GCWW) department about the backup into his basement and was led to believe that MSD was responsible for the damage he sustained. Mr. Lett then filed an SBU claim with MSD. After his claim was denied by MSD, Mr. Lett filed a claim with GCWW. GCWW denied Mr. Lett's damage claim, finding that the water works department responded to the water main break appropriately and in a timely manner. (Doc. 1232 at 4). The denial letter states:

> MSD's November 8, 2017 response to your Sewer Backup Claim stated that the sewer backup you experienced was caused by structural damage to MSD's sewers from a water main break. As described below, GCWW responded within a reasonable amount of time of learning of the underground main break, and therefore is not liable for related damage under Ohio law.

3

(*Id.*). Mr. Lett expressed frustration with both MSD and GCWW in that they both appeared to blame each other for his property damage and failed to take responsibility for the losses he sustained.

MSD provided cleaning services to Mr. Lett under the Sewer Backup Customer Service Program Plan (Doc. 131, Consent Decree, Exhibit 7 at 3: "MSD will assist with the cleanup of the property at no charge to the occupant unless the [sewer backup] was caused by overland flow not emanating from MSD's Sewer System or a blockage in the private lateral."). Mr. Lett alleges that the cleaning company hired by MSD failed to properly remove all of the items contaminated by sewer water and placed contaminated items on top of items that had not yet been contaminated.

### III. Resolution

MSD's sanitary-only sewer surcharged on August 8, 2017, when water from a nearby water main break overwhelmed MSD's sanitary sewer and pumping station. In addition, the water main break caused structural damage to a nearby manhole, causing additional gravel and debris to block the flow of sewer water to the pumping station. This resulted in a backup of sewer water into Mr. Lett's basement and damage to his property. At issue is whether the property damage sustained by Mr. Lett under the circumstances of this case is compensable under the Consent Decree.

Under the Consent Decree, property owners may recover damages to personal or real property caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). Mr. Lett does not contend that MSD was negligent in this case; rather, he alleges

4

that the inadequate capacity of MSD's sewer system caused the real and personal property damage he sustained.

The term "inadequate capacity" is not defined in the Consent Decree. However, the Consent Decree contains a provision entitled "Adequate Capacity" that is instructive. (Doc. 131-1 at 48). Under the "Adequate Capacity" provision of the Consent Decree, MSD is required to undertake remedial measures to ensure that MSD's sewer system has a capacity that is consistent with appropriate design standards or is equipped with other measures so as to prevent capacity related SBUs. (*Id.*). The provision also indicates that a sanitary sewer system has "adequate capacity" when it conveys flow without any capacity-related sanitary sewer overflows "under current and projected future conditions." (*Id.*; *see also* Doc. 131-1 at 27-28). In addition, the Consent Decree requires, *inter alia*, the implementation of remedial measures in response to "wet weather issues." (Doc. 131-1 at 2-3, 48). Similarly, in determining the cause of a backup under the Consent Decree, MSD must consider "wet weather" factors such as amount of precipitation, property SBU history, signs of overland flooding, and topography, among others. (Doc. 131, Consent Decree, Exhibit 8 at 2). Read together, these provisions indicate that the Consent Decree's SBU claims program was intended to address capacity-related issues resulting from wet weather conditions "under current and projected future conditions" and not from rare or sporadic events like a water main break. Therefore, capacity-related issues resulting from an alleged water main break are not covered by the Consent Decree.

Mr. Lett also alleges that MSD's cleaning contractor caused additional damage to his property when it placed contaminated items on top of items that were not initially contaminated by sewage. The Consent Decree does not provide a remedy for damages caused by MSD's

5

cleaning contractors. Exhibit 8 to the Consent Decree,[2] which governs the SBU claims process, sets forth the "Scope of WIBs Covered" as follows:

> The Claims Process will *only reimburse damages arising from basement backups caused by* [1] inadequate capacity in MSD's Sewer System or [2] that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. . . .

(Doc. 131, Consent Decree, Exhibit 8 at 2) (emphasis added). Exhibit 8 to the Consent Decree further clarifies that under the Claims Process, "occupants who incur damages *as a result of* the backup of wastewater into buildings" *due to* inadequate capacity in MSD's sewer system or resulting from MSD's negligent maintenance, destruction, operation or upkeep of the sewer system may recover those damages. (Doc. 131, Consent Decree, Exhibit 8 at 1) (emphasis added). Property damage that is compensable under the Consent Decree must be caused by an SBU. *Id.* There is nothing in the language of the Consent Decree to indicate that property allegedly damaged by other causes, such as the negligence of cleaning contractors, is covered by the SBU claims process. Therefore, to the extent Mr. Lett may be seeking compensation for items allegedly damaged by MSD's cleaning contractor, he may not obtain such compensation under the Consent Decree's SBU claims process.

As a final matter, the Court notes that under the Consent Decree, "MSD's provision of cleanup services under this program does not constitute an admission of any liability by MSD with regard to any claims that the occupant may have against MSD for real or personal property damage caused by the building backup." (Doc. 131, Ex. 7 at 4). MSD will provide cleaning services when doubt exists about the cause of the backup after an initial investigation based on

---

[2] Section XIII of the Consent Decree incorporates Exhibit 8 by reference. (Doc. 131, Consent Decree at 47).

the health risks posed by floods and water damage. (Doc. 640, Ex. B). Therefore, the fact that MSD provided this cleaning service for Mr. Lett's property and paid for such service is not evidence that MSD is responsible for the damage to Mr. Lett's real and personal property.

Mr. Lett's frustration with the two City of Cincinnati departments involved in his basement flooding on August 8, 2017 is understandable. Both MSD and GCWW appear to blame each other for the property damage in this case. Regrettably, the Consent Decree's SBU claims process does not provide a remedy for Mr. Lett in this case. This does not mean that homeowners like Mr. Lett are without a remedy when they believe the damage to their property is the responsibility of MSD or GCWW but when the federal court has no authority under the Consent Decree to provide relief. Homeowners who disagree with decisions made on their claims by MSD or GCWW may file a lawsuit in the Hamilton County Municipal or Common Pleas Court.

Therefore, Mr. Lett's appeal is denied because the Consent Decree's SBU claims process does not cover his damage claim in this case.

**IT IS SO ORDERED**.

Date: 7/9/18

Karen L. Litkovitz, Magistrate Judge
United States District Court