UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,     Case No. 1:02-cv-107
   Plaintiffs     Barrett, J.
    Litkovitz, M.J.
vs.

BOARD OF HAMILTON COUNTY     **ORDER RE: REQUEST**
COMMISSIONERS, et al.,     **FOR REVIEW BY**
   Defendants     **AL GAMMARINO**

     This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Al Gammarino (Doc. 1194), the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1309), and the parties' supplemental responses (Docs. 1348, 1351, 1352, 1354). On April 18, 2018, the Court held a hearing on Mr. Gammarino's request for review, at which Mr. Gammarino and Tom Fronk, MSD Assistant Superintendent and SBU Response Program Manager, testified and documentary evidence was submitted. (Docs. 1319, 1320).

     Mr. Gammarino has filed two motions to strike MSD's responses filed in support of MSD's decision in this case. At the hearing, the Court orally denied Mr. Gammarino's first motion to strike (Doc. 1316), which was based on MSD's alleged untimely response to his request for review. The Court held the record open so that Mr. Gammarino and MSD could supplement the record and, therefore, neither would be prejudiced by any allegedly late filing.

     Mr. Gammarino filed a second motion to strike (Doc. 1354) based on MSD's alleged untimely filing of its post-hearing supplemental response. On April 18, 2018, the Court granted the parties an additional 30 days to supplement the record. MSD filed its supplemental response on May 18, 2018, within the time limit set by the Court. *See* Doc. 1351. Therefore,

MSD's response was timely filed. Mr. Gammarino also contends MSD's response should be stricken because the documents and information MSD produced in this case were not produced in a state court case in which the City of Cincinnati sued Mr. Gammarino for alleged violations of the Cincinnati Municipal Code in connection with properties owned by Mr. Gammarino. *See City of Cincinnati v. Al Gammarino*, Case No. 16CV18761 (Hamilton Cty. Municipal Court). Whether or not the City of Cincinnati complied with its discovery obligations in an unrelated state court matter is not a basis for striking MSD's response in the instant case. Therefore, Mr. Gammarino's motion to strike (Doc. 1354) is denied.

Mr. Gammarino's request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. (*Id.*).

### I. Background

Mr. Gammarino is the owner of the property located at 7403 Clovernook Avenue, Cincinnati, Ohio. He seeks compensation for personal and real property loss sustained on July 31, 2015, due to sewer backup into his basement. (Doc. 1194). On July 13, 2017, Mr. Gammarino filed an SBU claim with MSD. (Doc. 1309, Ex. E). MSD denied Mr. Gammarino's claim, finding that the sewer backup on July 31, 2015 was due to a blockage in the building lateral sewer line for which he is responsible. (Doc. 1309, Ex. F). Mr. Gammarino disagreed and filed this appeal.

### II. Evidence

Mr. Gammarino notified MSD of the backup at 7403 Clovernook Avenue on July 31, 2015, and an MSD crew was dispatched that same day to investigate. (Doc. 1309, Ex. A). The MSD crew observed that the public sewer, including the upstream and downstream manholes, was open and running and there was no evidence of a public sewer backup. The crew also observed that Mr. Gammarino's basement floor drain was still holding water. Mr. Fronk testified that the combination of these two circumstances indicated the backup was due to a blockage or obstruction in the private plumbing or private sewer lateral. In accordance with MSD policy, Mr. Gammarino was advised to contact a plumber to investigate further. (*Id.*).

On August 1, 2015, as per MSD procedure, an MSD crew was dispatched to perform a

lateral TV launch to video the condition of Mr. Gammarino's building lateral. The TV camera was launched from the point of connection out to the public sewer and could not pass the 36-foot mark as a result of root blockage in the lateral line. Because this MSD crew did not possess the equipment to perform a root ball cut, a second crew was dispatched on August 3, 2015 to clear the root blockage in the lateral line. Mr. Fronk explained that the crew was able to clear the root blockage. However, the crew then discovered a break in the building lateral at 38 feet. On August 5, 2015, a work order was created to repair the broken sewer lateral, which was located in the right-of-way under the sidewalk in front of Mr. Gammarino's house. (Doc. 1309, Ex. D). The repair was made 38 feet from the public sewer. Mr. Fronk testified, however, that he did not know the exact date when the repair was made. Mr. Fronk testified that he reviewed all of the documents relevant to this property prior to the hearing, and he did not find any documents or information indicating that MSD had been notified of a break in or block of the sewer lateral prior to Mr. Gammarino's report on July 31, 2015.

