# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>CHARLES KOLLER |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Charles Koller (Doc. 1201) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1300). On June 28, 2018, the Court held a hearing on Mr. Koller's request for review of his SBU claim. Mr. Koller's daughter, Sharon Koller, appeared on his behalf.[1]

Mr. Koller's request for review is filed under the Sewer Backup[2] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] Mr. Koller passed away after filing his request for review.

[2] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

As an initial matter, MSD does not dispute that Mr. Koller's property experienced an SBU that is subject to the claims process under the Consent Decree. (Doc. 1300). The only issue in this case is the amount of compensation Mr. Koller is entitled to for his property loss.

Mr. Koller is the owner of the property located at 559 Woodside Heights, St. Bernard, Ohio. On August 28, 2016, Mr. Koller experienced sewer backup in his basement which resulted in damage to his personal property. On October 31, 2016, Mr. Koller made a claim for damages to MSD for the sewer backup. (Doc. 1300, Ex. B). On January 12, 2017, Mr. Koller submitted a second/supplemental claim to MSD for exterior damages. (Doc. 1300, Ex. C). MSD's adjuster, Tenco Services, Inc., valuated the personal property loss at $5,311.02 and the real property/structural loss at $13,480.98. (Doc. 1300, Ex. D at 4). In compliance with Ohio Rev. Code § 2744.05(B)(1), the adjuster deducted the $5,000.00 Mr. Koller received from his insurance carrier from the calculated total damages, leaving a balance of $13,792.00. (*Id.*).

2

Upon review by the City Solicitor's Office, it was discovered that the adjuster accounted for two basement repair invoices. Both bids were for different alternative methods and costs for the repair of basement paneling: the first estimate of $5,000.00 was for the removal and replacement of the paneling; the second estimate was for the removal of the paneling and the painting of the walls. (Doc. 1300, Ex. B at pp. 29 and 30). MSD allowed the lower estimate and deducted the $5,000.00 estimate from the total damages calculated by the adjuster. As a result, MSD offered Mr. Koller $8,792.00 in settlement of his claim. Mr. Koller accepted the offer and signed a written agreement releasing MSD from "any and all claims, demands, actions, and causes of action whatsoever or in any manner arising from a 'Sewer Backup' incident on or about August 28, 2016 at 559 Woodside Heights, Cincinnati, OH 45217." Mr. Koller's settlement check for $8,792.00 was transmitted on March 8, 2017. (Doc. 1300, Exs. E, F).

On April 21, 2017, Mr. Koller filed a third SBU claim with an additional invoice in the amount of $1,700.00 for painting. (Doc. 1300, Ex. G). MSD denied this claim because the costs for painting were compensated in connection with his previous claims and he had signed an agreement releasing MSD from further liability. (Doc. 1300, Ex. H). Mr. Koller then filed this appeal.

It appears from his Request for Review that Mr. Koller disputes the amount of compensation MSD has offered. Mr. Koller submits a proposal for basement painting in the amount of $1,700.00 (Doc. 1201 at 3); an estimate of $2,100.00 for removal and replacement of his back deck (*Id*. at 4); an estimate of $530.00 for the installation of a back entryway from the garage to the back yard (*Id*. at 7); and an estimate of $5,200.00 for the installation of a privacy fence (*Id*. at 8).

Mr. Koller formally accepted MSD's offer of $8,792.00 to resolve his SBU claim for the damages sustained on August 28, 2016. (Doc. 1300, Ex. F). In connection with that payment, Mr. Koller signed a release "from any and all claims, demands, actions and causes of action whatsoever or in any manner arising from a 'Sewer Backup' incident on or about August 28, 2016, at 559 Woodside Heights, Cincinnati, OH 45217." *Id.* The release further provides, "It is expressly understood and agreed that the payment of the above stated sum of money is the sole consideration of this release and the consideration stated herein is contractual and not a mere recital." *Id.*

"A release is a contract that is favored by the law to encourage the private resolution of disputes." *Lewis v. Mathes*, 829 N.E.2d 318, 322 (Ohio App. 4th Dist. 2005) (citation omitted). A release is "defined as the giving up or abandoning of a claim or right to the person against whom the right is to be enforced or exercised." *Richland Auto Grp., Inc. v. Fifth Third Bank*, No. 11CA77, 2012 WL 2551125, at *3 (Ohio App. 5th Dist. 2012) (citing *Fabrizio v. Hendricks*, 654 N.E.2d 127 (Ohio App. 11th Dist. 1995)). "Absent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor." *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp.2d 722, 734-35 (S.D. Ohio 2009) (citing *Denlinger v. City of Columbus, Ohio Public Schools*, No. 00AP-315, 2000 WL 1803923, at *5 (Ohio App. 10th Dist. Dec. 7, 2000)). In the absence of fraud, the release of a cause of action bars any later action on any claim encompassed within the release. *Lewis,* 829 N.E.2d at 322 (citing *Haller v. Borror Corp.*, 552 N.E.2d 207 (Ohio 1990)).

In consideration of the receipt of $8,792.00, Mr. Koller agreed to release any and all claims he may have arising from sewer backup in his basement on August 28, 2016. There is no allegation or indication that the release entered into by Mr. Koller and the City of Cincinnati was obtained by fraud. In addition, there is no evidence that the consideration Mr. Koller received was not valuable in settling his first two claims. *See Manning v. Brucato*, No. 49361, 1986 WL 1062, at *2 (Ohio App. 8th Dist. Jan. 23, 1986) ("So long as the consideration is valuable it does not become insufficient merely because it may not be adequate."). The City of Cincinnati is entitled to rely on the release and the finality such release provides in the settlement of claims like Mr. Koller's. Having no evidence that the release is not enforceable, the Court is constrained to uphold MSD's decision in this case denying Mr. Koller's additional claim for damages to his property from the SBU on August 28, 2016.

Therefore, the Court denies Mr. Koller's claim in this case.

**IT IS SO ORDERED**.

Date: 7/23/18

Karen L. Litkovitz, Magistrate Judge
United States District Court