# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>  Plaintiffs, | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J. |
| vs. | |
| BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>  Defendants. | **ORDER RE: REQUEST<br>FOR REVIEW BY<br>DWENDOLYN CHESTER** |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Dwendolyn Chester (Doc. 1338) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1399). On August 14, 2018, the Court held a hearing on Ms. Chester's request for review at which Ms. Chester and Tom Fronk, MSD Assistant Superintendent and SBU Response Program Manager, testified and documentary evidence was submitted. (Doc. 1409).

Ms. Chester's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Ms. Chester is the owner of the property located at 3005 Westbrook Drive, Cincinnati, Ohio. On March 1, 2017, the area in which Ms. Chester's property is situated experienced heavy rainfall. That same date, MSD received a report that 3005 Westbrook Drive had experienced a basement backup. MSD crews responded on March 3, 2017 to investigate. The crew determined that both the upstream and downstream manholes were open and running, and there did not appear to be past signs of a public sewer surcharge. The crew also noted signs of overland flooding.

On October 17, 2017, Ms. Chester filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on March 1, 2017. (Doc. 1399, Ex. D). MSD denied the claim, finding that the public sewer was functioning properly at all relevant times and there was no evidence that the flooding of Ms. Chester's basement arose from MSD's sewer system. (*Id.*, Ex. E). Ms. Chester disagreed with MSD's decision and filed a request for review in this Court.

Ms. Chester's home is a one-story ranch located at the corner of Westbrook Drive and Epworth Court. The front of the house is at street level while the back of the home is two levels. There is a full basement with approximately 1435 square feet of living space. The house has an attached garage under the home and a recessed driveway with an entrance off Epworth Court. The six house gutters tie into the building lateral, which runs from the house to the public sewer on Westbrook Drive. Ms. Chester's home first experienced a basement backup in 2010. She contacted MSD and was advised that her house sits second from the end of an MSD sewer line. In a July 19, 2010 email, an MSD engineer conveyed to Ms. Chester that her home is on the "(high point) of the sewer to which . . . [it is] connected" and that if the sewer is blocked, houses west of her property would also experience flooding, unless they have additional backflow preventative measures. (Doc. 1338, Att. A1 & A2).

Ms. Chester stated that after the 2010 backup, she has attempted to prevent additional backups by removing trees from her property that could cause roots in the sewer line; having her building lateral augured at least two times per year; cleaning her gutters numerous times per year; and using water sparingly during extreme rain storms.

Ms. Chester testified that on the evening of February 28 and into the morning of March 1, 2017, a major rain storm occurred in her area. She witnessed water coming through three of her basement floor drains and one drain in her garage. She observed her neighbor's sump pump gushing water, the sewers ponding, and water flowing like a stream down the curbs and sidewalks near her property. Ms. Chester states that within less than one hour, she had two to three inches of sewage and rain water in her basement. Ms. Chester states that later that day, she and her neighbors on Epworth Court pulled large wet items out of their homes and into the street.

She states numerous items of her personal property were damaged and she made a claim with her insurance company, which reimbursed her for the lost items. She also discovered asbestos beneath old floor tiles that were loosened by the water in her basement, and she hired a contractor to remove the asbestos. Ms. Chester states she hired three different plumbing contractors to assess the cause of her backup. One contractor indicated that the sewer line could not handle the rain coming off her roof or driveway and recommended that the garage line be jetted to clean it out. This contractor also recommended that the downspouts be disconnected from her private sewer line and that she consider a "back water valve." Ms. Chester ultimately hired a different contractor to install a backflow prevention device and large cleanout in her yard. This contractor performed a "spot repair" and installed a two-way cleanout on Ms. Chester's property in June 2017. Ms. Chester testified that she was not permitted to re-route her downspouts to her backyard as water would flow directly into her neighbor's yard.

Ms. Chester states that less than two weeks after the flood, she observed MSD workers one block from her home at the corner of Epworth Court and Sandra Place. The MSD crew was working in the sewer manhole and hosing it out, which she believes indicates an issue with the public sewer.

Mr. Fronk testified that Ms. Chester's house ties into the head end of a 12-inch combined public sewer at the upstream manhole, and there is only one house upstream of Ms. Chester's house that also ties into this public sewer line. Mr. Fronk testified that the houses to the west of Ms. Chester's house (3005 to 3031 Westbrook Drive) all tie into the same public sewer line and sit at a lower elevation than Ms. Chester's house. However, there were no reports of a sewer backup from those houses on or around March 1, 2017, and there are no known capacity issues

in this area. Mr. Fronk acknowledged there were issues of ponding water on Epworth Court and Sandra Place. He testified, however, that there is a separate public sewer line serving the homes on Epworth Court and Sandra Place, and this separate sewer line is not connected to the public sewer serving Ms. Chester's property. Mr. Fronk testified that radar data showed approximately three and one-half to four inches of rainfall on March 1, 2017. Mr. Fronk opined that the large amount of storm water flowing down the roof to the six downspouts connected to the building lateral and down the recessed driveway to the garage drain likely overwhelmed the building sewer causing a backup into Ms. Chester's basement floor drains.

Under the Consent Decree that governs the Court's review of SBU appeals, property owners may recover damages to personal or real property caused by (1) the inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). Claimants like Ms. Chester who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of water into their property was caused by inadequate capacity in MSD's sewer system (a sewer surcharge) and not by overland flooding or blockages in the homeowner's privately owned building sewer line. (Doc. 131, Consent Decree, Ex. 8 at 1). Ms. Chester has not established that the water backup into her basement on March 1, 2017 was caused by inadequate capacity in MSD's sewer system.

MSD must exercise good faith reasonable engineering judgment in determining the cause of a basement backup by considering several factors, including the amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU

history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). MSD did so in this case. MSD presented evidence that no other properties to the west of Ms. Chester's home, all of which had lower elevations than Ms. Chester's basement, reported a sewer backup on or around March 1, 2007. In addition, MSD has presented evidence that an investigation on March 3, 2017 showed no signs of surcharge of the upstream and downstream manholes servicing Ms. Chester's property. Additionally, the MSD crew observed signs of overland flooding. Ms. Chester's home is located at the head end of a 12-inch public sewer line, which receives additional flow from only a single home upstream of her house. The information from the plumbing contractors hired by Ms. Chester indicates there may have been a defect in the private building sewer that reduced its ability to handle the additional storm water flow into her building lateral during the heavy rainfall in March 2017. Although Ms. Chester's neighbors on Epworth Court may have experienced basement backups on March 1, 2017, the properties on Epworth Court tie into a completely separate public sewer line than the one serving Ms. Chester's home and do not contribute to the flow of sewage in the public sewer serving Ms. Chester's property. Therefore, any alleged basement backups into the homes on Epworth Court are not relevant to whether there was a surcharge of the public sewer serving Ms. Chester's property. The preponderance of the evidence does not establish that the cause of Ms. Chester's basement backup was inadequate capacity in MSD's public sanitary sewer system.

The Court is not unsympathetic to homeowners like Ms. Chester who experience a basement backup such as occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to a property. The

undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System. In the absence of evidence establishing Ms. Chester's property damage was more likely caused by a surcharge in the public sanitary sewer line and not by overland flooding or a problem in her building lateral, the Court is constrained to uphold MSD's decision in this case.

Therefore, the Court denies Ms. Chester's appeal in this case.

**IT IS SO ORDERED**.

Date: 8/28/18

Karen L. Litkovitz, Magistrate Judge
United States District Court