# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs <br><br> vs. <br><br> BOARD OF HAMILTON COUNTY <br> COMMISSIONERS, et al., <br> Defendants | Case No. 1:02-cv-107 <br> Barrett, J. <br> Litkovitz, M.J. <br><br><br> ORDER RE: REQUEST <br> FOR REVIEW BY <br> TYLAN MATTHIESEN |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Tylan Matthiesen (Doc. 1479) and the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1515). On December 4, 2018, the Court held a hearing on Mr. Matthiesen's request for review, at which Mr. Matthiesen and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk testified and documentary evidence was submitted. (Doc. 1518).

Mr. Matthiesen's request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. (*Id.*).

## I. Background

Mr. Matthiesen is the owner of the property located at 2514 Ridgecliff Avenue, Cincinnati, Ohio. On March 21, 2018, Mr. Matthiesen filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on February 24, 2018. (Doc. 1515, Ex. B). MSD denied the claim for property loss, finding there was no evidence that the damage to his property was caused by a sewer backup covered by the SBU program. (*Id.*, Ex. C). Mr. Matthiesen disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence

On February 25, 2018, MSD received a report that 2514 Ridgecliff Avenue had experienced a basement backup. MSD crews responded the following day to investigate. The crew determined that both the upstream and downstream manholes were open and running; there were no signs of a public sewer surcharge; and there were no signs of overland flooding. The crew also noted that the outside cleanout at the right-of-way was holding water. (Doc. 1515,

Ex. A). Mr. Fronk testified that this condition indicated a possible problem in the right-of-way lateral. Therefore, a separate crew was dispatched that same day to rod the lateral line from the outside cleanout to the mainline. (*Id.*). The crew reported that it hit a blockage at 30 feet from the cleanout in the lateral line but was able to open the line. (*Id.*). The rodding tool was removed from the lateral without any debris. Mr. Fronk explained that debris on the tool may help identify the precise cause of a blockage.

Mr. Matthiesen's property experienced another backup in May 2018. An MSD crew responded to the reported backup and again rodded the building lateral from the outside cleanout. The crew broke through a blockage in the lateral at 30 feet. The rodding tool was removed without debris and water receded slowly. The crew noted that when water was poured into the outside cleanout, located at the right-of-way in the lateral, the water started to back up the cleanout pipe. As the blockage in the lateral at 30 feet was difficult to pass and because the property was currently holding water, the property was referred for a video investigation of the building lateral. The video of the lateral revealed broken pipe within the lateral right-of-way, which MSD then repaired. (Doc. 1518, Exs. 2-4).

Mr. Matthiesen alleges that the flooding that occurred on February 24, 2018 was due to MSD's negligence. He testified that he first reported a sewer backup to MSD on July 15, 2016. The crew that responded on that day found the mainline was open and running; the outside cleanout in the right-of-way was not holding water; and there was evidence of overland flooding. The crew's report noted that Mr. Matthiesen's plumber had rodded the lateral line using the outside cleanout. However, the plumbing invoice noted no other issues such as a problem in the right-of-way. The crew suspected the backup was likely an internal issue. (Doc. 1518, Ex.

3

1). Mr. Matthiesen contends that had MSD taken measures to video his building lateral in 2016, MSD would have discovered the crack in the right-of-way lateral and repaired it, thereby preventing the subsequent damage to his property by the date of the February 2018 backup.

