# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>STEVEN L. TEBEAU |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Steven Tebeau (Doc. 1466), the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1536), and the parties' supplemental information (Docs. 1560, 1576). On December 20, 2018, the Court held a hearing on Mr. Tebeau's request for review at which Mr. Tebeau, Michelle Tebeau, and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk testified and documentary evidence was submitted. (Doc. 1549).

Mr. Tebeau's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to

---

[1]The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

**I. Background**

Mr. Tebeau is a tenant of the property located at 347 Stanley Avenue, Suite C, Cincinnati, Ohio. On April 20, 2018, Mr. Tebeau filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on February 25, 2018. (Doc. 1536, Ex. E). MSD denied the claim for property loss, finding the damage was not caused by a sewer backup covered by the SBU program. (*Id.*, Ex. F). Mr. Tebeau disagreed with MSD's decision and filed a request for review in this Court.

**II. Evidence presented**

MSD presented evidence that from February 18, 2018, and continuing into the first week of March 2018, prolonged rains along the Ohio River led to a significant rise in the water level of the Ohio River and its tributaries. (Doc. 1536, Ex. B). The Ohio River crested at 60.53 feet on

the evening of February 25, 2018, marking the Ohio River's 22nd highest level ever recorded. (Doc. 1536, Ex. A, B, D).[2] The widespread flooding resulted in declarations of emergency from state and local governmental authorities. (Doc. 1536, Ex. B).

On February 26, 2018, MSD received a report that the lower-level business suite of the building in which Mr. Tebeau is a tenant experienced flooding on February 25, 2018. An MSD crew responded the next day to investigate. The crew observed the building was not currently flooded but the upstream and downstream manholes were currently surcharged. There was no evidence of overland flooding. (Doc. 1536, Ex. C).

Mr. Tebeau presented an invoice from a private plumber who was called to the property on February 26, 2018. The invoice indicates the plumber ran a sewer cable out approximately 30 feet in the building lateral and did not encounter any blockage. The plumber then pulled the manhole cover in the street and observed the sewer was holding water. The invoice states: "Water backed up because of heavy rain and street storm sewer could not handle all the water. Water shot out of toilets with force because there was so much rain water flooding storm sewer. Called MSD." (Doc. 1466 at 9). Photographs of the lower-level area show waste and water debris on the toilets, paper dispenser, and floor, supporting the plumber's notation that the source of the water backup was from the plumbing fixtures. (Doc. 1466 at 5-8).

Michelle Tebeau testified that the property experienced a previous sewer backup on February 28, 2017 to March 1, 2017, for which MSD took responsibility. Ms. Tebeau presents evidence from the National Oceanic and Atmospheric Administration website showing the

---

[2] It appears that the Ohio River actually crested on the evening of February 25, 2018, and not February 26, 2018, as MSD represents in its response. (Doc. 1536, Ex. B-Hamilton County Emergency Management memo, PAGEID #: 34582; Ex. D-U.S. Geological Survey, PAGEID #: 34606).

3

amount of rain on March 1, 2017 was approximately 2.5 to 3 inches, and the amount of rain on February 25, 2018 was between 2 to 2.5 inches. (Doc. 1549, Pl. Exs. 3, 4). She presented additional evidence from the National Weather Service (Wilmington) and alleges that the aggregate total rainfall on February 27, February 28, and March 1, 2017 was 2.10 inches (Doc. 1576 at 3), and the aggregate total rainfall on February 24 and February 25, 2018 was 2.53 inches. (Doc. 1576 at 4). When Ms. Tebeau observed the property on February 26, 2018, there was no continued sewer backup in the building. In addition, Mr. Tebeau testified that a number of new townhomes have been constructed on Stanley Avenue to the north of 347 Stanley Avenue, which likely contributed to the volume of water in the public sewer upstream of the property. (Doc. 1549, Pl. Ex. 5). Ms. Tebeau asserts it is likely the 2018 lower-level flood was also caused by a sewer backup from heavy rain for which MSD should be responsible given the relative consistency between the amounts of rainfall in the area during the 2017 and 2018 backups and the additional housing construction upstream from 347 Stanley Avenue.

