UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
   Plaintiffs

vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
   Defendants

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

ORDER RE: REQUEST
FOR REVIEW BY
BARBIE JONES

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Barbie Jones (Doc. 1418), the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1478), and the parties' supplemental information (Docs. 1584, 1586). On January 15, 2019, the Court held a hearing on Ms. Jones's request for review at which Ms. Jones, her tenant John Smith, and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk testified and documentary evidence was submitted. (Doc. 1577).

Ms. Jones's request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

lines. (Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. (*Id.*).

## I. Background

Ms. Jones is the owner of the property located at 3534 Larkspur Avenue, Cincinnati, Ohio. On May 22, 2018, Ms. Jones filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from sewer backups on February 25 and March 2, 2018. (Doc. 1418-9). MSD denied the claim for property loss, finding there was no evidence that the damage to her property was caused by a sewer backup covered by the SBU program. (Doc. 1478, Ex. C). Ms. Jones disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence

On February 25, 2018, MSD received a report that 3534 Larkspur Avenue had experienced a basement backup. MSD crews responded the following day to investigate. The crew determined that both the upstream and downstream manholes were open and running; however, there appeared to be signs of a public sewer surcharge in the upstream manhole as the

crew noted debris on the step of the manhole ladder. There were no signs of overland flooding. The crew noted that the basement was holding approximately two feet of clear water that had not yet drained. The crew advised Ms. Jones to contact a plumber. (Doc. 1478, Ex. A).

Mr. Fronk testified that a subsequent review of the crew's report by an MSD supervisor indicated that asphalt, and not debris from a sewer surcharge, was on the rung of the upstream manhole ladder. Mr. Fronk agreed with this assessment and presented a photograph depicting asphalt on the walls and rung of the manhole. (Doc. 1577, Def. Ex. 1). Mr. Fronk testified that the manhole did not depict other telltale signs of a sewer surcharge, which would include discoloration of the manhole walls, the presence of twigs or sticks in the manhole, and a consistent pattern of debris around the bench wall of the manhole. Mr. Fronk also testified that no other houses on Larkspur Avenue reported a backup on February 25, 2018. He noted that the property at 3538 Larkspur Avenue, which sits at a lower elevation that Ms. Jones's property, did not report a sewer backup on February 25, 2018. (Doc. 1584, Ex. A). This particular property had reported a sewer backup prior to February 25, 2018, indicating the owner was aware of the SBU program. An MSD supervisor also noted that the property was still backed up on February 27, 2018, which "points to a private issue [i]n [the] building sewer." (Doc. 1478, Ex. A at 7). According to Mr. Fronk, the evidence described above does not point to a mainline sewer surcharge.

Ms. Jones testified that on February 25, 2018, she received a call from her tenant at 3534 Larkspur Avenue who reported 18 inches of dirty, raw sewage water in the basement of the property. She contacted MSD and a crew responded to the property. Ms. Jones testified that the crew leader advised her that the property would be recommended for cleaning because the

3

manhole was filled with sticks and debris. She later found out that her claim for cleaning was denied. She then hired a private plumber.

On March 1, 2018, a private plumber rodded and cleared Ms. Jones's building lateral. The plumber videoed the lateral line and found a repair had previously been made in the building sewer at the right-of-way, approximately 18 inches from the curb in the street. The plumber was unable to video the line beyond that point and could not identify the "problem piping holding water." (Doc. 1478, Ex. B).

Ms. Jones's property experienced another backup on March 2, 2018. An MSD crew responded to the reported backup that same day to investigate. The crew found the building lateral was connected to a 12-inch sewer mainline, which was open and running. The crew reported that the upstream and downstream manholes were not surcharged, nor were there any other manholes in the area that were surcharged. (Doc. 1478, Ex. A). The crew reported that the downstream manhole showed minor debris on the bench wall, but Mr. Fronk testified that again this was asphalt, which most likely entered the holes of the manhole lid when the street was paved. Mr. Fronk stated that he would expect to see more debris if the manhole had surcharged. He also testified that no other homes on Larkspur Avenue reported sewer backups on March 2, 2018.

In the meantime, Ms. Jones emailed a copy of the plumber's receipt to MSD. Another MSD crew was dispatched to the property on March 2, 2018 to televise the lateral line. The crew discovered a broken pipe within the lateral right-of-way, which MSD then repaired. (Doc. 1478, Ex. A). An MSD Lateral Inspection Report stated that there appeared to be a black bag tied around the broken portion of the lateral. Mr. Fronk testified that MSD did not have a report

4

of this previous damage or repair and did not know how the break in the lateral pipe occurred. (Doc. 1418, Ex. E). Mr. Fronk also testified that it was unlikely a surcharged public sewer would cause the weak point of a sewer pipe to break as pressurized water within a system would seek the path of least resistance.

Ms. Jones does not dispute that the break in the lateral occurred in the public right-of-way. She presents video and photographs depicting the location of the break in the lateral and repairs made to the lateral, which show the break was in the public right-of-way. (Docs. 1418, 1586).

Ms. Jones alleges the flooding that occurred on February 25, 2018 was due to the substantial amount of rainfall that entered the combined sewer system, overwhelming the system and placing pressure on the previously repaired and weakened lateral pipe.

