# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs, <br><br> vs. <br><br> BOARD OF HAMILTON COUNTY COMMISSIONERS, et al., <br> Defendants. | Case No. 1:02-cv-107 <br> Barrett, J. <br> Litkovitz, M.J. <br><br> ORDER RE: REQUEST <br> FOR REVIEW BY <br> DARLEEN HAYS |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Darlene Hays (Doc. 1482) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1589). On February 12, 2019, the Court held a hearing on Ms. Hays's request for review at which Ms. Hays, her daughter Heather Creighton, and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk testified and documentary evidence was submitted. (Doc. 1600).

Ms. Hays's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

**I. Background**

Ms. Hays is a tenant at the property located at 322 N. Finley Street, Cincinnati, Ohio. On April 16, 2018, Ms. Hays filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on February 25, 2018. (Doc. 1589, Ex. D). MSD denied the claim for property loss, finding the damage was not caused by a sewer backup covered by the SBU program. (*Id.*, Ex. G). Ms. Hays disagreed with MSD's decision and filed a request for review in this Court.

**II. Evidence presented**

MSD presented evidence that from February 18, 2018, and continuing into the first week of March 2018, prolonged rains along the Ohio River led to a significant rise in the water level of the Ohio River and its tributaries, including the Great Miami River, the Little Miami River, the Mill Creek, the Muddy Creek, and others. (Doc. 1589, Ex. B). The Ohio River crested at 60.53

feet on the evening of February 25, 2018, marking the Ohio River's 22nd highest level ever recorded. (Doc. 1589, Exs. A, B).[2] The widespread flooding resulted in declarations of emergency from state and local governmental authorities. (Doc. 1589, Ex. B).

On February 25, 2018, MSD received a report that Ms. Hays experienced flooding in her basement on February 25, 2018. (Doc. 1589, Ex. C). Ms. Hays's property is located near the Great Miami River and within a Federal Emergency Management Agency Special Flood Hazard Area. (Doc. 1589, Ex. E). On February 25, 2018, the Great Miami River experienced a historic crest of 23.85 feet. (Doc. 1600, Def. Ex. 2). Mr. Fronk testified that an MSD crew did not respond to Ms. Hays's property, but an MSD crew had reported to 415 Porter Street, a property located two streets adjacent to Finley Street, which had also reported a backup on February 25, 2018. (Doc. 1600, Ex. 3). The MSD crew discovered that a nearby pump station on Symmes Street (the "Cleves Pump Station") was under water and all of the manholes in the area were surcharged, including all of the manholes leading to the pump station. (Doc. 1600, Def. Ex. 3). There was no evidence of overland flooding at 415 Porter Street. (*Id.*). The public sewer on Porter Street connects to the sewer on Finley Street, which travels west to the Cleves Pump Station on Symmes Street. The public sewer line to which the sewer on Finley Street connects runs parallel to Three Rivers Parkway and sits at the edge of a nearby lake. (Doc. 1600, Def. Ex. 5). In addition, this public sewer line and the Cleves Pump Station are situated in a flood plain. Based on the high river levels, MSD's estimates suggest there was riverine flooding in these areas on February 25, 2018. (Doc. 1600, Def. Ex. 4).

---

[2] It appears that the Ohio River actually crested on the evening of February 25, 2018, and not February 26, 2018, as MSD represents in Exhibit A. (*See* Doc. 1589, Ex. B-Hamilton County Emergency Management memo, PAGEID #: 36121).

Ms. Hays testified that she discovered sewer water emanating from her basement floor drain the morning of February 25, 2018. She obtained and ran three pumps in an attempt to remove the water from her basement. The water from the basement was pumped into Ms. Hays's backyard and contained toilet tissue, indicating the presence of sewage water. (Doc. 1600, Pl. Ex. 1). The pumps worked continuously for a period of 24 hours before the water receded from the basement. Ms. Hays and her daughter, who assisted in the cleanup, testified that there was no overland flooding on the property and it was dry outside. They presented photographs depicting the dry conditions and the back yard soiled with toilet tissue. (*Id.*).

Mr. Fronk testified that the cause of Ms. Hays's backup was not likely overland flooding. Instead, riverine flooding likely inundated the sewer manholes running parallel to Three Rivers Parkway to which the public sewer on Finley Street connects, and the Cleves Pump Station, which was underwater, was unable to handle the amount of river water flowing into it.

## III. Resolution

Under the Consent Decree, property owners may recover damages to personal or real property caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). There has been no allegation that MSD negligently caused the property damage in this case. Therefore, the question is whether the damage was caused by "inadequate capacity" in MSD's sewer system.

