# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs, <br><br> vs. <br><br> BOARD OF HAMILTON COUNTY <br> COMMISSIONERS, et al., <br> Defendants. | Case No. 1:02-cv-107 <br> Barrett, J. <br> Litkovitz, M.J. <br><br><br> ORDER RE: REQUEST <br> FOR REVIEW BY <br> MARY HOPKINS |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Mary Hopkins (Doc. 1497) and the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1596). On February 19, 2019, the Court held a hearing on Ms. Hopkins' request for review at which Ms. Hopkins and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk testified and documentary evidence was submitted. (Doc. 1608).

Ms. Hopkins' request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. (*Id.*).

**I. Background**

Ms. Hopkins is the owner of the property located at 4609 Heger Drive, Cincinnati, Ohio. On July 25, 2018, Ms. Hopkins filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on August 28, 2016. (Doc. 1596, Ex. D). MSD denied the claim for property loss, finding the damage was not caused by a sewer backup covered by the SBU program. (Doc. 1596, Ex. E). Ms. Hopkins disagreed with MSD's decision and filed a request for review in this Court.

**II. Evidence**

On August 28, 2016, the area in which Ms. Hopkins' property is situated experienced heavy rainfall. On August 30, 2016, MSD received a report that 4609 Heger Drive had experienced an alleged sewer backup. Due to the overwhelming number of calls for service that arose from this storm, MSD crews did not respond to Ms. Hopkins' residence to investigate. However, MSD provided cleaning services for Ms. Hopkins' home prior to conducting a more in-depth evaluation of the cause of flooding. Servpro, an MSD contractor, was dispatched to her property and performed cleaning services. Ms. Hopkins states that Servpro removed 24 inches

of drywall and wood paneling throughout the basement, and she was advised that Servpro was required to remove the paneling because its exposure to sewage and water could cause mold.

After further review of the sewer configuration and other available information, MSD made the determination that the flooding at Ms. Hopkins' home was not caused by a surcharge of the public sewer. The property is located in the St. Bernard neighborhood of Cincinnati, which experienced heavy rainfall and overland flooding on August 28, 2016. Ms. Hopkins' home is served by a sanitary sewer owned and operated by MSD and a separate storm sewer owned and operated by the city of St. Bernard. MSD states that Ms. Hopkins' home is connected to MSD's sanitary sewer system near the "head-end," meaning the beginning or the highest point of the local sewer. MSD alleges that because Ms. Hopkins' home is situated near the top of the local sewer, it receives minimal additional flow from the three houses upstream from her property.

MSD presents evidence that no other homes on Heger Drive or on Chalet Drive, the adjoining street, reported a sewer backup. (Doc. 1596, Ex. B). Mr. Fronk testified there are no known capacity issues with the MSD sanitary sewer serving Ms. Hopkins' home and within the last five years there have been few reports of a sewer backup. He also testified that MSD examined the topography of the area in which Ms. Hopkins' home is situated. There is a large hill to the rear of Ms. Hopkins' property and a significant slope from Avon Fields Lane to the back of Ms. Hopkins' property, which likely facilitated the flow of overland water down to 4609 Heger Drive. (*Id.*). There were no reports of sewer backups on Avon Fields Lane. Therefore, there is no evidence that sanitary sewer water from Avon Fields Lane commingled with overland flooding and flowed down to Ms. Hopkins' property. Mr. Fronk further testified that the photographs of the high-water debris line on the outside of Ms. Hopkins' garage door is

indicative of overland flooding. (Doc. 1596, Ex. C). In addition, there is a recessed driveway leading to the garage which likely facilitated the flow of rain water down to the garage, inside the garage, and into Ms. Hopkins' basement.

Ms. Hopkins testified she observed water bubbling up from a drain in front of her garage, and the amount of water that accumulated against the garage door looked like a pond. She testified that the water seeped under the garage door and into her basement, damaging items in both her garage and basement. She also testified she observed and smelled dirty "sewage" water enter her house.

### III. Resolution

Under the Consent Decree, property owners may recover damages to personal or real property caused by (1) the inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). Claimants like Ms. Hopkins who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of water into their property was caused by inadequate capacity in MSD's sewer system (a sewer surcharge) and not by overland flooding or blockages in the homeowner's privately-owned building sewer line. (Doc. 131, Consent Decree, Ex. 8 at 1).

Ms. Hopkins has not established that the water backup into her basement on August 28, 2016 was caused by inadequate capacity in MSD's sanitary sewer system. MSD has presented persuasive evidence that overland flooding, and not a sanitary sewer surcharge, was the likely cause of Ms. Hopkins' basement flood. Ms. Hopkins' property is served by a sanitary-only MSD sewer, and not a combined sanitary-storm water sewer, thereby decreasing the likelihood that the

4

significant amount of rainfall would cause a surcharge of the sanitary-only public sewer. In addition, there is no history of sanitary sewer backups for the property and no known capacity issues with MSD's sanitary sewer in the area. Also, no other property owners on Heger Drive or the adjoining street reported a sewer backup. Ms. Hopkins' property is located at the head end of the sanitary sewer line, thereby minimizing the amount of sanitary flow to her property. Ms. Hopkins' property is situated below a large hill and is susceptible to overland flooding from the rear of the home. Her property is served by a recessed driveway, and the water marks on the outside of the garage door show a significant level of water that would not be expected from a surcharge of a sanitary-only sewer but would be expected with overland flooding. Given the topography of the area, overland flooding not emanating from MSD's sanitary sewer system was the most likely cause of the backup in Ms. Hopkins' basement. The preponderance of the evidence does not establish that the cause of Ms. Hopkins' basement backup was inadequate capacity of MSD's public sanitary sewer system.

The Court is not unsympathetic to homeowners like Ms. Hopkins who experience a basement backup such as occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to a property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System. In the absence of evidence establishing Ms. Hopkins' property damage was more likely caused by a surcharge in the public sanitary sewer line and not

by overland flooding or some other cause, the Court is constrained to uphold MSD's decision in this case.

Therefore, the Court denies Ms. Hopkins' appeal in this case.

**IT IS SO ORDERED**.

Date: 3/14/19

Karen L. Litkovitz, Magistrate Judge
United States District Court