# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>ORDER RE: REQUEST<br>FOR REVIEW BY FRI<br>DIVERSIFIED HOLDINGS, LLC |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by FRI Diversified Holdings, LLC (Doc. 1492) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1610). FRI Diversified Holdings, LLC requests review of MSD's decision in its SBU claim without a hearing. (Doc. 1492 at 1).

FRI Diversified Holdings' request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

## I. Background

FRI Diversified Holdings is the owner of the property located at 347 Stanley Avenue, Cincinnati, Ohio. On July 19, 2018, FRI Diversified Holdings filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on February 25, 2018. (Doc. 1610, Ex. F). MSD denied the claim for property loss, finding the damage was not caused by a sewer backup covered by the SBU program. (*Id.*, Ex. F). FRI Diversified Holdings disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence presented

MSD presents evidence that from February 18, 2018, and continuing into the first week of March 2018, prolonged rains along the Ohio River led to a significant rise in the water level of the Ohio River and its tributaries. (Doc. 1610, Ex. B). The Ohio River crested at 60.53 feet on the evening of February 25, 2018, marking the Ohio River's 22nd highest level ever recorded.

2

(Doc. 1610, Ex. A, B, E).[2] The widespread flooding resulted in declarations of emergency by state and local governmental authorities. (Doc. 1610, Ex. B).

On February 26, 2018, MSD received a report that the lower-level of the building owned by FRI Diversified Holdings experienced flooding on February 25, 2018. An MSD crew responded the next day to investigate. The crew observed the building was not currently flooded but the upstream and downstream manholes were currently surcharged. There was no evidence of overland flooding. (Doc. 1610, Ex. D).

MSD states that its subsequent investigation showed the downstream segments of the public sewer are located in areas that were flooded by the elevated river levels, causing the sewer to be inundated with flood waters. MSD states that based on the findings of the crew, the topography of the area, the proximity to the floodwaters, and the layout of the sewer, the claimed damages were determined to have been caused by a sewer inundated with flood waters, not the result of inadequate capacity as contemplated by the Sewer Backup Claims Process Plan. (Doc. 1610 at 2).

FRI Diversified Holdings' Request for Review states:

> On the evening of February 25th, 2018 sewer water shot out of the toilets filling the lower level office and storage space of our building at 347 Stanley Ave. The attached photos show and the plumber confirmed that the water came from the toilets and there was no evidence of overland flooding. The lower level of the building was affected with approx. 2" of water covering most of that floor causing damage as outlined in the attached receipts.

(Doc. 1492 at 1). FRI Diversified Holdings submits an invoice from a private plumber who was called to the property on February 26, 2018. The invoice indicates the plumber ran a sewer cable

---

[2] It appears that the Ohio River actually crested on the evening of February 25, 2018, and not February 26, 2018, as MSD represents in its response. (Doc. 1610, Ex. E).

out approximately 30 feet in the building lateral and did not encounter any blockage. The plumber then pulled the manhole cover in the street and observed the sewer was holding water. The invoice states: "Water backed up because of heavy rain and street storm sewer could not handle all the water. Water shot out of toilets with force because there was so much rain water flooding storm sewer. Called MSD." (Doc. 1492 at 5). Photographs of the lower-level area show waste and water debris on the toilets, paper dispenser, and floor, supporting the plumber's notation that the source of the water backup was from the plumbing fixtures. (Doc. 1492 at 2-3).

### III. Resolution

Under the Consent Decree, property owners may recover damages to personal or real property caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). There has been no allegation that MSD negligently caused the property damage in this case. Therefore, the question is whether the damage was caused by "inadequate capacity" in MSD's sewer system.

This Court has previously determined that the inability of MSD's sewer system to convey water from a historically significant river flood does not constitute "inadequate capacity" under the Consent Decree which is compensable under the SBU Program. (Doc. 1562). The term "inadequate capacity" is not defined in the Consent Decree. However, the Consent Decree contains a provision entitled "Adequate Capacity" that is instructive. (Doc. 131-1 at 48). Under the "Adequate Capacity" provision of the Consent Decree, MSD is required to undertake remedial measures to ensure that MSD's sewer system has a capacity that is consistent with appropriate design standards or is equipped with other measures so as to prevent capacity-

