UNITED STATES DISTRICT COURT
SOUTTHEIRN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
    Plaintiffs,

vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
    Defendants.

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

ORDER RE: REQUEST
FOR REVIEW BY
LOWELL WILSON

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Lowell Wilson (Doc. 1551) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1643). On April 23, 2019, the Court held a hearing on Mr. Wilson's request for review of his SBU claim. (Doc. 1660).

Mr. Wilson's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id*. at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation,

---

[1]The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Mr. Wilson is the owner of the multi-family property located at 1321-1323 Edwards Road, Cincinnati, Ohio. On August 28, 2016, Mr. Wilson experienced an SBU incident in his basement which resulted in damage to his personal and real property. Mr. Wilson made a claim to MSD for personal and real property damages resulting from the August 28, 2016 sewer backup into his basement. MSD made an offer of $11,502.27 to Mr. Wilson as compensation for his claim. Mr. Wilson rejected the offer and filed this appeal.

Damages for SBU claims are determined based on the market value of personal property as of the date of loss (the depreciated value) and not on the original purchase price or cost of replacement. Damage to real property is determined based on reasonable replacement value.

The parties agree on the amount of damages that Mr. Wilson should be awarded for personal and real property loss with the exception of the two air conditioning units replaced by Ignis Heating and Cooling at a cost of $5,838.16; two air conditioning window units at a cost of $165.99 and $315.99 respectively; and "misc. books, tools, [and] other property" that Mr. Wilson values at $1,000.00.

Mr. Wilson seeks reimbursement of $5,838.16 for two 2.5-ton 13 SEER central air conditioning packages. The central air conditioning packages include the components that were installed in the basement of Mr. Wilson's home and the condenser units installed on the outside of the home. The Consent Decree does not cover outside property damage resulting from a sewer surcharge or a combination of overland flooding and sewer surcharge. (*See* Docs. 945, 1038, 1204). Therefore, MSD generally will provide compensation for damage caused by a sewer backup only to the components of a central air conditioning system which are located inside a property. However, if the central air conditioning system is one that requires interconnected and compatible inside and outside components to function, compensation for the entire system may be warranted under certain circumstances. As explained by MSD's adjuster at a similar SBU hearing (*see* Doc. 1662), updated building code regulations ban certain types of refrigerants used in central air conditioning systems manufactured before 2010. As a result, if the components of a pre-2010 system located inside a property are damaged by a sewer backup and must be replaced with parts that do not function using the banned refrigerant, the new replacement parts may not be compatible with the pre-2010 outside condenser and other components of the system which do utilize the banned refrigerant. Under this scenario, the entire air conditioning system would be rendered inoperable by the sewer backup. Both the inside and outside air conditioning components would need to be replaced, and compensation for the entire central air conditioning system would be reasonable.

At the hearing, MSD stated it would reconsider this item of damages if Mr. Wilson could provide additional information showing it was necessary to replace the entire air conditioning system, including the outside condenser, because of damage to the inside components, or provide

3

an updated estimate that parsed out the cost for the inside components and the outside condensers. The Court also offered to keep the record open for 30 days to allow Mr. Wilson to supplement the record with additional information on this item of damages but Mr. Wilson declined.

The estimate provided by Mr. Wilson's heating and cooling company does not separate the costs for the condenser units installed on the outside of Mr. Wilson's home and the components installed in the basement of his home. In addition, Mr. Wilson has not provided the Court with any documentation showing the existing outside condensers needed to be replaced because they were incompatible with the new replacement air conditioning components inside the property. Therefore, the Court is constrained to uphold MSD's decision to exclude compensation for the air conditioning units.

Mr. Wilson is not entitled to compensation for the window air conditioning units he purchased. The window units were not damaged as a result of any sewer backup. Rather, they were purchased after the sewer backup and are not compensable under the Consent Decree. (Doc. 131, Consent Decree, Exhibit 8 at 2-3).

With regard to the "misc. books, tools, [and] other property" that Mr. Wilson values at $1,000.00, the Court is unable to determine the particular items for which Mr. Wilson seeks reimbursement and the estimated value of such items based on the information of record. The Consent Decree provides that "[d]amages will be paid for losses to real and personal property that can be documented." (Doc. 131, Consent Decree, Exhibit 8 at 2). As the damages for these items have not been documented, the Court upholds MSD's decision to exclude compensation for these items.

Finally, Mr. Wilson seeks compensation for the diminution in value of his property. While the diminution in the value of real estate may be compensable under the SBU claims program (Doc. 129 at 11), Mr. Wilson has requested compensation for the remodeling costs of his basement. (Doc. 1551 at 16, 39). As Mr. Wilson has requested and is being compensated for the cost to restore the interior of his basement, it would be inconsistent and duplicative to also award him compensation for the alleged diminution in value of his property.[2] This is not a situation where the property cannot be restored or where the homeowner experienced an SBU when the home was under contract for sale. *See, e.g.*, Doc. 1087. The Court denies compensation in this regard.

In conclusion, the Court finds that MSD's assessment of the damages in this case as reflected in the updated Sedgwick appraisal is fair and reasonable (Doc. 1660, Def. Ex. 1) and awards **$11,502.27** to Mr. Wilson for the damages sustained in this case.

**IT IS SO ORDERED.**

_Karen L. Litkovitz_
Karen L. Litkovitz, Magistrate Judge
United States District Court

---

[2] The Court notes that the evidence Mr. Wilson submitted at the hearing, to wit, a letter from a realtor giving his opinion on the devaluation of Mr. Wilson's property (Doc. 1660, Pl. Ex. A at 18), is not based on his own inspection of the property or a contemporaneous appraisal and is therefore speculative. There is no evidence that the damage to Mr. Wilson's property from the SBU is permanent and cannot be remedied through restoration.