# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs, <br><br> vs. <br><br> BOARD OF HAMILTON COUNTY <br> COMMISSIONERS, et al., <br> Defendants. | Case No. 1:02-cv-107 <br> Barrett, J. <br> Litkovitz, M.J. <br><br> ORDER RE: REQUEST <br> FOR REVIEW BY <br> CAROL STONE |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Carol Stone (Doc. 1000), the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1142), and Ms. Stone's supplemental evidence (Doc. 1297). On April 25, 2019, the Court held a hearing on Ms. Stone's request for review at which Ms. Stone and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk testified and documentary evidence was submitted. (Doc. 1661).

Ms. Stone's request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. (*Id.*).

## I. Background

Ms. Stone is the owner of the property located at 4280 Redmont Avenue, Deer Park, Ohio. On March 1, 2017, Ms. Stone filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on March 4, 2015. (Doc. 1000, Ex. 2). MSD denied the claim for property loss, finding the damage was not caused by a failure of MSD's sewer system but was likely caused by a failure of the private building lateral. (Doc. 1142, Ex. H). Ms. Stone disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence

On November 24, 2014, MSD crews responded to Ms. Stone's property after she reported a sewer backup. The crew found the public sanitary-only sewer to be open and running with no signs of surcharge. (Doc. 1142, Ex. A). The crew left field form 8, which indicates there was likely an issue with the private plumbing or the privately-owned building sewer and advises the occupant to contact a licensed plumber to investigate. (*Id.* at 6). Pursuant to its normal procedure, MSD thereafter issued a work order to inspect the home's lateral line using closed-

circuit television. MSD explains that it creates these work orders for any property that reports a sewer backup and has not had its lateral lines televised recently in order to update MSD's records with accurate tap locations. The TV crew discovered there was not a building sewer connected to the tap available in front of Ms. Stone's home. The crew attempted to locate the tap from an outside cleanout and was unable to reach the public sewer due to issues with the private plumbing. (Doc. 1142, Ex. B).

On March 4, 2015, MSD received another report of a sewer backup at 4280 Redmont Avenue. An MSD crew responded within two hours to investigate. The crew determined that the public sanitary sewer was open and running and there were no signs of a sewer surcharge in the manholes. Ms. Stone was advised to hire a plumber and was again given field form 8. (Doc. 1142, Ex. C). MSD issued another work order to locate the property's point of connection to the public sewer. After the lateral was dye-tested and videoed, the crew noted it was "possible [the] tap was not reconnected to M/L [mainline]." (Doc. 1142, Ex. E). However, during excavation work, the MSD crew discovered Ms. Stone's building sewer was connected to a poorly-maintained private and shared lateral, which tied into the public sewer further downstream. MSD opened the shared lateral, heavily cleaned the lateral, and then took video, which showed a blockage in the shared lateral line. (Doc. 1142, Exs. F, G). MSD concluded that the blockage in this shared lateral was the cause of Ms. Stone's March 4, 2015 sewer backup. Rather than make a repair to keep Ms. Stone's wastewater flowing through the shared lateral that was not being maintained, MSD re-routed Ms. Stone's building sewer and tapped it directly into the public sewer on Redmont Avenue. (Doc. 1142, Exs. F, G).

3

Mr. Fronk testified that the City of Deer Park owns and maintains a separate storm water sewer on Redmont Avenue, while MSD owns and maintains the public sanitary sewer. He also testified that Ms. Stone's property was the only one tied into the shared private lateral. The other neighboring properties tied directly into the public sanitary sewer. Mr. Fronk stated that in November 2014, Ms. Stone was advised to contact a plumber after her first basement backup, and had she done so she likely would have discovered that her building lateral was not tied directly into the public sewer but into a private, shared lateral line.

Ms. Stone initially alleged that the damage to her basement was the result of problems with the sewer in the public right-of-way. She alleges that, "MSD had replaced the main line that ran the length of Redmont Avenue, and then failed to reconnect the lateral from Ms. Stone's home to the main line, resulting in the backup." (Doc. 1000 at 4). However, it appears that the construction and repairs made to Redmont Avenue were for "new water mains, curbs, storm catch basins, and full depth road repair" that were made by the City of Deer Park and not MSD. (Doc. 1297 at 5-7). Ms. Stone testified that she was never advised that her building lateral did not connect directly to MSD's public sewer but rather to a private lateral sewer line.

