UNITED STATES DISTRICT COURT
SOUTTHEIRN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
    Plaintiffs,

vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
    Defendants.

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

ORDER RE: REQUEST
FOR REVIEW BY
ANDREW AND DEBORAH
HELDMAN

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Andrew and Deborah Heldman (Docs. 1563, 1657), the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Docs. 1652, 1654), and the parties' supplemental filings (Docs. 1681, 1703). On April 25, 2019, the Court held a hearing on Mr. and Mrs. Heldman's request for review of their SBU claim. (Doc. 1662).

The Heldmans' request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id*. at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

The Heldmans are the owners of the property located at 9 Arcadia Place, Cincinnati, Ohio. On August 28, 2016, the Heldmans experienced a sewer backup in their basement which resulted in damage to their personal and real property. The Heldmans made a claim to MSD for personal and real property damages resulting from the August 28, 2016 sewer backup. MSD made an offer of $65,958.86 to the Heldmans as compensation for their claim. The Heldmans rejected the offer and filed this appeal.

Damages for SBU claims are determined based on the market value of personal property as of the date of loss (the depreciated value) and not on the original purchase price or cost of replacement. Damage to real property is determined based on reasonable replacement value.

The parties agree on the amount of compensation that the Heldmans should be awarded for personal and real property loss with the exception of two items: an air conditioning system and basement restoration work.

At the hearing, the Court received additional evidence on the air conditioning system and orally awarded $7,000.00 to the Heldmans as compensation for the system.

The Court also heard argument and testimony regarding (1) the Maile, Tekulve & Gray estimate (the "Maile Estimate") submitted by the Heldmans for restoration work to their basement (Doc. 1652-1, Ex. D, PageID #38652-38654; Doc. 1657); and (2) the Sedgwick building estimate for restoration work (the "Sedgwick Estimate") submitted by MSD (Doc. 1652-1, Ex. E, PageID #38655-38695). The Court held the record open to receive additional information on the Maile Estimate to help the undersigned determine a reasonable replacement value for structural damage to the interior of the Heldmans' property.

The Heldmans and MSD both supplemented the record. The Heldmans submitted a report from Maile, Tekulve & Gray outlining the project summary, comparing the Maile Estimate with the Sedgwick Estimate, and critiquing the Sedgwick Estimate. (Doc. 1681). MSD's supplement included a revised estimate from Sedgwick that provides additional compensation in the amount of $4,991.03 for dumpster load ($408.32); residential supervision/project management ($2,516.40); taxes, insurance, permits and fees ($942.00); temporary toilet ($212.79); electrical outlets ($370.70); electrical switches ($178.50); and final clean-up costs ($362.32). (Doc. 1703-1).

The Court determines that the Sedgwick Estimate, as revised, provides a fair and reasonable estimate of the cost to restore the Heldmans' property. The Maile Estimate has several deficiencies that call into question the accuracy and reasonableness of the entire estimate and dissuade the Court from adopting it in this case.

3

First, the Maile Estimate fails to break down the various project estimates in a way that enables the Court to understand and evaluate the reasonableness of the estimates. It does not include details on proposed labor costs, the types of proposed materials, or the quantity, quality, and pricing of such materials.

Second, the Maile Estimate includes costs to upgrade the property to a better condition than existed at the time of the SBU. For example, the Maile Estimate provides a cost of $5,915.00 to "install new vinyl flooring per allowance." Under the SBU program, however, damage to real property is determined based on the *reasonable replacement* value. This means restoring the property to the condition that existed prior to the sewer backup. The Heldmans' flooring prior to the backup consisted of concrete flooring in the unfinished portions of the basement and carpet in one portion of the finished part of the basement, not vinyl flooring throughout the basement. In contrast to the Maile Estimate, the Sedgewick Estimate provides a cost of $3,317.93 for applying two coats of epoxy finish over the concrete floor, and $708.02 for laying carpet in the finished portion of the basement, for a total of $4,025.95. Compensating the Heldmans for vinyl flooring throughout the basement would amount to restoring the basement floor to an upgraded condition and not to the condition that existed at the time of the SBU. The Sedgewick Estimate is based on an on-site inspection and measurements of the damaged portions of the flooring and finishes, and it is a fair and reasonable estimate of the costs to restore the Heldmans' basement flooring to its pre-SBU condition.

Third, the Maile Estimate includes costs for restoration work that has already been completed and for which the Heldmans have submitted invoices that MSD has agreed to pay in full. For example, the Maile Estimate lists a cost of $1,850.00 to "clean, repair/reseal existing

4

ductwork, etc." in the heating, venting, and air conditioning systems. MSD's original offer already included compensation for these costs in accordance with the invoices submitted by the Heldmans with their SBU claim, including: (1) Hi Tech Duct Cleaning, Inc. for "Full Service Air Duct Cleaning"[2] in the amount of $791.80; (2) Action Mold Removal LLC in the amount of $4,200.00; and (3) Zimmer Heating and Air Conditioning for the replacement of their furnace in the amount of $9,635.00. (Doc. 1652-1, Ex. E, PageID #38656). As indicated above, the Court has allowed the Thomas & Galbraith invoice for replacement of the entire air conditioning system in the amount of $7,000.00. The Maile Estimate does not accurately account for restoration work that has already been completed.

The Sedgwick Estimate, as amended and updated, is adopted by the Court as providing a fair and reasonable estimate of the restoration costs in this case.

The Court awards the following to the Heldmans on their SBU claim:

Dry Right Inc. (Mitigation) $5,300.00

Cullen Electric #1 $3,545.83

Cullen Electric #2 $3,298.60

Hi Tech Duct Cleaning $791.80

Thomas & Galbraith AC Unit $7,000.00

Water Heater (Home Depot) $1,105.42

Zimmer Heating (Furnace) $9,635.00

Tarvin Plumbing (Laundry Tub Install) $320.30

---

[2] Per that invoice, "Full Service Air Duct Cleaning Includes: Air sweep all run lines, air sweep and whip main trunk line, clean and sanitize registers, sanitize and disinfect run lines and main trunk line, all access holes, all patches, vacuuming fallen debris in furnace area." (Doc. 1654, PageID #38725).

Joe's Handyman Services (Step Repairs) $100.00

Action Mold Removal $4,200.00

Basement Door $950.36

Laundry Tub (Lowe's) $148.73

1-800-Declutter (Debris Removal) $2,489.00

Toilet Work $164.00

Sedgwick Initial Building Estimate $23,242.27

Dumpster load $408.32

Residential Supervision/Project Management $2,516.40

Taxes, insurance, permits & fees $942.00

Temporary toilet $212.79

Electrical outlets $370.70

Electrical switches $178.50

Final clean-up costs $362.32

**Total building damage: $67,282.34**

**Personal property: $10,667.55 ($15,239.36 minus depreciation of $4,571.81)**

**Total award: $77,949.89**

In conclusion, the Court awards **$77,949.89** to Mr. and Mrs. Heldman for the damages sustained in this case.

**IT IS SO ORDERED.**

_Karen L. Litkovitz_
Karen L. Litkovitz, Magistrate Judge
United States District Court