**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | : | Case No. 1:02-cv-00107 |
| Plaintiffs, | : | Judge Michael R. Barrett |
| V. | : | Magistrate Karen L. Litkovitz |
| BOARD OF HAMILTON COUNTY COMMISSIONERS, et al., | : | **Hearing: October 24, 2019 at 10 a.m.** |
| Defendants. | : | **RESPONSE TO LETITIA JAMES' REQUEST FOR REVIEW (DOC. 1740)** |

The City and County Defendants ("MSD") respond to Letitia James's Request for Review (Doc. 1740) as follows:

1. Letitia James ("Ms. James") is the owner of the property located at 3961 Vine, Cincinnati, Ohio 45217 (the "Property"). Ms. James claims to have suffered damages to real and personal property from an alleged sewer backup occurring at the Property on or about August 28, 2016. This Court previously awarded Ms. James $20,856.25 in compensation related to a flooding event 13 months prior to the one at issue here, which consisted of 105 items of personal property and a basement rebuild expense. (Doc. # 1384.)

2. On August 29, 2016, MSD received a report that Ms. James experienced flooding in the basement of the Property. The initial report is attached as **Exhibit A.**

3. Due to the severity of the August 28, 2016 rain event, MSD was unable to respond to the Property at the time of the alleged sewer backup. However, on August 29, 2016, MSD was able to investigate a home located adjacent from the Property, which is tapped into the same sewer section of the public sewer as is Ms. James's Property. The MSD crew noted that the public sewer was open and running, but with signs of surcharging in the upstream manhole, as well as surcharges at various other nearby manholes. The MSD crew also noted that there were signs of overland flooding caused in part by an overload of the public sewer. A copy of the sewer backup reports and MSD's findings are attached as **Exhibit A**.

4. On August 27, 2018, Ms. James submitted a claim for damaged real and personal property due to the alleged sewer backup. The claim submittal was comprised of (i) receipts for real property and critical mechanical repairs, including multiple estimates for boiler repair; (ii) an undated, unspecified receipt for $326.00; (iii) a $165.16 receipt for digital printing costs; (iv) a 28-page spreadsheet containing over 800 entries of claimed personal property losses; (v) nearly 1500 photographs, including approximately 1200 small photographs, fit 35 to a page; and (v) three addendums of additional claimed personal property. The claim submittal is attached as **Exhibit B**.

5. Ms. James seeks to challenge the amount offered by MSD in satisfaction of her claim under the Sewer Backup Claims Process Plan.

6. Although Ms. James has not indicated what additional compensation she seeks,[1] she has failed to meet her burden of proof to establish that she is eligible under the terms of the Consent Decree for any additional compensation, and that all of her claimed damages are eligible for reimbursement under the Sewer Backup Claims Process Plan.

7. This Court has held that "damages for SBU claims are determined based on the market value of personal property *as of the date of loss* (the depreciated value) and not on the original purchase price or cost of replacement." (05/23/17 Order Re: Request for Review by James and Sharell Clark, Doc. 914 at 7) (emphasis in original).

8. Further, "[t]he Claims Process will only reimburse damages arising from basement backups caused by inadequate capacity in MSD's Sewer System or that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 131, Consent Decree, Exhibit 8 at 2). Under the Consent Decree, damages arising from sewer backups for which MSD is responsible are limited to documented real and personal property.

[1] *See infra* ¶¶ 14 – 15.

(Doc. 131, Consent Decree, Exhibit 8 at 2.). This Court has held, "[i]n view of the Consent Decree's requirement that claimants substantiate the existence and/or extent of their damages, the Court may not award compensation for the items listed … on [a] claim form that have not been documented." (03/02/2018 Order RE: Request for Review by Robert Buckner, Doc. 1281 at 6.).

9. Based on MSD's review of Ms. James's documentation in support of her claim for damages and Sedgwick's Statement of Loss and Content Analysis, MSD objects to Ms. James's claim for additional reimbursement on the following grounds.

