# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>RONALD BRACEY |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Ronald Bracey (Doc. 1695), the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1729), Mr. Bracey's supplemental letter and evidence (Doc. 1761), and MSD's supplemental letter and evidence (Doc. 1762). On August 13, 2019, the Court held a hearing on Mr. Bracey's request for review at which Mr. Bracey and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk testified and documentary evidence was submitted. (Doc. 1736).

Mr. Bracey's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(*Id.* at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

**I. Background**

Mr. Bracey is the owner of the property located at 3264 Gobel Avenue, Cincinnati, Ohio. On February 4, 2019, Mr. Bracey filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on March 1, 2017. (Doc. 1729, Ex. D). MSD denied the claim for property loss, finding the damage was not caused by a failure of MSD's sewer system but was likely caused by overland flooding not emanating from MSD's sewer system. (Doc. 1729, Ex. E). Mr. Bracey disagreed with MSD's decision and filed a request for review in this Court.

**II. Evidence**

On March 1, 2017, the area in which Mr. Bracey's property is situated experienced heavy rainfall. That same day, MSD received a report that 3264 Gobel Avenue experienced a basement backup. MSD crews responded to investigate on March 3, 2017. The crew inspected the

mainline public sewer and found it was open and running and had no signs of surcharge. (Doc. 1729, Ex. A). The MSD crew spoke with the tenant of the property, who reported the water level reached 7 feet or more; her car was submerged in water; and her husband's truck was towed from the street to clear the street for a boat rescue of a person stranded in his vehicle.

A separate MSD crew responded to nearby 3260 Gobel Avenue, Cincinnati, Ohio. That crew documented a large amount of overland flooding in the area. The crew noted a low-level surcharge in the public sewer that was below the elevation of both 3260 Gobel and Mr. Bracey's property. (Def. Ex. 1).

Mr. Bracey's property is connected to a 45-inch combined sewer. Gobel Avenue is also serviced by a separate 36-inch storm-only sewer, which is designed to drain excess rainwater from impervious surfaces such as paved streets. (Doc. 1729, Ex. B). Mr. Bracey's property is located in a low-lying area that sustained extensive overland flooding on March 1, 2017, as depicted in the photographs submitted by MSD. (Def. Ex. 1). Mr. Fronk testified that Gobel Avenue, where Mr. Bracey's property is situated, is located in a valley with steep hills on both sides of the road. A map of the relevant elevations shows the property is at the lowest point of Gobel Avenue and essentially sits in a bowl. (Doc. 1729, Ex. C). Mr. Fronk testified that the rim of the downstream manhole is at an elevation of 752 feet and showed signs of surcharge 10 feet below the rim. Mr. Bracey's basement sits at an elevation of 760 feet, which is approximately 20 feet higher than the level of surcharge in the downstream manhole. Given the level of surcharge and the relative elevations of the manhole rim and Mr. Bracey's basement, Mr. Fronk concluded that the sewer surcharge could not have reached the level of Mr. Bracey's basement. Mr. Fronk also testified there were no reported sewer backups on Sunshine Avenue, a

street which lies on a hill above Mr. Bracey's property. Therefore, he concluded it was unlikely that there was any commingling of sewer water with overland flooding that would have flowed down to Mr. Bracey's property. Mr. Fronk also noted a news media report that Gobel Avenue resembled a river during the storm, and a person had to be rescued from his vehicle on the street during the storm. Mr. Fronk testified that storm water in overland flooding carries with it trash, mud, animal waste, and other contaminants that smell like sewage when in an enclosed space like a basement or garage. Mr. Fronk testified that the water level was up to Mr. Bracey's porch and entered his basement through the garage and basement doors.

Mr. Bracey testified that his tenant reported seeing water come out of the floor drains. He also testified that the basement smelled like fecal matter and raw sewage, and he disputed that the cause of the water in his basement was overland flooding. He testified that the garage door was shut during the March 1, 2017 storm, and the interior basement door that leads to the garage was shut and sealed, so as not to permit overland flooding to enter the basement.

