UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>GULFSTREAM INVESTMENTS,<br>LLC |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Gulfstream Investments, LLC ("Gulfstream") (Doc. 1520), the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1618), and Gulfstream's supplemental filing of an expert witness report and additional information (Doc. 1742). On August 20, 2019, the Court held a hearing on Gulfstream's request for review at which Gulfstream agent Curtis Criswell, Gulfstream owner Jeffery Young, expert witness Lee Knuppel, and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk testified and documentary evidence was submitted. (Doc. 1743).

Gulfstream's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. (*See* Doc. 452 at 4; Doc. 454 at 16).

damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

## I. Background

Gulfstream owns the property located at 6622-6624 Crull Street, Newtown, Ohio ("the property"). The property is a multi-family home with three residences. On August 16, 2018, Gulfstream filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on or about February 24 or 25, 2018. (Doc. 1618, Ex. G). MSD denied the claim for property loss, finding the damage was not caused by a sewer backup covered by the SBU program. (*Id.*, Ex. H). Gulfstream disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence presented

MSD presented evidence that from February 18, 2018 and continuing into the first week of March 2018, prolonged rains along the Ohio River led to a significant rise in the water level of the Ohio River and its tributaries. (Doc. 1618, Ex. B). The Ohio River crested at 60.53 feet on the evening of February 25, 2018, marking the Ohio River's 22nd highest level ever recorded. (Doc. 1618, Exs. A, B).[2] The widespread flooding resulted in declarations of emergency from state and local governmental authorities. (Doc. 1618, Ex. B).

On February 25, 2018, MSD received a report that 6624 Crull Street was experiencing a sewer backup. An MSD crew responded the next day to investigate. The crew found the upstream and downstream manholes were currently surcharged at a depth of three feet and the mainline was not open and running. The crew also photographed the area surrounding the property, which showed extensive overland flooding. (Doc. 1618, Ex. C).

Mr. Fronk testified that in the last week of February through the first week of March, MSD received over 50 calls from Newtown residents who reported basement backups. He testified that the Clear Creek Park area in Newtown had extensive flooding, and the manholes downstream of that area were submerged by riverine flooding. Gulfstream's property is located in the 100-year Little Miami River flood plain. Mr. Fronk testified that the FEMA National Flood Hazard Layer FIRMette map depicts the location of Gulfstream's property in relation to Newtown Clear Creek, which is a tributary to the Little Miami River. (Doc. 1618, Ex. E). Mr. Fronk testified that the Little Miami River flood gauge showed historic flooding on February 25,

---

[2] It appears that the Ohio River actually crested on the evening of February 25, 2018, and not February 26, 2018, as MSD represents in its response. (Doc. 1618, Ex. B-Hamilton County Emergency Management memo, PAGEID #: 37013).

3

2018 at 20.43 feet, the ninth highest recorded flood according to the U.S. Geological Survey. (Doc. 1618, Ex. F). He testified that any flooding of the Little Miami River contributes to Clear Creek flooding. Mr. Fronk testified that in determining the cause of the Gulfstream property backup, MSD considered the MSD crew's field reports, the amount of rainfall, the flood levels of the nearby rivers and tributaries, the elevations of the sewer system, and the level of overland flooding. MSD concluded that the cause of the Gulfstream property backup was riverine flooding from the Clear Creek which inundated the public sewer, causing a backup of the sanitary-only sewer system that was connected to the Gulfstream property. Mr. Fronk stated that the downstream manhole that was inundated by the Clear Creek floodwaters is only six-tenths of an inch higher than the basement floor elevation of the Gulfstream property. The surcharge of the downstream manhole, which is connected to the sanitary-only sewer segment to which the Gulfstream property lateral connects, eventually rose in elevation to reach the property. He testified that the flood stage of the Little Miami River peaked in the early morning hours of February 25, 2018, which coincides with the time the sewer backup reached the basement of the Gulfstream property and backed up through the floor drain. He concluded that the source of the water backing up into the Gulfstream property was riverine flooding that entered MSD's sewer system through the Clear Creek manholes.

