UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
Plaintiffs,

vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
Defendants.

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

ORDER RE: REQUEST
FOR REVIEW BY
CLAUDETTE DAVIS

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Claudette Davis (Doc. 1777), her supplementation to the Request for Review (Doc. 1800), and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1801). Ms. Davis requests review of MSD's decision on her SBU claim without a hearing. (Doc. 1777 at 2).

Ms. Davis's request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Consent Decree in this case establishes a framework for ensuring that MSD addresses capacity and pollution problems with its sewer system. This framework includes a Sewer Back Up program under which MSD must "take measures to prevent back-ups of the sewer system into residences in Hamilton County, to clean up back-ups when they occur[], and to reimburse residents for damages." (Doc. 454 at 2, citing Doc. 131). The instant matter before the Court involves two SBU programs: the Prevention Program and the Claims Program.[2]

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

[2] Under the Consent Decree, the Magistrate Judge has jurisdiction to hear any matter in dispute between homeowners and MSD arising from the Sewer Back Up program. (Doc. 509 at 1).

The SBU Prevention Program is designed to prevent the occurrence of building backups. Subject to the requirements of the Prevention Program, certain property owners who experience wastewater backups into their buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) are eligible to have systems or devices installed on their property to prevent future wastewater backups. These preventive systems or devices are installed at no cost to eligible property owners who meet the Prevention Program requirements. The Prevention Program is not intended to address water in buildings caused by: 1) overland flooding not emanating from MSD's Sewer System; or 2) blockages in lateral or public sewer lines. (Doc. 131, Ex. 6 at 1). Under the Prevention Program, MSD utilizes a variety of remedial measures to address SBU, including the installation of backflow preventers and pumping systems on private property.

The Claims Process Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups

2

for which MSD is responsible are limited to documented real and personal property. *Id.* Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

## I. Background

Ms. Davis is the owner of the property located at 3017 Westknolls Lane, Cincinnati, Ohio. On July 24, 2019, Ms. Davis filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on July 18, 2019. (Doc. 1801, Ex. F). MSD denied the claim for property loss, finding the damage was not caused by a failure of MSD's sewer system. (Doc. 1801, Ex. G). Ms. Davis disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence

In her request for review, Ms. Davis states that her house has been flooding since 2003, and she has had over 18 floods in her home "due to the sewer back up problem with the City MSD." (Doc. 1777 at 4). She states that she permitted MSD to install two pumps on her property, one in her garage and one in her front yard, but her property continues to flood. Ms. Davis states that on July 18, 2019, her house had a sewer backup. She contacted MSD, which sent someone to check the pumps, and she was advised that the pumps are not large enough to handle heavy rains. Ms. Davis states that MSD has told her this before when workers have come out to her property. Ms. Davis states that her house has a sloped driveway, and water from the 20 other houses up the street enters the driveway from the street. She states that MSD made an appointment to install a larger pump on her property after she submitted her SBU claim, but

3

MSD nonetheless denied her claim because the pumps on her property were in working order. Ms. Davis believes the issue is not whether the pumps are operational but whether the pumps installed on her property are large enough to accommodate the anticipated water flow. Ms. Davis states she has been forced to move out of her house because of the black mold in the lower level of her home. (Doc. 1777 at 4).

MSD presents evidence that Ms. Davis's property sits at the bottom of a large hill and has a recessed driveway with a garage entrance below street level. (Doc. 1801, Exs. C, D). As situated, Ms. Davis's property naturally receives a large amount of surface water runoff from higher elevations during wet weather events. In addition, at the base of the recessed driveway and immediately in front of the garage door is a storm water drain, which was likely installed by the original home builder. In order for the driveway drain to function effectively, storm water would have to pour into the drain faster than the rate at which it could flow under the garage door.

Prior to 2008, the rain gutter downspouts on Ms. Davis's property were tied into the home's private lateral line which, at the time, was a combined line that conveyed both sanitary and storm water. MSD states that during heavy rainstorms, storm water inundated Ms. Davis's property and the lower level would flood given the property's low-lying location, the unique surrounding topographical features, and the flow of water from the downspouts which had been tied into the private lateral.

In 2008, MSD undertook a "Water in Basement (now SBU) Prevention Project" at 3017 Westknolls Lane, Ms. Davis's property. (Doc. 1801, Ex. E). The project included the installation of two residential pumps: one pump conveys storm water and the other conveys

sanitary flow away from the property and into the public sewer. (Doc. 1801, Ex. E). As part of this project, MSD separated the rain gutter downspouts from the building sewer and rerouted them so that the storm water was collected and released downstream from the property and into the public sewer mainline. MSD explains that the two pumps it installed were intended to carry water away from the property during wet weather events. One pump was installed in the garage to convey storm water that could be captured by the driveway drain, and a second pump was installed in the front yard to grind and convey sanitary wastewater from the home to the public sewer. (Doc. 1801, Ex. E). MSD asserts that notwithstanding the installation of these two pumps under the Prevention Program, the property continues to be inundated with storm water during wet weather events due to its low-lying location.

