# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,　　　　　Case No. 1:02-cv-107
　　　Plaintiffs　　　　　　　　　　　　　　Barrett, J.
　　　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.
vs.

BOARD OF HAMILTON COUNTY　　　　　　　　**ORDER RE: REQUEST**
COMMISSIONERS, et al.,　　　　　　　　　　**FOR REVIEW BY**
　　　Defendants　　　　　　　　　　　　　**BEN AND KRISTEN WALTERS**

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Ben and Kristin Walters (Doc. 1770) and the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1798). On December 17, 2019, the Court held a hearing on Mr. and Mrs. Walters' request for review, at which Mr. Walters and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk testified and documentary evidence was submitted. (Doc. 1806).

Mr. and Mrs. Walters' request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(Doc. 131, Consent Decree, Exhibit 8 at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Exhibit 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. (*Id.*).

## I. Background

Mr. and Mrs. Walters are the owners of the property located at 2245 Park Avenue, Cincinnati, Ohio. On July 25, 2019, Mr. and Mrs. Walters filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on May 24, 2019. (Doc. 1798, Ex. C). MSD denied the claim for property loss, finding there was no evidence that the damage to their property was caused by a sewer backup covered by the SBU program. (*Id.*, Ex. D). Mr. and Mrs. Walters disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence

On May 25, 2019, MSD received a report that 2245 Park Avenue had experienced a basement sewer backup on May 24, 2019. MSD crews responded that same day to investigate. The crew reported the "[b]asement floor drain is backed up 1 inch with sewage." The crew also determined that the mainline was open and running; there were no signs of overland flooding; and the lowest level of the building was not higher than the upstream manhole rim. MSD

2

determined that no neighboring properties reported an SBU on or around this date. The crew advised Mr. and Mrs. Walters to call a plumber. (Doc. 1798, Ex. A).

Mr. and Mrs. Walters hired a private plumber who investigated that same day. (Doc. 1806, Pl. Ex. 1). The plumber, using camera technology, discovered a blockage beyond the property line and in the building lateral in the public right-of-way. Mr. Walters called MSD for the second time that day to advise it of the plumber's findings. MSD created an emergency launch work order and dispatched a second crew. The crew rodded and televised the line and discovered a Duke Energy gas line had been bored through the building sewer line in the public right-of-way. MSD determined that a repair crew was needed. Mr. and Mrs. Walters requested that MSD make the emergency repairs the evening of May 25, 2019, but MSD declined to dispatch a repair crew until the next morning given the late hour. Mr. Walters testified that to his knowledge, MSD did not contact Duke Energy to shut off the gas line to the home or inform him that MSD believed the gas line had been cross-bored through the sewer line. MSD issued another work order and repaired the lateral line up to the right-of-way on May 26, 2019. Mr. Walters stated that an MSD crew reported to his property mid-morning on May 26, 2019 to repair the line but did not complete the repair until the afternoon.

MSD presented photographs of the building lateral showing the break in the lateral caused by the gas pipe and the subsequent repair of the lateral. (Doc. 1798, Ex. B). Based on these findings, MSD determined that the gas pipe running through the building sewer in the public right-of-way was the cause of the sewer backup.

Mr. Walters contends that MSD delayed the repair of the broken building lateral, which caused additional damage to his property because with each flush, rinse, shower, etc., more raw

sewage was released from the floor drains into the basement. Mr. Walters asserts that such additional damage would not have occurred had MSD started its repair of the building lateral on May 25, the same day that MSD was notified of the problem. He also alleges that in 2010, MSD began televising all sewer-related assets in locations where new gas lines were being installed. Mr. Walters suggests that MSD should have televised his building sewer line when his gas line was installed, and its failure to do so constitutes "negligent maintenance" under the Consent Decree. (Doc. 1806, Ex. 1, citing https://trenchlesstechnology.com/municipal-sewer-district-embraces-trenchless-maintain-update-aging-infrastructure/).

Mr. Fronk testified that he was familiar with the joint Duke Energy-MSD project to televise building sewer lines. He testified that Duke Energy, not MSD, decided which locations to televise. He stated that MSD obtained the videos produced by Duke Energy but did not perform the actual work. He also testified that the program is no longer operational.

