# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br>     Plaintiffs, <br><br> vs. <br><br> BOARD OF HAMILTON COUNTY <br> COMMISSIONERS, et al., <br>     Defendants. | Case No. 1:02-cv-107 <br> Barrett, J. <br> Litkovitz, M.J. <br><br><br> **ORDER RE: REQUEST** <br> **FOR REVIEW BY** <br> **BRYAN YOUNG** |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Bryan Young (Doc. 1606), the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 1668), MSD's Supplemental Responses and Exhibits (Docs. 1702, 1739, 1887), and Mr. Young's Supplemental Responses and Exhibits (Docs. 1708, 1738, 1745, 1890). On May 21, 2019 and February 4, 2021, the Court held hearings on Mr. Young's request for review at which Tom Fronk, MSD Engineering Technical Supervisor, and Mr. Young testified and documentary evidence was submitted. (Docs. 1668, 1886).

Mr. Young's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

> address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id*. at 1).  In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography.  (Doc. 131, Consent Decree, Ex. 8 at 2).  Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property.  *Id*.  Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review.  (Docs. 154, 190).

**I. Background**

Mr. Young is the owner of the property located at 312 Delmar Avenue, Cincinnati, Ohio.  Mr. Young seeks compensation for personal and real property loss sustained at the property on August 28, 2016, due to an alleged public sewer backup.  (Doc. 1606).  On August 28, 2018, Mr. Young filed an SBU claim with MSD for losses to his property.  MSD denied the claim, finding that the damage to the property was caused by overland flooding and not a backup of MSD's public sewer.  (Doc. 1606, PAGEID 36807; Doc. 1668, Ex. E).  Mr. Young disagreed and filed this appeal.  (Doc. 1606).

**II. Evidence**

On August 28, 2016, the area in which Mr. Young's property is situated experienced heavy rainfall.  On the evening of August 28, 2016 and the following morning, Mr. Young

reported a basement backup to MSD.[2]  Due to the overwhelming number of calls for service resulting from the August 28, 2016 weather event and MSD's mistaken entry of Mr. Young's address into its system, MSD crews were unable to investigate Mr. Young's report when he initially made the report.  After Mr. Young filed his SBU claim, MSD investigated and determined that Mr. Young's basement flooding was not caused by a surcharge of the public sewer but was likely caused by overland flooding not emanating from MSD's public sewer.

MSD Engineering Technical Supervisor Tom Fronk presented a map depicting an 8-inch MSD sanitary sewer line that connects to Mr. Young's property.  (Doc. 1682, Ex. B).  Mr. Fronk testified that Mr. Young's house is tied into the head-end segment of this 8-inch sanitary-only sewer on Delmar Avenue, with only four houses upstream of his property.  (*Id.*).  Mr. Fronk explained that as a result, the segment of the sewer line to which Mr. Young's property connects receives very little additional flow from upstream, reducing the likelihood of a backup from the public sewer.  Mr. Fronk also testified that Mr. Young's home is not connected to a combined sanitary and stormwater sewer, meaning MSD's public sewer receives no additional storm flow into the sewer.  The map also depicts a 12-inch storm sewer on Delmar Avenue, which is owned and operated by the City of St. Bernard and not MSD.[3]  This storm sewer is designed to drain excess rainwater from impervious surfaces such as paved streets.  (Doc. 1668, Ex. B).  Mr. Fronk testified that none of the other homes on Delmar Avenue or Langley Avenue, which runs perpendicular to Delmar Avenue, reported a sewer backup.  The building lateral lines of the homes on both streets are tied into the same 8-inch sanitary sewer serving Mr. Young's home.

---

[2] MSD does not dispute that Mr. Young made a timely report of a sewer backup.
[3] In 2019, the City of St. Bernard implemented a street improvement project on Delmar Avenue, and the 12-inch storm sewer was upgraded to a 15-inch storm sewer.

3

Mr. Fronk testified that there were also signs of overland flooding, including photographs of damage to the cellar doors leading to the property's basement.  Mr. Fronk also viewed Mr. Young's request for compensation for exterior items as evidence of overland flooding.  (Doc. 1668, Ex. C).  Mr. Fronk further testified there are no sewers located at the back of the property, which sits up on a hill.  Mr. Fronk testified that this eliminated the possibility that sewer water and overland flooding commingled, a factor MSD considers in its investigation of potential sewer backups.

