UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>  Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>  Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>CHERYL AND MICHAEL<br>ISAACS |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Cheryl and Michael Isaacs (Doc. 1863), the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1875), and MSD's supplemental response (Doc. 1899). On June 16, 2021, the Court held a hearing in this matter at which Cheryl Isaacs, Michael Isaacs, and Jeff Way, a Senior Adjuster with Sedgwick, MSD's adjuster in SBU cases, testified.

**I. Background**

The Isaacs' request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(*Id*. at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id*. Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Cheryl and Michael Isaacs own the property located at 3801 Colerain Avenue, Cincinnati, Ohio. On February 24, 2018, the Isaacs experienced a sewer backup into their basement which resulted in damage to their personal and real property. The only issue in this case is the amount of damages for the Isaacs' property loss. MSD employed Sedgwick, a national claims adjuster, to review the Isaacs' damages claim and documentation provided in support. Sedgwick employed commercially accepted standards to evaluate the real and personal property damages and depreciated the value of personal property, based on the age, condition, and value of each claimed item. Sedgwick prepared a Statement of Loss and Content Analysis reflecting its analysis of the Isaacs' claim for damages. (Doc. 1857, Exs. D and F). Based on this analysis, MSD offered $22,419.51 to the Isaacs as compensation for their claim. The Isaacs rejected the offer and filed this appeal.

Following the June 2021 hearing on the Isaacs' appeal, the Isaacs and MSD attempted an informal resolution of this matter. The Isaacs provided additional information on "used" pricing information for two items of their personal property: the Neon Art and Jobo Autolab. Sedgwick accepted the updated prices, and MSD increased the amount of compensation for these items. Sedgwick determined the depreciated value of the Isaacs' compensable, personal property increased from $12,776.05 (Doc. 1875, Exh. D) to $13,248.55 (Doc. 1899, Exh. F). MSD revised its offer to $22,892.01 (Doc. 1899, Exh. F), which the Isaacs rejected. The Court held several informal telephone conferences with the parties about items of property which were still in dispute. The Isaacs provided further information and requested MSD reconsider the following five personal property line items: Jobo Autolab, refrigerator, Neon Art, table full of photo prints ("Print Photos"), and "Darkroom/Film and paper from Refrigerator" ("Print Materials"). Based on this additional information, MSD increased its offer for the professional prints prepared by Mr. Isaacs, a professional photographer specializing in black-and-white images, but declined to reconsider the value of the four other items.

## II.  Resolution of Personal Property Claim

Damages for SBU claims are determined based on the market value of personal property *as of the date of loss* (the depreciated value) and not on the original purchase price or cost of replacement. MSD valued the Isaacs' lost items by applying depreciation based on each item's age and/or market value. Sedgwick Senior Adjuster Jeff Way testified about the industry standards and the method of depreciation used in this case. The Court finds the depreciation methodology used by Sedgwick, as explained by Mr. Way at the hearing, is reasonable and appropriate.

MSD's Content Analysis sets forth an itemized list of the personal property for which the Isaacs seek damages. (Doc. 1899-1 at PAGEID 45708-45709). With the exception of the five items listed above, the Isaacs have not presented any evidence to dispute the value assessed by MSD. The Court finds the value assessed by MSD to be fair and reasonable and awards $5,813.55 for the items of personal property listed, excluding the Jobo Autolab, refrigerator, Neon Art, Print Photos, and Print Materials. The Court addresses each of those items in turn.

1. Jobo Autolab 3000 Automated Film Processor

The Isaacs' Jobo Autolab 3000 model is no longer manufactured. Therefore, the Isaacs initially submitted information on the purchase price of an ATL 2500 model in the amount of $6,900.00. According to the manufacturer, the ATL 2500 was the closest replacement unit to the Jobo Autolab 3000 model. (Doc. 1875-3 at PAGEID 45397). Sedgwick accepted this price and applied depreciation of 75% based on the age of the Jobo Autolab, resulting in an adjusted value of $1,725.00. The Isaacs subsequently provided MSD with additional information regarding the price for a used Jobo Autolab in the amount of $2,000.00. MSD ultimately accepted the used price amount of $2,000.00 without applying depreciation.

Mrs. Isaacs testified that they could not replace the Jobo Autolab with the $2,000.00 offered by MSD, and they would not purchase a used automated film processor given the unknown condition of the internal electronics. Under the Consent Decree, however, the Court is unable to award the replacement value of items lost as a result of a sewer backup. The SBU program reimburses used personal property loss at the depreciated value or market value rather than replacement value. Therefore, the Court awards compensation in the amount of $2,000.00 for the used Jobo Autolab.

4

2. Refrigerator

The Isaacs provided a price of $600.00 for the refrigerator. (Doc. 1875-3 at PAGEID 45397 and Doc. 1899-1 at PAGEID 45708). As this item was used, and not new, on the date of loss, Sedgwick applied standard depreciation of 75% based on the age of the refrigerator. This methodology under the SBU program was proper. Therefore, the Court awards an adjusted value of $150.00 for the refrigerator.

