UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>    Plaintiffs, | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J. |
| vs. | |
| BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>    Defendants. | ORDER RE: REQUEST<br>FOR REVIEW BY<br>CHARLES SHOR |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Charles Shor (Doc. 1002), the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1138), and the parties' supplemental response and reply briefs (Docs. 1922, 1923, 1929, 1938, 1946, 1951, 2005, 2008, 2011, 2015, 2019). On August 2, 2022, the Court held oral argument in this matter on whether Mr. Shor's claim for "residual" diminution of value is a compensable item of real property damages under the Consent Decree. The Court holds that it is not.

I. Background

Mr. Shor's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's

---

[1]The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

Sewer System or caused by blockages in occupants' own lateral sewer lines. (*Id*. at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. *Id*. Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

The SBU Claims Process Plan is attached to the Consent Decree as Exhibit 8. (Doc. 131, Consent Decree, Ex. 8). The purpose of this Plan is "to compensate customers who experience [SBU] for real or personal property losses or expenses." (Doc. 131 at PAGEID 2670). The Consent Decree provides that "[s]uch losses may include, inter alia, building restoration costs, and loss of furniture and/or property stored in the flooded areas." (*Id*.). The Order approving the entry of the Consent Decree further provides that "[w]here homeowners suffer damage for which MSD is liable, the MSD will be responsible for clean-up costs, remedies, and for any dimunition (sic) in the value of real estate." (Doc. 129 at PAGEID 2535).

Mr. Shor owns the property located at 2627 Handasyde Avenue, Cincinnati, Ohio. On August 28, 2016, Mr. Shor experienced a sewer backup into his basement which resulted in damage to his personal and real property. Mr. Shor filed a claim with his insurance carrier and

2

received $216,434 as coverage for real and personal property damage. (Doc. 123-1 at PAGEID 46174; Doc. 123-8 at PAGEID 46216). He then filed an SBU claim with MSD. After evaluating his claim, MSD offered Mr. Shor $28,870.28 for his damages. Mr. Shor rejected MSD's offer and filed a request for review in this Court.

Initially, Mr. Shor's request for review sought $505,000 in damages, which represents $425,000 "[d]iminished value of his home," $50,000 insurance deductible, and $30,000 in personal items. (Doc. 1002 at PAGEID 19881). Mr. Shor subsequently filed a supplemental request for review seeking damages to real and personal property in the amount of $1,550,000, which now includes a claim for $1.5 million for "[d]iminution in value" to his home. (Doc. 1923 at PAGEID 46165).

In his supplemental briefing to the Court and at oral argument, Mr. Shor clarified that he is not seeking "gross" diminution in value but rather "residual" diminution in value. Mr. Shor describes "gross" diminution in value as "a measure of the difference in value of property before injury occurs and immediately after the injury occurs" and "before repairs are undertaken." (Doc. 2008 at PAGEID 51563). Mr. Shor acknowledges that SBU claimants "may not recover both the cost of repairs to property and the difference in the market value of the property immediately before and immediately after the injury (gross diminution). Such an award would be improper because damages for cost of repair and gross diminution in value overlap. The resulting award would be duplicative." (*Id.*).[2]

---

[2] Mr. Shor's position is consistent with Ohio law and previous SBU decisions of this Court. *See Case Leasing & Rental, Inc. v. Ohio Dep't of Nat. Res.*, No. 09AP–498, 2009 WL 4809639, at *7 (Ohio Ct. App. Dec. 15, 2009) ("Regardless of whether the damage to Case's property was permanent or temporary, Case cannot recover damages for both the diminution in value of its property and the costs of restoration and repair (including interest). Such an award would provide a windfall to Case."). *See also* Order on Robert Buckner Request for Review (Doc. 1281) and Order on Lowell Wilson Request for Review (Doc. 1667).

According to Mr. Shor, residual diminution of value is the immediate loss in the property's market value not compensated through the cost of repairs. Mr. Shor represents that "[r]esidual diminution in value is a measure of the difference in value of property before injury occurs and the value of that property after repairs are completed. Residual diminution does not overlap the cost of repairs because it is calculated based on a comparison of the value of the property before the injury and after repairs are made. Recovery for residual diminution in value is actually necessary in instances, like this case, where repairs alone cannot restore the original value of the property." (*Id*.).

