UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, et al.,
    Plaintiffs,

vs.

BOARD OF HAMILTON COUNTY
COMMISSIONERS, et al.,
    Defendants.

Case No. 1:02-cv-107
Barrett, J.
Litkovitz, M.J.

ORDER RE: REQUEST
FOR REVIEW BY
JAMES A. HUDSON

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by James A. Hudson (Doc. 2012) and the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 2018). On September 27, 2022, the Court held a hearing in this matter at which Mr. Hudson, MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk, and Sedgwick Senior Adjuster and MSD contractor Jeff Way testified. At the hearing, both parties submitted exhibits in support of their respective positions. (Doc. 2029). The Court granted Mr. Hudson and MSD an opportunity to supplement the record following the hearing, and both filed supplemental responses. (Doc. 2036, 2038). This matter is now ripe for review.

**I. Background**

Mr. Hudson's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan). (Doc. 131-11, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

> Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id*. at PAGEID 2801). In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (*Id*. at PAGEID 2802). Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property. (*Id*.). Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Mr. Hudson is the owner of a rental property at 444 Delta Avenue, Cincinnati, Ohio. On June 30, 2021, Mr. Hudson's property experienced a sewer backup resulting in damage to his personal and real property. Mr. Hudson made a claim to MSD for the property damages he sustained. MSD did not contest that the property may have experienced a qualifying sewer backup. MSD initially offered $26,863.43 to compensate Mr. Hudson for his damages. Mr. Hudson declined the offer and filed this appeal. Thus, the only issue in this case is the amount of damages for Mr. Hudson's property loss.

MSD employed Sedgwick, a national claims adjuster, to review Mr. Hudson's damages claim and documentation provided in support. Sedgwick employed commercially accepted

2

standards to evaluate the real and personal property damages and depreciated the value of personal property, based on the age, condition, and value of each claimed item.  Prior to the hearing, Sedgwick prepared an updated Statement of Loss and Content Analysis reflecting its analysis of Mr. Hudson's claim for damages.  (Doc. 2029, Ex. F at PAGEID 52423-24).  Based on this updated analysis, MSD offered $29,014.03 to Mr. Hudson as compensation for his claim.  With the exception of MSD's failure to compensate Mr. Hudson in the amount of $5,799.00 for the replacement of an air conditioner (A/C) condenser unit, Mr. Hudson does not dispute MSD's calculation of his damages.

## II. Resolution

Mr. Hudson requests compensation for the replacement of his outdoor A/C condenser unit.  MSD argues that the Consent Decree disallows compensation for outdoor property items.  Mr. Hudson states he previously received compensation for an outdoor A/C unit from a 2016 SBU claim and should similarly receive compensation for the instant claim.  MSD states it is unable to determine the basis for compensation of this ineligible item in 2016.[2]

The Court concludes that Mr. Hudson may not be compensated for the outdoor A/C condenser unit.  The plain terms of the Consent Decree that governs the SBU claims process do not permit compensation for property damage that occurs outside of a dwelling unit.  "A consent decree is essentially a settlement agreement subject to continued judicial policing," the terms of which a court is obligated to enforce as circumstances dictate.  *Shy v. Navistar Intern. Corp.*, 701 F.3d 523, 532 (6th Cir. 2012) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)).  In interpreting the terms of a consent decree, the Sixth Circuit has clarified:

---

[2] MSD represents that this was nothing more than a processing error, and MSD will not seek to recoup the excess payment to Mr. Hudson in 2016.  (Doc. 2018 at PAGEID 51786).

> "[C]onsent decrees bear some of the earmarks of judgments entered after litigation" and . . . "[a]t the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986). It is this resemblance to contracts that requires that the scope of a consent decree "be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to" the consent decree. *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971).

*Shy*, 701 F.3d at 530.

