UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>    Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>    Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br><br>**ORDER RE: REQUEST<br>FOR REVIEW BY<br>ROBIN HARRISON** |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Robin Harrison (Doc. 1988), the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 1994), Ms. Harrison's supplemental letter to the Court submitted on a thumb drive (see 2/6/2023 docket notation), MSD's supplemental response (Doc. 2054), Ms. Harrison's reply (Doc. 2058), and MSD's response thereto (Doc. 259).

**I. Procedural History**

On May 3, 2022, the Court held a hearing in this matter at which Ms. Harrison, counsel for MSD, and MSD Assistant Superintendent and SBU Response Program Manager Tom Fronk appeared. Following the hearing, the Court left the record open to give Ms. Harrison an opportunity to submit additional information. After several extensions of time, Ms. Harrison submitted a thumb drive in support of her claim. (*See* 2/6/2023 docket notation). The thumb drive contained a single letter from Ms. Harrison, which referenced a video purporting to show the remaining items of personal and real property damaged. However, the thumb drive submitted to the Court did not contain a video or any other evidence besides Ms. Harrison's letter.

The Court then granted Ms. Harrison a final extension of time to submit any additional information, including the video referenced in the letter on the thumb drive, that she wished for the

Court to consider.  Ms. Harrison submitted a letter, exhibits, and a thumb drive with videos[1].  (Doc. 2058).  MSD also filed a supplemental response to Ms. Harrison's additional information.  (Doc. 2059).

This matter is now ripe for review.

## II. Background

Ms. Harrison's request for review is filed under the Sewer Backup[2] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan).  (Doc. 131-11, Consent Decree, Exhibit 8).  The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages.  This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System.  The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id*. at PAGEID 2801).  In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography.  (*Id*. at PAGEID 2802).  Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property.  (*Id*.).  Homeowners who are dissatisfied with MSD's

---

[1] The videos appear to show the exterior surroundings of Ms. Harrison's house and do not relate to the property damage claim in this appeal.

[2] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system.  *See* Doc. 452 at PAGEID 7475; Doc. 454 at PAGEID 7509.

2

disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review. (Docs. 154, 190).

Ms. Harrison is the owner of a single-family home located at 3832 Ruebel Place, Cincinnati, Ohio. On June 17, 2019, Ms. Harrison's property experienced a sewer backup resulting in damage to real and personal property. Ms. Harrison made a claim to MSD for property damage. MSD did not contest that the property may have experienced a qualifying sewer backup on that date. MSD offered Ms. Harrison $8,144.30 to compensate Ms. Harrison for her property damage. Ms. Harrison declined the offer and filed this appeal. Thus, the only issue in this case is the amount of damages for Ms. Harrison's property loss.

## II. Resolution

Under the Consent Decree, "[d]amages will be paid for losses to real and personal property that can be documented. . . . [C]laimants must, as a condition to payment of any claim, cooperate with MSD's efforts to investigate and document the losses that have occurred as a result of a WIB (SBU) incident." (Doc. 101-9 at PAGEID 473-74). Damages for SBU claims are determined based on the market value of personal property as of the date of loss (the depreciated value) and not on the original purchase price or cost of replacement.

MSD employed Sedgwick, a national claims adjuster, to review Ms. Harrison's claim and supporting documentation. Sedgwick employed commercially accepted standards to evaluate the real and personal property damages.

The Sedgwick estimate included real property/building loss for a total of $11,887.00, which included $10,937.00 for a furnace replacement and $950.00 for a water heater. (Doc.

3

1994-3 at PAGEID 50651). Ms. Harrison requested $7,723.00 for restoration damages based on an estimate from Chaney Construction. MSD objected to compensation for this item because the proposed work included restoration of drywall, flooring, and baseboards, which MSD states had already been removed prior to the June 16, 2019 incident. These items were removed after a previous SBU incident in March 2017, and MSD already provided compensation for these items in connection with Ms. Harrison's previous 2017 SBU claim. Ms. Harrison has not presented any evidence to the contrary.

However, Ms. Harrison testified that custom wood doors and shelving in the garage were damaged in the June 2019 SBU that were not covered in the March 2017 SBU claims process. She seeks $314.00 as damages for these items as reflected in the Chaney Construction estimate. (Doc. 1994-7 at PAGEID 50661).

Ms. Harrison has submitted photographs of the custom wood doors and shelving. (Doc. 2058). The Court has reviewed Ms. Harrison's 2017 SBU claim and has confirmed that Ms. Harrison did not receive compensation for these items. (Doc. 1744-2, PAGEID 40899, 40923, 40925). The $314.00 estimate appears fair and reasonable. The Court therefore awards Ms. Harrison $314.00 in compensation for the custom wood doors and shelving.

Ms. Harrison also seeks $300.00 to repair her electric garage door, which she alleges was damaged by MSD's cleaning contractor. The Consent Decree does not provide a remedy for damages caused by MSD's cleaning contractors. Exhibit 8 to the Consent Decree,[3] which governs the SBU claims process, sets forth the "Scope of WIBs Covered" as follows:

---

[3] Section XIII of the Consent Decree incorporates Exhibit 8 by reference. (Doc. 131, Consent Decree at PAGEID 2670).

4

> The Claims Process will *only reimburse damages arising from basement backups caused by* [1] inadequate capacity in MSD's Sewer System or [2] that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. . . .

(Doc. 131, Consent Decree, Exhibit 8 at 2) (emphasis added).  Exhibit 8 to the Consent Decree further clarifies that under the Claims Process, "occupants who incur damages *as a result of* the backup of wastewater into buildings" *due to* inadequate capacity in MSD's sewer system or resulting from MSD's negligent maintenance, destruction, operation or upkeep of the sewer system may recover those damages.  (Doc. 131, Consent Decree, Exhibit 8 at 1) (emphasis added).  Property damage that is compensable under the Consent Decree must be caused by an SBU.  *Id*.  There is nothing in the language of the Consent Decree to indicate that property allegedly damaged by other causes, such as the negligence of cleaning contractors, is covered by the SBU claims process.  Therefore, to the extent Ms. Harrison seeks compensation for an item allegedly damaged by MSD's cleaning contractor, she may not obtain such compensation under the Consent Decree's SBU claims process.

MSD denied several items listed on Ms. Harrison's personal property content analysis as being unsupported the evidence.  Under the Consent Decree, losses to real and personal property must be documented.  (Doc. 101-9 at PAGEID 473-74).  The Court finds Sedgwick's content analysis to be fair and reasonable for the items of personal property that have been documented.  (Doc. 1994-4 at PAGEID 50653).

In Ms. Harrison's supplemental submission, two additional items of personal property on Ms. Harrison's claim inventory have now been verified.  This includes an under bed storage drawer ($69.99) and a queen footboard ($175.00).  Sedgwick updated the Content Analysis to allow those two items at the claimed amounts, with depreciation applied, for the final adjusted

5

amounts of $62.99 and $157.50. (Doc. 2059, Ex. P). This amount added to Sedgwick's previous Content Analysis of $1,257.30 (Doc. 1994-4 at PAGEID 50653) yields a total amount of $1,477.79. The Court finds the Sedgwick valuation of personal property to be fair and reasonable.

In conclusion, the Court awards Ms. Harrison $12,201.00 for real property damages plus $1,477.79 for personal property damage less $5,000.00 insurance settlement for a total of $8,678.79.

**IT IS SO ORDERED.**

_____
Karen L. Litkovitz, Magistrate Judge
United States District Court