**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA, et al.,** | Case No. 1:02-cv-00107 |
| Plaintiffs, | Judge Michael R. Barrett |
| v. | Magistrate Judge Karen L. Litkovitz |
| **BOARD OF HAMILTON COUNTY COMMISSIONERS, et al.,** | RESPONSE TO ROBERT HAARMAN AND CARRIE HAARMAN'S REQUEST FOR REVIEW (DOC. 2067) |
| Defendants. | REQUEST FOR HEARING ENCLOSED |

The City and County Defendants ("MSD") request a hearing and respond to Robert Haarman and Carrie Haarman's (the "Haarmans") Request for Review (Doc. 2067) as follows:

### *Introduction*

1. The Haarmans are the owners of real property located at 3395 Lakemeadow Court, Cincinnati, Ohio 45239 (the "Property"). A copy of the Hamilton County Auditor's Property Report is attached as **Exhibit A**.

2. The Haarmans claim that the Property experienced a sewer backup on March 23, 2023 (the "First Occurrence"). The Haarmans request reimbursement of $3000.00 to replace carpet in the Property, $4584.14 for water removal services, and $310.00 for plumber services.

### *MSD's Investigation and Determination*

3. On March 24, 2023, Linda Leist, Ms. Haarman's mother, who is occupying the Property, contacted MSD and reported that there was flooding inside the home. The Initial Report is attached as **Exhibit B**.

4. A little more than an hour after receiving a call from Ms. Leist, MSD arrived at the residence to inspect the Property. *Id*. Upon arrival, MSD's crew observed that the "[r]ear of

1

building yard is underwater." They identified a floor drain in the basement of the Property as the source of the backup.

5. The Property is connected to a 12-inch public sanitary sewer. MSD's crew found the 12-inch sanitary sewer was opening and running and not surcharged. *Id*. The crew noted that the upstream manhole and downstream manhole was "Open and Running." *Id*. MSD's crew found no evidence that a backup occurred because of an issue within the public sewer. MSD's crew advised Ms. Leist to contact a plumber. *Id*.

6. The Haarmans provided a plumber's receipt to MSD dated April 4, 2023, a week and a half after the First Occurrence. The invoice states[1] "Rod out drain with big machine." A copy of the plumber's receipt is attached as **Exhibit C**. There was no indication that there was any issue within the public sewer.

7. On July 19, 2023, Elaine Cooper, a friend of the Haarmans, contacted MSD and reported that there was flooding inside the home that began on July 14, 2023 (the "Second Occurrence"). Ms. Cooper did not request immediate MSD response service. The Second Report is attached as **Exhibit D**.

8. Even so, less than an hour after receiving a call from Ms. Cooper, MSD arrived at the residence to inspect the Property. *Id*. MSD did not enter the Property because Ms. Leist was not home. *Id*.

9. Outside the home, MSD's crew found the 12-inch sanitary sewer was open and running and not surcharged. *Id*. The crew noted that the upstream manhole and downstream

---

[1] Note: The plumber's receipt attached to the Request for Review is different than the plumber's receipt submitted to MSD by the Haarmans, stating "Rod out drain with big machine, went out 75 ft. Didn't pull anything back with auger." This added detail does not change MSD's conclusion that there was no issue within the public sewer.

manhole were "Open and Running." *Id*. MSD's crew found no evidence that a backup occurred because of an issue within the public sewer. MSD's crew contacted Ms. Cooper over the phone and advised her to contact a plumber. *Id*.

10. The Haarmans did not submit a claim for the Second Occurrence. This Request for Review pertains only to the First Occurrence. However, the paperwork provided by the Haarmans relating to and occurring after the Second Occurrence is instructive.

11. The Haarmans provided a plumber's receipt dated July 15, 2023, which stated that the plumber was able to "duplicate the issue just by running stationary tub." A copy of the plumber's receipt is attached as **Exhibit E**. The plumber cleared the drain with a "300 machine with a 3-inch double cutter blade." *Id*. The plumber then tested the line by running the stationary tub again and flushing the toilet multiple times and confirming the line was no longer backed up. *Id*. The plumber noted that "there was water leaking from stationary tub and going towards water heater in which the bottom is rusted due to no pan being underneath of water heater." *Id*.

