# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>　　　Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>　　　Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br><br>**ORDER RE: REQUEST<br>FOR REVIEW BY<br>ROBERT AND CARRIE<br>HAARMAN** |

This matter is before the Court on the Request for Review of the denial of a Sewer Backup ("SBU") claim by Robert and Carrie Haarman ("the Haarmans") (Doc. 2067), the response of the Metropolitan Sewer District of Greater Cincinnati ("MSD") (Doc. 2071), and MSD's notice of supplemental response (Doc. 2078). The Haarmans' Request for Review of MSD's decision on their SBU claim does not include a request for a hearing.[1]

## I.  **Background**

The Haarmans' request for review is filed under the Sewer Back Up[2] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer Systems or caused by blockages in occupants' own lateral sewer lines.

---

[1] MSD's request for a hearing is denied as the Court finds oral argument is not deemed essential to the fair resolution of this matter.  S.D. Ohio Civ. R. 7.1(b)(2).

[2] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system.  *See* Doc. 452 at 4; Doc. 454 at 16.

(Doc. 131, Consent Decree, Exhibit 8 at 1).    In determining the cause of SBU, MSD must

exercise its good faith reasonable engineering judgment and consider the following non-

exclusive factors: amount of precipitation, property SBU history, condition of the sewer system

in the neighborhood, results of a visual inspection of the neighborhood to look for signs of

overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and

topography.    (Doc. 131, Consent Decree, Exhibit 8 at 2).    Damages arising from basement

backups for which MSD is responsible are limited to documented real and personal property.

*Id*.

## II.  <u>Evidence presented</u>

The Haarmans are the owner of a single family home located at 3395 Lakemeadow

Court, Cincinnati, Ohio.    On June 13, 2023, the Haarmans filed an SBU claim with MSD

seeking compensation for property damage allegedly resulting from a sewer backup on or about

March 23, 2023.[3]    (Doc. 2071-8 at PAGEID 53790).    MSD denied the claim for property loss,

finding the damage was not caused by a failure of MSD's sewer system.    (Doc. 2071-9 at

PAGEID 53799).    The Haarmans disagreed with MSD's decision and filed a request for review

in this Court.

The Haarmans' request for review states:

I took the liberty of hiring Robert Jones Plumbing to run a camera down through
the sewer.    Once finished the tech gave me a thumb drive capturing the clog. He
began in the basement and went all the way to the manhole cover.

The clog begins at the curb (the curb has been marked where the clog begins) and
goes to the manhole cover.    The manhole is inverted and sewage from other
backups stay in this invert.    I attached a handwritten picture so you can understand
the structure, the sidewalk, curb, and street in this cul-de-sac.    Three other homes
flooded on Lakemeadow Court in March and July.    I wish to have this remedied
immediately so my basement doesn't flood again.    I have had to pay for cleaning

---

[3] This is the only claim that is the subject of appeal.

out the basement, cleaning the floors and walls, and two times to have the clog opened up enough to even flush the toilet. Currently, no toilet paper is being flushed. I need MSD to come and clean out the sewer and get me on the MSD Prevention Program so that I'm not paying out thousands of dollars again. The clog is not from my sewer lines. There are no trees on my property or in the lines, no breaks, or anything that would cause the clog to begin at the curb. . . .

(Doc. 2067 at PAGEID 53588). The Haarmans seek reimbursement of $3,000.00 to replace carpet in the Property, $4,584.14 for water removal services, and $310.00 for plumber services. (Doc. 2071-8 at PAGEID 53794-95). The plumber's receipt submitted by the Haarmans states, "Rod out drain with big machine, went out 75 ft. Didn't pull anything back with auger." (Doc. 2067 at PAGEID 53592).[4]

MSD presents evidence that on March 24, 2023, Ms. Haarman's mother, Linda Leist, who is occupying the property, contacted MSD to report she had water puddling around the basement floor drain. (*Id*. at PAGEID 53772). In response to Ms. Leist's March 24, 2023 report of a sewer backup, MSD responded about one hour later to investigate. When they arrived, the MSD crew observed that the "[r]ear of the building yard is underwater." (*Id*. at 53773). The crew also found that the sanitary-only public sewer mainline was open and running, and there was no evidence of a surcharge in the upstream or downstream manholes. (*Id*. at 53773-74). The crew advised the customer to call a plumber and left SBU Field Form 8 at the property.

