**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>    Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>    Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br><br>**ORDER RE: REQUEST<br>FOR REVIEW BY<br>HAROLD DIXON, JR.** |

      This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Harold Dixon, Jr. (Doc. 2107) and the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 2118). On October 10, 2024, the Court held a hearing on Mr. Dixon's request for review at which Mr. Dixon and MSD's Wastewater Collection Division Principal Engineer Maureen Richard, P.E., testified and documentary evidence was submitted.

      Mr. Dixon's request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit ("Ex.") 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(*Id*. at 1). In determining the cause of SBU, MSD must exercise its good faith reasonable

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography.  (Doc. 131, Consent Decree, Ex. 8 at 2).  Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property.  *Id*.  Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review.  (Docs. 154, 190).

## I. Background

Mr. Dixon is the owner of 1914 Fallbrook Lane, Cincinnati, Ohio.  On April 5, 2024, Mr. Dixon filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on March 3, 2023.  (Doc. 2118, Ex. E).  MSD denied the claim for property loss, finding the damage was not caused by a sewer backup covered by the SBU Program.  (*Id*.).  Mr. Dixon disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence

On March 3, 2023, there was a rain storm in the Cincinnati region where Mr. Dixon's home sits.  Mr. Dixon discovered about 12 inches of water in his basement the following morning and contacted MSD on March 4, 2023 to report the flooding.  (Doc. 2118, Ex. B).  An MSD crew responded to Mr. Dixon's property approximately 4 hours later to investigate.  At that time, the water had receded to a depth of 2 inches.  The MSD crew checked the upstream and

2

downstream manholes as part of its investigation. The second closest upstream manhole (MH 31015003)[2] was open and running with no signs of surcharge. The downstream manhole (MH 31016001) was open and running but showed signs of a surcharge, which measured 1 foot below the rim elevation. (*Id.*). The MSD crew gave Mr. Dixon a copy of Field Form 3, which included the "preliminary finding" that "[t]he MSD main public sewer may be backed up due to a lack of capacity." (Doc. 2107, PAGEID 55861).

Mr. Dixon's property is connected to a 12-inch sanitary-only sewer. There is a separate county storm water sewer, which is not owned or maintained by MSD, that conveys stormwater flow. The basement elevation of Mr. Dixon's property is approximately 723 feet. The upstream manhole (MH 31016001) rim elevation is 751.21 feet. The downstream manhole (MH 31016001) rim elevation is 720.74 feet. (Doc. 2017, Exs. H, I).

MSD Principal Engineer Maureen Richard testified that the relative elevations of the downstream manhole from Mr. Dixon's property made it unlikely that a surcharge of the public sewer rose to the level of Mr. Dixon's basement. She testified that the surcharge in the downstream manhole rose to 719 feet, and Mr. Dixon's basement sat at an elevation of 723 feet, meaning the surcharge was 4 feet below the basement level. Ms. Richard testified that if there was a surcharge in the public sewer (meaning the public sewer line was at full capacity) high enough to reach the level of Mr. Dixon's basement, she would expect sewer water to emanate first from the downstream manhole which sits at a lower elevation and is the point of least resistance. She also testified that MSD would expect to see surcharge evidence (toilet paper,

---

[2] The upstream manhole closest to Mr. Dixon's property (MH 31015002) is a buried manhole, and MSD was not able to access it.

3

debris, fecal matter) outside of the lid of the downstream manhole, as well as signs of some surcharge in the upstream manhole, which MSD did not observe.

Ms. Richard also testified that there are two neighboring homes that connect to the same sewer segment as Mr. Dixon's home, and neither of those homes reported a sewer backup on or about March 3, 2023 or at any other time.  Mr. Dixon stated that it was possible those property owners experienced a backup but did not know to report it to MSD.  Mr. Dixon also pointed out that MSD had previously compensated a nearby property owner at 1962 Fallbrook Lane for an SBU claim.  Ms. Richard testified that 1962 Fallbrook Lane has a basement elevation of 708 feet and connects to a different sewer segment that traverses through a heavily wooded area.  MSD compensated that property owner for a claim in 2021.

