UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs <br> <br> vs. <br> <br> BOARD OF HAMILTON COUNTY <br> COMMISSIONERS, et al., <br> Defendants | Case No. 1:02-cv-107 <br> Barrett, J. <br> Litkovitz, M.J. <br> <br> <br> ORDER RE: REQUEST <br> FOR REVIEW BY <br> ONUR DEMIRYUREK/MRD <br> USA LLC |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Onur Demiryurek (Doc. 2111), the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 2130), and MSD's Supplemental Response to Ms. Demiryurek's Request for Review, indicating Ms. Demiryurek amended her SBU claim to change the claimant name to MRD USA LLC, the owner of the property (Doc. 2139). Ms. Demiryurek/MRD USA LLC's Request for Review of MSD's decision on the SBU claim, as amended, does not include a request for a hearing.

Ms. Demiryurek/MRD USA LLC's request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(Doc. 131, Consent Decree, Exhibit 8 at 1).  In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography.  (Doc. 131, Consent Decree, Exhibit 8 at 2).  Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property.  (*Id*.).

## I.  Background

MRD USA LLC is the owner of a multiple family rental unit located at 1544 Blair Avenue, Cincinnati, Ohio.  MSD states that on information and belief, Onur Demiryurek and Ugur Demiryurek are the managing members of MRD USA LLC.  Ms. Demiryurek filed an SBU claim with MSD seeking compensation for property damage resulting from an alleged sewer backup on April 1, 2024.  (Doc. 2111 at PAGEID 55914).  MSD denied the claim, finding that the property damage Ms. Demiryurek identified was not caused by a sewer backup covered by the SBU program.  (Doc. 2111 at PAGEID 55912).  MRD USA LLC then filed an SBU claim seeking reimbursement for damages that occurred as the result of a backup reported on April 2, 2024.  In essence, Ms. Demiryurek amended her SBU claim changing the claimant name to the legal owner of the property, MRD USA LLC.  Ms. Demiryurek disagreed with MSD's decision and filed a request for review in this Court.  Given Ms. Demiryurek's amendment of the SBU claim to change the claimant name to MRD USA LLC, the Court construes Ms. Demiryurek's

2

request for review to apply equally to MRD USA LLC.[2]

## II. Evidence

Ms. Demiryurek's appeal letter states that on April 1, 2024, her property experienced a sewer backup, which she reported to MSD. Ms. Demiryurek engaged a third-party company to restore the unit to a livable condition. She seeks reimbursement of $26,914.68, less $5,000.00 she received from her insurance company. Ms. Demiryurek has submitted her SBU claim form and documentation of the damages she incurred. Ms. Demiryurek states this is the second sewer backup of her property. The first sewer backup occurred on July 2, 2021. On advice of the City, Ms. Demiryurek applied for the Sewer Backup Prevention Program. She states her application for the Prevention Program was approved.

MSD's evidence shows Ms. Demiryurek contacted MSD on April 2, 2024 to report a sewer backup in the property's basement. An MSD crew responded to the property the following day. The responding MSD crew noted that the mainline combined sanitary and storm water sewer was open and running. (Doc. 2130-2). The float level indicator was raised in the upstream manhole, indicating a surcharge of the mainline sewer. The float level indicator was not raised in the downstream manhole. *Id.* MSD states the estimated surcharge level in the upstream manhole could have reached the lower level of Ms. Demiryurek's property. MSD's further investigation, however, indicated that an issue in Ms. Demiryurek's private building sewer was the source of her April 2024 backup.

As part of its investigation of Ms. Demiryurek's SBU claim, MSD searched for prior

---

[2] This amendment does not change the Court's analysis.

3

reports of sewer backups at her property. Documentation from the previous 2021 backup included a plumber's invoice dated July 2, 2021. The plumber's invoice documented a broken/collapsed private building lateral pipe outside Unit A, which needed to be repaired. The plumber reported the lateral pipe could not be opened through mechanical methods; the collapsed building lateral had restricted flow through the line; and there was grease buildup or a foreign object that also restricted or prohibited proper flow. (Doc. 2130-4). The invoice further indicated the "Front wall of kitchen area in unit A must be cleared." (*Id*.). Ms. Demiryurek signed the invoice, signifying acceptance of the proposal to repair the broken building lateral. (*Id*.). MSD states it "elected to err on the side of caution" and settled Ms. Demiryurek's 2021 SBU claim. (Doc. 2130 at PAGEID 56249).

After MSD received Ms. Demiryurek's April 2024 report of a potential backup, and in an effort to determine her property's eligibility for the Sewer Backup Prevention Program, MSD hired Stantec Consulting Services to video the lateral line. (Doc. 2130-5). The CCTV inspection of Ms. Demiryurek's building lateral showed that the front left and front right downspouts appeared to improperly connect to the building's private building lateral. *Id*. The CCTV inspection also identified a broken or cracked pipe and offset joint near the building's foundation on the private portion of Ms. Demiryurek's property and a partial blockage of the lateral in the middle of the yard. MSD concluded that the defects identified on the CCTV inspection showed the private building lateral had never been repaired, nor had any additional damage been repaired by Ms. Demiryurek. Stantec recommended that once repairs were made to the building lateral, the "Design Phase" of the Sewer Backup Prevention Program could proceed. In addition,

4

Stantec recommended that the front two downspout discharge locations, which tied into the building lateral, be rerouted downstream of the proposed outdoor grinder pump.

