UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>    Plaintiffs<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>    Defendants | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>CAROLINE MELSON |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Caroline Melson (Doc. 2112), the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 2143), and the parties' supplemental filings (Docs. 2145, 2146). On January 16, 2025, the Court held a hearing on Ms. Melson's request for review at which Ms. Melson and MSD's Wastewater Collection Division Principal Engineer Maureen Richard, P.E., testified and documentary evidence was submitted. Following the hearing, the Court left the record open for thirty days for the parties to submit additional information if they wished. No additional materials were filed by either party. Therefore, this matter is ripe for review.

Ms. Melson's request for review is filed under the Sewer Back Up[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction,

---

[1] The "Water-In-Basement" program has been renamed the "Sewer Back Up" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

>operation or upkeep of the Sewer System.  The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

(Doc. 131, Consent Decree, Exhibit 8 at 1).  In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography.  (Doc. 131, Consent Decree, Exhibit 8 at 2).  Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property.  (*Id.*).

## I. Background

Ms. Melson is the owner of the property located at 3449 Ault View Avenue, Cincinnati, Ohio.  On April 21, 2024, Ms. Melson filed an SBU claim with MSD seeking compensation for an alleged sewer backup on April 2, 2024.  (Doc. 2143, Ex. G at PAGEID 56528).  MSD denied the claim, finding that the damages Ms. Melson identified were not caused by a sewer backup covered by the SBU program.  (Doc. 2143, Ex. H).  Ms. Melson disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence

On April 2, 2024, Ms. Melson's basement flooded.  She called a plumber who removed debris from the basement floor drain and checked the sump pumps.  (Doc. 2143, Ex. G at PAGEID 56541).  The plumber advised Ms. Melson to call MSD.

Ms. Melson contacted MSD at 5:26 p.m. on April 3, 2024 to report the flooding.  (Doc.

2

2143, Ex. B). An MSD crew responded the following morning. The crew checked the 12-inch combined sewer mainline connected to Ms. Melson's building lateral. The upstream manhole (MH 42404009) was open and running with signs of surcharge measuring one inch below the rim surface as measured by the float level indicator. The downstream manhole (MH 42404008) also showed signs of surcharge measuring one inch below the rim surface.

Ms. Richard testified that MSD measured the upstream and downstream manholes nearest to Ms. Melson's building lateral. The elevation of the downstream manhole (MH 42404008) was 730.12 feet, the upstream manhole (MH 42404009) was 732.02 feet, and the lowest level of Ms. Melson's building was 733.38 feet. Ms. Richard testified that given the measured depth of the surcharge of both manholes (one inch below each rim) and their relative elevations, any surcharge within the upstream or downstream manholes would not have reached the level of Ms. Melson's basement as it was over one foot higher than the level of the surcharge. (Doc. 2143, Ex. C). She testified that even if the upstream and downstream manholes were completely surcharged, the sewage would emanate out of the lid of both manholes before it could reach the level of Ms. Melson's building. In other words, a surcharge of the relevant manholes would not have caused a sewer backup into Ms. Melson's building.

Ms. Richard further testified that there are five other homes connected to the mainline sewer serving Ms. Melson's property. Three of those properties sit at elevations lower than Ms. Melson's basement, with the lowest at 731 feet. Ms. Richard testified that she would expect any overflow of the manholes to reach the three lower properties before reaching Ms. Melson's basement. However, MSD did not receive any other complaints of sewer backup from those

3

neighboring properties.

Ms. Richard also considered Ms. Melson's two previous reports of basement backups on March 7 and May 19, 2022. MSD's investigation of the March 2022 revealed evidence of surcharge in both manholes but no evidence of manhole overflow. Investigation of the May 2022 report revealed no signs of manhole surcharge. None of Ms. Melson's neighbors reported backups on or around March 7 or May 19, 2022.

Ms. Melson testified that after the May 2022 incident, she hired a plumber to clear her lateral line of tree roots and reline 55 feet of the lateral. (Doc. 2145 at PAGEID 56576). Her plumber, CME, performed the work in July 2022 and charged Ms. Melson over $8,000.00. (Doc. 2145 at PAGEID 56576). Following MSD's denial of the April 2024 SBU claim, Ms. Melson contacted CME to inspect her building lateral line. CME videoed the lateral line, which appeared to show no blockages within the line. Ms. Melson submitted a plumber's video from August 30, 2024, which showed no blockages or breaks in the building lateral.

