UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>  Plaintiffs,<br><br>vs.<br><br>BOARD OF HAMILTON COUNTY<br>COMMISSIONERS, et al.,<br>  Defendants. | Case No. 1:02-cv-107<br>Barrett, J.<br>Litkovitz, M.J.<br><br><br>ORDER RE: REQUEST<br>FOR REVIEW BY<br>MARK AND LINDA FISCHER |

This matter is before the Court on the Request for Review of the denial of a Sewer Back Up ("SBU") claim by Mark and Linda Fischer ("the Fischers") (Doc. 2187) and the Metropolitan Sewer District of Greater Cincinnati ("MSD")'s response thereto (Doc. 2194) and supplemental response correcting MSD exhibits L, M, and N (Doc. 2196). On November 3, 2025, the Court held a hearing on the Fischers' request for review at which Mr. Fischer and MSD's Wastewater Collection Division Principal Engineer Maureen Richard, P.E., testified and documentary evidence was submitted. *See* Doc. 2197.

The Fischers' request for review is filed under the Sewer Backup[1] program (formerly known as the Water-in-Basement [WIB] Claims Process Plan) (Doc. 131, Consent Decree, Exhibit ("Ex.") 8). The Plan states in relevant part:

> Subject to the requirements of this Plan, occupants who incur damages as a result of the backup of wastewater into buildings due to inadequate capacity in MSD's Sewer System (both the combined and the sanitary portions) can recover those damages. This plan also provides a means for occupants to recover damages arising from backups that are the result of MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. The Claims Process is not intended to address water in buildings caused by overland flooding not emanating from MSD's Sewer System or caused by blockages in occupants' own lateral sewer lines.

---

[1]The "Water-In-Basement" program has been renamed the "Sewer Backup" program to more accurately reflect MSD's responsibility for sewage backups caused by inadequate capacity in MSD's sewer system. *See* Doc. 452 at 4; Doc. 454 at 16.

(*Id*. at 1).  In determining the cause of SBU, MSD must exercise its good faith reasonable engineering judgment and consider the following non-exclusive factors: amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection of the neighborhood to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography.  (Doc. 131, Consent Decree, Ex. 8 at 2).  Damages arising from basement backups for which MSD is responsible are limited to documented real and personal property.  *Id*.  Homeowners who are dissatisfied with MSD's disposition of a claim under the SBU program may request review of the decision by the Magistrate Judge, whose decision is binding and not subject to any further judicial review.  (Docs. 154, 190).

## I. Background

The Fischers are the owners of 9000 Spooky Ridge Lane, Indian Hill, Ohio.  The Fischers filed an SBU claim with MSD seeking compensation for property damage allegedly resulting from a sewer backup on April 5, 2025.  (Doc. 2194, Ex. B).  The Fischers seek reimbursement of their insurance deductible and plumbing bill.  (Doc. 2187 at PAGEID 57535).  MSD denied the claim for property loss, finding the damage was not caused by a sewer backup covered by the SBU Program.  (Doc. 2194, Ex. J).  The Fischers disagreed with MSD's decision and filed a request for review in this Court.

## II. Evidence

From April 2 through April 6, 2025, there were rain storms in the Cincinnati region where the Fischers' home sits.  Mr. Fischer presented climate and rainfall information for the Cincinnati area in April 2025, which show that over 4 inches of rainfall fell on April 2 through

2

April 6, 2025.  (Doc. 2197, Ex. 2).  Mr. Fischer states that on April 5 and 6, 2025, sewer water backed up into his basement causing significant damage to their property.  On April 6, 2025, Mr. Fischer contacted MSD to report the backup.  (Doc. 2194, Ex. C).  An MSD crew responded to the Fischers' property approximately one hour later to investigate.  At that time, the water had backed up to a depth of one foot.  The MSD crew checked the upstream and downstream manholes as part of its investigation.  The upstream manhole (USMH 53210003) and downstream manhole (DSMH 53210004) were open and running with no signs of surcharge.  (*Id*.).  The MSD crew reported, "Customer had gutters cleaned and the cleaners washed the gutter debris [down] the downspouts.  Customer will be getting a plumber to clean lateral to [mainline]." (*Id.*).

On April 7, 2025, Mr. Fischer hired a plumber who attempted to jet the home's lateral line.  The plumber was able to jet to 100 feet only because of a blockage in the lateral line.  (Doc. 2187, PAGEID 57535).  Mr. Fischer testified that the plumber used a device to break the lateral pipe to release the pressure in the line.  Once he did this, the water in his basement receded.  That same day, the plumber contacted MSD to report that the private lateral line was "still holding and leaking on ground."  The plumber also reported he "dug down and water shot out of pipe and continues to pour out."  (Doc. 2194, Ex. D).