     Mr. Gammarino testified that in July 2011 MSD repaired a broken sewer lateral at 7402 Clovernook Avenue. (Doc. 1320, Ex. A). He testified that as part of the repair, MSD tied the newly repaired PVC line into the old existing clay pipes. He theorizes that the repair was not made properly and stress on the pipe over time led to a second break in the lateral, resulting in the sewer backup he experienced on July 31, 2015. He believes that when the repairs were made in 2011, the connection from the lateral to the main sewer "might not have been to standard workmanship" and could have "possibly" caused the backup in July 2015. Mr. Gammarino admitted that he did not actually know the quality of the workmanship that went into the repair made at that time. Mr. Gammarino alleges he incurred damages due to MSD's

4

negligent repair and upkeep of the lateral line in 2011.

Mr. Gammarino also testified that MSD delayed making a repair of his building lateral after the July 31, 2015 backup, causing additional damage to his real property. He testified that on July 31, 2015, an MSD crew responded to his report of a sewer backup in his basement. He was told there was nothing the MSD crew could do and he should call a plumber. Mr. Gammarino then used his own equipment to pump the water out of the basement. He testified that the sewer lateral was eventually repaired, but he did not know when the repair was made. Mr. Gammarino submitted recent photographs that depict the repairs made. (Doc. 1319, Exhibits). He states he advised the MSD crew that responded to his property on July 31, 2015, that MSD had previously made repairs in the right-of-way out in the street and that he believed the problem could again be in the right-of-way. (Doc. 1194, Ex. B). However, MSD did not issue a work order to repair the broken lateral line until six days later on August 5, 2015. He contends that as a result of MSD's delay, there was additional damage to his real property.

Subsequent to the hearing, MSD presented CCTV footage and related reports from the August 1, 2015 and August 3, 2015 investigations of Mr. Gammarino's sewer lateral. (Doc. 1351, Exs. B to G). The video evidence from August 1 shows there was a large root block inhibiting sewage flow at approximately 36.3 feet into the building sewer and the camera could not push past this point in the line. (Doc. 1351, Exs. D-F). The video footage shows the flow was restored following the root cutting on August 3, 2015. (Doc. 1351, Ex. B). The video evidence also shows that the "break" in the lateral line, which was referenced in the MSD reports presented at the hearing, was actually a large crack in the pipe, and not a collapse of the pipe. The video shows that the crack in the lateral did not inhibit the flow through the sewer lateral.

The video and accompanying report show the crack in the pipe was located approximately 37.8 feet out from the mainline. (Doc. 1351, Ex. B at 15:06-15:50, Ex. C). This is approximately 13.5 feet from the end of the previous repair, which was made with PVC pipe at 24.3 feet out from the mainline. (Doc. 1351, Ex. A, Ex. B at 9:16-9:53). MSD created a work order on August 5, 2015 to repair this structural defect in the right-of-way and the actual pipe replacement was performed on February 16, 2016. (Doc. 1309, Ex. D; Doc. 1351, Ex. H).

### III. Resolution

Under the Consent Decree, property owners may recover damages to personal or real property arising from a "backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System" and "arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 131, Consent Decree, Exhibit 8 at 1). Property owners are responsible for blockages in the owner's building lateral sewer lines, which are owned by the property owner and not MSD. (*Id.*). The building sewer lateral line extends from the home, through the public right-of-way, and to the connection with the MSD public sewer. However, where a break or blockage is in a portion of the owner's building lateral sewer line that lies in the public street right-of-way, MSD is generally responsible for the repair. MSD's Rules and Regulations provide in relevant part:

> The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer from the building to the point of connection with the public local sewer. Repair and reconstruction of the *building sewer in a public street right-of-way* or within the specified width of a recorded public easement *shall be the responsibility of the District except as follows.* . . . It shall be the responsibility of the owner or his agent to establish, by means of a valid sewer cleaner contractor's receipt, that such a repair or reconstruction is the responsibility of the District. The District shall have the right to verify the sewer cleaner's finding prior to beginning repair or reconstruction. . . .