**III. Resolution**

Under the Consent Decree, property owners may recover damages to personal or real property arising from a "backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System" and "arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 131, Consent Decree, Exhibit 8 at 1). Property owners are responsible for the maintenance and cleaning of the building lateral sewer line, which is owned by the property owner and not MSD. (*Id.*). The building sewer lateral line extends from the home, through the public right-of-way, and to the connection with the MSD public sewer. A property owner, and not MSD, is responsible for damage from a basement backup arising from a break or blockage in the building lateral sewer line. However, where a break or blockage is in the portion of the owner's building lateral sewer line that lies in the public street right-of-way, MSD is generally responsible for the cost and repair of the lateral. MSD's Rules and Regulations provide in relevant part:

> The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer from the building to the point of connection with the public local sewer. Repair and reconstruction of the *building sewer in a public street right-of-way* or within the specified width of a recorded public easement *shall be the responsibility of the District except as follows.* . . . It shall be the responsibility of the owner or his agent to establish, by means of a valid sewer cleaner contractor's receipt, that such a repair or reconstruction is the responsibility of the District. The District shall have the right to verify the sewer cleaner's finding prior to beginning repair or reconstruction. . . .

(Doc. 1089, Ex. C, Section 2008, MSD Rules and Regulations) (emphasis added). MSD

undertakes repairs in public right-of-way laterals to ensure proper, safe, and consistent repairs. MSD has previously advised the Court that it undertakes repairs in right-of-way laterals because local municipalities "do not want local roads being subject to unsafe and inconsistent repair by private citizens." (Doc. 151 at 5).

In this case, the preponderance of the evidence shows that the cause of the sewer backup in February 2018 was a blockage in the building lateral that Mr. Matthiesen owns. MSD's crew subsequently discovered a break in the lateral line when it videoed Mr. Matthiesen's building lateral in May 2018 and repaired the damaged sewer line. Mr. Matthiesen contends that had MSD videoed the lateral in 2016, the damage to his property in February 2018 could have been avoided. However, Mr. Matthiesen, like all homeowners, was responsible for ensuring a clean, workable building lateral. MSD is not responsible for sewer repair or backups resulting from a broken lateral in the public right-of-way until such time as it receives proper notice in the form of a valid plumber's receipt from the property owner. Where MSD receives such notice, MSD is required to make the repairs in a timely manner. There is no evidence that Mr. Matthiesen ever provided MSD with a plumber's receipt identifying a break or crack in the lateral that needed repair. The fact that MSD videoed the lateral in May 2018 when the property was still holding water, in accordance with its routine procedures, does not shift the burden of maintaining the building lateral line from Mr. Matthiesen to MSD. Under the regulations, Mr. Matthiesen, like all homeowners, retains the duty to maintain his own building lateral.

MSD did not negligently delay its repair of Mr. Matthiesen's building sewer because MSD's obligation to repair the sewer lateral was never triggered by a proper plumber's receipt. While MSD is responsible for repairing lateral sewer lines in the public right-of-way once it is

properly notified, the ultimate responsibility for damages to personal property resulting from a backup caused by a break in the building sewer lateral line rests with the homeowner. This is not a case where MSD received notice from a property owner that repair of the lateral in the right-of-way was necessary and MSD failed to make the repairs in a timely manner, thereby causing property damage to the homeowner from a subsequent backup. MSD performed the repair work in accordance with its obligations under the Rules and Regulations.

Under the SBU program governed by the Consent Decree, homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system, or to MSD's negligent maintenance, destruction, operation or upkeep of the sewer system, and not due to blockages or breaks in the occupant's own lateral sewer lines. (Doc. 131, Consent Decree, Exhibit 8 at 1). The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System or MSD's negligence. Mr. Matthiesen has not met his burden of showing that the wastewater backup into his basement on February 24, 2018 was caused by inadequate capacity in MSD's sewer system or MSD's negligence. The preponderance of the evidence presented in this case indicates Mr. Matthiesen's sewer backup was caused by a blockage of his own building lateral which he was responsible for maintaining as owner of the lateral. Because Mr. Matthiesen owns and is responsible for maintaining his private building lateral sewer line, including the portion in the public right-of-way, MSD's denial of his claim

was correct. Therefore, Mr. Matthiesen's appeal is denied.

**IT IS SO ORDERED.**

Date: 12/18/18

Karen L. Litkovitz, Magistrate Judge
United States District Court