MSD presents evidence that there were no reported sewer backups from any property along Stanley Avenue with lower-levels/basements sitting at elevations greater than the river elevation on or about February 25, 2018. In contrast, there were several SBU claims made by such neighboring properties on Stanley Avenue on or about March 1, 2017. (Doc. 1560, Exs. A, F).

MSD also presents rain data from Vieux & Associates, Inc., an engineering technology firm that uses gauge-adjusted radar rainfall to determine the level of rainfall for a particular location. For the period of February 28, 2017 to March 1, 2017, Mr. Tebeau's property received 4 inches of rain. From February 24 to February 25, 2018, the property received 2.5 inches of

4

rain. (Doc. 1560, Ex. B). In addition, the level of the Ohio River at the time of the February 2018 flood was approximately 13 feet higher than its level during the March 2017 flood of the property. (Doc. 1560, Ex. C). MSD alleges that the additional level of flooding of the Ohio River in February 2018 was high enough to have inundated the portion of the public sewer servicing the property. MSD presents photographs from nearby occupants at 311 Stanley Avenue and 323 Stanley Avenue depicting the high level of flood waters. (Doc. 1560, Ex. D). The photograph of 323 Stanley Avenue taken on February 24, 2018 shows the flooded parking lot at the rear portion of the building in the area of a private storm inlet. This private storm sewer ties into the same public sewer that serves 347 Stanley Avenue at manhole #40905008.

MSD has presented the relevant locations and elevations of the sewer manholes and storm inlets serving 347 Stanley Avenue. (Doc. 1560, Exs. E, F). The map shows the locations of the sewer manholes and storm inlets and the table provides the elevations of the relevant manholes and inlets. The map also shows the location of the photographs referenced in Exhibit D of Document 1560.

**III. Resolution**

Under the Consent Decree, property owners may recover damages to personal or real property caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). There has been no allegation that MSD negligently caused the property damage in this case. Therefore, the question is whether the damage was caused by "inadequate capacity" in MSD's sewer system.

This Court has previously determined that the inability of MSD's sewer system to convey

5

water from a historically significant river flood does not constitute "inadequate capacity" under the Consent Decree which is compensable under the SBU Program. (Doc. 1562). The term "inadequate capacity" is not defined in the Consent Decree. However, the Consent Decree contains a provision entitled "Adequate Capacity" that is instructive. (Doc. 131-1 at 48). Under the "Adequate Capacity" provision of the Consent Decree, MSD is required to undertake remedial measures to ensure that MSD's sewer system has a capacity that is consistent with appropriate design standards or is equipped with other measures so as to prevent capacity-related SBUs. (*Id.*). The provision also indicates that a sanitary sewer system has "adequate capacity" when it conveys flow without any capacity-related sanitary sewer overflows "under current and projected future conditions." (*Id.*; *see also* Doc. 131-1 at 27-28). In addition, the Consent Decree requires, *inter alia*, the implementation of remedial measures in response to "wet weather issues." (Doc. 131-1 at 2-3, 48). Similarly, in determining the cause of a backup under the Consent Decree, MSD must consider "wet weather" factors such as amount of precipitation, property SBU history, signs of overland flooding, and topography, among others. (Doc. 131, Consent Decree, Exhibit 8 at 2). Read together, these provisions indicate that the Consent Decree's SBU claims program was intended to address capacity-related issues resulting from wet weather conditions under current and projected future conditions and not from a historically significant river flood that inundates the portions of MSD's sewer system that lie in close proximity to the Ohio River or its tributaries. MSD's sewer system is not designed to convey historic flood waters from the Ohio River and it would be unreasonable to require MSD to design such a system. The Consent Decree was not intended to compensate homeowners for backups resulting from historic Ohio River flooding. To require MSD to compensate

homeowners under these circumstances would be tantamount to making MSD a no-fault insurer for individuals residing on or around the Ohio River. It would be unreasonable to construe the Consent Decree as requiring MSD – and ultimately Hamilton County ratepayers – to effectively provide flood insurance to residents impacted by Ohio River flooding.