**III. Resolution**

Under the Consent Decree, property owners may recover damages to personal or real property arising from a "backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System" and "arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 131, Consent Decree, Exhibit 8 at 1). Property owners are responsible for the maintenance and cleaning of the building lateral sewer line, which is owned by the property owner and not MSD. (*Id.*). The building sewer lateral line extends from the home, through the public right-of-way, and to the connection with the MSD public sewer. A property owner, and not MSD, is responsible for damage from a basement backup arising from a break or blockage in the building lateral sewer line. However, where a break or blockage is in the portion of the owner's building lateral sewer

5

line that lies in the public street right-of-way, MSD is generally responsible for the cost and repair of the lateral. MSD's Rules and Regulations provide in relevant part:

> The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer from the building to the point of connection with the public local sewer. Repair and reconstruction of the *building sewer in a public street right-of-way* or within the specified width of a recorded public easement *shall be the responsibility of the District except as follows*. . . . It shall be the responsibility of the owner or his agent to establish, by means of a valid sewer cleaner contractor's receipt, that such a repair or reconstruction is the responsibility of the District. The District shall have the right to verify the sewer cleaner's finding prior to beginning repair or reconstruction. . . .

(Doc. 1089, Ex. C, Section 2008, MSD Rules and Regulations) (emphasis added). MSD undertakes repairs in public right-of-way laterals to ensure proper, safe, and consistent repairs. MSD has previously advised the Court that it undertakes repairs in right-of-way laterals at the insistence of local municipalities which "do not want local roads being subject to unsafe and inconsistent repair by private citizens." (Doc. 151 at 5).

In this case, the preponderance of the evidence shows that the cause of the sewer backups in February and March 2018 was a break and blockage in the building lateral that Ms. Jones owns. Ms. Jones, like all homeowners, is responsible for ensuring a clean, workable building lateral. Backups and damage to household property resulting from blockages and breaks in a building lateral, even where such blockage or break is in the public right-of-way, are the responsibility of the homeowner. Such damage is not compensable under the Consent Decree. MSD is not responsible for sewer repairs or backups resulting from a broken lateral in the public right-of-way until such time as it receives proper notice in the form of a valid plumber's receipt from the property owner. Where MSD receives such notice, MSD is required to make the repairs in a timely manner. MSD was provided with a plumber's receipt identifying a blockage

6

in the lateral at 3438 Larkspur Avenue on March 2, 2018, and MSD responded that same day and discovered a break in the right-of-way lateral line, which it subsequently repaired.

Under the regulations, Ms. Jones, like all homeowners, retains the duty to maintain her own building lateral. While MSD is responsible for repairing lateral sewer lines in the public right-of-way once it is properly notified, the ultimate responsibility for damages to personal property resulting from a backup caused by a break in the building sewer lateral line rests with the homeowner. This is not a case where MSD received notice from a property owner that repair of the lateral in the right-of-way was necessary and MSD failed to make the repairs in a timely manner, thereby causing property damage to the homeowner from a subsequent backup. MSD performed the repair work in accordance with its obligations under the Rules and Regulations. Nor is there any evidence showing who attempted to repair Ms. Jones's lateral pipe by wrapping a plastic bag around the pipe or when the attempted repair occurred. Therefore, there is no evidence that negligence by MSD was the cause of Ms. Jones's sewer backup.

In addition, Ms. Jones's contention that water pressure from the surcharged sewer system caused the weakened pipe to break is not borne out by the evidence. If the public sewer had surcharged, it would be expected that 3538 Larkspur Avenue, which has a basement elevation that is lower than Ms. Jones's property, would have experienced a sewer backup. However, 3538 Larkspur Avenue did not report a sewer backup on or around February 25 or March 2, 2018. The owner of 3538 Larkspur Avenue had previously experienced and reported a sewer backup to MSD, indicating the owner was well-aware of the SBU program and most likely would have reported a sewer backup to MSD had one occurred on or around February 25 or

March 2, 2018. Additionally, no other homes tied into the same sewer segment as Ms. Jones's property reported a sewer backup for these dates.

Under the SBU program governed by the Consent Decree, homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system, or to MSD's negligent maintenance, destruction, operation or upkeep of the sewer system, and not due to blockages or breaks in the occupant's own lateral sewer lines. (Doc. 131, Consent Decree, Exhibit 8 at 1). The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System or MSD's negligence. Ms. Jones has not met her burden of showing that the wastewater backup into her basement on February 25 or March 2, 2018 was caused by inadequate capacity in MSD's sewer system or MSD's negligence. The preponderance of the evidence presented in this case indicates Ms. Jones's sewer backups were caused by a break and blockage of her own building lateral, which she was responsible for maintaining as owner of the lateral. Because Ms. Jones owns and is responsible for maintaining her private building lateral sewer line, including the portion in the public right-of-way, MSD's denial of his claim was correct. Therefore, Ms. Jones's appeal is denied.

**IT IS SO ORDERED.**

Date: 3/7/19

Karen L. Litkovitz, Magistrate Judge
United States District Court