This Court has previously determined that the inability of MSD's sewer system to convey water from a historically significant river flood does not constitute "inadequate capacity" under the Consent Decree for which resulting damages are compensable under the SBU Program.

4

(Doc. 1562). The term "inadequate capacity" is not defined in the Consent Decree. However, the Consent Decree contains a provision entitled "Adequate Capacity" that is instructive. (Doc. 131-1 at 48). Under the "Adequate Capacity" provision of the Consent Decree, MSD is required to undertake remedial measures to ensure that MSD's sewer system has a capacity that is consistent with appropriate design standards or is equipped with other measures so as to prevent capacity- related SBUs. (*Id.*). The provision also indicates that a sanitary sewer system has "adequate capacity" when it conveys flow without any capacity-related sanitary sewer overflows "under current and projected future conditions." (*Id.*; *see also* Doc. 131-1 at 27-28). In addition, the Consent Decree requires, *inter alia*, the implementation of remedial measures in response to "wet weather issues." (Doc. 131-1 at 2-3, 48). Similarly, in determining the cause of a backup under the Consent Decree, MSD must consider "wet weather" factors such as amount of precipitation, property SBU history, signs of overland flooding, and topography, among others. (Doc. 131, Consent Decree, Exhibit 8 at 2). Read together, these provisions indicate that the Consent Decree's SBU claims program was intended to address capacity-related issues resulting from wet weather conditions under current and projected future conditions and not from a historically significant river flood that inundates the portions of MSD's sewer system that lie in close proximity to the Ohio River or its tributaries. MSD's sewer system is not designed to convey historic flood waters from the Ohio River, and it would be unreasonable to require MSD to design such a system. The Consent Decree was not intended to compensate homeowners for backups resulting from historic Ohio River flooding. To require MSD to compensate homeowners under these circumstances would be tantamount to making MSD a no-fault insurer for individuals residing on or around the Ohio River. It would be unreasonable to construe the

5

Consent Decree as requiring MSD – and ultimately Hamilton County ratepayers – to effectively provide flood insurance to residents impacted by Ohio River flooding.

The Court is not persuaded that the cause of Ms. Hays's basement backup was a wet weather event that is covered under the Consent Decree. Rather, the preponderance of the evidence shows that historic flooding of the Ohio and Great Miami Rivers likely overwhelmed the Cleves Pump Station and inundated the manholes of the sewer line connected to the pump station. Both the Ohio and Great Miami Rivers experienced historic flooding and crested on February 25, 2018, the date Ms. Hays's basement flooded. MSD crews observed that the Cleves Pump Station was underwater and that all of the manholes of the public sewer line leading to the pump station were surcharged. This sewer line and the pump station lie in a flood plain and were likely overwhelmed by riverine flooding. This sewer line is connected to the same public sewer line that serves Ms. Hays's property. As a result, any existing sewage in Ms. Hays's building lateral was prevented from flowing downstream through the public sewer lines, which were inundated with flood water, and toward the pump station, which the flood water had submerged and made inoperative. Unable to flow through the flooded sewer pipes, the sewage in the building lateral exited Ms. Hays's basement floor drain and backed up into her basement. As the preponderance of the evidence shows the backup was likely caused by riverine flooding and not a wet weather event, the Court is constrained to uphold MSD's decision in this case.[3]

These are not easy cases, and oftentimes the exact cause of a backup may not be known given the available information and circumstances. Under the Consent Decree, MSD is tasked with exercising its good faith reasonable engineering judgment in assessing the cause of a

---

[3] There may be circumstances where MSD's public sewer surcharged due to wet weather conditions separate and apart from any flooding of the Ohio River. That is not the case here given the evidence before the Court.

basement backup based on non-exclusive factors such as amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). MSD has done so in this case. The Court is not unsympathetic to the losses sustained by individuals like Ms. Hays. However, the undersigned magistrate judge is responsible for ensuring that any costs for damages to private property such as Ms. Hays's that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System or MSD's negligence. Ms. Hays has not met her burden of showing that the flooding of her basement on February 25, 2018 was caused by inadequate capacity in MSD's sewer system or MSD's negligence. The Consent Decree's SBU claims process does not provide a remedy under the circumstances of this case. Therefore, Ms. Hays's appeal is denied.

**IT IS SO ORDERED**.

Date: 3/12/19

Karen L. Litkovitz, Magistrate Judge
United States District Court