4

related SBUs. (*Id.*). The provision also indicates that a sanitary sewer system has "adequate capacity" when it conveys flow without any capacity-related sanitary sewer overflows "under current and projected future conditions." (*Id.*; *see also* Doc. 131-1 at 27-28). In addition, the Consent Decree requires, *inter alia*, the implementation of remedial measures in response to "wet weather issues." (Doc. 131-1 at 2-3, 48). Similarly, in determining the cause of a backup under the Consent Decree, MSD must consider "wet weather" factors such as amount of precipitation, property SBU history, signs of overland flooding, and topography, among others. (Doc. 131, Consent Decree, Exhibit 8 at 2). Read together, these provisions indicate that the Consent Decree's SBU claims program was intended to address capacity-related issues resulting from wet weather conditions under current and projected future conditions and not from a historically significant river flood that inundates the portions of MSD's sewer system that lie in close proximity to the Ohio River or its tributaries. MSD's sewer system is not designed to convey historic flood waters from the Ohio River and it would be unreasonable to require MSD to design such a system. The Consent Decree was not intended to compensate homeowners for backups resulting from historic Ohio River flooding. To require MSD to compensate homeowners under these circumstances would be tantamount to making MSD a no-fault insurer for individuals residing on or around the Ohio River. It would be unreasonable to construe the Consent Decree as requiring MSD – and ultimately Hamilton County ratepayers – to effectively provide flood insurance to residents impacted by Ohio River flooding.

In the instant case, the preponderance of the evidence shows that the historic flooding of the Ohio River likely inundated the nearby manholes and storm inlets serving the property, thereby causing a backup of sewer water into the property through the toilet fixtures in the lower-

level of the building. The Court is not persuaded that the cause of the backup was a wet weather event that is covered under the Consent Decree. FRI Diversified Holdings is the owner of the property located at 347 Stanley Avenue, which was previously the subject of a Request for Review by tenants of that same property. *See* Order Re: Request for Review by Steven L. Tebeau, Doc. 1578. The Court held a hearing on Mr. Tebeau's Request for Review, heard testimony from tenants Steven and Michelle Tebeau and from MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk, and received additional documentary evidence during and after the hearing. The photographs and plumbing invoice submitted by FRI Diversified Holdings are identical to those submitted by Mr. Tebeau in his claim. The Court was also presented with relevant evidence regarding the amount of rainfall during the February 2018 flood event, the relative elevations of the manholes and storm inlets in the surrounding area, the elevation of the lower-level of the property, and the approximate river flood level. Based on this evidence, which is equally applicable to FRI Diversified Holdings' claim, the Court concluded as follows:

> [T]he Court is persuaded that riverine flooding caused the backup given the relative elevations of the manholes and storm inlets in the surrounding area, the elevation of the lower-level of the property, and the approximate river flood level. The Ohio River crested on February 25, 2018, the date the lower-level of the building flooded. In addition, there is evidence that the manholes and storm inlets sitting at elevations at or below the documented river flood level (Doc. 1560, Ex. E, Ex. F – MH 40905008; MH 40905009; storm inlets 409053074 and 40905372) were likely overwhelmed by riverine flooding. These manholes and storm inlets are connected to the public sewer serving 347 Stanley Avenue. (Doc. 1560, Ex. E). The lower level of 347 Stanley Avenue also sits at an elevation below river flood level. The evidence shows that riverine flooding likely overwhelmed the downstream portion of the public sewer serving the property and caused the backup into the property. As the preponderance of the evidence shows the backup was likely caused by riverine flooding and not a wet weather event, the Court is constrained to uphold MSD's decision in this case.

(Doc. 1578 at 8).

Under the Consent Decree, MSD is tasked with exercising its good faith reasonable engineering judgment in assessing the cause of a basement backup based on non-exclusive factors such as amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). MSD has fulfilled its duty in investigating the likely cause of the backup to 347 Stanley Avenue. The undersigned magistrate judge is responsible for ensuring that any costs for damages to private property such as FRI Diversified Holdings' property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System or MSD's negligence. FRI Diversified Holdings has not met its burden of showing that the flooding of the lower-level of the building on February 25, 2018 was caused by inadequate capacity in MSD's sewer system or MSD's negligence. The Consent Decree's SBU claims process does not provide a remedy under the circumstances of this case. Therefore, FRI Diversified Holdings' appeal is denied.[3]

**IT IS SO ORDERED**.

Date: 3/20/19

Karen L. Litkovitz, Magistrate Judge
United States District Court

---

[3] Attached to this decision is a copy of the Court's decision on Mr. Tebeau's Request for Review. (Doc. 1578).