### III. Resolution

Under the Consent Decree, property owners may recover damages to personal or real property arising from "backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System" and "arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 131, Consent Decree, Exhibit 8 at 1). Property owners are responsible for blockages in the owner's building lateral sewer lines, which are owned by the property owner and not MSD. (*Id.*). However, where a break or

4

blockage is in a portion of the owner's building lateral sewer line that lies in the public street right-of-way, MSD is generally responsible for the repair. MSD's Rules and Regulations provide in relevant part:

> **The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer from the building to the point of connection with the public local sewer.** Repair and reconstruction of the building sewer in a public street right-of-way or within the specified width of a recorded public easement shall be the responsibility of the District except as follows. . . . It shall be the responsibility of the owner or his agent to establish, by means of a valid sewer cleaner contractor's receipt, that such a repair or reconstruction is the responsibility of the District. The District shall have the right to verify the sewer cleaner's finding prior to beginning repair or reconstruction. . . .

(Doc. 1089, Ex. C, Section 2008, MSD Rules and Regulations) (emphasis added). MSD undertakes repairs in public right-of-way laterals to ensure proper, safe, and consistent repairs. MSD has previously advised the Court that it undertakes repairs in right-of-way laterals because local municipalities "do not want local roads being subject to unsafe and inconsistent repair by private citizens." (Doc. 151 at 5).

Under the SBU program governed by the Consent Decree, homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system and not due to blockages in the occupant's own lateral sewer lines. (Doc. 131, Consent Decree, Exhibit 8 at 1). Here, Ms. Stone has not shown that the wastewater backup into her basement was caused by inadequate capacity in MSD's sewer system. The evidence establishes that Ms. Stone's building lateral was connected to another shared private lateral, which then tapped into the public sewer system. The preponderance of the evidence shows that it was a blockage in this shared, poorly maintained private lateral line that caused the backup of wastewater into Ms. Stone's basement

5

and not the inadequate capacity of MSD's sewer system. Nor does the evidence establish that Ms. Stone's property damage was caused by MSD's negligent maintenance of the sanitary sewer system. Ms. Stone's home is served by a sanitary sewer owned and operated by MSD and a separate storm sewer system owned and operated by the City of Deer Park. Therefore, the City of Deer Park, and not MSD, was responsible for the repairs and improvements to Redmont Avenue during the relevant time frame. Prior to March 4, 2015, when Ms. Stone reported a sewer backup, MSD did not have notice of any need to repair Ms. Stone's lateral. It was not until MSD's subsequent investigation that it discovered Ms. Stone's building lateral was connected to another privately-owned shared lateral. MSD then disconnected Ms. Stone's building lateral line from the poorly maintained shared lateral and tied it directly into MSD's public sanitary sewer system.[2] Because Ms. Stone owns and is responsible for cleaning and maintaining her private building lateral sewer line, including the portion that initially tied into a private sewer lateral line, MSD's denial of her claim was correct.

The Court is not unsympathetic to homeowners like Ms. Stone who experience a basement backup such as occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to a property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate

---

[2] This is not a case where MSD delayed its repair of the lateral in the right-of-way and its failure to act in a timely manner allowed a subsequent backup to occur. Under such circumstances, a homeowner does not have complete control over preventing backups because MSD, and not the homeowner, must perform the necessary repair work to the lateral in the public right-of-way. *See, e.g.,* Doc. 598.

capacity in MSD's Sewer System or MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The preponderance of the evidence in this case shows that the backup was caused by a blockage in a private building lateral which Ms. Stone was responsible for maintaining.

Therefore, the Court denies Ms. Stone's appeal in this case.

**IT IS SO ORDERED**.

Date: 5/8/19

Karen L. Litkovitz, Magistrate Judge
United States District Court