10. First, multiple items in Ms. James's claim submission lack sufficient documentation. Ms. James's submission includes a $326.00 receipt for which no other information is provided. Her submission also includes three addendums of claimed personal property losses, each of which purports to seek a bulk estimated claim value. Many items on the addendums #1 and #2 are already listed on the 28-page spreadsheet, and many of the non-duplicate items on those first two addendums are insufficiently documented. No compensation could be awarded for items on the third addendum, which simply claimed a lump sum of $15,000 for various group-listed items such as records, DVDs, CDs, nails, screws, tools, "personal document and business documents, thousands of keepsake photos," all without providing any estimated pricing and corroborating information. (Exhibit B at p. 140).[2] Reimbursement of insufficiently documented items is inconsistent with the administration of the Consent Decree and the Sewer Backup Claims Process Plan. (03/02/2018 Order RE: Request for Review by Robert Buckner, Doc. 1281 at 6.).

11. Second, MSD objects to Ms. James's request to the extent she seeks reimbursement of the cost to replace her personal property. Reimbursement of the original

[2] The 28-page spreadsheet also claimed several items which were duplicates or insufficiently documented.

purchase price and of the cost of replacement is inconsistent with the administration of the Consent Decree and the Sewer Backup Claims Process Plan, under which – as referenced above – personal property damages are determined by the market value as of the date of loss or the depreciated value. Ms. James listed "est. high" and "est. low" prices for her claimed personal property on the 28-page spreadsheet and for some of the claimed personal property on addendums #1 and #2. In order to determine the depreciated value of Ms. James's property, an adjuster, Sedgwick, employed commercially accepted standards to evaluate the claim based on the type of item, quantity, and value of each claimed item. Sedgwick performed an analysis of the prices provided by Ms. James, and in most cases (except where Sedgwick determined Ms. James's estimated were unreasonable and used a different price) accepted the "est. low" amounts. Ms. James did not provide any information regarding the age of her personal property at the time of loss and so Sedgwick, following its standard process, applied a maximum depreciation rate. Sedgwick determined the net adjusted actual cash value of Ms. James's personal property to be $12,860.37 after accounting for depreciation. Sedgwick's Statement of Loss and Content Analysis for the personal property are attached as **Exhibits C and D**, respectively.[3]

12. Third, MSD objects to Ms. James's request to the extent she seeks reimbursement of $165.16 for printing costs related to preparation of her claim. Such expenses are not eligible for reimbursement under the Sewer Backup Claims Process Plan.

13. Based on the foregoing, on May 21, 2019, MSD offered Ms. James **$32,923.96** to settle the matter. The offer letter and release is attached as **Exhibit E**. Ms. James did not accept the offer.

[3] Sedgwick created a separate one-page Content Analysis for addendums #1 and #2.

14. In her Request for Review, Ms. James indicates that she disagrees with the "[a]mount MSD assessed for damages at the above mentioned property: Real & Personal Property" and states that the relief she seeks and evidence in support of that relief is "[f]orthcoming."

15. On August 28, 2019, MSD's outside counsel telephoned Ms. James to discuss her claim and request more information related to her demand for additional compensation in an effort to resolve her claim without need for further court intervention. Ms. James did not answer, and MSD's outside counsel left a voicemail. On August 30, 2019, MSD's outside counsel attempted to telephone Ms. James multiple times, but each time received an automated message that the number was not receiving calls. As such, on August 30, 2019, MSD's outside counsel sent a letter to Ms. James requesting a call back. The letter is attached as **Exhibit F.** On September 13, 2019, MSD's outside counsel telephoned Ms. James and again left a voicemail. To date, Ms. James has not responded to any attempt made by MSD's outside counsel to contact her, and neither MSD nor its outside counsel has received any further materials or correspondence from Ms. James.

Respectfully submitted,

PAULA BOGGS MUETHING
City Solicitor

*/s/Andrew A. Spievack*
Andrew A. Spievack (0098234)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Phone: (513) 827-3896
Fax: (513) 381-0205
aspievack@taftlaw.com

Joseph C. Neff (0086419)
Assistant City Solicitor
1600 Gest Street
Cincinnati, Ohio 45204
Phone: (513) 557-5784
Fax: (513) 224-1399
Joseph.Neff@cincinnati-oh.gov
*Counsel for Defendant City of Cincinnati*

## NOTICE OF HEARING

Notice is hereby given that a hearing on this Request for Review will take place October 24, 2019 at 10 a.m., at the Potter Stewart U.S. Courthouse, Courtroom 708, 100 East Fifth Street, Cincinnati, Ohio 45202.

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2019 a true and accurate copy of the foregoing Response was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that on September 26, 2019, a true and accurate copy of the foregoing Response will be sent to the party at issue via certified mail and hand delivery.

*/s/ Andrew A. Spievack*