Subsequent to the hearing, Mr. Fronk inspected the property along with Mr. Bracey. Both Mr. Bracey and Mr. Fronk presented photographs of the garage and basement doors. (Docs. 1761, 1762). Mr. Fronk's declaration states that he inspected the garage door and the door between the garage and basement to determine whether either door was "watertight." (Doc. 1762 at 5). Mr. Fronk concluded from his inspection that neither door would prevent overland flooding from entering the property and that overland flooding likely entered the basement through these doors. (*Id.*). Mr. Bracey disputes this conclusion and points to metal weather stripping on the basement door which is intended to keep the elements out. He also alleges that

MSD sent a cleaning crew to his property, which is contrary to MSD's current position that his basement backup was caused by overland flooding and not a sewer backup.

## III. Resolution

As an initial matter, the Court notes that under the Consent Decree that governs the Court's review of SBU appeals, "MSD's provision of cleanup services under this program does not constitute an admission of any liability by MSD with regard to any claims that the occupant may have against MSD for real or personal property damage caused by the building backup." (Doc. 131, Ex. 7 at 4). MSD will provide cleaning services when doubt exists about the cause of the backup after an initial investigation based on the health risks posed by floods and water damage. (Doc. 640, Ex. B). Therefore, the fact that MSD provided this cleaning service for Mr. Bracey's property and paid for such service is not evidence that the water in Mr. Bracey's basement was the result of a backup of the public sewer.

Under the Consent Decree, property owners may recover damages to personal or real property caused by (1) the inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). Claimants like Mr. Bracey who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of water into their property was caused by inadequate capacity in MSD's sewer system (a sewer surcharge) and not by overland flooding or blockages in the homeowner's privately-owned building sewer line. (Doc. 131, Consent Decree, Ex. 8 at 1).

Mr. Bracey has not established that the water backup into his basement on March 1, 2017 was caused by inadequate capacity in MSD's sewer system. The level of surcharge identified by

the MSD investigation in the downstream manhole was well below the property's basement level, making it unlikely that the water damage to Mr. Bracey's basement was caused by a backup of the public sewer. There is no evidence that the public sewer overflowed and comingled with the overland flooding on Sunshine Avenue, which sits above Mr. Bracey's property, and flowed down to his property. In addition, the preponderance of the evidence points to overland flooding as the likely cause of Mr. Bracey's basement backup. Media reports showed there was extensive overland flooding on Mr. Bracey's street on March 1, 2017. Mr. Bracey's house is situated in a low-lying area that sustained extensive overland flooding, and given the topography of the area, it was more likely that overland flooding entered Mr. Bracey's basement through the garage and basement doors. Mr. Bracey argues that the doors created a seal to the basement and would not allow water to enter from the outside. However, the photographs submitted by the parties show gaps in the garage and basement doors that likely permitted the flow of water into the basement. In addition, the photograph of the metal weather stripping installed on the basement door shows the weather stripping was installed upside down, with the black rubber strip nailed to the door and not flush with the floor. (Doc. 1762 at 17). Unlike a rubber strip, the rigid metal strip does not create a seal with the floor. In addition, there is a question about the age of the weather stripping. There are no signs of wear, debris, or corrosion on the weather stripping that would be expected for material that had been installed prior to March 1, 2017. The preponderance of the evidence does not establish that the cause of Mr. Bracey's basement backup was inadequate capacity of MSD's public sewer system.

The Court is not unsympathetic to homeowners like Mr. Bracey who experience a basement backup such as occurred in this case. Yet, this Court is bound by the terms of the

Consent Decree in this matter, which places the burden of proof on the homeowner to show that a capacity-related public sewer problem was the cause of the damage to a property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System. In the absence of evidence establishing Mr. Bracey's property damage was more likely caused by a surcharge in the public sewer line and not by overland flooding or some other cause, the Court is constrained to uphold MSD's decision in this case.

Therefore, the Court denies Mr. Bracey's appeal in this case.

**IT IS SO ORDERED**.

Date October 2, 2019

s/ Karen L. Litkovitz
Karen L. Litkovitz, Magistrate Judge
United States District Court