On cross-examination, Mr. Fronk testified that he had no evidence of overland flooding on Crull Street on or about February 24, 2018. *See also* Doc. 1618, Ex. B at PAGEID# 37017. He stated that as far as he was aware, overland flood waters did not enter the manholes on Crull Street. He also testified that on February 26, 2018, the mainline on Crull Street was not open and running. (*See* Doc. 1742, Ex. C at 4). On March 2, 2018, however, an MSD crew

investigated an alleged backup at 6704 Crull Street, a neighboring property, and found the mainline was open and running and the manhole was not surcharged. The crew also found previous signs of surcharge in the upstream and downstream manholes on that date. (Doc. 1742, Ex. C at 119-122).

Lee Knuppel, a licensed professional engineer, presented an expert report in this case. (Doc. 1742, Exs. A and B). Mr. Knuppel testified that there was a sewer backup at the Gulfstream property that occurred on the evening of February 24, 2018. He stated that the Newtown Fire Department arrived at the property around midnight to pump water from the basement. He further testified that sometime on February 25, 2018, flood waters from the Little Miami River travelled overland and entered the backdoor of the walkout basement at the rear of the property. In his report, Mr. Knuppel concluded:

> Based on the above information it is my opinion that the ground water, associated with a rising Little Miami River, flooded the mainline sewer on Leonard and Crull Streets on 2/24/2019.[3] This flooding caused a 3 feet plus surcharge pressure in the mainline sewer preventing the lateral at 6624 Crull Street from discharging causing a sewage backup into the basement. The overland flooding which followed on the afternoon of February 25, 2018, also flooded the basement due to a walkout doorway, but is unrelated to the sewer backup.

(Doc. 1742, Ex. A at 2).

Curtis Criswell, an agent of Gulfstream, testified that the basement unit of the three-family building at 6622 to 6624 Crull Street backed up on February 24, 2018. He testified that the Newtown Fire Department responded to the property of their own volition and required the tenants to evacuate the property for their own safety. As a result of the backup, Mr. Criswell hired a crew to clean and remediate the property and provided temporary housing for the tenants

---

[3] The year 2019 appears to be a typographical error. There is no dispute the property flooded in the year 2018.

5

in a hotel. Mr. Criswell also testified about the various expenses Gulfstream incurred as a result of the backup. (*See* Doc. 1520, Ex. A).

Jeffrey Young, the owner of Gulfstream, testified that Gulfstream acquired the property in February 2012. While there was a "historic crest" of the Little Miami River at 19.35 feet on May 2, 2012, the property did not flood on this occasion. Mr. Young testified that February 24, 2018 was the first time the property experienced an issue with flooding.

**III. Resolution**

Under the Consent Decree, property owners may recover damages to personal or real property caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1).

Taking first the issue of whether Gulfstream's damages were caused by MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System, counsel for Gulfstream argued that MSD could have prevented the backup in this flood prone area by installing a backflow prevention device. However, counsel has not presented, and the Court is not aware of, any legal authority requiring MSD to install a backflow prevention device on private property that does not meet the conditions of The SBU Prevention Program Plan set forth in Exhibit 6 of the Consent Decree. The SBU Prevention Program Plan requires MSD to provide backflow preventers and pumping systems to property owners who have experienced multiple backups of wastewater in their properties as a result of inadequate capacity in MSD's Sewer System. (Doc. 101-7, Ex. 6, PAGEID# 453). Mr. Young testified that the February 2018 backup was the first backup the Gulfstream property had ever experienced. Therefore, the property would not be

6

eligible for a preventive device under the Consent Decree. In the absence of any other authority mandating that MSD install backflow preventers, the Court cannot find MSD negligent in failing to install a backflow prevention device in the Gulfstream property's private lateral line.

Therefore, the question that remains is whether the damage to the Gulfstream property was caused by inadequate capacity in MSD's Sewer System. As an initial matter, counsel for Gulfstream argued there was a blockage of the mainline on February 24, 2018, which caused the backup of sewer water into the property. Counsel contrasted the conditions on February 24 with those on March 2, 2018, where the mainline was found to be "open and running."

There is no evidence that the MSD mainline was blocked by debris or other matter. The evidence that Gulfstream points to – that the mainline was not "open and running" on February 24, 2018 – does not mean there was a blockage in the mainline. Rather, a mainline that is not open and running signifies a surcharge in the mainline sewer. The fact that the mainline was open and running on March 2, 2018, which coincided with the recess of riverine flood waters, is further evidence that there was not a blockage in the mainline.