On July 19, 2019, Ms. Davis contacted MSD to report that her property had experienced basement flooding on July 18, 2019. After Ms. Davis's report, MSD contacted BlueChip Plumbing ("BlueChip") to investigate and test the residential pumps. BlueChip called Ms. Davis on Friday, July 19, 2019, and set an appointment for Saturday morning at Ms. Davis's request. BlueChip responded to the property as scheduled. BlueChip inspected the pumps, surveyed the area, and reported:

> Property has recessed drive, heavy rain came down street down driveway through garage, into basement. Inspected both pumps. Both pumps operating as designed. Spoke with MSD and was instructed to upsize pump for storm pump.

(Doc. 1801, Ex. B). BlueChip informed Ms. Davis about upsizing the pump. While Ms. Davis initially rejected installation of a new pump (*Id.*), she subsequently agreed to the installation. On August 12, 2019, BlueChip installed an "upgraded m292 pump" and "pulled out the old (m53) pump." (Doc. 1801, Ex. H at 3).

MSD states that as part of its investigation into the initial report of the July 18, 2019 incident, MSD reviewed its database and determined that no neighboring properties reported sewer backups or residential pump problems on or around July 18, 2019. In addition, MSD points out that in her claim form, Ms. Davis herself acknowledges that the location and layout of the property results in overland flooding during heavy rain. (Doc. 1801, Ex. F).

**III. Resolution**

MSD contends that based on reports from BlueChip and the information reported by Ms. Davis, MSD reasonably determined that the flooding of the property on July 18, 2019, was not caused by an issue within the public sewer. MSD contends there is no evidence to suggest that sewage entered Ms. Davis's property as a result of the July 2019 wet weather event. MSD argues that the report from BlueChip shows the wastewater pump operated as designed, which in turn indicates that sanitary flow was carried away from the property. MSD asserts that the overland flooding resulting from the topographically depressed location of the property falls outside of the Consent Decree terms and is not compensable.

MSD fails, however, to address Ms. Davis's contention that the issue is not whether the pumps installed on her property as part of the Prevention Program were operational; instead, the issue is whether MSD correctly sized the pumps when it devised a preventive solution to Ms. Davis's flooding problems. The Court agrees with Ms. Davis that MSD has not addressed the true issue presented by her claim. The essential issue is whether MSD made errors in devising and implementing a solution for her flooding issues under the Prevention Program, which caused damages to Ms. Davis's property for which MSD is responsible.

The evidence shows that MSD did not make the correct calculations when it undertook to devise and implement a solution to plaintiff's flooding issues, and damage to plaintiff's property resulted. MSD crafted a two-pump solution to Ms. Davis's sewer backup issues - a sanitary wastewater grinder pump and a storm water pump - and one pump was not the correct size needed to accomplish its intended purpose. MSD disputes that this pump - the garage pump - was too small for the task and that plaintiff suffered damages as a result. Instead, MSD characterizes the replacement of the original garage pump with an upgraded, larger pump as part of its ongoing administrative and maintenance efforts under the Sewer Backup Prevention Program. However, the timing of the decision to upgrade the smaller garage pump indicates the decision was made in response to plaintiff's flooding issues. The same day that the plumber from BlueChip investigated the pumps and informed MSD that they were working properly, MSD advised the plumber to install a larger garage pump. MSD's decision to upgrade the garage pump, despite the plumber's finding that both pumps were working properly, supports the logical inference that the original garage pump was insufficient to serve the purpose for which it was installed under the Prevention Program.

The Court concludes that once MSD undertook the responsibility of devising and implementing a preventive solution for plaintiff's flooding issues under the Prevention Program, MSD was responsible for ensuring the pumps were the correct size needed to achieve the purposes of the Prevention Program. The evidence shows that MSD did not install the correct size pumps. It is MSD, not Ms. Davis, who owns and services the pumps, and it is MSD who is therefore responsible for Ms. Davis's damages in this case.

The Court grants Ms. Davis's appeal.

In view of this finding, MSD is granted leave to supplement the record with evidence of the fair market value of the items for which Ms. Davis seeks compensation. MSD should attempt to settle the damages claim with Ms. Davis. If the parties are unable to settle the claim for damages, MSD must notify the Court within 60 days, at which time the Court will rule on the damages claim.

**IT IS SO ORDERED**.

Date: 12/2/19

Karen L. Litkovitz, Magistrate Judge
United States District Court