**III. Resolution**

Under the Consent Decree, property owners may recover damages to personal or real property arising from a "backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System" and "arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 131, Consent Decree, Exhibit 8 at 1). Property owners are responsible for the maintenance and cleaning of the building lateral sewer line, which is owned by the property owner and not MSD. (*Id.*). The building sewer lateral line extends from the home, through the public right-of-way, and to the connection with the MSD public sewer. A property owner, and not MSD, is responsible for damage from a basement backup arising from a break or blockage in the building lateral sewer

line, even if such break or blockage is in the public right-of-way. However, when a break or blockage is in the portion of the owner's building lateral sewer line that lies in the public street right-of-way, MSD is generally responsible for the cost and repair of the lateral. MSD's Rules and Regulations provide in relevant part:

> The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer from the building to the point of connection with the public local sewer. Repair and reconstruction of the *building sewer in a public street right-of-way* or within the specified width of a recorded public easement *shall be the responsibility of the District except as follows*. . . . It shall be the responsibility of the owner or his agent to establish, by means of a valid sewer cleaner contractor's receipt, that such a repair or reconstruction is the responsibility of the District. The District shall have the right to verify the sewer cleaner's finding prior to beginning repair or reconstruction. . . .

(Doc. 1089, Ex. C, Section 2008, MSD Rules and Regulations) (emphasis added). MSD undertakes repairs in public right-of-way laterals to ensure proper, safe, and consistent repairs. MSD has previously advised the Court that it undertakes repairs in right-of-way laterals because local municipalities "do not want local roads being subject to unsafe and inconsistent repair by private citizens." (Doc. 151 at 5).

In this case, the preponderance of the evidence shows that the cause of the May 24, 2019 sewer backup to Mr. and Mrs. Walters' property was not a surcharge of the public sewer or MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. Rather, the evidence shows that the cause of their basement flooding was a breakage in their building lateral caused by a Duke Energy gas line that bore through the lateral. Mr. Walters contends that had MSD videoed the lateral as part of the joint Duke Energy-MSD project, the damage to his property in May 2019 could have been avoided. However, the evidence shows that Duke Energy, and not MSD, determined which building laterals to televise. Therefore, MSD was not

5

obligated to video building laterals as part of the project. MSD's failure to do so would not constitute "negligent maintenance" under the Consent Decree.

In addition, Mr. and Mrs. Walters, like all homeowners, were responsible for maintaining a clean, workable building lateral. MSD is not responsible for sewer repairs or backups resulting from a broken lateral in the public right-of-way until such time as it receives proper notice in the form of a valid plumber's receipt from the property owner. When MSD receives such notice, this Court has determined that MSD is required to make the repairs in a timely manner. There is no evidence that Mr. and Mrs. Walters ever provided MSD with a plumber's receipt identifying a break in the right-of-way lateral *prior* to the incident on May 24, 2019. MSD was notified on May 25, 2019, the day after the incident, and made the repair the next day.

Finally, MSD did not negligently delay its repair of Mr. and Mrs. Walters' building sewer. Once MSD confirmed the private plumber's finding of a break in the right-of-way lateral, MSD issued work orders to repair the lateral. Mr. Walters alleges that MSD should have undertaken the repair on the evening of May 25 and not waited until the following day. He alleges that continued use of the household plumbing that evening caused additional property damage. However, Mr. Walters' basement had already been flooded with sewage on the evening of May 25, and he has not presented evidence that use of the plumbing in the intervening hours until the repair was made on May 26 caused additional property damage. MSD's decision to proceed with the repair on May 26 and not the evening of May 25 was not unreasonable or negligent. The Court finds that MSD performed the repair work in accordance with its obligations under its Rules and Regulations. This is not a situation where MSD failed to make the repairs in a timely manner and property damage to the homeowner from a

subsequent backup resulted.

Under the SBU program governed by the Consent Decree, homeowners who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was due to inadequate capacity in MSD's sewer system or to MSD's negligent maintenance, destruction, operation or upkeep of the sewer system, and not due to blockages or breaks in the occupant's own lateral sewer lines. (Doc. 131, Consent Decree, Exhibit 8 at 1). The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System or MSD's negligence. Mr. and Mrs. Walters have not met their burden of showing that the wastewater backup into their basement on May 24, 2019 was caused by inadequate capacity in MSD's sewer system or MSD's negligence. The preponderance of the evidence presented in this case indicates Mr. and Mrs. Walters' sewer backup was caused by a break in the lateral that resulted when a Duke Energy gas line bore through the lateral. MSD was not responsible for the lateral break or for discovering the lateral break prior to May 24, 2019, the date of the backup. Therefore, Mr. and Mrs. Walters' appeal is denied.

**IT IS SO ORDERED.**

Date: 1/17/2020

Karen L. Litkovitz, Magistrate Judge
United States District Court