Mr. Young testified that on the evening of August 28, 2016, he received a telephone call summoning him to the St. Bernard Fire Department, where he is employed, to assist in the emergency response to widespread flooding in the area.  Before leaving for work, he checked his basement, observed water coming up from the floor drain, and discovered about 4 inches of water on the basement floor.  Mr. Young submitted a letter from his son, Brayden Young, who made the same observation.  (Doc. 1682, Ex. 6).  Mr. Young testified that the water rose to a level of 12 inches before it began to recede.  He further testified that when he left for the firehouse that same evening, he observed water shooting out of the manhole lid in front of his house.  This manhole is depicted by the green dot slightly to the east of his house on the 8-inch sewer line on MSD's map.  (Doc. 1682, Ex. B).  Mr. Young testified that contrary to Mr. Fronk's testimony, there was at least one additional home on his block that experienced a sewer backup. Mr. Young testified that the homeowner at 308 Delmar Avenue, two doors to the west of Mr. Young's home, did not report the backup because his basement was unfinished and the damage was limited.  Mr. Young testified that other homes in the immediate vicinity also experienced a sewer backup on August 28, 2016.  He submitted a photograph of an aerial view of Delmar

4

Avenue and the surrounding streets depicting several homes that also had basement flooding. (Doc. 1682, Ex. 3). This included 150 Delmar Avenue. The owner of 150 Delmar Avenue, Harvey Baur, wrote in a letter that he also had water in his basement on August 28, 2016, but he did not file an SBU claim with MSD as his insurance covered all of his expenses. (*Id.*, Ex. 5). In further support of his appeal, Mr. Young submitted a schematic of his basement showing the locations of his floor drains (*Id.*, Ex. 4); a photograph depicting the drywall removed from his basement (*Id.*, Ex. 7); a photograph depicting the City of St. Bernard street improvement project whereby the downspouts and yard drains from the homes on Delmar Avenue had been disconnected from the "sanitary sewer" line to tie into the "stormwater sewer" line (*Id.*, Ex. 9); and a map depicting the area of sewer collapse in the vicinity of Roger Bacon High School in St. Bernard (*Id.*, Ex. 10).

Mr. Young disputes that overland flooding caused his basement backup. He testified that his house sits approximately four feet above street level, and he questions how overland flooding could have risen to a level that caused his basement to flood. He submitted a photograph of his house showing its elevated position in relation to the street. (*Id.*, Ex. 8). He also testified that he observed water bubbling out of an area drain on his backyard patio. He testified that this drain is connected to the internal plumbing and private lateral sewer line serving his home. Mr. Young stated that he believes the water emanating from this drain overflowed to the wooden cellar doors and man-doors below the cellar doors, causing damage to those doors. He testified that his downspouts are also tied into the building lateral and indoor plumbing. He testified that his home is on a "combined" sewer line, meaning that all of the stormwater from his downspouts and patio area drain, as well as sanitary water from the indoor plumbing, flows into MSD's 8-

5

inch public sewer line. Mr. Young testified that MSD's map depicts a green line labeled "sanitary sewer" (Doc. 1668, Ex. B), but it is actually a "combined" sewer line. He testified that stormwater from downspouts and property drains from all of the homes on Delmar Avenue flow into this single sewer line. The blue sewer line depicted on MSD's map, which is labeled as a stormwater sewer, collects water from the street only and not from the homes on his street. In further support of his assertion that his property is served by a combined sewer, Mr. Young presented an MSD fact sheet entitled "August 28, 2016 Flooding Event" and press release. Both state, "The worst rain – up to 5.5 inches in two hours – fell on Norwood, St. Bernard and neighborhoods in eastern and central Cincinnati, which are all on a combined sewer system that carries both rainwater and sewage in the same pipe." (Doc. 1682, Exs. 1, 2).

Finally, Mr. Young testified that Servpro, an MSD contractor, was dispatched to his property and performed cleaning services. He testified that the cleaning company sanitized his basement, threw out contaminated items, and cut 18 inches of drywall from his finished basement walls.