3. Neon Art

The Isaacs originally provided a price of $350.00 for the Neon Art. (Doc. 1875-3 at PAGEID 45397). Sedgwick depreciated the Neon Art by 75% to arrive at an adjusted value of $87.50. The Isaacs subsequently provided MSD with additional information that the used price for the Neon Art was $285.00. MSD ultimately accepted the used price amount of $285.00 without applying depreciation. Under the Consent Decree, MSD must reimburse personal property loss at the depreciated value or market value of a used item rather than replacement value. Therefore, the Court awards compensation in the amount of $285.00 for the Neon Art.

4. Print Photos

The Isaacs originally provided a price of $10,000.00 for the loss of a table full of print photos Mr. Isaacs produced in his professional work. (Doc. 1875-3 at PAGEID 45397). Based on additional information the Isaacs recently provided, MSD agreed to increase its original offer for the Print Photos from $2,500.00 to the Isaacs' full estimated amount of $10,000.00 (without depreciation). The Court finds this amount fair and reasonable and awards $10,000.00 for the Print Photos.

    5. <u>Print Materials</u>

The Isaacs estimated the value of the "Darkroom/Film and paper from Refrigerator" at $10,000.00. (Doc. 1875-3 at PAGEID 45398 and Doc. 1899-1 at PAGEID 45709). MSD accepted the Isaacs' estimated values and applied 75% depreciation to arrive at a $2,500.00 adjusted value for the Print Materials.

Mrs. Isaacs testified that the photographic materials lost were "irreplaceable." She testified that her husband has worked for over 50 years as an artist and photographer and has accumulated a "lifetime" of rare silver paper and film that no longer exist. These materials were stored in a temperature controlled refrigerator for special projects.

Mr. Isaacs testified that these materials included silver paper and film that is no longer manufactured and the only way to replace them would be to make them himself. He testified that these special materials are required to make high quality black and white images and archival photography, similar to those created by the artist Ansel Adams, with whom he studied.

In response to the Court's questions, Mr. Way testified that the insurance industry relies on claimant information to evaluate items no longer made or sold like the darkroom film and paper. He testified that it is standard to apply depreciation unless the item is considered an antique, which the industry defines as over 100 years old, or claimants provide information to show the item is a "collectible." According to Mr. Way, Sedgwick accepted the $10,000.00 value the Isaacs placed on the Print Materials given their rarity and applied 75% depreciation per industry standards.

The Isaacs have made several attempts to obtain additional information on this issue. At the last status conference, they reported to the Court that they were ultimately unsuccessful. The

Court has reviewed the website information the Isaacs previously provided but was unable to glean any information on the specific issue of whether these items should be depreciated.  As the undersigned explained at the hearing, the Court must rely on information from a source with knowledge (other than the claimants) in determining the fair compensation to award in an SBU case.  MSD accepted the value attributable to the Print Materials by the Isaacs.  Sedgwick applied depreciation per industry standards.  In the absence of any other information to substantiate a departure, the Court is constrained to award the depreciated value of $2,500.00 for these items.

      6. Lost income and real property

The Isaacs also request reimbursement of lost income from 1989 through 2018.  This request is denied as the Consent Decree covers damage to real or personal property only, and not lost income.  *See* Exhibit 8 to the Consent Decree (Doc. 101-9 at PAGEID 473) ("Damages will be paid for losses to real and personal property that can be documented.").

The Isaacs request reimbursement of mechanical items and services: (1) $4,325.00 for water heater services by Zins Plumbing; (2) $95.23 for a Sears service call; and (3) $5,776.00 for a furnace replacement.  MSD accepted the invoices for $95.23 for the Sears service call and $5,776.00 for a comparable furnace replacement.  However, MSD did not allow the claim for Zins Plumbing services because the Isaacs' estimate included an upgrade to a tankless system.  MSD adjusted the water heater estimate to $3,772.23, an amount compensating for the replacement of the two 75-gallon water heaters previously located at the property.

Mrs. Isaacs testified that this was not their first sewer backup, but it was the largest.  Therefore, they chose a "tankless" water heater system because Zins Plumbing could move the

water heater to the first floor to avoid a future loss from any subsequent sewer backup. The Zins Plumbing invoice confirms that two 75-gallon water heaters were replaced by a tankless water heater system "to keep from flooding if water comes in again." (Doc. 1875, Exh. B). Given the history of sewer backups at the property, the decision to move the water heater system from the basement to the first floor was reasonable, and the Court awards the Isaacs $4,325.00 in compensation for this item.

    7. <u>Summary of award</u>

Jobo Autolab: $2,000.00

Refrigerator: $150.00

Neon Art: $285.00

Print Photos: $10,000.00

Print Materials: $2,500.00

Remaining items of personal property: $5,813.55

    <u>Total personal property</u>: $20,748.55

Sears service call: $95.23

Furnace: $5,776.00

Water heater replacement: $4,325.00

    <u>Total real property</u>: $10,196.23

## IV. Conclusion

In conclusion, the Court awards **$30,944.78** to the Isaacs for the damages sustained in this case consisting of an award of $20,748.55 for personal property and $10,196.23 for real

property damages.

**IT IS SO ORDERED.**

_____
Karen L. Litkovitz, Magistrate Judge
United States District Court