The parties do not dispute that diminution of value is a type of damage claim compensable under the Consent Decree. The threshold issue here is whether Mr. Shor's claim for what he describes as "residual" diminution of value to his home is an item of damages that, as a matter of law, is compensable under the Consent Decree.

Mr. Shor contends that awarding residual diminution of value is consistent with the objective of the Consent Decree—to afford injured claimant's full and fair compensation. He argues an award of residual diminution of value "is fundamentally no different than what would be appropriate under a traditional tort scheme," i.e., "to make the injured party 'whole' again." (Doc. 2008 at PAGEID 51562). The Court disagrees.

First, this case is governed by a federal Consent Decree and not Ohio tort law. The Consent Decree circumscribes the types of damages the Court may award. Contrary to Mr. Shor's argument, the Consent Decree does not cover every type of damage a homeowner may suffer from an SBU under a "make whole" remedy of Ohio tort law. An award of damages under the Consent Decree is limited to "losses to real and personal property that can be

4

documented" as a result of a discrete SBU event "into buildings." (Doc. 131-11 Ex. 8 at PAGEID 2801, 2802). Consistent with the Consent Decree terms, this Court has denied claims for personal injuries and medical expenses (Order on Richardson Request for Review) (Doc. 651), lost vacation time (Order on Schells Request for Review) (Doc. 907), lost income (Order on Isaacs Request for Review) (Doc. 1976), and damage to items outside of the home like air conditioner condensers (Order on Lowell Wilson Request for Review) (Doc. 1667), landscaping, yard fencing, and a driveway retaining wall (Order on Schells Request for Review) (Doc. 907). Although these damages would arguably make the claimant whole, the Consent Decree does not authorize these awards. This is not to say that homeowners who suffer such damages are without a remedy. Claimants who disagree with MSD's decision and seek such "make whole" damages have the option to pursue such claims in state court (Consent Decree, Doc. 113-11 at PAGEID 2803), as MSD advises in their materials to consumers. *See* https://sbu.msdgc.org/sbu/page/contact-us.aspx ("[A]nyone affected by a sewer backup has the option of pursuing his or her claim through the standard legal process rather than through the SBU claims process. He or she may file in the Hamilton County Municipal Court or the Court of Common Pleas."). The Consent Decree limits the types of damages *this* Court may award, and this Court is bound to apply its terms.

Second, Ohio law does not recognize residual diminution of value claims for real property damage. Mr. Shor cites *Rakich v. Anthem Blue Cross & Blue Shield*, 875 N.E.2d 993 (Ohio App. 2007), in support of his claim for residual diminution of value. *Rakich* permitted recovery of the diminished value of an automobile after it was repaired, where the market value of the vehicle immediately after its repair was less than the market value immediately before the

5

accident. *Rakich* addressed the question of residual diminution of value for a discrete item of personal property—not real property—under Ohio tort law. Mr. Shor has not cited, and this Court's extensive research has not found, any Ohio court that has applied residual diminution of value to real property damages. Rather, the measure of damages for loss to real property is the reasonable cost of restoration (with evidence of diminution of the property's market value as a factor bearing on the reasonableness of the restoration cost), *Martin v. Design Constr. Servs., Inc.*, 902 N.E.2d 10, 13-15 (Ohio 2009)[3], "unless such cost of restoration exceeds the difference in the market value of the property before and after the injury, in which case the difference in market value becomes the measure." *Martin*, 902 N.E.2d at 13 (quoting *Ohio Collieries Co. v. Cocke*, 140 N.E. 356, 359 (Ohio 1923) (abrogated in part by *Martin*)). The Court finds it inappropriate to extend the residual diminution of value theory to Consent Decree claims where even Ohio courts do not recognize this theory of damages.[4]

Mr. Shor's proposed test for evaluating residual diminution of value claims further supports the Court's conclusion. When asked whether allowance of "residual" diminution of value claims would open the floodgates to every homeowner who experiences an SBU, Mr. Shor proposed a three-part test: (1) the homeowner must demonstrate serial backups on the property; (2) the homeowner must show by a preponderance of the evidence that he or she will suffer future losses; and (3) the homeowner must have proof of the loss.