The clear language of the Consent Decree in this case limits recovery to structural or personal property damage of the building or dwelling of the occupant making an SBU claim. The Consent Decree defines "Water-in-Basement(s)" (now called Sewer Backup or SBU) as "any *release of wastewater from Defendants' Sewer System* **to buildings** that (i) is not the result of blockages, flow conditions, or malfunctions of a building lateral or other piping/conveyance system that is not owned or operationally controlled by Defendants; and (ii) is not the result of overland, surface flooding not emanating from Defendants' Sewer System." (Doc. 131, Consent Decree at PAGEID 2641) (emphasis added). Similarly, Exhibit 8 to the Consent Decree[3] which governs the SBU claims process sets forth the "Scope of WIBs Covered" as follows:

> The Claims Process will *only reimburse damages arising from basement backups* caused by [1] inadequate capacity in MSD's Sewer System or [2] that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. . . .

(Doc. 131, Consent Decree, Exhibit 8 at PAGEID 2802) (emphasis added). Exhibit 8 to the Consent Decree further clarifies that under the Claims Process, "occupants who incur *damages as a result of the backup of wastewater* **into buildings**" due to inadequate capacity in MSD's

---

[3] Section XIII of the Consent Decree incorporates Exhibit 8 by reference. (Doc. 131, Consent Decree at PAGEID 2670).

4

sewer system or resulting from MSD's negligent maintenance, destruction, operation or upkeep of the sewer system may recover those damages.  (*Id.* at PAGEID 2801) (emphasis added). There is nothing in the language of the Consent Decree to indicate that outside property damage resulting from a sewer surcharge or a combination of overland flooding and sewer surcharge is covered.  In examining the four corners of the Consent Decree, the undersigned concludes that the plain language used by the parties to the decree evinces the intent to limit recovery to those damages associated with a claimant's building and not property located outside the building.

Consistent with the Consent Decree terms, this Court has denied SBU compensation for personal property located outside of a dwelling.  *See* Order on Lowell Wilson Request for Review (A/C condenser) (Doc. 1667); Order on Herbie and Angela Schell Request for Review (landscaping, yard fencing, and a driveway retaining wall) (Doc. 907); Order on Kimberly Turnbow Request for Review (vehicle parked in driveway and its contents) (Doc. 1204); Order on Michael and Carole Evans Request of Review (landscaping and outdoor property) (Doc. 945).

As noted during the hearing, the Court has made an exception for compensating outdoor A/C condenser units that are incompatible with inside A/C components.  *See* Order on Andrew Heldman Request for Review (Doc. 1712).  In that case, Mr. Heldman's outdoor R22 A/C condenser was installed prior to 2010 and used R22 refrigerant.  Condenser units using R22 refrigerant – which is now illegal in the United States – are no longer compatible with currently manufactured indoor A/C units.  Therefore, the Court determined that compensation for both the indoor and outdoor A/C components was warranted as replacement of the indoor component alone would not result in a functioning A/C system.

5

Mr. Hudson noted that both his 2016 indoor A/C unit and 2021 replacement outdoor A/C unit experienced frequent icing and numerous service calls.  Following the hearing, Mr. Hudson contacted a heating and air conditioning professional to investigate whether these issues stemmed from incompatibility between the older and newer unit.  Mr. Hudson noted that his indoor A/C unit was previously replaced in 2016 after an SBU and did not use the banned R22 refrigerant.  In addition, the icing issues were not related to refrigerants but rather to the design of the evaporating coils.  After several service calls, the problem was apparently fixed, and Mr. Hudson's air conditioning professional did not anticipated any icing or incompatibility issues in the future.  (Doc. 2036 at PAGEID 52508).  Based on this information, and the evidence presented at the hearing, the Court denies Mr. Hudson's request for compensation of the A/C condenser unit.[4]

## IV.  Conclusion

The Consent Decree limits the types of property damage this Court may compensate, and this Court is bound to apply its terms.  The Court awards **$29,014.03** to Mr. Hudson for the damages sustained in this case.

**IT IS SO ORDERED.**

Karen L. Litkovitz, Magistrate Judge
United States District Court

---

[4]This does not mean that homeowners are without a remedy if they believe the damage to their outside property was caused by MSD's negligence.  Homeowners who disagree with MSD's decision on their claim may seek relief in the state courts, as MSD advises in their materials to consumers.  *See* http://sbu.msdgc.org/sbu/page/filing-a-claim.aspx.