12. In their Request for Review, the Haarmans state that the clog begins at the curb of the Property, however, the Haarmans have not submitted any documentation that supports this conclusion. Nevertheless, the portion of the sewer located at the curb of the Property is the Haarmans' private building sewer line, not the public sewer. A copy of the sewer drawing is attached as **Exhibit F**. The sewer drawing on the top right shows that the public sewer begins at manhole 6, located in the street of the cul-de-sac. The Property is located at lot 103 of the sewer drawing, near manhole 6. Property owners are responsible for maintaining the entire length of their private building sewer free of clogs and blockages. (Doc. 131, Consent Decree, Exhibit 8 at 2.)

13. Furthermore, in their Request for Review, the Haarmans state that manhole 6 is inverted, suggesting that the manhole's elevation is lower than the public sewer, causing sewage

3

to get trapped in the manhole. However, the sewer drawing shows that the sewer was not built inverted. *See* Ex. F. In fact, the sewer drawing on the lower right and lower left shows that manhole 6, with an elevation of 883.66, is elevated higher than manhole 5, with an elevation of 881.31, and manhole 7, with an elevation of 882.06. *Id*. Due to the elevation of manhole 6, if the public sewer was experiencing a capacity issue, gravity would result in the sewage receding back down the public sewer line toward manhole 5 located on Barjo Lane. *Id*. The sewer drawings and the elevation of manhole 6 show no issues or flaws with the design of the public sewer. When MSD's crew visited the Property in July, there was no sewage sitting in the manhole. A photo of the manhole taken on July 19, 2023 is attached as **Exhibit G**.

14. In their Request for Review, the Haarmans' stated that three other homes flooded on their street in March and July. Due to the configuration of the public sewer on Lakemeadow Court and gravity, if in fact there was an issue in the public sewer, other homes on Lakemeadow Court and Barjo Lane would have been expected to have experienced a sewer back up before the Haarmans. However, no other neighboring properties reported a backup on or around March 24, 2023 or July 14, 2023.

15. The Haarmans provided a plumber's receipt dated July 21, 2023, which stated that there was a clog consisting of tissue paper or other paper material in the private lateral line. *Id*. The plumber noted that "[u]pon inspection of the sewer ran into a clog I could not pass at 30 feet out" and he "did not observe any roots, offset, or breaks in the sewer." *Id*. The plumber's location of a clog in the private lateral line and the absence of structural issues with the public sewer further confirms MSD's conclusions.

16. The Haarmans have just submitted a video from the plumber's inspection of the Property's private lateral line dated August 24, 2023. A copy of the video is being filed with the

4

Court via USB drive as **Exhibit H**. The video showed tissue paper or other paper material stuck in the private lateral line, confirming that paper build-up is clogging the private lateral line and causing a blockage.

17. On September 13, 2023, MSD conducted a building sewer closed-circuit television ("CCTV") inspection and found no evidence of structural issues or indications of capacity-related issues with the building sewer within the public right-of-way. A copy of the video is being filed with the Court via USB drive as **Exhibit I**. That day, MSD crew contacted Ms. Cooper to inform her that the CCTV inspection confirmed MSD's findings.

18. Based on the inspections performed by MSD's crew during the visits to the Property, MSD's review of the Haarmans' SBU claim submission, and all other information and images available, MSD confirmed that there were no capacity, maintenance, or structural issues with the public sewer and determined that the Property did not experience a sewer backup covered by the SBU Program. The plumbers' receipts showed that the backup was likely caused by a clog in the private lateral line. The CCTV inspection confirmed that there were no structural issues within the public sewer. MSD's crew's inspection of the Property and the manholes exhibited no signs of a sewer backup due to inadequate capacity in the public sewer.