MSD states that on July 19, 2023, Elaine Cooper, a friend of the Haarmans, contacted MSD to report flooding inside the home that began on July 14, 2023. (*Id.* at PAGEID 53778).

---

[4] MSD presents a copy of this same receipt submitted by the Haarmans attached to their SBU Claim Form. (Doc. 2071-8 at PAGEID 53797). The attached form states, "Rod out drain with big machine." (*Id*.). It does not include the additional language "went out 75 ft. Didn't pull anything back with auger."

An MSD crew was dispatched less than an hour later to investigate.    The responding crew checked the 12-inch sanitary mainline from the upstream manhole to the downstream manhole and found it open and running.    Neither the upstream nor downstream manhole showed signs of surcharge.    (*Id*. at PAGEID 53779).    MSD's crew contacted Ms. Cooper over the phone and advised her to contact a plumber.    *Id*.

While the Haarmans' did not make an SBU claim for the July 14, 2023 incident, the Haarmans provided a plumber's receipt dated July 15, 2023, which stated the floor drain was backing up during heavy rain and whenever "using any facilities."    The plumber was able to "duplicate the issue just by running stationary tub." (*Id*. at PAGEID 53782).    The plumber cleared the drain with a "300 machine with a 3-inch double cutter blade." (*Id*.).    The plumber tested the line by running the stationary tub and flushing the toilet multiple times and confirmed the line was open.

MSD provided a copy of the public sewer schematic serving the Haarmans' property. The schematic shows the public sewer begins at Manhole 6, located in the street of the cul-de-sac.    The Haarmans' property is located near Manhole 6.    The schematic shows Manhole 6 is not inverted, as the Haarmans claim.    (*Id*. at PAGEID 53786).[5]

MSD states that of the other neighboring properties served by the public sewer segment that connects to the Haarmans' lateral, none reported any backups on or around March 24, 2023 or July 14, 2023.

---

[5] The schematic shows Manhole 6 sits at an elevation of 883.66 feet; Manhole 5 sits at an elevation of 881.31; and Manhole 7 sits at an elevation of 882.06.    MSD has not provided the elevation of the Haarmans' basement, which would be relevant to whether a surcharge within the public sewer in the relevant portion of the line would reach the basement before discharging from Manhole 5 or 7, which sit at a lower elevation.

MSD submitted a USB drive of a plumber's video submitted by the Haarmans. (Doc. 2071, Ex. H).   The plumber videoed the building line from the basement cleanout and stopped where the lateral line curved to join the public sewer (at approximately the curb).   The plumber stated the camera could go no further as it had reached its length limit.   The plumber concluded "there's a belly between the sidewalk and the city sewer."   (*Id*.).

MSD conducted a building sewer closed circuit TV inspection of the building lateral line starting from the public sewer.   The technician commented there were no structural issues found in the right-of-way building lateral.   (Doc. 2017, Ex. I).[6]

## III.   **Resolution**

Under the SBU program governed by the Consent Decree, homeowners who seek review of the denial of an SBU claim must prove that the wastewater backup into their property was due to inadequate capacity in MSD's sewer system and not due to blockages in the occupant's own lateral sewer lines or some other cause.   (Doc. 131, Consent Decree, Exhibit 8 at 1).   Here, the Haarmans have not shown that the wastewater backup into their property on or about March 23, 2023 was caused by inadequate capacity in MSD's sewer system.