Ms. Richard testified that the City of Cincinnati records rain events, and the March 3, 2023 rainfall was rated as a "2-year storm" (Doc. 2123, Ex. E).  She testified that MSD does not expect to see capacity issues from storms of this magnitude.  She further testified that overland flooding resulting from the March 3, 2023 storm is captured by the existing storm sewers and should not impact MSD's sanitary-only public sewer system.

### III.  Resolution

Under the Consent Decree, property owners may be compensated for personal or real property damage caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System.  (Doc. 131, Consent Decree, Ex. 8 at 1).  Claimants like Mr. Dixon who seek review of the denial of an SBU claim bear the burden of proof of showing that the backup of wastewater into their property was caused by inadequate capacity in MSD's sewer system (a sewer surcharge) and not by overland

flooding, blockages in the homeowner's privately-owned building sewer line, or some other cause. (Doc. 131, Consent Decree, Ex. 8 at 1).

Mr. Dixon has not established that the flooding of his basement on March 3, 2023 was likely caused by inadequate capacity in MSD's public sewer system. The Consent Decree factors do not point to a surcharge of the public sewer in this case. Mr. Dixon's property is served by a sanitary-only public sewer and not a combined sanitary and storm water sewer, making it less likely that the 2-year rain storm affected the capacity of the sanitary-only sewer. Under the Consent Decree, the Court also considers the condition of the sewer system in the neighborhood and the capacity of nearby public sewer lines. (Doc. 131, Consent Decree, Ex. 8 at 2). When MSD responded to Mr. Dixon's March 4, 2023 report of a backup, the MSD crew's investigation of the downstream public sewer manhole showed signs of a sewer discharge that measured 1 foot below the manhole rim. MSD presented evidence showing that Mr. Dixon's basement sits 4 feet in elevation above the level of this surcharge, making it unlikely that the surcharge of the downstream manhole reached the level of Mr. Dixon's basement. Ms. Richard testified that if there were a surcharge of the downstream manhole sufficient to reach the level of Mr. Dixon's basement, she would have expected to see evidence of such surcharge around the outside rim of the manhole on the street and some level of surcharge in the upstream manhole, which MSD did not observe. The Court is persuaded that the elevations of the relevant manholes and Mr. Dixon's property make it unlikely his basement experienced a backup as a result of a lack of capacity in the MSD public sewer.

The Court also considers neighborhood SBU history. (Doc. 131, Consent Decree, Ex. 8 at 2). There were no other reports of sewer backups or flooding in the immediate vicinity of Mr.

Dixon's property by other homeowners on or around March 3, 2023, the date of the backup into Mr. Dixon's basement, which would typically occur if the public sewer surcharged. In addition, while the property owner at 1962 Fallbrook Lane was compensated for an SBU claim in 2021, that property is connected to a different sewer segment than Mr. Dixon's property and has a basement elevation significantly lower than Mr. Dixon's. Thus, the circumstances involving that property in 2021 do not persuade the Court that there was a lack of capacity in the public sewer causing damage to Mr. Dixon's property in 2023.

In determining the cause of a basement backup, MSD must exercise its good faith reasonable engineering judgment by considering several factors, including the amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography. (Doc. 131, Consent Decree, Ex. 8 at 2). MSD did so in this case. The preponderance of the evidence does not establish that the cause of the flooding to Mr. Dixon's property was inadequate capacity of MSD's public sewer system.

The Court is not unsympathetic to property owners like Mr. Dixon who experience basement flooding such as occurred in this case. Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner/claimant to show that a capacity-related public sewer problem was the cause of the damage to a property. The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County, Ohio) under the Consent Decree are the result of the backup of wastewater into the property due to

6

inadequate capacity in MSD's Sewer System.  In the absence of evidence establishing that Mr. Dixon's property damage was more likely caused by a surcharge in the public sewer line and not by some other cause, the Court is constrained to uphold MSD's decision in this case.  Therefore, the Court denies Mr. Dixon's appeal in this case.

    **IT IS SO ORDERED**.

Date: 10/18/2024

                                                  Karen L. Litkovitz, Magistrate Judge
                                                  United States District Court