MSD states that while the areas surrounding the property experienced heavy rainfall on or about April 1, 2024, no other properties on the segment of the public mainline sewer serving Ms. Demiryurek's property reported a backup. Based on the configuration of the public sewer, MSD would expect any capacity-related backup in the public mainline sewer that impacted Ms. Demiryurek's property to similarly impact neighboring properties on the same segment. However, MSD received no backup reports from neighboring properties. In addition, MSD did not receive reports of backups from neighboring properties connected to adjoining main line sewer segments.

Based on its investigation, Ms. Demiryurek's claim submission, and other information it reviewed concerning Ms. Demiryurek's property, MSD denied her April 2024 SBU claim. In addition, MSD notified Ms. Demiryurek by letter dated October 15, 2024, that repairs to the private building lateral must be made before MSD could proceed with "potential participation in the SBUPP [Sewer Backup Prevention Program]." (Doc. 2130-6).

**III. Resolution**

Under the Consent Decree, property owners may be compensated for personal or real property damage caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Ex. 8 at 1). Claimants like Ms. Demiryurek who seek review of their SBU claim denial bear the burden of showing that inadequate capacity in MSD's sewer system (a

sewer surcharge) caused the backup of wastewater into their property rather than overland flooding, blockages in the homeowner's privately-owned building sewer line, or some other cause. (Doc. 131, Consent Decree, Ex. 8 at 1).

Ms. Demiryurek has not established that inadequate capacity in MSD's public sewer system caused the April 1, 2024 flooding of her basement. Property owners are responsible for maintaining and cleaning their building lateral sewer line, which is owned by the property owner and not MSD. (*Id.*). The building sewer lateral line extends from the building, through the public right-of-way, and to the connection with the MSD public mainline sewer. A property owner, and not MSD, is responsible for damage resulting from a basement backup caused by a break or blockage in the building sewer lateral line.

In this case, the preponderance of the evidence shows that the damages sustained by Ms. Demiryurek/MRD USA LLC are not attributable to a lack of capacity of the public sewer or MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. Ms. Demiryurek/MRD USA LLC, the property owner, is responsible for damages arising from a break or blockage in the building lateral sewer line, which Ms. Demiryurek/MRD USA LLC – and not MSD – owns. The evidence shows that in 2021, in connection with the previous backup to the property, Ms. Demiryurek's plumber discovered a broken/collapsed private lateral pipe outside Unit A which needed repair. The plumber's invoice indicated the collapsed building lateral pipe restricted the flow of sewage water from the home to the public mainline sewer, and there was grease buildup or a foreign object that further blocked or prohibited proper flow. In 2024, Santec's CCTV inspection showed the building lateral was still broken and partially

blocked.  In addition, the connection of the downspouts to the building lateral would add additional flow to the building lateral and contribute to a surcharge in the private building lateral line during heavy rainfall.  Ms. Demiryurek/MRD USA LLC, like all property owners, is responsible for maintaining a clean, working building lateral.  The Consent Decree does not permit reimbursement of Ms. Demiryurek's expenses when disrepair of the private building lateral pipe was the likely cause of the backup to her basement.

The Court also considers neighborhood SBU history in this appeal.  (Doc. 131, Consent Decree, Ex. 8 at 2).  There were no other reports of sewer backups in the immediate vicinity of Ms. Demiryurek's property by other homeowners on or around April 1, 2024, the date of the backup into Ms. Demiryurek's basement, which would typically occur if the public sewer surcharged.

Under the SBU program governed by the Consent Decree, homeowners who seek review of an SBU claim denial must prove: (1) there was a backup of wastewater into their property; (2) the backup was due to the inadequate capacity in MSD's sewer system or to MSD's negligent maintenance, destruction, operation or upkeep of the sewer system; and (3) the backup was not due to blockages or breaks in the homeowner's own lateral sewer lines.  (Doc. 131, Consent Decree, Exhibit 8 at 1).  The undersigned judge must ensure that any private property damages that are awarded by the Court and paid by MSD (and ultimately the Hamilton County rate payers) under the Consent Decree are caused by wastewater backup into the property due to inadequate capacity in MSD's Sewer System or MSD's negligence.  Ms. Demiryurek/MRD USA LLC has not met their burden in this case.  Therefore, Ms. Demiryurek/MRD USA LLC's appeal

7

is denied.

    **IT IS SO ORDERED.**

Date: 12/6/2024

Karen L. Litkovitz
Chief United States Magistrate Judge