Ms. Richard reviewed the video and noted several observations. First, she noted that the lining of the lateral started at the foundation of Ms. Melson's house and extended approximately 45 feet out and 10 feet short of the connection to the mainline sewer. Second, Ms. Richard described several places in the video showing offset pipe joints, a belly/sag in the line, and locations where other pipes entered the lateral. She testified that each of these items were potential sources of outside water entering Ms. Melson's internal plumbing and pipes. Ms. Richard testified that she believed the issue with the basement flooding may be caused by the plumbing underneath the home.

4

Ms. Melson testified that her roof gutter downspouts tied into her building sewer. She testified she was advised by a supervisor at Cincinnati Water Works that she was not permitted to disconnect or "daylight" the gutter pipe from her internal plumbing.

## III. Resolution

Under the Consent Decree, property owners may be compensated for personal or real property damage caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Ex. 8 at 1). Claimants like Ms. Melson who seek review of the denial of an SBU claim bear the burden of proof to show that the backup of wastewater into their property was caused by inadequate capacity in MSD's sewer system (a sewer surcharge) and not by overland flooding, blockages in the homeowner's privately-owned building sewer line, or some other cause. (Doc. 131, Consent Decree, Ex. 8 at 1).

Ms. Melson has not established that the flooding of her basement on April 2, 2024 was likely caused by inadequate capacity in MSD's public sewer system. The Consent Decree factors weigh in favor of MSD. Under the Consent Decree, the Court considers the condition of the sewer system in the neighborhood and the capacity of nearby public sewer lines. (Doc. 131, Consent Decree, Ex. 8 at 2). When MSD responded to Ms. Melson's April 3, 2024 backup report, the MSD crew's investigation of the downstream and upstream public sewer manholes showed signs of a sewer surcharge that measured one inch below the manhole rim. MSD presented evidence showing that Ms. Melson's basement sits approximately one foot in elevation above the level of this surcharge, making it unlikely that the surcharge of either the upstream or

downstream manholes reached the level of Ms. Melson's basement.  Even if the surcharge breached the rims of the upstream and downstream manholes, the sewage would be released onto the street before reaching Ms. Melson's basement.  The Court is persuaded that the elevations of the relevant manholes and Ms. Melson's basement make it unlikely her basement experienced a backup as a result of a lack of capacity in the MSD public sewer.

The Court also considers neighborhood SBU history.  (Doc. 131, Consent Decree, Ex. 8 at 2).  Ms. Richard testified that if there were a surcharge of the relevant manholes sufficient to reach the level of Ms. Melson's basement, she would have expected the surcharge to reach the three properties sitting at elevations lower than Ms. Melson's to experience a sewer backup.  However, there were no other reports of sewer backups or flooding by other homeowners in the immediate vicinity of Ms. Melson's property on or around April 2, 2024, the date of the backup into Ms. Melson's basement.  This suggests Ms. Melson's experience was an isolated occurrence.

The Court has also considered the video evidence submitted by Ms. Melson.  The video shows her building lateral line, which extended from the home's foundation to the mainline sewer tap, was clear.  Ms. Richard testified the video showed that segments of the building sewer lying underneath the home—which was not lined by CME—contained offset pipes, a sag/belly, and the connection of other pipes tying into the building sewer.  Ms. Richard testified that these conditions would allow additional water into the building pipe and diminish the capacity and flow through Ms. Melson's building sewer.  The Court is not persuaded that the video evidence supports a finding of a public sewer backup in this case.

6

In determining the cause of a basement backup, MSD must exercise its good faith reasonable engineering judgment by considering several factors, including the amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography.  (Doc. 131, Consent Decree, Ex. 8 at 2).  MSD did so in this case.  The preponderance of the evidence does not establish that the cause of the flooding to Ms. Melson's property was inadequate capacity of MSD's public sewer system.

The Court is not unsympathetic to property owners like Ms. Melson who experience basement flooding such as occurred in this case.  Ms. Melson has taken numerous steps to mitigate against basement flooding at great expense only to be told that neither her plumber nor MSD is responsible.  Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner/claimant to show that a capacity-related public sewer problem caused the damage to a property.  The undersigned is responsible for ensuring that any costs for damages to an individual's private property that must be paid by MSD (and ultimately the rate payers of Hamilton County, Ohio) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System.  In the absence of evidence establishing that Ms. Melson's property damage was more likely caused by the inadequate capacity of the public mainline sewer and not by some other cause, the Court is constrained to uphold MSD's decision in this case.  Therefore, the Court

denies Ms. Melson's appeal in this case.

**IT IS SO ORDERED.**

Date: 2/28/2025

Karen L. Litkovitz
United States Magistrate Judge