Mr. Fischer also contacted MSD on April 7, 2026, and reported that his basement had less than two inches of water.  (Doc. 2194, Ex. E).  An MSD crew responded the same day and determined both the upstream and downstream manholes were open and running without signs of a previous surcharge.  (*Id*.).  The crew also noted that the "[c]ustomer had plumber come to try to break the choke at this address.  Plumber ended up digging into the lateral on private property to

3

get the house back flowing. Plumber then tved [ran a video camera through] the lateral and customer state's (sic) plumber finding a collapsed pipe in the row of lateral." (*Id.*). The MSD crew placed a flag at the apparent broken pipe location. (*Id.*).

An MSD crew arrived on April 10, 2025 to video the private lateral line. (*Id.*, Ex. F). MSD discovered a minor pipe offset as well as mud and roots in the lateral, which required a root cut. (Doc. 2194, Ex. I). The line was cleared, and MSD was able to video the lateral to the right-of-way. (*Id.*, Ex. F).

On April 28, 2025, Mr. Fischer called MSD to report sewage surfacing in the yard. An MSD crew responded and photographed sewage surfacing from the private building lateral at the point where the plumber had opened the pipe to drain the basement. (Doc. 2194, Ex. G). The MSD crew reported, "Customer stated the plumber made hole in lateral that released the back up in the basement. So every time they flush the toilet or used the shower it go[es] to that hole outside which i[s] 10 feet away from the POC [point of connection]." (*Id.*).

In May 2025, MSD decided to replace, rather than repair, five feet of the Fischers' building lateral and install a cleanout. (Doc. 2197, Ex. O). In June 2025, notice was given to the Fischers of the proposed repairs (*Id.*, Ex. P), which were subsequently made in August 2025 (*Id.*, Ex. Q). At the time of this repair, MSD noted that Mr. Fischer's plumber had already installed a cleanout, and the decision was made to replace 11 feet of the clay lateral with PVC pipe. MSD determined it was more efficient to replace the entire piece of lateral pipe during one job. MSD replaced 11 feet of the lateral from the mainline point of connection to the new two-way cleanout installed by Mr. Fischer's plumber. (*Id.*, Ex. O).

4

The Fischers' property is connected to an 8-inch sanitary-only sewer.  MSD Principal Engineer Maureen Richard testified that a sanitary-only sewer is a closed system that does not have storm water connections that capture storm water and overland flow like a combined sewer system.  In other words, a combined sanitary and storm water sewer allows both sanitary and storm water to flow through the mainline sewer, while the sanitary-only system conveys sanitary flow only.

The basement elevation of the Fischers' property is 775 feet.  The upstream manhole (USMH 53210003) rim elevation is 773 feet.  The downstream manhole (DSMH 53210004) rim elevation is 764 feet.  (Doc. 2196, Ex. N).  Ms. Richard testified that the relative elevations of the upstream and downstream manholes and the Fischers' basement made it unlikely that any surcharge of the public sewer would have risen to the level of the Fischers' basement.  She testified that both manhole lids sit at lower elevations than the basement.  If there were a surcharge in the public sewer (meaning the public sewer line was at full capacity) high enough to reach the level of the Fischers' basement, she would expect sewer water to release first from the upstream and downstream manholes, which sit at lower elevations, because water seeks the path of least resistance.  She also testified that MSD would expect to see surcharge evidence (dampness, toilet paper, debris, fecal matter, sanitary products) on the walls or steps of the manholes had there been a surcharge of the public sewer, which MSD did not observe. According to Ms. Richard, no other property owners in the vicinity reported a sewer backup on or about April 5 or 6, 2025.

Mr. Fischer testified that he has never experienced a basement backup despite living in his home for 40 years.  He posits that the heavy rain that fell in early April 2025 forced mud and

5

debris through the main sewer line, causing a clog in the line. Mr. Fischer presented photographs of the lateral pipe that was exposed after MSD dug up the area. He states the photos do not show breaks or roots in the lateral. (Doc. 2197, Ex. 1).

Ms. Richard testified that the photos are of the exterior, and not interior, of the lateral pipe where MSD discovered roots and mud. MSD also presents rain data (Doc. 2197, Ex. R) showing that the day before the Fischers' basement flooded, there was a one-year storm that fell in the northwest quadrant of MSD's service area. The Fischers' home lies in the northeast quadrant, which experienced less rainfall, and this amount of rainfall would not be expected to cause a backup of the mainline sewer system. (*Id*.).

### III. Resolution

Under the Consent Decree, property owners may be compensated for personal or real property damage caused by (1) inadequate capacity in MSD's Sewer System, or (2) MSD's negligent maintenance, destruction, operation or upkeep of the Sewer System. (Doc. 131, Consent Decree, Ex. 8 at 1). Claimants like the Fischers who seek review of the denial of an SBU claim bear the burden of proof to show that the backup of wastewater into their property was caused by inadequate capacity in MSD's sewer system (a sewer surcharge) and not by overland flooding, blockages in the homeowner's privately-owned building sewer line, or some other cause. (Doc. 131, Consent Decree, Ex. 8 at 1).