(Doc. 1089, Ex. C, Section 2008, MSD Rules and Regulations) (emphasis added). MSD undertakes repairs in public right-of-way laterals to ensure proper, safe, and consistent repairs. MSD has previously advised the Court that it undertakes repairs in right-of-way laterals because local municipalities "do not want local roads being subject to unsafe and inconsistent repair by private citizens." (Doc. 151 at 5).

In this case, the preponderance of the evidence shows that the cause of the sewer backup on July 31, 2015 was a root blockage in the building lateral that Mr. Gammarino owns, not a defective repair of the lateral in 2011 as Mr. Gammarino contends. The video evidence and related reports show that obstruction of the lateral line by a large root ball inhibited the flow of sewage through Mr. Gammarino's building lateral. The "break" in the line was actually a large crack that did not inhibit flow through the sewer. In addition, the earlier repair in 2011 was made some 13.5 feet away from the portion of the lateral line repaired in 2015, and there is no evidence that the repairs were in any way causally related or that there was a defect between the two points of repair so as to demonstrate any causal link. Mr. Gammarino, like all homeowners, was responsible for ensuring a clean, workable building lateral. In the absence of any evidence showing a causal connection between the 2011 and 2015 repairs to Mr. Gammarino's building lateral, the Court cannot conclude that MSD was negligent in its 2011 repair of the lateral line.

In addition, Mr. Gammarino contends that additional damage to his property was caused by MSD's negligent delay in repairing his building sewer after he reported a backup on July 31, 2015. A homeowner does not have complete control over the timing of a repair to the building lateral in the public right-of-way because MSD, and not the homeowner, must perform the

7

necessary repairs to right-of-way laterals. Where MSD receives notice from a property owner that repair of the lateral in the right-of-way is necessary and MSD fails to make the repairs in a timely manner, thereby causing property damage to the homeowner from a subsequent backup, MSD's actions fall squarely under the provision of the Consent Decree making MSD responsible for "backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 693 at 7). This Court has also determined that where MSD is on notice of a defective lateral in the right-of-way and fails to timely investigate or repair, MSD is responsible for damages caused by a subsequent sewer backup. (Doc. 598 at 4-5).

This is not a case where MSD failed to timely act to the detriment of the homeowner because there is no evidence that the delayed repair of the building lateral was the proximate cause of the SBU in Mr. Gammarino's basement. Rather, the cause of the SBU was a root ball obstructing the flow of sewage through the building lateral. Once MSD cut the root ball on August 3, 2015, flow was restored. There is no evidence of any other reports of SBU at the property since July 31, 2015 to suggest that delaying the repair until February 2016 caused any additional damage to Mr. Gammarino's property.

Under the SBU program governed by the Consent Decree, homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system or to MSD's negligent maintenance, destruction, operation or upkeep of the sewer system and not due to blockages or breaks in the occupant's own lateral sewer lines. (Doc. 131, Consent Decree, Exhibit 8 at 1). The undersigned is responsible for ensuring that any costs for damages to an individual's private

property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System or MSD's negligence. Mr. Gammarino has not met his burden of showing that the wastewater backup into his basement on July 31, 2015 was caused by inadequate capacity in MSD's sewer system or MSD's negligence. The preponderance of the evidence presented in this case points to a single cause of Mr. Gammarino's sewer backup in July 2015: a blockage of his own building lateral which he was responsible for maintaining as owner of the lateral. The evidence does not establish that MSD was negligent in its July 2011 repair of the lateral or that any delay in repairing the structural defect discovered in August 2015 caused or contributed to Mr. Gammarino's property damage. Because Mr. Gammarino owns and is responsible for maintaining his private building lateral sewer line, including the portion in the public right-of-way, MSD's denial of his claim was correct.

Therefore, Mr. Gammarino's appeal is denied.

**IT IS SO ORDERED.**

Date: 7/17/18

Karen L. Litkovitz, Magistrate Judge
United States District Court