In the instant case, the preponderance of the evidence shows that the historic flooding of the Ohio River likely inundated the nearby manholes and storm inlets serving the property, thereby causing a backup of sewer water into the property through the toilet fixtures in the lower-level of the building. The Court is not persuaded that the cause of the backup was a wet weather event that is covered under the Consent Decree. The amounts of rainfall during the February/March 2017 and February 25, 2018 flood events were not sufficiently similar such that MSD, which accepted responsibility for the February/March 2017 backup, should be responsible for the February 25, 2018 backup. The rain data submitted by Ms. Tebeau reflects measurements taken at the Greater Cincinnati International Airport (CVG), which is over 17 miles from the relevant property. In addition, it appears rain data for February 28, 2017 is not reflected in the chart submitted by Ms. Tebeau, thereby calling into question the accuracy of the alleged total rain amount of 2.10 inches for the 2017 rain event. (Doc. 1576 at 3).[3] The Court finds the MSD rain data to be more persuasive as it reflects precipitation for the particular property. Given the data submitted by MSD, there was more rainfall during the relevant 2017 rain event, as compared to the relevant 2018 rain event, such that the Court is unable to conclude there was a sufficient similarity between the two events to hold MSD responsible. In addition, unlike the

---

[3] The Court gives no weight to plaintiff's exhibits 3 and 4, which reflect single dates of March 1, 2017 and February 25, 2018, respectively (Doc. 1549, Pl. Exs. 3, 4), because they omit data for the other relevant dates during the 2017 and 2018 events.

relevant 2017 rain event, when the properties north of 347 Stanley Avenue reported sewer backups, no such backups were reported by these same properties during the 2018 event.

Rather, the Court is persuaded that riverine flooding caused the backup given the relative elevations of the manholes and storm inlets in the surrounding area, the elevation of the lower-level of the property, and the approximate river flood level. The Ohio River crested on February 25, 2018, the date the lower-level of the building flooded. In addition, there is evidence that the manholes and storm inlets sitting at elevations at or below the documented river flood level (Doc. 1560, Ex. E, Ex. F – MH 40905008; MH 40905009; storm inlets 409053074 and 40905372) were likely overwhelmed by riverine flooding. These manholes and storm inlets are connected to the public sewer serving 347 Stanley Avenue. (Doc. 1560, Ex. E). The lower level of 347 Stanley Avenue also sits at an elevation below river flood level. The evidence shows that riverine flooding likely overwhelmed the downstream portion of the public sewer serving the property and caused the backup into the property. As the preponderance of the evidence shows the backup was likely caused by riverine flooding and not a wet weather event, the Court is constrained to uphold MSD's decision in this case.[4]

These are not easy cases, and oftentimes the exact cause of a backup may not be known given the available information and circumstances. Under the Consent Decree, MSD is tasked with exercising its good faith reasonable engineering judgment in assessing the cause of a basement backup based on non-exclusive factors such as amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of

---

[4] There may be circumstances where MSD's public sewer surcharged due to wet weather conditions separate and apart from any flooding of the Ohio River. That is not the case here given the evidence before the Court.

nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). MSD has done so in this case. The Court is not unsympathetic to the losses sustained by individuals like Mr. Tebeau. However, the undersigned magistrate judge is responsible for ensuring that any costs for damages to private property such as Mr. Tebeau's that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System or MSD's negligence. Mr. Tebeau has not met his burden of showing that the flooding of the lower-level of the building on February 25, 2018 was caused by inadequate capacity in MSD's sewer system or MSD's negligence. The Consent Decree's SBU claims process does not provide a remedy under the circumstances of this case. Therefore, Mr. Tebeau's appeal is denied.

**IT IS SO ORDERED**.

Date: 1/16/19

Karen L. Litkovitz, Magistrate Judge
United States District Court