There is no question that there was sewer backup into the Gulfstream property on February 24, 2018. The question for the Court is whether that sewer backup was the result of a covered cause under the Consent Decree, i.e., "inadequate capacity."

This Court has previously determined that the inability of MSD's sewer system to convey water from a historically significant river flood does not constitute "inadequate capacity" under the Consent Decree which is compensable under the SBU Program. (Docs. 1562, 1578). The term "inadequate capacity" is not defined in the Consent Decree. However, the Consent Decree contains a provision entitled "Adequate Capacity" that is instructive. (Doc. 131-1 at 48). Under

7

the "Adequate Capacity" provision of the Consent Decree, MSD is required to undertake remedial measures to ensure that MSD's sewer system has a capacity that is consistent with appropriate design standards or is equipped with other measures so as to prevent capacity-related SBUs. (*Id.*). The provision also indicates that a sanitary sewer system has "adequate capacity" when it conveys flow without any capacity-related sanitary sewer overflows "under current and projected future conditions." (*Id.*; *see also* Doc. 131-1 at 27-28). In addition, the Consent Decree requires, *inter alia*, the implementation of remedial measures in response to "wet weather issues." (Doc. 131-1 at 2-3, 48). Similarly, in determining the cause of a backup under the Consent Decree, MSD must consider "wet weather" factors such as amount of precipitation, property SBU history, signs of overland flooding, and topography, among others. (Doc. 131, Consent Decree, Exhibit 8 at 2). Read together, these provisions indicate that the Consent Decree's SBU claims program was intended to address capacity-related issues resulting from wet weather conditions under current and projected future conditions and not from a historically significant river flood that inundates the portions of MSD's sewer system that lie in close proximity to the Ohio River or its tributaries. MSD's sewer system is not designed to convey historic flood waters from the Ohio River and its tributaries and it would be unreasonable to require MSD to design such a system. The Consent Decree was not intended to compensate homeowners for backups resulting from historic river flooding. To require MSD to compensate homeowners under these circumstances would be tantamount to making MSD a no-fault insurer for individuals residing on or around the Ohio River or its tributaries. It would be unreasonable to construe the Consent Decree as requiring MSD – and ultimately Hamilton County ratepayers – to effectively provide flood insurance to residents impacted by riverine flooding.

In the instant case, the preponderance of the evidence shows that the historic flooding of the Little Miami River and, by extension, the Clear Creek likely inundated the nearby sewer manholes near Clear Creek Park, which was downstream from the Gulfstream property, thereby causing a backup of sewer water into the basement of the Gulfstream property. Given the relative elevations of the manholes in the Clear Creek Park area, the elevation of the lower-level of the property, and the approximate river flood level, the Court is persuaded that riverine flooding caused the backup. This is supported by both MSD's evidence and the testimony of Mr. Knuppel. The Little Miami River crested in the early morning hours of February 25, 2018, which coincides with the approximate time that the lower-level of the building flooded. The evidence shows that riverine flooding likely overwhelmed the downstream portion of the public sewer serving the property and caused the backup into the property. As the preponderance of the evidence shows the backup was likely caused by riverine flooding, which does not amount to a backup caused by "inadequate capacity" in the MSD Sewer System under the Consent Decree, the Court is constrained to uphold MSD's decision in this case.

These are not easy cases, and oftentimes the exact cause of a backup may not be known given the available information and circumstances. Under the Consent Decree, MSD is tasked with exercising its good faith reasonable engineering judgment in assessing the cause of a basement backup based on non-exclusive factors such as amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). MSD has done so in this case. The Court is not unsympathetic to the losses sustained by Gulfstream.

However, the undersigned magistrate judge is responsible for ensuring that any costs for damages to private property such as Gulfstream's that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System or MSD's negligence. Gulfstream has not met its burden of showing that the flooding of the property on February 24, 2018 was caused by inadequate capacity in MSD's sewer system or MSD's negligence. The Consent Decree's SBU claims process does not provide a remedy under the circumstances of this case. Therefore, Gulfstream's appeal is denied.

**IT IS SO ORDERED.**

Date: 11/5/19

Karen L. Litkovitz, Magistrate Judge
United States District Court