Mr. Fronk testified that the MSD Fact Sheet and Press Release, both of which represent that St. Bernard is "on a combined sewer system," are "generic" and intended to provide the public with only general information. He testified that this is not evidence that Mr. Young's property is in fact served by a combined sewer system.

Mr. Fronk further testified that based on Mr. Young's testimony that his property's downspouts and yard drain tie into the building sewer, it is likely that storm water from those sources overwhelmed the building lateral line and backed up into the basement. He stated that water emanating from a basement floor drain is not necessarily indicative of a surcharge of the

6

public sewer. Stormwater that enters a building sewer from downspouts and yard drains can inundate the building sewer line and also be released through floor drains. Mr. Fronk also explained that an 8-inch sanitary only sewer is not constructed to accommodate additional stormwater. Mr. Fronk testified that stormwater connections, such as downspouts and yard drains, are illegal and not to code. However, he admitted that when Mr. Young's house was built in the early 1900s there were no regulations governing such stormwater connections. Mr. Fronk also stated that while the majority of the sewers in St. Bernard are combined sewers, the one serving Mr. Young's property is not one of them. Mr. Fronk did not believe the other properties identified by Mr. Young were relevant to the cause of his backup because of either their distance downstream from 312 Delmar Avenue or their location on a separate sewer line.

Following the first hearing, and at the request of the Court, both parties submitted additional information. Mr. Young had identified the property located at 4343 Errun Lane as a nearby property that experienced an SBU on August 28, 2016 and settled its claim with MSD. MSD presented evidence that the property on Errun Lane is connected to a completely separate public sewer than the one serving Mr. Young's home. Therefore, any sewer backup at 4343 Errun Lane is unrelated to the cause of the backup at Mr. Young's home. (Doc. 1702, Ex. J).

The Court also requested information on 150 Delmar Avenue, another property Mr. Young identified as reporting an SBU. MSD confirmed that the owner of 150 Delmar Avenue reported a sewer backup associated with the August 28, 2016 rain event. (Doc. 1702, Ex. K). MSD provided additional information that the homeowners at 144 and 146 Delmar Avenue also reported backups. An MSD crew investigated the SBU at 144 Delmar and reported the upstream manhole had surcharged. (Doc. 1702, PAGEID 39953). MSD "could not determine whether the

7

flooding at 144 and 146 Delmar Avenue likely were caused by overland flooding that overwhelmed the public sanitary-only sewer connected to those properties, and thus offered to settle those claims." (Doc. 1702, PAGEID 39929). MSD contends that the reported backups at these properties are not relevant to Mr. Young's property. MSD reports that "320 Delmar Avenue" sits at a higher elevation and is 700 feet upstream from those other Delmar properties.[4] (Doc. 1702, PAGEID 39929, Ex. J).

The Court also sought information on whether MSD was involved in the Delmar Avenue street project and whether MSD's 8-inch sewer line was part of this project. Mr. Young and MSD both indicate that they spoke to Thomas Paul, St. Bernard's Service Director, regarding this project. Mr. Young represents that he was advised the project was "to separate the Combined Sewer System into separate Storm and Sanitary Sewer Systems." (Doc. 1708 at 3). MSD represents that it was advised the "street rehabilitation project on Delmar Avenue did not involve MSD or the 8-inch sanitary-only sewer. The project included work on the St. Bernard storm sewer, which work was performed by The Village of St. Bernard in connection with Greater Cincinnati Water Works' Stormwater Management Utility." (Doc. 1702 at 3).

Because the conflicting evidence presented at the hearing and Mr. Paul's purported representations called into question the type of sewer or sewers serving Mr. Young's residence, the Court requested additional information. MSD submitted the declaration of Ryan Welsh, Chief Engineer for MSD. Mr. Welsh stated he researched the sewers serving the property located at 312 Delmar Avenue and stated:

> I confirmed that on August 28, 2016, the Property was not connected to a combined sewer. The Property was connected to an 8-inch sanitary-only sewer, which MSD maintains. The Property was also connected to a separate storm sewer which is

---

[4] Mr. Young's property is located at 312 Delmar Avenue.