---

[3] The Ohio Supreme Court stated that "where restoration of the property was 'impracticable,' the measure of damages would be the 'difference between the reasonable value immediately before the damage and the reasonable value immediately afterwards.'" *Martin*, 902 N.E.2d at 14 (quoting *Northwestern Ohio Natural Gas Co. v. First Congregational of Toledo*, 184 N.E. 512 (Ohio 1933)).

[4] Cases from other jurisdictions are neither relevant nor persuasive as the Consent Decree governs the types of available damages and not the law of another state or jurisdiction.

This proposed test is inconsistent with the language of the SBU Claims Process Plan, which contemplates damages for discrete, past SBUs, and not potential losses from potential future sewer backup events.  The Consent Decree's SBU Claims Process Plan requirements are premised on a single, past SBU event, and include time-limits (48 hours) for reporting an SBU, investigation standards for determining the cause of SBU, and documentation to substantiate the existence and/or extent of damages.  (Consent Decree, Doc. 131, Exhibit. 8, as modified by Non-Material Modification to Global Consent Decree Sewer Backup Program, Doc. 1862 at PAGEID 44585).  Nothing in the Consent Decree's language permits compensation for potential future SBU damages.  Indeed, this Court has previously determined that it lacked authority under the Consent Decree to award damages for "future" mitigation items (such as sump pumps) because they did not constitute "losses . . . as a result of a WIB (SBU) incident" (Doc. 101-9 at PAGEID 473-74; Doc. 131-11 at PAGEID 2802-2803) but were purchased in anticipation of another possible sewer backup in the future.  (Order on Hoffman Request for Review) (Doc. 1980 at PAGEID 50378).

Mr. Shor's test also assumes that future losses will in fact occur.  Yet, there is nothing in the language of the Consent Decree's SBU Claims Process Plan permitting the Court to award damages based on a hypothetical future backup that may or may not affect the property's value.

Finally, Mr. Shor contends that the Court's 2004 Order entering the Consent Decree in this case indicates that claims for diminution of value remain viable even where a claimant has obtained relief for restoration damages.  (Doc. 2019 at PAGEID 51849).  He argues that the Court "has expressly approved of recovery for 'clean-up costs . . . **and** for any diminution in value of the real estate.'"  (*Id.*, quoting Doc. 129 at PAGEID 2535) (emphasis supplied by Mr.

7

Shor).[5] Mr. Shor construes the conjunction "and" as mandating additional compensation for diminution in value when a claimant is awarded "clean-up costs," which Mr. Shor appears to equate with restoration costs. The Court disagrees.

The "clean-up costs" Judge Spiegel mentioned in the Conclusion section of his 2004 Order are part of a separate Consent Decree program[6], i.e., the "Water in Basement [SBU] Customer Service Program Plan." This is the Consent Decree's rapid response and cleanup component whereby MSD will assist with the cleanup of an SBU-affected property at no charge to the occupant on an expedited basis. (Doc. 131-10, Exhibit 7 to the Consent Decree). The term "clean-up costs," in the context of Judge Spiegel's Order, does not mean the restoration and repair costs Mr. Shor referenced as these are covered under a separate SBU program, i.e., the SBU claims process program outlined in Exhibit 8 to the Consent Decree. (Doc. 131-11).

Based on the language of the Consent Decree and Ohio law governing real property damages, the Court finds residual diminution of value is not a compensable form of real property damages.

The parties are to advise the Court within 30 days whether they wish to schedule a

---

[5] The Order states, in relevant part:

The Court retains jurisdiction over this matter, and will not countenance unreasonable delay in correcting the problems that the decrees address. Where homeowners suffer damage for which MSD is liable, the MSD will be responsible for clean-up costs, remedies, and for any dimunition (sic) in the value of real estate.

(Doc. 129 at PAGEID 2535).

[6] The Consent Decree's Water in Basement [SBU] Program has three separate components. (Doc. 131 at PAGEID 2669-70). These are the Water in Basement Prevention Program Plan (Doc. 131-9, Exhibit 6), the Water in Basement Customer Service Program Plan (Doc. 131-10, Exhibit 7), and the Water in Basement Claims Process Plan (Doc. 131-11, Exhibit 8).

supplemental hearing on Mr. Shor's remaining claims for damages.

**IT IS SO ORDERED.**

                                                                                    _____
Karen L. Litkovitz, Magistrate Judge
United States District Court