19. Because the Consent Decree does not include claims for damages "caused by [sewer backups] arising from blockages in occupants' lateral lines," (Doc. 131, Consent Decree, Exhibit 8 at 2.)  MSD properly denied the Haarmans' claim.

20. The Haarmans submitted an SBU claim on June 13, 2023.  A copy of the SBU claim is attached as **Exhibit J**. The damages identified in the Haarmans' claim include the cost of removing and replacing carpet from the basement area as well as a plumber's invoice for running a cable through the private lateral line.

5

21. For the foregoing reasons, MSD denied the Haarmans' claim by letter dated June 22, 2023. A copy of the letter is attached here as **Exhibit K**.

22. As is more fully explained below, the Haarmans' plumber expense for rodding their private lateral line is not eligible for reimbursement under the SBU Claims Process Plan.

### *The Consent Decree and Scope of the SBU Program*

23. Pursuant to the Consent Decree and in accordance with the SBU Claims Process Plan, "[t]he Claims Process will only reimburse damages arising from basement backups caused by inadequate capacity in MSD's Sewer System or that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System." (Doc. 131, Consent Decree, Exhibit 8 at 2.) "MSD will not pay claims for damages caused by [sewer backups] arising from blockages in occupants' lateral lines or arising from overland flooding not emanating from MSD's Sewer System." (*Id*.)

24. The Haarmans have not submitted evidence establishing that any backup occurred that was the result of either inadequate capacity or negligent maintenance, destruction, operation or upkeep of the Sewer System. (*See, e.g*., 11/05/2019 Order Re: Request for Review by Gulfstream Investments, LLC, Doc. 1791, at PAGEID #41879.) On the other hand, as explained fully above, the information submitted confirms the flooding in the Property's lower level occurred as the result of a clog in the private lateral line.

25. Based on the foregoing, the Court should uphold MSD's decision with respect to the Haarmans' SBU claim.

### *The Haarmans' Request for Review Seeks Costs Not Recoverable Under the Consent Decree*

26. Although the Haarmans' Request for Review is subject to denial for the reasons set forth above, it is also subject to denial because some of the damages the Haarmans seek are damages that are not recoverable under the Consent Decree.

27. The Consent Decree allows for the payment of eligible damages to real and personal property that can be documented. (Doc. 131-11 at PAGEID # 2802.)

28. The Haarmans seek damages for a $310.00 expense for a plumber to rod the Property's private lateral sewer line.

29. That expense is not damage to real or personal property but rather a cost to maintain their private lateral line and thus, is not compensable under the Consent Decree. (Consent Decree, Exhibit 8, IV.B; 04/09/2014 Order Re: Request for Review by James Hudson, Doc. 693 at PAGEID 11570.)

30. Even if the Haarmans' SBU claim was not subject to denial for failing to establish a loss caused by a backup emanating from the public sewer, they cannot recover for plumber expenses under the Consent Decree.

### *Conclusion*

31. For the reasons set forth herein, MSD requests that the Court uphold its denial of the Haarmans' SBU Claim.

### **REQUEST FOR HEARING**

MSD requests that the Court schedule a hearing on this Request for Review.

Respectfully submitted,

EMILY SMART WOERNER
City Solicitor

*/s/Jada M. Colon*
Sanna-Rae Taylor (0091302)
Jada M. Colon (0099048)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Phone: (513) 357-8758
Fax: (513) 381-0205
srtaylor@taftlaw.com
jcolon@taftlaw.com

Joseph C. Neff (0086419)
Assistant City Solicitor
1600 Gest Street
Cincinnati, Ohio 45204
Phone: (513) 557-5784
Fax: (513) 224-1399
Joseph.Neff@cincinnati-oh.gov

*Counsel for Defendant City of Cincinnati*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, a true and accurate copy of the foregoing Response was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that on November 3, 2023, a true and accurate copy of the foregoing Response will be sent to Claimant by regular U.S. Mail at 10632 Lower Line Creek Road, Somerset, Kentucky 42503.

*/s/ Jada M. Colon*