The Consent Decree factors do not point to a surcharge of the public sewer.   Among the factors the Court considers under the Consent Decree are the condition of the sewer system in the neighborhood and the capacity of nearby public sewer lines.   (Doc. 131, Consent Decree, Exhibit 8 at 2).   When MSD responded to the Haarmans' March 24, 2023 report of a backup,

---

[6] MSD also submits the Haarmans' application for enrollment in the Sewer Backup Prevention Program and the denial of the application based on the lack of two or more reported sewer backups in the last five years.   (Doc. 2078).   The Court has not considered this information as it does not believe it is relevant to the SBU claim in this case.

the MSD crew's investigation of the upstream and downstream public sewer manholes showed no signs of a sewer discharge at that time.   The investigation also showed the mainline was open and running, which is a sign there were no blockages in the mainline sewer to which the Haarmans' lateral line connects.

The Haarmans allege there was a clog in the sewer line that "begins at the curb (the curb has been marked where the clog begins) and goes to the manhole cover."   (Doc. 2067 at PAGEID 53588).   There is no evidence submitted in this case that demonstrates a clog or its location.   The video submitted by the Haarmans' plumber did not show a clog or obstruction at the location alleged by the Haarmans.   In fact, the video stopped short of the connection to the public sewer as the camera line did not extend that far.   While the plumber opined there was a "belly" or sag in the lateral between the sidewalk and connection to the public sewer, the Court is not persuaded that this condition caused the Haarmans' lateral to backup.   As this Court has previously recognized, "bellies or sags are not considered structural defects that require a repair. Rather, the condition is a maintenance issue that is the responsibility of homeowners."   *United States v. Bd. of Hamilton Cnty. Commissioners*, No. 1:02-cv-107, 2017 WL 11439095, at *4 (S.D. Ohio Nov. 20, 2017).   In any event, even if there was an obstruction within the Haarmans' lateral sewer line between the curb and the connection to the public sewer, MSD would not be responsible for any damages in this case.   The Haarmans, as the property owners, "are responsible for blockages in the owner's building lateral sewer lines[7], which are owned by the property owner and not MSD."   *Id.*

---

[7] The building sewer lateral line extends from the home, through the public right-of-way, and to the connection with the MSD public sewer.

The Haarmans also allege the manhole is inverted and sewage from other backups remains in this invert.   The Haarmans submit a handwritten drawing purporting to depict this condition.   MSD, however, has submitted the actual sewer schematics of the relevant sewer manholes, which shows the manhole is not inverted.   The Court is not persuaded by the Haarmans' assertion that sewage collected in Manhole 6 and caused a sewer backup.

The Court also considers neighborhood SBU history.   (Doc. 131, Consent Decree, Exhibit 8 at 2).   There were no other reports of sewer backups or flooding in the immediate vicinity of the property by other homeowners on or around March 23, 2023 or July 14, 2023, the dates of the backups into the Haarmans' basement, which would typically occur if the public sewer surcharged.

In determining the cause of a basement backup, MSD must exercise its good faith reasonable engineering judgment by considering several factors, including the amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography.   (Doc. 131, Consent Decree, Ex. 8 at 2).   MSD did so in this case.   The preponderance of the evidence does not establish that the cause of the flooding to the Haarmans' property was inadequate capacity of MSD's public sewer system.

The Court is not unsympathetic to property owners like the Haarmans who experience basement flooding such as occurred in this case.   Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner/claimant to show that a capacity-related public sewer problem was the cause of the damage to a property.

7

The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County, Ohio) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System.   In the absence of evidence establishing that the Haarmans' property damage was more likely caused by a surcharge in the public sewer line and not by some other cause, the Court is constrained to uphold MSD's decision in this case. Therefore, the Court denies the Haarmans' appeal in this case.

      **IT IS SO ORDERED**.

Date: 3/18/2024

Karen L. Litkovitz, Magistrate Judge
United States District Court

8