Property owners are responsible for the maintenance and cleaning of the building lateral sewer line, which is owned by the property owner and not MSD. The building sewer lateral line extends from the property owner's building, through the public right-of-way, and to the point the lateral connects to MSD's mainline public sewer. A property owner, and not MSD, is

6

responsible for damage resulting from a basement backup caused by a break or blockage in the building lateral sewer line, even if such break or blockage is in the public right-of-way. (Doc. 131, Consent Decree, Exhibit 8 at 2; 09/02/20 Becker Order, Doc.1844, at PAGEID 43047).

The fact that MSD undertook to replace a larger section of the lateral, including the portion within the public right-of-way, is not evidence of negligent maintenance or upkeep of the public sewer system. When a break or blockage of a building lateral occurs in the public street right-of-way, MSD is generally responsible for the cost and repair of the lateral. MSD's Rules and Regulations provide in relevant part:

> The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer from the building to the point of connection with the public local sewer. Repair and reconstruction of the *building sewer in a public street right-of-way* or within the specified width of a recorded public easement *shall be the responsibility of the District except as follows*. . . . It shall be the responsibility of the owner or his agent to establish, by means of a valid sewer cleaner contractor's receipt, that such a repair or reconstruction is the responsibility of the District. The District shall have the right to verify the sewer cleaner's finding prior to beginning repair or reconstruction. . . .

(Doc. 1089, Ex. C, Section 2008, MSD Rules and Regulations) (emphasis added). MSD undertakes repairs in public right-of-way laterals to ensure proper, safe, and consistent repairs. MSD has previously advised the Court that it undertakes repairs to laterals in the right-of-way because local municipalities "do not want local roads being subject to unsafe and inconsistent repair by private citizens." (Doc. 151 at 5).

In this case, the preponderance of the evidence does not show the Fischers' backup was caused by a surcharge of the public sewer or MSD's negligent maintenance, destruction, operation or upkeep of the public sewer system. Rather, the evidence shows that blockages in the Fischers' own building sewer lateral likely caused their basement flooding.

7

In addition, the Fischers have not established that the flooding of their basement on April 5 and 6, 2025 was likely caused by inadequate capacity in MSD's public sewer system. The Consent Decree factors do not point to a surcharge of the public sewer in this case. The Fischers' property is served by a sanitary-only public sewer and not a combined sanitary and storm water sewer, making it less likely that rainfall in early April 2025 impacted the capacity of the sanitary-only sewer.

Under the Consent Decree, the Court also considers the condition of the sewer system in the neighborhood and the capacity of nearby public sewer lines. (Doc. 131, Consent Decree, Ex. 8 at 2). When MSD responded to the Fischers' April 6, 2025 report of a backup, the MSD crew's investigation of the upstream and downstream public sewer manholes showed no signs of a sewer surcharge. Even if the public sewer did surcharge, the elevation evidence presented by MSD shows the Fischers' basement sits two feet in elevation above the rim of the upstream manhole and 11 feet in elevation above the rim of the downstream manhole, making it unlikely that the surcharge of either manhole could reach the level of the Fischers' basement. Ms. Richard testified that if there were a surcharge of either manhole sufficient to reach the level of the Fischers' basement, she would have expected to see evidence of such surcharge within the walls and steps of the manholes, which MSD did not observe. The Court is persuaded that the elevations of the relevant manholes and the Fischers' property make it unlikely their basement backed up as a result of a lack of capacity in the MSD public sewer.

The Court also considers neighborhood SBU history. (Doc. 131, Consent Decree, Ex. 8 at 2). No other homeowners in the immediate vicinity of the Fischers' property reported sewer

8

backups or flooding on or around April 5 or 6, 2026.  If the public sewer surcharged, others in the area typically experience backups or flooding.

In determining the cause of a basement backup, MSD must exercise its good faith reasonable engineering judgment by considering several factors, including the amount of precipitation, property SBU history, condition of the sewer system in the neighborhood, results of a visual inspection to look for signs of overland flooding, neighborhood SBU history, capacity of nearby public sewer lines, and topography.  (Doc. 131, Consent Decree, Ex. 8 at 2).  MSD did so in this case.  The preponderance of the evidence does not establish that inadequate capacity of MSD's public sewer system caused the Fischers' property to flood.

The Court is not unsympathetic to property owners like the Fischers who experience basement flooding.  Yet, this Court is bound by the terms of the Consent Decree in this matter, which places the burden of proof on the homeowner/claimant to show that a capacity-related public sewer problem caused the property damage.  The undersigned must ensure that any costs for damages to an individual's private property paid by MSD (and ultimately the rate payers of Hamilton County, Ohio) under the Consent Decree are the result of the backup of wastewater into the property due to inadequate capacity in MSD's Sewer System.  In the absence of evidence establishing that the Fischers' property damage was more likely caused by a surcharge in the public sewer line and not by some other cause, the Court must uphold MSD's decision in this case.  Therefore, the Court denies the Fischers' appeal in this case.

**IT IS SO ORDERED**.

Date: 11/13/2025

Karen L. Litkovitz, Magistrate Judge
United States District Court