8

>maintained by the Village of St. Bernard, and which is designed to drain excess rainwater from impervious surfaces such as paved streets.

(Doc. 1739, Ex. M). MSD also submitted records from St. Bernard regarding the Delmar Avenue street rehabilitation project. The plans for that project included pavement and curb work and replacement of St. Bernard's 12-inch storm sewer with a 15-inch storm sewer. The scope of the project did not involve any work on the separate, existing 8-inch "sanitary-only" sewer, which is maintained by MSD. (Doc. 1739, Ex. N).

Mr. Young submitted a CAGIS map that he states he obtained from the Cincinnati Water Works Department. (Doc. 1738, PAGEID 40670). This map clearly labels the sewer serving 312 Delmar Avenue as a "combined sanitary/storm sewer." (*Id*.). Mr. Young also submitted additional materials from a City of Cincinnati website about "the historic rainstorm of August 28." That document reiterates that "[t]he worst rain fell in Norwood, St. Bernard and neighborhoods in eastern and central Cincinnati, which are all on a combined sewer system that carries both rainwater and sewage in the same pipe." (*Id*., PAGEID 40673). Additionally, Mr. Young submitted a letter dated August 16, 2019, stating:

>I do agree that there is a separate Storm Sewer that may be maintained by the Village of St. Bernard which was tied to the Curb Drain across the street from my house on Langley Avenue. Part of the Delmar Avenue Street Project replaced the old 12" Storm Sewer with a new 15" Storm Sewer, this project also added a Curb Drain in front of my home and new PVC lines that connect the residential downspouts to the Curb Drains and the new 15" Storm Sewer. The project did not replace the 8" Combined Sanitary/Storm Sewer but did tie the downspouts to the new 15" Storm Sewer.

(Doc. 1745, PAGEID 40953).

On February 4, 2021, the Court held a supplemental hearing on Mr. Young's SBU claim. Mr. Young presented a map depicting the St. Bernard Delmar Avenue project to replace the St.

9

Bernard 12-inch storm sewer with a 15-inch storm sewer and to connect homeowners' downspouts and yard drains to this larger storm sewer. (Doc. 1886, Ex. A). Mr. Young testified that up to that point, the homes on his street had downspouts and yard drains that connected to the homes' building sewer/laterals, which in turn connected to MSD's 8-inch public sewer. Mr. Young describes MSD's sewer as a "combined" sewer because MSD's 8-inch public sewer received both sanitary flow from homes as well as storm flow from downspouts and yard drains. Mr. Young also presented evidence of "smoke and dye testing" performed by MSD in the late 1990s, which showed that other homes on nearby streets that connected to the same MSD sewer on Delmar Avenue also had downspouts and area drains connecting to building laterals tied into that sewer. (Doc. 1886, Ex. B).

Mr. Fronk testified it is "possible" that the CAGIS map previously submitted by Mr. Young mistakenly labeled MSD's sewer line as a combined storm/sanitary sewer. Mr. Fronk stated that the "record drawing" of the sewer system previously submitted by MSD (Doc. 1739, Ex. M, PAGEID 40682), which is from the early 1900s, is the official record of the location of the sewers. Based on this information, Mr. Fronk stated that "MSD is fairly certain this is a sanitary sewer." Mr. Fronk also testified that downspouts and area drains that are tied into a private homeowner's building sewer/lateral line are unauthorized under MSD rules and regulations. He stated that sanitary sewers are "sized" to accept flow from sanitary sources, not stormwater sources, and are not big enough to handle large amounts of storm water. Mr. Fronk testified that there is a distinct possibility that storm water entering Mr. Young's building sewer line from the downspouts or yard drain connected to that line overwhelmed the building sewer and backed up through the basement floor drains. He testified that MSD is not authorized to

10

disconnect illicit connections to a private building sewer, and MSD does not have the resources "to fully take on" the building sewers that are owned and maintained by private homeowners and not MSD. MSD contends there is no evidence that MSD's 8-inch sewer line, whether characterized as a "combined" sewer or "sanitary" sewer, ever surcharged to cause the backup to Mr. Young's basement on August 28, 2016. Mr. Fronk reiterated that overland flooding, as evidenced by the damage to Mr. Young's cellar doors and exterior, likely contributed to Mr. Young's property damage.

In response, Mr. Young again disputed that overland flooding contributed to his property damage. He stated that his house sits up on a hill, limiting the likelihood of overland flooding, and asserted the surcharging water from the area drain on his back patio caused the damage to the cellar doors. He reiterated that other homes on the same MSD 8-inch sewer line serving his property had basement backups, including 150 Delmar Avenue. He also testified he observed two feet of water at the nearby intersection of Tower and Delmar Avenues on August 28, 2016 and water coming up from the MSD sewer manhole lid in front of his home. Mr. Young testified that his house was built in 1918; downspout and area drain connections to building sewers were not illegal when the home was built; these connections were typical of home construction at that time; and the rules MSD now relies on were not in effect at the time his house was built.

### III. Resolution

Under the Consent Decree, property owners may be compensated for personal or real property damage caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation, or upkeep of the Sewer System. (Doc. 131, Consent Decree, Exhibit 8 at 1). Claimants like Mr. Young who seek review of the denial of an

11

SBU claim bear the burden of proof of showing that the backup of wastewater into their property was caused by inadequate capacity in MSD's sewer system (a sewer surcharge) and not by overland flooding or blockages in the homeowner's privately-owned building sewer line. (Doc. 131, Consent Decree, Ex. 8 at 1). The Court finds Mr. Young has met his burden in this case.

As an initial matter, the Court notes that under the Consent Decree that governs the Court's review of SBU appeals, the provision of cleanup services under this program does not constitute an admission of liability by MSD with regard to any claims that the occupant may have against MSD for real or personal property damage caused by the building backup. (Doc. 131, Ex. 7 at 4). MSD will provide cleanup services when doubt exists about the cause of the backup after an initial investigation due to the health risks posed by floods and water damage. (Doc. 640, Ex. B). Therefore, the fact that MSD provided this cleaning service to the property at 312 Delmar Avenue is not evidence that the water in Mr. Young's basement was the result of a backup of the public sewer.

It is undisputed that generally a combined storm/sanitary sewer is more likely to surcharge during a severe weather event than a sanitary-only sewer. Whether the MSD public sewer connected to Mr. Young's building lateral on August 28, 2016 was a "combined" sewer or "sanitary-only" sewer is disputed. Mr. Young has presented a Cincinnati Water Works Department CAGIS map that labels the public sewer as a "combined storm/sanitary" sewer. He also presents MSD press releases and website information indicating the City of St. Bernard is served by a combined sewer system. In contrast, MSD has presented maps which label the public sewer line connected to Mr. Young's building lateral as a "sanitary" sewer. Mr. Fronk testified that MSD is "fairly certain" this is a sanitary sewer line. The evidence in this case on

12

the nature of MSD's sewer is inconclusive. Therefore, the Court relies on other evidence in its decision.

The Court is not persuaded by MSD's evidence that overland flooding was the likely source of water damage to Mr. Young's basement. MSD presented evidence that Mr. Young's house is located near the head-end of the public sewer line on Delmar Avenue and receives little flow from the four properties to the east, thus reducing the likelihood of a surcharge. However, this evidence is misleading because it fails to account for the additional sewer flow from Langley Avenue, which runs perpendicular to Delmar Avenue. The public sewer on Langley Avenue connects to the one on Delmar Avenue at the manhole juncture directly in front of Mr. Young's house. Therefore, the fact that Mr. Young's property may not receive significant flow from the homes upstream on Delmar Avenue does not negate or address the amount of flow the property receives from the Langley Avenue sewer, which connects to the Delmar Avenue sewer directly in front of Mr. Young's house.

In addition, in previous cases before the Court, MSD has cited the following factors as evidence of overland flooding to deny SBU claims: the presence of grass and debris lines in driveways or adjoining sidewalks; the presence of debris lines on garage doors or exterior building walls; relative elevations showing the property in question sits in a low lying area that is susceptible to overland flooding from higher elevations during wet weather events; and the presence of a recessed driveway serving the property, which facilitates the flow of street flooding to the property. None of these factors are present in this case. MSD points to cellar door and exterior damage to Mr. Young's property as evidence of overland flooding. But Mr. Young

13

credibly testified that this damage was caused by the surcharging of the area drain on his backyard patio, which he observed "bubbling up" on the relevant date.

Given the magnitude of the August 28, 2016 storm, MSD was understandably unable to contemporaneously investigate all of the reports it received regarding potential sewer backups, including Mr. Young's. Nevertheless, the information regarding other homes on Delmar Avenue provides evidence of one likely cause of Mr. Young's basement backup. MSD received reports of sewer backups at 144, 146, and 150 Delmar Avenue. MSD was able to contemporaneously investigate the backup at 144 Delmar, and an MSD crew found signs of surcharge in the public sewer from the August 28, 2016 rain event. MSD settled the claims involving 144 and 146 Delmar Avenue, finding the backups were likely caused by overland flooding that overwhelmed the public sanitary-only sewer connected to those properties.

MSD argues that the SBUs at these properties are not relevant to Mr. Young's property given the relative elevations of the involved properties. MSD asserts that 144, 146, and 150 Delmar Avenue sit at an elevation 14 feet lower than "320 Delmar Avenue." As a result, MSD would anticipate that those homes would have reported much higher levels of SBU if "320 Delmar Avenue" experienced an SBU from a surcharge in the public sewer. It is not clear, however, why MSD evaluated the property at 320 Delmar Avenue. Mr. Young's property is located at 312 Delmar Avenue. In any event, the relative elevations of the topography of those properties say nothing about the relevant manhole lid elevations in the area of 144, 146, and 150 Delmar Avenue and how they compare to Mr. Young's basement floor elevation, information that MSD has provided in the past as the relevant points of comparison. Nor does the elevation information account for any additional flow from the public sewer on Langley Avenue, which

runs perpendicular to Delmar Avenue and connects to Delmar Avenue at the manhole directly in front of Mr. Young's house. Mr. Young credibly testified that he observed water shooting out from this manhole on the evening of August 28, 2016, which is a clear sign of sewer surcharge. Mr. Young also testified that his neighbor located two homes to the west also experienced basement flooding from the August 28, 2016 storm. This information, in addition to the information regarding the other properties on Delmar Avenue, supports a finding of a surcharge of the public sewer.

MSD also points to the connections of the downspouts and backyard area drain to Mr. Young's building lateral and argues it is likely that additional stormwater from these sources overwhelmed the building lateral, resulting in a discharge of water and sewage into the basement from the floor drains. MSD contends that these illicit connections contravene MSD rules and regulations, and it is the responsibility of the homeowner to remove them. Mr. Young counters that his house was built in 1918; all the homes on his street were constructed with these connections, which was typical of home construction at that time; there were no such regulations prohibiting this type of construction at that time; and the City of St. Bernard, not homeowners, instituted a project to remove these connections in 2019.

It is likely that these storm connections to Mr. Young's home contributed to the discharge of water into his basement. By logical extension, it is likely that all of the homes on Delmar Avenue, which had these same connections (prior to 2019)—including those with SBU claims MSD settled (144 and 146 Delmar Avenue)—added to the overflow of MSD's public sewer. MSD settled claims for homes on Delmar Avenue which are in close proximity to Mr. Young's property and are served by the same public sewer line. There is an absence of persuasive

15

evidence supporting MSD's claim of overland flooding, which was the original reason for denying Mr. Young's SBU claim. Mr. Young credibly testified that he observed water shooting out of MSD's manhole lid in front of his house, which is unlikely to have occurred in the absence of an overload of the public sewer. While this is a close case, the balance tips in favor of Mr. Young's appeal as the preponderance of the evidence shows that a surcharge of MSD's public sewer was more likely than not a cause of water in Mr. Young's basement. Therefore, the Court sustains Mr. Young's appeal.

In view of this finding, MSD is granted leave to supplement the record with evidence of the fair market value of the items for which Mr. Young seeks compensation. MSD should attempt to settle the damages claim with Mr. Young. If the parties are unable to settle the claim for damages, MSD must notify the Court within 60 days, and the Court will then rule on the damages claim.

**IT IS SO ORDERED**.

Date: 3/16/2021

Karen L. Litkovitz, Magistrate Judge
United States District Court